UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TRANS-SPEC TRUCK SERVICE INC., D/B/A TRUCK SERVICE<br><br>Plaintiff,<br><br>v.<br><br>CATERPILLAR INC.<br><br>Defendant. | C.A. NO.: 04-11836RCL |

## AFFIDAVIT OF JOSEPH M. HOWARD, JR., IN SUPPLEMENTAL SUPPORT OF PLAINTIFF'S AMENDED MOTION FOR PRELIMINARY INJUNCTION

I, Joseph M. Howard, Jr., state:

1. I am the President of Trans-Spec Truck Service, d/b/a Truck Service ("Trans-Spec").

2. Trans-Spec transports approximately eighty-five percent of the heating oil supplied to the Commonwealth of Massachusetts.

3. Trans-Spec is responsible for transporting oil to, among other clients, hospitals and police and fire departments across Massachusetts, the CSX and Amtrak rail lines, most of the power plants in Massachusetts, the Massachusetts Bay Transportation Authority, the University of Massachusetts, Massachusetts Institute of Technology, schools in the Brookline Co-op system, Department of Public Works projects across the entire Commonwealth, and various municipalities and state parks, in addition to clients in New York and Connecticut.

4. Trans-Spec accepted delivery of twenty-two heavy duty, custom-built trucks to be used in its oil delivery and dump trailer operations in or around December 1999 and January 2000. These twenty-two trucks all contained C-12 engines manufactured by Caterpillar Inc.

5. By 2001, serious problems with the C-12 engines manufactured by Caterpillar Inc. began to manifest themselves, resulting in a catastrophic level of engine failures in Trans-Spec's truck fleet.

6. Since that time, on average, six Trans-Spec trucks have been down at any given time due to Caterpillar engine-related issues.

7. In June 2004, ten trucks were out of service and as of August 23, 2004, eight out of twenty-two trucks are out of service with major engine problems, with four more showing signs of impending breakdown.

8. On June 9, 2004, a meeting was held as to Trans-Spec's difficulties with the Caterpillar engines. I, along with Robert Barton, represented Trans-Spec; Troy N. Guidotti and Al Cardoza represented Caterpillar Inc.; Edward Blake and Michael Bumpus represented Sterling Truck Corporation (the company that fabricated the trucks); and, William Wicher represented Minuteman Trucks Inc. (the dealer through which Trans-Spec purchased the trucks in 1999).

9. At this June 9, 2004 meeting, Caterpillar Inc. said that it would repair all of the engine breakdowns pursuant to its warranty, thus acknowledging that the engine problems were Caterpillar Inc.'s responsibility.

10. In August 2004, I met with Steve W. Schoening, Caterpillar's Northeast Region Manager, who reiterated that Caterpillar Inc. needed to address Trans-Spec's

situation. Mr. Schoening assured me that the engine breakdowns were not Trans-Spec's fault.

11. To date, however, Caterpillar Inc. has not provided any permanent solution to Trans-Spec's problem.

12. Trans-Spec's business requires that it operate all of its trucks six days a week.

13. Trucks of the specification Trans-Spec uses cannot be rented for temporary use.

14. Trans-Spec must have its truck fleet operating at one hundred percent efficiency by November 15, 2004 – the commencement of the winter heating season – or the entities named in Paragraph 3 will be without the oil necessary to heat their facilities this winter.

15. Trans-Spec needs to have resolution of this matter – a concrete plan as to how and when Caterpillar Inc. will replace these trucks – by September 10, 2004. On that date, Trans-Spec must inform the federal, state, and municipal entities named in Paragraph 3 that it cannot guarantee performance on its contracts with them.

16. Trans-Spec needs to inform the entities named in Paragraph 3 of its impending default so as to give them a fighting chance to seek oil delivery from other sources (if even possible at this late date). Having to inform these federal, state, and municipal entities will automatically put Trans-Spec out of business because Trans-Spec will no longer be allowed to bid on these contracts again. These entities might also sue Trans-Spec for its default. Trans-Spec would find it unacceptable and unethical, however, not to inform these entities of its situation. Trans-Spec's failure to do so would deprive them of whatever opportunity exists through which they may obtain their oil supply from some other source.

Therefore, Trans-Spec regretfully plans to take whatever course of action is necessary to prevent hospitals, police and fire departments, power plants, schools, mass transit systems, and public works projects across New England from being without heating oil this winter, including such action that would result in its swift demise.

SIGNED UNDER THE PENALTIES OF PERJURY THIS 26th DAY OF AUGUST, 2004.

Joseph M. Howard, Jr.

00857508

## CERTIFICATE OF SERVICE

      I, Christian G. Samito, hereby certify that on this 27th day of August, 2004 I caused a copy of the foregoing **Affidavit of Joseph M. Howard, Jr. in Supplemental Support of Plaintiff's Amended Motion for Preliminary Injunction** to be mailed, postage prepaid to:

| | |
|---|---|
| Caterpillar, Inc.<br>100 N.E. Adams<br>Peoria, Illinois 61629 | CT Corporation System<br>101 Federal Street<br>Boston, MA 02210 |

_____
Christian G. Samito

00857800