UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TRANS-SPEC TRUCK SERVICE, INC. <br> D/B/A TRUCK SERVICE <br><br> Plaintiff, <br><br> v. <br><br> CATERPILLAR, INC. <br><br> Defendant. | C.A. NO.: 04-11836RCL |

## CATERPILLAR INC.'S OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR A PRELIMINARY INJUNCTION

Defendant Caterpillar Inc. ("CAT") hereby opposes Trans-Spec Truck Services, Inc., d/b/a Truck Service's ("Trans-Spec") amended motion for a preliminary injunction. As explained below, Plaintiff has not and cannot make the requisite showing for the entry of a preliminary injunction and its Motion should be denied.

## STANDARD FOR PRELIMINARY INJUNCTIVE RELIEF

To establish a right to a preliminary injunction, a plaintiff must prove each of the following:

(1) [A] substantial likelihood of success on the merits,

(2) a significant risk of irreparable harm if the injunction is withheld,

(3) a favorable balance of hardships, and

(4) a fit (or lack of friction) between the injunction and the public interest.

Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003); see also Converse Const. Co. v. Mass. Bay Transp. Auth., 899 F. Supp. 753, 760 (D. Mass. 1995).

A plaintiff's "[f]ailure to demonstrate all of the requirements proves fatal for a request for relief." IKON Office Solutions v. Belanger, 59 F. Supp. 2d 125, 128 (D. Mass. 1999) (citing Mass. Coalition of Citizens v. Civil Defense Agency & Office of Emergency Preparedness, 649 F.2d 71, 74 (1st Cir. 1981)). In addition, "trial courts have wide discretion in making judgments regarding the appropriateness vel non of preliminary injunctive relief." Charlesbank Equity Fund II v. Blinds To Go, 370 F.3d 151, 162 (1st Cir. 2004).

"In most cases . . . irreparable harm constitutes a necessary threshold showing for an award of preliminary injunctive relief." Charlesbank Equity Fund II, 370 F.3d at 162; see also Ross-Simons of Warwick v. Baccarat, Inc., 102 F.3d 12, 13 (1st Cir. 1996) ("Irreparable harm is an essential prerequisite for a grant of injunctive relief."). "Irreparable harm most often exists where a party has no adequate remedy at law [because] [s]uch an award will make it whole. Accordingly, its legal remedy is adequate." Charlesbank Equity Fund II, 370 F.3d at 162. Accordingly, injunctive relief is available only upon both "a showing of an inadequate remedy at law and of a serious risk of irreparable harm . . . ." Pulliam v. Allen, 466 U.S. 522, 537 (1984).

"A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." Charlesbank Equity Fund II, 370 F.3d at 162, (citing Regan v. Vinick & Young, 862 F.2d 896, 902(1st Cir. 1988). If money damages will adequately redress a plaintiff's harm, the potential injury is not considered irreparable. Accordingly, a court may not resort to its equitable powers where monetary damages will suffice. Ocean Spray Cranberries v. PepsiCo, 160 F.3d 58, 61 (1st Cir. 1998) (enforcement of a contract by an

injunction is the exception, not the rule); Taunton Mun. Lighting Plant v. Dep't of Energy, 472 F. Supp. 1231, 1233 (D. Mass. 1979) (plaintiff conceded that "harm which can be adequately compensated with money damages is not considered to be irreparable"); Medika Intern. v. Scanlan Intern., 830 F. Supp. 81, 89 (D.P.R. 1993).

"In commercial litigation, the question whether the plaintiff is likely to suffer irreparable injury may be cast in terms of whether the plaintiff has available a legal remedy adequate to compensate it for its injuries." Itek Corp. v. First Nat. Bank of Boston, 566 F. Supp. 1210, 1216 (D. Mass. 1983). "A preliminary injunction movant does not satisfy the irreparable harm criterion when the alleged harm is self-inflicted." Fiba Leasing Co. v. Airdyne Indus., 826 F. Supp. 38, 39 (D. Mass. 1993).

## ARGUMENT

The Plaintiff in this case has not and cannot establish any of the four elements necessary for the issuance of a preliminary injunction. The most obviously missing element is the fact that the Plaintiff will not suffer irreparable injury if a preliminary injunction is not entered because: (a) if Plaintiff were to establish a basis of liability, its right of recovery is one for damages, not equitable relief; and (b) Plaintiff's delay in filing suit belies its claim that an imminent threat of irreparable harm exists. Plaintiff also cannot establish a likelihood of prevailing on the merits because any recovery to which it may be entitled does not include the type of consequential damages it seeks; namely, a mandatory injunction compelling CAT to provide it with a whole new fleet of trucks. Plaintiff's proposed order for Preliminary Injunction requests that this Court order "Caterpillar Inc. [to] deliver 22 comparable replacement trucks sufficient for Tran[s]-Spec's business purposes to Tran[s]-Spec Truck Services, Inc., d/b/a Truck Service,

3

before November 1, 2004." Plaintiff's proposed order for Preliminary Injunction (Ex. "A" hereto). CAT manufactures engines not trucks; therefore, the only way CAT would be able to provide Trans-Spec with a new fleet of trucks would be for CAT to purchase the trucks, a solution which is just as readily available to Trans-Spec and which further precludes the need for a preliminary injunction. Each is discussed below.

I. **PLAINTIFF HAS NOT AND CANNOT ESTABLISH THAT IT WILL SUFFER "IRREPARABLE HARM" ABSENT A PRELIMINARY INJUNCTION**

    A. **To the Extent Plaintiff Can Establish a Basis of Liability, Its Right of Recovery Is for Damages, Not Equitable Relief**

If the parade of horribles alleged in Plaintiff's Complaint were to come true, they might (at least arguably and based on Plaintiff's allegations) give rise to a claim for money damages. When a claim for money damages is available, irreparable harm is not present and equitable relief is not appropriate. N. Cal. Power Agency v. Grace Geothermal Corp., 469 U.S. 1306, 1306 (1984) ("A party seeking an injunction from a federal court must invariably show that it does not have an adequate remedy at law.").

In his affidavit, Joseph M. Howard Jr., the President of Trans-Spec, asserts that Trans-Spec must have a concrete plan as to how and when CAT will replace its fleet of vehicles by September 10, 2004, because if CAT cannot such a plan, it has to advise "federal, state, and municipal entities named in Paragraph 3 that Trans-Spec cannot guarantee performance on its contracts with them [to deliver oil]." Howard Aff. ¶ 15 (Ex. "B" hereto). Howard further asserts that if Trans-Spec is required to give such notice to federal, state, and municipal entities, that they will have to obtain oil from other sources, this "will automatically" put Trans-Spec out of business. Id. ¶ 16. Even if this all were

4

true — and CAT denies that it is — the most it arguably gives rise to is a claim for damages, not equitable relief.

First, the alleged harm that will occur if these vehicles are not "fixed" immediately will not be felt until November 15, 2004, the date by which Howard asserts that Trans-Spec's fleet must be operating at 100% to ensure the efficient delivery of oil. Howard Aff. ¶ 14. Given that Howard alleges that roughly six vehicles are out of service on average of the 22 truck fleet, id. ¶ 6, the remaining 16 trucks according to Howard should be able to cover Trans-Spec's needs for the next two months. In other words, there is no burning urgency that would compel this Court to enter a preliminary injunction.

Second, and notwithstanding Howard's allegation to the contrary (Howard Aff. ¶ 13), other oil delivery trucks can be purchased or leased to replace any vehicle in Trans-Spec's fleet that requires maintenance.[1] A simple tour of the internet demonstrates that numerous entities manufacture and lease trucks that can be used to delivery heating oil. Moreover, in its continuing attempt to facilitate Trans-Spec's situation, CAT offered to provide assistance in obtaining rental trucks for Trans-Spec while it continued to conduct repairs on the C-12 engines. Guidotti Aff. ¶ 4 (Ex. "D" hereto). Despite the fact that rental assistance was not part of CAT's warranty or extended service plan, CAT offered

---

[1] The argument that Plaintiff's claim is one for money damages is premised on the hypothetical assumption that Plaintiff would be entitled to the "replacement" trucks it seeks in the Complaint and its Motion for a Preliminary Injunction. Plaintiff's sole basis for recovery against CAT is under the warranties and consequential damages such as new trucks are not recoverable. More specifically, Trans-Spec's warranty from CAT expressly excludes recovery for incidental and consequential damages. Caterpillar Limited Warranty (Ex. "C" hereto). If such recovery were available, however, it would be in the form of money damages, not injunctive relief.

5

this assistance as part of its continuing good will towards Trans-Spec; however, CAT's offer was flatly denied. Guidotti Aff. ¶ 4.

In addition, the Sterling Trucks <u>Specification Proposal</u> indicates that the vehicles in Trans-Spec's fleet are of a "TRACTOR/TRAILER CONFIGURATION." Sterling Trucks, <u>Specification Proposal</u>, at 1 (Mar. 23, 1999) (Ex. "E" hereto). Page 5 of the <u>Specification Proposal</u> further identifies the connections between the tractor and the trailer. Accordingly, because a different tractor could be attached to the trailers in Trans-Spec's fleet, this broadens the number of substitute vehicles significantly because only the tractor is the part of the vehicle that allegedly needs to be repaired or replaced. CAT's Northeast Regional Manager for sales, services and parts, Steve Schoening, who is familiar with the C-12 engine and the alleged problems in the Trans-Spec Sterling Truck fleet, had an opportunity to review the Sterling Trucks <u>Specification Proposal</u>. Schoening Aff. ¶¶ 1, 6 (Ex. "F" hereto). The specifications provided by Trans-Spec are standard requests and there is nothing inherently unique about them which would preclude Trans-Spec from renting comparable equipment that would satisfy its business needs. Schoening Aff. ¶ 7.

In this case, Trans-Spec cannot sit idly by and allow its business to become insolvent. <u>See generally</u>, <u>Fiba Leasing Co., Inc. v. Airdyne Industries</u>, 826 F.Supp. 38, 39 (D.Mass. 1993) (internal citation omitted). Trans-Spec can mitigate its damages by purchasing or leasing additional trucks to satisfy its contract obligations and thereby prevent the inevitable insolvency of its business as alleged by Trans-Spec's president. Howard Aff. ¶ 16 (Ex. "B" hereto).

### B. Plaintiff's Delay in Filing Suit Demonstrates the Absence of a Threat of Imminent and Irreparable Harm

"'Courts may infer that no threat of irreparable harm exists when a plaintiff delays in filing its motion for a preliminary injunction.'" Phillips v. Pembroke Real Estate, No. 03-CV-11542, 2003 WL 23119765, at *7 (D. Mass. Aug. 19, 2003) (quoting Shaffer v. Globe Protections, 721 F.2d 1121, 1123 (7th Cir. 1983)). Accordingly, the Court in Castro v. United States, 775 F2d 399 (1st Cir. 1985), held that the district court properly denied the plaintiff's motion for a preliminary injunction because, among other things, his "delay of more than one year before seeking injunctive relief militates against a claim of irreparable injury." Id. at 408.[2]

In his affidavit, Howard asserts that Trans-Spec "accepted deliver of twenty-two heavy duty, custom-built trucks to be used in its oil delivery and dump trailer operations in or around December 1999 and January 2000." Howard Aff. ¶ 4; see also Plf.'s Am. Compl. ¶ 12 (Ex. "G" hereto). He further asserts that "[b]y 2001, serious problems with the C-12 engines manufactured by Caterpillar Inc. began to manifest themselves, resulting in a catastrophic level of engine failures in Trans-Spec's truck fleet." Howard Aff. ¶ 5; see also Plf.'s Am. Compl. ¶ 14.

Plaintiff filed suit in this case on August 23, 2004, and amended its Motion for Preliminary Injunction on August 26. Giving Plaintiff the benefit of the doubt that the phrase "by 2001" in Paragraph 5 of the Howard Affidavit means at the very end of 2001 — and CAT submits that the preposition "by" in that context means when the calendar year turned from 2000 to 2001, or the very beginning of 2001 — it has taken Plaintiff

---

[2] Abrogated on other grounds by Stevens v. Dep's of Treasury, 500 U.S. 1, 7 (1991).

7

more than two and a half years to file suit and seek a preliminary injunction. Under any analysis, a two and a half year delay in filing suit belies Plaintiff's argument that irreparable harm will occur and that a preliminary injunction is necessary because without it Trans-Spec will be put out of business and hospitals and other municipal entities will be without heating oil this winter.

If such irreparable harm were truly imminent and of such considerable consequence, why did Trans-Spec choose not to file suit in 2002, 2003, or the first half of 2004? The answer, of course, is irrelevant and the delay simply demonstrates the absence of irreparable harm absent the entry of a preliminary injunction.

## CONCLUSION

For the reasons set forth above, CAT requests that this court deny plaintiff's Motion for a Preliminary Injunction because the plaintiff has failed to make the requisite showing on the elements required for the issuance of preliminary injunction.

                                      Respectfully submitted,
                                      CATERPILLAR, INC.

                                      By its Attorney,

                                      CAMPBELL CAMPBELL EDWARDS &
                                      CONROY, P.C.

                                      */s/ Richard P. Campbell*
                                      Richard P. Campbell, Esquire, BBO#071600
                                      Christopher R. Howe, Esquire, BBO #652445
                                      Sabrina DeFabritiis, Esquire, BBO #654402
                                      One Constitution Plaza, 3rd Floor
                                      Boston, MA 02129
                                      (617) 241-3000

## CERTIFICATE OF SERVICE

I, Richard P. Campbell, herby certify that on this 9th day of September, 2004, I caused a copy of the foregoing Opposition to be mailed to counsel of record:

Nancy Reimer, Esquire
Donovan Hatem, LLP
Two Seaport Lane
Boston, MA 02210

_____
Richard P. Campbell, Esquire