UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                         )
TRANS-SPEC TRUCK SERVICE, INC.  )
D/B/A TRUCK SERVICE                  )
                                         )
         Plaintiff,             )
                                         )     C.A. NO.: 04-11836RCL
v.                                        )
                                         )
CATERPILLAR, INC.                  )
                                         )
         Defendant.          )
_____)

## JOINT STATEMENT AND PROPOSED PRETRIAL SCHEDULE

Pursuant to Local Rule 16.1 and Judge Lindsay's Notice of Scheduling Conference and Additional Matters, defendant Caterpillar Inc. ("Caterpillar") hereby submits the following statement and proposed plan for discovery and schedule for the filing of motions. The parties have elected to file their statements and proposed plans for discovery and motion schedules separately because they were unable to confer due to a family emergency that Caterpillar's counsel had concerning the premature birth of his first child.

### I. CONCISE SUMMARY OF POSITIONS ASSERTED

**A. Plaintiff's Position**

Please refer to the statement filed separately by plaintiff Trans-Spec Truck Service, Inc. ("Trans-Spec").

**B. Caterpillar's Position**

Caterpillar is the world's largest manufacturer of heavy equipment and on-highway diesel truck engines. This case arises out of plaintiff Trans-Spec's purchase of twenty-two (22) heavy-duty, custom-built trucks from Sterling Truck Corporation ("Sterling") that were to be used by

Trans-Spec in its oil delivery service and dump trailer operations. Caterpillar manufactured and sold the model C-12, 410 horsepower diesel engines to Sterling who incorporated the engines into the trucks that Trans-Spec purchased. Each C-12 model engine that Caterpillar sold to Sterling was accompanied by a written, limited express warranty. Depending on the date of delivery, one of two warranty statements accompanied the engine when shipped from Caterpillar. Warranty statement SELF5271 was included for those engines that were delivered to Sterling in December 1999 and warranty statement SELF5302 was included for engines delivered in January 2000. The warranty statements that accompanied the engines shipped to Sterling provides for two warranties: 1) a standard warranty covering the first twenty-four (24) months of use, and 2) an extended warranty covering specific components only for the first sixty (60) months of use, or the first 500,000 miles (whichever event occurs first). Trans-Spec also elected to purchase Extended Service Coverage Plus (ESC) for its engines (Form No. LELT6573-02). The ESC contract ran concurrent with Caterpillar's extended warranty.

Caterpillar's obligation under the warranties and ESC contract is limited to repair and replacement of defective parts (as set forth in those agreements). Caterpillar's warranties and ESC contract prominently and properly excludes all other express or implied warranties, including warranties of merchantability and fitness for a particular purpose. Caterpillar also excludes incidental and consequential damages. Caterpillar's express, limited warranties and ESC contract became effective on the delivery date of each C-12 engine to Sterling. The standard warranty on each engine ended long ago. The extended warranty on each engine ends either on December 8, 2004 (for those engines delivered to Sterling on December 8, 1999), or January 14, 2005 (for the engines delivered on January 15, 2000).

The plaintiff alleges that serious problems developed with the engines beginning in 2001. Specifically, the plaintiff alleges that the flywheel housings became loose from the Caterpillar engines. In June 2004, Troy Guidotti, Caterpillar's Truck Engine District Manager, met with Joseph M. Howard, Jr. and Robert Barton of Trans-Spec to discuss the problems Tran-Spec was allegedly having with the C-12 engines. Mr. Guidotti investigated the alleged flywheel housing failures and informed Tran-Spec's representatives that Caterpillar would repair the engines. Mr. Guidotti agreed to continue to make these repairs on the C-12 engines installed in Trans-Spec's trucks despite the fact that it was Caterpillar's belief that the flywheel housing failures were not due to any design or manufacturing defect attributable to Caterpillar. Caterpillar's decision to make these repairs was based solely on goodwill. Furthermore, as an additional measure of goodwill, Mr. Guidotti offered to provide rental assistance to Trans-Spec until the flywheel housings could be repaired; however, Mr. Guidotti's offer of assistance was refused by Trans-Spec.

The plaintiff claims that there is a design defect in the C-12 engine block that is causing it to crack due to the added torque generated by its increased horsepower. The plaintiff alleges that Caterpillar knew (or should have known) of this design defect and that it failed to inspect and examine the C-12 engines, or properly repair them in breach of Caterpillar's warranty. The plaintiff asserts that Caterpillar's negligence and breaches of warranty caused Trans-Spec's damages, which purportedly exceed $2.5 million. The plaintiff proposes that Caterpillar agree to provide Trans-Spec with all new trucks, suitable for its business, no later than May 1, 2005, despite the fact that Caterpillar does not manufacture trucks.

Caterpillar denies that there is a design defect in its C-12 engine block. Caterpillar has sold thousands of C-12 engines to original equipment manufacturers in addition to Sterling

without flywheel housing failure rates similar to those claimed by Trans-Spec. Caterpillar continues to pay for repairs made to the C-12 engines included in Trans-Spec's truck fleet and denies that it has refused to pay for certain repairs to the C-12 engines. Caterpillar intends to continue to honor its warranty and extended service plan obligations and make any necessary repairs to the flywheel housings until the warranty and service plans expire in December, 2004 and January, 2005.

## II. DISCOVERY/MOTION SCHEDULE

| AGENDA ITEM | PLAINTIFF'S PROPOSAL | DEFENDANT'S PROPOSAL |
|---|---|---|
| Initial Disclosures served by both parties | Not stated. | 11/10/04 |
| All written discovery and requests to admit served | 12/27/04 and 03/15/05, respectively | 12/27/04 |
| All motions under FRCP 12, 15, 19 and 20 filed | Not stated. | 03/23/05 |
| All party and non-party fact depositions completed | Not stated. | 05/24/05 |
| Plaintiff's expert disclosures served | 03/15/05 | 06/22/05 |
| Defendant's expert disclosures served | 04/15/05 | 07/20/05 |
| Expert depositions completed | 07/29/05 | 08/24/05 |
| All motions under FRCP 56 filed | 09/15/05 | 09/21/05 |
| Joint pretrial conference and assignment for trial | 12/15/05 | 10/19/05 |
| Ready for trial | 01/30/06 | 11/23/05 |

## II. OTHER AGENDA ITEMS

| EVENT | PLAINTIFF'S PROPOSAL | DEFENDANT'S PROPOSAL |
|---|---|---|
| Non-expert discovery | Maximum of 15 depositions per side, not to include keeper of record depositions or depositions by written questions. | The parties shall not exceed the ten-per-side deposition limit set forth in L.R. 26.1(c). However, the parties reserve the right to seek the Court's approval to exceed the ten-per-side limit if the need arises after discovery is commenced. |
| Location of depositions | Not stated. | Depositions noticed pursuant to FRCP 30(b)(6) and depositions of experts shall be conducted at the locality where the witness resides or works, or such other place as both parties and the witness may agree, unless the Court orders otherwise. |
| Expert depositions | Not stated. | In accordance with FRCP 26(b)(4), expert witnesses should be produced without the need for subpoena. With respect to expert depositions, the party noticing the deposition shall be responsible for paying the travel expenses and reasonable fees of the expert for time spent at the deposition pursuant to FRCP 26(b)(4). The parties shall be responsible for compensating their own experts for all preparation time. |
| Trade secret or proprietary information | Not stated. | Any documents produced during discovery that contain trade secret or proprietary information shall be covered by a mutually agreed-upon |

>protective order to be signed by both parties and submitted to the Court for approval. All motions pertaining to proposed confidentiality and protective orders shall be filed within a reasonable time after issues to which they pertain arise.

### III.     ADR AND TRIAL BY MAGISTRATE JUDGE

Caterpillar has been advised of alternative dispute resolution programs in accordance with Local Rule 16.1(D)(3). Caterpillar's certification pursuant to Local Rule 16.1(D)(3) will be filed separately. At this time, Caterpillar does not consent to trial by magistrate judge.

>CATERPILLAR, INC.
>
>By its Attorney,
>
>CAMPBELL CAMPBELL EDWARDS & CONROY, P.C.
>
>/s/ Christopher R. Howe
>
>_____
>Richard P. Campbell, Esquire, BBO #071600
>Christopher R. Howe, Esquire, BBO #652445
>Sabrina DeFabritiis, Esquire, BBO # 654402
>One Constitution Plaza, 3rd Floor
>Boston, MA 02129
>(617) 241-3000

October 22, 2004