UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TRANS-SPEC TRUCK SERVICE INC., ) <br> D/B/A TRUCK SERVICE ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> CATERPILLAR INC. ) <br> ) <br> Defendant. ) | CIVIL ACTION NO. 04-11836RCL |

### STATEMENT PURSUANT TO LOCAL RULE 16.1

Pursuant to Local Rule 16.1, Trans-Spec Truck Service Inc d/b/a Truck Service ("Trans-Spec"), by its undersigned counsel, hereby sets forth this Statement Pursuant to Local Rule 16.1 ("Statement"), including a proposed plan for discovery and schedule for the filing of motions. A copy of this Statement was sent to counsel for Caterpillar Inc. ("Caterpillar") by facsimile on October 15, 2004. Caterpillar's counsel subsequently agreed to forward a revised Statement so that an agreed-upon Joint Statement could be filed with this Court. Caterpillar's counsel has not, as yet, done so.

**I.   AGENDA**

To set deadlines and attempt the resolution of this action.

**II.   CONCISE SUMMARY OF POSITIONS ASSERTED**

The Plaintiff, Trans-Spec, is a Massachusetts corporation providing fuel and aggregate delivery service across New England. In or about December 1999 and January 2000, Trans-Spec accepted delivery of twenty-two heavy-duty, custom-built trucks that it had purchased for use in

its business operations. Each of the trucks included a C-12 model engine, designed, manufactured, and completely assembled by Caterpillar, and installed in the trucks by their fabricator, Sterling Truck Corporation ("Sterling").

By 2001, serious problems with the engines' crankshaft seals, flywheel housings, and cylinder block castings began to manifest themselves. Specifically, the flywheel housings began loosening from the Caterpillar engines. Caterpillar initially reimbursed Sterling for its repairs to a total of six Trans-Spec trucks that experienced flywheel housing failures in 2001 and 2002. When a seventh truck became inoperable due to these engine difficulties, however, Caterpillar refused to pay for any more repairs to trucks of the Trans-Spec fleet. Approximately two years ago, Caterpillar denied claims as to flywheel housings and engine blocks.

Since that time, on average, six Trans-Spec trucks have been down at any given time due to Caterpillar engine-related issues and occasionally, even more trucks are out of service. Trans-Spec's business requires that it operate all of its trucks six days a week. Furthermore, Trans-Spec cannot rent trucks of the necessary specification for temporary use due to post-September 11, 2001 security mandates which prohibit such rentals to fuel haulers.

Trans-Spec believes that the major design defect in the C-12 engine block that is giving rise to these difficulties is its propensity to crack due to the added torque generated by its increased horsepower. Trans-Spec alleges that Caterpillar knew or should have known of this design defect in its C-12 engine block and Caterpillar has had full opportunity to inspect and examine the engines in question as well as to repair them pursuant to their warranty. Caterpillar has, on multiple occasions, acknowledged that the engine problems were Caterpillar's responsibility. At a June 9, 2004 meeting, Caterpillar's representatives, Troy N. Guidotti and Al

Cardoza, represented that Caterpillar would extend Trans-Spec's warranty on the twenty-two engines until June 30, 2005 and repair all of the engine breakdowns pursuant to its warranty. In August 2004, Steve W. Schoening, Caterpillar's Northeast Region Manager, reiterated that Caterpillar needed to address Trans-Spec's situation and assured that it was not Trans-Spec's fault.

Trans-Spec further alleges that Caterpillar has, however, failed to take the adequate and appropriate remedial steps to address the problems once it became aware of them and that this failure has caused severe and crippling damage to Trans-Spec. Furthermore, Trans-Spec represents that even an offer to continually replace the engine blocks would not provide a permanent solution to its costly problem. Repeated breakdowns will continue to cause down time, oil leakage, the need for increased truck and maintenance staff, and inadequate service to Trans-Spec's customers, resulting in a loss of its business – a significant and grave financial burden on Trans-Spec.

Caterpillar designed, manufactured, distributed, and marketed the C-12 engines used in the relevant trucks. It also extended express and implied warranties concerning the product at issue in this action. Caterpillar made express and/or implied warranties of merchantability, safety and fitness for ordinary purposes, pursuant to Mass. Gen. L. ch. 106, §§ 2-313; 2-314; and 2-315, for which the trucks were to be used, and made further warranties that the trucks would be fit for the particular purpose for which they were to be used. Caterpillar also made express warranties, pursuant to 15 USC § 2301 *et seq.*, that the engines, and specifically their flywheel housings, valves, front structures, and engine blocks, were to be covered for repair or replacement. Caterpillar drafted these warranties and extended them to Trans-Spec. All of these

warranties were relied upon by Trans-Spec. As Caterpillar knew or should have known of the design defects in the C-12 engine block, Caterpillar has breached these warranties. Furthermore, Trans-Spec asserts that the engines were not merchantable, not fit for the ordinary purposes for which they were built, sold, and used, not fit for the particular purposes for which they were built, sold, and used, and not timely or adequately repaired when they broke.

Trans-Spec asserts that Caterpillar's negligence and breaches of warranties directly and proximately caused its injuries. Furthermore, as Caterpillar was engaged in trade or commerce within the meaning of Mass. Gen. L. ch. 93A, § 1(b) at all relevant times, Trans-Spec alleges that Caterpillar's conduct constituted a violation of this Massachusetts Consumer Protection Act, Mass. Gen. L. ch. 93A, § 11, causing Trans-Spec substantial loss and injury. Trans-Spec alleges that Caterpillar willfully and knowingly violated the Massachusetts Consumer Protection Act, entitling Trans-Spec to recovery of multiple damages pursuant to Mass. Gen. L. ch. 93A, § 11

Trans-Spec represents that its damages to date now exceed $2.5 million, including, without limitation, direct, incidental and consequential damages, costs of repair, loss of use, costs for additional service employees and maintenance space which would not otherwise have been necessary, an inability to complete contracted jobs on time, loss of goodwill with clients and attendant loss of business, and a substantial reduction in Trans-Spec's credit. This calculation includes neither interest nor multiple damages pursuant to Mass. Gen. L. ch. 93A.

### III. PRETRIAL SCHEDULE

### A. PHASE 1 – DISCOVERY

Automatic Disclosures:

Service of requests for production of documents: November 19, 2004

Responses to Request for Production of documents: December 27, 2004

Service of interrogatories: November 19, 2004

Responses to all interrogatories: December 27, 2004

### B. PHASE 2 – DISCOVERY

Completion of fact depositions (15 per side – not to include
keeper of record depositions or depositions by written questions):

Plaintiff's disclosure of expert witness reports: March 15, 2005

Service of requests for admissions: March 15, 2005

Defendant's disclosure expert witness reports: April 15, 2005

Completion of expert depositions: July 29, 2005

### C. SCHEDULE FOR MOTIONS AND TRIAL

Filing of summary judgment motions: September 15, 2005

Filing responses to summary judgment: October 15, 2005

Filing of replies to responses to summary judgment: November 15, 2005

Final pre-trial conference: December 15, 2005

Trial: January 30, 2006

### IV. TRIAL BY MAGISTRATE JUDGE

At this time, the parties do not agree to a trial by magistrate judge.

### V. ALTERNATIVE DISPUTE RESOLUTION

At this time, the parties do not agree to any specific alternative dispute resolution process.

### VI. SETTLEMENT PROPOSAL

Trans-Spec has provided Caterpillar with a settlement proposal and counsel for the defendant will be prepared to respond to the proposal at the Scheduling Conference.

### VII. LOCAL RULE 16.1(D)(3) CERTIFICATION

The parties' certifications concerning compliance with Local Rule 16.1(D)(3) will be filed separately.

Plaintiff,

TRANS-SPEC TRUCK SERVICE INC.,
D/B/A TRUCK SERVICE

By its attorneys

/s/ *Christian B. Samito*
Nancy M. Reimer, Esq., BBO#555373
Christian G. Samito, Esq., BBO#639825
Donovan Hatem, LLP
Two Seaport Lane
Boston, MA 02210
(617) 406-4500

Dated: October 22, 2004
00864520

## CERTIFICATE OF SERVICE

I, Christian G. Samito, hereby certify that on this 22nd day of October, 2004 I caused a copy of the foregoing **STATEMENT PURSUANT TO LOCAL RULE 16.1** to be mailed by Federal Express to:

Christopher R. Howe, Esq.
Campbell Campbell Edwards & Conroy, P.C.
One Constitution Plaza, 3rd Floor
Boston, MA 02129

/s/ Christian G. Samito
Christian G. Samito