UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11836-RCL

)
TRANS-SPEC TRUCK SERVICE, INC.
d/b/a TRUCK SERVICE,
    Plaintiff

    )

    )
CATERPILLAR INC.                              )
    Defendant                                      )
    )

## MOTION OF PLAINTIFF, TRANS-SPEC TRUCK SERVICE, INC., d/b/a TRUCK SERVICE, TO COMPEL ANSWERS TO ITS FIRST SET OF INTERROGATORIES AND FIRST REQUEST FOR PRODUCTION OF DOCUMENTS PROPOUNDED TO DEFENDANT CATERPILLAR INC.

Plaintiff Trans-Spec Truck Service, Inc., d/b/a Truck Service ("Trans-Spec"), respectfully moves this Court, pursuant to Fed. R. Civ. P. 37, for an Order compelling Defendant Caterpillar Inc. ("Caterpillar") to serve amended responses to portions of Trans-Spec's First Set of Interrogatories and First Request for Production of Documents and order the appropriate production of documents forthwith. Trans-Spec also moves for attorney's fees and costs and such other relief as the Court deems appropriate. Trans-Spec's counsel attempted in vain to resolve this dispute by sending a facsimile and letter dated February 11, 2005, and by conferring on March 4, 2005, with counsel for Caterpillar as required by Fed. R. Civ. P. 37 and Local Rule 7.1.[1]

---

[1] Pursuant to Judge Lindsay's September 21, 2004 Order in this matter, Trans-Spec's Local Rule 37. Certificate is filed herewith as a separate document.

## I.    INTRODUCTION

This case arises from defective C-12 engines manufactured by Caterpillar. In or about December 1999 and January 2000, Trans-Spec accepted delivery of twenty-two heavy-duty, custom-built trucks that it had purchased for use in its business operations. Each of the trucks included a C-12 model engine designed, manufactured, and completely assembled by Caterpillar, purchased by Trans-Spec, and installed in the trucks by their fabricator, Sterling Truck Corporation ("Sterling").

By 2001, serious problems with the engines' crankshaft seals, flywheel housings, and cylinder block castings began to manifest themselves. Caterpillar initially reimbursed Sterling for repairs to a total of six Trans-Spec trucks that experienced these failures in 2001 and 2002, but when a seventh truck became inoperable due to these engine difficulties, Caterpillar refused to pay for any more repairs to trucks of the Trans-Spec fleet or devise a permanent and reliable resolution for the problem. Since that time, on average, six Trans-Spec trucks have been down at any given time due to Caterpillar engine-related issues and occasionally, even more trucks are out of service. Trans-Spec's business requires that it operate all of its trucks six days a week. Furthermore, Trans-Spec is not allowed to rent trucks of the necessary specification for temporary use.

The major design defect in the C-12 engine block causing these difficulties is its propensity to crack due to the added torque generated by its increased horsepower. Trans-Spec alleges that Caterpillar and its agent and representative, Milton CAT f/k/a/ Southworth-Milton, Inc. ("Milton CAT"), knew or should have known of this design defect in its C-12 engine block and that Caterpillar and Milton CAT have had full opportunity to inspect and examine the engines in question, as well as to repair them pursuant to Caterpillar's warranty. On multiple

occasions, Caterpillar and/or its agent and representative, Milton CAT, have acknowledged that the engine problems were Caterpillar's responsibility and that they must make Trans-Spec whole.

Caterpillar and Milton CAT, however, have failed to take the adequate and appropriate remedial steps to address the problems or fulfill warranty obligations. Caterpillar's and Milton CAT's negligence and breaches of warranties have directly and proximately caused severe and crippling injuries to Trans-Spec. Furthermore, as Caterpillar and Milton CAT were engaged in trade or commerce within the meaning of Mass. Gen. L. ch. 93A, § 1(b) at all relevant times, Trans-Spec alleges that the conduct of both constituted a violation of this Massachusetts Consumer Protection Act, Mass. Gen. L. ch. 93A, § 1, causing Trans-Spec substantial loss and injury.

On or about August 23, 2004, Trans-Spec filed a Complaint as to Caterpillar. On or about August 26, 2004, Trans-Spec filed an Amended Complaint against Caterpillar so as to correct a typographical error. On or about December 16, 2004, Trans-Spec served its First Set of Interrogatories ("Interrogatories"), and First Request for Production of Documents ("Request for Production"), on Caterpillar, attached as Exhibit A and B respectively. Caterpillar served their Responses to Trans-Spec's Interrogatories and Request for Production, attached as Exhibits C and D respectively, on or about January 28, 2005.[2] While written discovery has commenced in this matter, depositions have not.

On or about March 1, 2005, Trans-Spec filed a Complaint as to Milton CAT in Massachusetts Superior Court in Worcester, Massachusetts. The Complaint against Milton CAT alleges similar claims as those brought against Caterpillar in this Court.

---

[2] For the ease of the Court, Trans-Spec refers to Exhibits A, B, C, and D in lieu of incorporating the text of each Interrogatory, Document Request, or corresponding response that is in dispute into the body of this Motion.

II.    **CATERPILLAR'S RESPONSES TO TRANS-SPEC'S DISCOVERY REQUESTS ARE INSUFFICIENT AND CATERPILLAR SHOULD BE COMPELLED TO RESPOND FULLY TO THEM**

A.    **Introduction**

Fed. R. Civ. P. 26(b)(1) mandates that, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim . . . of any party[.]"  Even where the information sought is not admissible at trial, discovery is permitted "if    . reasonably calculated to lead to the discovery of admissible evidence."  Fed R. Civ. P. 26(b)(1); *Summit Technology, Inc. v. Healthcare Capital Group, Inc.*, 1992 U.S. Dist. LEXIS 2550, * 7-8 (D. Mass.).  One of the fundamental rules of trial law is that each party should have mutual knowledge of all the relevant facts underlying an opponent's case. *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).  Trial is not to be a "game of blind man's bluff" but a "contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Proctor & Gamble*, 356 U.S. 677, 682-83 (1958).

The mere statement by a party that a discovery request is overly broad, burdensome, oppressive, or irrelevant is not adequate to voice a successful objection.  On the contrary, the party resisting discovery "must show specifically" how each request "is not relevant or how each question is overly broad, burdensome or oppressive." *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3rd Cir. 1982) (addressing objections to interrogatories); *Oleson v. Kmart Corp.*, 1997 U.S. Dist. LEXIS 13152, *10 (D. Kan.) ("The party resisting production bears the burden of establishing lack of relevancy or undue burden."); *St. Paul Reinsurance Company, Ltd. V. Commercial Financial Corp.*, 2000 U.S. Dist. LEXIS 17222, *7-9 (N.D. Iowa) ("[B]oilerplate objections that the discovery sought is vague, ambiguous, overbroad, unduly burdensome, etc [sic] without specifying how each request for production is deficient" are "textbook examples of

- 4 -

what federal courts have routinely deemed to be improper objections."); *Gutierrez v. Johnson & Johnson, Inc.*, 2002 U.S. Dist. LEXIS 15418, *10 (D. N.J.); *McCrink v. Peoples Benefit Life Ins. Co.* 2004 U.S. Dist. LEXIS 23990, *3 (E.D.P.A.) ("The party resisting production bears the burden of persuasion. A party resisting discovery 'must show specifically' how the information requested 'is not relevant or how each question is overly broad, burdensome or oppressive.'" (citations omitted)). "The litany of overly burdensome, oppressive, and irrelevant does not alone constitute a successful objection to a discovery request." *Oleson,* 1997 U.S. Dist. LEXIS 13152 at 10. Instead, "[t]he objecting party must show specifically how each discovery request is burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Id.*

Nowhere in its resistance to producing full discovery in this matter, however, does Caterpillar show how any of Trans-Spec's discovery requests are burdensome, oppressive, or irrelevant. Instead, as shown more fully below, Caterpillar's responses are marked by pervasive vagueness, inappropriate and unsupported objections, dilatoriness, refusal to look for documents easily obtainable from Caterpillar's files, and, in some cases, unacceptable duplicity. Caterpillar's behavior in responding to Trans-Spec's discovery requests directly mirrors its action when Trans-Spec repeatedly asked for it to honor its warranties and representations and permanently fix the defective engines giving rise to this lawsuit – as Caterpillar acted then, it acts to this day.

Thus far, Caterpillar has shirked its duty in responding to valid discovery requests duly served in an ongoing litigation. While perhaps this matter is not of the utmost importance to a company of Caterpillar's size, the issues ultimately to be resolved in this Court will decide the life and death of Trans-Spec, a once-thriving local company that serves fuel delivery needs

across the Commonwealth of Massachusetts and New England. Already placed in a precarious financial position due to Caterpillar's wrongdoing, and forced to default on several contracts this past winter due to the unreliable engines Caterpillar sold to them, Trans-Spec needs to have full discovery now in order to fully prosecute its claims and hope to have a chance of full recovery. On the other hand, perhaps Caterpillar seeks to avoid discovery because it realizes that open disclosure will strip away each of its purported defenses and expose it to liability. Whatever Caterpillar's motive, this Court cannot allow Caterpillar to subvert the Rules of Civil Procedure or permit itself to become the unwitting cover behind which Caterpillar wrongfully attempts to avoid the normal burdens of litigation.

> **B.**  **Trans-Spec Should Be Allowed Full and Complete Discovery Into the Long Standing Business Relationship that Exists Between Trans-Spec and Caterpillar**

As a defense for its wrongdoing, Caterpillar repeatedly pleads ignorance about Trans-Spec's business operations and truck applications. Simultaneously, however, Caterpillar refuses to fully answer interrogatories or produce documents regarding this issue which is integral to Trans-Spec's case and Caterpillar's defense. Caterpillar cannot assert a defense, place it at issue and then refuse to fully answer an Interrogatory or produce documents responsive to a Document Request because doing so would tend to undermine that defense or, more likely, render it wholly untenable. Nonetheless, that is precisely what Caterpillar does here.

Trans-Spec has a long business relationship with Caterpillar dating back to the mid-1980s, when Trans-Spec first began purchasing Caterpillar products. Caterpillar further learned about Trans-Spec's business operations when Trans-Spec purchased the first FLC112 Freightliner truck that had a Caterpillar 3176 engine integrated into it. Trans-Spec agreed to let Caterpillar conduct performance testing on this truck, as part of its research for future development, in the early 1990s. Caterpillar knows, from Trans-Spec's answers to its

interrogatories, that in or around 1996, Caterpillar invited and paid for Andrew Lind to attend the introduction of its C-12 engine in Orlando, Florida (the "Lind visit") and that in or around 2000, Caterpillar invited and paid for Jay Howard to inspect the Caterpillar facilities in Peoria, Illinois (the "Howard visit.").

In Interrogatory Number 3, Trans-Spec inquires about Caterpillar's knowledge of and any meetings, telephone calls, and memoranda or communications regarding the engines and trucks at issue in this lawsuit as well as Trans-Spec's business operations, personnel, and claims. Similarly, Document Request Number 5 seeks all documents in Caterpillar's possession, custody or control, that are not protected by privilege, concerning Trans-Spec, Trans-Spec's trucks, Trans-Spec's C-12 engines, Trans-Spec's personnel, Tran-Spec's business operations, and Trans-Spec's claims. In light of Caterpillar's repeated but spurious defense of ignorance about Trans-Spec's business operations and truck applications, both Interrogatory Number 3 and Document Request Number 5 deliberately encompass an open period both before and after Trans-Spec's purchase of the engines at issue in this lawsuit.

Furthermore, Document Request Number 1 asks for all documents concerning any communication or negotiation between Caterpillar and Trans-Spec and/or Sterling Truck Corporation preceding Trans-Spec's purchase of the engines and trucks at issue in this lawsuit. Interrogatory Number 20 seeks information, and Document Request Number 29 seeks documents, concerning Caterpillar's business relations with Trans-Spec from 1990 to the present, including *but not limited* to the Lind visit and the Howard visit.[3]

---

[3] Caterpillar has represented that *if* it locates any documents pertaining to just these two visits, it will produce them. A closer reading than Caterpillar has performed indicates, however, that the Document Request goes beyond just those visits to encompass the history of Caterpillar's business relations with Trans-Spec from 1990 to present.

None of these discovery requests are ambiguous, overbroad, or unduly burdensome. In light of Caterpillar's purported ignorance of Trans-Spec's business operations and truck applications, it cannot be disputed in good faith that all of this information is relevant to this case. Furthermore, while Caterpillar cites its inability to fully comprehend the meaning of the phrase "[a]ll documents" in the Document Requests, the categories of documents to be produced are specified in Number 4 of the Definitions section of the Request for Production of Documents. Additionally, despite Caterpillar's contention to the contrary, attorney/client, work product, and Fed. R. Civ. P. 26(b)(3) privileges do not apply to the documents contemplated by these Document Requests because attaching a document to a communication to counsel does not render that document privileged.

Accordingly, Trans-Spec moves that this Court strike Caterpillar's inappropriate objections and order it to amend its discovery answers and fully respond to Interrogatory Numbers 3 and 20 and Document Request Numbers 5, 1, and 29.

**C.    Trans-Spec Should Be Allowed Full and Complete Discovery Into the Histories of the Engines Relevant to its Claims**

Caterpillar inappropriately refuses to produce all documents concerning the histories of the twenty-two engines at issue in this case, requested in Document Request Number 1, under the guise that doing so would prove unduly burdensome. This shows both Caterpillar's bad faith and willingness to disregard the rules and doctrines governing discovery with cavalier abandon. These documents go to the heart of Trans-Spec's claims and it cannot legitimately be disputed that they are relevant. Furthermore, it is reasonable to expect that Caterpillar can provide copies of its files as well as printouts from its database concerning each specific engine purchased by Trans-Spec. For example, Caterpillar's main database allows one of its employees to input a

- 8 -

specific engine's serial number and review its entire history, including repairs. For a large company like Caterpillar to object that it would be unduly burdensome to have one of its employees do so borders on duplicity.

Similarly, Caterpillar cannot claim that producing all documents concerning the specifications and histories of Trans-Spec's trucks from the time of their fabrication to the present, as set forth in Document Request Number 2, is unduly burdensome or protected by privilege. Caterpillar has placed the specifications and histories of the trucks at issue by using them as one of its main defenses. Caterpillar cannot now disclaim the normal burdens of litigation and assert an overbroad interpretation of privileges to protect it from having to produce documents which shatter its defense.

Furthermore, Trans-Spec seeks information regarding the 3126, 3176, C-10, and C-13 engines, all of which are similar to the C-12. The C-10 and C-12 engines share the same operating manual and in its response to Document Request Number 3, Caterpillar calls all five, collectively, "generations of C-12 engines[.]" Accordingly, Document Request Number 3 seeks information regarding specifications, performance curves, engine retardation information, performance data and records, and notices regarding actual or potential service issues or defects sent to dealers or distributors for all five models. Document Request Number 9 requests all marketing and promotional literature concerning the five "generations of C-12 engines[.]" This information is relevant to these proceedings for its comparative value as well as its ability to show the capabilities, performance, and defects unique to the C-12. The Document Requests are neither ambiguous nor overbroad and unduly burdensome.

Similarly, Document Request Number 4 is neither ambiguous, overbroad, nor unduly burdensome because it is within Caterpillar's ability to globally search for problems relevant to specific engine parts for particular engine models through its main database. For example,

Caterpillar can easily search for all service claims concerning C-12 engine flywheel housings simply by inputting the appropriate search terms into its database and printing out what Trans-Spec anticipates will be a voluminous record.  As a means of facilitating Caterpillar's swift response, Trans-Spec offered to stipulate that all documents be produced concerning defects, service issues, and returns for service concerning flywheel housings, flywheel bolts, front structures (also known as front structure gaskets or timing gear covers), intake and exhaust valves, injectors, turbo chargers, or cylinder heads for the C-12 engines but confine its request at this point regarding the 3126, 3176, C-10 and C-13 engines to information generated by the Caterpillar database while reserving the right to require the more complete production contemplated by Document Request Number 4, if the need arises, at a later time.  Caterpillar rejected this offer.

Trans-Spec focused Interrogatory Number 4, at Caterpillar's request, to ask Caterpillar to identify persons who had significant responsibility for the design of the 3126, 3176, C-10, C-12, and C-13 model engines' flywheel housings, flywheel bolts, front structures (also known as front structure gaskets or timing gear covers), intake and exhaust valves, injectors, turbo charges, and cylinder heads; any and all kits or subsequent fixes affecting any and all of these parts; and, those involved in analyzing issues involving the engines' horsepower and torque.  In response, Trans-Spec received an insufficient response naming one person with knowledge of the flywheel housings for the C-12 engine.  The information Trans-Spec seeks is relevant to its prosecution of this case and it is inappropriate for Caterpillar to attempt to conceal the identity of possible deposition and trial witnesses who may have pertinent information.

Accordingly, Trans-Spec moves that this Court strike Caterpillar's inappropriate objections and order it to amend its discovery answers and fully respond to Document Request Numbers 1, 2, 3, 4, and 9 and Interrogatory Number 4.

**D.**    **Caterpillar Must Provide Documentary Evidence to Support Its Inappropriately Pled Affirmative Defenses or These Defenses Must Be Stricken**

Pursuant to Fed. R. Civ. P. 8(e)(2) and 11(b)(3), affirmative defenses pled to the Court must have "evidentiary support, or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]"  None of the affirmative defenses pled in *Caterpillar, Inc.'s Answer to Plaintiff's Amended Complaint and Jury Demand* ("Answer"), indicate that additional discovery was needed in order to obtain even the initial level of evidentiary support required by the Rules.  Instead, in violation of Rules 8(e)(2) and 11(b)(3), Caterpillar raised a number of affirmative defenses without the necessary evidentiary support.  Caterpillar openly admits that as to at least one defense – that Trans-Spec is not the real party in interest in this lawsuit – documents might not even exist (see Document Response Number 20).

Accordingly, Caterpillar's responses to Interrogatory Numbers 6, 9, 10, 11, 12, 13, 15, 16, 18, and 19, and Document Request Numbers 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, and 28 are insufficient.  Trans-Spec moves this Court to order that Caterpillar submit supplemental responses to all of these discovery requests containing facts (and not the type of speculation that permeates the answers in response to Interrogatory Numbers 12 and 16) and documents to support the defense raised or unconditionally withdraw the corresponding defense.

**E.**    **Trans-Spec Should Be Allowed Full and Complete Discovery Into Caterpillar's Defense that Trans-Spec Failed to Mitigate its Damages and Its Defense that Trans-Spec's Trucks Were Not Suited for Trans-Spec's Use of Them**

As part of its defense, Caterpillar claims that Trans-Spec failed to mitigate its damages. Caterpillar purports to have offered to provide Trans-Spec with rental assistance for temporary use in substitution for Trans-Spec's trucks that were out of service but claims that Trans-Spec rejected the offer.  Caterpillar further alleges the availability of suitable trucks that Trans-Spec

could have rented on its own. Yet, when asked to support its self-serving statements with specific facts and documentary evidence, Caterpillar responds elusively with vague and incomplete answers.

Paragraphs 3 and 4 of the *Affidavit of Troy Guidotti in Support of Defendant Caterpillar, Inc.'s Opposition to Plaintiff's Amended Motion For a Preliminary Injunction* state that, during a June 9, 2004 meeting, Mr. Guidotti – the Truck Engine District Manager for Caterpillar – "offered to provide rental assistance to Trans-Spec until the alleged problems with the flywheel housings could be repaired[.]" Mr. Jay Howard does not recall this offer being made during the June 9, 2004 meeting. On September 10 and October 7, 2004, Trans-Spec's counsel wrote to Caterpillar's counsel, Richard P. Campbell, regarding this purported offer. Caterpillar remained silent. While Caterpillar claims that it made this purported offer as part of its effort to "resolve Trans-Spec's claims amicably," Trans-Spec was rebuffed when it attempted to accept that partial settlement. Furthermore, according to Mr. Guidotti's Affidavit, Caterpillar's offer to provide rental assistance to Trans-Spec was ostensibly made on June 9, 2004. Thus coming months before the commencement of this litigation, it was not a part of any settlement talks such that it is privileged, as Caterpillar now claims.

Similarly, in refusing to answer Document Request Number 14, Caterpillar asserts a number of irrelevant and unfounded objections before stating that it has not assembled documents responsive to this request and that any such documents are as readily available to Trans-Spec and its attorneys as to Caterpillar and its attorneys. That is not the case. Instead, the investigation conducted by Trans-Spec and its attorneys reveals that trucks with specifications suitable for use in Trans-Spec's type of business are not available to be rented for temporary use. Caterpillar refuses to produce these documents because none exist to support its spurious position.

- 12 -

Where Trans-Spec attempts discovery into Caterpillar's claim that Trans-Spec failed to mitigate its injuries and damages, Caterpillar not only fails to provide a factual basis for its assertion that suitable trucks were available for Trans-Spec's rental on a short term basis as well as that Trans-Spec conceded that it made no effort whatsoever to mitigate its damages in that fashion. See Caterpillar's Response to Interrogatory Numbers 13 and 14. Furthermore, Caterpillar's responses to both Interrogatories are erroneous in light of Trans-Spec's own answers to Caterpillar's Interrogatory Numbers 8 and 9. Trans-Spec served its responses on January 14, 2005, two weeks before Caterpillar responded to Trans-Spec's discovery requests. Caterpillar had ample time to consider and investigate the facts contained in Trans-Spec's responses to interrogatories and make sure that it answered Trans-Spec's Interrogatory Numbers 13 and 14 correctly. Caterpillar did not do so.

Additionally, Caterpillar affirmatively pled that Trans-Spec misused the engines and repeatedly asserts as a defense that Trans-Spec's trucks were not suited for Trans-Spec's use of them. Yet, when asked about these positions in Interrogatory Number 19 and Document Request Number 18, Caterpillar suddenly falls silent, a defendant who boldly makes self-serving assertions one moment and cringes behind incomprehensible or inappropriate objections the next. Trans-Spec requests that Caterpillar simply answer Interrogatory Number 19 and produce documentation to support its statements or stipulate that Trans-Spec did not misuse the engines and that Trans-Spec's trucks were suited for Trans-Spec's use of them.

Accordingly, Trans-Spec moves the Court to order that Caterpillar either fully respond to Interrogatory Number 5 and Document Request Numbers 12 and 14 to produce specific information and documents showing that trucks with similar specifications to those used by Trans-Spec can be rented for temporary use and details of any plan or consideration by Caterpillar or Milton CAT to provide rental assistance to Trans-Spec or stipulate that Caterpillar

never made this purported offer and that trucks with specifications suitable for use in Trans-Spec's type of business are not available for temporary rental use. Trans-Spec further moves the Court to order that Caterpillar amend its answers to Interrogatory Numbers 13 and 14 both to correct its erroneous statements and to provide a factual basis for its assertions, and fully respond to Interrogatory Number 19 and Document Request Number 18 or stipulate that Trans-Spec did not misuse the engines and that Trans-Spec's trucks were suited for Trans-Spec's use of them.

**F.    Trans-Spec Should Be Allowed Full and Complete Discovery Into the Relationship Between Caterpillar and Milton CAT Because Caterpillar Has Raised It As a Defense**

Caterpillar has repeatedly raised as a defense that Milton CAT (formerly known as Southworth-Milton, Inc. and collectively referred to herein as "Milton CAT") is an independent company that is in no way Caterpillar's agent. That contradicts with information known by Trans-Spec to the contrary.

Furthermore, when an engine problem arises with a Caterpillar engine, a dealer performs the initial assessment of the malfunction. The dealer, however, must call Milton Cat, as Caterpillar's regional distributor and representative, to assess the situation if the problem is not easily identifiable. Dealers must obtain authorization from Milton Cat, and Milton Cat must follow Caterpillar's guidelines and approval before performing any repairs if the dealer is to be reimbursed pursuant to a warranty claim

Thus, the information sought by Document Request Number 8 is relevant within the scope of this litigation. While Trans-Spec does not want every one of the "millions of documents" between Caterpillar and Milton CAT, its request for documents concerning subsidies and money exchanges between both entities; contracts and agreements concerning Milton CAT's distribution of Caterpillar products; and, policies regarding approval for warranty claims on Caterpillar engines, is neither ambiguous nor irrelevant. Furthermore, on February 7, 2005,

- 14 -

Trans-Spec agreed in principle to enter into a confidentiality order prepared by Caterpillar. Although over a month has past, Caterpillar has taken no further action regarding the proposed order – another example of its dilatoriness in this case.

Accordingly, Trans-Spec moves the Court to order that Caterpillar fully respond to Document Request Number 8.

### G. Caterpillar's Inappropriate Privileges and Objections Should Be Stricken and Caterpillar Should Be Ordered to Amend Its Discovery Responses as Appropriate

Inexplicable objections pervade Caterpillar's discovery responses. For example, Trans-Spec fails to understand Caterpillar's objection to the definition contained in Paragraph 2 of the definitional section of its Interrogatories and Request for Production of Documents. This definition states that, "[t]he term 'concerning' means referring to, relating to, describing, evidencing, or constituting." Caterpillar declines Trans-Spec's request to revise its discovery responses so as to clarify the basis of its objection and accordingly, Trans-Spec moves this Court to strike the objection.

Similarly, Caterpillar's objections to Paragraphs 2, 3, and 4 of the Instructions in the Request for Production are unfounded. These instructions comply with the Federal Rules, case law interpreting them, and are required to ensure that Caterpillar discloses all responsive documents and account for those protected by privilege or transferred to parties beyond Caterpillar's control. Refusing to comply renders Caterpillar's discovery production hollow, as Trans-Spec will not otherwise be able to ascertain which documents and information Caterpillar has decided to withhold in this matter. Trans-Spec moves this Court to order that Caterpillar comply with Trans-Spec's instructions and amend its production so that both parties may have full and open discovery, subject to the enforcement of appropriate privileges, as mandated by the Rules.

Trans-Spec expects that Caterpillar will assert its attorney/client, work product, and Fed. R. Civ. P. 26(b)(3) privileges where appropriate. That does not, however, eliminate the necessity of Caterpillar's producing non-privileged, responsive documents where appropriate. Caterpillar cannot place defenses at issue and then claim that supporting documents are privileged or claim that the attorney/client privilege protects documents or physical evidence provided by Caterpillar to its attorney. Privileges are to be used appropriately, not as broad shields behind which a defendant may attempt to circumvent meaningful discovery, as Caterpillar does here. Accordingly, Trans-Spec moves this Court to order that Caterpillar amend its production as to Document Request Numbers 1, 2, 3, 4, 5, 6, 7, 8, 10, 11, 12, 14, 15, 16,  7, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, and 30 so as to properly assert its privileges in a tailored and appropriate manner and produce responsive documents not protected by privilege forthwith.

Trans-Spec also moves this Court to order that Caterpillar provide the appropriate privilege log regarding all answers to Interrogatories and responses to Document Requests pursuant to Fed. R. Civ. P. 26(b)(5) and Local Rule 33.1(E). In terms identical to Caterpillar's own request to Trans-Spec, Trans-Spec moves this Court to order Caterpillar to identify each and every document to which any such claim of privilege is made, the date the document was created, and provide sufficient identification of author(s), the format (handwritten, typed, etc.), the number of pages, sufficient identification of each of the addressees, sufficient identification of the distribution of copies of the document, sufficient identification of each person who has possessed a copy of the document or reviewed it, and sufficient information regarding the content of the document so as to allow for Trans-Spec to assess the basis for the claim of protection.

Caterpillar's objection that Document Request Numbers 5, 7, 8, 11, 14, 15, 16, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30 do not specify with adequate particularity any category

of documents to be produced is unfounded. Guidance on this issue is provided in Number 4 of the Definitions of the Request for Production, which are generally applicable to all of the Document Requests. Caterpillar cannot openly disregard this provision, as it does, and then object on the grounds that an appropriate definition is missing. Trans-Spec moves this Court to strike this objection where it is raised and order Caterpillar to make all necessary amendments to its production of documents.

**H.     Caterpillar Should Be Sanctioned for Showing Extreme Dilatoriness and Bad Faith In Responding To Trans-Spec's Discovery Requests**

Throughout its responses, Caterpillar has shown bad faith in responding to Trans-Spec's Interrogatories and Request for Production. In some instances, it simply refuses to examine its files to produce easily obtainable documents in its possession, custody, or control. Amazingly, Caterpillar's counsel has refused to use Caterpillar's database, which allows it to input a specific engine's serial number and review its entire history in detail or enter an appropriate search term to generate all service claims concerning a particular part for a specific engine model. For example, a Caterpillar employee can search for and print all service claims concerning C-12 engine flywheel housings simply by inputting the appropriate search terms. Perceiving the devastating effect this would have on its defense, however, Caterpillar has opted instead to misreport its capabilities and deny the existence of a database that Trans-Spec knows to exist. *See* Caterpillar's Response to Document Request Numbers 2 and 4.

Bafflingly, Caterpillar did not even answer Interrogatory Number 20, a simple and unambiguous inquiry requesting that the Defendant "[s]et forth comprehensively and in detail the history of Caterpillar's business relationship with Trans-Spec from 1990 to the present, including but not limited to any meetings or conversation between any officer, director, employee, representative or agent of Caterpillar and Trans-Spec, any prior purchases of any Caterpilar

17 -

product by Trans-Spec," as well as the Howard visit and the Lind visit. Rather than attempt even a partial answer, Caterpillar merely offered that it was "unable" to do so and reserved the right to supplement. Dilatoriness in answering an interrogatory is different from being "unable" to do so.

Similarly, Caterpillar inappropriately treats Document Request Number 10 as an interrogatory; it is not. We ask that this Court enforce Trans-Spec's request for all documents concerning the cost of flywheel housings for Caterpillar's C-12 engine from its inception to the present. Caterpillar's claim that it cannot do so for fear that Trans-Spec will indiscriminately use or disclose this information is disingenuous in light of the proposed confidentiality order discussed above at pages 14-15. Trans-Spec further notes that the only reason this confidentiality order has not been submitted to this Court is because Caterpillar has yet to file it.

Moreover, in several responses, Caterpillar contradicts its own Answer. For example, Caterpillar pleads as its Third Affirmative Defense that Trans-Spec "is barred from recovering damages for breach of implied warranties that were part of a valid disclaimer by Caterpillar." This contradicts Caterpillar's response to Document Request Number 16. Caterpillar's Fourth Affirmative Defense states that "[t]he plaintiff's breach of warranty claims are barred because Caterpillar disclaimed all warranties, express or implied." Now, however, Caterpillar responds to Document Request Number 17 that it "does not contend that it disclaimed all express warranties with respect to the engines and to Interrogatory 8 that "Caterpillar does not claim that it disclaimed all warranties, express or implied." Trans-Spec asked Caterpillar to either clarify the responses or unconditionally withdraw the corresponding Affirmative Defense. Caterpillar, however, has failed to even redress the inconsistencies in their pleadings.[4]

---

[4] Furthermore, Caterpillar's argument that it does not have to respond to Document Request Number 16 because it would include documents regarding the undisputed fact that Trans-Spec acquired the trucks for business rather than personal use is irrelevant. That some documents may address an undisputed point does not absolve the producing party of its responsibility to produce documents responsive to the overall request.

Caterpillar knew that its answers to Interrogatory Numbers 13 and 14 were erroneous due to Trans-Spec's own responses to Caterpillar's Interrogatory Numbers 8 and 9, served two weeks earlier. Caterpillar has the relevant truck specifications as well as detailed information as to the uses to which Trans-Spec puts its trucks both through Trans-Spec's discovery responses as well as Caterpillar's extensive and long-standing knowledge about Trans-Spec's business operations. Caterpillar further knows about Trans-Spec's efforts to both rent trucks for temporary use and to trade in the defective trucks pursuant to Trans-Spec's answers to Caterpillar's Interrogatory Numbers 8 and 9. When asked to amend or clarify its response to provide a factual basis for its unfounded and mistaken understanding that Trans-Spec made no effort to resell the trucks (it did), however, Caterpillar summarily refused to do so.

Accordingly, Trans-Spec moves this Court to order that Caterpillar fully and completely respond to Document Request Numbers 2, 4 and 10 and Interrogatory Number 20; clarify its responses to Document Request Numbers 16 and 17 and Interrogatory 8 or withdraw the corresponding affirmative defenses; and amend and clarify its responses to Interrogatory Numbers 13 and 14.

## III.    CONCLUSION

Wherefore, Trans-Spec respectfully requests that this Court issue an Order pursuant to Fed. R. Civ. P. 37:

1)    Compelling Caterpillar to respond to all portions of Trans-Specs First Set of Interrogatories and First Request for Production of Documents as described more fully above;

2)    Awarding Trans-Spec all reasonable costs and attorney's fees pursuant to Fed. R. Civ. P. 37(a)(4) associated with Trans-Spec's having to bring this motion; and,

3)    Granting such other relief as this Court deems appropriate.

Respectfully submitted,

TRANS-SPEC TRUCK SERVICE, INC.
d/b/a TRUCK SERVICE

By its Attorneys,

Nancy M. Reimer, Esq., BBO#555373
Christian G. Samito, Esq., BBO#639825
Donovan Hatem, LLP
Two Seaport Lane
Boston, MA 02210
(617) 406-4500

Date: March 15, 2005

- 20

## LOCAL RULE 7.1 CERTIFICATE OF CONSULTATION

Counsel for Trans-Spec hereby certifies that he has conferred with defendant's counsel and attempted in good faith to resolve or narrow the issues presented in this *MOTION OF PLAINTIFF, TRANS-SPEC TRUCK SERVICE, INC., d/b/a TRUCK SERVICE, TO COMPEL ANSWERS TO ITS FIRST SET OF INTERROGATORIES AND FIRST REQUEST FOR PRODUCTION OF DOCUMENTS PROPOUNDED TO DEFENDANT CATERPILLAR INC.*

Christian G. Samito
Counsel for Trans-Spec Truck Service, Inc.

## REQUEST FOR ORAL ARGUMENT

If the Court deems it necessary, Trans-Spec requests oral argument on its *MOTION OF PLAINTIFF, TRANS-SPEC TRUCK SERVICE, INC., d/b/a TRUCK SERVICE, TO COMPEL ANSWERS TO ITS FIRST SET OF INTERROGATORIES AND FIRST REQUEST FOR PRODUCTION OF DOCUMENTS PROPOUNDED TO DEFENDANT CATERPILLAR INC.*

## CERTIFICATE OF SERVICE

I, Christian G. Samito, hereby certify that on this 15th day of March, 2005, I served a copy of the foregoing, by mail, postage prepaid to:

Richard P. Campbell, Esq.
Christopher Howe, Esq.
Campbell Campbell Edwards & Conroy
One Constitution Plaza, 3rd Floor
Boston, MA  02129

Christian G. Samito, Esq.

00899550

- 21 -

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11836-RCL

```
                                    )
TRANS-SPEC TRUCK SERVICE, INC. )
d/b/a TRUCK SERVICE,                )
        Plaintiff                   )
                                    )
vs.                                 )
                                    )
CATERPILLAR INC.                    )
        Defendant                   )
                                    )
```

**MOTION OF PLAINTIFF, TRANS-SPEC TRUCK SERVICE, INC., d/b/a TRUCK
SERVICE, TO COMPEL ANSWERS TO ITS FIRST SET OF INTERROGATORIES
AND FIRST REQUEST FOR PRODUCTION OF DOCUMENTS PROPOUNDED TO
DEFENDANT CATERPILLAR INC.**

**PURSUANT TO INSTRUCTIONS FROM THE CLERK'S OFFICE, EXHIBITS A-D ARE
BEING FILED WITH THE COURT – ONLY THE MOTION IS BEING FILED
ELECTRONICALLY**

Respectfully submitted,

TRANS-SPEC TRUCK SERVICE, INC.
d/b/a TRUCK SERVICE

By its Attorneys,

Nancy M. Reimer, Esq., BBO#555373
Christian G. Samito, Esq., BBO#639825
Donovan Hatem, LLP
Two Seaport Lane
Boston, MA 02210
(617) 406-4500

March 15, 2005

- 22 -