UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
TRANS-SPEC TRUCK SERVICE, INC.          )
D/B/A TRUCK SERVICE                     )
                                        )
                Plaintiff,              )
                                        )   C.A. NO.:  04-11836-RCL
v.                                      )
                                        )
CATERPILLAR, INC.                       )
                                        )
                Defendant.              )
_____)

MEMORANDUM IN SUPPORT OF CATERPILLAR INC.'S MOTION TO COMPEL
FURTHER ANSWERS TO INTERROGATORIES

The plaintiff, Trans-Spec Truck Service, Inc. ("Trans-Spec"), bought a fleet of twenty-two trucks from Sterling Truck Corporation for use in its business.  Sterling installed Caterpillar C-12 diesel engines in the trucks.  Trans-Spec took delivery of the trucks in December 1999 and January 2000.  As is customary in situations like this, Caterpillar provided an express written warranty with each of the truck engines running in favor of the first user of the engine.[1]  Its warranty, of which a copy is attached to this memorandum under Tab A, was for 60 months or 500,000 miles, whichever event occurred first.  The warranty, designated by Caterpillar either as SELF5271 or SELF5302 depending on the date of delivery of the particular engine, contained the following language (in bold-faced type, larger in size than the general text of the warranty):

> **THIS WARRANTY IS EXPRESSLY IN LIEU OF ANY OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, EXCEPT CATERPILLAR EMISSION-RELATED COMPONENTS WARRANTIES FOR NEW ENGINES,**

---

[1] Presumably, Sterling also provided express warranties with the trucks it sold.  Trans-Spec, however, claims to have thrown out all of the Sterling warranties and, therefore, claims to be unable to provide Caterpillar with copies.  For this reason, Caterpillar does not yet know what Sterling warranties may have said of relevance to this lawsuit.

**WHERE APPLICABLE. REMEDIES UNDER THIS WARRANTY ARE LIMITED TO THE PROVISION OF MATERIAL AND SERVICES, AS SPECIFIED HEREIN. CATERPILLAR IS NOT RESPONSIBLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES.**

In addition to the standard Caterpillar engine warranty it received and whatever Sterling warranty it received, Trans-Spec also purchased what is known as an Extended Service Contract from Southworth-Milton, Inc., a Caterpillar dealer doing business in Massachusetts and elsewhere in New England.[2] The Extended Service Contract provided that Southworth would provide certain servicing on the trucks at Caterpillar's expense both during the period of Caterpillar's warranty and for a certain period thereafter. The Extended Service Contract, of which a copy is attached to this memorandum under Tab B, contains the following language:

**CATERPILLAR DISCLAIMS ANY EXPRESS OR IMPLIED WARRANTIES IN CONNECTION HEREWITH, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.**

**REMEDIES UNDER THIS SERVICE CONTRACT ARE LIMITED TO THE PROVISION OF MATERIALS AND LABOR AS SPECIFIED HEREIN.**

**CATERPILLAR IS NOT RESPONSIBLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES.**

Trans-Spec placed the trucks in service in its business promptly upon taking delivery of them and continues to use all of them in its business to this day. Documents produced by Trans-Spec disclose that Trans-Spec has put more than 300,000 miles on all of the trucks during the approximately five years it has had them and well over 400,000 on some of them. During the time Trans-Spec has had the trucks, their engines from time to time have required servicing. As one would expect in a fleet of twenty-two trucks, some have required servicing more often than

---

[2] Southworth was not involved in the sale either of the trucks or of the Caterpillar engines. The engines were purchased by Sterling directly from Caterpillar, installed by Sterling in the trucks it was building, the trucks were then sold by Sterling to its dealer, Minuteman Trucks, Inc., and Minuteman sold the trucks to Trans-Spec.

others. So far as Caterpillar can determine, every time any of the truck engines required servicing for problems covered either by the Caterpillar warranty or by the Extended Service Contract, the servicing was provided promptly in accordance with whichever of those documents controlled. Trans-Spec has, in any event, identified no instance in which a problem covered by the Caterpillar warranty or by the Extended Service Contract was not repaired in accordance with those documents.

A recurrent problem with some of the engines was fracture or loosening of the flywheel housing, a structure by means of which the engine is connected to the truck's transmission assembly. Some of the trucks have also had a recurrent problem with leaks around the gasket in the front cover/housing structure of the engine. When these problems have occurred and been reported to Caterpillar, they have been repaired at no cost to Trans-Spec either under the Caterpillar warranty or under the Extended Service Contract. This has been done notwithstanding the fact that these two problems in particular are not caused by defects in the Caterpillar engines: they are caused by Sterling's failure to install the engines properly in the trucks, subjecting them to excessive vibration and bending loads.[3] Caterpillar has done so because Trans-Spec is a long-time purchaser of Caterpillar products, has bought lots of them, and Caterpillar customarily tries to accommodate such customers under what is colloquially known as "policy" so long as the customer does not abuse the situation. Keeping good customers happy is, in Caterpillar's view, an effective marketing strategy.

---

[3] Caterpillar has sold tens of thousands of C-12 engines which have been installed in a variety of different manufacturers' trucks. Recurrent problems of the type alleged by Trans-Spec, however, have seemed to occur only in certain Sterling trucks. It is unknown to Caterpillar, as to which *see* footnote 1, why Trans-Spec has chosen to pursue litigation against Caterpillar rather than against Sterling (if indeed Trans-Spec has not pursued litigation against Sterling).

Trans-Spec, however, was not happy. Trans-Spec decided, after having used the trucks in its business for over four years and after having put hundreds of thousands of miles on each of them, that Caterpillar should buy it a brand new fleet of trucks at a cost of several million dollars. Trans-Spec also decided Caterpillar should pay it large sums of money to compensate for business it has allegedly lost because of alleged engine problems and for various other alleged damages.[4] Trans-Spec's claim is, notwithstanding the above-quoted language from Caterpillar's engine warranty and from the Extended Service Contract, ostensibly based on theories that Caterpillar has breached express warranties and implied warranties with respect to the C-12 engines.[5] See Plaintiff's Amended Complaint at ¶¶ 32-43.

## ARGUMENT

Caterpillar served interrogatories and Rule 34 requests on December 1, 2004 and Trans-Spec served responses on January 14, 2005. The initial responses were grossly inadequate in numerous respects. Counsel for the parties conferred about their inadequacies and Trans-Spec agreed to cure some of them voluntarily. With respect to the three interrogatories at issue in this motion, however, no agreement could be reached. In addition, it has now become apparent that Trans-Spec's agreement to produce its servicing and maintenance records relative to the twenty-

---

[4]    It does not appear from the Amended Complaint, however, that Trans-Spec seeks compensation for any amounts it has allegedly been required to pay for repair of defects covered either by the Caterpillar warranty or by the Extended Service Contract. As noted above, Caterpillar is unaware of any instance in which Trans-Spec has been required to pay for such repairs.

[5]    Trans-Spec also refers in its Amended Complaint to 15 U.S.C. § 2301 *et seq.*, which is the Magnusson-Moss Warranty Act (the "Act"). That claim, however, is frivolous as a matter of law because the Act applies only to consumer transactions and has nothing to do with commercial disputes like this one. Id. at § 2302. Presumably Trans-Spec will voluntarily dismiss its claim insofar as it is assertedly grounded on the Act without forcing Caterpillar to incur legal expense to address it. See, e.g., Essex Ins. Co. v. Blount, Inc., 72 F.Supp.2d 722 (E.D.Tex. 1999) (holding piece of heavy timber equipment that was designed almost exclusively for commercial use was not "consumer product" that would give rise to implied warranty under Magnuson-Moss Warranty Act); Walsh v. Ford Motor Credit Co., 449 N.Y.S.2d 556 (1982) (holding Act does not apply to property such as a tractor trailer which is normally used for commercial use of trucking).

two trucks for review by defense counsel at their usual place of keeping is unworkable because of the adverse conditions in which the records are kept and Trans-Spec's inability to make adequate copying facilities available.[6]

Interrogatory number 13, and Trans-Spec's "answer," read as follows:

INTERROGATORY NO. 13

Identify with specificity the documents containing express warranties you claim Caterpillar has breached.

TRANS-SPEC'S ANSWER

Trans-Spec refers Caterpillar to the documents it produced pursuant to Trans-Spec's Local Rule 26.2 and Fed. R Civ. P. 26(a)(1) Automatic Disclosures.

Trans-Spec has refused Caterpillar's request that it voluntarily amend this "answer" to identify *which* of the several hundred pages of documents constitute the express warranty or warranties it alleges Caterpillar breached. Trans-Spec's view, apparently, is that in a breach of express warranty case it is not required to identify the warranty on which it bases its claim.

Fed. R. Civ. P. 26(b)(1) provides, in pertinent part, that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the ... description ... of any ... documents." That is what this interrogatory seeks: description of documents constituting the express warranties Trans-Spec says Caterpillar has breached. Trans-Spec's tender of a mass of documents, the vast majority of which obviously do not constitute warranties, does not provide such a description. It is, instead, a transparent effort by Trans-Spec to conceal obviously relevant information rather than to disclose it.

---

[6] Trans-Spec initially claimed in its response to Caterpillar's Rule 34 request to have no servicing and maintenance records relative to the *trucks* except for records related to the *engines* that it had produced. That turned out to be factually incorrect: Trans-Spec has a large volume of such records stored at its place of business. Because Caterpillar believes Trans-Spec's problems with its engines are, in fact, caused by the truck manufacturer's defective design of the trucks themselves, information about the servicing and maintenance history of those trucks is germane to the case.

Fed. R. Civ. P. 33(d) does not relieve Trans-Spec from its obligation to describe the documents constituting the warranties it alleges were breached.  Rule 33(d) permits tender of documents in response to an interrogatory only when "the answer to [the] interrogatory may be derived or ascertained from" the records, Flour Mills of America, Inc. v. Pace, 75 F.R.D 676 (E.D.Okla. 1977) (broad statement that information sought by interrogatory was available from mass of documents and that documents were available for inspection was not sufficient response under Federal Rule of Civil Procedure); Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co., 105 F.R.D. 16 (S.D.N.Y. 1984) (same); Pascale v. G.D. Searle & Co., 90 F.R.D. 55 (D.R.I. 1981); Harlem River Consumers Co-op., Inc. v. Associated Grocers of Harlem, Inc., 64 F.R.D. 459 (S.D.N.Y. 1974) (same); Budget Rent-A-Car of Mo., Inc. v. Hertz Corp., 55 F.R.D. 354 (W.D.Mo. 1972) (same), when "the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served," Petroleum Ins. Agency, Inc. v. Hartford Acc. and Indem. Co., 111 F.R.D. 318 (D.Mass. 1983) (holding defendants were not entitled to answer interrogatories by specifying business records from which answers could be derived where it was not equally burdensome for parties to search records to come up with answers), and when the answering party provides "a specification [of records] in sufficient detail to permit the interrogating party to locate and identify, as readily as can the party served, the records from which the answer can be ascertained." Nestle Foods Corp. v. Aetna Cas. and Sur. Co., 135 F.R.D. 101 (D.N.J. 1990) (holding party may answer interrogatory by specifying records from which answers may be obtained and by making the records available for inspection, but records must be specified in sufficient detail to permit the discovering party to locate and identify records from which answer may be obtained); Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc., 707 F.Supp.

-6-

1429 (D.Del. 1989) (same); Sabel v. Mead Johnson and Co., 110 F.R.D. 553 (D.Mass. 1986) (same); Rainbow Pioneer No. 44-18-04A v. Hawaii-Nevada Inv. Corp., 711 F.2d 902 (9th Cir. 1983) (same); In re Master Key, 53 F.R.D. 87 (D.C.Conn. 1971) (same).  The whole point of this interrogatory is to obtain Trans-Spec's *identification* of the specific documents it contends constitute the warranties Caterpillar allegedly breached.  There is no way Caterpillar can ever, just by looking at a mass of disparate documents, obtain that information *from the documents themselves,* because the documents themselves cannot reveal what Trans-Spec claims their legal significance is.  Moreover, since Trans-Spec has *already determined* what express warranties it claims Caterpillar gave -- otherwise, how could it have asserted a breach of express warranty claim without violating Fed. R. Civ. P. 11? -- it could not possibly be the case that the burden of ascertaining the answer to this interrogatory would be the same for Caterpillar as for Trans-Spec.

Trans-Spec's attitude toward this interrogatory is egregious gamesplaying.  It typifies, Caterpillar believes, the nullity of Trans-Spec's whole claim.  The Court should order Trans-Spec to provide a further answer forthwith which either (a) describes with specificity the documents Trans-Spec claims contain express warranties Caterpillar has breached or (b) attaches copies of those specific documents and no others.

Interrogatories numbered 10 and 11, and Trans-Spec's responses, read as follows:

INTERROGATORY NO.10

Describe comprehensively and in detail the basis for your contention that Trans-Spec's purported claim to recover incidental and consequential damages, damages for loss of use, and costs of additional service employees [as to which see ¶42 of the amended complaint] is not barred by the exclusion of incidental and consequential damages contained in the written warranties Caterpillar gave with respect to the engines and in the extended service contract of which a copy is attached as Exhibit C to the amended complaint.

TRANS-SPEC'S ANSWER

Trans-Spec objects to this interrogatory as it poses a question of law.

INTERROGATORY NO.11

Describe comprehensively and in detail the basis for your contention that Trans-Spec's purported claim for alleged breaches of implied warranties are not barred by the disclaimers of all implied warranties contained in the written warranties Caterpillar gave with respect to the engines and in the extended service contract of which a copy is attached as Exhibit C to the amended complaint.

TRANS-SPEC'S ANSWER

Trans-Spec objects to this interrogatory as it poses a question of law.

Under Massachusetts law, disclaimers of implied warranties and limitations on the remedies that may be obtained under an express warranty are valid and enforceable in a non-consumer context so long as they are conspicuous. M.G.L. c. 106, § 2-316; Theos & Sons, Inc. v. Mack Trucks, Inc., 431 Mass. 736 (2000) (holding truck manufacturer properly disclaimed implied warranty where disclaimer was conspicuous and specifically referred to the implied warranty of merchantability); Transurface Carriers, Inc. v. Ford Motor Co., 738 F.2d 42 (1st Cir. 1984) (holding truck dealer's disclaimer of warranties in connection with sale of truck was effective); Marcil v. John Deere Indus. Equipment Co., 9 Mass.App.Ct. 625 (1980) (holding buyer of loader was bound by disclaimer included in purchase order absent indication that disclaimer was unconscionable). Disclaimers and limitations of remedies provisions are "conspicuous" if "a reasonable person ought to have noticed it". Hunt v. Perkins Machinery Co., 352 Mass. 535 (1967); see also Boston Helicopter Charter, Inc. v. Agusta Aviation Corp., 767 F.Supp. 363 (D. Mass. 1991) (holding, under Massachusetts law, factors to be considered in evaluating conspicuousness of disclaimer of warranty of merchantability and fitness for particular purpose are size of type, location of disclaimer clause, capitalization of relevant language and sophistication of contracting parties). Thus, unless some non-obvious circumstance exists to make an exception in this case to the ordinary governing legal principles,

Trans-Spec's breach of implied warranty claim is dismissable as a matter of law, its claims for consequential damages are dismissable as a matter of law, and the entire case may be dismissable as a matter of law if it turns out that Caterpillar has faithfully repaired all of the alleged engine problems at no expense to Trans-Spec. These interrogatories are designed to learn the facts constituting any such non-obvious circumstance that may exist. They are not asking for a legal treatise: the law on the subject of disclaimers and limitations of remedies clauses in commercial cases is clear. They are asking for a description of *facts and circumstances*, if any exist, that might keep the explicit language of Caterpillar's express warranty and the Extended Service Contract from having their usual effect.

WHEREFORE, Caterpillar respectfully requests that this Court order the Plaintiff to completely and fully answer Caterpillar's First Request for Interrogatories Nos. 10, 11 and 13 without objections and within ten (10) days of entry of this order.

## **RULE 37.1 CERTIFICATION**

I, Christopher R. Howe, counsel for the Defendant, Caterpillar Inc., hereby certify pursuant to Local Rule 37.1, that I conferred with plaintiff's counsel, Christian Samito and Nancy Reimer, on March 4, 2005 in a good faith effort to obtain the plaintiff's further discovery responses without Court action as evidenced in my motion and was unable to receive fullsome responses.

## **CERTIFICATE OF SERVICE**

I, Christopher R. Howe, attorney for the Defendant, Caterpillar Inc., hereby certify that on March 15, 2005, I served a true copy of the above document by causing a copy to be faxed and mailed, by first class mail, postage prepaid, to all parties of record.

s/ Christopher R. Howe

Christopher Howe