UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11836-RCL

|  |  |
|---|---|
| TRANS-SPEC TRUCK SERVICE, INC. d/b/a TRUCK SERVICE,<br>    Plaintiff<br><br>vs.<br><br>CATERPILLAR INC.<br>    Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**OPPOSITION TO DEFENDANT CATERPILLAR'S MOTION TO COMPEL
PLAINTIFF TRANS-SPEC'S FURTHER RESPONSES TO INTERROGATORIES**

Pursuant to Fed. R. Civ. P. 37(a) and Local Rule 37.1, Plaintiff Trans-Spec Truck Service, Inc., d/b/a Truck Service ("Trans-Spec"), hereby opposes *Defendant Caterpillar's Motion to Compel Plaintiff Trans-Spec's Further Responses to Interrogatories* ("Motion to Compel"). Trans-Spec also moves for attorney's fees and costs and such other relief as the Court deems appropriate in its having to oppose this motion.

**I.  CATERPILLAR HAS SUBMITTED AN ERRONEOUS LOCAL RULE 37.1 CERTIFICATION**

Inexplicably, Caterpillar Inc. ("Caterpillar"), submitted an erroneous Local Rule 37.1 Certification to the Court. Caterpillar mistakenly claims that Attorney Christopher R. Howe conferred with Attorneys Christian G. Samito ("Attorney Samito"), and Nancy M. Reimer ("Attorney Reimer"), on March 4, 2005 about the issues in the Motion to Compel. The applicable conference actually took place on January 28, 2005 and involved only Attorney John A. K. Grunert ("Attorney Grunert"), for Caterpillar and Attorneys Samito and Reimer for Trans-Spec.

- 1 -

Later that same day, Trans-Spec drafted and sent a confirmatory letter to Caterpillar to memorialize the January 28, 2005 conference. (See Letter of Attorney Samito to Attorney Grunert dated January 28, 2005, attached as Exhibit A). As to Interrogatory Numbers 10 and 11, Trans-Spec provisionally maintained its initial objection but stated that it would review its responses to both interrogatories. Trans-Spec also informed that, "[i]t is likely that we will be able to amend the answers so that Caterpillar will not need to consider a motion to compel." Trans-Spec reiterated that as to Interrogatory Number 13, it responded adequately in accordance with the requirements of Fed. R. Civ. P. 33(d) through records produced pursuant to Trans-Spec's Local Rule 26.2 and Fed. R. Civ. P. 26(a)(1) Automatic Disclosures. Elsewhere, however, Trans-Spec addressed an inadvertent copying error in which only one side of certain responsive two-sided documents were produced. Trans-Spec agreed to send double-sided, complete copies of the relevant documents to Caterpillar and did so on March 24, 2005. (See Letter of Attorney Samito to Attorney Howe dated March 24, 2005, attached as Exhibit B).

On March 4, 2005, Attorney Howe sent Attorney Samito a letter which raised Caterpillar's objections to Trans-Spec's responses to Interrogatory Numbers 10, 11, and 13. During a subsequent March 4, 2005 telephone conference, however, which also involved Richard P. Campbell for Caterpillar, neither party had the opportunity to address Trans-Spec's responses to Interrogatory Numbers 10, 11, and 13. Instead, counsel for both parties discussed Trans-Spec's objections to Caterpillar's responses to its discovery requests. Because Caterpillar's counsel had other commitments, this conversation lasted only twenty minutes.

Subsequently, on March 10, 2005, Attorney Samito wrote another letter to Attorney Howe, attached as Exhibit C. Attorney Samito informed that, "once Mr. Howard returns a signed copy of Trans-Spec's amended answers to interrogatories to us, I will send to you that

- 2 -

document as well as Trans-Spec's amended responses to document requests." Served on Caterpillar on March 21, 2005, this document, attached as Exhibit D, contains substantially amended responses such that they render Caterpillar's Motion to Compel regarding Interrogatory Numbers 10 and 11 moot. Thus, Caterpillar filed this Motion to Compel rather than wait to receive amended responses it knew were forthcoming.

## II.    CATERPILLAR'S FACTUAL INTRODUCTION CONTAINS BOTH FACTUAL ERRORS AND RELEVANT ADMISSIONS

As described more fully below, Caterpillar's factual introduction to its Motion to Compel contains both factual errors as well as misrepresentations. Shockingly, however, Caterpillar also makes a number of admissions that contradict its own responses to Trans-Spec's discovery requests. Thus far, Caterpillar has shirked its duty in responding to valid discovery requests duly served in the ongoing litigation, and its responses are marked by pervasive vagueness, inappropriate and unsupported objections, dilatoriness, refusal to look for documents easily obtainable from Caterpillar's files, and, in some cases, unacceptable duplicity. Caterpillar's behavior in responding to Trans-Spec's discovery requests directly mirrors its action when Trans-Spec repeatedly asked for it to honor its warranties and representations and permanently fix the defective engines giving rise to this lawsuit – as Caterpillar acted then, it acts to this day.

Contrary to its response when Trans-Spec attempted discovery into the relationship between Caterpillar and Milton CAT (formerly known as Southworth-Milton, Inc. and collectively referred to herein as "Milton CAT"), Caterpillar here admits that Milton CAT is its agent. While refusing to turn over documents or fully answer interrogatories regarding the histories and maintenance records of the engines at issue and pleading ignorance about its long-standing business relationship with Trans-Spec pursuant to Trans-Spec's discovery requests, Caterpillar here cites the relevance of information regarding the histories of the trucks at issue

- 3 -

and claims Trans-Spec as a long-time purchaser of Caterpillar products. Caterpillar's positions paradoxically clash as it tries to shirk its discovery obligations in one instance while also filing this Motion to Compel in another.

### A. Caterpillar's Own Pleadings Reveal That Milton CAT Is Caterpillar's Agent

Caterpillar repeatedly contends as a defense that Milton CAT is an independent company and that it is in no way Caterpillar's agent. Caterpillar also sought to avoid Trans-Spec's discovery into the relationship between the two entities.[1]

This portion of Caterpillar's defense contradicts information known by Trans-Spec to the contrary.[2] Furthermore, on page 2 of its Motion to Compel, Caterpillar confirms Trans-Spec's belief that Milton CAT is Caterpillar's agent by claiming that

> Trans-Spec also purchased what is known as an Extended Service Contract from Southworth-Milton, Inc., a Caterpillar dealer doing business in Massachusetts and elsewhere in New England. (footnote omitted) The Extended Service Contract provided that Southworth would provide certain servicing on the trucks at Caterpillar's expense both during the period of Caterpillar's warranty and for a certain period thereafter.[3]

---

[1] See *Motion Of Plaintiff, Trans-Spec Truck Service, Inc., D/B/A Truck Service, To Compel Answers To Its First Set Of Interrogatories And First Request For Production Of Documents Propounded To Defendant Caterpillar Inc.*

[2] Other misstatements and contradictions pervade Caterpillar's Motion to Compel. For example, as a defense for its wrongdoing giving rise to this case, Caterpillar repeatedly pleads ignorance about Trans-Spec's business operations and truck applications and refuses to fully answer interrogatories or produce documents regarding this integral issue. In page 3 of its Motion to Compel, however, Caterpillar now describes Trans-Spec as a "long-time purchaser of Caterpillar products," informs that Trans-Spec "has bought lots of them," and implies that it considers Trans-Spec one of its "good customers[.]" Sometimes Caterpillar claims to have barely heard of Trans-Spec; other times, Caterpillar gushes about Trans-Spec's long-time, but apparently misguided, loyalty to it. In Footnote 4 on page 4 of the Motion to Compel, Caterpillar bafflingly asserts that Trans-Spec does not seek compensation for any amounts it has been required to pay for the repair of defects covered either by the original Caterpillar warranty or the Extended Service Contract. A closer reading of the Complaint than Caterpillar has performed indicates that Trans-Spec seeks recovery for all the damages it has suffered as a result of Caterpillar's defective engines.

[3] Harry Calderbank ("Calderbank"), represented in or around March 1999 that if Trans-Spec purchased Caterpillar C-12 engines, Caterpillar would provide extended 500,000 mile serious nucleus warranty coverage for those engines at no charge. The inservice date extended warranty agreement sent to Trans-Spec by Calderbank after Trans-Spec's purchase of the engines confirms this warranty. Calderbank routinely offered this warranty coverage to Trans-Spec for every purchase Trans-Spec made. Calderbank worked for Milton-CAT from at least the early 1990s until Trans-Spec's purchase of the C-12 engines and he represented that he was a Caterpillar representative. Calderbank received commissions from Caterpillar for his sales of Caterpillar engines.

Trans-Spec asks how Milton CAT – if it is an independent company, as Caterpillar claims – had the authority to sell Trans-Spec an Extended Service Contract binding Caterpillar to pay for servicing on Trans-Spec's trucks during the period of Caterpillar's warranty and for a certain period thereafter? The answer is that Caterpillar has thus far misrepresented its relationship with Milton CAT. Its own Motion to Compel confirms the existence of an agency relationship between the two.

### B. Caterpillar erroneously contends that Trans-Spec's recurrent engine difficulties were caused by Sterling's failure to install the engines properly

After claiming, on page 3 of the Motion to Compel, that Caterpillar has adequately serviced Trans-Spec's trucks – a statement which Trans-Spec vehemently denies – Caterpillar contends that an alleged failure of Sterling Truck Corporation ("Sterling") to install the engines properly caused Trans-Spec's perennial and unresolved engine difficulties. While Caterpillar has yet to provide a scintilla of documentation to support its oft-repeated defense, it is noteworthy that Caterpillar's own employees suggest that design defects caused the engine problems, i.e. statements made by Al Cardoza and Charlie Bertram during a dyno test of one of the trucks at 9:00 a.m. on July 6, 2004 at the Milton CAT facility in Milford, Massachusetts. (See Amended Answer to Interrogatory Number 6, attached as Exhibit D.)[4]

### C. Caterpillar attempts to miscast Trans-Spec's inability to provide copies of the Sterling Warranties

In Footnote 1 on page 2, Caterpillar attempts to miscast Trans-Spec's inability to provide copies of any warranties provided by Sterling. As noted in the January 28, 2005 letter attached

---

[4] Additionally, as a practical matter, the difference between the C-12 engine and other similar Caterpillar models is its increased horsepower. Thus, the front structures have repeatedly cracked and leaked almost immediately after Trans-Spec's purchase of the trucks; the valves on the engines have consistently broken, and no cure has been found for the recurring flywheel housing failures that have afflicted the engines. (See Amended Answer to Interrogatory Number 6, attached as Exhibit D.)

as Exhibit A, Trans-Spec no longer has the Sterling warranties in its possession, custody, or control because Trans-Spec discarded these warranties when they expired. Sterling warrantied only the cab and mainframe of the trucks for a period of two years after delivery. Thus, Trans-Spec objects to Caterpillar's inappropriate attempts to imply wrongdoing by the fact that Trans-Spec did not keep certain irrelevant documents in the ordinary course of business.

> **D.    Caterpillar contends that Trans-Spec's agreement to produce service and maintenance records relative to the trucks at issue at their usual place of keeping is unworkable**

On pages 4-5 of its Motion to Compel, Caterpillar erroneously contends that Trans-Spec's agreement to produce service and maintenance records relative to the trucks at issue at their usual place of keeping is unworkable because of the adverse conditions in which the records are kept and Trans-Spec's inability to make adequate copying facilities available.

In Footnote 6 on page 5, Caterpillar first tries to miscast an error by Trans-Spec's counsel in reading one of Caterpillar's document requests. Trans-Spec's counsel originally read the request as much narrower than Caterpillar intended it. Immediately after Caterpillar clarified its position, Trans-Spec's counsel agreed to produce all service and maintenance records relative to the trucks at issue. Furthermore, Trans-Spec agrees with Caterpillar that "information about the servicing and maintenance history of those trucks is germane to the case." Unfortunately, Caterpillar has also forced Trans-Spec to file its own motion to compel to obtain this information from Caterpillar.[5]

The parties arranged for Caterpillar to inspect the service and maintenance records for the trucks onsite at Trans-Spec's place of business. Pursuant to Department of Transportation guidelines, these documents must remain onsite and cannot be removed. Trans-Spec maintains

---

[5] See *Motion Of Plaintiff, Trans-Spec Truck Service, Inc., D/B/A Truck Service, To Compel Answers To Its First Set Of Interrogatories And First Request For Production Of Documents Propounded To Defendant Caterpillar Inc.*

its more recent records in an onsite office, while older records are stored in an onsite file trailer equipped with a desk.

Trans-Spec agreed that Caterpillar could have as much time to inspect the documents as it needed. On February 15, 2005, Caterpillar began its review. On February 16, 2005, Caterpillar suddenly stopped. Apparently, Caterpillar objected to having to review the documents in the file trailer – as they are kept in the ordinary course of Trans-Spec's business and as they are presented to government officials when they require access to the trucks' records – because Trans-Spec did not provide heat or electricity to the trailer. Caterpillar could have, but declined, to rent a generator at this time. Caterpillar had knowledge of the conditions of the trailer before February 15, 2005.

On March 4, 2005, Trans-Spec offered to bring the file trailer into its garage during Caterpillar's review so that the work space would be heated. Trans-Spec also offered to run an extension cord into the trailer so that Caterpillar could put a light inside as well as operate the scanning equipment it used during its document review. (See Letter from Attorney Samito to Attorney Howe dated March 4, 2005, attached as Exhibit E.)

Caterpillar rejected that offer on March 10, 2005. (See Letter from Attorney Howe to Attorney Samito dated March 10, 2005, attached as Exhibit F.) Now, Caterpillar is trying to impose further demands in lieu of simply finishing its document review. Caterpillar stated that it would perform the inspection if the trailer were inside Trans-Spec's garage but only if Trans-Spec ceased performing repairs during the time of the document review. (See Exhibit F.) As if Caterpillar's defective engines had not done enough to injure Trans-Spec, Caterpillar expected Trans-Spec to stop performing repairs that are necessary so that it can maintain business operations.

On March 10, 2005, Trans-Spec again offered several possibilities to Caterpillar for its document review. Caterpillar could review the documents while the file trailer was in Trans-Spec's garage or welding bay at a time when no repair work was being performed. As this availability is only for a brief period in the middle of the night, however, Trans-Spec also offered that Caterpillar could agree to pay for repair work done on Trans-Spec trucks during the time Caterpillar wanted to use the garage. Trans-Spec also reiterated that Caterpillar could rent a generator to power a heat source, light source, and its electrical equipment and review the documents in the file trailer in its present location. (See Letter from Attorney Samito to Attorney Howe dated March 10, 2005, attached as Exhibit C.) With the exception of its comments in the Motion to Compel, Caterpillar has not yet responded to Trans-Spec's latest proposals.

It is ironic, in light of the shocking paucity of Caterpillar's own discovery responses, that Caterpillar continues to ask for further considerations beyond that offered on March 4, 2005. Unlike Caterpillar, Trans-Spec has nothing to hide in this matter. Whereas Caterpillar has shirked its duty in responding to valid discovery requests duly served in an ongoing litigation, Trans-Spec has opened its files. Whereas Caterpillar's responses are marked by pervasive vagueness, inappropriate and unsupported objections, dilatoriness, refusal to look for documents easily obtainable from Caterpillar's files, and, in some cases, unacceptable duplicity, Trans-Spec has fully cooperated with Caterpillar's discovery efforts. Furthermore, besides the fact that Trans-Spec is making every effort to accommodate Caterpillar's discovery needs, to the point where it will sacrifice its normal business operations, Trans-Spec notes that when the Department of Transportation needs to review any of Trans-Spec's documents, it sends its inspectors to Trans-Spec's location and has not complained about the conditions in the file trailer.

Caterpillar also declines to mention in its Motion to Compel the photographs it took during the earlier onsite document inspection. Trans-Spec gave Caterpillar permission to photograph the file trailer and its contents during the recent onsite inspection of documents, not other parts of Trans-Spec's facility. Caterpillar, however, took photographs other then the file trailer and its contents. This was both unauthorized and inappropriate because Caterpillar's visit was not a Fed. R. Civ. P. 34 inspection. Despite Trans-Spec's requests on March 4 and 10, 2005, see Exhibits B and D, that Caterpillar send it a copy of all the pictures Caterpillar took pursuant to the unofficial and unsanctioned technique Caterpillar chose to implement, Caterpillar has failed to respond.

### III.    TRANS-SPEC ADEQUATELY ANSWERED INTERROGATORY NUMBER 13

Interrogatory Number 13 and Trans-Spec's response are as follows:

> **INTERROGATORY NO. 13**
>
> Identify with specificity the documents containing express warranties you claim Caterpillar has breached.
>
> **ANSWER NO. 13**
>
> Pursuant to Fed. R. Civ. P. 33(d), Trans-Spec refers Caterpillar to the documents it produced pursuant to Trans-Spec's Local Rule 26.2 and Fed. R Civ. P. 26(a)(1) Automatic Disclosures.

Trans-Spec tendered responsive documents pursuant to its automatic disclosures. The only issue that remains is that Trans-Spec inadvertently copied only one side of certain responsive double-sided documents. Trans-Spec has already assured Caterpillar that it will rectify the situation and produce new copies. Caterpillar purports to have copies of certain warranty documents, see Exhibits A and B to its Motion to Compel.[6] As to any other relevant

---

[6] One of the warranties for which Trans-Spec inadvertently copied only one side is the executed version of Exhibit B. Trans-Spec plans to produce a new, complete copy to Caterpillar.

documents that may exist in Trans-Spec's files, Caterpillar had the opportunity to review these files as they are kept in the ordinary course of business. Caterpillar declined to do so. It is just as burdensome for Caterpillar to review these files and obtain the information it seeks as for Trans-Spec to do so. Having said that, Trans-Spec represents that, with the exception of those documents already in Caterpillar's possession or submitted by Trans-Spec to Caterpillar in correcting the earlier production error on March 24, 2005, see Exhibit B, Trans-Spec has no other responsive documents in its possession, custody, or control.

## IV. TRANS-SPEC ADEQUATELY ANSWERED INTERROGATORY NUMBERS 10 AND 11

Interrogatory Numbers 10 and 11 and Trans-Spec's respective amended responses are as follows:

> **INTERROGATORY NO. 10**
>
> Describe comprehensively and in detail the basis for your contention that Trans-Spec' s purported claim to recover incidental and consequential damages, damages for loss of use, and costs of additional service employees [as to which see ¶42 of the amended complaint] is not barred by the exclusion of incidental and consequential damages contained in the written warranties Caterpillar gave with respect to the engines and in the extended service contract of which a copy is attached as Exhibit C to the amended complaint.
>
> **ANSWER NO. 10**
>
> Trans-Spec objects to this interrogatory as it poses a question of law. Without waiving and subject to this objection, Trans-Spec states that on multiple occasions, Caterpillar orally waived any such exclusion, including during meetings with Trans-Spec on June 9, 2004 and in or around August 2004.
>
> On June 9, 2004, Cardoza orally extended Caterpillar's warranty on the Trans-Spec C-12 engines until June 21, 2005. Guidotti also attended this meeting, which was held at Milton-CAT's facility in Milford, Massachusetts; was present at Cardoza's representation; and, agreed with it. Guidotti further represented that the problems

with the C-12 engines were not Trans-Spec's fault and that Caterpillar would make Trans-Spec whole.

In August 2004, Schoening again orally extended Caterpillar's warranty on the Trans-Spec C-12 engines until June 21, 2005 at a meeting with Howard and Barton held at Milton-CAT's facility in Milford, Massachusetts. Schoening reiterated Guidotti's representation at the June 9, 2004 meeting that the problems with the C-12 engines were not Trans-Spec's fault and that Caterpillar would make Trans-Spec whole. Cardoza attended this meeting.

Additionally, Calderbank and Cardoza have made "off the record" representations to Trans-Spec that Trans-Spec would be made whole for the damage it has suffered as a result of the defective C-12 engines.

**INTERROGATORY NO. 11**

Describe comprehensively and in detail the basis for your contention that Trans-Spec's purported claim for alleged breaches of implied warranties are not barred by the disclaimers of all implied warranties contained in the written warranties Caterpillar gave with respect to the engines and in the extended service contract of which a copy is attached as Exhibit C to the amended complaint.

**ANSWER NO. 11**

Trans-Spec objects to this interrogatory as it poses a question of law. Without waiving and subject to this objection, Trans-Spec states that on multiple occasions, Caterpillar orally waived any such exclusion, including during meetings with Trans-Spec on June 9, 2004 and in or around August 2004.

On June 9, 2004, Cardoza orally extended Caterpillar's warranty on the Trans-Spec C-12 engines until June 21, 2005. Guidotti also attended this meeting, which was held at Milton-CAT's facility in Milford, Massachusetts; was present at Cardoza's representation; and, agreed with it. Guidotti further represented that the problems with the C-12 engines were not Trans-Spec's fault and that Caterpillar would make Trans-Spec whole.

In August 2004, Schoening again orally extended Caterpillar's warranty on the Trans-Spec C-12 engines until June 21, 2005 at a meeting with Howard and Barton held at Milton-CAT's facility in Milford, Massachusetts. Schoening reiterated Guidotti's

> representation at the June 9, 2004 meeting that the problems with the C-12 engines were not Trans-Spec's fault and that Caterpillar would make Trans-Spec whole. Cardoza attended this meeting.
>
> Additionally, Calderbank and Cardoza have made "off the record" representations to Trans-Spec that Trans-Spec would be made whole for the damage it has suffered as a result of the defective C-12 engines.

Pursuant to Trans-Spec's letters of January 28 and March 10, 2005, see Exhibits A and B, Caterpillar knew that Trans-Spec was amending its answers to these interrogatories. Instead of waiting for these amended answers, however – answers which render Caterpillar's Motion to Compel partially moot – Caterpillar filed this Motion to Compel in the hope of distracting the Court's attention from its own dilatory and duplicitous discovery responses. Because its amended responses, attached as Exhibit C, render this Motion to Compel as moot as to Interrogatory Numbers 10 and 11, Trans-Spec declines to further misuse the Court's time, as Caterpillar has seen fit to do, by further addressing this issue.

WHEREFORE, Trans-Spec respectfully requests that this Court deny Caterpillar's Motion to compel and award Trans-Spec attorneys fees and costs and such other relief as the Court deems appropriate in its having to oppose this motion.

Respectfully submitted,

TRANS-SPEC TRUCK SERVICE, INC.
d/b/a TRUCK SERVICE

By its Attorneys,

/s/ Christian G. Samito
Nancy M. Reimer, Esq., BBO#555373
Christian G. Samito, Esq., BBO#639825
Donovan Hatem LLP
Two Seaport Lane
Boston, MA 02210
(617) 406-4500

Date: March 25, 2005

- 13 -

## CERTIFICATE OF SERVICE

I, Christian G. Samito, hereby certify that on this 25th day of March, 2005, I served a copy of the foregoing, by mail, postage prepaid to:

Richard P. Campbell, Esq.
Christopher Howe, Esq.
Campbell Campbell Edwards & Conroy
One Constitution Plaza, 3rd Floor
Boston, MA  02129

        /s/ Christian G. Samito
        Christian G. Samito, Esq.

00903849