UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TRANS-SPEC TRUCK SERVICE INC., D/B/A TRUCK SERVICE )<br><br>Plaintiff, )<br>v. )<br><br>CATERPILLAR INC. )<br><br>Defendant. ) | CIVIL ACTION NO.:04-11836RCL |

**MOTION TO AMEND COMPLAINT
AND LOCAL RULE 7.1 CERTIFICATE
AND REQUEST FOR ORAL ARGUMENT**

Pursuant to Fed. R. Civ. P. 15 (a), the plaintiff, Trans-Spec Truck Service Inc., d/b/a Truck Service ("Trans-Spec") respectfully moves this Court to allow this Motion to Amend Complaint to add a count of negligence against the defendant, Caterpillar Inc. ("Caterpillar"), in this case. Leave to amend a complaint "shall be freely given when justice so requires," Fed. R. Civ. P. 15 (a), and is appropriate here.

**I.   BACKGROUND**

This case arises from defective C-12 engines manufactured by Caterpillar. In or about December 1999 and January 2000, Trans-Spec accepted delivery of twenty-two heavy-duty, custom-built trucks that it had purchased for use in its business operations. Each of the trucks included a C-12 model engine designed, manufactured, and completely assembled by Caterpillar and installed in the trucks by their fabricator, Sterling Truck Corporation ("Sterling").

By 2001, serious problems with the engines' crankshaft seals, flywheel housings, and cylinder block castings began to manifest themselves. Since that time, on average, six Trans-Spec

trucks have been down at any given time due to Caterpillar engine-related issues and occasionally, even more trucks are out of service. Trans-Spec's business requires that it operate all of its trucks six days a week. Furthermore, Trans-Spec cannot rent trucks of the necessary specification for temporary use due to its business as a fuel hauler.

Trans-Spec believes that the engine problems are caused by design defects, specifically a propensity to crack due to the added torque generated by the C-12 engine's increased horsepower. This results in serious and chronic problems with the engine's flywheel housings, front structures, valves, crankshaft seals, and cylinder block castings. This contention is based on statements made by Al Cardoza ("Cardoza") and Charlie Bertram during the dyno test of one of the trucks at 9:00 a.m. on July 6, 2004 at the Milton CAT facility in Milford, Massachusetts. Additionally, as a practical matter, the difference between the C-12 engine and other similar Caterpillar models is its increased horsepower. Thus, the front structures have repeatedly cracked and leaked almost immediately after Trans-Spec's purchase of the trucks; the valves on the engines have consistently broken, and no cure has been found for the recurring flywheel housing failures that have afflicted the engines.

Trans-Spec alleges that Caterpillar knew or should have known of this design defect in its C-12 engine block and that Caterpillar has had full opportunity to inspect and examine the engines in question as well as to repair them pursuant to Caterpillar's warranty. On multiple occasions, Caterpillar acknowledged that the engine problems were Caterpillar's responsibility and assured that they were not Trans-Spec's fault.[1]

---

[1] These instances include, but are not limited to, a June 9, 2004 meeting involving Troy N. Guidotti, a representative of Caterpillar, and Cardoza, a representative of Caterpillar and Milton CAT, as well as an August 2004 meeting involving Steve W. Schoening, Caterpillar's Northeast Region Manager.

Caterpillar, however, has failed to take the adequate and appropriate remedial steps to address the problems or fulfill warranty obligations once they became aware of the situation. Caterpillar's negligence and breaches of warranties have directly and proximately caused severe and crippling injuries to Trans-Spec. Furthermore, as Caterpillar was engaged in trade or commerce within the meaning of Mass. Gen. L. ch. 93A, § 1(b) at all relevant times, Trans-Spec alleges that its conduct constitutes a violation of the Massachusetts Consumer Protection Act, Mass. Gen. L. ch. 93A, § 11, causing Trans-Spec substantial loss and injury.

On August 23, 2004, Trans-Spec filed a Complaint as to Caterpillar. On August 26, 2004, Trans-Spec filed an Amended Complaint against Caterpillar so as to correct a typographical error. Written discovery has commenced in this matter; depositions have not.

## II.    PROPOSED ADDITIONAL COUNT

In the proposed Second Amended Complaint attached hereto as Exhibit 1, Trans-Spec has added a count of negligence against Caterpillar alleging the defendant's negligent design, development, assembly, manufacture, inspection, testing, marketing, advertising, selling, and distribution of the C-12 engines sold to Trans-Spec. Because the Court denied Trans-Spec's request for declaratory relief where it sought replacement of the twenty-two trucks at issue before November 15, 2004, Trans-Spec deleted the corresponding count in its Second Amended Complaint. As Trans-Spec's new count against Caterpillar involves a common nucleus of facts, allowance of this Motion will effect economy of justice and efficiency for all parties involved as well as the Court. Additionally, the allowance of this Motion will not unduly prejudice any party in this matter.

**III.     THE COURT SHOULD GRANT THIS MOTION REGARDLESS OF CATERPILLAR'S ANTICIPATED OBJECTION THAT IT VIOLATES THE SCHEDULING ORDER IN THIS CASE**

Trans-Spec anticipates that Caterpillar will object to this Motion on the purported grounds that it is brought past the Scheduling Order requirement that Rule 15 motions be filed by March 23, 2005.  Caterpillar itself caused Trans-Spec's delay in filing this Motion.  Trans-Spec sought to rely on anticipated discovery from Caterpillar to support its negligence claim.  As can be seen, however, in the *Motion Of Plaintiff, Trans-Spec Truck Service, Inc., d/b/a Truck Service, To Compel Answers To Its First Set Of Interrogatories And First Request For Production Of Documents Propounded To Defendant Caterpillar Inc.* ("Motion to Compel") pending before this Court, Caterpillar has shirked its duty in responding to valid discovery requests duly served in the ongoing litigation.  Instead, its responses are marked by pervasive vagueness, inappropriate and unsupported objections, dilatoriness, refusal to look for documents easily obtainable from Caterpillar's files, and, in some cases, unacceptable duplicity.

Trans-Spec hoped that Caterpillar would try to resolve some of the parties' discovery disputes as discovery motions proceeded.  Trans-Spec apparently hoped in vain.  Accordingly, Trans-Spec is forced to seek leave to add its negligence claim based on its own beliefs and information in its possession, and anticipates that discovery obtained should this Court grant its Motion to Compel will further buttress it.

**IV.     THE COURT SHOULD GRANT THIS MOTION REGARDLESS OF CATERPILLAR'S ANTICIPATED OBJECTION THAT IT IS FUTILE DUE TO THE ECONOMIC LOSS DOCTRINE**

Trans-Spec anticipates that Caterpillar will object to this Motion on the purported grounds that it is futile because Trans-Spec's negligence claim is barred as a matter of law by the economic loss doctrine.  This argument is incorrect.  The economic loss doctrine as applied by

4

Massachusetts law provides that purely economic losses are unrecoverable in tort actions **absent personal injury or property damage**. *Shipway Place Condominium Association v. Osmose, Inc.*, 2001 U.S. Dist. LEXIS 2326, *3 (D. Mass. 2001). The doctrine does not apply where, as here, there exists a causal connection between property damage and the economic loss. *W.R. Construction & Consulting, Inc. v. Jeld-Wen, Inc.*, 2002 U.S. Dist. LEXIS 18686, *22-24 (D. Mass. 2002) (citing *Berish v. Bornstein*, 437 Mass. 252, 267-68 (2002); see also *Commonwealth v. Johnson Insulation*, 425 Mass. 650, 653 (1997) ("With respect to the breach of an implied warranty of merchantability, 'breach of this implied warranty provides a cause of action in tort where the harm is a physical injury to person or property rather than an 'economic' loss of value in the product itself (for which contractual remedies must still be pursued)."); *Fine v. Huygens, DiMella, Shaffer & Associates*, 57 Mass. App. Ct. 397, 400 (2003).

In *Berish v. Bornstein*, Massachusetts Supreme Judicial Court held that a negligence action could be brought because "defects and deficiencies" in the construction of condominium units caused property defects "beyond the defects" in the units. Furthermore, the Supreme Judicial Court allowed the plaintiffs to seek damages for economic losses incurred in correcting the property damage. *W.R. Construction*, 2002 U.S. Dist. LEXIS 18686, *22-24; *Berish*, 437 Mass. at 267-68.

Here, as in *Berish*, the economic loss caused by Caterpillar's defective engines goes "beyond the defects" in the engines. Instead, the defective engine components caused extensive property damage to Trans-Spec's trucks as well as oil leaks on Trans-Spec's property and the property of its customers. Trans-Spec had to pay to clean these leaks in accord with environmental regulations. Because "it is reasonable to infer that the enumerated 'defects and deficiencies' caused property damage beyond the defects in the [engines] themselves," Trans-Spec

5

must be allowed the opportunity to demonstrate that it is entitled to relief on its negligence claim. *Berish*, 437 Mass. at 267. Thus, Caterpillar's anticipated objection that the economic loss doctrine renders Trans-Spec's negligence claim futile is erroneous and inapplicable.

## V. CONCLUSION

WHEREFORE, the plaintiff respectfully requests that this Court allow this Motion to Amend Complaint for the foregoing reasons.

> Plaintiff,
> TRANS-SPEC TRUCK SERVICE INC.,
> D/B/A TRUCK SERVICE
> By their attorneys
>
> /s/ Christian G. Samito
> Nancy M. Reimer, Esq., BBO#555373
> Christian G. Samito, Esq., BBO#639825
> Donovan Hatem, LLP
> Two Seaport Lane
> Boston, MA 02210
> (617) 406-4500

Date: March 31, 2005

## LOCAL RULE 7.1 CERTIFICATE OF CONSULTATION

Counsel for Trans-Spec hereby certifies that he has conferred with defendant's counsel and attempted in good faith to resolve or narrow the issues presented in this Motion to Amend Complaint.

> /s/ Christian G. Samito
> Christian G. Samito

## REQUEST FOR ORAL ARGUMENT

If the Court deems it necessary, Trans-Spec requests oral argument on its Motion to Amend Complaint.

## CERTIFICATE OF SERVICE

I, Christian G. Samito, hereby certify that I have this day, March 31, 2005, served a copy of the foregoing pleading by sending a copy of same to all counsel of record, by first class mail, postage prepaid to:

Richard P. Campbell, Esq.
John A. K. Grunert, Esq.
Christopher Howe, Esq.
Campbell Campbell Edwards & Conroy
One Constitution Plaza, 3rd Floor
Boston, MA  02129

/s/ Christian G. Samito
Christian G. Samito

00906893