
EXHIBIT

1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11836-RCL

|  |  |
|---|---|
| TRANS-SPEC TRUCK SERVICE, INC. d/b/a TRUCK SERVICE, Plaintiff | ) ) ) ) |
| vs. | |
| CATERPILLAR INC. Defendant | ) ) ) |

## REPLY TO CATERPILLAR INC.'S OPPOSITION TO THE MOTION OF TRANS-SPEC TRUCK SERVICE, INC. d/b/a TRUCK SERVICE, TO COMPEL ANSWERS TO ITS FIRST SET OF INTERROGATORIES AND FIRST REQUEST FOR PRODUCTION OF DOCUMENTS PROPOUNDED TO DEFENDANT CATERPILLAR INC., AND REQUEST FOR ORAL ARGUMENT

Plaintiff Trans-Spec Truck Service, Inc., d/b/a Truck Service ("Trans-Spec"), hereby

replies to Defendant Caterpillar Inc.'s ("Caterpillar") *Opposition To The Motion Of Trans-Spec*

*Truck Service, Inc. D/B/A Truck Service, To Compel Answers To Its First Set Of Interrogatories*

*And First Request For Production Of Documents Propounded To Defendant Caterpillar Inc.,*

*And Request For Oral Argument* ("Opposition").

As in *Defendant Caterpillar's Motion to Compel Plaintiff Trans-Spec's Further*

*Responses to Interrogatories* ("Caterpillar's Motion to Compel"), Caterpillar's Opposition

contains factual errors and misrepresentations as well as a number of admissions that contradict

its own responses to Trans-Spec's discovery requests. The Opposition also indicates

Caterpillar's desire to shirk its duty in responding to valid discovery requests duly served in the

ongoing litigation. Unfortunately, Caterpillar has forced this procedural litigation and the filing

of a motion "directed to nearly every one of 45 separate discovery requests" (Opposition, page

5), because Caterpillar has responded to Trans-Spec's discovery requests with pervasive vagueness, inappropriate and unsupported objections, dilatoriness, refusal to look for documents easily obtainable from Caterpillar's files, and, in some cases, unacceptable duplicity.

**A.    Caterpillar erroneously claims that it has honored its warranty obligations**

Caterpillar claims that, so far as it can determine, "Trans-Spec has never paid for any flywheel housing replacement reported to Caterpillar," and that "Trans-Spec has to this day failed to identify even a single instance in which it has been required to pay for allegedly warrantable repairs to its engines." (Opposition, p. 5, 12). Had Caterpillar reviewed the documents produced by Trans-Spec pursuant to its Automatic Disclosures tendered on November 10, 2004, it would not offer such unfounded assertions. Trans-Spec's Automatic Disclosures document more than sixteen flywheel housing repairs performed in house by Trans-Spec on the engines. To date, Trans-Spec has had to make no less than **eighteen** in house repairs to the flywheel housings on the trucks at issue, in addition to performing other related work. Trans-Spec had to purchase and install a new engine in one of its trucks. Caterpillar had full knowledge, in advance, of the repair work performed by Trans-Spec, and Milton CAT's Al Cardoza routinely inspected the repair work following its completion. Nonetheless, and in full breach of its warranty obligations, Caterpillar declined to reimburse Trans-Spec in any way for either parts or labor associated with these repairs.

**B.    Caterpillar erroneously claims that there were no direct dealings between Caterpillar and Trans-Spec in connection with the purchase of the engines at issue in this matter**

Caterpillar claims, in footnote 1, that there were no direct dealings between Caterpillar and Trans-Spec in connection with the purchase of the engines at issue in this matter and on page

8 that it "did not design, manufacture, or sell Trans-Spec's trucks and played no role in that

process." That is not the case.

Harry Calderbank ("Calderbank"), who represented that he was a Caterpillar

representative, represented in person in or around March 1999 that if Trans-Spec purchased

Caterpillar C-12 engines, Caterpillar would provide extended 500,000 mile serious nucleus

warranty coverage for those engines at no charge. (See Trans-Spec's Amended Answer to

Caterpillar's Interrogatory Number 4, attached as Exhibit A). The inservice date extended

warranty agreement sent to Trans-Spec by Calderbank after Trans-Spec's purchase of the

engines confirms this warranty. (*Id.*). Calderbank routinely offered this warranty coverage to

Trans-Spec for every purchase Trans-Spec made. (*Id.*   Calderbank also offered Trans-Spec a

five hundred dollar credit if it purchased C-12 engines, so that Caterpillar could compete with a

rival company's price.

Additionally, Caterpillar's Opposition demonstrates its direct dealings with Trans-Spec in

connection with the purchase of the engines (see also page 2 of Caterpillar's Motion to Compel).

On page 3 of the Opposition, Caterpillar claims that Milton CAT f/k/a/ Southworth-Milton, Inc.

(collectively, "Milton CAT") sold Trans-Spec an Extended Service Contract binding Caterpillar

to pay for servicing on Trans-Spec's trucks during the period of Caterpillar's warranty and for a

certain period thereafter. Milton CAT could not have had the authority to offer Trans-Spec any

contract binding Caterpillar to pay for these services without Caterpillar's express involvement

and approval. Claiming that it conducted negotiations in part by agents does not alter the fact hat

Caterpillar and Trans-Spec directly negotiated regarding the purchase of the engines at issue.

---

[1] Contrary to Caterpillar's assertions throughout its Opposition, Trans-Spec has identified warranty documents, see Letter of Attorney Christian G. Samito to Attorney Christopher Howe dated March 24, 2005, attached as Exhibit B, as well as Trans-Spec's Amended Answer to Caterpillar's Interrogatory Number 4, attached as Exhibit A.

**C.**     **Caterpillar's contradictory statements regarding its database**

Throughout this litigation, Caterpillar's counsel has offered a myriad of misrepresentations regarding the existence and capabilities of Caterpillar's database. This database allows one to input a specific engine's serial number and review its entire history in detail or enter an appropriate search term to generate all service claims concerning a particular part for a specific engine model. Perceiving the devastating effect this would have on its defense, however, Caterpillar's counsel denied the existence of the database during a telephone conference between Attorney John A.K. Grunert for Caterpillar and Attorneys Christian G. Samito and Nancy M. Reimer for Trans-Spec on January 28, 2005.

Now, on page 6 of its Opposition, Caterpillar refers "to information about the engines contained in Caterpillar's 'database'" before claiming "that information has been supplied" and awkwardly asking, "[s]o what is Trans-Spec's problem?" It is baffling and inexplicable why Caterpillar's counsel denied the existence of the database if the information had been "supplied" in the first place. While that is part of Trans-Spec's "problem," the other, more important part of Trans-Spec's "problem" (besides the defective engines) is ensuring that Caterpillar now produces all of the responsive documents requested pursuant to Trans-Spec's discovery requests and Motion to Compel.

**D.**     **Caterpillar inappropriately uses objections as a shield behind which to avoid its lawful discovery obligations**

In an effort to muddy otherwise clear waters, Caterpillar repeatedly raises an objection that Trans-Spec frequently asks for "[a]ll documents concerning" a particular topic, claiming that this guarantees "that an objection based on attorney/client privilege and work produce immunity

will be forthcoming." (Opposition, p. 6).[2] Attorneys interested in fulfilling their client's

discovery obligations and avoiding needless procedural litigation generally produce all

responsive documents and withhold only those that are privileged. Such attorneys also

comprehend that attorney/client privilege does not protect documents or physical evidence

provided by Caterpillar to its attorney, though Caterpillar appears to believe that attaching

documents to a cover letter to defense counsel renders the entire packet privileged. For example,

Caterpillar's counsel admits he studied "available historical documents concerning [Trans-

Spec's] engines" and "prepared file memoranda as a result of the study." (Opposition, p. 7)

While both parties agree that this attorney work product is privileged, the "available historical

documents" upon which these file memoranda are based are not and must be produced

forthwith.[3]

Thus, as explained on page 16 of its underlying Motion to Compel, Trans-Spec expects

that Caterpillar will assert its attorney/client, work product, and Fed. R. Civ. P. 26(b)(3)

privileges where appropriate, but also produce non-privileged, responsive documents and use the

privilege appropriately and not as a shield behind which to circumvent meaningful discovery

permitted by the governing rules and case law

Furthermore, Caterpillar objects to Trans-Spec's request for a privilege log, complaining

that Caterpillar's counsel would have to actually do some work on a multi-million dollar case

involving treble damages. Ironically, in drafting its request that the Court order Caterpillar to

---

[2] Trans-Spec notes that Caterpillar has gone so far as to object to Trans-Spec's use of the word "concerning." See
Caterpillar Inc.'s Responses to Trans-Spec Truck Service, Inc.'s First Set of Interrogatories and Caterpillar Inc.'s
Responses to Trans-Spec Truck Service, Inc.'s First Request for Production of Documents.
[3] Trans-Spec further notes that on page 14 and elsewhere in its Opposition, Caterpillar implies that because Trans-
Spec did not explicitly state that documents tendered were "adequate to its needs," further complaint by Trans-Spec
to Caterpillar's production is moot. Unfortunately, it appears that Trans-Spec must remind Caterpillar that it is not
for Caterpillar's counsel to determine what is "adequate" for Trans-Spec's needs but to simply produce all
responsive, non-privileged documents. It is all the more inappropriate considering that Caterpillar's counsel cannot
even comprehend the meaning of "[a]ll documents," see Opposition, p. 15.

provide an appropriate privilege log, Trans-Spec copied the language of Caterpillar's request for a privilege log nearly verbatim. (Compare Motion to Compel, p. 16 with Letter of Attorney Christopher Howe to Attorney Christian G. Samito dated March 4, 2005, p. 5, attached as Exhibit C    Caterpillar's counsel should probably read its own letters to plaintiff's counsel and not deem comparable requests "ludicrous," "abusive," and requested "for the purpose of imposing useless work and expense on a party" when later directed at itself. (Opposition, p. 7).

Moreover, unlike Caterpillar, Trans-Spec has nothing to hide in this matter and has fully cooperated with Caterpillar's discovery efforts. Thus far, other than attorney-produced materials, Trans-Spec has fully opened its files to Caterpillar.[4]  Trans-Spec, on the other hand, needs a way to ascertain which documents and information Caterpillar has decided to withhold in

---

[4] Caterpillar's contention throughout its Opposition that it has not had an opportunity to review Trans-Spec's documents or learn the histories of Trans-Spec's trucks are disingenuous at best. The parties arranged for Caterpillar to inspect the service and maintenance records for the trucks onsite at Trans-Spec's place of business. Pursuant to Department of Transportation guidelines, these documents must remain onsite and cannot be removed. Trans-Spec maintains its more recent records in an onsite office, while older records are stored in an onsite file trailer equipped with a desk. Trans-Spec agreed that Caterpillar could have as much time to inspect the documents as it needed. On February 15, 2005, Caterpillar began its review. On February 16, 2005, Caterpillar suddenly stopped. Apparently, Caterpillar objected to reviewing the documents in the file trailer – as they are kept in the ordinary course of Trans-Spec's business and as they are presented to government officials when they require access to the trucks' records – because Trans-Spec did not provide heat or electricity to the trailer. Caterpillar could have, but declined, to rent a generator (Caterpillar is one of the largest manufacturers and renters of generators and on information and belief, upwards of twelve hundred are available in different sizes and capacities at a distributor's site in nearby Milford, Massachusetts). Caterpillar had knowledge of the conditions of the trailer before February 15, 2005. On March 4, 2005, Trans-Spec offered to bring the file trailer into its garage during Caterpillar's review so that the work space would be heated. Trans-Spec also offered to run an extension cord into the trailer so that Caterpillar could put a light inside as well as operate the scanning equipment it used during its document review. (See Letter from Attorney Samito to Attorney Howe dated March 4, 2005, attached as Exhibit D.) Caterpillar rejected that offer on March 10, 2005. (See Letter from Attorney Howe to Attorney Samito dated March 10, 2005, attached as Exhibit E.) Now, Caterpillar is trying to impose further demands in lieu of simply finishing its document review. Caterpillar stated that it would perform the inspection if the trailer were inside Trans-Spec's garage but only if Trans-Spec ceased performing repairs during the time of the document review. (See Exhibit E.) As if Caterpillar's defective engines had not done enough to injure Trans-Spec, Caterpillar expected Trans-Spec to stop performing repairs that are necessary so that it can maintain business operations. On March 10, 2005, Trans-Spec again offered several possibilities to Caterpillar for its document review. Caterpillar could review the documents while the file trailer was in Trans-Spec's garage or welding bay at a time when no repair work was being performed. As this availability is only for a brief period in the middle of the night, however, Trans-Spec also offered that Caterpillar could agree to pay for repair work done on Trans-Spec trucks during the time Caterpillar wanted to use the garage. Trans-Spec also reiterated that Caterpillar could rent a generator to power a heat source, light source, and its electrical equipment and review the documents in the file trailer in its present location. (See Letter from Attorney Samito to Attorney Howe dated March 10, 2005, attached as Exhibit F.) With the exception of its comments in its own Motion to Compel, Caterpillar has not yet responded to Trans-Spec's latest proposals.

this matter so that both parties may have full and open discovery, subject to the enforcement of appropriate privileges, as mandated by the Rules.  It also needs a way to ascertain why Caterpillar inexplicably redacted some documents produced in its automatic disclosures.

     **E.**     **Trans-Spec Should Be Allowed Discovery Regarding The 3126, 3176, C-10, C-12, and C-13 Engines, Caterpillar's Business History With Trans-Spec, and Caterpillar's Relations With Milton CAT**

     While disingenuously wondering why Trans-Spec objects to Caterpillar's response to Document Request Number 3, see Opposition, p. 9, Caterpillar fails to mention that it only partially responded to the request.  Caterpillar also disavows that it described the 3126, 3176, C-10, and C-13 engines as "generations of C-12 engines," claiming that "Caterpillar nowhere said anything of the sort and that there is "nothing     by way of intelligent explanation or by way of evidential material" to support a claim that this material is relevant.  (*Id.*  Caterpillar's counsel should read its response to Document Request Number 3, attached as Exhibit G.  There, Caterpillar describes the 3126, 3176, C-10, and C-13 as "generations of C-12 engines," and Trans-Spec assumes Caterpillar's counsel would concede that its own words are "intelligent[.]"

     Furthermore, Trans-Spec will not repeat its demonstration as to why this discovery is necessary but instead refers to page 9 of its underlying Motion to Compel.  There, Trans-Spec explains that this information is relevant to these proceedings for its comparative value as well as its ability to show the capabilities, performance, and defects unique to the C-12.

     Besides making misrepresentations about Trans-Spec's claims and demonstrating that it has not yet reviewed Trans-Spec's Amended Answers to Interrogatories, Caterpillar's Opposition assumes contradictory positions regarding Document Request Number 4, which requests documents concerning defects, service issues, and returns for service regarding the generations of C-12 engines.  First claiming that responding just as to the C-12 engine alone

might produce an estimated production of hundreds of thousands of documents, Caterpillar subsequently states that the frequency of Trans-Spec's failures is "unusual" and offers a listing of claims it has received of flywheel housing failures on C-12 engines generally. (Opposition, pp. -12). If Trans-Spec's failures are so "unusual," and the C-12 so reliable, Caterpillar's production of documents concerning defects, service issues, and returns for service regarding the C-12 should be a slim file that Caterpillar can easily produce. Furthermore, as explained in Trans-Spec's underlying Motion to Compel, besides the fact that this production is easily generated through Caterpillar's database, Trans-Spec seeks information regarding the 3126, 3176, C-10, and C-13 engines for comparative value and to determined capabilities, performance, and defects unique to the C-12  While Caterpillar does not want to produce the "stuff for the other engines," see Opposition, p. 16 (resisting production of marketing and promotional literature regarding the five specified engine models), this information is probative, useful, and relevant.[5]

As to Trans-Spec's requests for documents and information concerning Caterpillar's history of business relations with it, Trans-Spec is at a loss as to why Caterpillar refuses to simply produce all responsive documents and disclose all responsive information, see Opposition, pp. 13-14, 21, 24. This information is probative and relevant, especially where Caterpillar attempts to disavow its detailed knowledge of Trans-Spec's business applications and its participation in inducing Trans-Spec to purchase C-12 engines when Trans-Spec originally

---

[5] Incomprehensively, Caterpillar states that, "Trans-Spec is just being silly," in regards to the request for promotion literature regarding all five requested models. Trans-Spec finds nothing "silly" about Caterpillar's treatment of it or Caterpillar's cavalier attitude toward this litigation. The promotional literature is relevant because, *inter alia*, while Caterpillar claims for the purposes of this lawsuit that the C-12 engine was inappropriate for Trans-Spec's use of the trucks in fuel hauling, promotional literature indicates that, in comparison to the other four engines, the C-12 was specifically marketed for this purpose.

intended to purchase comparable units from Caterpillar's competitor.[6] Caterpillar is shirking its discovery obligations in a multi-million dollar litigation by refusing to look through its own files for responsive information.

As to Caterpillar's relations with Milton CAT, Trans-Spec refers to pp. 14-15 of the underlying Motion to Compel, but adds that Caterpillar miscasts Milton CAT's role on page 16 of its Opposition when it states that Milton CAT played no role in distributing the subject engines. Calderbank – a Milton CAT employee who represented that he was a Caterpillar representative, represented in person in either Milford, Massachusetts (where a Milton CAT facility is located) or Worcester, Massachusetts, in or around March 1999, that if Trans-Spec purchased Caterpillar C-12 engines, Caterpillar would provide extended 500,000 mile serious nucleus warranty coverage for those engines at no charge. (See Trans-Spec's Amended Answer to Caterpillar's Interrogatory Number 4, attached as Exhibit A). The inservice date extended warranty agreement sent to Trans-Spec by Calderbank after Trans-Spec's purchase of the engines confirms this warranty. (*Id.*).

Additionally, on page 3 of Caterpillar's Opposition, Caterpillar claims that Milton CAT sold Trans-Spec an Extended Service Contract binding Caterpillar to pay for servicing on Trans-Spec's trucks during the period of Caterpillar's warranty and for a certain period thereafter. Thus, Caterpillar's own Opposition contradicts itself. Milton CAT played a major role in Trans-Spec's initial purchase of the subject engines and acted as Caterpillar's agent, distributor, and representative throughout the transaction.

---

[6] Trans-Spec notes that on page 13 of its Opposition, Caterpillar states that "the problems with the flywheel housings that Trans-Spec has experienced are probably the result of improper installation of the engines by the truck manufacturer[.]" Trans-Spec suggests that if it intends to continue asserting this defense, Caterpillar should produce evidence to support its defense. Trans-Spec further inquires as to why Caterpillar has declined to bring truck fabricator Sterling Truck Corporation in as a defendant in this matter.

Furthermore, when an engine problem arises with a Caterpillar engine, Milton CAT, as Caterpillar's regional distributor and representative, must assess the situation and authorize repairs while following Caterpillar's guidelines. Accordingly, discovery into its relations with Caterpillar as well as its role in Trans-Spec's problems with the engines is discoverable and relevant.

## III.    CONCLUSION

Wherefore, Trans-Spec respectfully requests that this Court issue an Order pursuant to Fed. R. Civ. P. 37:

1)    Compelling Caterpillar to respond to all portions of Trans-Specs First Set of Interrogatories and First Request for Production of Documents as described more fully above;

2)    Awarding Trans-Spec all reasonable costs and attorney's fees pursuant to Fed. R Civ. P. 37(a)(4) associated with Trans-Spec's having to bring this motion; and,

3)    Granting such other relief as this Court deems appropriate.

Respectfully submitted,
TRANS-SPEC TRUCK SERVICE, INC.
d/b/a TRUCK SERVICE
By its Attorneys,

Nancy M. Reimer, Esq., BBO#555373
Christian G. Samito, Esq., BBO#639825
Donovan Hatem, LLP
Two Seaport Lane
Boston, MA 02210
(617) 406-4500

Date: April 5, 2005

## REQUEST FOR ORAL ARGUMENT

If the Court deems it necessary, Trans-Spec requests oral argument on its *MOTION OF PLAINTIFF, TRANS-SPEC TRUCK SERVICE, INC., d/b/a TRUCK SERVICE, TO COMPEL ANSWERS TO ITS FIRST SET OF INTERROGATORIES AND FIRST REQUEST FOR PRODUCTION OF DOCUMENTS PROPOUNDED TO DEFENDANT CATERPILLAR INC.*

## CERTIFICATE OF SERVICE

I, Christian G. Samito, hereby certify that on this 5th day of April, 2005, I served a copy of the foregoing, by mail, postage prepaid to:

Richard P. Campbell, Esq.
Christopher Howe, Esq.
Campbell Campbell Edwards & Conroy
One Constitution Plaza, 3rd Floor
Boston, MA  02129


Christian G. Samito, Esq.

00907397

11



**INTERROGATORY NO. 2**

Identify every officer, director, employee, and representative of Trans-Spec who participated in negotiations with Sterling with respect to Trans-Spec's purchase of the trucks.

**ANSWER NO. 2**

Joseph M. Howard, Jr. ("Howard")
Trans-Spec Truck Service, Inc.
7 Cristo Lane
Millbury, MA 01527

Ralph Lind ("Lind")
2 Mason Road
Milbury, MA 01527

**INTERROGATORY NO. 3**

Identify every officer, director, employee, and representative of Sterling who participated in negotiations with Trans-Spec with respect to Trans-Spec's purchase of the trucks.

**ANSWER NO. 3**

Bob Kerrick
Sterling Truck Corporation ("Sterling")
250 South Edgeware Road
St. Thomas, ON, Canada N5P 4C4

Edward Blake
Sterling Truck Corporation
4420 Sherwin Road
Willoughby, OH 44094

Donald Medbery
3 Covered Bridge Road
Dover, NH 03820

**INTERROGATORY NO.4**

State with respect to every oral warranty you allege Caterpillar gave concerning the engines (a) the specific words that were spoken by Caterpillar, (b) the identity of the individual( s) who spoke the words, (c) the date( s) on which the words were spoken, (d) whether the conversation in which the words were spoken was in person or via telephone, (e) where the conversation occurred if it was in person, and (f) whether any memorandum was made by Trans-Spec of the conversation.

**ANSWER NO. 4**

Harry Calderbank ("Calderbank"), Ring Power Corp., 8050 Philips Highway, Jacksonville, FL 32256, represented in person in either Milford, Massachusetts or Worcester, Massachusetts, in or around March 1999, that if Trans-Spec purchased Caterpillar C-12 engines, Caterpillar would provide extended 500,000 mile serious nucleus warranty coverage for those engines at no charge. The inservice date extended warranty agreement sent to Trans-Spec by Calderbank after Trans-Spec's purchase of the engines confirms this warranty. Calderbank routinely offered this warranty coverage to Trans-Spec for every purchase Trans-Spec made. Trans-Spec made no memorandum regarding Calderbank's representation.

On June 9, 2004, Al Cardoza ("Cardoza"), Milton-CAT, 100 Quarry Drive, Milford, MA 01757, orally extended Caterpillar's warranty on the Trans-Spec C-12 engines until June 21, 2005. Troy N. Guidotti ("Guidotti"), also attended this meeting, which was held at Milton-CAT's facility in Milford, Massachusetts; was present at Cardoza's representation; and, agreed with it. Guidotti further represented that the problems with the C-12 engines were not Trans-Spec's fault and that Caterpillar would make Trans-Spec whole. Trans-Spec made no memorandum regarding this meeting.

In August 2004, Steve W. Schoening ("Schoening"), Northeast Regional Manager, Caterpillar Inc., 175 Powder Forest Drive, Weatogue, CT 06089, again orally extended Caterpillar's warranty on the Trans-Spec C-12 engines until June 21, 2005 at a meeting with Howard and Robert Barton ("Barton") held at Milton-CAT's facility in Milford, Massachusetts. Schoening reiterated Guidotti's representation at the June 9, 2004 meeting that the problems with the C-12 engines were not Trans-Spec's fault and that Caterpillar would make Trans-Spec whole. Cardoza attended this meeting. Trans-Spec made no memorandum regarding Schoening's extension.

Additionally, Calderbank and Cardoza have made "off the record" representations to Trans-Spec that Trans-Spec would be made whole for the damage it has suffered as a result of the defective C-12 engines.

**INTERROGATORY NO. 5**

Set forth each and every fact on which you rely to support your contention in ¶ 9 of the amended complaint that Harry Calderbank was a "Caterpillar representative" at the meeting described in that paragraph.

**ANSWER NO. 5**

Calderbank worked for Milton-CAT from at least the early 1990s until Trans-Spec's purchase of the C-12 engines and he represented that he was a Caterpillar representative. Calderbank received commissions from Caterpillar for his sales of Caterpillar engines. Milton-CAT, formerly known as Southworth-Milton, Inc., is Caterpillar's distributor in the New England area. Milton-CAT solely distributes Caterpillar products.



**DONOVAN HATEM LLP**

*counselors at law*

Christian G. Samito
617-406-4592 direct
csamito@donovanhatem.com

March 24, 2005

**BY FIRST CLASS MAIL**

Christopher R. Howe, Esq.
Campbell Campbell Edwards & Conroy
One Constitution Plaza
Third Floor
Boston, MA 02129

Re:     **Trans-Spec Truck Service, Inc. d/b/a/ Truck Service v. Caterpillar Inc.**
        **Civil Action No. 04-11836-RCL**

Dear Attorney Howe:

Enclosed are complete copies of responsive warranty documents in Trans-Spec Truck Service, Inc.'s possession, custody, or control. We will seasonably supplement this production if and when other responsive documents become available. Please note that in some instances, I have included multiple copies of the same document due to difficulty maintaining legibility in photocopying.

Should you have any questions, please feel free to contact me

Very truly yours,

Christian G. Samito

Enclosures
cc: Nancy M. Reimer, Esq. (w/o encl.)
00905677

Letter to Mr. Samito
March 4, 2005
Page 5

**EXHIBIT**

C

REQUEST NO. 12

Caterpillar's response is reasonable and adequate.

**REQUEST NO. 14**

Caterpillar's response is reasonable and adequate.

**REQUEST NO. 16**

Caterpillar's response is reasonable and adequate.

**REQUEST NO. 17**

Caterpillar's response is reasonable and adequate.

**REQUEST NO. 29**

Caterpillar's response is reasonable and adequate. If Caterpillar can locate any documents pertaining to the alleged visits referenced (i.e., 1996 – Orlando; 2000 – Peoria), it will produce them.

**REQUEST NO. 30**

If Caterpillar can locate documents regarding the 1991-1992 performance testing of this Freightliner truck, it will produce them.

\* \* \* \* \*

On another but related matter, I would like to re-review with you the plaintiff's unsatisfactory responses to discovery. While I shall specifically address each response below, the plaintiff's responses demonstrate a clear pattern of evasion and non-responsiveness. In addition, you make unsupported claims of attorney/client privilege and the limited immunity of the work product doctrine. Pursuant to Fed. R. Civ. P. 26(b)(5) and Local Rule 33.1(E), if you are withholding any documents from production, I insist on a privilege log that identifies each and every document to which any such claim is made. The log must provide the date the document was created, sufficient identification of the author(s), the format (handwritten, typed, etc.), the number of pages, sufficient identification of each of the addressees, the distribution of copies of the document, sufficient identification of each person who has possessed a copy of the document or reviewed it, and sufficient information regarding the content of the document so as to permit me to assess the basis for the claim of protection.

I will address my specific comments regarding the plaintiff's individual discovery responses below:



DONOVAN **HATEM** LLP
*counselors at law*

Christian G. Samito
617-406-4592 direct
csamito@donovanhatem.com

March 4, 2005

BY FACSIMILE (617-241-5115)
AND FIRST CLASS MAIL

Christopher R. Howe, Esq.
Campbell Campbell Edwards & Conroy
One Constitution Plaza
Third Floor
Boston, MA 02129

Re:    Trans-Spec Truck Service Inc., d/b/a/ Truck Service v. Caterpillar Inc
       Civil Action No. 04-11836-RCL

Dear Christopher:

I am writing to partially respond to several of the issues raised during our telephone conference earlier today.

I spoke with my client regarding Caterpillar's objections to Trans-Spec's producing its business records in its file trailer, as they are kept in the ordinary course of business. Trans-Spec is prepared to bring the file trailer into its garage so that your work space will be heated. Furthermore, Trans-Spec will run an extension cord into the trailer so that you can put a light inside as well as operate your scanning equipment. That should eliminate your objections as to this matter.

As to Caterpillar's search for documents regarding its business history with Trans-Spec, including but not limited to those regarding testing done in or around 1990-1993 on a FLD12 Freightliner truck that had a Caterpillar 3175 engine integrated into it, please be advised that Trans-Spec was known as Flynn's Truck Service, Inc., before it changed its name to its present form. I have learned that this name was in use during Trans-Spec's early years. This fact might facilitate your search and I wanted to bring it to your attention as soon as I learned it.

Finally, Trans-Spec gave you permission to photograph the file trailer and its contents during your recent onsite inspection of documents. I have since learned that you also took photographs of others parts of Trans-Spec's facility. I ask that you send me a copy of all the pictures that you took. Also, as I did not understand your visit to be a Fed. R. Civ. P. 34 inspection, I would ask that any such inspection be performed pursuant to the Rules and not in an unofficial and unsanctioned manner.

Christopher R. Howe, Esq.
March 4, 2005
Page 2


Thank you for your attention to this matter.  Please advise as soon as possible as to how you wish
to proceed.

Very truly yours,

Christian G. Samito

cc: Nancy M. Reimer, Esq.

00900891



CAMPBELL CAMPBELL EDWARDS & CONROY
PROFESSIONAL CORPORATION

ONE CONSTITUTION PLAZA
THIRD FLOOR
BOSTON, MA 02129
TEL: (617) 241 3000
FAX: (617) 241 5115

CHRISTOPHER R. HOWE
(617) 241-3029
chowe@campbell-trial-lawyers.com

March 10, 2005

<u>VIA FACSIMILE AND REGULAR MAIL</u>

Christian G. Samito, Esquire
Donovan Hatem, LLP
Two Seaport Lane
Boston, MA 02210

Re:     <u>Trans-Spec Truck Service, Inc. v. Caterpillar Inc.</u>
        <u>U.S.D.C., Civil Action No. 04-11836-RCL</u>

Dear Mr. Samito:

Please accept this letter in response to your correspondence of March 4, 2005 regarding the pending onsite document inspection. You state that you spoke with your client and Trans-Spec is now willing to bring the file trailer into its garage so that electricity and heat can be used for the inspection. We are willing to continue the inspection under these conditions if your client agrees to cease performing repairs on its trucks while the inspection is ongoing. As your paralegal can attest, the exhaust fumes from the repair bay make working in the office difficult; I can only imagine how intolerable the conditions would be working in the bay itself. If your client agrees to cease performing repairs on its trucks while the inspection is ongoing, we are glad to continue the inspection in the trailer.

Please advise how your client wishes to proceed as we would like to get these repair documents copied as soon as possible. I look forward to hearing from you shortly.

Very truly yours,

Christopher R

CRH;bko

cc:     Richard P. Campbell, Esquire

EXHIBIT

F

# DONOVAN HATEM LLP

*counselors at law*

**Christian G. Samito**
617-406-4592 direct
csamito@donovanhatem.com

March 10, 2005

**BY FACSIMILE (617-241-5115)**
**AND FIRST CLASS MAIL**

Christopher R. Howe, Esq.
Campbell Campbell Edwards & Conroy
One Constitution Plaza
Third Floor
Boston, MA 02129

**Re:    Trans-Spec Truck Service Inc., d/b/a/ Truck Service v. Caterpillar Inc.**
       **Civil Action No. 04-11836-RCL**

Dear Attorney Howe

I am writing in response to your letter of earlier today. Due to the nature of Trans-Spec's business, its garage is in use almost twenty-four hours a day and the welding bay is in use twelve hours a day. Accordingly, Trans-Spec can make the following offers to you regarding your review of Trans-Spec's business records in its file trailer:

1) Trans-Spec is prepared to bring the file trailer into its garage so that the work space will be heated. Trans-Spec will run an extension cord into the trailer so that you can put a light inside as well as operate your scanning equipment. The level of exhaust fumes are the same whether in the upstairs office or the garage bay, and my paralegal has informed me that while she did notice the faint smell of fumes in the office, the level was certainly tolerable;

2) Pursuant to option number 1, your review can be accomplished any time during the day. In the alternative, Trans-Spec offers that it can, with difficulty, shut down its garage from 1:00 – 4:00 a.m., or shut down its welding bay from 9:00 p.m. to 6:00 a.m., bring its file trailer into the respective location during those times, and allow you to review the documents while no repair work is being performed on Trans-Spec's trucks;

3) If Caterpillar would like to review the documents while the file trailer is either in the garage or welding bay with no repair work being performed and during times other than those listed in option number 2, Caterpillar can agree to pay for the cost of repairs to Trans-Spec's trucks performed offsite during Caterpillar's document inspection; or,

4) Caterpillar can rent a generator to power a heat source, light source, and its electrical equipment, and review the documents in the file trailer in its present location.

Christopher R. Howe, Esq.
March 10, 2005
Page 2

As we have discussed numerous times, Trans-Spec cannot allow its documents offsite for inspection or photocopying due to Department of Transportation regulations. When the Department of Transportation needs to review any of Trans-Spec's documents, it sends its inspectors to Trans-Spec's location.

Furthermore, Trans-Spec is making every effort to accommodate Caterpillar's discovery needs, to the point where it will sacrifice its normal business operations. In light of the shocking paucity of Caterpillar's own discovery responses, it is ironic and inappropriate that Caterpillar even asks for additional considerations beyond that offered in our March 4, 2005 letter.

In response to Caterpillar's comments regarding Trans-Spec's responses to Caterpillar's discovery requests, I can inform you that once Mr. Howard returns a signed copy of Trans-Spec's amended answers to interrogatories to us, I will send to you that document as well as Trans-Spec's amended responses to document requests. I hope to be able to send both to you by early next week.

Finally, I notice that you decline to address the issue of the photographs that you took during your earlier document inspection. Trans-Spec gave you permission to photograph the file trailer and its contents during your recent onsite inspection of documents, not other parts of Trans-Spec's facility. Your taking photographs other then the file trailer and its contents was both unauthorized and inappropriate because your visit was not a Fed. R. Civ. P. 34 inspection. I ask that you send me a copy of all the pictures that you took and remind that any such inspection must be performed pursuant to the Rules and not in the unofficial and unsanctioned manner which Caterpillar chose to implement.

Thank you for your attention to this matter. Please advise as soon as possible as to how you wish to proceed.

Very truly yours,

Christian G. Samito

cc: Nancy M. Reimer, Esq.
00902453

Caterpillar objects to this request because as drafted it includes within its scope (a) confidential communications concerning the trucks' histories between Caterpillar and its counsel of record in this case, (b) confidential communications concerning the trucks' histories between Caterpillar's in-house attorneys and other Caterpillar employees, (c) confidential file memoranda concerning the trucks' histories and other documents of that type generated by Caterpillar's counsel of record in this case and by their employees assisting them in preparation of Caterpillar's defense, (d) confidential file memoranda concerning the trucks' histories and other documents of that type generated by Caterpillar's in-house attorneys and by Caterpillar employees assisting them in Caterpillar's defense; (e) witness statements concerning the trucks' histories prepared or obtained for purposes of this litigation by Caterpillar's counsel of record and by Caterpillar's in-house counsel. All such documents are protected from discovery by one or more of the attorney/client privilege, Fed. R. Civ. P. 26(b)(3), and the work product immunity.

Caterpillar objects to this request as unduly burdensome insofar as it includes within its scope documents served upon Trans-Spec's counsel in the course of this litigation.

## REQUEST NO. 3

All documents concerning the specifications, performance curves, engine retardation, performance data and records, and any notices regarding actual or potential service issues or defects sent out to dealers or distributors, concerning Caterpillar's 3126, 3176, C-10, C-12, and C-13 engines.

## RESPONSE

Notwithstanding the following objections, but subject to them, Caterpillar refers Plaintiff to Exhibit "A" which contains the Service Letters applicable to the subject engines, Product Support for Replacing the Cylinder Head Gasket After a Failure Has Occurred on Certain C-10 and C-12 Truck Engines (SEBE7398-07), Product Support Program for Installing a Wastegate Cover Kit on Certain 3406E, C-15, C-16, and C-12 Engines (SEBE7447-00), Product Support Program for Replacing the Fuel Injector Only After an Injector Tip Failure in Certain C-10, C-12, C-15, C-16, and 3406E Truck Engines (SEBE7834-03), and Product Support Program for Replacing the Turbocharger on Certain C-12 Truck Engines (SEBE8471-02). Caterpillar notes that the document Bates stamped 000016 to 000017, which Caterpillar has already produced in connection with its automatic disclosure, appears to be responsive to this request but will not be re-produced unless Trans-Spec specifically asks for it.

Caterpillar objects to this request as too ambiguous to permit any adequate response. Caterpillar further objects to it as failing, insofar as it refers to "[a]ll documents concerning" the various described subject matters, to identify with adequate particularity any category of documents to be produced and as overbroad and unduly burdensome. Caterpillar further objects to it as overbroad and unduly burdensome insofar as it seeks documents concerning 3126, 3176, C-10 and C-13 engines, none of which is a type of

5

engine involved in this case. Caterpillar further objects to it as overbroad and unduly burdensome insofar as it seeks documents concerning generations of C-12 engines not involved in this case.

Caterpillar objects to this request as too ambiguous to permit any adequate response, and as failing to specify with adequate particularity any category of documents to be produced, insofar as it refers to notices regarding "potential" service issues or defects.

Caterpillar objects to this request because the language "[a]ll documents concerning" causes it to include within its scope (a) confidential communications concerning the engines between Caterpillar and its counsel of record in this case, (b) confidential communications concerning the engines between Caterpillar's in-house attorneys and other Caterpillar employees, (c) confidential file memoranda concerning the engines and other documents of that type generated by Caterpillar's counsel of record in this case and by their employees assisting them in preparation of Caterpillar's defense, (d) confidential file memoranda concerning the engines and other documents of that type generated by Caterpillar's in-house attorneys and by Caterpillar employees assisting them in Caterpillar's defense; (e) witness statements concerning the engines prepared or obtained for purposes of this litigation by Caterpillar's counsel of record and by Caterpillar's in-house counsel. All such documents are protected from discovery by one or more of the attorney/client privilege, Fed. R. Civ. P. 26(b)(3), and the work product immunity.

## REQUEST NO. 4

All documents concerning defects, service issues, and returns for service concerning flywheel housings, flywheel bolts, front structures, intake and exhaust valves, injectors, turbo chargers, or cylinder heads for Caterpillar's 3126, 3176, C-10, C-12, and C-13 engines.

## RESPONSE

Notwithstanding the following objections, but subject to them, Caterpillar refers Plaintiff to Exhibit "B" which contains the CPI Charter and update for 49183 (subject to a protective order) and Technical Information Bulletins applicable to C-12 truck engines, with serial number prefix 2KS, and responsive to this request, ET2004B Problem Reading Injector Trim Files (TIBU4427-00), Low Idle Engine Speeds Affecting Alternator Charging Performance (TIBU3790-00), New O-Ring Seal Used Between the Front Crankshaft Seal and the Front Housing (TIBU3755-00), Belt Squeal (TIBU3520-00), Engine Oil Dilution by Fuel (TIBU3521-00), and Inspection of the Unit Injector Lifter Assembly (TIBU3179-00). Caterpillar further refers Plaintiff to Exhibit "A". In addition, Caterpillar notes that many of the documents Bates stamped 000018 through 000225 which it produced in connection with its automatic disclosure, and many of the documents produced to it by Trans-Spec in connection with Trans-Spec's automatic disclosure, appear to be responsive to this request but will not be re-produced unless Trans-Spec specifically asks for them.