UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TRANS-SPEC TRUCK SERVICE, INC. d/b/a TRUCK SERVICE,<br><br>Plaintiff<br><br>vs.<br><br>CATERPILLAR INC.<br><br>Defendant | CIVIL ACTION NO. 04-11836-RCL |

CATERPILLAR INC.'S OPPOSITION TO THE PLAINTIFF'S MOTION TO
AMEND THE COMPLAINT

The defendant Caterpillar Inc. opposes the plaintiff Trans-Spec Truck Service, Inc.'s motion to amend its complaint to add a negligence count to the existing breach of warranty and G.L. c. 93A counts. First, the motion is untimely under the scheduling order and Trans-Spec has demonstrated no good cause for failing to file it within the time permitted by the scheduling order, which was ample. Second, the proposed new claim fails as a matter of law, so denial of the motion would be appropriate even if it had been timely filed.

FACTUAL AND PROCEDURAL BACKGROUND

Trans-Spec is in the business of delivering fuel oil and providing dump trailer services. Amended Complaint and Jury Claim, ¶9. In 1999 Trans-Spec entered into negotiations with Sterling Truck Corporation for the purpose of acquiring twenty-two new custom-built trucks for use in its business. Trans-Spec and Sterling agreed the trucks would be powered by Caterpillar C-12 diesel engines. Id. Sterling purchased the engines from Caterpillar and installed them in the trucks it built for Trans-Spec. Id., ¶11. Caterpillar delivered along with each engine a copy

1

of its standard written warranty applicable to engines of this type. <u>Caterpillar Inc.'s Responses to Trans-Spec Truck Services, Inc.'s First Set of Interrogatories</u>, response numbers 7, 8, and 17. (Exhibit A to this Opposition). The warranties ran to the benefit of the first user of the trucks into which the engines were installed, namely, Trans-Spec. The warranties differ in minor respects depending on whether the trucks were delivered before or after December 31, 1999, but are identical for all purposes relevant to the present motion. In particular, each warranty contains the following language in capital letters, bold-faced, larger than the general text of the warranty:

> **CATERPILLAR EXCLUDES ALL LIABILITY FOR OR ARISING FROM ANY NEGLIGENCE ON ITS PART OR ON THE PART OF ANY OF ITS EMPLOYEES, AGENTS, OR REPRESENTATIVES IN RESPECT OF THE MANUFACTURE OR SUPPLY OF GOODS OR THE PROVISION OF SERVICES RELATING TO THE GOODS.**

Copies of the warranties are contained in Exhibit B to this Opposition. Sterling sold the trucks it built to Trans-Spec through a Sterling dealer, Minuteman Trucks. The twenty-two trucks were delivered to Trans-Spec in December, 1999, and January, 2000, <u>Amended Complaint and Jury Claim</u>, ¶12, and were immediately placed in service by Trans-Spec.

In 2001 Trans-Spec experienced problems with the flywheel housings on three of the twenty-two trucks. The problems were treated as falling within the Caterpillar warranty and were repaired at no cost to Trans-Spec.[1] In 2002 Trans-Spec experienced two or three more flywheel housing problems which were similarly repaired at no cost to it. *Id.*, ¶14.[2] In 2003 and 2004 Trans-Spec experienced larger numbers of flywheel housing problems, all of which were

---

[1] Caterpillar says "treated as" falling within the scope of its warranty because Caterpillar believes the problems are the result primarily of improper installation of the engines by Sterling, not of any defect in the material or workmanship of the engines themselves. Misuse or improper maintenance may also have contributed to some of the failures. The actual causes of the problems are not relevant to the present motion.

[2] Defense counsel has seen business records substantiating three flywheel housing failures in 2001 and two more in 2002. *See* Exhibit C. Trans-Spec alleges there were three in 2002. The difference is immaterial for purposes of the present motion.

similarly repaired at no cost to Trans-Spec so far as Caterpillar knows.[3] Trans-Spec has also experienced various other problems of types one would expect to see from time to time in a fleet of twenty-two trucks which have all been driven hundreds of thousands of miles, *see* the illustrative repair records attached as Exhibit D which report typical mileage on some of Trans-Spec's trucks, during the five-year extended warranty period. So far as Caterpillar knows, all warranty-type problems for which a claim was made were repaired at no cost to Trans-Spec, though because Trans-Spec has not identified any specific alleged breach of warranty with respect to any specific engine (bear in mind there are twenty-two) Caterpillar cannot be certain of this.

Trans-Spec filed its original complaint on or about August 23, 2004. It filed its first amended complaint on or about August 26, 2004. The first amended complaint purports to state claims for alleged breach of express warranty, alleged breach of implied warranties of merchantability and fitness for a particular purpose, and alleged violation of G.L. c. 93A, §§2 and 11.[4] <u>Amended Complaint and Jury Claim</u>, Counts I and II. It identifies the alleged c. 93A violations as having been the alleged breaches of warranty. *Id.,* ¶48. It also seeks declaratory relief. *Id.,* Count III. It contains no allegation that Caterpillar was negligent.

The court convened its Fed. R. Civ. P. 16 scheduling conference on October 27, 2004, and issued its scheduling order the same day. The order provides, among other things, that all motions to amend the pleadings were to be filed no later than March 23, 2005, and that factual discovery is to be complete by June 29, 2005. No motion to amend the pleadings was filed on or

---

[3] Trans-Spec has referred in the course of this litigation to flywheel housing problems of which Caterpillar has no record. *See generally* G.L. c. 106, §2-607(3) (claims for breach of warranty are barred if the buyer does not give timely notice of the breach to the seller). Caterpillar therefore cannot say definitively that all such problems were repaired at no cost to Trans-Spec.

[4] The first amended complaint makes reference in the breach of warranty count to 15 U.S.C. §2301, which is the Magnusson-Moss act. As the Magnusson-Moss act is expressly limited by its terms to cases involving consumer goods, however, the reference to s frivolous at best.

3

before March 23, 2005. About a week after the deadline, however, Trans-Spec filed the present motion. Trans-Spec asks leave to file a second amended complaint in which it deletes the count for declaratory relief and substitutes for it a count seeking recovery on a theory of "negligent design, development, assembly, manufacture, inspection, testing, marketing, advertising, and distribution" of the engines. The proposed second amended complaint does not identify any specific negligent conduct with respect to any of the twenty-two engines. That apparently is something Caterpillar would have to explore through discovery between now and June 29.

## ARGUMENT

1.  <u>Trans-Spec's Motion Must be Denied Because it has not Demonstrated Good Cause for the Court to Modify the Scheduling Order</u>

    Motions to amend the pleadings that are brought within the time specified for such motions in a pretrial scheduling order are "freely" granted "when justice so requires." Fed. R. Civ. P. 15(a). Once the scheduling order deadline for such motions has passed, however, the liberal standard of Rule 15(a) goes away. When the scheduling order deadline has passed, such motions may be granted only if the moving party demonstrates "good cause" for modifying the scheduling order. *E.g.*, <u>O'Connell</u> v. <u>Hyatt Hotels of Puerto Rico</u>, 357 F.3d 152, 154-155 (1st Cir. 2004) and cases cited; <u>Anda</u> v. <u>Ralston Purina, Co.</u>, 959 F.2d 1149, 1154-1155 (1st Cir. 1992); <u>Johnson</u> v. <u>Mammoth Recreations, Inc.</u>, 975 F.2d 604, 607-609 (9th Cir. 1992). *See also* Local Rule 16.1(G). "Good cause" in this context means that the moving party could not reasonably meet the scheduling order deadline despite having made diligent efforts to do so. <u>O'Connell</u>, 357 F.3d at 154-155; <u>Johnson</u>, 975 F.2d at 609.

> Unlike Rule 15(a)'s "freely given" standard, which focuses mostly on the bad faith of the moving party and the prejudice to the opposing party, Rule 16(b)'s "good cause" standard emphasizes the diligence of the party seeking the amendment. Prejudice to the opposing party remains relevant but is not the dominant criterion. Indifference by the

4

> moving party seals off this avenue of relief irrespective of prejudice because such conduct is incompatible with the showing of diligence necessary to establish good cause.

O'Connell, 357 F.2d at 155 (citations, some internal quotation marks, and internal brackets omitted.)

> The district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." Fed.R.Civ.P. 16 advisory committee notes (1983 amendment). Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end.

Johnson, 975 F.2d at 609 (some citations omitted).

Trans-Spec has failed to demonstrate that, if it had exercised reasonable diligence, it could not have filed its motion to amend the complaint during the nearly seven months that elapsed between the date the first amended complaint was filed and the March 23, 2005, deadline established by the scheduling order for filing motions to amend, or during the nearly five months that elapsed between the date the scheduling order was entered and the deadline it established for filing motions to amend. The best Trans-Spec's counsel can do is *say* in their motion, without supporting affidavit or other evidential material [as to which *see* Local Rule 7.1 ("Affidavits and other documents setting forth or evidencing facts on which the motion is based shall be filed with the motion") and Local Rule 16.1(G) ("The scheduling order shall specify that its provisions, including any deadlines, ... can be modified only by order of the judge, or the magistrate judge if so authorized by the judge, and only upon a showing of good cause supported by affidavits, other evidentiary materials, or references to pertinent portions of the record.")], that Caterpillar caused the delay in filing the motion because "Trans-Spec sought to rely on anticipated discovery [sic] from Caterpillar to support its negligence claim" but received discovery responses which its counsel find unsatisfactory. Trans-Spec omits, however, to direct the court's attention to any

5

specific discovery requests which were supposedly designed to elicit evidence on which to base a negligence count. It similarly omits any explanation of what specific information it expected to receive, but did not receive, that supposedly would have supported such a count. Vague gripes of that type do not amount to a "showing" of good cause for modifying a scheduling order even if there were any merit to them, which there is not.[5] Remarkably, Trans-Spec also omits to explain how, if it really needed better discovery responses to enable it to add a *timely* negligence count to its complaint, it has now nonetheless been able to file an *untimely* motion for leave to add just such a count even though no better responses have been forthcoming. How can that be so?

Of equal importance, review of the history of Trans-Spec's conduct of discovery demonstrates it did not act diligently.

The scheduling order was entered October 27, 2004. Trans-Spec thereafter waited more than a month-and-a-half, until December 16, 2004, to serve any discovery at all. <u>Affidavit of John A. K. Grunert</u>, ¶2 (Exhibit E to this Opposition.) Under Rules 33 and 34, Caterpillar's responses to that discovery were not due until January 18, 2005. Trans-Spec, however, wanted more time to respond to discovery Caterpillar had served on it earlier in the proceedings. Caterpillar was willing to give Trans-Spec more time, but only if Caterpillar was given a corresponding enlargement of time to respond to Trans-Spec's discovery: it did not seem fair to defense counsel, having served comparatively modest discovery on Trans-Spec considerably earlier than Trans-Spec served its far less modest discovery, that Caterpillar should have to

---

[5] Trans-Spec's complaints about supposed insufficiency of Caterpillar's responses are meritless. Caterpillar has detailed the reasons this is so in the opposition it filed to Trans-Spec's motion to compel further responses, which the court has. It is of interest in the context of this motion that, while Trans-Spec refers the court to its motion to compel for an explanation of why Trans-Spec deems Caterpillar's responses inadequate, there is no reference anywhere in that motion to any supposed need for further responses in order to obtain a factual basis for amending the complaint to add a negligence count. It is almost as if that alleged purpose of the discovery is something Trans-Spec invented just to have something to say in excuse of the untimeliness of the present motion.

respond more quickly than Trans-Spec. *Id.*, ¶3. So a motion for mutual enlargements of time to respond to discovery was filed and granted. Caterpillar's responses pursuant to that motion were due January 28, 2005. It served them that day. *Id.*

Two weeks passed. Then, on Friday afternoon, February 11, 2005, Trans-Spec's counsel faxed a 7-page single-spaced letter to Caterpillar's counsel complaining about its discovery responses and saying he would call in the next few days to discuss them. *Id.*, ¶4. The teleconference to which Trans-Spec's counsel referred occurred on March 4, 2005. <u>Affidavit of Christopher R. Howe</u>, ¶2 (Exhibit F to this Opposition). Little agreement was reached. *Id.* At that point, Trans-Spec knew it was not going to receive anything further that might bear on a negligence claim any time soon. Trans-Spec did not, however, turn its attention to preparing a motion to amend its complaint. Instead, it turned its attention to drafting a motion to compel further discovery responses, which it filed on March 15. Even then, there remained a week in which Trans-Spec could have filed a timely motion to amend; but it did not.[6]

While the foregoing account does not demonstrate *shocking* dilatoriness, "good cause" does not mean just absence of shocking dilatoriness. The foregoing account makes crystal clear that -- even assuming counterfactually that Trans-Spec's gripes about Caterpillar's discovery responses have both merit and relevance to the present motion -- Trans-Spec could easily have prepared and filed its motion to amend before the March 23 deadline. Trans-Spec offers no explanation for why it waited a month-and-a-half after the scheduling conference even to *initiate* discovery, and it is hard to think of what good reason there might have been for that delay: Caterpillar did not wait that long. If Trans-Spec's counsel *really* were thinking of adding a

---

[6] The negligence count Trans-Spec proposes to add is a bare-bones piece of notice pleading consisting of four conclusionary numbered paragraphs and a "wherefore" clause. The court will readily see that the proposed amended complaint, in these days of the wordprocessor and saved documents, would have taken about ten minutes to draft once someone decided to draft it. A timely motion to file that proposed amended complaint subject to the Rule 15(a) standard might have taken three, four, or even five times that long to prepare.

negligence count and *really* was planning to use discovery responses from Caterpillar as a basis for it, why did they wait two weeks after receiving the responses before initiating discussions about supposed inadequacies in them? They knew, after all, about the March 23 deadline for motions to amend. If Trans-Spec's counsel felt able, consistent with Fed. R. Civ. P. 11, to file a motion to amend on March 31 without having received any further discovery responses, why did they not feel equally able to file the identical motion promptly after learning during the March 4 discovery conference with defense counsel that they would get nothing more of substance voluntarily? Why did they devote their time to drafting a discovery motion, for which there was no impending deadline and which they knew would not be decided until after March 23 -- the Opposition was not even due until after that date -- instead of drafting a motion to amend and getting it filed in a timely way? Trans-Spec's motion offers no answer to any of those questions, and without convincing answers to them no "good cause" has been shown even if the court were to accept counsel's vague assertion that they were hoping to learn through discovery facts to help them prepare an amended complaint.

It is obvious what is really going on here. Trans-Spec's motion to amend is an afterthought. The proposed amendment does nothing to improve Trans-Spec's chance of winning this case (as to which see below) and is intended just to muck up the litigation and make it more expensive and inconvenient for Caterpillar to defend. Trans-Spec probably did not even seriously consider adding a negligence count until a week or two before it filed its motion. The adequacy or inadequacy of Caterpillar's discovery responses has nothing at all to do with the motion's untimeliness. Trans-Spec, if it really wanted to add a negligence claim, had no need for discovery from Caterpillar in order to draft a bare-bones count like the proposed new Count III.

In light of the governing law described above, Caterpillar will not spend a lot of time discussing prejudice. Suffice it to say that Caterpillar's written discovery requests (of which copies are attached to the affidavit which is Exhibit E) were framed without a negligence claim in mind because there was no reason for Caterpillar to have such a claim in mind. If Trans-Spec's belated motion to amend is allowed, Caterpillar will have to take written discovery from Trans-Spec designed to learn with respect to *each* of the twenty-two trucks involved in this case and with respect to *each* alleged engine failure in *each* of those twenty-two trucks (a) specifically what damage to non-engine components of the truck was allegedly caused by the engine failure, (b) specifically what compensable damage to other property was allegedly caused by each alleged engine failure in each truck, and (c) what Trans-Spec paid to correct each type of damage on each occasion it occurred. This is because, even under Trans-Spec's theory, any instance of engine failure which did *not* cause damage to non-engine truck components or to other property of Trans-Spec would not give rise to a negligence claim.[7] Once responses to that written discovery are obtained, there is a likelihood Caterpillar will have to serve non-party document-only subpoenas to obtain information related to the claimed damage, and it will likely have to take depositions of persons knowledgeable about the claimed damage and the expense Trans-Spec allegedly incurred to repair it. Yet the deadline for factual discovery is June 29. Trying to take that amount of discovery -- as well as the remaining discovery related to the *existing* claims that must be completed during that period - is likely to be a practical impossibility and, if not impossible, will certainly be impossible to conduct in an orderly way

---

[7] One problem with the way Trans-Spec has pursued this case is that it discusses the twenty-two trucks and the multiple problems it has had with them as if there was just one unitary breach of warranty. There are, however, twenty-two separate products involved in the case, each of which was covered by its own warranty. When the case is ultimately tried, Trans-Spec is going to have to prove a breach of warranty with respect to each alleged instance of engine problems experienced by each truck. Similarly particularized, though substantively different, proof would be needed with respect to the proposed negligence claim.

that accommodates the reasonable scheduling needs of witnesses and counsel. Placing Caterpillar in that position is unfair, as is placing Caterpillar in the position of having to ask for adjustments to the discovery schedule that it does not wish to see made. If this motion were being judged under the liberal Rule 15(a) standard, where prejudice to the opposing party may be a central concern, this kind of scheduling problem might not warrant denial; but the Rule 15(a) standard is not the one applicable to *this* motion. Under the standard applicable to *this* motion, Trans-Spec's want of diligence alone mandates denial; the fact that the price of allowing the motion would be to require amendment of the scheduling order to avoid impairing Caterpillar's right to full discovery is icing on the cake.

Trans-Spec's motion to amend should be denied for this reason alone. It is late and there is no good cause for modifying the scheduling order to permit late amendments to the pleadings. As the Court of Appeals has said, permitting litigants freely to disregard the deadlines in a scheduling order would, over the long term, effectively nullify Rule 16(b). *See, e.g.,* O'Connell, 357 F.3d at 155.

2.   Trans-Spec's Motion Should be Denied for the Separate Reason that the Proposed New Count Fails as a Matter of Law

Even under the liberal Rule 15(a) standard, it is well-settled that denial of a motion to amend is appropriate if the proposed amendment will be futile. *E.g.,* Hatch v. Dept. of Children, Youth, and their Families, 274 F.3d 12, 19 (1st Cir. 2001); Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 59 (1st Cir. 1990) *overruled on other grounds,* 367 F.3d 61 (1st Cir. 2001); Debreceni v. Bru-Jell Leasing Corp., 710 F. Supp. 15, 18 (D. Mass. 1989). This is true *a fortiori* under the more stringent "good cause" standard applicable to this motion.

The proposed new count purports to state a negligence claim. As set forth in the introductory paragraphs of this Opposition and in Exhibit B, however, Caterpillar expressly and

prominently disclaimed in connection with its sale of these engines all liability for negligence in connection with their manufacture, sale, or servicing.[8] That disclaimer was part of the deal just as, *e.g.*, the warranty obligations Caterpillar undertook in the same documents were part of the deal. Such a disclaimer is binding and effective at least where, as here, there is no averment or evidence of fraud, deceit, or duress in connection with it. Cormier v. Central Massachusetts Chapter of the National Safety Council, 416 Mass. 286, 288-289 (1993). This is especially so in light of the facts that (a) the case involves no claim for personal injuries, (b) the transaction was a commercial transaction rather than a "consumer" transaction, and (c) the plaintiff Trans-Spec is a substantial business that has been in operation for a long time and had bought lots of trucks before it bought the ones involved in this case. "... [T]here is no rule of general application that a person cannot contract for exemption from liability for his own negligence and that of his agents and servants." *Id.*, 288 (internal quotation marks omitted). So permitting Trans-Spec to amend its complaint to add the proposed negligence count will just mean more dispositive motion practice.

It is also likely that the proposed new count would fail as a matter of law under the so-called "economic loss" doctrine. In Massachusetts, a plaintiff who seeks recovery for impaired value of an allegedly defective product itself, the cost of repairing or replacing an allegedly defective product, or lost profits caused by a defect in a product, may not sue in tort: his remedy is strictly contractual. *E.g.*, Superior Kitchen Designs, Inc. v. Valspar Industries (U.S.A.) Inc., 263 F. Supp.2d 140, 146-147 (D. Mass. 2003); Arthur D. Little Intern., Inc. v. Dooyang Corp., 928 F. Supp. 1189, 1202 (D. Mass. 1996), *aff'd*, 147 F.3d 47 (1st Cir. 1998); Marcil v. John Deere Indus. Equip. Co., 9 Mass. App. Ct. 625, 630 n.3 (1980). Aware of this problem, Trans-

---

[8] Caterpillar also prominently disclaimed all liability for incidental and consequential damages caused by defects in the material or workmanship of the engines. *See* Exhibit B.

Spec's says *in its motion* that the allegedly defective engines "caused extensive property damage to Trans-Spec's trucks as well as oil leaks on Trans-Spec's property and the property of its customers." The court will search the proposed amended complaint in vain, however, for any allegations of damage to the trucks caused by alleged engine defects, and Trans-Spec has offered no evidential material, as to which *see* Local Rule 7.1, to substantiate what it says in the motion. The proposed amended complaint *does* make reference, in ¶23, to alleged oil leaks involving "several" of the allegedly defective trucks which "in some instances" occurred at a job site; but it does not allege that the any of the leaks caused actionable property damage. All its says is that they caused "friction" with some of Trans-Spec's customers "and even a loss of some business," *i.e.* exactly the kind of purely economic loss for which no recovery may be had in tort. There is no allegation, for example, that Trans-Spec had to pay to repave its driveway because of damage caused by leaking oil, or that it had to pay for groundwater remediation because of contamination caused by leaking oil. So on the face of the proposed amended complaint the proposed new count fails as a matter of law. The court should not grant a motion to amend -- especially a late one -- which will merely invite a Rule 12(b)(6) motion.

## CONCLUSION

Trans-Spec's belated motion to amend its complaint should be summarily denied. There is no good cause for modifying the scheduling order to permit the late amendment and the proposed new count does not even state a legally viable claim.

CATERPILLAR INC.,

By its attorneys,

CAMPBELL CAMPBELL EDWARDS
& CONROY, P.C.

_____
John A. K. Grunert (BBO: 213820)
One Constitution Plaza
Boston, MA  02129
(617) 241-3000

## CERTIFICATE OF SERVICE

I, John A. K. Grunert, hereby certify that on April 12, 2005, I served the within opposition by causing a copy to be sent electronically to Christian G. Samito, Esquire, Donovan Hatem LLP, Two Seaport Lane, Boston, MA  02210.

_____
John A. K. Grunert