UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TRANS-SPEC TRUCK SERVICE INC., <br> d/b/a Truck Service, <br><br>       Plaintiff <br><br> vs. <br><br> CATERPILLAR INC., <br><br>       Defendant | CIVIL ACTION NO. 04-11836-RCL |

## CATERPILLAR INC.'S RESPONSES TO TRANS-SPEC TRUCK SERVICE INC.'S FIRST SET OF INTERROGATORIES

The defendant Caterpillar Inc. ("Caterpillar") hereby responds pursuant to Fed. R. Civ. P. 33 to Trans-Spec Truck Service Inc.'s First Set of Interrogatories Propounded to the Defendant, Caterpillar Inc.

### OBJECTIONS TO DEFINITIONS

Caterpillar objects generally to the definition contained in ¶2 of the definitional section with which Trans-Spec has prefaced its interrogatories. The definition contained in ¶2, if accepted, would cause the defined term to be essentially meaningless and would cause every interrogatory in which the defined term appears to be ambiguous, vague, and overbroad. Caterpillar has therefore disregarded the definition contained in ¶2 and has understood the defined term, wherever it appears, in a reasonable, common sense fashion consistent with its ordinary meaning.

instances of servicing on some of the engines which are not, however, evidenced by any documentation submitted to Caterpillar or by any invoices or other business records contained among documents produced by Trans-Spec. If specific warrantable failures occurred but Trans-Spec did not submit timely claims for reimbursement of the cost of labor and parts reasonably necessary to repair the failures, then that fact forms part of the basis for Caterpillar's untimely notice defense. Generally, however, until Trans-Spec identifies specific instances in which a warrantable failure occurred which was not repaired in accordance with the terms of the applicable Caterpillar warranty, Caterpillar will be unable to provide a substantive answer to this interrogatory.

## INTERROGATORY NO. 7

Set forth comprehensively and in detail the factual basis for Caterpillar's claim that its breaches of implied warranties were part of a valid disclaimer by Caterpillar.

## RESPONSE

Caterpillar delivered an express written warranty with respect to each of the engines. Depending on the delivery date for the engine, that warranty was designated by Caterpillar either as SELF5271 or as SELF5302. With respect to products (like these engines) operating outside of Australia, Fiji, Nauru, New Caledonia, New Zealand, Papua New Guinea, the Solomon Islands, and Tahiti, both SELF5271 and SELF5302 stated conspicuously (in bold-faced type, larger in size than the general text of the warranty):

> **THIS WARRANTY IS EXPRESSLY IN LIEU OF ANY OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, EXCEPT CATERPILLAR EMISSION-RELATED COMPONENTS WARRANTIES FOR NEW ENGINES, WHERE APPLICABLE. REMEDIES UNDER THIS WARRANTY ARE LIMITED TO THE PROVISION OF MATERIAL AND SERVICES, AS SPECIFIED HEREIN. CATERPILLAR IS NOT RESPONSIBLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES.**

Trans-Spec has demanded and has obtained the benefits of the warranty Caterpillar gave with respect to each engine. Trans-Spec is a business corporation which purchased the trucks containing the engines exclusively for business use.

In addition, the On-Highway Vehicle Engine Extended Service Coverage contract which Trans-Spec executed stated conspicuously (in bold-faced type, larger in size than the general text of the contract):

> **CATERPILLAR DISCLAIMS ANY EXPRESS OR IMPLIED WARRANTIES IN CONNECTION HEREWITH, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.**

**REMEDIES UNDER THIS SERVICE CONTRACT ARE LIMITED TO THE PROVISION OF MATERIALS AND LABOR AS SPECIFIED HEREIN.**

**CATERPILLAR IS NOT RESPONSIBLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES.**

<u>INTERROGATORY NO. 8</u>

Set forth comprehensively and in detail the factual basis for Caterpillar's claim that Caterpillar disclaimed all warranties, express or implied.

<u>RESPONSE</u>

Caterpillar does not claim that it disclaimed all warranties, express or implied. Caterpillar delivered an express warranty with respect to the engines, designated by Caterpillar either as SELF5271 or as SELF5302, depending on the delivery date of the specific engine. Caterpillar disclaimed all *other* warranties, express or implied. It did so by including the following conspicuous (in bold-faced type, larger in size than the general text of the warranty) language in SELF5271 and SELF5302:

**THIS WARRANTY IS EXPRESSLY IN LIEU OF ANY OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, EXCEPT CATERPILLAR EMISSION-RELATED COMPONENTS WARRANTIES FOR NEW ENGINES, WHERE APPLICABLE. REMEDIES UNDER THIS WARRANTY ARE LIMITED TO THE PROVISION OF MATERIAL AND SERVICES, AS SPECIFIED HEREIN. CATERPILLAR IS NOT RESPONSIBLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES.**

Trans-Spec has demanded and has obtained the benefits of that warranty. Trans-Spec is a business corporation which purchased the trucks containing the engines exclusively for business use.

In addition, the On-Highway Vehicle Engine Extended Service Coverage contract which Trans-Spec executed stated conspicuously (in bold-faced type, larger in size than the general text of the contract):

**CATERPILLAR DISCLAIMS ANY EXPRESS OR IMPLIED WARRANTIES IN CONNECTION HEREWITH, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.**

**REMEDIES UNDER THIS SERVICE CONTRACT ARE LIMITED TO THE PROVISION OF MATERIALS AND LABOR AS SPECIFIED HEREIN.**

**CATERPILLAR IS NOT RESPONSIBLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES.**

INTERROGATORY NO. 9

Set forth comprehensively and in detail the factual basis for Caterpillar's claim that Trans-Spec's damages are due to misuse of Trans-Spec's C-12 engines.

RESPONSE

Caterpillar cannot provide a comprehensive answer to this interrogatory at this time. Caterpillar has not yet obtained adequate discovery from Trans-Spec or from other persons knowledgeable concerning the handling of the engines. Nor has Caterpillar obtained expert analysis on that subject. In addition, it appears from documents supplied by Trans-Spec in connection with its automatic disclosure that the frequency with which its engines required servicing varied widely from engine to engine. Caterpillar will, as discovery and investigation proceed, supplement its answer to this interrogatory insofar as may be appropriate under Fed. R. Civ. P. 26.

INTERROGATORY NO. 10

Set forth comprehensively and in detail the factual basis for Caterpillar's claim that Trans-Spec's losses were caused by the intervening, superseding misconduct of persons or the acts or omissions of third persons over whom Caterpillar exercised no control and for whose conduct Caterpillar is not responsible.

RESPONSE

Caterpillar cannot provide a comprehensive answer to this interrogatory at this time. Caterpillar has not yet obtained adequate discovery from Trans-Spec or from other persons knowledgeable concerning the handling of the engines. Nor has Caterpillar obtained expert analysis on that subject. Caterpillar was further aware when it served its Answer that the engines were installed in the trucks by Sterling Truck Corporation, not by Caterpillar, and that Caterpillar exercises no control over Sterling Truck Corporation's design, manufacture, or assembly of its products. Caterpillar was further aware that the manner in which engines are installed in vehicles or other machines, characteristics of the vehicles or other machines in which they are installed, and attachments that may be made to the engines, substantially affect the performance and durability of the engines themselves. In addition, it appears from documents supplied by Trans-Spec in connection with its automatic disclosure that the frequency with which its engines required servicing varied widely from engine to engine. Caterpillar will, as discovery and investigation

RESPONSE

Trans-Spec has not identified specific breaches of warranty with which it charges Caterpillar, so Caterpillar is not yet in a position to respond to an interrogatory of this nature. Caterpillar notes, however, that in its automatic disclosure Trans-Spec included pages, apparently prepared for purposes of this litigation, in which it identified alleged instances of servicing on some of the engines which are not, however, evidenced by any documentation submitted to Caterpillar. If specific warrantable failures occurred but Trans-Spec did not notify Caterpillar of them in time to enable Caterpillar to see and, if appropriate, preserve the relevant evidence, then that fact forms part of the basis for this defense. Generally, however, until Trans-Spec identifies specific instances in which a warrantable failure occurred which was not repaired in accordance with the terms of the applicable Caterpillar warranty, Caterpillar will be unable to provide a substantive answer to this interrogatory.

INTERROGATORY NO. 16

Set forth comprehensively and in detail the factual basis for Caterpillar's claim that Trans-Spec's C-12 engines were modified, altered or changed after they left Caterpillar's possession, custody, and/or control.

RESPONSE

Caterpillar sold the engines to Sterling Truck Corporation. Caterpillar no longer had possession, custody, or control of the engines once they were shipped to Sterling. Sterling, without Caterpillar's participation, installed the engines in the trucks it built for Trans-Spec, making such modifications, alterations, and changes to them as Sterling, and perhaps Trans-Spec, deemed appropriate or expedient. Moreover, once the trucks and engines were delivered to Trans-Spec by Sterling, they were never in the possession, custody or control of Caterpillar but were serviced on numerous occasions, most of them currently unknown to Caterpillar. It appears from documents produced by Trans-Spec in connection with its automatic disclosure that, when most of the allegedly warrantable failures experienced by the engines occurred, the engines had been out of Caterpillar's possession, custody or control for more than three full years. Caterpillar has not yet received information from Trans-Spec, Sterling, or others that is sufficient to enable it to answer this interrogatory comprehensively and in detail at this time. Should additional responsive information be obtained, Caterpillar will supplement its answer insofar as may be appropriate under Fed. R. Civ. P. 26..

INTERROGATORY NO. 17

Set forth comprehensively and in detail the factual basis for Caterpillar's claim that Trans-Spec's C-12 engines met or exceeded all applicable warranties.

RESPONSE

10

Caterpillar gave express warranties with respect to the engines which provided, in part, that if a defect in material or workmanship is found during the standard (2-year) warranty period, Caterpillar will, during normal business hours and through a place of business of a Caterpillar dealer or other source approved by Caterpillar, provide (at Caterpillar's choice) new, remanufactured or Caterpillar-approved repaired parts or assembled components needed to correct the defect; replace lubricating oil, filters, antifreeze and other service items made unusable by the defect; provide reasonable or customary labor needed to correct the defect, including labor for removal and installation when necessary to make the repair; and provide reasonable or customary towing to the nearest authorized repair facility or reasonable travel expenses from the nearest authorized repair facility, if the vehicle is inoperable or continued operation would result in additional engine damage. Caterpillar's express warranties provided, in part, that if a defect in material or workmanship is found during the extended (5-year or 500,000 miles) warranty period applicable to certain components and assemblies specified in the warranties, Caterpillar will, during normal working hours and at a place of business of a Caterpillar dealer or other source approved by Caterpillar, provide (at Caterpillar's choice) new, remanufactured, or Caterpillar-approved repaired parts or assembled components needed to correct the defect. Caterpillar's express warranties conspicuously disclaimed all other express warranties, except for any applicable Caterpillar warranties for emission-related components, and all implied warranties; conspicuously disclaimed responsibility for incidental or consequential damages; and conspicuously limited Caterpillar's responsibility to the provision of material and services as provided in the warranty. Caterpillar's obligations were contingent upon Trans-Spec's fulfillment of certain responsibilities identified in the warranty statements, including among others the provision of timely notice of warrantable failures, the due performance of required maintenance, etc. (For a complete definition of Caterpillar's warranty responsibilities, Caterpillar refers Trans-Spec to forms SELF5271 and SELF5302 which were produced by Caterpillar in connection with its automatic disclosure.) Caterpillar has, in fact, provided materials and services whenever notified of a warrantable failure, thereby fulfilling its warranties. Indeed, Caterpillar has, in an effort to further good customer relations, provided materials and services on many occasions when an identified failure was not warrantable, either because it occurred outside the applicable warranty period or otherwise. Caterpillar notes, further, that all of Trans-Spec's engines remain in use in its business nearly five years after Trans-Spec acquired them and that the trucks containing the engines all appear to have between 300,000 and 500,000 miles on them.

Caterpillar has not yet conducted the investigation and discovery needed to enable it to respond fully to this interrogatory. Should additional responsive information be obtained, Caterpillar will supplement its answer insofar as may be appropriate under Fed. R. Civ. P. 26.

INTERROGATORY NO. 18

11

## VERIFICATION

STATE OF ILLINOIS          §

                           § ss.

COUNTY OF PEORIA           §


David B. Anderson, being duly sworn, deposes and says:

1.    I am Manager of Technical Support for Caterpillar Inc.

2.    I am authorized to verify the foregoing Responses to Plaintiff's First Set of
      Interrogatories for and on behalf of the Defendant, Caterpillar Inc.

3.    I have directed others to assist me in searching corporate records and assembling
      the facts needed in preparing the foregoing responses.

4.    I have read the foregoing responses, and to the best of my knowledge and belief,
      these responses are true, accurate and complete as of this date.


_David B. Anderson_

David B. Anderson


Subscribed and sworn to before me on _January 28th_ , 2005.


_Shauntel R. Damron_
Notary Public


OFFICIAL SEAL
SHAUNTEL R. DAMRON
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 5-21-2008