UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11836-RCL

TRANS-SPEC TRUCK SERVICE, INC. )
d/b/a TRUCK SERVICE, )
    Plaintiff )
)
vs. )
)
CATERPILLAR INC. )
    Defendant )

**REPLY TO CATERPILLAR INC.'S OPPOSITION TO THE PLAINTIFF'S MOTION TO AMEND THE COMPLAINT AND REQUEST FOR ORAL ARGUMENT**

Plaintiff Trans-Spec Truck Service, Inc., d/b/a Truck Service ("Trans-Spec"), hereby replies to Defendant Caterpillar Inc.'s ("Caterpillar") *Opposition To The Plaintiff's Motion To Amend the Complaint* ("Opposition").

**A.    Caterpillar erroneously claims that it has honored its warranty obligations**

Caterpillar erroneously claims that, so far as it can determine, all of Trans-Spec's flywheel housing failures were repaired at no cost to Trans-Spec as well as that "all warranty-type problems for which a claim was made were repaired at no cost to Trans-Spec[.]" (Opposition, p. 2-3). Caterpillar further misrepresents that Trans-Spec has not identified any specific alleged breach of warranty with respect to any specific engine. (Opposition, p. 3).

---

[1] Caterpillar also states that some of Trans-Spec's problems are to be expected in a fleet of trucks that have driven hundreds of thousands of miles. (Opposition, p. 3). Caterpillar hopes to mislead the Court into believing that the frequent engine failures Trans-Spec endures are the result of normal wear and tear. Besides testimony from Kevin Holmes ("Holmes") – the President of Tri State Trucks Center, Inc. ("Tri State"), an authorized dealer and repairer of Caterpillar products – that flywheel housing failures are usually *extremely* rare (Holmes depo., 40.10-24, 42.1-10, 90.7-91.8, attached as Exhibit A), Caterpillar's own marketing literature represents that the C-12 engine should operate over 900,000 miles before requiring extensive maintenance, see Exs. B, C, and D. Exhibits C and D to Caterpillar's Opposition indicate flywheel housing failures on Trans-Spec's trucks as early as approximately 90,000 miles. All of the failures indicated in these exhibits occurred not only well below the Caterpillar Extended Service Coverage plan's 500,000 mile limit but also hundreds of thousands of miles below the 900,000 mile mark. Caterpillar's implication that Trans-Spec has enjoyed productive use of the trucks is spurious at best.

EXHIBIT 1

Had Caterpillar reviewed the documents produced by Trans-Spec pursuant to its Automatic Disclosures tendered on November 10, 2004, it would not offer such unfounded assertions. Trans-Spec's Automatic Disclosures document more than sixteen separate flywheel housing repairs performed in house by Trans-Spec on the engines. (Howard aff., ¶ 2, attached as Exhibit E). To date, Trans-Spec has had to make no less than **eighteen** in house repairs to the flywheel housings on the trucks at issue, in addition to performing other work related to the damage caused by the defective Caterpillar C-12 engines. (Howard aff., ¶ 3). Trans-Spec had to purchase and install a new engine in one of its trucks. (Howard aff., ¶ 4). Caterpillar had full knowledge, in advance, of the repair work performed by Trans-Spec, and Milton CAT's Al Cardoza routinely inspected the repair work following its completion. (Howard aff., ¶ 5). Nonetheless, and in full breach of its warranty obligations, Caterpillar declined to reimburse Trans-Spec in any way for either parts or labor associated with these repairs. (Howard aff., ¶ 6).[2]

**B.    Caterpillar's dilatory discovery responses caused Trans-Spec's delay in filing its Motion to Amend and Caterpillar's other arguments in opposition are not a reason to deny Trans-Spec's addition of a negligence claim**

Throughout this litigation, Caterpillar has shirked its duty in responding to valid discovery requests duly served. Unfortunately, Caterpillar responded to Trans-Spec's discovery requests with pervasive vagueness, inappropriate objections, dilatoriness, refusal to look for documents easily obtainable from Caterpillar's files, and, in some cases, unacceptable duplicity.[3]

---

[2] Other breaches are becoming known through ongoing discovery. For instance, on April 11, 2005, Holmes testified that Caterpillar, through Milton Cat, instructed Tri State to patch a Trans-Spec flywheel house that had completely failed. Despite Tri State's protestations that such patching would never hold and that this was an inappropriate repair considering the scope of the problem, Caterpillar refused to pay for any additional repair. (Holmes depo., 80.12-81.22).

[3] Caterpillar inaccurately represents that Trans-Spec first objected to its discovery responses by letter on February 11, 2005 but did not follow up with a telephone call until March 4, 2005. (Opposition, p. 7). Trans-Spec's counsel called Caterpillar's counsel to discuss the issues raised in its February 11, 2005 letter on February 14, 23, 28, and March 1. (Samito Aff., ¶ 3, attached as Exhibit F). During the March 1 telephone call, Caterpillar's counsel, Attorney John A.K. Grunert, expressed surprise that no one had returned the voice mails Trans-Spec's counsel had been leaving. (Samito Aff., ¶ 4). Attorney Grunert explained that he had no time to discuss the matter as he was in the middle of preparing for a trial in another matter. (Samito Aff., ¶ 5). Finally, on March 4, 2005, Attorneys Richard P. Campbell

For example, Caterpillar's counsel has misrepresented the existence and capabilities of Caterpillar's database (Samito Aff., ¶ 8) This database allows one to input a specific engine's serial number and review its entire history in detail or enter an appropriate search term to globally generate all service claims concerning a particular part for a specific engine model. (Holmes depo., 84.5-87.2). Perceiving the devastating effect this would have on its defense, however, Caterpillar's counsel denied the existence of the database during a telephone conference between Attorney John A.K. Grunert for Caterpillar and Attorneys Christian G. Samito and Nancy M. Reimer for Trans-Spec on January 28, 2005. (Samito Aff., ¶ 9). On April 11, 2005, however Kevin Holmes ("Holmes") – the President of Tri State Truck Center Inc. ("Tri State"), an authorized Caterpillar dealer and repairer – confirmed the existence of the Caterpillar database during his deposition. (Holmes depo., 84.5-87.2) Holmes also verified the database's powerful capabilities. (Holmes depo., 84.5-87.2)

Similarly, Caterpillar continues to deny Trans-Spec full discovery into the history of the C-12 engine, as well as discovery regarding the 3126, 3176, C-10 and C-13 engines. Caterpillar itself refers to all five models as "generations of C-12 engines," see Caterpillar Response to Request for Documents Number 3, attached as Exhibit G. Holmes testified that main difference between the C-12 and C-13 is that the latter engine model complies with more recent emissions regulations. (Holmes depo, 96.17-97.8). Trans-Spec seeks this information for its comparative value as well as its ability to show the capabilities, performance, and defects unique to the C-12 (Samito Aff., ¶ 10). Furthermore, Trans-Spec's document requests and interrogatories specifically sought detailed information regarding the development, capabilities, and subsequent performance

---

and Christopher R. Howe, representing Caterpillar, participated in a scheduled telephone conference with Attorneys Christian G. Samito and Nancy M. Reimer, representing Trans-Spec. (Samito Aff., ¶ 6). This conference, which addressed the issues raised in the February 11, 2005 letter, lasted only twenty minutes due to other commitments by Caterpillar's counsel. (Samito Aff., ¶ 7).

and repair record of the C-12. (See Document Request Numbers 1, 2, 3, 4, and 9 and Interrogatory Number 4, attached as Exhibits H and I, respectively). Unfortunately, Caterpillar refused to produce all responsive information pursuant to these requests.

Trans-Spec intended to rely on the above information sought from Caterpillar's database as well as regarding the C-12 engine and related models in order to assess and, if appropriate, assert its negligence claim. (Samito Aff., ¶ 11). Anticipating that it would file a negligence count against Caterpillar, Trans-Spec drafted discovery requests to elicit specific information to support such a claim. (Samito Aff., ¶ 12). Trans-Spec also assumed that Caterpillar would produce responsive documents sought pursuant to duly served discovery requests in a timely manner, not force Trans-Spec to engage in procedural litigation in a futile effort to expend Trans-Spec's time and resources. Trans-Spec's negligence claim is not meant to "muck up the litigation," as Caterpillar's counsel ineloquently contends on page 8 of its Opposition. Instead, Trans-Spec asserts a bona fide claim based on its good faith belief that Caterpillar negligently designed, developed, assembled, manufactured, inspected, tested, marketed, advertised, and distributed the C-12 engines purchased by Trans-Spec. (Howard Aff., ¶ 7).

Trans-Spec sought to rely on anticipated discovery from Caterpillar to support its negligence claim. (Samito Aff., ¶ 13). Caterpillar's dilatoriness, however, prevented it from being able to do so. (Samito Aff., ¶ 14). While Trans-Spec hoped that its Motion to Compel and subsequent pleadings, including those evidencing its knowledge of the disavowed database, would have forced Caterpillar to act appropriately, Caterpillar's refusal to do so forced Trans-Spec to file its late Motion to Amend. (Samito Aff., ¶ 15). Trans-Spec admits that the timeliness of its Motion to Amend, as well as the specificity of its negligence allegations, is not ideal Unfortunately, Trans-Spec's good cause for filing in this manner stems from Caterpillar's own

- 4 -

action – or lack thereof – in not producing discoverable documents to Trans-Spec. (Samito Aff., ¶ 16, 17).

Caterpillar's argument that allowing the addition of Trans-Spec's negligence claim would force an adjustment in the discovery deadline is not a reason to deny the Motion to Amend. Discovery deadlines are imposed to enforce the efficient and vigorous prosecution of a lawsuit, not rigidly prohibit the addition of a good faith claim. This point is all the more compelling where the opposing party's dilatoriness caused the delay and prevented Trans-Spec from prosecuting this matter as quickly as it intended. Discovery deadlines are not statutes of limitation and, for the good reasons shown by Trans-Spec, they can be adjusted by this Court if need be.

Likewise, Caterpillar's argument that allowing Trans-Spec's Motion to Amend would likely result in its having to take additional written discovery from Trans-Spec is not a reason to deny addition of Trans-Spec's negligence claim. Caterpillar has already received extensive documentation pursuant to the Automatic Disclosures tendered on November 10, 2004 as well as subsequent document productions. Unlike Caterpillar, Trans-Spec has nothing to hide in this matter and has fully cooperated with Caterpillar's discovery efforts. Thus far, other than attorney-produced materials, Trans-Spec has fully opened its files to Caterpillar. (Howard Aff., ¶ 8). Other than propounding several additional interrogatories, Caterpillar already has access to all of Trans-Spec's documentation. (Howard Aff., ¶ 9).

Caterpillar's contention that allowing Trans-Spec's Motion to Amend would result in more work in this case is similarly inappropriate and troubled. This is a multi-million dollar litigation. Furthermore, while its outcome might not matter much to Caterpillar, its outcome determines the perpetuation or demise of a local company that has served New England's oil delivery needs for years.

Finally, Trans-Spec refers to pages 4-5 of its underlying Motion to Amend regarding Caterpillar's misguided argument that the economic loss doctrine bars the negligence claim against it. The damage caused by Caterpillar's defective engine units was not confined to the engines alone. (Howard aff., ¶ 10; see also Holmes depo., 47.19-49.10). Caterpillar's defective engine units not only caused damage to other critical systems throughout the trucks, they caused oil leaks which damaged Trans-Spec's property and that of Trans-Spec's customers. (Howard aff., ¶ 11; see also Holmes depo., 47.19-49.10).

WHEREFORE, Trans-Spec respectfully requests that this Court allow this Motion to Amend Complaint for the foregoing reasons.

Respectfully submitted,
TRANS-SPEC TRUCK SERVICE, INC.
d/b/a TRUCK SERVICE
By its Attorneys,

*/s/ Christian A. Samito*

Nancy M. Reimer, Esq., BBO#555373
Christian G. Samito, Esq., BBO#639825
Donovan Hatem, LLP
Two Seaport Lane
Boston, MA 02210
(617) 406-4500

Date: April 20, 2005

### REQUEST FOR ORAL ARGUMENT

If the Court deems it necessary, Trans-Spec requests oral argument on its *MOTION TO AMEND COMPLAINT*.

## CERTIFICATE OF SERVICE

I, Christian G. Samito, hereby certify that on this 20th day of April, 2005, I served a copy of the foregoing, by mail, postage prepaid to:

John A. K. Grunert, Esq.
Christopher Howe, Esq.
Campbell Campbell Edwards & Conroy
One Constitution Plaza, 3rd Floor
Boston, MA 02129

                                                     Christian G. Samito, Esq.

00910957