UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TRANS-SPEC TRUCK SERVICE INC., D/B/A TRUCK SERVICE <br><br> Plaintiff, <br><br> v. <br><br> CATERPILLAR INC. <br><br> Defendant. | CIVIL ACTION NO.:04-11836RCL |

## SECOND AMENDED COMPLAINT AND JURY CLAIM

The plaintiff, Trans-Spec Truck Service Inc., d/b/a Truck Service, by and through their undersigned counsel, files this Complaint against the defendant, Caterpillar Inc., and alleges the following:

## THE PARTIES

1.  Plaintiff, Trans-Spec Truck Service Inc., d/b/a Truck Service ("Trans-Spec"), is a duly organized Massachusetts corporation with its principal place of business located at 7 Cristo Lane Millbury, Massachusetts 01527.

2.  Defendant, Caterpillar Inc. ("Caterpillar"), is a duly organized foreign corporation with its principal place of business located at 100 N.E. Adams, Peoria, Illinois 61629.

## JURISDICTION AND VENUE

3.  Plaintiff, Trans-Spec., is a duly organized Massachusetts corporation with its principal place of business located at 7 Cristo Lane, Millbury, Massachusetts 01527.

4.  Caterpillar is a duly organized foreign corporation with a principal place of business at 100 N.E. Adams, Peoria Illinois 61629. Caterpillar is in the business of manufacturing and selling heavy equipment and heavy-duty engines throughout the United States and conducts business in the Commonwealth of Massachusetts. Caterpillar is engaged in trade or commerce as defined by Mass. Gen. L. ch. 93A. Caterpillar's agent for service in Massachusetts is CT Corporation System, 101 Federal Street, Boston, Massachusetts, 02210

5. The jurisdiction of this Court is invoked and is proper pursuant to 28 USC §1331, on the basis of the existence of a federal question and pursuant to 28 U.S.C. Sec. 1332(a), on the basis of diversity of the parties.

6. The amount in controversy in this matter exceeds $75,000.

7. Venue in this Court is proper pursuant to 28 USC §1391(b) and the Local Rules of the United States District Court for the District of Massachusetts.

## FACTS

8. On or about March 23, 1999, Trans-Spec and Sterling Truck Corporation ("Sterling") prepared a specification proposal for Trans-Spec's anticipated purchase of twenty-two heavy-duty, custom-built trucks to be used by Trans-Spec's oil delivery service and dump trailer operations. This March 23, 1999 specification proposal contemplated the installation of a C-12 model engine, manufactured by Caterpillar, in each of the trucks. See Specification Proposal, attached as Exhibit A.

9. An officer of Trans-Spec, Joseph M. Howard, Jr. ("Howard"), met with Caterpillar representative Harry Calderbank and Sterling representative Bob Kerrick at the Sterling facility at St. Thomas, Ontario, Canada, to discuss the exact specifications and intended use for the trucks Trans-Spec planned to have custom-built.

10. Following this meeting, the parties signed off on a line ticket which delineated the final components to be included in the trucks.

11. Caterpillar shipped completely-assembled C-12 model engines to Sterling, and the engines were then incorporated into the trucks pursuant to the line ticket.

12. Trans-Spec accepted delivery of the trucks in or around December 1999 and January 2000.

13. Each truck cost Trans-Spec $74,500.00 plus a $5,200.00 set-up charge.

14. By 2001, serious problems with the trucks began to manifest themselves. Specifically, flywheel housings began loosening from the Caterpillar engines. Caterpillar reimbursed Sterling for its repairs to a total of six Trans-Spec trucks that experienced this flywheel housing failure in 2001 and 2002.

15. When a seventh truck became inoperable due to engine difficulties, Caterpillar refused to pay for any more repairs to trucks of the Trans-Spec fleet. This includes two trucks that are now permanently disabled because their engine blocks are completely broken.

16. Since that time, on average, six Trans-Spec trucks have been down at any given time due to Caterpillar engine-related issues, costing Trans-Spec a loss of $425.00 per day per truck. In June 2004, for example, ten trucks were out of service and as of August 23, 2004, eight out of twenty-two trucks are out of service with major engine problems. Trans-Spec's business requires that it operate all of its trucks six days a week. Trucks of the specification Trans-Spec was using cannot be rented for temporary use.

17. The major design defect in the Caterpillar C-12 engine block that is giving rise to the engine difficulties is its propensity to crack due to the added torque generated by its increased horsepower. For examples, see the photographs of cracked C-12 engine blocks, formerly in Trans-Spec's trucks, attached as Exhibit B. Caterpillar knew or should have known of this design defect in its C-12 engine block and Caterpillar has had full opportunity to inspect and examine the engines in question as well as to repair them pursuant to their warranty. Caterpillar has, however, failed to take adequate and appropriate remedial steps to address the problems once it became aware of them.

18. Upon Caterpillar's demand, in January 2004, Sterling agreed to supply transmission mounts to be installed in all the trucks in an effort to provide additional support and prevent torque-related breakages.

19. Sterling did not fully supply the transmission mounts until April 2004. They were installed into all the trucks to no effect. For example, a mount replaced on June 4, 2004 has recently failed.

20. As of May 2004, Trans-Spec has also had to perform in-house repairs, with Caterpillar's knowledge and assent, on the flywheel housings of sixteen trucks at a cost in parts of $5,323.40; additional labor of between fifteen to twenty-five hours at $68.50 per hour; and down time of two to four weeks per truck in order to make the necessary repairs.

21. In some instances, this same repair procedure had to be performed multiple times. For example, one truck has had its flywheel housing replaced four times.

22. The problems described above fell under the Caterpillar warranty and should have been rectified by Caterpillar. See Warranty, attached as Exhibit C. Caterpillar's failure to do so forced Trans-Spec to take this action.

23. These engine problems have resulted in several of the trucks leaking oil, a violation of environmental laws. In some instances, the oil leakage began while the truck was at a job site. This caused friction between Trans-Spec and some of its customers and even a loss of some business.

24. In keeping with its traditional practice of maintaining a relatively new truck fleet, Trans-Spec originally planned to trade in these twenty-two trucks in June 2004 so as to purchase

new vehicles. If working properly, the trucks could be sold for $45,000 per unit. Trans-Spec was unable to do so, however, in light of the faulty engines.

25. The industry standard involves a company such as Trans-Spec employing one mechanic per twenty-two trucks. As a result of the constant and continual breakdowns among the twenty-two trucks in question, Trans-Spec has had to employ three more mechanics than it otherwise would have at a cost of $35 per hour per mechanic working a minimum of fifty-five hours a week.

26. On June 9, 2004, a meeting was held as to Trans-Spec's difficulties with the Caterpillar engines. Howard and Robert Barton ("Barton") represented Trans-Spec, Troy N. Guidotti and Al Cardoza represented Caterpillar, Edward Blake and Michael Bumpus represented Sterling, and William Wicher represented Minuteman Trucks Inc. (the dealer through which Trans-Spec purchased the trucks in 1999).

27. At this June 9, 2004 meeting, Caterpillar said that it would repair all of the engine breakdowns pursuant to its warranty, thus acknowledging that the engine problems were Caterpillar's responsibility.

28. In August 2004, Howard and Barton met with Steve W. Schoening, Caterpillar's Northeast Region Manager, who reiterated that Caterpillar needed to address Trans-Spec's situation and assured that it was not Trans-Spec's fault.

29. Caterpillar's delay in making this acknowledgement pursuant to its warranty, however, has gravely damaged Trans-Spec. Furthermore, even Caterpillar's offer to continually replace the engine blocks does not provide a permanent solution to Trans-Spec's costly problem. Repeated breakdowns will continue to cause down time, oil leakage, the need for increased truck and maintenance staff, an inadequate service to Trans-Spec's customers, resulting in a loss of its business – a significant and crippling financial burden on Trans-Spec.

30. The precarious position in which Caterpillar has placed Trans-Spec is not confined to Trans-Spec's financial health. Trans-Spec transports approximately 85% of the heating oil supplied to the Commonwealth of Massachusetts. As Trans-Spec is responsible for transporting oil to, among other clients, hospitals and police and fire departments across Massachusetts, the CSX and Amtrak rail lines, most of the power plants in Massachusetts, the Massachusetts Bay Transportation Authority, the University of Massachusetts, Massachusetts Institute of Technology, schools in the Brookline Co-op system, Department of Public Works projects across the entire Commonwealth, and various municipalities and state parks, in addition to clients in New York and Connecticut, it must have its truck fleet operating at one hundred percent efficiency by November 15, 2004, it must have an efficient and reliable truck fleet operating.

31.  If Trans-Spec does not have a fully operational truck fleet, grave and dangerous repercussions across New England will result. Simply put, the transportation of heating oil in this Commonwealth would be crippled.

## COUNT I

### Breaches of Warranties of Merchantability and Fitness and Express Warranties

32.  Plaintiff repeats and realleges the contents of paragraphs 1 through 31 as if set forth in full herein.

33.  Defendant Caterpillar is a designer, manufacturer, distributor and marketer of goods and therefore has extended express and implied warranties concerning the product at issue in this action.

34.  From 2001 to the present, serious defects in the engines, specifically their crankshaft seals, flywheel housings, and cylinder block casting, supplied by Caterpillar have caused continual, long-term breakdowns among the twenty-two trucks.

35.  Caterpillar knew or should have known of the design defects in its C-12 engine block and its propensity to crack due to the added torque generated by its increased horsepower.

36.  As a result of the engine defects, Caterpillar has breached several warranties under Massachusetts law.

37.  Caterpillar made expressed and/or implied warranties of merchantability, safety and fitness for ordinary purposes, pursuant to Mass. Gen. L. ch. 106, §§ 2-313; 2-314; and 2-315, for which the trucks were to be used, and made further warranties that the trucks would be fit for the particular purpose for which they were to be used. All of these warranties were relied upon by Plaintiff.

38.  Caterpillar made express warranties, pursuant to 15 USC § 2301 *et seq.* that the engines, and specifically their crankshaft seals, flywheel housings, and cylinder block casting, were to be covered for repair or replacement. Caterpillar drafted these warranties. All of these warranties were relied upon by Plaintiff.

39.  Said warranties were breached by Caterpillar and the engines were not merchantable, not fit for the ordinary purposes for which they are used, not fit for the particular purposes for which they are used at the time of the accident, and not repaired when they broke.

40.  Timely notification of said breach was given by Plaintiff and Caterpillar had full opportunity to inspect or examine its engines as well as to repair them pursuant to their warranty.

Caterpillar has failed to take adequate and appropriate remedial steps to address the problems once they became known to it.

41. The injuries sustained by the Plaintiff were the direct and proximate result of the negligence and breaches of warranties by Caterpillar.

42. The damages accrued by the Plaintiff to date now exceeds $ 2.5 million, and includes, without limitation, direct, incidental and consequential damages, costs of repair, loss of use, costs for additional service employees who would not otherwise have been necessary, as well as attorneys' fees and court costs.

43. Plaintiff seeks recovery with interest thereon as available at law.

WHEREFORE, Plaintiff, Trans-Spec Truck Service Inc., d/b/a Truck Service, hereby demands judgment by this Court against Defendant, Caterpillar, Inc., in an amount which is adequate to compensate it for its damages together with interest, costs, and attorneys' fees.

## COUNT II

### Violation of Mass. Gen. L. ch. 93A

44. Plaintiff repeats and realleges the contents of paragraphs 1 through 43 as if set forth in full herein.

45. At all relevant times, Caterpillar was engaged in trade or commerce within the meaning of Mass. Gen. L. ch. 93A, § 1(b).

46. The conduct of Caterpillar constituted a violation of the Massachusetts Consumer Protection Act, Mass. Gen. L. ch. 93A, § 11, causing Trans-Spec substantial loss and injury in excess of $ 2.5 million.

47. The conduct of Caterpillar complained of herein occurred primarily and substantially in the Commonwealth of Massachusetts.

48. Caterpillar breached its warranties under Massachusetts and federal law, statute and regulation, and therefore, is guilty of violation of Mass. Gen. L. ch. 93A, §§ 2 and 11 by its breaches of warranties and duties pursuant to the statutes and regulations.

49. Caterpillar's violations of the Massachusetts Consumer Protection Act were willful and/or knowing violations of said statute, entitling Plaintiff to recovery of multiple damages pursuant to Mass. Gen. L. ch. 93A, § 11.

50. As a direct and proximate result of Caterpillar's unfair and deceptive acts and practices and violations of Mass. Gen. L. ch. 93A, Plaintiff has been seriously injured and significantly damaged, suffering, without limitation, direct, incidental and consequential damages, costs of repair, loss of use, costs for additional service employees who would not otherwise have been necessary, as well as attorneys' fees and court costs.

WHEREFORE, Plaintiff, Trans-Spec Truck Service Inc., d/b/a Truck Service, hereby demands judgment by this Court against Defendant, Caterpillar, Inc., in an amount which is adequate to compensate it for its damages, trebled pursuant to G.L. c. 93A § 11, together with interest, costs, and attorneys' fees.

## COUNT III

### Negligence

51. Plaintiff repeats and realleges the contents of paragraphs 1 through 50 as if set forth in full herein.

52. The injuries sustained by Trans-Spec are the direct and proximate result of Caterpillar's negligent design, development, assembly, manufacture, inspection, testing, marketing, advertising, and distribution of the C-12 engines purchased by Trans-Spec.

53. As a direct and proximate result of Caterpillar's negligence, Trans-Spec has accrued damages to date in excess of $2.5 million, including, without limitation, direct, incidental, and consequential damages, costs of repair, loss of use, costs for additional service employees who would not otherwise have been necessary, as well as attorneys' fees and court costs.

54. Plaintiff seeks recovery with interest thereon as available at law.

WHEREFORE, Plaintiff, Trans-Spec Truck Service Inc., d/b/a Truck Service, hereby demands judgment by this Court against Defendant, Caterpillar, Inc., in an amount which is adequate to compensate it for its damages together with interest, costs, and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Trans-Spec Truck Service Inc., d/b/a Truck Service, demands that this Court:

1. Award money damages to the Plaintiff in an amount to be determined at trial, in excess of $2.5 million, exclusive of interest, and treble the damages pursuant to G.L. c. 93A § 11;

2. Award multiple, consequential and punitive damages;

3. Award exemplary damages pursuant to Mass. Gen. L. ch. 93A;

4. Award interest;

5. Award attorneys' fees, costs and disbursements of this action; and,

6. Order such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff, Trans-Spec Truck Service Inc., d/b/a Truck Service, requests a jury trial.

Plaintiff,
TRANS-SPEC TRUCK SERVICE INC.,
D/B/A TRUCK SERVICE
By their attorneys

*/s/ Christian G. Samito/*

Nancy Reimer, Esq., BBO#555373
Christian G. Samito, Esq., BBO#639825
Donovan Hatem, LLP
Two Seaport Lane
Boston, MA 02210
(617) 406-4500

Date: May 24, 2005

00906904

## CERTIFICATE OF SERVICE

I, Christian G. Samito, hereby certify that on this 24th day of May, 2005 I caused a copy of the foregoing SECOND AMENDED COMPLAINT AND JURY CLAIM to be mailed, postage prepaid to:

Richard P. Campbell, Esq.
John A. K. Grunert, Esq.
Christopher Howe, Esq.
Campbell Campbell Edwards & Conroy
One Constitution Plaza, 3rd Floor
Boston, MA 02129

_____
Christian G. Samito

00906904