UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TRANS-SPEC TRUCK SERVICE INC., d/b/a TRUCK SERVICE, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CATERPILLAR INC., )<br>)<br>Defendant ) | CIVIL ACTION NO. 04-11836-RCL |

MEMORANDUM IN SUPPORT OF CATERILLAR INC.'S MOTION TO
DISMISS THE SECOND AMENDED COMPLAINT PURSUANT
TO FED. R. CIV. P 12(b)(6)

The plaintiff, Trans-Spec Truck Service Inc. ("Trans-Spec"), avers in its Second Amended Complaint that in 1999 it purchased twenty-two custom-built Sterling Truck Corporation trucks for use in its business.[1] Second Amended Complaint, ¶¶8 and 26. Sterling built the trucks using Caterpillar model C-12 engines supplied to Sterling by the defendant, Caterpillar Inc. ("Caterpillar"). *Id.*, ¶11. Trans-Spec accepted delivery of the fully assembled trucks in December 1999 and January 2000. *Id.*, ¶12. The express warranty Caterpillar gave Trans-Spec, *see id.*, ¶22 and the Exhibit C referenced in it, contained the following language in bold-faced type, larger in size than most of the rest of the text:

> **CATERPILLAR DISCLAIMS ANY EXPRESS OR IMPLIED WARRANTIES IN CONNECTION HEREWITH, INCLUDING ANY**

---

[1] Consistent with the well-known standard for deciding motions brought under Fed. R. Civ. P. 12(b)(6), Caterpillar recites the averments of fact in the Second Amended Complaint as if they were all true. Naturally, Caterpillar's acceptance of the truth of the averments in the Second Amended Complaint is for purposes of this Rule 12(b)(6) motion only. Many of those averments are, in fact, flat out false; but their falsity is not relevant for present purposes.

WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

In 2001 Trans-Spec began to experience serious problems with the C-12 engines in its trucks. *Id.*, ¶14. The principal problem was loosening flywheel housings. *Id.* Caterpillar paid for repair of some of the engine problems under the warranty it gave with respect to the engines, but not for all of them. *Id.*, ¶¶14 and 15. Repeated and continuing engine problems have caused substantial down time for Trans-Spec's trucks, causing Trans-Spec to incur not only the expense of repairing engines which Caterpillar would not pay to repair but also lost income and impaired ability to re-sell the trucks in accordance with its usual practice of replacing its truck fleet every four years. *Id.*, ¶¶16, 20, and 24. In addition, the engine problems have sometimes caused oil leaks which have resulted in violations of environmental laws and, because the leaks sometimes occurred at customers' job sites, caused friction with customers and lost business. *Id.*, ¶23. Trans-Spec avers the engine problems are caused by a design defect in the engines. *Id.*, ¶17.

Trans-Spec commenced this action in August, 2004. The original and first amended complaints purported to state claims for alleged breaches of express and implied warranties, violation of the Magnusson-Moss Warranty Act, 15 U.S.C. §2301 *et seq.*, and violation of G.L. c. 93A, §§2 and 11. On May 20, 2005, the Court granted Trans-Spec's motion for leave to file a second amended complaint containing a count purportedly based on negligent design of the engines.[2] The breach of warranty and Chapter 93A counts in the Second Amended Complaint are identical to those in the original and first amended complaints.

---

[2] The Second Amended Complaint also omits requests for injunctive and declaratory relief that were contained in the original and first amended complaints.

2

All of Trans-Spec's claims fail as a matter of law on the face of the Second Amended Complaint, even assuming counterfactually that each and every factual averment in that Second Amended Complaint is true.

- The claim for breaches of both express and implied warranties are time barred by the applicable statute of limitations.

- So much of the claim as is for breach of implied warranties is barred by the conspicuous disclaimer of all implied warranties contained in what Trans-Spec alleges is the applicable warranty.

- The claim under 15 U.S.C. §2301 *et seq.*, the Magnusson-Moss Warranty Act, fails because that statute does not apply to goods like these trucks which are acquired for business, rather than consumer, use.

- The Chapter 93A claim fails because it is based solely on the alleged breaches of warranty, and therefore is time-barred just as the breach of warranty claims are.

- The negligence claim fails by virtue of the so-called economic loss doctrine because there is no averment in the Second Amended Complaint that the alleged engine defects have caused damage to any of Trans-Spec's property other than the allegedly defective engines themselves.

1. The Breach of Express and Implied Warranty Claims are Barred as a Matter of Law by the Applicable Statute of Limitations

Trans-Spec alleges it purchased the twenty-two trucks containing the Caterpillar engines in 1999, took delivery of some of the trucks (with the engines in them) in December 1999, and took delivery of the rest of them in January 2000. The docket shows Trans-Spec commenced this action in August 2004, much more than four years after it took delivery of the trucks and engines.[3]

General Laws c. 106, §2-725 provides, in relevant part:

---

[3] Caterpillar's delivery of the engines to Sterling, of course, occurred before the trucks containing the engines were delivered to Trans-Spec. See Second Amended Complaint, ¶11. Because even delivery of the *trucks* occurred considerably more than four years before the action was commenced, however, this case does not present the issue as to which delivery -- delivery of the engines to their purchaser Sterling or delivery of the trucks (containing the engines) to their purchaser Trans-Spec -- is the relevant one for statute of limitations purposes.

> (1) An action for breach of any contract for sale must be commenced within four years after the cause of action accrues. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.
>
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. *A breach of warranty occurs when tender of delivery is made,* except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

(Emphasis supplied.) The statute of limitations contained in §2-725, running from the date of delivery rather than from the date of injury or from the date the plaintiff knew of the breach, is the one applicable to claims like this that are essentially contractual in nature rather than tort-based. Bay State-Spray & Provincetown Steamship, Inc. v. Caterpillar Tractor Co., 404 Mass. 103, 110-111 (1989). So on the face of the Second Amended Complaint, Trans-Spec's breach of warranty claims (Count I) are all time-barred and must be dismissed.

2.  <u>The Claims for Breach of Alleged Implied Warranties Fail as a Matter of Law for the Separate Reason that the Second Amended Complaint Discloses that all Implied Warranties Were Disclaimed by Caterpillar</u>

General Laws. c. 106, §§2-314 and 2-315 provide that the implied warranties of merchantability and fitness for a particular purpose may be excluded in accordance with the provisions of G.L. c. 106, §2-316. Section 2-316 provides in relevant part:

> [T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous.

General Laws c. 106, §1-201(10) provides, in relevant part, that "Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color" and that "[w]hether a term or clause is 'conspicuous' or not is for decision by the court."

4

Disclaimers of implied warranties are effective except when the goods involved are consumer goods or where liability for personal injuries is concerned. G.L. c. 106, §§2-316 and 316A; Theos & Sons, Inc. v. Mack Trucks, Inc., 431 Mass. 736, 739-740 (2000); Transurface Carriers, Inc. v. Ford Motor Co., 738 F.2d 42, 46 (1st Cir. 1984) (Massachusetts law). Trans-Spec itself has averred that the trucks and engines involved in its case were acquired for use in its business, Second Amended Complaint, ¶8, so they were not consumer goods. G.L. c. 106, §§2-103(2) and 9-109(1). There is no averment in the Second Amended Complaint that there have been any personal injuries. So much of Count I as is purportedly based on alleged breaches of implied warranties, is therefore not only time-barred by the applicable statute of limitations but also barred by the conspicuous disclaimer contained in the document that Trans-Spec itself avers constituted the applicable warranty.

3.  The Magnusson-Moss Claim Fails as a Matter of Law Because the Allegedly Defective Engines Were Purchased for Commercial, not Consumer, Use

The Second Amended Complaint contains no count specifically seeking recovery under the Magnusson-Moss Warranty Act, but ¶38 in Count I (the general breach of warranty count) contains a reference to that statute, 15 U.S.C. §2301 *et seq.*, and for Rule 12(b)(6) purposes Caterpillar assumes such a reference would be sufficient to state a claim under the Act if the other elements of such a claim were adequately pled.

The Magnusson-Moss Warranty Act, however, is limited in scope to claims based on alleged breaches of warranty with respect to consumer products. 15 U.S.C. §§2302, 2303 (a), 2304(4). *E.g.*, Voelker v. Porsche Cars of North America, 353 F.3d 516, 522 (7th Cir. 2003); People ex. rel. Mota v. Central Sprinkler Corp., 174 F. Supp.2d 824, 826, 828 (C.D. Ill. 2001); Essex Ins. Co. v. Blount, Inc., 72 F. Supp.2d 722, 723 (E.D. Tex.

5

1999). It defines "consumer products" as those which are "normally used for personal, family, or household purposes," 15 U.S.C. §2301(1), and the warranties to which it pertains are those given in connection with sales of "consumer products." 15 U.S.C. §2301(6) and (7). In this case, by contrast, Trans-Spec specifically avers that the products it bought were heavy-duty trucks custom-built for use in its business of delivering oil and providing dump trailer services. Second Amended Complaint, ¶8; see also id., ¶16. The Magnusson-Moss Warranty Act therefore by its express terms provides no relief to Trans-Spec, and so much of the Second Amended Complaint as is purportedly based on that statute therefore must be dismissed.

4.  The Chapter 93A Claim Fails as a Matter of Law Because it is Based Solely on the Alleged Breaches of Warranty as to Which Relief is Barred by G.L. c. 106, §2-725 and by Caterpillar's Conspicuous Exclusion of Implied Warranties.

Trans-Spec describes Caterpillar's alleged violations of G.L. c. 93A as follows:

> Caterpillar breached its warranties under Massachusetts and federal law, statute and regulation, and therefore, is guilty of violation of Mass. Gen. L. ch. 93A, §§2 and 11 by its breaches of warranties and duties pursuant to the statutes and regulations.

Second Amended Complaint, ¶48. As noted in the immediately preceding section of this memorandum, the only "federal law, statute and regulation" mentioned in the Second Amended Complaint is the Magnusson-Moss Warranty Act which, by its express terms, has no application to Trans-Spec's situation and therefore cannot possibly have been violated. So only the reference to breaches of warranties under Massachusetts law requires attention.

It is well-settled Massachusetts law that breaches of express or implied warranties can, depending on the circumstances of the breach, sometimes constitute violations of G.L. c. 93A, §§2 and 11. See Knapp Shoes, Inc. v. Sylvania Shoe Manufacturing Corp.,

6

418 Mass. 737, 746-747 (1994). When a §11 claim "arises from the breach of warranty and merely is an alternative theory of recovery under the contract," however, it is subject to the same defenses as apply to the underlying breach of warranty claim. *Compare* Canal Electric Co. v. Westinghouse Electric Corp., 406 Mass. 369, 378-379 (1990) (provision in warranty excluding recovery of consequential damages was equally effective to exclude recovery of such damages in the c. 93A claim based on breach of the warranty). As discussed earlier in this memorandum, all of Trans-Spec's breach of warranty claims are time-barred on the face of the Second Amended Complaint and its breach of implied warranty claims are also barred by the conspicuous exclusion of such claims contained in the document which Trans-Spec avers is the applicable express warranty. The Chapter 93A claim based solely on those alleged breaches of warranty is, therefore, likewise barred as a matter of law.

5. <u>Trans-Spec's Negligence Claim Fails as a Matter of Law Because Trans-Spec has Alleged only Economic Loss</u>

The Court recently permitted Trans-Spec to amend its complaint to add the present Count III, in which Trans-Spec avers it has sustained "direct, incidental, and consequential damages, costs of repair, loss of use, costs for additional service employees who would not otherwise have been necessary, as well as attorneys' fees and court costs" as an alleged result of "Caterpillar's negligent design, development, assembly, manufacture, inspection, testing, marketing, advertising, and distribution" of the C-12 engines installed in Trans-Spec's trucks. <u>Second Amended Complaint</u>, ¶¶52 and 53. Neither in Count III nor anywhere else in the Second Amended Complaint does Trans-Spec mention damage to its property other than the engines themselves or any personal injuries. The alleged damages to which Trans-Spec refers in the Second Amended

7

Complaint include alleged loss of use of its trucks, *id.*, §§15, 16, and 29, alleged loss of business and income, *id.*, §§16, 23, and 29, alleged repair costs, *id.*, §§20, the alleged need to hire and pay more service personnel than it would otherwise have done, *id.*, §25, and alleged reduced resale value of the trucks. *Id.*, §24. Allegations or property damage or personal injury are nowhere to be found.[4]

Massachusetts law, like the law of a majority of other jurisdictions to have addressed the issue, does not permit recovery on a negligence theory where the negligence has caused neither personal injury nor damage to property of the plaintiff other than the allegedly defective product itself. *E.g.*, FMR Corp., v. Boston Edison Co., 415 Mass. 393, 395 (1993); Garweth Corp. v. Boston Edison Co., 415 Mass. 303, 305 (1993); Sebago, Inc. v. Beazer East, Inc., 18 F. Supp.2d 70, 89-93 (D. Mass. 1998).[5] The Second Amended Complaint contains no averment of personal injury or damage to any property of Trans-Spec except for the allegedly defective engines themselves.[6] Count III therefore fails as a matter of law on the face of the Second Amended Complaint and must be dismissed along with all of the other counts.

---

[4] Trans-Spec avers in ¶23 that the engine problems have caused some of the trucks to leak oil and says some of the instances of oil leakage occurred at customers' jobsites. There is no reference anywhere in the Second Amended Complaint to oil leakage contaminating or otherwise damaging *Trans-Spec's* property, however, or even that Trans-Spec owned any property that might have been contaminated or otherwise damaged by such leakage. There is thus no averment even of *de minimis* damage to other property of Trans-Spec. *Cf.* Delmarva Power & Light v. Meter Treater, Inc., 218 F. Supp.2d 564, 570-571 (D. Del. 2002) and cases collected (proof of *de minimis* damage to property other than the allegedly defective product is insufficient to overcome the bar of the economic loss doctrine).

[5] As the Garweth case well-illustrates, damage to *other* people's property caused by oil leaks (*see* the above-reference ¶23 of the Second Amended Complaint) is not enough to get around the so-called economic loss doctrine. The damage has to be to the *plaintiff's* property.

[6] As Sebago, Inc., 18 F. Supp.2d at 90-93, and the cases discussed in it make clear, the "property" that is really relevant for analyzing application of the economic loss doctrine is not the engines but, instead, the trucks containing them, which were the "products" Trans-Spec bought. Because the Second Amended Complaint contains no averment that the engine problems caused damage to other components of the trucks, however, this is a distinction without a difference so far as the present motion is concerned.

## CONCLUSION

The Court should dismiss Trans-Spec's Second Amended Complaint forthwith for failure to state a claim on which relief can be granted. Trans-Spec has already amended its original complaint twice and the scheduling order deadline for amending the complaint has now long since past; so dismissal of the Second Amended Complaint should be without leave to amend yet again. The Court should enter final judgment of dismissal, with costs, in Caterpillar's favor.

CATERPILLAR INC.,

By its attorneys,

CAMPBELL CAMPBELL EDWARDS
& CONROY, P.C.,

_____
John A. K. Grunert (BBO: 213820)
One Constitution Plaza
Boston, MA 02129
(617) 241-3000

## CERTIFICATE OF SERVICE

I, John A. K. Grunert, hereby certify that on May 26, 2005, I served the within memorandum by causing a copy to be mailed, by first class mail, postage prepaid, to Nancy Reimer, Esquire, Donovan Hatem, LLP, 2 Seaport Lane, Boston, MA 02210.

_____
John A. K. Grunert