UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11836-RCL

TRANS-SPEC TRUCK SERVICE, INC. )
d/b/a TRUCK SERVICE, )
    Plaintiff )
     )
vs. )
     )
CATERPILLAR INC. )
    Defendant )

**OPPOSITION TO CATERPILLAR INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT AND REQUEST FOR ORAL ARGUMENT**

Plaintiff Trans-Spec Truck Service, Inc., d/b/a Truck Service ("Trans-Spec") hereby opposes Defendant Caterpillar Inc.'s ("Caterpillar") *Motion to Dismiss the Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)* ("Motion to Dismiss").

A.    **Caterpillar's Motion To Dismiss Must Be Denied Because It Is Filed Two Months Past The Scheduling Order Deadline**

"Rule 16(b) requires the District Court to set a scheduling order for certain events in a civil proceeding, and states, as well, that '[a] schedule shall not be modified except upon a showing of good cause.'" *Trans-Spec Truck Service, Inc. v. Caterpillar Inc.*, No. 2004-CV-11836-RCL, slip op. at 3-4 (D. Mass. May 20, 2005); Fed. R. Civ. P. 16(b). Pursuant to the Scheduling Order set by Judge Reginald C. Lindsay on October 27, 2004, all Rule 12 motions to dismiss were to be filed by March 23, 2005. Now, over two months past that deadline, Caterpillar files the underlying Motion to Dismiss.

While Caterpillar must demonstrate "good cause," pursuant to Rule 16(b), to justify modification of the Scheduling Order so as to allow the filing of its Motion to Dismiss, it has

- 1 -

failed to do so. No where does Caterpillar aver *any* reason, much less "good cause," as to why it could not have filed its Motion to Dismiss within the Scheduling Order deadline.[1] As only one of five arguments in Caterpillar's Motion to Dismiss are directed at Trans-Spec's negligence count, recently added pursuant to Judge Joyce London Alexander's May 20, 2005 Order, Caterpillar does not and cannot rely on this recent amendment as grounds to support its late filing. Caterpillar admits, "[t]he breach of warranty and Chapter 93A counts in the Second Amended Complaint are identical to those in the original and first amended complaints." (Motion to Dismiss, p. 2). Thus, Caterpillar could have moved to dismiss at any time between the filing of the original Complaint on August 23, 2004 and the Scheduling Order deadline of March 23, 2005. Caterpillar, however, failed to do so.[2]

The Court of Appeals for the First Circuit has repeatedly upheld that district courts should deny parties' motions that are filed two months after a deadline had expired. *Velez v. Awning Windows, Inc.*, 375 F.3d 35, 43-44 (1st Cir. 2004) (upholding district court's disregard of a memorandum regarding hearsay issues filed "two months after the deadline mandated by the district court's scheduling order"); *Gwyn v. Loon Mountain Corporation*, 350 F.3d 212, 218 (1st Cir. 2003) (upholding district court's denial of motion to amend filed "two months after the deadline set by the district court's scheduling order" "for failure to make any effort to satisfy the good cause requirement for amendments after the scheduling order deadline"); *Anda v. Ralston Purina, Co.*, 959 F. 2d 1149, 1154-55 (1st Cir. 1992) (upholding district court's denial of a

---

[1] Similarly, Caterpillar fails to comply with Local Rule 16.1(G), which states that "[t]he scheduling order shall specify that its provisions, including any deadlines . . . can be modified . . . only upon a showing of good cause supported by affidavits, other evidentiary materials, or references to pertinent portions of the record."
[2] Caterpillar filed its Motion to Dismiss on May 25, 2005 and refiled so as to comply with Local Rule 7.1 on May 26, 2005. Nonetheless, Caterpillar also served forty-eight additional requests for production of documents and six additional interrogatories on May 25, 2005 and twenty-five requests for admission on May 26, 2005.

motion to amend complaint filed "two months after the deadline had expired" and holding that "allowance of an amendment would have nullified the purpose of rule 16(b)(1)")

Additionally, Caterpillar argued in its opposition to Trans-Spec's *Motion to Amend Complaint* that Trans-Spec displayed a "want of diligence" that "mandate[d] denial" because it filed eight days after a March 23, 2005 deadline. *Caterpillar Inc.'s Opposition to the Plaintiff's Motion to Amend the Complaint*, p. 10. There, Trans-Spec offered "good cause" for its late filing, citing problems that arose during the course of discovery. Caterpillar must thus concede that its filing two months late without "good cause" also displays a "want of diligence" justifying denial.

Accordingly, Caterpillar's Motion to Dismiss should be denied as time-barred by the Scheduling Order. In the alternative, Caterpillar's arguments directed at Trans-Spec's breach of warranty and Chapter 93A counts, which Caterpillar concedes are "identical" to those in Trans-Spec's earlier Complaint, should be disregarded.

**B.     The Court Held Trans-Spec's Second Amended Complaint Is Sufficient Under The Fed. R. Civ. P. 12(b)(6) Standard**

Judge Alexander held that Trans-Spec's Second Amended Complaint is sufficient under the Fed. R. Civ. P. 12(b)(6) standard:

> The "yardstick" by which futility is measured in a case where, as here, discovery is not yet complete and no summary judgment motions have been filed, is that of Fed. R. Civ. P. 12(b)(6). <u>Hatch v. Dep't for Children, Youth & Their Families</u>, 274 F.3d 12, 19 (1st Cir. 2001). Trans-Spec's proposed amended complaint, therefore, need only set forth a "general scenario which, if proven, would entitle [it] to relief against the defendant on some cognizable theory." Id. (citations omitted). **The Court finds that Trans-Spec has met this burden.**

*Trans-Spec Truck Service, Inc. v. Caterpillar Inc.*, No. 2004-CV-11836-RCL, slip op. at 6-7 (D. Mass. May 20, 2005) (emphasis added). "A legal decision made at one stage of a criminal or civil proceeding should remain the law of that case throughout the litigation, unless and until the

decision is modified or overruled by a higher court." *United States v. Moran*, 393 F.3d 1, 12 (1st Cir. 2004); *United States v. Vigneau*, 337 F.3d 62, 67 (1st Cir. 2003) (the law of the case doctrine is a "prudential principle that 'precludes relitigation of the legal issues presented in successive stages of a single case once those issues have been decided.'"); *Municipality of San Juan v. Rullan*, 318 F.3d 26, 29 (1st Cir. 2003) ("Unless corrected by an appellate tribunal, a legal decision made at one stage of a civil or criminal case constitutes the law of the case throughout the pendency of the litigation," and the Court must follow the disposition of issues decided in its earlier opinion.)

Additionally, the Court rejected Caterpillar's argument that "Caterpillar's limited warranty expressly disclaims liability for negligence in connection with the manufacture, sale or service of its engines[.]" *Trans-Spec Truck Service, Inc. v. Caterpillar, Inc.*, No. 2004-CV-1836-RCL, slip op. at 6 (D. Mass. May 20, 2005). Judge Alexander held that "although Caterpillar's contentions regarding its warranty might ultimately prove successful, the Court can not now say that Trans-Spec has not set forth a 'cognizable theory' that would, if proven, entitle it to relief." *Trans-Spec Truck Service, Inc. v. Caterpillar, Inc.*, No. 2004-CV-11836-RCL, slip op. at 8 (D. Mass. May 20, 2005). In addressing Caterpillar's argument that that "the 'economic loss' doctrine bars [Trans-Spec's negligence] claim," Judge Alexander likewise ruled that "[t]he Court can not, at this stage of the proceedings   determine whether the asserted oil leaks constitute damage to 'other' property sufficient to meet the requirements of the economic loss doctrine." *Trans-Spec Truck Service, Inc. v. Caterpillar, Inc.*, No. 2004-CV-11836-RCL, slip op. at 6, 8 (D. Mass. May 20, 2005).

As a practical matter, it seems unlikely that the Court would have allowed Trans-Spec to amend a complaint in which "[a]ll of Trans-Spec's claims fail as a matter of law," as Caterpillar asserts. (Motion to Dismiss, p. 3).

Accordingly, Caterpillar's Motion to Dismiss must be denied because this Court held that Trans-Spec's Second Amended Complaint is sufficient under the Fed. R. Civ. P. 12(b)(6) standard, rejected Caterpillar's argument that Trans-Spec failed to advance a cognizable theory on its warranty claim, and denied its argument that the economic loss doctrine bars Trans-Spec's negligence claim.

### C.   Neither Trans-Spec's Claim For Breaches of Warranties Nor Its Chapter 93A Claim Are Time-barred By The Statute Of Limitations

Trans-Spec initiated this litigation only after years of negotiation with Caterpillar and Caterpillar's local agent and distributor, Southworth Milton, Inc. ("Milton"), failed to remedy its losses. (Joseph M. Howard, Jr. depo., 227.15-228.20; 231.14-233.11, attached as Ex. A; Affidavit of Joseph M. Howard, Jr. ¶ 2, attached as Ex. B). Trans-Spec declined to file suit during this time because it relied on assurances that Caterpillar would compensate it for the damages it suffered. (Howard aff., ¶ 3, Ex. B). As late as August 9, 2004, Caterpillar's Regional Manager for sales, service, and parts in the Northeast, Stephen W. Schoening ("Schoening"), assured Trans-Spec that its C-12 engine problems were not its fault and that Caterpillar would make Trans-Spec whole. (Howard depo., 250.13-19, Ex. A; Robert Barton depo., 155.8-21, attached as Ex. C; Second Amended Complaint, ¶ 28). When Caterpillar repeatedly failed to make Trans-Spec whole for the damages it suffered as a result of the faulty C-12 engines, Trans-Spec reluctantly commenced this litigation on August 23, 2004. (Howard aff., ¶ 4, Ex. B).

Caterpillar is estopped from asserting a statute of limitations defense where it "made representations [it] knew or should have known would induce the plaintiffs to put off bringing a

suit and       the plaintiffs did in fact delay in reliance on the representations. *Coady v. Marvin Lumber and Cedar Company*, 167 F.Supp. 2d 166, 171 (D. Mass. 2001); see also *Deisenroth v. Numonics Corporation*, 997 F. Supp. 153, 157 (D. Mass. 1998) ("[A] defendant waives the statute of limitation defense . . where it gulls plaintiff by making such representations throughout the entire statutory period."). "[I]t would be contrary to justice for [Caterpillar] to hold out the hope of an amicable adjustment of a loss, and thus delay the action of [Trans-Spec], and then be permitted to plead this very delay, caused by its course of conduct, as a defense to the action when brought." *Thompson v. Phenix Insurance Co.*, 136 U.S. 287, 299 (1890). Thus, Caterpillar is estopped from relying on a statute of limitations defense regarding any claim of breach of warranty, express or implied, or violation of M.G.L. ch. 93A, where Trans-Spec was "induced by the conduct of [Caterpillar] to do something different from what otherwise would have been done and which has resulted to his harm and that the other knew or had reasonable cause to know that such consequence might follow." *Boston & A. R. R. v. Reardon*, 226 Mass. 286, 291 (1917).[3]

Furthermore, pursuant to M.G.L. ch. 106, §2-725, "where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." Here, Caterpillar provided that it would "pay 100% of the components and labor charges for covered failures, with no deductible charges," for five years or five hundred thousand miles for the components that have been failing in Trans-Spec's engines. See Exhibit D.[4] Trans-Spec

---

[3] The accrual date of a Chapter 93A claim is established by the same principles that govern the determination of the underlying actions. Therefore, the Chapter 93A claim accrued at the same time as the breach of warranty claims. *Hanson Housing Authority v. Dryvit System, Inc.*, 29 Mass. App. Ct. 440, 448 (1990).

[4] The document in Exhibit D forms an express warranty. "It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty[.]" M.G.L. ch. 106, § 2-313(2). See also *Wajda v. R.J. Reynolds Tobacco Company*, 103 F. Supp. 2d 29, 35 (D. Mass. 2000); *Giannasca v. Everett Aluminum, Inc.*, 13 Mass. App. Ct. 208, 209-10, 213-14 (1982).

alleged as part of its breach of warranty count that these components were "not repaired [by Caterpillar] when they broke." (Second Amended Complaint, ¶ 39; see also ¶ 15, 17, 20, 21, 22, 27, 28, 39, 40, 41).[5] During his deposition on May 31, 2005, Albert Cardoza ("Cardoza"), a Milton employee and agent and representative of Caterpillar, confirmed that Caterpillar refused coverage on Trans-Spec's flywheel housings and flywheel housing bolts for a significant period of time beginning in September 2002. (Albert Cardoza depo., 108.7-109.24, attached as Ex. F).

"If a seller expressly warrants a product for a specified number of years, it is clear that, by this action alone, he is explicitly warranting the future performance of the goods for that period of time." *Standard Alliance Industries, Inc. v. The Black Clawson Company*, 587 F.2d 812, 820-21 (6th Cir. 1978) (holding that where defendant warranted a machine for one year, "the warranties explicitly extended to future performance for a period of one year" and "under § 2-725(2) the cause of action accrued when plaintiff discovered or should have discovered that the machine was defective, so long as the defect arose within the warranty period."); see also *Coady*, 167 F.Supp. 2d at 170. Thus, "if an automobile is warranted to last for twenty-four thousand miles or four years, the warranty should extend to future performance. If the car fails within the warranty period, the limitations period should begin to run from the day the defect is or should have been discovered." *Standard Alliance*, 587 F. 2d at 821

---

[5] In both its Amended Complaint and Jury Claim and Second Amended Complaint and Jury Claim, Trans-Spec alleged that "[t]he problems described above fell under the Caterpillar warranty and should have been rectified by Caterpillar," and attached applicable documents: a signed copy of the binding On Highway Vehicle Engine Extended Service Coverage Registration Certificate between Caterpillar and Trans-Spec and three documents styled "On-Highway Vehicle Engine Service Coverage Matrix," "Caterpillar On-Highway Vehicle Engine Extended Service Coverage Form," and "Caterpillar On-Highway Vehicle Engine Extended Service Coverage Registration Form For Multiple Unit Registrations," all attached as Exhibit E. (Amended Complaint, ¶ 22, Exhibit C; Second Amended Complaint, ¶ 22, Exhibit C). In its Answer, Caterpillar averred that these "warranties it provided [Trans-Spec] speak for themselves." (Answer, ¶ 22). While Caterpillar has not served an Answer to Trans-Spec's Second Amended Complaint, Trans-Spec anticipates that as its Paragraph 22 is the same in both Complaints, Caterpillar's response likewise would be identical.

Accordingly, all of Trans-Spec's claims, including its claim for breaches of implied and express warranties and violation of M.G.L. ch. 93A, survive the applicable statute of limitations.

### D. Trans-Spec's Claim Regarding Caterpillar's Breaches Of Implied Warranties Is Not Barred By Caterpillar's Purported Disclaimer

Caterpillar claims that so much of Count I as is based on Caterpillar's breaches of implied warranties is barred by Caterpillar's disclaimer on the applicable warranty documents. (Motion to Dismiss, p. 5). Nonetheless, "[n]o principle of law is more clearly established than that '[w]hen a party binds himself by contract to do a work or to perform a service, he agrees by implication to do a workmanlike job and to use reasonable and appropriate care and skill in doing it.'" *George v. Goldman*, 333 Mass. 496, 497 (1956). "This is true whether the work consists in building a house, repairing an automobile, treating a patient or defending against a claim or a lawsuit." *Abrams v. Factory Mut. Liability Ins. Co.*, 298 Mass. 141, 143 (1937). Allowing Caterpillar to disclaim its implied duty to perform repairs under its warranty in a workmanlike manner and to use reasonable and appropriate care and skill in doing so would render its warranty meaningless and hollow. As Trans-Spec has confirmed through ongoing discovery, Caterpillar has mandated inappropriate or inadequate repairs to be performed on Trans-Spec's trucks even where it purported to honor its warranty obligations. (Kevin Holmes depo., 80.1-82.11, attached as Ex. G; Barton depo., 167.15-169.2, Ex. C). Furthermore, as Trans-Spec has averred, even an offer of continual replacement of the engine blocks does not provide a permanent solution because, *inter alia*, breakdowns and the loss of business that accompanies them will continue to occur. (Second Amended Complaint, ¶ 29). As confirmed by Milton employee and Caterpillar agent and representative Cardoza during his May 31, 2005 deposition, no reliable or permanent fix exists for the type of engine problems Trans-Spec has suffered. (Cardoza depo., 127.7-9, Ex. F).

Furthermore, while the warranty document drafted by Caterpillar purports to disclaim all warranties in general terms, it does not contain an integration clause disclaiming any representations or warranties not set forth in the agreement or preventing Trans-Spec from introducing evidence of oral representations. *Cummings v. HPG Int'l, Inc.*, 244 F.3d 16, 21 n.2 (1st Cir. 2001); *Town & Country Fine Jewelry Group v. Hirsch*, 875 F. Supp. 872, 876-77 (D. Mass. 1994). Caterpillar orally waived any exclusion of express or implied warranties on multiple occasions. (Trans-Spec's Amended Answer to Interrogatory No. 11, attached as Ex. H). Furthermore, Caterpillar made warranties of merchantability, safety and fitness for ordinary purposes as well as fitness for the particular purpose for which the engines were to be used at the time of purchase. (Second Amended Complaint, ¶¶ 37-39).

Around the time Trans-Spec contemplated what types of engines to purchase, Cardoza and another Milton employee and Caterpillar agent and representative, Harry Calderbank ("Calderbank"), repeatedly met with Trans-Spec personnel to discuss the capabilities of the C-12 engine and warranties associated with it. (Howard depo, 66.16-70.16; 109.15-111.19, Ex. A; Cardoza depo., 49.4-51.15, Ex. F; Ralph A. Lind, Jr. depo., 66.1-67.4, 122.23-125.14, attached as Exhibit I). Not only did Calderbank participate frequently in the determination of the trucks' configuration, a regional Caterpillar representative based out of Caterpillar's Hartford, Connecticut office also personally took part. (Donald Medbery depo., 29.21-36.19, attached as Exhibit J). In the words of Donald Medbery, the salesman involved in Trans-Spec's purchase and a witness deposed by Caterpillar, this Caterpillar representative was "bragging that engine up like there was no tomorrow" because the "C-12 was an engine that they [Caterpillar] really bet their -- they really bet their load on." (Medbery depo., 4 15-24; see also 38.4-24, attached as Ex. J).

In June 2004, officers of Trans-Spec attended a meeting at the Milton facility in Milford, Massachusetts to address the defective engines. (Howard depo., 231.14-23, Ex. A; see also Second Amended Complaint, ¶¶ 26, 27). This meeting included, among others, Caterpillar's Truck Engine District Manager for the New England region, Troy Guidotti ("Guidotti"). (Howard depo, 231.14-23; 233.18-234.6, Ex. A). During this meeting, Guidotti told Trans-Spec that "Caterpillar will make you whole," and assured that the problems with the C-12 engines were not Trans-Spec's fault. (Howard depo., 238.14-239.15, Ex. A; Trans-Spec's Amended Answer to Interrogatory No. 11, Ex. H). Subsequently, on June 13, 2004, Cardoza, a Milton employee and an agent and representative of Caterpillar, orally offered to extend Caterpillar's warranty coverage on Trans-Spec's C-12 engines until June 1, 2005. (Barton depo., 156.22-157.14, Ex. C. Inexplicably, Cardoza refused to put this extension in writing. (Barton depo., 156.22-157.14, Ex. C). In August 2004, officers of Trans-Spec again attended a meeting at Milton's facility in Milford, Massachusetts. (Howard depo., 247.18-248.2, Ex. A; see also Second Amended Complaint, ¶ 28). Along with Guidotti, Caterpillar Regional Manager Schoening attended and explicitly stated, "this is absolutely not your [Trans-Spec's] fault and Caterpillar will make you whole." (Howard depo., 250.13-19, Ex. A). Additionally, Cardoza and Calderbank made repeated "off the record" representations to Trans-Spec that Trans-Spec would be made whole for the damage it suffered as a result of the defective C-12 engines. (Trans-Spec's Amended Answer to Interrogatory No. 11, Ex. H). Nonetheless, despite these repeated representations, Caterpillar has done nothing to make Trans-Spec whole for the losses it has suffered as a result of purchasing Caterpillar engines.

Additionally, the flywheel houses that Caterpillar used on the C-12s purchased by Trans-Spec were of the same design and construction as those used on engines which generate much

less horsepower and torque. (Cardoza depo., 25.6-26.14, Ex. F). As averred by Trans-Spec, "Caterpillar knew or should have known of the design defects in its C-12 engine block and its propensity to crack due to the added torque generated by its increased horsepower." (Second Amended Complaint, ¶ 35; see also ¶ 17). Where Caterpillar "knew or should have known" that its C-12 engines contained grave defects, Caterpillar's attempt to disclaim the warranties associated with its sale of the engines is oppressive and unconscionable and nullification of the purported disclaimer is warranted. *Andover Air Limited Partnership v. Piper Aircraft Corp.*, 1989 U.S. Dist. LEXIS 7345, *19, 21 (D. Mass. 1989) ("Massachusetts courts have required that a contract clause resulting in unfair surprise and oppression of the allegedly disadvantaged party will be declared unconscionable"); see also *Zapatha v. Dairy Mart Inc.* 381 Mass. 284, 294 (1980); *Sosik v. Albin Marine, Inc.*, 2003 Mass. Super. LEXIS 160, *19-23 (finding a disclaimer unconscionable and denying summary judgment on a claim for breach of implied warranty of merchantability and implied warranty of fitness).

Accordingly, Caterpillar's purported disclaimer does not bar Trans-Spec's claim for breaches of any warranty, express or implied.[6]

### E. Trans-Spec's Negligence Claim Is Not Barred By The Economic Loss Doctrine

Although the Court has already rejected Caterpillar's contention that Trans-Spec's negligence claim is barred by the economic loss doctrine, see above at p. 4, Trans-Spec deems it necessary to briefly address the merits of Caterpillar's claim.

The economic loss doctrine as applied by Massachusetts law provides that purely economic losses are not recoverable in tort actions **absent personal injury or property damage**. *Shipway Place Condominium Association v. Osmose, Inc.*, 2001 U.S. Dist. LEXIS

---

[6] Trans-Spec concedes that 15 U.S.C. § 2301 *et seq.*, the Magnusson-Moss Warranty Act, does not apply here.

2326, *3 (D. Mass. 2001). The doctrine does not apply where, as here, there exists a causal connection between property damage and the economic loss. *W.R. Construction & Consulting, Inc. v. Jeld-Wen, Inc.*, 2002 U.S. Dist. LEXIS 18686, *22-24 (D. Mass. 2002) (citing *Berish v. Bornstein*, 437 Mass. 252, 267-68 (2002); *Commonwealth v. Johnson Insulation*, 425 Mass. 650, 653 (1997); *Fine v. Huygens, DiMella, Shaffer & Associates*, 57 Mass. App. Ct. 397, 400 (2003)).

In *Berish v. Bornstein*, The Massachusetts' Supreme Judicial Court held that a negligence action could be brought where "defects and deficiencies" in the construction of condominium units caused property defects "beyond the defects" in the units. Furthermore, the Supreme Judicial Court allowed the plaintiffs to seek damages for economic losses incurred in correcting the property damage. *W.R. Construction*, 2002 U.S. Dist. LEXIS 18686, *22-24; *Berish*, 437 Mass. at 267-68.

as in *Berish*, the economic loss caused by Caterpillar's defective engines goes "beyond the defects" in the engines and the damage caused was not confined to the engines alone. (Howard aff., ¶ 10, attached as Ex. K; see also Holmes depo., 47.19-49.10, Ex. G). Instead, Caterpillar's defective engine units not only caused damage to other critical systems throughout the trucks, they caused oil leaks which damaged Trans-Spec's property and that of Trans-Spec's customers. (Howard aff., ¶ 11, Ex. K; see also Holmes depo., 47.19-49.10, Ex. G). Trans-Spec had to pay to clean these leaks in accord with environmental regulations. Because "it is reasonable to infer that the enumerated 'defects and deficiencies' caused property damage beyond the defects in the [engines] themselves," Trans-Spec must be allowed the opportunity to demonstrate that it is entitled to relief on its negligence claim. *Berish*, 437 Mass. at 267. Thus,

Caterpillar's contention that the economic loss doctrine bars Trans-Spec's negligence claim is erroneous and inapplicable.

Caterpillar claims that the "property" that is relevant for analyzing application of the economic loss doctrine is not the engines but instead, the trucks containing them.[7] Motion to Dismiss, p. 8 footnote 6. Additionally, Caterpillar claims that the damage caused by oil leaks must be to Trans-Spec's property in order for it to avoid application of the economic loss doctrine. Motion to Dismiss, p. 8 footnote 5. Regardless of whether or not Caterpillar's points are valid, they are moot. As noted by Judge Alexander in her May 20, 2005 Order, "Trans-Spec asserts that the defective engines caused property damage to the trucks beyond just the engine problems and that the oil leaks caused damage to Trans-Spec's property as well as the property of its customers." *Trans-Spec Truck Service, Inc. v. Caterpillar Inc.*, No. 2004-CV-11836-RCL, slip op. at 7-8 (D. Mass. May 20, 2005). Accordingly, Caterpillar's argument that the economic loss doctrine bars Trans-Spec's negligence claim fails.

WHEREFORE, Trans-Spec respectfully requests that this Court deny Caterpillar's Motion to Dismiss for the foregoing reasons.

Respectfully submitted,
TRANS-SPEC TRUCK SERVICE, INC.
d/b/a TRUCK SERVICE
By its Attorneys,

*/s/ Christian G. Samito*
Nancy M. Reimer, Esq., BBO#555373
Christian G. Samito, Esq., BBO#639825
Donovan Hatem, LLP
Two Seaport Lane
Boston, MA 02210
(617) 406-4500

Date: June 3, 2005

---

[7] More accurately, the property that is relevant for analyzing application of the economic loss doctrine is not the flywheel housings or flywheel housing bolts, but instead, the engines containing them as well as the trucks containing the engines.

## REQUEST FOR ORAL ARGUMENT

If the Court deems it necessary, Trans-Spec requests oral argument on its *OPPOSITION TO CATERPILLAR INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT.*

## CERTIFICATE OF SERVICE

I, Christian G. Samito, hereby certify that on this 3rd day of June, 2005, I served a copy of the foregoing, by mail, postage prepaid to:

John A. K. Grunert, Esq.
Christopher Howe, Esq.
Campbell Campbell Edwards & Conroy
One Constitution Plaza, 3rd Floor
Boston, MA  02129

                                              Christian G. Samito, Esq.

00921048