UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11836-RCL

TRANS-SPEC TRUCK SERVICE, INC. )
d/b/a TRUCK SERVICE, )
    Plaintiff )
)
vs. )
)
CATERPILLAR INC. )
    Defendant )

**PLAINTIFF, TRANS-SPEC TRUCK SERVICE INC., d/b/a TRUCK SERVICES, AMENDED ANSWERS TO CATERPILLAR INC.'S FIRST SET OF INTERROGATORIES**

The plaintiff, Trans-Spec Truck Service, Inc. ("Trans-Spec") answers the below interrogatories as follows:

**GENERAL OBJECTIONS OF SPECIFIC APPLICABLITY**

1. These answers to interrogatories are qualified by the objections specifically asserted herein and the answers do not constitute a waiver of any objection asserted.

2. Trans-Spec reserves the right to supplement these responses in a timely manner.

**INTERROGATORIES**

**INTERROGATORY NO. 1**

Identify every person whom you expect to offer expert testimony on your behalf at trial and, as to each such person, state the subject matters on which he or she will testify, state the substance of the facts and opinions to which he or she will testify, and summarize the grounds for each opinion to which he or she will testify.

**ANSWER NO. 1**

Trans-Spec has not determined which experts, if any, it will call at trial and reserves the right to supplement this answer in a timely fashion.



- 1 -

## INTERROGATORY NO. 10

Describe comprehensively and in detail the basis for your contention that Trans-Spec's purported claim to recover incidental and consequential damages, damages for loss of use, and costs of additional service employees [as to which see ¶42 of the amended complaint] is not barred by the exclusion of incidental and consequential damages contained in the written warranties Caterpillar gave with respect to the engines and in the extended service contract of which a copy is attached as Exhibit C to the amended complaint.

## ANSWER NO. 10

Trans-Spec objects to this interrogatory as it poses a question of law. Without waiving and subject to this objection, Trans-Spec states that on multiple occasions, Caterpillar orally waived any such exclusion, including during meetings with Trans-Spec on June 9, 2004 and in or around August 2004.

On June 9, 2004, Cardoza orally extended Caterpillar's warranty on the Trans-Spec C-12 engines until June 21, 2005. Guidotti also attended this meeting, which was held at Milton-CAT's facility in Milford, Massachusetts; was present at Cardoza's representation; and, agreed with it. Guidotti further represented that the problems with the C-12 engines were not Trans-Spec's fault and that Caterpillar would make Trans-Spec whole.

In August 2004, Schoening again orally extended Caterpillar's warranty on the Trans-Spec C-12 engines until June 21, 2005 at a meeting with Howard and Barton held at Milton-CAT's facility in Milford, Massachusetts. Schoening reiterated Guidotti's representation at the June 9, 2004 meeting that the problems with the C-12 engines were not Trans-Spec's fault and that Caterpillar would make Trans-Spec whole. Cardoza attended this meeting.

Additionally, Calderbank and Cardoza have made "off the record" representations to Trans-Spec that Trans-Spec would be made whole for the damage it has suffered as a result of the defective C-12 engines.

## INTERROGATORY NO. 11

Describe comprehensively and in detail the basis for your contention that Trans-Spec's purported claim for alleged breaches of implied warranties are not barred by the disclaimers of all implied warranties contained in the written warranties Caterpillar gave with respect to the engines and in the extended service contract of which a copy is attached as Exhibit C to the amended complaint.

## ANSWER NO. 11

Trans-Spec objects to this interrogatory as it poses a question of law. Without waiving and subject to this objection, Trans-Spec states that on multiple occasions, Caterpillar orally waived any such exclusion, including during meetings with Trans-Spec on June 9, 2004 and in or around August 2004.

On June 9, 2004, Cardoza orally extended Caterpillar's warranty on the Trans-Spec C-12 engines until June 21, 2005. Guidotti also attended this meeting, which was held at Milton-CAT's facility in Milford, Massachusetts; was present at Cardoza's representation; and, agreed with it. Guidotti further represented that the problems with the C-12 engines were not Trans-Spec's fault and that Caterpillar would make Trans-Spec whole.

In August 2004, Schoening again orally extended Caterpillar's warranty on the Trans-Spec C-12 engines until June 21, 2005 at a meeting with Howard and Barton held at Milton-CAT's facility in Milford, Massachusetts. Schoening reiterated Guidotti's representation at the June 9, 2004 meeting that the problems with the C-12 engines were not Trans-Spec's fault and that Caterpillar would make Trans-Spec whole. Cardoza attended this meeting.

Additionally, Calderbank and Cardoza have made "off the record" representations to Trans-Spec that Trans-Spec would be made whole for the damage it has suffered as a result of the defective C-12 engines.

## INTERROGATORY NO. 12

Describe with specificity the "particular purpose" for which you allege Caterpillar impliedly warranted the engines would be suitable, and describe comprehensively and in detail all documents and other information Caterpillar had when it contracted with Sterling to sell Sterling the engines that (a) gave it reason to know of that particular purpose and (b) gave it reason to know Sterling was relying on Caterpillar's skill or judgment to select or furnish engines that were suitable for that particular purpose.

## ANSWER NO. 12

Trans-Spec objects to this Interrogatory in that it cannot make any representations as to what documents Caterpillar received from Sterling nor can Trans-Spec make representations regarding the contents of Caterpillar's files. Without waiving and subject to this objection, Trans-Spec states that it is a common carrier for hire, regulated by the Department of Transportation, in the business of transporting general commodities and bulk items including but not limited to oil, aggregate, processed materials, petroleum, and liquid asphalt. Caterpillar warranted that the engines would be suitable for these particular purposes. Caterpillar was well acquainted with Trans-Spec's business, applications, and services due to an ongoing business relationship between the two companies dating back to 1986. From that time, Caterpillar wanted to sell engines to Trans-Spec and Trans-Spec obliged them for fourteen years.

Caterpillar further learned about Trans-Spec's business operations because Trans-Spec purchased the first FLC112 Freightliner truck that had a Caterpillar 3176 engine integrated into it. Trans-Spec agreed to let Caterpillar conduct performance testing on this truck, as part of its research for future development, in 1991-1992. Cardoza attended these tests.

Additionally, Caterpillar learned about Trans-Spec's business operations through its close contact with Trans-Spec personnel as part of its ongoing business relationship with Trans-Spec. For example, in or around 1996, Caterpillar invited and paid for Lind to attend the introduction