UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

TRANS-SPEC TRUCK SERVICE INC., )
D/B/A TRUCK SERVICE
)
        Plaintiff,                           CIVIL ACTION NO. 04-11836RCL

v.

CATERPILLAR INC.                 )
                                    )
        Defendant.      )

---

## TRANS-SPEC TRUCK SERVICE INC.'S OPPOSITION TO CATERPILLAR INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Trans-Spec Truck Service, Inc. ("Trans-Spec") hereby opposes Caterpillar Inc.'s ("Caterpillar") *Motion to Compel Production of Documents* ("Motion to Compel"). This Motion to Compel is a classic example of Caterpillar engaging in unnecessary procedural litigation. Caterpillar inaccurately contends that it has not had a full opportunity to review all of Trans-Spec's documents and thus learn the histories of Trans-Spec's trucks.[1] To the contrary, Trans-Spec has made available the documents Caterpillar seeks since January 28, 2005. Trans-Spec has not withheld any on the basis of any privilege. (See Letter from Attorney Christian G. Samito ("Attorney Samito") to Attorney John A. K. Grunert ("Attorney Grunert") dated January 28, 2005, attached as Ex. A).[2]

---

[1] To date, Caterpillar has only partially supplemented its discovery production so as to satisfy the terms of an agreement between the parties, dated May 16, 2005, to resolve the main disputes addressed in *Motion Of Plaintiff, Trans-Spec Truck Service, Inc., d/b/a Truck Service, To Compel Answers To Its First Set Of Interrogatories And First Request For Production Of Documents Propounded To Defendant Caterpillar Inc.* Caterpillar's failure to fully supplement its own discovery production in a timely manner has prejudiced Trans-Spec, placing it at a disadvantage when taking the depositions of key fact witnesses.

[2] Trans-Spec sent copies of many other responsive documents to Caterpillar pursuant to its duty under Fed. R. Civ. P. 26(a) and in response to *Caterpillar Inc.'s First Request for Production of Documents by the Plaintiff.* Caterpillar's Motion to Compel concerns those documents tendered for Caterpillar's inspection at Trans-Spec's facility, but not photocopied.

1

In essence, this purported discovery dispute focuses on the location where Caterpillar will conduct a document inspection and whether or not Trans-Spec will be forced to violate federal regulations and expose itself to federal penalties. No where in this Opposition does Trans-Spec attempt to deny Caterpillar access to any of the documents. Trans-Spec cannot, however, allow certain documents to be transported offsite due to federal regulations applicable to motor carriers and corresponding penalties for their breach. For that reason alone, Trans-Spec asks this Court to deny Caterpillar's Motion to Compel so that Caterpillar's document inspection can take place onsite at Trans-Spec's facility.[3]

As described by Caterpillar (after a five page self-serving "factual" introduction, unsupported by documents or affidavits as required by Local Rule 7.1(B)), the parties arranged for Caterpillar to inspect the voluminous service and maintenance records for the trucks at issue in this matter onsite at Trans-Spec's place of business. (Motion to Compel, p. 5-6). Trans-Spec maintains its more recent records in an onsite office, while older records are stored in an onsite file trailer equipped with a desk. (Motion to Compel, p. 6; see also photographs attached as Ex. G to the Motion to Compel). Trans-Spec agreed that Caterpillar could have as much time to inspect the documents as it needed.

On February 15, 2005, Caterpillar began its review. Representatives of Caterpillar began scanning in thousands of pages of documents. (Motion to Compel, p. 6). On February 16, 2005, Caterpillar suddenly stopped. Caterpillar then objected to reviewing the documents in the file trailer – as they are kept in the ordinary course of Trans-Spec's business and as they are presented to government officials when those officials require access to the trucks' records –

---

[3] Caterpillar's arguments that removing the documents from Trans-Spec's facility would not interfere with Trans-Spec's business operations and that the documents are infrequently used are irrelevant. (See Motion to Compel, p. 7). Trans-Spec's objection to removing the documents offsite stems from applicable federal regulations and the penalties associated with the enforcement of those regulations.

2

because Trans-Spec did not provide heat or electricity to the trailer.[4] Caterpillar could have, but declined, to rent a generator (Caterpillar is one of the largest manufacturers and renters of generators and on information and belief, upwards of twelve hundred are available in different sizes and capacities at the site of its distributor, Southworth-Milton, Inc., in nearby Milford, Massachusetts. See printout from Southworth-Milton Inc.'s website, attached as Exhibit C). Caterpillar had knowledge of the conditions of the trailer before February 15, 2005.

On March 4, 2005, Trans-Spec offered to bring the file trailer into its garage during Caterpillar's review so that the work space would be heated. Trans-Spec also offered to run an extension cord into the trailer so that Caterpillar could put a light inside as well as operate the scanning equipment it used during its document review. (See Letter from Attorney Samito to Attorney Christopher Howe ("Howe") dated March 4, 2005, attached as Exhibit D). Caterpillar rejected that offer on March 10, 2005. (See Letter from Attorney Howe to Attorney Samito dated March 10, 2005, attached as Exhibit E). At that point, Caterpillar tried to impose further demands upon Trans-Spec in lieu of simply finishing its document review. Caterpillar stated that it would perform the inspection if the trailer were inside Trans-Spec's garage but only if Trans-Spec ceased performing repairs during the time of the document review. (See Exhibit E). As if Caterpillar's defective engines had not done enough to injure Trans-Spec, Caterpillar expected Trans-Spec to stop performing repairs that are necessary so that it can maintain business operations. On March 10, 2005, Trans-Spec again offered several possibilities to Caterpillar for its document review. Caterpillar could review the documents while the file trailer was in Trans-Spec's garage or welding bay at a time when no repair work was being performed. As this availability is only for a brief period in the middle of the night, however, Trans-Spec also offered

---

[4] In the past, when government officials have reviewed Trans-Spec's records, they have performed their inspection onsite at Trans-Spec's facility. (See Affidavit of Joseph M. Howard, ¶ 2, attached as Exhibit B).

that Caterpillar could agree to pay for repair work done on Trans-Spec trucks during the time Caterpillar wanted to use the garage. Trans-Spec also reiterated that Caterpillar could rent a generator to power a heat source, light source, and its electrical equipment and review the documents in the file trailer in its present location. (See Letter from Attorney Samito to Attorney Howe dated March 10, 2005, attached as Exhibit F).

Caterpillar initially refused but then verbally indicated that it would be willing to perform its inspection onsite in the file trailer. (See Affidavit of Christian G. Samito, ¶¶ 2-5, attached as Exhibit G). Trans-Spec offered to make the contents of its file trailer available on April 27, 28, and 29, 2005 and provide the file trailer with electricity so that Caterpillar could scan the documents. (See Letter from Attorney Samito to Attorney Howe dated April 19, 2005, attached as Exhibit H). When Caterpillar failed to respond, Trans-Spec again reiterated its offer. Letter from Attorney Samito to Attorney Howe dated April 25, 2005, attached as Exhibit I). That same day, Caterpillar declined Trans-Spec's offer. (See Letter from Attorney Howe to Attorney Samito dated April 25, 2005, attached as Exhibit J).

As Trans-Spec explained to Caterpillar numerous times, Trans-Spec can permit Caterpillar free access to inspect and scan requested documents onsite but cannot allow these documents offsite due to federal regulations. Numerous provisions of the federal regulations govern how long Trans-Spec must retain its documents. Caterpillar fails to cite all of them. example, Appendix A to 49 C.F.R § 379, attached as Exhibit K, which applies to various document categories, mandates longer retention periods than the provisions Caterpillar cites. Section D of Appendix A to 49 C.F.R § 379, which concerns property and equipment, further requires that, "any of the records elsewhere provided for in this schedule    shall be retained for the period shown below, regardless of any lesser retention period assigned."

Furthermore, on May 13, 2005, Attorney Samito wrote to the governing federal agency, the Federal Motor Carrier Safety Administration ("the FMCSA"), for an opinion as to Trans-Spec's responsibilities and potential liabilities in the event that any of its documents are lost or misfiled during a proposed reproduction at an offsite facility. (See Exhibit L). In response, the FMCSA cited 49 C.F.R. 390.29, which mandates that a motor carrier must maintain its records at one of its business locations and must make them available for inspection at the motor carrier's principle place of business or other location specified by the FMCSA within 48 hours after a request is made. (See Letter of Richard R. Bates to Attorney Samito dated June 6, 2005, attached as Exhibit M). Contrary to the interpretation of applicable federal regulations offered by Caterpillar on page 9 of its Motion to Compel, 49 C.F.R. 290.29, does not permit documents to be removed offsite. Instead, 49 C.F.R. 290.29 simply allows a motor carrier to store records at a subsidiary office or driver work-reporting location – but in any event, on the motor carrier's property – so long as it can be produced at the main office within 48 hours.[5] Attorney Samito sent the FMCSA's letter to Caterpillar's counsel the same day he received it and reiterated Trans-Spec's offer for Caterpillar to inspect the subject records at Trans-Spec's facility. (See

---

[5] 49 C.F.R. 390.29 states that:

(a) A motor carrier with multiple offices or terminals may maintain the records and documents required by this subchapter at its principal place of business, a regional office, or driver work-reporting location unless otherwise specified in this subchapter.

(b) All records and documents required by this subchapter which are maintained at a regional office or driver work-reporting location shall be made available for inspection upon request by a special agent or authorized representative of the Federal Motor Carrier Safety Administration at the motor carrier's principal place of business or other location specified by the agent or representative within 48 hours after a request is made. Saturdays, Sundays, and Federal holidays are excluded from the computation of the 48-hour period of time.

5

Letter of Attorney Samito to Attorney Grunert dated June 8, 2005, attached as Exhibit N).[6] Caterpillar declined to attach the FMCSA's letter to its Motion to Compel.

Furthermore, the FMCSA's letter specifically states that "[i]f the required records are not maintained or made available upon request the company would be in violation and subject to penalties as prescribed in 49 CFR 386." (See Exhibit M). The FMCSA can impose penalties in the thousands of dollars even if one document is missing or misplaced. (See 49 C.F.R. 386, attached as Exhibit O).

Even allowing Caterpillar to inspect documents onsite leaves Trans-Spec vulnerable to liability if some documents are inadvertently misplaced. While Trans-Spec understands that this is a risk it must take in order to prosecute this lawsuit, it also seeks to protect itself from liability as much as possible. Allowing inspection and copying of Trans-Spec's documents offsite is far riskier than an onsite inspection. Having thousands of documents copied at a commercial copying facility, by personnel not under Caterpillar's control, entails a far greater likelihood of misfiling or loss. Trans-Spec has done everything possible to facilitate Caterpillar's inspection of documents onsite and should not be asked to expose itself to financial penalties and economic harm in the absence of any compelling reason other than Caterpillar's convenience.

WHEREFORE, Trans-Spec moves this Court to deny Caterpillar's Motion to Compel. In the alternative, should the Court grant Caterpillar's Motion to Compel, Trans-Spec moves the Court to modify the proposed order to include a provision requiring Caterpillar to indemnify Trans-Spec for any and all penalties imposed by any federal, state, or local agency or official as a result of any misplaced or misfiled record or document.

---

[6] Thus, Caterpillar's statement, on page 10 of its Motion to Compel, that it "does not believe Trans-Spec has any realistic reason for concern that the Federal Highway Administration would penalize it for shipping old records off-site" is disingenuous.

6

7

Plaintiff,

TRANS-SPEC TRUCK SERVICE INC.,
D/B/A TRUCK SERVICE

By its attorneys

_____
Nancy M. Reimer, Esq., BBO#555373
Christian G. Samito, Esq., BBO#639825
Donovan Hatem, LLP
Two Seaport Lane
Boston, MA 02210
(617) 406-4500

Dated: June 28, 2005
00924811

## CERTIFICATE OF SERVICE

I, Christian G. Samito, hereby certify that on June 28, 2005, I served the foregoing by causing them to be mailed by first class mail, postage prepaid, to John A. K. Grunert, Esquire, Campbell Campbell Edwards & Conroy, P.C., One Constitution Plaza, Boston, MA 02129.

_____
Christian G. Samito