UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| TRANS-SPEC TRUCK SERVICE, INC. )<br>d/b/a TRUCK SERVICE, )<br>  )<br>Plaintiff )<br>  )<br>vs. )<br>  )<br>CATERPILLAR INC. )<br>  )<br>Defendant ) | CIVIL ACTION NO. 04-11836-RCL |

MEMORANDUM IN SUPPORT OF CATERPILLAR INC.'S MOTION FOR A
PROTECTIVE ORDER WITH RESPECT TO UNAUTHORIZED
THIRD SET OF DOCUMENT REQUESTS

This is a breach of warranty case. Only a brief account of the facts is necessary for purposes of this motion.

1.   Basic Background

In 1999 the plaintiff Trans-Spec Truck Service, Inc. ("Trans-Spec") negotiated the acquisition of 22 heavy trucks manufactured by the non-party Sterling Truck Corporation for use in its business. Some of the trucks were delivered by the non-party Minuteman Trucks, Inc. in December 1999 and the rest were delivered in mid-January 2000. Sterling had equipped the trucks with Caterpillar C-12 engines in accordance with Trans-Spec's specifications[1].

---

[1] Heavy trucks for use in commercial fleets are ordinarily "custom built" in the sense that the purchaser negotiates with the truck dealer (in this case Minuteman Trucks) the type of engine, transmission, rear axle, suspension system, tires and wheels, steering assembly, braking system, and various other major systems and components that the truck manufacturer is to use in building the truck. It is the truck manufacturer's responsibility to assure that the truck is designed and assembled in a way that properly integrates all the particular components and assemblies it agrees to include in the truck.

1

Over the course of the years 2001 and 2002 flywheel housings on five or six of the engines failed and were repaired at no cost to Trans-Spec.[2] Failures began to occur more often in 2003 and, eventually, Caterpillar refused to pay for any more flywheel housing repairs because it concluded the failures were not caused by defects in the material or workmanship of the engines. Caterpillar's experience with C-12 engines generally has been that only a tiny percentage of them experience flywheel housing failures; the failure rate in Trans-Spec's custom-built Sterling trucks was many times the typical failure rate and indicated to Caterpillar that Trans-Spec's failures were resulting either from the way Sterling had integrated the engines into the custom-built trucks, or by the way Trans-Spec was using or maintaining the trucks, or by a combination of both. Caterpillar considered failures resulting from any of those causes not to be warrantable because its warranty covered only failures caused by defects in the material or workmanship of the engines when they left Caterpillar's hands.

Thereafter, for about a year, Trans-Spec repaired flywheel housing failures on the trucks utilizing its own employees or those of an affiliated corporation[3]. In June, 2004, Minuteman Trucks convened a meeting among representatives of Trans-Spec, Sterling, Minuteman, Caterpillar, and a non-party dealership, Southworth-Milton, Inc., to discuss the flywheel housing problems Trans-Spec was having and what might be done to assist with them. Caterpillar's

---

[2] The failure mechanism, in these as well as later instances, seems to be that bolts affixing the flywheel housing to the engine block loosen, permitting abnormal movement of the housing. Sometimes the abnormal movement damages the bolts, housing, and/or engine block. The abnormal movement itself, however, can impair operation of the truck because the flywheel housing is where the transmission (a non-Caterpillar assembly) attaches to the engine The question is: what is the source of the vibration or other stress that is causing Trans-Spec's flywheel housing bolts to loosen with so much greater frequency than the flywheel housing bolts in other people's C-12 equipped trucks?

[3] Trans-Spec conducted its business out of a leased facility in Worcester where it operated, among other things, a repair shop where it routinely serviced its trucks and other equipment and performed repairs that were not reimbursable under warranty or otherwise. Before the year 2003, Trans-Spec had no "employees," conducting its business instead through "employees" of another corporation wholly-owned by Donna Howard, wife of the 100% owner of Trans-Spec, and operated out of the same locations. Over the course of 2003, for reasons that remain obscure to Caterpillar, many of the "employees" of the affiliated corporation were switched from that company's payroll to Trans-Spec's payroll. The effect of the inter-company transactions on issues in this case remains to be fully explored, but is not in any event material to the present motion.

representative agreed that as a good will gesture it would reimburse authorized repair shops for appropriate labor and materials they used in making future flywheel housing repairs while it and Sterling worked together to identify the root cause of the failures. (Caterpillar understood Sterling had agreed to reimburse it for 50% of all goodwill payments it made in the first instance to the repair shops.) Since then Trans-Spec has not had to pay for repair of any flywheel housing failures on its Sterling trucks; and Trans-Spec has now sold the trucks in accordance with its customary practice of replacing trucks that are more than four years old.

Caterpillar does not believe there is any significant dispute about any of these facts but will be glad to document any which Trans-Spec controverts.

2.  Pertinent Procedural Events

Trans-Spec commenced this action on August 23, 2004. The Fed. R. Civ. P. 16 scheduling conference was convened on October 27, 2004, and the Court entered a scheduling order. (A copy is attached for the Court's convenience as Exhibit 1.) As relevant here, the order provided that Trans-Spec could take 12 depositions instead of the 10 depositions contemplated by Local Rule 26.1(C) but did not alter the provision in that rule limiting each party to "two (2) separate sets of requests for production."

On December 16, 2004, Trans-Spec served its First Request for Production of Documents to the Defendant, Caterpillar Inc. Caterpillar served its response on January 28, 2005. On May 20, 2005, the parties filed a Joint Motion to Amend Scheduling Order. (A copy is attached for the Court's convenience as Exhibit 2.) The Joint Motion asked the Court to adjust certain deadlines contained in the original scheduling order because of difficulties the parties encountered in scheduling depositions of non-party witnesses. The Joint Motion contained no request to alter the number of document requests permitted by Local Rule 26.1(C). The Court

granted the motion on June 1, 2005. On June 13, 2005, Trans-Spec served its Second Request for Production of Documents to the Defendant Caterpillar Inc. and Caterpillar served its response on July 18, 2005.[4]

On July 29, 2005, Trans-Spec served a notice of taking Caterpillar's Rule 30(b)(6) deposition. Attached to the notice pursuant to Fed. R. Civ. P. 30(b)(5) was a third request for production.[5] Caterpillar notified Trans-Spec's counsel that the document request appended to the deposition notice contravenes Local Rule 26.1(C) and the scheduling order and asked that it be withdrawn. Trans-Spec's counsel refused.

3.  Argument

Fed. R. Civ. P. 16 requires the Court to convene a scheduling conference soon after commencement of the action and requires the Court to issue a scheduling order at the end of the conference. Rule 16 says one subject to be addressed in the order is modifications that might be appropriate to the numerical and other limits on discovery created by other rules of civil procedure. Fed. R. Civ. P. 16(b)(4). To assist the Court in formulating an appropriate order, Local Rule 16.1(D) requires the parties to submit in advance of the conference a joint discovery plan that "conform[s] to the obligation to limit discovery." Rule 16(b) further states that the scheduling order "shall not be modified except upon a showing of good cause and by leave of" the Court.

In this case, the subject of modifications to the numerical limits on discovery was a subject of specific discussion at the scheduling conference convened by Judge Lindsay in

---

[4] On June 28, 2005, Trans-Spec served a second paper entitled "Second Request for Production of Documents to the Defendant Caterpillar Inc." containing substantively different requests from the first "second" set served on June 13. Defense counsel notified Trans-Spec's counsel of the error, reminded counsel of the limit on document requests established by Local Rule 26.1(C), and requested that the misnamed third set of requests be withdrawn. It was.

[5] "The notice to a party deponent may be accompanied by a request made in compliance with Rule 34 for the production of documents and tangible things at the taking of the deposition. The procedure of Rule 34 shall apply to the request." Fed. R. Civ. P. 30(b)(5).

4

October, 2004. Judge Lindsay did, in fact, modify the limits on discovery in one respect: he granted Trans-Spec permission to take two more depositions than the rules otherwise permit.[6] He did not, however, modify the limits on discovery in any other respect. In particular, he did not modify the provision in Local Rule 26.1(C) which says "[u]nless the judicial officer orders otherwise, the number of discovery events shall be limited for each side ... to ... two (2) separate sets of requests for production." Trans-Spec has never asked the Court to amend the scheduling order to permit more document requests than the rules contemplate, much less demonstrated good cause for doing so.

A party who wishes to exceed the numerical limits established by Local Rule 26.1(C) is *prohibited* from doing so unless it first obtains the Court's permission. Advanced Sterilization Products v. Jacob, 190 F.R.D. 284, 286 n.2 (D. Mass. 2000).

> Should a party exhaust the opportunities for any type of discovery events under LR 26.1(C), any requests that such party may make for additional interrogatories, depositions, admissions or the production of documents beyond that allowed pursuant to LR 26.1(C) *shall be* by discovery motion.

LR 26.2(B)(2) (emphasis supplied). The stated standard for granting such a motion is the same as the one for amending a Rule 16 scheduling order: the moving party must demonstrate good cause for the relief it seeks. Whittingham v. Amherst College, 163 F.R.D. 170, 172 (D. Mass. 1995). This makes complete sense. The purposes for the limits contained in Local Rule 26.1(C) are to enable courts to maintain control over the discovery process, to help avoid needlessly expensive or otherwise burdensome discovery, and to prevent litigants from misusing discovery for purposes of delay or oppression rather than the purposes for which it is intended. Whittingham, 163 F.R.D. at 171-172. A litigant who chooses to ignore Local Rule 26.1(C) and simply serves excessive discovery on its opponent without first raising the matter with the Court

---

[6] Trans-Spec had asked for leave to take 15 depositions, *see* Statement Pursuant to Local Rule 16.1, filed October 22, 2004, at page 5, §3.B.

effectively shifts to its opponent the burden and expense of enforcing the policies embodied in Local Rule 26.1(C). Local Rule 26.2(B)(2) is intended to prevent that from occurring. Trans-Spec, having failed to file a motion to modify the limit on document requests contained in Local Rule 26.1(C) and failed to ask the Court to modify its scheduling order implicitly adopting that limit, acted contrary to law in serving its third set of document requests. Caterpillar is entitled to an order that no response to those requests need be made.

Even if Trans-Spec had complied with applicable law, and asked the Court's permission to serve more document requests than the rules ordinarily permit, this would not be a case in which it would be appropriate to grant such a request.

There is nothing about Trans-Spec's third set of document requests to indicate why any properly discoverable documents falling within its scope could not easily have been requested in one of Trans-Spec's first two sets of requests. *Compare* O'Connell v. Hyatt Hotels of Puerto Rico, 357 F.3d 152, 154-155 (1st Cir. 2004) (good cause, in the context of a request to modify a provision in a scheduling order, means that the moving party could not reasonably have conformed to the provision despite diligent efforts to do so). There is, in other words, no "good cause" for making an exception to the perfectly reasonable general rule established by Local Rule 26.1(C) and left unmodified by the scheduling order. The third set of requests does not, for example, focus on factual questions newly placed in issue by the new Count which the Court allowed Trans-Spec to add to its complaint by amendment this past May; nor has there been any answer to that amended complaint raising new matter that the requests might be needed to explore. Indeed, many of the documents sought by the third set of requests *have* already been requested in earlier sets, and have been produced to the extent they are properly discoverable:

6

many of the requests in the third set are largely or entirely redundant of ones in earlier sets.[7] *See generally* Fed. R. Civ. P. 26(b)(2)(i) and (ii) ("The frequency or extent of use of the discovery methods otherwise permitted under these rules or by any local rule shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or ... (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought"). Thus, for example, Request No. 23 in the *third* set asks for:

> All documents concerning any differences between the design, composition, and/or manufacture of flywheel houses and/or flywheel house bolts installed in Caterpillar C-12 model engines installed in military vehicle applications and commercial vehicle applications.

But Trans-Spec's *second* set of requests included the following Request No. 3:

> All non-privileged documents concerning any and all differences in the design and/or composition of the flywheel housings and/or flywheel bolts used in commercial and military versions of the Caterpillar C12 engine used in onroad vocational applications.

Request No. 5 in Trans-Spec's *first* set of requests sought:

> All documents concerning Trans-Spec, Trans-Spec's trucks, Trans-Spec's C-12 engines ... whether internal or between Caterpillar and any other entity, including but not limited to Southworth-Milton, Inc. ... [or] Sterling Truck Corporation ...

Yet Request Nos. 17 and 18 in the *third* set of requests demand respectively:

> All communications between [Southworth-Milton, Inc.] and Caterpillar concerning Trans-Spec's Trucks and/or Trans-Spec's C-12 Engines

> and

> All communications between Sterling and Caterpillar concerning Trans-Spec's Trucks and Trans-Spec's C-12 Engines.

Request Nos. 25 and 26 in the *third* set respectively ask for:

> All documents concerning any modifications in the composition of the flywheel houses and flywheel houses bolts installed in Caterpillar C-12 model engines since January 1996.

---

[7] Copies of Trans-Spec's first and second sets of requests are contained in Exhibit 3 to this memorandum. The third set of requests is Schedule B to the deposition notice which is attached to the accompanying motion.

7

and

> All documents concerning revisions, changes, or modifications of any kind in the deign of the flywheel houses or flywheel house bolts used in Caterpillar C-12 model engines since January 1, 1996.

But contained in Trans-Spec's *second* set of requests was the following Request No. 2:

> All non-privileged documents concerning any and all modifications or proposed modifications to the design and/or composition of the flywheel houses and/or flywheel bolts used in Caterpillar C-12 engines since January 1, 2000.

In its *third* set of requests Trans-Spec asks for (Request No. 15):

> All documents concerning Caterpillar's rejection of warranty claims made by Trans-Spec and/or any entity performing repairs on Trans-Spec's Trucks and/or Trans-Spec's C-12 Engines.

But in Request No. 7 in Trans-Spec's *first* set of requests it has already demanded:

> All documents concerning Caterpillar's handling of any and all claims regarding Trans-Spec's C-12 engines.

*Compare* also, *e.g.*, the substance of Request Nos. 1, 2 and 5 contained in Trans-Spec's first set of requests with the substance of Request Nos. 19, 20 and 28 in the third set; the substance of Request Nos. 7, 11 and 16 in the first set with the substance of Request Nos. 13, 15 and 16 in the third set; and the substance of Request No. 4 in the first set with the substance of Request Nos. 20 and 21 in the third set.[8]

Caterpillar does not contend that *every* request in the third set is redundant of earlier requests; but it can fairly be said that *many* of them are redundant, that *none* seeks documents that could not have been sought in earlier sets if the drafters of those earlier sets had given

---

[8] Caterpillar has produced thousands of pages of documents by way of its initial automatic disclosure or in response or voluntary supplemental responses to Trans-Spec's first and second sets of requests for production of documents and its interrogatories. Nothing in Local Rule 26.1(C) or the scheduling order prevents Trans-Spec from asking Caterpillar to supplement further its responses to proper earlier discovery requests so long as Trans-Spec asks for supplementation in timely fashion, has a good faith belief that supplementation is warranted by the relevant facts and applicable law and court orders, and does not ask for supplementation in contravention of agreements counsel reached from time to time while negotiating resolution of discovery disputes pursuant to Local Rules 7.1 and 37.1.

serious thought to what they wanted to learn, and that imaginative lawyers will pretty much always think of more discovery to serve if they are permitted to do so. Local Rule 26.1(C) and 26.2(B), as well as the requirement in Local Rule 16.1(B) requiring the parties to prepare a discovery plan for use at the scheduling conference, are intended to remove from counsel that unfettered discretion and force them to conduct discovery in a thoughtful, judicious fashion that reflects the expense, burden, and delay that unnecessary discovery entails. Trans-Spec's third set of requests reflects no more than a failure to do that.

The discovery limits in Local Rule 26.1(C) are there to be followed and enforced. They may not be disregarded just because a party finds them inconvenient. Responding to document requests, like responding to other forms of written discovery, is very expensive in the first instance; addressing complaints about the adequacy of responses -- Trans-Spec has been liberal with such complaints -- is very expensive and distracts parties and their counsel from more productive activities; drafting oppositions to discovery motions is likewise expensive and distracting. Local Rule 26.1(C) limits the extent to which a party may impose that expense and distraction on its opponent, and Caterpillar is entitled just like any other civil litigant in this district to the protection of that rule when, as here, there has been no showing of good cause to deprive it of the protection.

Frankly, Caterpillar itself would be pleased, if the law allowed, to serve *numerous* additional document requests, interrogatories, and requests for admission beyond those which the applicable rules have permitted it to serve: Caterpillar's counsel too has a fertile imagination. The "moving target" Trans-Spec's story has presented, its delay in disclosing (or failure to disclose) basic information readily available to it (the dates of the alleged flywheel housing failures on which it bases its claim, the dates on which trucks were allegedly out of service as a

9

result of such failures, identities of customers whose alleged lost business it claims as the principal element of its damages, the dates and substance of allegedly relevant conversations with alleged Caterpillar representatives, and information about serious collision damage several of the allegedly defective trucks sustained as a result of careless driving, are but a few examples), and Trans-Spec's recent addition to its Complaint of a new claim raising new factual issues after Caterpillar had already conducted substantial written discovery could all be used as excuses for doing so; but Caterpillar believes applicable law mandates adherence to the limits established by the rules and the scheduling order unless there are powerful reasons to do otherwise, and that in the long run all parties benefit from the expedition, economy, and discipline that requiring such adherence fosters.  Trans-Spec had no good cause for serving a third set of document requests; it served them without the Court's authority and in direct contravention of Local Rules 26.1(C) and 26.2(B)(2); Caterpillar will be subjected to excessive burden and expense and diverted from more productive case-preparation activities if it must respond to them.  Its motion for a protective order directing that no response need be made to that set of requests should be allowed.

## CONCLUSION

Caterpillar's motion for a protective order with respect to unauthorized third set of requests for production should be allowed in the proposed form.

CATERPILLAR INC.,

By its attorneys,

CAMPBELL CAMPBELL EDWARDS
& CONROY, P.C.

_____
John A. K. Grunert  (BBO: 213820)
One Constitution Plaza
Boston, MA  02129
(617) 241-3000

### CERTIFICATE OF SERVICE

I, John A. K. Grunert, hereby certify that on August 17, 2005, I served the within memorandum by causing a copy to be mailed, by first class mail, postage prepaid, to Nancy M. Reimer, Esquire, Donovan Hatem LLP, Two Seaport Lane, Boston, MA  02210.

_____
John A. K. Grunert