UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11836-RCL

TRANS-SPEC TRUCK SERVICE, INC. )
d/b/a TRUCK SERVICE,            )
    Plaintiff                   )
                                )
vs.                             )
                                )
CATERPILLAR INC.                )
    Defendant                   )

## MOTION FOR PROTECTIVE ORDER BY
## PLAINTIFF TRANS-SPEC TRUCK SERVICE, INC.

Plaintiff Trans-Spec Truck Service, Inc. ("Trans-Spec"), hereby moves, pursuant to Fed. R. Civ. P. 26(c), for a protective order quashing Defendant Caterpillar Inc.'s ("Caterpillar"), deposition subpoenas of Thomas Service, Ph.D. ("Dr. Service") and Jack A. Ekchian, Ph.D. ("Dr. Ekchian"), attached respectively as Exhibits A and B. Pursuant to the Court's October 26, 2005 Order, Caterpillar has a right to take the depositions of Dr. Service and Dr. Ekchian prior to February 17, 2006. Accordingly, there is no need for Caterpillar to subpoena Dr. Service for deposition on December 27, 2005 and Dr. Ekchian for deposition on December 29, 2005.[1] Caterpillar does so, however, solely to annoy, harass, oppress, and unduly burden Trans-Spec and Trans-Spec's experts during the week between Christmas and New Year's, at a time when both deponents as well as Trans-Spec's counsel will be traveling out of state. Trans-Spec also moves, pursuant to Fed. R. Civ. P. 37(a)(4), for all costs, including attorney's fees and costs,

---

[1] As Trans-Spec's counsel noted to Caterpillar's counsel in a letter dated December 9, 2005, attached as Exhibit C, there is no need for Caterpillar to subpoena Dr. Service or Dr. Ekchian at all; both are available for deposition at a mutually convenient date and time before the February 17, 2006 deadline.

associated with the bringing of this Motion for Protective Order and such other relief as the Court deems appropriate.

In December 1999 and January 2000, Trans-Spec took delivery of twenty-two heavy-duty, custom built trucks to be used by Trans-Spec in its oil delivery service and dump trailer operations. Caterpillar's C-12 engine was an appropriate engine for fuel hauler and dump trailer operations in the New England area where Trans-Spec operates its trucks. Caterpillar Rule 30(b)(6) deposition, September 21, 2005 ("Caterpillar Depo. Day 1"), 134.12-15, attached as Exhibit D. Caterpillar C-12 engines powered all twenty-two of Trans-Spec's new trucks. As part of its purchase, Trans-Spec received from Caterpillar an extended warranty covering the engines for five years or 500,000 miles according to the terms and conditions as specified on the back of the Registration Certificate attached as Exhibit E.

By 2001, serious problems with the flywheel houses in Trans-Spec's C-12 engines began to manifest. Beginning in 2003, Caterpillar disclaimed its warranty and refused to further reimburse for repairs to flywheel houses on Trans-Spec's trucks. Caterpillar Rule 30(b)(6) deposition, September 22, 2005 ("Caterpillar Depo. Day 2"), 14.4-9, attached as Exhibit F. To this day, Caterpillar claims not to know the root cause of the flywheel house failures on the C-12 nor does Caterpillar have a permanent fix for these problems. Caterpillar Depo Day 1, 170.1-175.13, Ex. D. The individuals who decided to stop reimbursement for Trans-Spec's flywheel house failures did not consult with any engineers to confirm whether defective Caterpillar materials or workmanship caused Trans-Spec's problem prior to making their decision, nor did they consult with Caterpillar's Warranty Administration Department. Caterpillar Depo. Day 2, 52.7-60.23, 68.15-23, Ex. F. One of Caterpillar's two Rule 30(b)(6) designees testified that he assumed Caterpillar refused to reimburse for Trans-Spec's flywheel house repairs because the

trucks were over the mile or year limit for the extended warranty (they were not). Caterpillar Depo. Day 1, 207.3-208.18, Ex. D. This Rule 30(b)(6) designee added that the extended service coverage plan which Trans-Spec had on the engines covered the flywheel houses. Caterpillar Depo. Day 1, 208.1-10, Ex. D.

Trans-Spec's expert, Dr. Ekchian, concluded *inter alia* that: 1) Caterpillar knew that the aluminum housings used in its C-12 engines had a flaw; 2) the design of the flywheel houses in Caterpillar's C-12 rendered that engine defective; 3) Caterpillar had no basis for rejecting Trans-Spec's warranty claims; and, 4) Caterpillar was aware of alternatives to fix the defect including the use of cast iron flywheel housings, a flywheel housing disclosed in a Caterpillar patent application dated in July 1998 (prior to Trans-Spec's purchase of the trucks), or the use of a metal plate under bolt heads as suggested in a Caterpillar document. See Dr. Ekchian Report (without exhibits) attached as Exhibit G. Trans-Spec's second expert, Dr. Service, concluded *inter alia* that the flywheel housing and the bolted connection between the housing and the engine block revealed inherent design defects including overstressing of the flywheel housings under normal operating conditions and an under-designed bolted connection resulting from improper joint design. These defects, according to Dr. Service, could be remedied by proper engineering design and analysis. See Dr. Service Report (without exhibits) attached as Exhibit H. Thus, Caterpillar sold Trans-Spec engines it knew or should have known to be defective; provided warranties on those engines for five years or five hundred thousand miles; and, subsequently disclaimed the warranties, which failed of their essential purpose, once the defects began to manifest themselves.

On December 9, 2005, Trans-Spec's counsel informed Caterpillar's counsel that, in response to notices of deposition of Dr. Service and Dr. Ekchian and a threat to subpoena them,

no subpoena was necessary but that neither were available on dates proposed by Caterpillar during the week between Christmas and New Year's. See Exhibit C. Trans-Spec's counsel also informed that he would provide January deposition dates as soon as possible. See Exhibit C.

In response, Caterpillar's counsel served Dr. Service and Dr. Ekchian with the subpoenas at Exhibits A and B, requiring their depositions on December 27 and December 29, 2005. Trans-Spec's counsel again informed Caterpillar's counsel that Dr. Service and Dr. Ekchian were not available on December 27 and December 29, that Dr. Service was available from January 17 through February 2, 2006, and that dates for Dr. Ekchian would be forthcoming. See Letter of Attorney Reimer to Attorney Grunert Dated December 13, 2005, attached as Exhibit I. Caterpillar's counsel responded by demanding that he take the depositions of Dr. Service and Dr. Ekchian before Caterpillar's expert reports are due. See Letter of Attorney Grunert to Attorney Reimer Dated December 13, 2005, attached as Exhibit J.

On December 14, 2005, Trans-Spec's counsel again wrote to Caterpillar's counsel and, pursuant to Local Rule 7.1 and in response to Exhibit J, informed that neither Dr. Service nor Dr. Ekchian were available on December 27 and 29, that both would be available for deposition without subpoena, and requested that Caterpillar withdraw the subpoenas voluntarily so as to obviate the need to file this Motion for Protective Order. See Letter of Attorney Samito to Attorney Grunert Dated December 14, 2005, attached as Exhibit K. Caterpillar's counsel responded by refusing to withdraw the deposition subpoenas. See Letter of Attorney Grunert to Attorney Samito Dated December 15, 2005, attached as Exhibit L.

Regarding Caterpillar's demand to depose Dr. Service and Dr. Ekchian before its own expert reports are due, Trans-Spec notes that nowhere do the Federal Rules mandate that a plaintiff's expert must be deposed prior to the defendant's submission of expert reports.

Moreover, Judge Lindsay's original Scheduling Order dated October 27, 2004 included an approximately two month window following Caterpillar's expert disclosure for the taking of expert depositions. The *Assented To Motion to Amend Scheduling Order* dated October 7, 2005 ("Motion to Amend"), attached as Exhibit M, included a two month window after the serving of Caterpillar's expert reports for the deposition of experts. Judge Lindsay's October 26, 2005 Order on the Motion to Amend included a period slightly longer than a month in which to depose experts. Neither the Court's Orders nor the Motion to Amend, to which Caterpillar assented, afford Caterpillar the right to depose Trans-Spec's experts prior to serving its own expert reports. Nonetheless, Caterpillar now wishes to assume the authority of the Court and arbitrarily impose its own deadline for the deposition of Trans-Spec's experts weeks in advance of the official date sanctioned by the Court. Trans-Spec's counsel made these points to Caterpillar's counsel in the December 14, 2005 letter pursuant to Local Rule 7.1.

Fed. R. Civ. P. 26(c) holds, in pertinent part, that, "[u]pon motion by a party . . . the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Judges have broad discretion in deciding to grant protective orders. *Poliquin v. Garden Way*, 989 F.2d 527, 532 (1st Cir. 1993). For the reasons described above, Trans-Spec requests a protective order quashing the subpoenas of Dr. Service and Dr. Ekchian which are meant solely to annoy, harass, oppress, and unduly burden Trans-Spec and Trans-Spec's experts during the week between Christmas and New Year's. Trans-Spec also requests, pursuant to Fed. R. Civ. P 37(a)(4), for all costs, including attorney's fees and costs, associated with the bringing of this Motion for Protective Order and such other relief as the Court deems appropriate.

WHEREFORE, Trans-Spec requests that this Court grant its Motion for Protective Order.

Respectfully submitted,

TRANS-SPEC TRUCK SERVICE, INC.
d/b/a TRUCK SERVICE

By its Attorneys,

*/s/ Christian G. Samito*
Nancy M. Reimer, Esq., BBO#555373
Kevin G. Kenneally, BBO # 550050
Christian G. Samito, Esq., BBO#639825
Donovan Hatem, LLP
Two Seaport Lane
Boston, MA 02210
(617) 406-4500

Date: December 21, 2005

## LOCAL RULE 7.1 CERTIFICATE OF CONSULTATION

Counsel for Trans-Spec hereby certifies that he has conferred with defendant's counsel and attempted in good faith to resolve or narrow the issues presented in this *MOTION FOR PROTECTIVE ORDER BY PLAINTIFF TRANS-SPEC TRUCK SERVICE, INC.*

*/s/ Christian G. Samito*
Christian G. Samito
Counsel for Trans-Spec Truck Service, Inc.

## REQUEST FOR ORAL ARGUMENT

If the Court deems it necessary, Trans-Spec requests oral argument on its *MOTION FOR PROTECTIVE ORDER BY PLAINTIFF TRANS-SPEC TRUCK SERVICE, INC.*

## CERTIFICATE OF SERVICE

I, Christian G. Samito, hereby certify that on this 21st day of December, 2005, I served a copy of the foregoing, by mail, postage prepaid to:

John A.K. Grunert, Esq.
Campbell Campbell Edwards & Conroy
One Constitution Plaza, 3rd Floor
Boston, MA  02129

*/s/ Christian G. Samito*
Christian G. Samito

00966054