UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 2004-CV-11836-RCL

TRANS-SPEC TRUCK SERVICE, INC.,
d/b/a TRUCK SERVICE,
Plaintiff

v.

CATERPILLAR, INC.,
Defendant

**REPORT AND RECOMMENDATION ON**

**CATERPILLAR INC.'S MOTION TO DISMISS
THE SECOND AMENDED COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(b)(6)
AND CERTIFICATE OF CONFERENCE
(Docket # 53)**

**and**

**CATERPILLAR INC.'S MOTION TO STRIKE
ATTACHMENTS TO PLAINTIFF'S OPPOSITION TO
CATERPILLAR'S MOTION TO DISMISS THE
COMPLAINT AND TO STRIKE PORTIONS OF THE
OPPOSITION ITSELF, AND CERTIFICATE OF
LOCAL RULE 7.1 CONFERENCE
(Docket # 56)**

ALEXANDER, M.J.

On May 20, 2005, this Court allowed the motion of plaintiff Trans-Spec

Truck Service, Inc., d/b/a Truck Service ("Trans-Spec"), to amend its complaint to

add a new claim.  Shortly thereafter, defendant Caterpillar, Inc., moved to dismiss the second amended complaint pursuant to Fed. R. Civ. P. 12(b)(6).  That motion was referred to this Court for a Report and Recommendation.  After a hearing on the motion and careful consideration of the parties' asseverations, both oral and written, and for the reasons set forth more fully below, this Court now recommends that the District Court ALLOW IN PART and DENY IN PART Caterpillar's motion to dismiss.

**RELEVANT BACKGROUND**

As with any motions to dismiss, this Court must accept as true all well-pleaded facts and extend Trans-Spec the benefit of all reasonable inferences. Raytheon Co. v. Cont'l Cas. Co., 123 F. Supp. 2d 22, 24 (D. Mass. 2000).  With this standard in mind, the facts underlying this case, as taken from Trans-Spec's second amended complaint, are as follows.

In March 1999, Trans-Spec and Sterling Truck Corporation ("Sterling") prepared a "specification proposal" for twenty-two heavy-duty custom-built trucks that Trans-Spec anticipated purchasing from Sterling and using for its oil delivery service and dump trailer operations.[1]  Second Amended Complaint and Jury Claim ("Cmpl") ¶ 8.  The proposal called for the installation of a C-12 model engines,

---

[1]Sterling is not a party to this lawsuit.

2

manufactured by Caterpillar, in each of the trucks.  Id.  After finalizing the deal, Caterpillar shipped completely-assembled C-12 engines to Sterling, who then installed the engines in the trucks.  Id. ¶ 11.  Trans-Spec accepted delivery of the trucks in December 1999 and January 2000.  Id.  ¶ 12.

By 2001, serious problems began to occur with the C-12 engines.  Id. ¶ 14. More specifically, the flywheel housings began to loosen from the engines, leading to disruptions in the use of the trucks.  Id. ¶¶ 14, 15.  Although Caterpillar reimbursed Trans-Spec for repairs to six of the trucks that had experienced flywheel housing failure in 2001 and 2002, when a seventh truck became inoperable due to engine difficulties Caterpillar refused to pay for any additional repairs.  Id. ¶¶ 14-15.  Furthermore, according to Trans-Spec, Caterpillar failed to take appropriate remedial steps to address the problems once Caterpillar became aware of them.  Id. ¶ 16.  The engine problems have also resulted in several of the trucks leaking oil, sometimes while a truck was at a job site, and in violation of environmental laws.  Id. ¶ 23.  Trans-Spec also asserts that without a fully operational fleet, the transportation of heating oil in Massachusetts will be crippled.  Id. ¶ 31.

Since the problems began, an average of six Trans-Spec trucks have been inoperable at any given time because of engine-related issues.  Id. ¶ 16.  At times,

3

up to ten trucks have been out of service at once.  Id.  Additionally, two of Trans-

Specs trucks are now permanently disabled because their engine blocks are

completely broken.  Id. ¶ 15.  Trans-Spec's business requires that it operate all of

its trucks six days a week and trucks such as the ones that Trans-Spec uses can not

be rented for temporary use.  Id. ¶ 16.

Trans-Spec has also had to perform its own in-house repairs, with

Caterpillar's consent, on the flywheel housings of sixteen trucks.  Id. ¶ 20.  In

some instances, the flywheel housing had to be repaired multiple times on the

same trucks.  Id. ¶ 21.  Although Trans-Spec was conducting its own repairs, it

avers that, pursuant to Caterpillar's warranty, Caterpillar actually should have

been performing the repairs.  Id. ¶ 22.  Additionally, although the industry

standard, according to Trans-Spec, is to have one mechanic per twenty-two trucks,

Trans-Spec was forced to employ three additional mechanics to deal with the

constant breakdowns.  Id. ¶ 25.  In January 2004, Sterling agreed, upon

Caterpillar's demand, to supply transmission mounts to be installed in the trucks in

an effort to help remedy the problems.  Id. ¶ 18.  The transmission mounts proved

to be of no effect.  Id. ¶ 19.

Then, in June 2004, Caterpillar stated that it would repair the engine

breakdowns pursuant to its warranty.  Id. ¶ 27.  In August 2004, Caterpillar re-

4

iterated that it needed to address the problems and that the problems were not Trans-Spec's fault. Id. ¶ 28. That same month, however, Trans-Spec initiated the extant suit. Trans-Spec's first amended complaint includes claims for breach of warranties of merchantability and fitness and express warranties and for a violation of Mass. Gen. Laws c. 93A. Its second amended complaint, which Caterpillar now seeks to dismiss, adds a claim of negligence.[2]

**ANALYSIS**

The purpose of a motion to dismiss is to determine whether a complaint, in accordance with Fed. R. Civ. P. 8(a)(2), contains "a short and plain statement of the claim showing that the pleader is entitled to relief." E.g., Raytheon Co., 123 F. Supp. 2d at 26. Pursuant to this standard, a plaintiff need not "set out in detail the facts upon which he bases his claims." Id. at 27 (citing Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)).

It is well established that "'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Castegneto v. Corporate Express, Inc., 13 F. Supp. 2d 114, 116 (D. Mass. 1998) (quoting Conley

---

[2]Trans-Spec's first amended complaint also included a claim for declaratory relief. That claim was not included in the second amended complaint.

v. Gibson, 355 U.S. 41, 45-46 (1957)).  "'[T]he issue is not whether the plaintiff will ultimately prevail, but whether that party is entitled to offer evidence to support its claims.'"  Raytheon, 123 F. Supp. 2d at 27 (quoting Day v. Fallon Cmty. Health Plan, Inc., 917 F. Supp. 72, 75 (D. Mass. 1996)).  Therefore, the District Court may only dismiss Trans-Spec's claims if, extending every reasonable inference in Trans-Spec's favor, it finds that Trans-Spec's claims are legally insufficient to state a claim.  Coyne v. City of Somerville, 972 F.2d 440, 442-43 (1st Cir. 1992).  With this standard in mind, the Court turns to Trans-Spec's claims and Caterpillar's asseverations in favor of dismissal.

**Count I – Breach of Warranty**

**Estoppel**

Count I of Trans-Spec's second amended complaint alleges breaches of warranties of merchantability and fitness and express warranties.[3]  Caterpillar asserts that any breach of warranty claim is subject to the four year statute of limitations contained in G. L. c. 106, § 2-725.  Section 2-725 states, in pertinent part, that

---

[3]To the extent that Trans-Spec also alleges a claim under the Magnusson-Moss Warranty Act, 15 U.S.C. § 2301 et seq., Trans-Spec has conceded that the Act does not apply in this case.

(1) [a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. . . .

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

A breach occurs, and a cause action accrues, in cases involving a contract of sale when the goods in question are delivered.  See Coady v. Marvin Lumber & Cedar Co., 167 F. Supp. 2d 166, 170 (D. Mass. 2001) (breach of implied warranty occurred when plaintiff purchased windows from defendant); Bay State-Spray & Provincetown Steamship, Inc. v. Caterpillar Tractor Co., 404 Mass. 103, 106-07, 533 N.E.2d 1350, 1353 (1989) (breach of warranty occurred no later than when ship was delivered to plaintiff).  "[T]he cause of action accrued when the breach occurred 'regardless of the aggrieved party's lack of knowledge of the breach.'" Id., at 106, 533 N.E.2d at 1353 (quoting § 2-725).

Trans-Spec's cause of action against Caterpillar for breach of warranty, therefore, accrued in January 2000, when all of the trucks had been received by Trans-Spec.  Trans-Spec, however, did not commence this action until August

2004, more than four years after the cause of action accrued.  Although Trans-

Spec does not dispute the applicability of § 2-725, Trans-Spec asseverates that

Caterpillar's own actions estop Caterpillar from asserting a statute of limitations

defense.

"Under Massachusetts law, if a plaintiff is to escape the consequences of his

lack of diligence in bringing his action, it must be by way of proof that the

defendant lulled the plaintiff into the delay."  Coady, 167 F. Supp. 2d at 171

(citing New England Power Co. v. Riley Stoker Corp., 20 Mass. App. Ct. 25, 32,

477 N.E. 2d 1054 (1985)).  For estoppel to apply, a plaintiff must show

> (1) that [the defendant] made representations that it knew
> or should have known would induce the [plaintiff] to
> postpone bringing a suit;
>
> (2) that [the plaintiff] did in fact delay bringing a suit in
> reliance on those representations; and
>
> (3) that reliance on those representations was reasonable.

Kozikowski v. Toll Bros. Inc., 354 F.3d 16, 24 (1st Cir. 2003) (citing O'Blenes v.

Zoning Bd. of Appeals of Lynn, 397 Mass. 555, 558, 492 N.E.2d 354 (1986)).  See

also Coady, 167 F. Supp. 2d at 171.  Trans-Spec asserts that it "declined to file

suit" prior to August 2004 in reliance on assurances from Caterpillar that it would

compensate Trans-Spec for the damages that Trans-Spec suffered.  The facts

8

alleged in Trans-Spec's complaint, however, even if true, fail to support this assertion.

Trans-Spec alleges, for example, that although Caterpillar did, initially, reimburse Trans-Spec for repairs to Trans-Spec's trucks in 2001 and 2002, Caterpillar ultimately stopped doing so and refused to pay for any additional repairs. Although the second amended complaint does not state when this occurred, it appears that it was in 2002. There is no indication in the complaint of what might have transpired between 2002 and January 2004, when Caterpillar demanded that Sterling supply transmission mounts for the trucks in an effort to remedy the problems. Even if Trans-Spec reasonably relied on Caterpillar's initial reimbursements as "representations" that would have induced Trans-Spec to refrain from filing suit, the reimbursements ceased well before the statute of limitations expired on the breach of warranty claims.

Trans-Spec also states that in June 2004 representatives from Trans-Spec, Caterpillar and Sterling met to discuss the continuing problems that Trans-Spec was experiencing with its trucks. As Caterpillar averred at the hearing on the motion to dismiss, however, these meetings themselves took place after the statute of limitations had expired, and Trans-Spec can not, therefore, rely on them in support of estoppel. Trans-Spec's estoppel asseverations are unavailing.

**Future performance**

Trans-Spec also asserts that the express warranty provided by Caterpillar extended to future performance and that, therefore, the cause of action accrued not at the time of delivery – January 2000 – but when Trans-Spec discovered a problem with the C-12 engines – some time in 2001.  Section 2-725 does provide an exception to the four-year statute of limitations for express warranties that explicitly extend to future performance.  G. L. c. 106, § 725.  In determining whether a warranty extends to future performance, "courts have emphasized the word 'explicitly,' construing that requirement to mean that a warranty must specify a particular future time."  Coady, 167 F. Supp. 2d. at 170  (citing Raytheon Co. v. Helix Technology Corp., 1999 WL 753483, *3 (Mass. Super. 1999)).

Trans-Spec avers that Caterpillar's extended service coverage includes payment for components and labor charges for "covered failures" for five years or five hundred thousand miles and, indeed the On-Highway Vehicle Engine Extended Service Coverage certificate states coverage for sixty (60) months (five years) and coverage miles of 500,000.  This type of warranty, however, that offers to repair or replace defective parts, does not constitute an explicit warranty of future performance.  See, e.g., Ontario Hydro v. Zallea Systems, Inc., 569 F. Supp.

10

1261, 1266 (D. Del. 1983).  <u>See also</u> <u>New England Power Co. v. Riley Stoker</u>

<u>Corp.</u>, 20 Mass. App. Ct. 25, 30, 477 N.E.2d 1054, 1058 (1985).  "[A] repair or

replacement warranty does not warrant how the goods will perform in the future.

Rather, such a warranty simply provides that if a product fails or becomes

defective, the seller will replace or repair within a stated period."  <u>Id.</u>  Caterpillar's

warranty does not explicitly provide for future performance of the engines.  Trans-

Spec's assertions that the cause of action did not accrue until the time that it

learned of the engines' problems must, therefore, fail.

Because Caterpillar is not estopped from asserting a statute of limitations

defense and because Trans-Spec has no other means to avoid the statute of

limitations, Trans-Spec can not maintain its breach of warranty claim.  The claim

is barred by the statute of limitations and this Court therefore RECOMMENDS

that the District Court ALLOW Caterpillar's motion to dismiss count I of Trans-

Spec's second amended complaint.

**Count II – Violation of G. L. c. 93A**

Trans-Spec's second claim alleges that Caterpillar, by breaching its

warranties, has also violated G. L. c. 93A.  Because the 93A claim is based on the

breach of warranty claim, it is subject to the same four year statute of limitations

that applies to, and accrued at the same time as, the breach of warranty claim.  The

11

93A claim, therefore, is also barred by the statute of limitations and this Court

RECOMMENDS that the District Court ALLOW Caterpillar's motion to dismiss

count II of Trans-Spec's second amended complaint.

**Count III – Negligence**

Finally, Trans-Spec alleges that its injuries were the direct and proximate

result of Caterpillar's negligent design, development, assembly, manufacture,

inspection, testing, marketing, advertising, and distribution of the C-12 engines.

Caterpillar contends that Trans-Spec's negligence claim alleges only economic

loss and that the claim is therefore barred by the economic loss doctrine.

This Court addressed the economic loss doctrine in its May 20, 2005, order

allowing Trans-Spec to amend its complaint ("the Order").  As discussed in the

Order, Massachusetts law states that

> [i]n the absence of personal injury or physical damage to
> property, the negligent supplier of a defective product is
> not ordinarily liable in tort for simple economic loss.

Berish v. Bornstein, 437 Mass. 252, 267 (2002).  See also, Arthur D. Little Int'l,

Inc., v. Dooyang Corp., 928 F. Supp. 1189, 1202 (D. Mass. 1996).  Economic loss,

in turn, includes

> "damages for inadequate value, costs of repair and
> replacement of the defective product or consequent loss

12

> of profits without any claim of personal injury or damage
> to other property."

Id. (quoting Marcil v. John Deere Indus. Equip. Co., 9 Mass. App. Ct. 625, 630 n.

3)).

In addition to re-iterating its position as to why the economic loss doctrine

does not apply, Trans-Spec also points out, correctly, that the standard that this

Court applied in allowing Trans-Spec to amend its complaint is the same standard

that applies here.  In assessing Trans-Spec's motion to amend to allow the

negligence claim, this Court looked to Fed. R. Civ. P. 12(b)(6), the same rule that

governs the extant motion to dismiss.[4]  Therefore, for the reasons stated in the

Order, this Court must RECOMMEND that the District Court DENY Caterpillar's

motion to dismiss count III of Trans-Spec's second amended complaint.

**MOTION TO STRIKE**

In connection with its motion to dismiss, Caterpillar has moved to strike

Exhibits A through K to Trans-Spec's opposition to the motion to dismiss as well

as pages eight through thirteen of the opposition itself.  Caterpillar avers, in short,

---

[4]Trans-Spec avers that pursuant to the Order its second amended complaint in its entirety must be sufficient.  The Order, however, was concerned only with the claim that Trans-Spec sought to add in its second amended complaint – the negligence claim.  The Order does not, therefore, dictate that Trans-Spec's breach of warranty and 93A claims must also survive Caterpillar's motion to dismiss.

that the Court, in considering a motion to dismiss, can not consider any documents

outside of, or not incorporated in to, the complaint.  Trans-Spec counters that it

has the right to present materials outside of the pleadings even if this means that

the Court, at its discretion, converts Caterpillar's  motion to dismiss to a motion

for summary judgment.

    Both parties are correct.  "Ordinarily, a court may not consider any

documents that are outside of the complaint, or not expressly incorporated therein,

unless the motion is converted into one for summary judgment." Alternative

Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001)

(citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).  Additionally,

> [a] motion to dismiss is not automatically transformed
> into a motion for summary judgment simply because
> matters outside the pleadings are filed with, and not
> expressly rejected by, the district court. If the district
> court chooses to ignore the supplementary materials and
> determines the motion under the 12(b)(6) standard, no
> conversion occurs.

Garrita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S. B., 958 F.2d 15, 18 (1st Cir.

1992).

    The Court has not considered any of the documents submitted by Trans-

Spec, other than the exhibits included with the complaint, and declines to convert

Caterpillar's motion to dismiss in to a motion for summary judgment.  Although

14

the Court need not expressly reject the other documents submitted by Trans-Spec, the Court recommends that the District Court allow Caterpillar's motion to strike exhibits A-K of Trans-Spec's opposition to the motion to dismiss. Although Caterpillar also seeks to strike pages eight through thirteen of Trans-Spec's opposition, the Court does not recommend that the District Court allow this portion of Caterpillar's motion. Trans-Spec does refer to the exhibits on those pages, but other, acceptable, information is included as well. This Court did not rely on the exhibits in reaching its recommendations on the motion to dismiss and those pages of the opposition need not be struck.

**CONCLUSION**

For the foregoing reasons, this Court RECOMMENDS that the District Court ALLOW IN PART and DENY IN PART Caterpillar's motion to dismiss Trans-Spec's second amended complaint and ALLOW IN PART and DENY IN PART Caterpillar's motion to strike.

SO ORDERED.


 1/31/06                                     JOYCE LONDON ALEXANDER
Date                                      United States Magistrate Judge

# NOTICE TO THE PARTIES

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrate Judges in the United States District Court the District Court of Massachusetts, any party who objects to this proposed Report and Recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of the Report and Recommendation. The written objections must specifically identify the proportions of the proposed findings, recommendations or report to which objection is made and the basis for such objection. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 273 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 687 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111 (1986).