UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11836-RCL

|  |  |
|---|---|
| TRANS-SPEC TRUCK SERVICE, INC. d/b/a TRUCK SERVICE, Plaintiff | ) ) ) ) |
| vs. | ) ) ) |
| CATERPILLAR INC. Defendant | ) ) ) ) |

## PLAINTIFF TRANS-SPEC TRUCK SERVICE, INC.'S OBJECTION TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON THE DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE

Plaintiff Trans-Spec Truck Service, Inc. ("Trans-Spec"), hereby moves the Court to reject the Magistrate Judge's Report and Recommendation on Defendant Caterpillar Inc.'s ("Caterpillar") Motion to Dismiss and Motion to Strike pursuant to Fed. R. Civ. P. 72(b) and Rule 3(b) of the Rules for United States Magistrate Judges in the United States District Court of the District of Massachusetts ("Magistrates Rule 3(b)").[1]

### INTRODUCTION

In December 1999 and January 2000, Trans-Spec took delivery of twenty-two heavy-duty, custom built trucks to be used by Trans-Spec in its oil delivery service and dump trailer operations. Complaint, ¶ 12. Caterpillar's C-12 engine was an appropriate engine for fuel hauler

---

[1] Hereinafter, the Magistrate Judge's Report and Record is cited as (Rec. at __). Trans-Spec specifically objects to pages 6 through 12 of the Magistrate Judge's Report recommending dismissal of Counts I and II of Trans-Spec's Second Amended Complaint and pages 13 through 15 recommending that this Court grant in part Caterpillar's Motion to Strike.

and dump trailer operations in the New England area where Trans-Spec operates its trucks. Caterpillar Rule 30(b)(6) deposition, September 21, 2005 ("Caterpillar Depo. Day 1"), 134.12-15, attached as Ex. A.[2] Caterpillar C-12 engines powered all twenty-two of Trans-Spec's new trucks. As part of its purchase, Trans-Spec received from Caterpillar an extended warranty covering the engines "against defects in materials or workmanship under normal use" for five years or 500,000 miles, according to the terms and conditions as specified on the back of the Registration Certificate attached as Ex. B. Trans-Spec also received a concurrent two year warranty, attached as Ex. C, pursuant to which "Caterpillar Inc. or any of its subsidiaries ('Caterpillar') warrants new . . . C-12 . . . engines sold by it for use in powering on-highway vehicles . . . to be free from defects in material and workmanship" for "24 months after date of delivery to the first user."

By 2001, serious problems with the flywheel housings in Trans-Spec's C-12 engines began to manifest. Complaint, ¶ 14. Caterpillar paid for the corresponding work performed on the engines pursuant to the five year/500,000 mile warranty, Complaint, ¶¶ 14, 15, and the two year warranty. Beginning in 2003, however, Caterpillar breached its warranty and refused to further reimburse for work performed on the flywheel housings on the engines in Trans-Spec's trucks.[3] Caterpillar Rule 30(b)(6) deposition, September 22, 2005 ("Caterpillar Depo. Day 2"), 14.4-9, attached as Ex. D. To this day, Caterpillar does not offer a permanent fix for these problems. Caterpillar Depo Day 1, 170.1-175.13, Ex. A. The Caterpillar employees who stopped reimbursement for Trans-Spec's flywheel housing failures did not consult with any engineers to confirm whether defective Caterpillar materials or workmanship caused Trans-

---

[2] Trans-Spec took Caterpillar's Rule 30(b)(6) deposition after the Magistrate Judge heard oral arguments on the underlying Motion to Dismiss.
[3] Although Trans-Spec's Complaint avers that Caterpillar refused to further reimburse for work performed on the flywheel houses beginning in 2002, subsequent discovery indicates that this occurred sometime in 2003.

Spec's problems prior to making their decision, nor did they consult with Caterpillar's Warranty Administration Department. Caterpillar Depo. Day 2, 52.7-60.23, 68.15-23, Ex. D. One of Caterpillar's two Rule 30(b)(6) designees testified that he assumed Caterpillar refused to reimburse for Trans-Spec's flywheel housing repairs because the trucks were over the mile or year limit for the extended warranty (they were not). Caterpillar Depo. Day 1, 207.3-208.18, Ex. A. This Rule 30(b)(6) designee added that the extended warranty which Trans-Spec had on the engines covered the flywheel housings. Caterpillar Depo. Day 1, 208.1-10, Ex. A.

Trans-Spec's expert, Dr. Ekchian, concluded *inter alia* that: 1) Caterpillar knew that the aluminum housings used in its C-12 engines were flawed; 2) the design of the flywheel housings in Caterpillar's C-12 rendered that engine model defective; 3) Caterpillar had no basis for rejecting Trans-Spec's warranty claims; and, 4) Caterpillar was aware of alternatives to fix the defect including the use of cast iron flywheel housings, a flywheel housing disclosed in a Caterpillar patent application dated in July 1998 (prior to Trans-Spec's purchase of the trucks), or the use of a metal plate under bolt heads as suggested in a Caterpillar document.[4] See Dr. Ekchian Report (without exhibits) attached as Ex. E. Trans-Spec's second expert, Dr. Service, concluded *inter alia* that the flywheel housing and the bolted connection between the housing and the engine block revealed inherent design defects including overstressing of the flywheel

---

[4] Patent Number 6,065,757, attached as Exhibit F and filed by Caterpillar on July 2, 1998 – a year and a half before Trans-Spec took delivery of the trucks – notes that in aluminum flywheel housings such as the ones on Trans-Spec's engines, "[d]uring normal operation of an engine, cyclic temperature changes can cause thermal expansion and contraction of various components at varying rates. The use of components made of different materials adds to the relative movement between components. For example, the flywheel housing experiences thermal expansion greater than the thermal expansion of a cylinder block causing relative movement between the flywheel housing and the cylinder block. The relative movement . . . **can cause the flywheel housing** or seal to leak, **crack or can destroy connecting bolts used for connecting the flywheel housing to the cylinder block**." (emphasis added) This is precisely what happened on the C-12 engines in Trans-Spec's trucks. Caterpillar did not produce this Patent and Trans-Spec discovered it after the Court heard oral argument on the underlying Motion to Dismiss.

housings under normal operating conditions and an under-designed bolted connection resulting from improper joint design. These defects, according to Dr. Service, could be remedied by proper engineering design and analysis. See Dr. Service Report (without exhibits) attached as Exhibit G.

In sum, Caterpillar sold Trans-Spec engines it knew or should have known to be defective; provided warranties on those engines, including warranties against defects in materials or workmanship for two years and for five years/500,000 miles; authorized initial repairs that made it appear to Trans-Spec as if Caterpillar had honored its two year and five year/500,000 mile warranties as to Trans-Spec's flywheel housing failures; and, disclaimed the five year/500,000 mile warranty, which accordingly failed of its essential purpose, in 2003 after the flywheel housing defects continued to manifest themselves. Trans-Spec brought this suit against Caterpillar in August 2004 alleging breach of warranty and violation of Mass. Gen. Laws c. 93A ("Chapter 93A"). Trans-Spec subsequently sought and obtained leave from the Court to amend its Complaint to assert a claim of negligence.

**OBJECTIONS AND ARGUMENT**

**A.      Standard of Review**

If a party timely objects to the Magistrate Judge's recommendations or findings, the District Court must make a *de novo* determination of the objectionable portions of the Magistrate Judge's recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Magistrates Rule 3(b). The District Court may then accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendations or findings. *Id.* Moreover, the District Court has discretion to completely ignore the Magistrate Judge's recommendations. *Moreau v. Local Union No. 247*, 851 F.2d 516, 518 (1st Cir. 1988) (district court granted a motion after rejecting magistrate's recommendation

that it be denied). The District Court also has discretion to consider additional evidence not presented to the Magistrate Judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Magistrates Rule 3(b); see also *Carpet Group International v. Oriental Rug Importers Association, Inc.*, 227 F.3d 62, 70 (3d Cir. 2000).

**B.    Trans-Spec's causes of action are viable and are not barred by the statute of limitations.**

In her Report and Recommendation, the Magistrate Judge dismissed Trans-Spec's breach of warranty and violation of Chapter 93A claims because she found both claims barred by the four year statute of limitations contained in M.G.L. c. 106, § 2-275. Trans-Spec respectfully submits that its Complaint is sufficient and its causes of action remain viable for the reasons set forth below.

**1.    Breach of Warranty**

Count I of Trans-Spec's Second Amended Complaint alleges breaches of implied and express warranties. Trans-Spec alleges that Caterpillar extended warranties during negotiations for the sale of the subject C-12 engines. Upon consummation of that sale, Caterpillar also agreed to reimburse Trans-Spec for any "failures due to defects in materials or workmanship under normal use" for a period of five years/500,000 miles. Caterpillar further extended to Trans-Spec a concurrent warranty pursuant to which Caterpillar "warrants new . . . C-12 . . . engines   . . . to be free from defects in material and workmanship" for "24 months after date of delivery to the first user." (See Exs. B and C for the five year/500,000 mile and the two year warranties). The Magistrate Judge held that "[a] breach occurs, and a cause action [sic] accrues, in cases involving a contract of sale when the goods in question are delivered"; that Trans-Spec's cause of action accrued in January 2000, when it had received all of the trucks; and, that Trans-Spec's claim is barred because it did not commence this action until August 2004. (Rec. at 7-8). Respectfully,

the Magistrate Judge failed to consider the different types of warranties encompassed in this count, that different statutes of limitations applied to each pursuant to M.G.L. ch. 106, § 2-725(2), and that estoppel tolled the statutes of limitations as a whole.

**a.      Future Performance**

**i.      Under the Five year/500,000 mile warranty**

The Magistrate Judge failed to adequately consider that Trans-Spec's breach of warranty count encompasses types of warranties governed by the statute of limitations provision contained in M.G.L. ch. 106, § 2-725(2).  Separate from the warranties Caterpillar extended in connection with the sale of the C-12 engines, Caterpillar also agreed that it would "pay 100% of the components and labor charges for covered failures, with no deductible charges" for five years or five hundred thousand miles.  See Ex. B.  Thus, Caterpillar offered Trans-Spec a warranty that its engines would be free from "defects in materials or workmanship under normal use" during a five year period and represented that if any defects in materials or workmanship arose during that specified time, Caterpillar would pay for the necessary repairs.  See Ex. B.

Trans-Spec alleges as part of its breach of warranty count that certain engine components were "not repaired [by Caterpillar] when they broke." (Complaint, ¶ 39; see also ¶ 15, 17, 20, 21, 22, 27, 28, 39, 40, 41).  Caterpillar confirmed that it breached its warranty and refused to further reimburse for repairs to flywheel housings on Trans-Spec's trucks beginning in 2003.  Caterpillar Depo. Day 2, 14.4-9, Ex D.  Caterpillar further admitted that the Caterpillar employees who stopped reimbursement for Trans-Spec's flywheel housing failures did not consult with any engineers to confirm whether defective Caterpillar materials or workmanship caused Trans-Spec's problem prior to making their decision, nor did they consult with Caterpillar's Warranty Administration Department.  Caterpillar Depo. Day 2, 52.7-60.23, 68.15-23, Ex. D.  Pursuant to

M.G.L. ch. 106, § 2-725(2), **Trans-Spec's breach of warranty claims in this regard accrued in 2003**, not January 2000 as identified by the Magistrate Judge. (Rec. at 7). Trans-Spec brought this suit in August 2004, well before the applicable statute of limitations runs in 2007.

In her Report, the Magistrate Judge did not discuss the analogous case *Standard Alliance Industries, Inc. v. The Black Clawson Company*, 587 F.2d 812 (6th Cir. 1978), cert. denied, 441 U.S. 923 (1979). In *Standard Alliance*, the Court held that **"[i]f a seller expressly warrants a product for a specified number of years, it is clear that, by this action alone, he is explicitly warranting the future performance of the goods for that period of time."** *Standard Alliance*, 587 F.2d at 820-21 (emphasis added). Accordingly, where a defendant warranted a machine for one year, "the warranties explicitly extended to future performance for a period of one year," and "under § 2-725(2) the cause of action accrued when plaintiff discovered or should have discovered that the machine was defective, so long as the defect arose within the warranty period." *Id.* In an analogy directly applicable to this case, the Court noted, "if an automobile is warranted to last for twenty-four thousand miles or four years, the warranty should extend to future performance. If the car fails within the warranty period, the limitations period should begin to run from the day the defect is or should have been discovered." *Standard Alliance*, 587 F. 2d at 821.

A warranty guaranteeing Trans-Spec that engines it purchased will be free from any defects in materials or workmanship for five years/500,000 miles and assuring that Caterpillar will reimburse for necessary repairs if any defects in materials or workmanship arose during that specified time explicitly extends to future performance. See *Grand Island Express v. Timpte Indus., Inc.*, 28 F.3d 73, 75 (8th Cir. 1994) (holding that a warranty promising that trailers would be free from defects in material and workmanship for a period of five years from the date of

delivery to the purchaser extended to future performance); *R. W. Murray Co. v. Shatterproof Glass Corp.*, 697 F.2d 818, 823 (8th Cir. 1983) (holding that warranties providing that glass units would perform in a specified manner for a specified period of time with a limitation of the remedy to repair or replacement in the event of a breach of those warranties extended to future performance); *Standard Alliance*, 587 F.2d at 820-21; *Executone Bus. Sys. Corp. v. IPC Communications, Inc.*, 177 Mich. App. 660, 668-69, 442 N.W.2d 755, 760 (1989) (holding that warranty that guaranteed telephone systems to be free from defects in material and workmanship for a period of 13 months extended to future performance), review denied (Mich. Feb. 26, 1990). As aptly stated by the Supreme Court of Pennsylvania in *Nationwide Ins. Co. v. General Motors Corp.*, 533 Pa. 423, 625 A.2d 1172, 1178 (1991),

> There can be little question that the consumer will consider the length of any warranty offered in determining whether to purchase a particular vehicle: [sic] The consumer naturally would believe that the longer the warranty, the greater the protection, and hence, the better the value, he or she is receiving. If Appellee's position were to prevail, the protection afforded the buyer during the latter part of a warranty approaching four years would be largely illusory, as the buyer would have a very short period of time in which to bring a cause of action for breach. Moreover, the longer-term protection afforded by a warranty extending beyond four years would be completely illusory.

Here, the Magistrate Judge's holding that Caterpillar's warranty expired four years after delivery of the truck engines is inconsistent with the warranty's express language providing for a five-year period.

Furthermore, the First Circuit has held that a "'promise to repair warranty' refers to a type of warranty that stipulates the remedy to be invoked if the product purchased becomes faulty," and that "[i]f the promisor does not abide by the promise to repair, then the promisee has a cause of action for the underlying breach of warranty for the defective product." *Neuhoff v. Marvin Lumber and Cedar Company*, 370 F.3d 197, 201 (1st Cir. 2004) (citing *Standard*

*Alliance*, 587 F.2d at 818 n.10).   In other words, a warranty explicitly extending to future performance of the goods for a specified time exists where Caterpillar limited Trans-Spec's remedy to repair and replacement of the goods for a period of time, and where, as here, this exclusive or limited remedy fails of its essential purpose, all remedies provided by the Uniform Commercial Code become available. *R. W. Murray*, 697 F.2d at 823; M.G.L. ch. 106, § 2-719.

Accepting the Magistrate Judge's Report would relieve manufacturers from honoring any warranty past the four year mark.   The extended service coverage plan given by Caterpillar to Trans-Spec explicitly warranted future performance (Caterpillar's payment for components and labor charges for engine part failures) for a specific future time (five years or five hundred thousand miles).   Accepting the Magistrate Judge's Report, however, invalidates any such warranty or extended service coverage plan insofar as it extends beyond four years.   By precluding suits past the four year statute of limitations, the Magistrate Judge's Report nullifies lifetime warranties commonly extended by manufacturers, as well as time- or mileage-based warranties such as the one Caterpillar extended to Trans-Spec, and which are of the type commonly provided to consumers by automotive and trucking companies.[5]

As shown above, it is appropriate here for this Court to apply M.G.L. c. 106, §2-725(2), which holds, "where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."   Under this governing provision, **Trans-Spec's cause of action** as to its breach of warranty claims related to the five year/500,000 mile warranty **accrued in 2003**, not January 2000 as recommended by the Magistrate Judge.

---

[5] The Magistrate Judge's interpretation also runs counter to other federal laws, i.e., it would void federal emissions warranties promulgated by the Environmental Protection Agency which provide design and defect warranties on certain emission related parts for the first eight years or 80,000 miles of vehicle use. 42 U.S.C.S. § 7541.

Accordingly, the statute of limitations as to this portion for Trans-Spec's claims **does not run until 2007**.

### ii.    Under the two-year limited warranty

Upon consummation of the sale, Caterpillar also extended to Trans-Spec a two year warranty, Ex. C, that ran concurrently with the five year/500,000 mile warranty described above. This second warranty explicitly stated that "Caterpillar Inc. or any of its subsidiaries ('Caterpillar') warrants new . . . C-12 . . . engines sold by it for use in powering on-highway vehicles . . . to be free from defects in material and workmanship" for a period of "24 months after date of delivery to the first user." Ex. C.

As with the five year/500,000 mile warranty, this second warranty extended to future performance such that M.G.L. ch. 106, § 2-725(2) applies. *Grand Island,* 28 F.3d at 75; *R. W. Murray Co.,* 697 F.2d at 823; *Standard Alliance,* 587 F.2d at 820-21; *Nationwide Ins. Co.,* 625 A.2d at 1178; *Executone Bus. Sys. Corp.,* 442 N.W.2d at 760.

Even were the Court to rely on the non-binding and misplaced analysis in *Ontario Hydro v. Zallea Systems, Inc.* 569 F. Supp. 1261 (D. Del. 1983) that Caterpillar's five year/500,000 mile warranty is simply a repair warranty that does not extend to future performance – and the cases cited above contradict *Ontario Hydro* – even the *Ontario Hydro* court would concede that Caterpillar's two year warranty is one of future performance such that M.G.L. ch. 106, § 2-725(2) applies: "A warranty of future performance of a product must expressly provide some form of guarantee that the product will perform in the future as promised." *Ontario Hydro,* 569

F. Supp. at 1266.[6] Here, Caterpillar's second warranty unambiguously "warrants new . . . C-12 . . . engines . . . to be free from defects in material and workmanship" for "24 months" as well as provides the remedy of repair or replacement at no cost to the first user.[7]

As near as can be determined from records produced by Caterpillar and one of its authorized dealers, Minuteman Trucks, Inc., the first flywheel housing problem manifested itself – thus setting the earliest time Trans-Spec could have discovered the defects in Caterpillar's materials and workmanship – in November 2001. Even if this flywheel housing failure was on one of the trucks delivered to Trans-Spec in December 1999, the two year warranty would not have expired until December 2001. Because this was a warranty of future performance such that M.G.L. ch. 106, § 2-725(2) applies, Trans-Spec's claims accrued in November 2001 and the statute of limitations did not run until November 2005, **over a year after** Trans-Spec filed this suit.

Moreover, in choosing to continually replace one defective part on Trans-Spec's engines with a part containing the same defects, and not rectifying the defect on all twenty two of Trans-Spec's engines, Caterpillar repeatedly breached both the two year and the five year/500,000 mile warranties. Caterpillar failed "to correct the defect," as mandated by the two year warranty at Ex. C or "repair" the failures as called for in the five year/500,000 mile warranty at Ex. B.

---

[6] The Magistrate Judge also cites to *New England Power Company v. Riley Stoker Corporation*, 20 Mass. App. Ct. 25 (1985). While *New England Power* states that "promises to repair or to replace are generally viewed as specifications of a remedy rather than as an independent or separate warranty," it also holds that "when there are a warranty and a promise to repair, the remedy of first resort is the promise to repair. If that promise is not fulfilled, then the cause of action is the underlying breach of warranty." *Id.* at 30. Thus, because Caterpillar breached its promises pursuant to both the two year and the five year/500,000 mile warranties, the Magistrate Judge misapplies the *New England Power* Court's language.

[7] Furthermore, in describing the five year/500,000 mile warranty in the text of the two year warranty, Caterpillar states that "parts are warranted against defects in material and workmanship for 60 months or 500,000 miles . . . whichever occurs first after date of delivery to the first user." Ex. C. This further supports the interpretation that the five year/500,000 mile warranty is more than simply a "repair or replace" warranty but one that warrants against defects in material or workmanship for five years of 500,000 miles and places it within the category of a warranty of future performance even pursuant to the *Ontario Hydro* ruling.

Accordingly, Trans-Spec brought this suit, and it did so within the applicable statute of limitations.

### b.    Estoppel

Even were, *arguendo*, the Magistrate Judge correct in holding that some of Trans-Spec's breach of warranty claims accrued in January 2000, she failed to consider that estoppel tolls the applicable statute of limitations as to all of Trans-Spec's breach of warranty claims, see *Opposition to Caterpillar Inc.'s Motion to Dismiss Second Amended Complaint and Request for Oral Argument* ("Opposition"), pp. 5-6.

In its Opposition, Trans-Spec cites to deposition testimony and an affidavit averring that it initiated this litigation only **after years of negotiation** with Caterpillar and Caterpillar's local agent and distributor, Southworth Milton, Inc. ("Milton"), failed to remedy its losses.  See Opposition, pp. 5-6.[8]  Trans-Spec declined to file suit during this time because it relied on repeated assurances that Caterpillar would compensate it for the damages it suffered. *Id.*  In analyzing Trans-Spec's estoppel argument, the Magistrate Judge inappropriately focused on meetings between Trans-Spec and Caterpillar that occurred in June and August 2004 – over four years after delivery of the engines. Rec. at 9.  What the Magistrate Judge failed to consider is that other discussions between Trans-Spec and Caterpillar and/or Caterpillar's agent took place prior to as well as since Caterpillar's disclaimer of its warranty in 2003, and that these

---

[8] In relevant part, as cited on page 5 of the Opposition, the owner and president of Trans-Spec testified at deposition that he began speaking with Caterpillar's agent about the flywheel housing failures in mid to late 2002.

conversations fell within the four year statute of limitations.[9]  *Id.*  In addition to testimony from Trans-Spec's owner and president, an employee of Caterpillar's agent Milton testified as to repeated conversations he had with both Caterpillar and Trans-Spec about the flywheel housing failures beginning in late 2002.  See Opposition, pp. 5-6; Deposition of Albert Cardoza, 116.23-118.7, attached as Ex. H; Deposition of James M. Howard, Jr., August 9, 2005, 94.2-24, attached as Ex. I.  The June and August 2004 meetings put the capstone on a long pattern of assurance from Caterpillar and Caterpillar's agent that Trans-Spec would be made whole for the damages it suffered.  Moreover, by replacing flawed parts with the same flawed parts until 2003, Caterpillar authorized work which it knew would not fix Trans-Spec's flywheel housings but which would extend performance of the engines to the future, make Trans-Spec believe that Caterpillar had fixed the problems, and postpone any lawsuit.

Additionally, it is undisputed that Caterpillar initially authorized repair and replacement for Trans-Spec's flywheel housing problems pursuant to the five year/500,000 mile warranty on Trans-Spec's engines, Complaint, ¶¶ 14, 15, and the two year warranty.  Caterpillar's doing so directly bears on the applicable statute of limitations.  First off, the Registration Certificate attached as Ex. B provides reimbursement for covered components' failures "due to defects in Caterpillar materials or workmanship under normal use."  Thus, by authorizing repair and replacement for Trans Spec's initial flywheel housing problems, Caterpillar admitted that: a) defects in Caterpillar materials or workmanship caused the failures[10]; b) that Trans-Spec

---

[9] The Magistrate Judge admits that the Complaint does not aver what transpired before January 2004.  Rec. At 9.  If this Court permits Trans-Spec to amend its Complaint to conform to the evidence, as requested below, Trans-Spec will plead sufficient evidence based on deposition testimony already given under oath, and with an opportunity for cross examination, to support a finding that Caterpillar's actions and those of Caterpillar's agents tolled the statute of limitations.  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which will entitle him to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

[10] See also Caterpillar Depo. Day 2, 76.12-14, Ex. D: "The decision to reimburse is based upon whether or not the failure is the result of a defect in CAT material or workmanship."

operated the trucks within normal parameters; and, c) that the five year/500,000 mile warranty on defects in materials of workmanship on Trans Spec's engines (as well as the two year warranty), discussed more fully above, applied. See also Caterpillar Depo. Day 1, 207.3-208.18, Ex. A.

Trans-Spec believed that Caterpillar would correct the defects pursuant to assurances in its warranties that it would "correct the defect," Ex. C, and "repair" the failures, Ex. B, and that no lawsuit would be necessary. Caterpillar's actions in agreeing to repair the initial flywheel housing failures until 2003 gulled Trans-Spec into thinking that Caterpillar had or would devise an adequate fix for the flywheel housing defects on its truck engines and that Caterpillar would employ that fix on every one of truck engines when they failed. As shown more fully in Dr. Eckhian's report attached as Ex. E, Caterpillar was aware of alternatives to fix the defect including the use of cast iron flywheel housings, a flywheel housing disclosed in a Caterpillar patent application dated in July 1998 (prior to Trans-Spec's purchase of the trucks), or the use of a metal plate under bolt heads as suggested in a Caterpillar document. Instead of utilizing any of these fixes, however, Caterpillar simply replaced Trans-Spec's defective flywheel housings with similarly flawed parts until refusing, in 2003, to do even this. Caterpillar never rectified Trans-Spec's problem, though it managed to temporarily postpone Trans Spec's future engine failures and this lawsuit. Caterpillar's affirmative acts prevented Trans-Spec from discovering its cause of action until Trans-Spec realized, through repeat flywheel housing failures, that Caterpillar never fixed the defective parts in the first place. As a result of Caterpillar's fraudulent concealment, the statute of limitations under the Uniform Commercial Code is tolled. M.G.L. ch. 260, § 12; *Bogosian v. Energy North, Inc.*, 2001 Mass. Super. LEXIS 617, * 7 n. 3.

Whether "a promisor making such a promise should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and if the

promise did induce such action or forbearance" is a question of fact appropriately left to the jury

for determination. *Neuhoff*, 370 F.3d at 204-05. Trans-Spec is accordingly entitled to present

proof to the jury that Caterpillar is estopped from asserting a statute of limitations defense where

it "made representations [it] knew or should have known would induce the plaintiffs to put off

bringing a suit and . . . the plaintiffs did in fact delay in reliance on the representations." *Coady*

*v. Marvin Lumber and Cedar Company*, 167 F.Supp. 2d 166, 171 (D. Mass. 2001); see also

*Deisenroth v. Numonics Corporation*, 997 F. Supp. 153, 157 (D. Mass. 1998) ("[A] defendant

waives the statute of limitation defense . . . where it gulls plaintiff by making such

representations throughout the entire statutory period."). "[I]t would be contrary to justice for

[Caterpillar] to hold out the hope of an amicable adjustment of a loss, and thus delay the action

of [Trans-Spec], and then be permitted to plead this very delay, caused by its course of conduct,

as a defense to the action when brought." *Thompson v. Phenix Insurance Co.*, 136 U.S. 287, 299

(1890). Thus, Caterpillar is estopped from relying on a statute of limitations defense regarding

any claim of breach of warranty, express or implied, or violation of Chapter 93A where Trans-

Spec was "induced by the conduct of [Caterpillar] to do something different from what otherwise

would have been done and which has resulted to his harm and that the other knew or had

reasonable cause to know that such consequence might follow." *Boston & A. R. R. v. Reardon*,

226 Mass. 286, 291 (1917).

Accordingly, the statute of limitations does not bar any of Trans-Spec's breach of

warranty claims because of estoppel generated by the words and deeds of Caterpillar and

Caterpillar's agent.

## 2.    Chapter 93A

Count II of Trans-Spec's Complaint alleges that Caterpillar breached Chapter 93A. As argued in the Opposition, p. 6 footnote 3, the accrual date of a Chapter 93A claim is established by the same principles that govern the determination of the underlying actions. Therefore, Trans-Spec's Chapter 93A claims accrued at the same time as the breach of warranty claims. Whether estoppel applies or accrual dates of November 2001 (pursuant to the two year warranty) and 2003 (pursuant to Caterpillar's undisputed disclaimer of its five year/500,000 mile warranty, Caterpillar Depo. Day 2, 14.4-9, Ex D), are used, the outcome remains the same: Trans-Spec's Chapter 93A claims that Caterpillar knowingly sold defective engines, inappropriately breached its warranties, and refused to remedy the harm it caused Trans-Spec, survive the statute of limitations.

Furthermore, the Court has implied the appropriateness of using the discovery rule in conjunction with the statute of limitation of Chapter 93A claims. *Coady*, 167 F.Supp. 2d at 171. In *Coady*, the plaintiff bought the defective goods in 1985 but discovered their defective condition in 1987, and the Court held the plaintiff's Chapter 93A claim "time-barred because it was not asserted within four years of either date." *Id.* Here, Trans-Spec could not have known that its flywheel housings had defects until they began to fail in November 2001.

Additionally, Trans-Spec's Chapter 93A claim encompasses other acts committed by Caterpillar and learned in the course of discovery, specifically that Caterpillar misled Trans-Spec into believing that Caterpillar had or would devise an adequate fix for the flywheel housing defects and that Caterpillar would employ that fix on all of its engines as they failed.

## C.    Incorporation of Motion Papers

Trans-Spec further relies on and incorporates by reference its arguments set forth in the *Opposition to Caterpillar Inc.'s Motion to Dismiss Second Amended Complaint and Request for Oral Argument, Supplemental Memorandum in Opposition to Caterpillar Inc.'s Motion to Dismiss Second Amended Complaint*, and *Opposition To Caterpillar Inc.'s Motion To Strike Attachments To Plaintiff's Opposition To Caterpillar's Motion To Dismiss The Complaint And To Strike Portions Of The Opposition Itself And Request For Oral Argument.* This Court should consider and rely upon the additional documents and evidence outside of the Complaint as offered in the above pleadings as well as this Objection in light of the importance of the information contained, the fact that this additional information bears directly on the matters to be decided by this Court, the fact that Trans-Spec discovered much of it in the normal course of discovery after it filed the Complaint, and so as to prevent the commission of a miscarriage of justice and violation of applicable law.

## D.    Motion to Amend

In the alternative, if this Court decides that sufficient facts have not been pled, Trans-Spec seeks leave to amend its Complaint to conform to the evidence and facts expected to be proved at trial as described in this Objection and the underlying Opposition papers.

Leave to amend a complaint "shall be freely given when justice so requires," Mass. R. Civ. P. 15 (a), and is appropriate here. The express policy of this rule favors allowing amendments and "a motion to amend should be allowed unless some good reason appears for denying it." *Castellucci v. United States Fidelity and Guar. Co.*, 372 Mass. 288, 289 (1977). To justify a denial of a motion to amend, there must be undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by previous amendments allowed, undue prejudice to the

opposing party, or futility of amendment. *Castellucci*, 372 Mass. at 290, citing *Foman v. Davis*, 371 U.S. 178, 182 (1962). In the absence of such a reason, as here, leave to amend should be granted.

In the course of discovery to date, Trans-Spec has determined more precisely Caterpillar's actions. An Amended Complaint would plead these actions and the claims to which they give rise with more particularity than in the prior Complaint and would cite to additional supporting documents and deposition testimony from Caterpillar and Caterpillar's agents obtained in the course of discovery.

Trans-Spec has committed no undue delay nor will improper prejudice to any party occur if this Court permits amendment. Amendment will serve the interests of justice. No undue prejudice will occur in the separate sense that the subject of this amendment is arguably already adequately pleaded and amendment will give notice and avoid future disputes as to the scope of the present claims.

## CONCLUSION

For the above reasons, Trans-Spec respectfully objects to the Magistrate Judge's Report and Recommendation and requests that the Court reject her recommendation and deny Caterpillar's Motion to Dismiss as to Counts I and II of the Second Amended Complaint and Caterpillar's Motion to Strike or, in the alternative, grant Trans-Spec leave to amend the Complaint to conform to the evidence.

Respectfully submitted,

TRANS-SPEC TRUCK SERVICE, INC.
d/b/a TRUCK SERVICE

By its Attorneys,

/s/ Christian G. Samito
Nancy M. Reimer, Esq., BBO # 555373
Christian G. Samito, Esq., BBO # 639825
Donovan Hatem, LLP
Two Seaport Lane
Boston, MA 02210
Date: February 9, 2006          (617) 406-4500

## LOCAL RULE 7.1 CERTIFICATE OF CONSULTATION

Counsel for Trans-Spec hereby certifies that he has conferred with defendant's counsel and attempted in good faith to resolve or narrow the issues presented in *Plaintiff Trans-Spec Truck Service, Inc.'s Objection To The Magistrate Judge's Report And Recommendation On The Defendant's Motion To Dismiss And Motion To Strike.*

/s/ Christian G. Samito
Christian G. Samito
Counsel for Trans-Spec Truck Service, Inc.

## REQUEST FOR ORAL ARGUMENT

If the Court deems it necessary, Trans-Spec requests oral argument on *Plaintiff Trans-Spec Truck Service, Inc.'s Objection To The Magistrate Judge's Report And Recommendation On The Defendant's Motion To Dismiss And Motion To Strike.*

## CERTIFICATE OF SERVICE

I, Christian G. Samito, hereby certify that on this 9th day of February, 2006, I served a copy of the foregoing, by electronically filing and by mail, postage prepaid, to:

John A.K. Grunert, Esq.
Campbell Campbell Edwards & Conroy
One Constitution Plaza, 3rd Floor
Boston, MA 02120

/s/ Christian G. Samito
Christian G. Samito
Counsel for Trans-Spec Truck Service, Inc.

00976665

- 19 -