UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| TRANS-SPEC TRUCK SERVICE, INC. d/b/a TRUCK SERVICE,  )<br><br>Plaintiff  )<br><br>vs.  )<br><br>CATERPILLAR INC.  )<br><br>Defendant  ) | CIVIL ACTION NO. 04-11836-RCL |

MEMORANDUM IN SUPPORT OF CATERPILLAR INC.'S MOTION TO STRIKE
EXHIBITS TO TRANS-SPEC'S OBJECTION TO MAGISTRATE JUDGE'S REPORT
AND RECOMMENDATION AND TO STRIKE ALL REFERENCES TO THEM IN THE
OBJECTION ITSELF

In May 2005 the Court granted Trans-Spec's motion for leave to filed a second amended complaint after the scheduling order deadline for doing so had expired. Caterpillar promptly filed a motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the second amended complaint for failure to state a claim on which relief can be granted. Trans-Spec filed an opposition to the motion to which it attached copies of a variety of evidential materials extrinsic to the second amended complaint. Caterpillar moved to strike them. Hearing on the Rule 12(b)(6) motion and the related procedural motion was held in August 2005. On January 31, 2006, the Magistrate Judge issued her report and recommendation. She recommended allowance of Caterpillar's motion to dismiss insofar as it challenged the sufficiency of Trans-Spec's purported claims for alleged breach of implied warranties, alleged breach of express warranty, and alleged violation of G.L. c. 93A. She also recommended allowance of Caterpillar's motion to strike and expressly refused to convert the Rule 12(b)(6) motion to a motion for summary judgment.

1

Trans-Spec has now objected to the Magistrate Judge's recommendations.[1] It attaches to its Objection materials extrinsic to the second amended complaint *beyond* those that were submitted to, and rejected by, the Magistrate Judge. The Court should strike those materials and all references to them contained in Trans-Spec's Objection.[2]

## ARGUMENT

It is too well-settled to need discussion that a Rule 12(b)(6) motion must be decided solely on the well-pleaded averments of the complaint and that matter outside the complaint may not be considered. The Court has some discretion to convert a Rule 12(b)(6) motion to one for summary judgment, with adequate notice to the parties that it intends to do so, and then to accept extrinsic evidence; but such discretion is typically exercised only if the proffered extrinsic evidence is incontrovertible and clearly dispositive of a material issue. 2 Moore's Federal Practice, §12.34[3][a] at 12-72.2 (3rd ed.). That is not the case here. Much of what Trans-Spec offers is not even relevant; much would be inadmissible even if the motion were converted to a summary judgment motion; much is so ambiguous that it would be useless even if the Court considered it.

For example, Trans-Spec attaches as Exhibits E and G unsworn letters from proposed trial experts. They would on their faces be inadmissible under Fed. R. Civ. P. 56(e) because they are unsworn; they do not demonstrate on their faces, as Rule 56(e) would require, that the witnesses are competent to testify to the matter in them; they contain second level hearsay to

---

[1] The Magistrate Judge recommended that Caterpillar's motion to dismiss be denied insofar as it was directed to Trans-Spec's negligence claim. Caterpillar has not objected to that recommendation. The Magistrate Judge noted that Trans-Spec conceded its claim under the Magnusson-Moss Warranty Act, 15 U.S.C. §2301 *et seq.*, was dismissible. Trans-Spec has not objected to that part of the report and recommendation.

[2] Trans-Spec also purports to rely on extrinsic materials that *were* submitted to the Magistrate Judge and which she recommended be stricken. Those materials are not discussed here. They are instead discussed in Caterpillar's response to Trans-Spec's Objection, because the propriety of considering *them* depends on whether the Magistrate Judge committed clear error or acted contrary to law in recommending they be stricken. 28 U.S.C. §636(b)(1)(A). Boucher v. Continental Products Co., Inc., 365 F. Supp.2d 1, 1 n.1 (D. Maine 2005).

which the witnesses obviously would *not* be competent to testify. If the Court were to see the deposition testimony of those who prepared the reports, it would learn that Mr. Service's opinions in their entirety, and Mr. Ekchian's opinions at least in part, probably fail to pass the *Daubert* test. So if the Court were to accept those reports it would thereby transform a motion that is readily determinable as a matter of straightforward legal analysis into a morass of evidentiary litigation. It would do so, moreover, to no purpose, because what Trans-Spec's purported expert witnesses wish to say has nothing to do with whether the action was timely brought or whether Caterpillar's disclaimer of implied warranties is effective as a matter of law. They are simply a distraction.

Similarly, excerpts of deposition testimony Trans-Spec would like the Court to consider have little to do with issues dispositive of the Rule 12(b)(6) motions and often do not even say what Trans-Spec represents them as saying. Nothing, for example, in Exhibit A establishes that there is no known "permanent fix" for flywheel housing problems Trans-Spec experienced,[3] and there is no suggestion why absence of a "permanent fix" would be relevant anyway: no manufacturer is required to make a product that never wears out and failure to repair a product in a way that permits it to perform *forever* without further repair is not failure to fulfill a warranty. Similarly, nothing in Exhibit D establishes that the Caterpillar employees who decided Trans-Spec's problems were not caused by defects in the material or workmanship of Caterpillar's product, and thus were not covered by its warranty, did not consult an engineer before reaching their decision: the witness said she did not know what degrees the persons consulted held. In any

---

[3] Trans-Spec's statement in its Objection that "to this day" Caterpillar offers no permanent fix for Trans-Spec's problem is a bit disingenuous in light of the fact that Trans-Spec sold the trucks involved in this case during the summer of 2005 and replaced them with a new fleet. Trans-Spec routinely replaces its trucks every four years or so.

event, why would it be relevant if no engineer had been consulted?[4] How would that supposed fact bear upon whether the lawsuit was timely commenced under the applicable statute or limitations, or whether Caterpillar's disclaimer of implied warranties is effective under Massachusetts law? Similarly, Trans-Spec invites the Court to consider testimony by "[o]ne of Caterpillar's two Rule 30(b)(6) designees" that he had assumed Caterpillar stopped paying to repair Trans-Spec's engines because they were outside the warranty *period*; but what Trans-Spec neglects to tell the Court is that the referenced Rule 30(b)(6) witness expressly was not designated to testify about why Caterpillar stopped paying for Trans-Spec's failures – a different witness was designated to cover that subject – and that he was merely recounting his personal state of mind when he first learned of Trans-Spec's problems at a time well after others had made the decision to stop paying to repair the failures. Of what relevance is that to the Rule 12(b)(6) motion?

Similarly, Trans-Spec wants the Court to consider a patent, Exhibit F. Nothing in the patent, however, indicates it pertains to engines of the type involved in this case or to flywheel housings of the type involved in this case. In fact, it pertains to neither. It pertains to engines of materially different design which, because of differences in their design (specifically, the location and composition of an oil seal) were from time to time subject to failures to which C-12 engines are not.[5]

---

[4] As Trans-Spec knows, by the time Caterpillar decided to stop paying to repair its flywheel housing failures Trans-Spec had already experienced six or seven such failures in a fleet of only twenty-two trucks. Yet the flywheel housing failure rate generally in the 100,000+ engines of this design was well under 1%. It did not take a rocket scientist to figure out that the problem was not with a defect in the design of every C-12 engine but, instead, either with the design of the custom-built trucks into which Trans-Spec had caused the engines to be installed or with the way in which Trans-Spec was using or servicing those trucks.

[5] Trans-Spec states in footnote 4 to its Objection that "Caterpillar did not produce this Patent" in discovery. Trans-Spec has a general tendency in Court filings to insinuate misconduct where there is none. Caterpillar had no obligation to produce items Trans-Spec did not request except insofar as Caterpillar plans to use them in support of its defenses. Caterpillar would not ordinarily make use of a patent having nothing to do with the product at issue in support of its defenses. The Court should not be misled by Trans-Spec's insinuations of discovery misconduct.

No purpose would be served by going item by item through the extrinsic evidence Trans-Spec wants the Court to consider. The point is that, unlike those instances where it may be appropriate to convert a Rule 12(b)(6) motion to a summary judgment motion, the extrinsic materials Trans-Spec would like the Court to accept are neither of clear and uncontested admissibility nor obviously dispositive of an issue determinative of the motion. They are just a smokescreen.

There is a second reason why these exhibits should be rejected. None of them was submitted to the Magistrate Judge when she was considering the Rule 12(b)(6) motion. Trans-Spec tells the Court the materials had not been obtained when the Rule 12(b)(6) motion was argued and that is largely true; but Trans-Spec had all of them for a long time before the Magistrate Judge issued her decision and if there was anything about them that made them appropriate for consideration in connection with the motion it would have been an easy matter to ask the Magistrate Judge to accept them by way of supplemental submission. If Trans-Spec wanted these exhibits considered in connection with the motion to dismiss, it was Trans-Spec's obligation to give the Magistrate Judge a chance to consider them if she deemed them appropriate for consideration.

It is a waste of both the Magistrate Judge's time and the District Judge's time for a party to hold matter back from the Magistrate Judge and then, after she has devoted time and attention to writing a report and recommendation that turn out not to the party's liking, to submit the withheld matter to the District Judge with a request that he rely on it to reject the Magistrate Judge's work. The Court of Appeals has been pretty emphatic that parties should not be permitted to reduce the Magistrate Judge's role "to that of a mere dress rehearser." Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988). It is for

this reason that the discretion a District Judge enjoys under 15 U.S.C. §636(b)(1)(C) to accept matter not submitted to the Magistrate Judge is ordinarily exercised only if there is "a most compelling reason" to do so. Wesley v. Alexander, 2005 WL 1352593, *6 (S.D. N.Y. 2005).

> First, permitting such piecemeal presentation of evidence is exceptionally wasteful of the time of both the magistrate and district judges, the former having been compelled to write an arguably useless report based on less than the universe of relevant evidence and the latter being deprived of the benefit of the magistrate judge's considered view of the entire record. Second, opposing parties would be put to the burden of proceedings which, to a considerable degree, would be duplicative. Third, there would be instances in which parties would be encouraged to withhold evidence, particularly evidence which might be embarrassing as well as helpful on the merits, in the expectation of using it before the district judge only if they failed to prevail before the magistrate judge on a more abbreviated showing. Finally, the routine consideration of evidence in support of objections which could have been presented before the magistrate judge would reward careless preparation of the initial papers.

Morris v. Amalgamated Lithographers of America, Local One, 994 F. Supp. 161, 163 (S.D. N.Y. 1998).

There is no "compelling reason" to accept the exhibits attached to Trans-Spec's Objection. As discussed above, many would likely be inadmissible in any event, and most are of little or no relevance to the issues raised by Caterpillar's Rule 12(b)(6) motion. The real reason they have been submitted is to confuse, distract, and mislead the Court with half-truths and ambiguous testimony taken out of context and misrepresented as to its supposed significance. This is a Rule 12(b)(6) motion; it is directed to the second amended complaint and nothing more; Trans-Spec had plenty of opportunity to draft the second amended complaint in a way that would state legally viable claims, and Caterpillar was entitled to an adequate statement of the claims it is called on to defend; Trans-Spec did not supply that adequate statement of its claims. The Court should not buy into Trans-Spec's effort to delay disposition of parts of its claim that could not, even on the third try, be articulated (subject to Fed. R. Civ. P. 11) in a way that satisfies the applicable legal standards.

## CONCLUSION

Caterpillar's motion to strike Exhibits A and C through I attached to Trans-Spec's Objection and all references to them in the Objection itself should be summarily granted

CATERPILLAR INC.,

By its attorneys,

CAMPBELL CAMPBELL EDWARDS
& CONROY, P.C.

_____
John A.K. Grunert  (BBO: 213820)
One Constitution Plaza
Boston, MA  02129
(617) 241-3000

## CERTIFICATE OF SERVICE

I, John A.K. Grunert, hereby certify that on February 22, 2006, I served the within motion by causing a copy to be served electronically on Christian Samito, Esquire, Donovan Hatem LLP, Two Seaport Lane, Boston, MA  02210.

_____
John A.K. Grunert