UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TRANS-SPEC TRUCK SERVICE, INC. d/b/a TRUCK SERVICE, ) ) ) ) Plaintiff ) ) vs. ) ) CATERPILLAR INC. ) ) Defendant ) ) | CIVIL ACTION NO. 04-11836-RCL |

CATERPILLAR INC.'S RESPONSE TO PLAINTIFF TRANS-SPEC TRUCK
SERVICE, INC.'S OBJECTION TO THE MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION ON THE DEFENDANT'S
MOTION TO DISMISS AND MOTION TO STRIKE

The defendant Caterpillar Inc. hereby responds pursuant to 15 U.S.C. §636(b)(1)(C) and

Fed. R. Civ. P. 72(b) to Plaintiff Trans-Spec Truck Service, Inc.'s Objection to the Magistrate

Judge's Report and Recommendation on the Defendant's Motion to Dismiss and Motion to

Strike (hereinafter "Trans-Spec's Objection"). The Magistrate Judge's recommendations that

Counts I and II of the Second Amended Complaint be dismissed are correct as a matter of law

and should be adopted. The Magistrate Judge's recommendation that Caterpillar's motion to

strike extrinsic materials should be granted reflects no clear error (no error at all, in fact) and is

not contrary to law, and therefore should be adopted.

STANDARD OF REVIEW

With respect to the Magistrate Judge's report and recommendations with respect to

Caterpillar's motion to dismiss the second amended complaint pursuant to Fed. R. Civ. P.

12(b)(6), the Court is required to "make a de novo determination of those portions of the report

1

or specified proposed findings or recommendations to which objection is made." 15 U.S.C. §636(b)(1)(C). The statutory language requires the District Judge "to give fresh consideration to those issues to which specific objection has been made by a party," United States v. Raddatz, 447 U.S. 667, 675 (1980), but grants him or her "broad discretion to accept, reject, or modify the magistrate's proposed findings." Id., 680. "Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." Id., 676. The District Judge's required de novo review is limited to issues properly raised and argued before the Magistrate Judge. Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990-991 (1st Cir. 1988). "The rule does not permit a litigant to present new initiatives to the district judge." Id., 990.

With respect to the Magistrate Judge's recommendation that Caterpillar's motion to strike materials extrinsic to the second amended complaint be granted, and her related discretionary refusal to convert Caterpillar's Fed. R. Civ. P. 12(b)(6) motion to dismiss to one for summary judgment, review is limited to whether the recommendation is clearly erroneous or contrary to law. 15 U.S.C. §636(b)(1)(A); accord, e.g., Boucher v. Continental Products Co., Inc., 365 F. Supp. 1, 1 n.1 (D. Maine 2005).

## RELEVANT AVERMENTS OF FACT AND PROCEDURAL BACKGROUND

Trans-Spec avers in its Second Amended Complaint that in 1999 it purchased twenty-two custom-built Sterling Truck Corporation trucks for use in its business. Second Amended Complaint, ¶¶8 and 26.[1] Sterling built the trucks using Caterpillar C-12 engines supplied to Sterling by Caterpillar. Id., ¶11. Trans-Spec accepted delivery of the fully assembled trucks in

---

[1] As in the memorandum in support of its Rule 12(b)(6) motion, and consistent with the well-known standard for deciding motions of that type, Caterpillar recites the averments of fact in the Second Amended Complaint as if they were all true. Caterpillar's acceptance of the truth of the averments in the Second Amended Complaint is for purposes of its Rule 12(b)(6) motion only. Many of those averments are actually flat out false; but their falsity is irrelevant for present purposes.

December 1999 and January 2000. *Id.*, ¶12. The express warranty Caterpillar gave Trans-Spec,

*see id.*, ¶22 and the exhibit referenced in it[2], contained the following language in bold-faced type,

larger in size than most of the rest of the text:

> **CATERPILLAR DISCLAIMS ANY EXPRESS OR IMPLIED WARRANTIES IN CONNECTION HEREWITH, INCLUDING ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.**

In 2001 Trans-Spec began to experience serious problems with the C-12 engines in its

Sterling trucks. *Id.*, ¶14. The principal problem was loosening flywheel housings. *Id.*

Caterpillar paid for repair of some of the engine problems under the warranty it gave with respect

to the engines, but not for all of them. *Id.*, ¶¶14 and 15. Trans-Spec avers the engine problems

were caused by a design defect in the engines. *Id.*, 17.

Trans-Spec commenced this action in August 2004. The original and first amended

complaints purported to state claims for alleged breaches of express and implied warranties,

violation of the Magnusson-Moss Warranty Act, and violation of G.L. c. 93A, §§2 and 11. On

May 20, 2005, the Court granted Trans-Spec's motion for leave to file a second amended

complaint adding a count purportedly based on negligent design of the engines.[3] The breach of

warranty and Chapter 93A counts (Counts I and II in the Second Amended Complaint) are

identical to those in the original and first amended complaints. On May 26, 2005, Caterpillar

filed its motion to dismiss the Second Amended Complaint pursuant to Rule 12(b)(6).[4] On May

31, 2005, the Court referred the motion to dismiss to the Magistrate Judge for her report and

---

[2] The document that was attached as Exhibit C to the Second Amended Complaint is also Exhibit B to Trans-Spec's Objection. Caterpillar has not thought it necessary to supply the Court with yet another copy of that document. Caterpillar has moved separately to strike all other exhibits attached to Trans-Spec's Objection but has not moved to strike Exhibit B because, having been attached to and incorporated by reference into the Second Amended Complaint, it is proper for consideration on a Rule 12(b)(6) motion.

[3] The Second Amended Complaint also omits requests for injunctive and declaratory relief that were contained in the original and first amended complaints.

[4] The motion was initially filed on May 25 but was refiled on the 26th because the original filing lacked the certificate of conference required by Local Rule 7.1.

recommendations. Trans-Spec filed its opposition to the motion on June 3, 2005, attaching to the opposition a variety of documents extrinsic to the Second Amended Complaint. Caterpillar moved that same day to strike the extrinsic documents, and all references to them in Trans-Spec's opposition, and Trans-Spec opposed that motion on June 6, 2005. The motions were argued before the Magistrate Judge on August 10, 2005, and she issued her Report and Recommendation on January 31, 2006. She recommended dismissal of Trans-Spec's purported claims for breach of express and implied warranty and for violation of G.L. c. 93A on statute of limitations grounds. She noted that Trans-Spec had conceded that its claim for violation of the Magnusson-Moss Warranty Act should be dismissed. She did not reach Caterpillar's alternative argument that the breach of implied warranty claims were also barred by the conspicuous disclaimer of such warranties in the express warranty it gave. She refused to convert the Rule 12(b)(6) motion to one for summary judgment and granted Caterpillar's motion to strike the extrinsic materials Trans-Spec had submitted. She recommended denial of Caterpillar's motion to dismiss the negligence claim.

Trans-Spec timely filed its Objection to the Magistrate Judge's recommendations with respect to its purported claims for breach of implied and express warranties and for violation of G.L. c. 93A and with respect to Caterpillar's motion to strike. It did not object to her recommendation for dismissal of the Magnusson-Moss Warranty Act claim. Caterpillar did not object to her recommendation that the negligence claim not be dismissed at this point.[5]

---

[5] Caterpillar believes the negligence claim is meritless and unlikely to make it to the jury. Caterpillar recognizes and understands, however, the liberality with which the Magistrate Judge felt she should read the Second Amended Complaint when considering a Rule 12(b)(6) motion. Other matter dispositive of the negligence claim will be presented to the Court in the appropriate procedural context.

ARGUMENT

Trans-Spec's Objection is drafted in a confused and confusing manner. For that reason, Caterpillar has not tried to mirror its form in this response. Caterpillar will first discuss why the Court should adopt the Magistrate Judge's recommendation that the implied warranty claims be dismissed. Next it will discuss why the Court should adopt the recommendation that the express warranty claims be dismissed. After that it will discuss why the recommendation that the G.L. c. 93A claim should be dismissed is correct. Caterpillar will conclude with a discussion of why the Magistrate Judge's recommendation that the motion to strike be granted, and her related refusal to convert the motion to one for summary judgment, should be accepted. In light of this last part of the Magistrate Judge's recommendation and the pending motion to strike additional extrinsic materials that Trans-Spec has now tried to submit, Caterpillar will not address the parts of Trans-Spec's Objection that are purportedly based on matter beyond the face of the Second Amended Complaint. Those parts of the Objection are improper and should be disregarded by the Court.

1.    The Implied Warranty Claims are Barred by the Applicable Statute of Limitations

Trans-Spec alleges it purchased the twenty-two trucks containing the Caterpillar engines in 1999, took delivery of some of them in December 1999, and took delivery of the rest of them in January 2000. The docket shows Trans-Spec commenced this action in August 2004, much more than four years after it took delivery of the trucks and engines.[6]

General Laws c. 106, §2-725 provides, in relevant part:

(1) An action for breach of any contract for sale must be commenced within four years after the cause of action accrues. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

---

[6] Caterpillar's delivery of the engines to Sterling occurred before the trucks containing them were delivered to Trans-Spec. *See* Second Amended Complaint, ¶11. Because delivery of the trucks (and engines) to Trans-Spec occurred considerably more than four years before the action was commenced, there is no present need to consider which date – Caterpillar's delivery of the engines to their purchaser (Sterling) or Sterling's later delivery of the engines in the trucks to its customer Trans-Spec – is the relevant one for statute of limitations purposes.

> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

The statute of limitations contained in §2-725, running from the date of delivery rather than from the date of injury or from the date the plaintiff knew or could have known of the breach, is the one applicable to claims like this that are contractual in nature rather than tort-based. Bay State-Spray & Provincetown Steamship, Inc. v. Caterpillar Tractor Co., 404 Mass. 103, 110-111 (1989). So on the face of Trans-Spec's Second Amended Complaint its breach of implied warranty claims are time barred. The Magistrate Judge was correct in recommending that the implied warranty claims be dismissed for that reason.

As Caterpillar understands Trans-Spec's Objection, it raises three challenges to the Magistrate Judge's recommendation: it says the language in §2-725(2) about warranties of future performance saves the claim; it says Caterpillar is estopped from asserting the statute of limitations; and it says the statute of limitations was tolled by Massachusetts' fraudulent concealment statute, G.L. c. 260, §12. Caterpillar will address these challenges seriatim.

(a)     Warranty of Future performance

Implied warranties can *never* be warranties of future performance. New England Power Co. v. Riley Stoker Corp., 20 Mass. App. Ct. 25, 27 n.4 (1985); Standard Alliance Industries, Inc. v. Black Clawson Co., 587 F.2d 813, 820 (6th Cir. 1978), *cert. denied* 441 U.S. 923 (1979). This is because a warranty of future performance must "explicitly" extend to future performance but implied warranties are, by definition, implied rather than explicit. So much for that argument.

6

(b)    Estoppel

An estoppel may be found only if the plaintiff shows the defendant made representations it knew or should have known would induce the plaintiff to postpone bringing suit, that the plaintiff in fact delayed bringing suit in reliance on those representations, and that the plaintiff's reliance on the representations was reasonable.  Ford v. Rogovin, 289 Mass. 549, 552-553 (1935);  Kozikowski v. Toll Bros. Inc., 354 F.3d 16, 24 (1st Cir. 2003) (citing O'Blenes v. Zoning Bd. of Appeals of Lynn, 397 Mass. 555, 558 (1986)); Coady v. Marvin Lumber & Cedar Co., 167 F. Supp.2d 166, 171 (D. Mass. 2001).  A plaintiff who wishes to avoid dismissal on statute of limitations grounds based upon some exception to the usually applicable rule bears the burden of averring in the complaint facts which, if true, would establish the exception. *E.g.*, Kinchloe v. Farmer, 214 F.2d 604, 605 (7th Cir. 1954), *cert. denied*, 348 U.S. 920 (1955); Stone v. Colt Industries, 1986 WL 13073, *2 (D. Mass. 1986); Stewart Coach Industries v. Moore, 512 F. Supp. 879, 886 (S.D. Ohio 1981).  As the Magistrate Judge correctly observed, Trans-Spec included no such averments in its Second Amended Complaint.

The only possibly relevant averments are those in ¶¶14 (Caterpillar paid for repairs of failed flywheel housings in 2001 and 2002), 27, and 28 (Caterpillar employees said in June and August 2004 that it would repair engine breakdowns) of the Second Amended Complaint.  As the Magistrate Judge noted, however, paying for repairs long before the statute of limitations had run as a matter of law cannot support a finding of estoppel.  New England Power Co., 20 Mass. App. Ct. at 32-34.  *See also* Ford, 289 Mass. at 553 (there could as a matter of law be no estoppel where ten months elapsed between the conduct alleged to create the estoppel and expiration of the limitations period).  As the Magistrate Judge also noted, statements allegedly made in June

and August 2004 could not possibly have effected an estoppel because, by then, the statute of limitations had already long expired.[7]

Trans-Spec, as it customarily does and as it did before the Magistrate Judge, lards its Objection with all sorts of factual assertions by its counsel; but "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss. Similarly, consideration of a motion to dismiss is limited to the pleadings." Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984), cert. denied, 470 U.S. 1054 (1985) (citation omitted). If a party's attorney could defeat a Rule 12(b)(6) motion just by making lots of self-serving assertions in his or her brief, Rule 12(b)(6) would not have much point. The Magistrate Judge's analysis of the estoppel argument was correct as a matter of law and should be adopted.

(c)    Fraudulent Concealment

At page 14 of its Objection Trans-Spec mentions G.L. c. 260, §12, and asserts that the statute of limitations was tolled by alleged fraudulent concealment of its cause of action. Apart from the fact that the Second Amended Complaint contains no averments anywhere that might, if true, support a finding of fraudulent concealment, Trans-Spec's attempt to raise fraudulent concealment now fails because it did not raise the argument before the Magistrate Judge. Paterson-Leitch, 840 F.2d at 990. The Court will see this is so if it reviews Trans-Spec's original Opposition to Caterpillar Inc.'s Motion to Dismiss Second Amended Complaint and Request for Oral Argument. Trans-Spec's reference to such an argument now is just another indication of its willingness to say pretty much anything anytime anywhere if it thinks saying it might aid its cause.

---

[7] It is of passing interest that Trans-Spec did, in fact, commence suit within a couple of weeks after the alleged August 2004 meeting and just a couple of months after the alleged June 2004 meeting.

2.    The Breach of Implied Warranty Claims Also Fail Because of the Disclaimer in the Caterpillar's Alleged Express Warranty

Because the Magistrate Judge concluded that the claim for breach of implied warranties fails as a matter of law by virtue of the applicable statute of limitations, she did not reach Caterpillar's alternative argument that the claim also fails as a matter of law because of the conspicuous disclaimer of implied warranties contained in the express warranty Trans-Spec avers Caterpillar gave.  The disclaimer issue was fully briefed before the Magistrate Judge, however, and provides the Court with a second reason to adopt her recommendation with respect to the implied warranty claim.

General Laws c. 106, §§2-314 and 2-315 provide that the implied warranties of merchantability and fitness for a particular purpose may be excluded in accordance with the provisions of G.L. c. 106, §2-316.  Section 2-316 provides in relevant part:

> [T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be in writing and conspicuous.

General Laws c. 106, §1-201(10) provides, in relevant part, that "Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color" and that "[w]hether a term or clause is 'conspicuous' or not is for decision by the court."  Disclaimers of implied warranties are effective except when the goods involved are consumer goods or where liability for personal injuries is concerned.  G.L. c. 106, §§2-316 and 2-316A; Theos & Sons, Inc. v. Mack Trucks, Inc., 431 Mass. 736, 739-740 (1st Cir. 2000); Transurface Carriers, Inc. v. Ford Motor Co., 738 F.2d 42, 46 (1st Cir. 1984).  Trans-Spec itself has averred that the engines were acquired for use in its business, Second Amended Complaint, ¶8, so they were not consumer goods.  G.L. c. 106, §§2-103(2) and 9-109(1).  There is no averment that personal injuries are involved.  So much of

Count I of the Second Amended Complaint as is purportedly based on alleged breaches of implied warranties is therefore not only time-barred but also barred by the conspicuous disclaimer in the document that Trans-Spec itself avers constituted the applicable warranty.

3.    <u>The Breach of Express Warranty Claims Are Barred by the Applicable Statute of Limitations</u>

The same statute of limitations that bars the breach of implied warranty claims also bars the breach of express warranty claim contained in Count I of the Second Amended Complaint. Trans-Spec's arguments with respect to estoppel and fraudulent concealment do not distinguish between the implied and express warranty claims and the Magistrate Judge did not distinguish between those two types of warranty claim in her discussion of the estoppel issue. The law and analysis are, indeed, identical. Caterpillar therefore will not reiterate here its discussion of those issues contained in §1(b) and (c) of this response. Caterpillar will limit itself to discussion of Trans-Spec's assertions (a) that Exhibit C to the Second Amended Complaint constitutes a warranty of future performance and that its breach of express warranty claim was therefore timely brought[8] and (b) that the allegedly ineffective repairs Caterpillar paid to have performed restarted the limitations period every time they were performed.

---

[8] Trans-Spec attempts in its Objection, for the first time ever, to argue that a second document, attached as Exhibit C to its Objection (and largely illegible) but not attached to the Second Amended Complaint or mentioned in it, is also a warranty pursuant to which it has rights against Caterpillar. That document is among the ones Caterpillar has moved to strike because it is extrinsic to the Second Amended Complaint and, moreover, was not brought to the Magistrate Judge's attention even though Trans-Spec had it long before Caterpillar filed its Rule 12(b)(6) motion. Trans-Spec's attempt to make use of the document now is especially unfair because, if it had been before the Magistrate Judge, Caterpillar would have asserted as an alternative ground for dismissing Count III of the Second Amended Complaint – the negligence count on which Trans-Spec prevailed before the Magistrate Judge -- the conspicuous language contained in it disclaiming all liability for negligence. *See* <u>Minassian</u> v. <u>Ogden Suffolk Downs, Inc.</u>, 400 Mass. 490, 492-493 (1987) (enforcing such a disclaimer in a business context); <u>Lee</u> v. <u>Allied Sports Associates, Inc.</u>, 349 Mass. 544, 550 (1965) (same) and cases cited. This is an excellent example of why District Judges only rarely permit a party to raise matters in an objection to a magistrate judge's report and recommendation that the party did not to raise before the magistrate judge. As the Court said in <u>Morris</u> v. <u>Amalgamated Lithographers of America, Local One</u>, 994 F. Supp. 161, 163 (S.D. N.Y. 1998), in partial explanation of why such a practice is permitted only in compelling circumstances, "there would be instances in which parties would be encouraged to withhold evidence, particularly evidence which might be embarrassing as well as helpful on the merits, in the expectation of using it before the district judge only if they failed to prevail before the magistrate

(a)     Exhibit C to the Second Amended Complaint is not a Warranty of Future Performance

A warranty is one of future performance only if it "explicitly extends to future performance" and only if a breach of the warranty cannot possibly be discovered until the specified future time.   Courts that have considered the issue have consistently held that a warranty in the form of Exhibit C to the Second Amended Complaint – ones that say the seller will, during a specified period of time, repair or replace warrantable failures – are not warranties of future performance.   Thus, in Voth v. Chrysler Motor Corp., 545 P.2d 371, 374-378 (Kan. 1976), the Supreme Court of Kansas held that a warranty "against defects in material and workmanship" "for 12 months or 12,000 miles of operation after the vehicle is first placed in service" was not a warranty of future performance.   Similarly, in Centennial Ins. Co. v. General Electric Co., 253 N.W.2d 696, 697 (Mich. App. 1977), the Michigan Court of Appeals held per curiam that a warranty that a machine was free of defects in material and workmanship and that "if it appears within one year from shipment by the Company that the equipment ... does not meet the warranties specified above" it would repair the defect was not a warranty of future performance.   Similarly, in Ontario Hydro v. Zallea Systems, Inc., 569 F. Supp. 1261, 1266 (D. Del. 1983), a decision which Trans-Spec calls poorly-reasoned but which the Massachusetts Court of Appeals has expressly cited and followed, see New England Power, 20 Mass. App. Ct. at 30, the Court held that a warranty that "if at any time up to twelve (12) months after the date of Acceptance of the Equipment by the Engineer, any defect or deficiency should appear due to faulty workmanship, material or design" the seller would repair it was not a warranty of future performance.   See also Raytheon Co. v. Helix technology Corp., 1999 WL 753483, *4 (Mass. Super. 1999) (Fabricant, J.) (a warranty that a machine would perform for 200 hours of

---

judge on a more abbreviated showing."  In any event, the analysis on the "warranty of future performance" issue would not differ even if that document were before the Court.

accumulated operation was not a warranty of future performance) (a copy of this unreported decision is attached to this response).  As the Court said in <u>Standard Alliance Ind., Inc.</u> v. <u>Black Clawson Co.</u>, 587 F.2d 813, 820 (6th Cir. 1978), "Most courts have been very harsh in determining whether a warranty explicitly extends to future performance."  The reason for this is that the Uniform Commercial Code, insofar as it regulates commercial dealings between business entities, places a premium on predictability, and warranties of future performance impair predictability except insofar as they are absolutely unequivocal about what is intended.[9]

The dispositive distinction which Trans-Spec seeks to obscure is between the warranty and the specification of remedy.  <i>E.g.</i>, <u>New England Power</u>, 20 Mass. App. Ct. at 30 ; <u>Ontario Hydro</u>, 596 F. Supp. at 1266.  A warranty of future performance exists only if the seller explicitly guarantees that the product will <i>perform satisfactorily</i> up to a specified date; a specification of remedy – which is what Exhibit C to the Second Amended Complaint contains – merely says what the seller will do in the event of a timely asserted breach of warranty claim. In this case, Caterpillar nowhere said it guaranteed that the C-12 engines in Trans-Spec's trucks would perform satisfactorily for any specific length of time or for any specific number of miles. What Caterpillar said was that, within a described period, it would repair or replace warrantable failures timely brought to its attention.  That is exactly the situation that existed in <u>Voth</u>, <u>Centenial Insurance</u>, <u>Ontario Hydro</u> and <u>Raytheon</u>, and just as in those cases the statute of limitations began to run on the date of sale of the product, not later.

Trans-Spec's argument fails for a second reason.  As explained in <u>Coady</u> v. <u>Marvin Lumber and Cedar Co.</u>, 167 F. Supp. 166, 170-171 (D. Mass. 2001), a warranty is not a warranty of future performance unless it is impossible for a breach of the warranty to be discovered until

---

[9]  This is the same reason, for example, that G.L. c. 106, §2-725 does not recognize a "discovery rule" outside the consumer context.  <i>Contrast</i> G.L. c. 106, §2-318 (establishing a discovery rule exception in cases involving consumer goods or personal injuries).

the future specified date. *See also, e.g.* <u>Raytheon</u>, 1999 WL 753483 at *4. In this case, not only was it *possible* for the alleged breach to be discovered within four years of the sale of the engines: Trans-Spec affirmatively avers in the Second Amended Complaint that it *was* discovered during that period. This is identical to what occurred in <u>Coady</u> where, assuming without deciding that the 10-year warranty there involved explicitly guaranteed performance for 10 years, the Court nonetheless held that the warranty was not one of future performance because the alleged breach could be and in fact was discovered well before the specified 10 years had run. *Id.*, 171.

The Magistrate Judge correctly understood the law related to warranties of future performance, correctly found that the warranty on which Trans-Spec bases its express warranty claim was not that kind of warranty, and correctly recommended that the express warranty claim be dismissed as time-barred by G.L. c. 106, §2-725. The Court should adopt that recommendation.

    (b)    <u>Alleged Ineffective Repairs of the Alleged Breach Did Not Continuously Restart the Warranty period.</u>

Trans-Spec now argues for the first time – having neglected so to argue before the Magistrate Judge – that the four-year statute of limitations began to run anew every time Caterpillar allegedly failed to provide a permanent repair for a failed flywheel housing. The Court should, as discussed above with respect to the newly-raised assertion about fraudulent concealment and the newly-raised assertion that a different document contained the applicable warranty -- disregard that argument because Trans-Spec gave the Magistrate Judge no opportunity to consider it. In any event, Trans-Spec's argument has been unequivocally rejected in Massachusetts.

> [The argument] seems structured to avoid the consequences of its failure timely to commence suit. As pointed out in *Centennial Ins. Co. v. General Elec. Co.*, 77 Mich. App. at 172: "Plaintiff's argument is in essence that by failing to remedy its first breach, the defendant committed a second breach, giving rise to a brand new cause of action and starting anew the limitations period. The fallacy of this approach is apparent. If we adopted plaintiff's position, limitations periods could be extended for virtually infinite time. We doubt that the Legislature intended such a result."

New England Power, 20 Mass. App. Ct. at 30-31. Trans-Spec has identified no authority to support its novel argument, and the Court should summarily dismiss it.

4.     The Chapter 93A Claim is Time-Barred Because the Underlying Breach of Warranty Claims Are

Trans-Spec advances no serious or developed argument that, if its breach of warranty claims are time-barred, its purported Chapter 93A claim contained in Count II of the Second Amended Complaint is not similarly time-barred. The reason is that there is no such argument to be made. The purported Chapter 93A claim is squarely grounded on the alleged breaches of warranty and the law is clear that the accrual date of a Chapter 93A claim is determined by the same principles that determine the accrual of the underlying theory on which it is based. Kozikowski  v. Toll Bros., Inc., 246 F. Supp.2d 93, 98 (D. Mass), *aff'd in part and reversed in part on other grounds*, 354 F.3d 16 (1st Cir. 2003); *compare* Canal Elec. Co. v. Westinghouse Elec. Corp., 406 Mass. 369, 378-379 (1990) (warranty disclaimer of consequential damages was also a defense to a Chapter 93A claim based on the alleged breach of warranty). The Magistrate Judge was correct in recommending dismissal of the Chapter 93A claim and the Court should adopt her recommendation.

5.     There was no Clear Error in the Magistrate's Refusal to Accept Extrinsic Matter or in Refusing to Convert the Rule 12(b)(6) to a Motion for Summary Judgment, and her Refusal to do so was not Contrary to Law

The District Judge's review of a Magistrate Judge's disposition of a nondispositive motion such as Caterpillar's motion to strike extrinsic materials is deferential. Review is only for clear error or error of law.

Extrinsic materials may not, as a matter of law, be considered in connection with a motion under Rule 12(b)(6). They may only be considered if the Court, in its discretion, decides to convert the motion to one for summary judgment. Courts generally only exercise their discretion to convert a Rule 12(b)(6) motion to one for summary judgment if all parties assent to the conversion or if the proffered extrinsic evidence is incontrovertible and is clearly dispositive of a discrete, material issue. 2 Moore's Federal Practice, §12.34[3][a] at 12-72.2 (3rd ed.). The extrinsic materials Trans-Spec wanted the Magistrate Judge to accept, like the additional materials attached to its Objection, were voluminous,diffuse, of dubious admissibility if not clearly inadmissible, and largely irrelevant. Caterpillar immediately objected to their consideration and Trans-Spec offered the Magistrate Judge no cogent reason why she should consider them. Trans-Spec has cited no legal authority to support its position that there was "clear error" or error of law in the Magistrate Judge's discretionary refusal to convert Caterpillar's Rule 12(b)(6) motion to a summary judgment motion, and has offered no developed argument on that subject. It just wishes she had agreed with it. That is not good enough. Under the deferential standard of review established by 28 U.S.C. §636(b)(1)(A), the Court must summarily reject Trans-Spec's challenge to the Magistrate Judge's recommendation that Caterpillar's motion to strike be granted and must, accordingly, summarily reject Trans-Spec's purported "Incorporation of Motion Papers" found at page 17 of its Objection, and disregard all

references in Trans-Spec's Objection to materials outside the four corners of the Second Amended Complaint.[10]

CONCLUSION

The Magistrate Judge's recommendation that Counts I and II of the Second Amended Complaint should be dismissed in their entirety for failure to state a claim on which relief can be granted should be adopted. Her recommendation that Caterpillar's motion to strike extrinsic material should be granted should also be adopted. Trans-Spec's request for leave to amend the complaint again should be denied.

CATERPILLAR INC.,

By its attorneys,

CAMPBELL CAMPBELL EDWARDS
& CONROY, P.C.

John A.K. Grunert (BBO: 213820)
One Constitution Plaza
Boston, MA 02129
(617) 241-3000

CERTIFICATE OF SERVICE

I, John A.K. Grunert, hereby certify that on February 22, 2006, I served the within response by causing it to be transmitted electronically to Christian Samito, Esquire, Donovan Hatem LLP, Two Seaport Lane, Boston, MA 02210.

John A.K. Grunert

---

[10] Caterpillar does not think it is necessary to discuss Trans-Spec's request for leave to amend its complaint for a third time, a year-and-a-half into the case and after discovery has closed. That request is untimely, Caterpillar would be grossly prejudiced by a late amendment, and the mere suggestion of it reflects the disregard Trans-Spec seems to have for the time and resources of others than itself.

Westlaw.

Not Reported in N.E.2d                                                    Page 1

Not Reported in N.E.2d, 10 Mass.L.Rptr. 510, 1999 WL 753483 (Mass.Super.), 40 UCC Rep.Serv.2d 736

**(Cite as: 1999 WL 753483 (Mass.Super.))**

**H**

Superior Court of Massachusetts.
RAYTHEON COMPANY,
v.
HELIX TECHNOLOGY CORPORATION.
**No. 984211D.**

July 19, 1999.

MEMORANDUM OF DECISION AND ORDER
ON DEFENDANT'S MOTION TO DISMISS
COUNT I OF
THE COMPLAINT INTRODUCTION

FABRICANT.

*1 The plaintiff, Raytheon Company, brought this three-count action against the defendant, Helix Technology Corporation, seeking damages it claims were caused by defective components supplied by CTI-Cryogenics ("CTI"), a Division of Helix Technology Corporation. Count I of the complaint alleges breach of warranty. This matter is before the court on defendant Helix's motion to dismiss count I as barred by the applicable statute of limitations. For the reasons set forth below. the defendant's motion to dismiss, as to count I, is ALLOWED.

BACKGROUND

The complaint alleges the following facts. The plaintiff is the prime contractor for the Maverick missile program. Maverick missiles are the most widely used precision guided munition in the free world, designed for close air support, interdiction and defense suppression missions by the Air Force, Navy and Marine Corps as well as by twenty-four United States allies. The defendant supplied cryoengines for installation in the missile's imaging infrared guidance system. When the guidance system functions properly, the missiles give United States aircrews "launch and leave" capability at a wide range of distances and speeds, enhancing their safety by enabling them to perform evasive maneuvers after launching a missile.

In 1992, Helix and Raytheon entered into a contract pursuant to which Helix was to manufacture and deliver to Raytheon 5,370 cryoengines. These cryoengines were to be installed in the Fiscal Year 1991 guidance control system of the AGM-65 ("Maverick") missiles produced by Raytheon for the United States Department of Defense. The contract consists of Purchase Order 77-8781-13-3029, Purchase Order Attachments and a document entitled Critical Item Product Fabrication Specification for Cryoengine for Common IR Guidance Subassembly. [FN1] Pertinent provisions of these documents are the following:

> FN1. Although the plaintiff did not append copies of the contract documents to the complaint, the defendant has supplied copies of them as exhibits to its affidavit in support of its motion to dismiss. As the plaintiff acknowledges, such documents may properly be considered on a motion to dismiss, without converting the motion to one for Summary Judgment. *E.g. Shaw v. Digital Equip. Corp.,* 82 F.3d 1194, 1219-20 (1st Cir.1996); see also *Myers v. Boston Magazine Co.,* 380 Mass. 336, 339, 403 N.E.2d 376 (1980).

Item 9: This Section shall be deleted and replaced in its entirety with the following:
WARRANTY: CTI-CRYOGENICS warrant that all goods manufactured by CTI-CRYOGENICS shall be free from defects in material, design, workmanship and title: provided, however, that this warranty shall be limited to goods found to be defective within a period of twelve (12) months from the date of delivery from CTI-CRYOGENICS. Warranty is void if the equipment is altered or modified by Raytheon/User after delivery.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d                                                                 Page 2

Not Reported in N.E.2d, 10 Mass.L.Rptr. 510, 1999 WL 753483 (Mass.Super.), 40 UCC Rep.Serv.2d 736

(Cite as: 1999 WL 753483 (Mass.Super.))

EXCEPT FOR THE EXPRESSED WARRANTY IN THE PREVIOUS PARAGRAPH, CTI-CRYOGENICS DISCLAIMS ALL WARRANTIES WITH RESPECT TO THE GOODS, INCLUDING ANY AND ALL IMPLIED WARRANTIES FOR MERCHANTABILITY, FITNESS FOR ANY PARTICULAR PURPOSE.
Purchase Order 77-8781-13-3029 Attachment 5 (capitalized as in original).
ANY VARIANCES FROM THE PART PRINT(S) AND/OR SPECIFICATIONS MUST BE AUTHORIZED BY AN APPROVED DEVIATION/WAIVER FROM RAYTHEON PRIOR TO SHIPMENT OF THE PART/MATERIAL TO RAYTHEON.

51. ORDER OF PRECEDENCE:
THE REQUIREMENTS SPECIFIED HEREIN IN NO WAY RELIEVES (sic) THE SUPPLIER OF COMPLYING WITH THE DRAWING/SPECIFICATION REQUIREMENTS. IN THE EVENT OF A CONFLICT, THE PURCHASE ORDER REQUIREMENTS SHALL GOVERN.
*2 Purchase Order 77-8781-13-3029 (capitalized as in original).

3.2.1.8 *Operating Life.*

The unit shall be capable of meeting the performance requirements specified herein for a minimum of 200 hours of accumulated operation over the operating temperature range of 3.2.2. Continuous periods of running shall not exceed 1.0 hour with at least one-half hour off-time between consecutive one-hour operating periods. Specification document CI32175-107.

The cryoengines are intended to cool the detector portion of Maverick's guidance system. If the cryoengines fail to function properly, the guidance system is rendered ineffective. Over time it became apparent to Raytheon that the guidance systems of the Fiscal Year 1991 Mavericks did not perform as well as those deployed earlier. Prior to 1997, defective cryoengines caused three percent of guidance unit failures. In 1997, testing of Maverick

missiles revealed a cryoengine failure rate of forty-four percent. The plaintiff informed the defendant and thereafter undertook its own investigation to determine the cause of these cryoengine failures. The plaintiff's failure analysis revealed that helium leaked from two seals in the cryoengines and that these seal failures resulted from impurities, particularly cotton fibers and metal slivers that were introduced into the cryoengines during the manufacturing process. The defects in the cryoengines were inherently unknowable to the plaintiff until the units failed and plaintiff's investigation was completed. The plaintiff has incurred considerable expense investigating and remedying these failures.

Raytheon brought this action against Helix on August 14, 1998. The complaint does not provide a date of delivery of the cryoengines. It does, however, acknowledge, at paragraph 15, that the contract warranty "was generally limited" to defects found within twelve months from the date of delivery. Paragraph 15 goes on to assert that the specification document "explicitly extended CTI's warranty to the future performance of the cryoengines." Paragraph 15 thus implicitly acknowledges that delivery occurred more than twelve months prior to discovery of the alleged defect, and more than four years prior to suit. The defendant's affidavit supplies March 11, 1994, as the last delivery date, and the plaintiff does not contradict this assertion. In light of the allegations of paragraph 15 of the complaint, the Court treats this fact as undisputed for purposes of this motion.

DISCUSSION
For purposes of a motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6), the allegations of fact in the complaint must be treated as true and the plaintiff is entitled to all favorable inferences. *General Motors Acceptance Corp. v. Abington Casualty Ins. Co.,* 413 Mass. 583, 584, 602 N.E.2d 1085 (1992). A motion to dismiss should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *General Motors Acceptance Corp. v. Abington Casualty Ins. Co.,* 413 Mass. at 584, 602 N.E.2d 1085, quoting *Nader*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d, 10 Mass.L.Rptr. 510, 1999 WL 753483 (Mass.Super.), 40 UCC Rep.Serv.2d 736

**(Cite as: 1999 WL 753483 (Mass.Super.))**

*v. Citron,* 372 Mass. 96, 98, 360 N.E.2d 870 (1977) , quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

*3 While the Court must assume the truth of all well-pleaded factual allegations, characterizations and conclusions of law warrant no such consideration. *See e.g. Boston & M.R.R. v. County Com'rs of Middlesex County,* 239 Mass. 127, 131, 131 N.E. 283 (1921). "The interpretation of a contract presents a question of law for the court, except to the extent disputed facts bear upon such interpretation." *USM Corp. v. Arthur D. Little Systems, Inc.,* 28 Mass.App.Ct. 108, 116, 546 N.E.2d 888 (1989). The determination of whether a contract contains ambiguity is also a question of law for the court. *Fashion House, Inc. v. K-Mart Corp.,* 892 F.2d 1076, 1083 (1st Cir.1989). Thus, those portions of the complaint that assert interpretations of the contract provisions are legal, rather factual, and do not bind the Court in considering the motion to dismiss.

This action, involving the sale of goods, is governed by Article 2 of the Uniform Commercial Code, G.L.c. 106, § 2-725, which reads, in pertinent part:

(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

The parties agree that, under this provision, the applicable limitations period is four years. They disagree, however, as to when the four years began to run in this case. The defendant argues that the four years began to run on March 11, 1994, when

the last delivery was made. Since that date is more than four years before the plaintiff filed its complaint, defendant contends that the plaintiff's action is time-barred. The plaintiff invokes the exception stated in § 2-725(2), based on paragraph 3.2.1.8 of the specification document, which the plaintiff characterizes as an explicit extension of the warranty to future performance. On this basis, the plaintiff argues that the four year limitations period began to run at the time the breach was or should have been discovered, which it identifies as the completion of its investigation in 1997.

For the exception in § 2-725(2) to apply, two conditions must be met. First, a warranty must explicitly extend to future performance of the goods, Second, the circumstances must be such that "discovery of the breach must await" the time of the promised future performance. In determining whether a warranty explicitly extends to future performance, courts have emphasized the word "explicitly," construing this requirement to mean that a warranty must specify a particular future time. *E.g. Standard Alliance Ind. v. Black Clawson Co.,* 587 F.2d 813, 820 (6th Cir.1978), cert. den. 441 U.S. 923, 99 S.Ct. 2032, 60 L.Ed.2d 396. *See also Fire Dist. No. 9 v. American LaFrance,* 176 N.J.Super. 566, 424 A.2d 441 (N.J.Super.App.Div.1980) (key requirement in finding a warranty of future performance is specific reference to future time). "[A]n express warranty which makes no reference at all to any future date should not be allowed to extend past the limitations period. Thus, where a seller warrants that a [product] will meet certain performance warranties, but makes no mention of how long the warranties are meant to last, the statute of limitations begins to run at delivery. Where, however, an express warranty is made which extends for a specific period of time ... [the seller] is explicitly warranting the future performance of the product or goods for that period of time." *Standard Alliance Ind.,* 587 F.2d at 820-21; *Cf. Mittasch v. Seal Lock Burial Vault,* 42 A.D.2d 573, 344 N.Y.S.2d 101 (1973) (exception to requirement of specific future time where nature of product, burial vault, indicates warranty of performance "for all time").

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d                                                                                    Page 4

Not Reported in N.E.2d, 10 Mass.L.Rptr. 510, 1999 WL 753483 (Mass.Super.), 40 UCC Rep.Serv.2d 736

**(Cite as: 1999 WL 753483 (Mass.Super.))**

**\*4** Section § 2-725(2) also requires that discovery of the breach "must await" the time of such future performance. Courts have interpreted this requirement to mean that discovery of the breach must "*necessarily* await" such future performance. *Wilson v. Hammer Holdings, Inc.,* 850 F.2d 3, 6 (1st Cir.1988) (emphasis in original). Where a warranty specifies a particular time in the future, performance or lack of performance as of that time cannot be determined until that time arrives. *See id.* at 7. If discovery of the breach is possible before the time specified for future performance, the requirement that discovery "must await" future performance is not met, and the exception does not apply.

The *Wilson* case, 850 F.2d at 3-7, is illustrative. In *Wilson,* the plaintiff purchasers of a painting, despite having received a guarantee of the painting's authenticity, later discovered the painting was not authentic. *Id.* at 34. The Court assumed that the warranty extended to authenticity in the future, but nevertheless held that the "must await" requirement was not met, because it was possible for the plaintiffs to have discovered the breach as soon as the goods were sold, by procuring an expert's opinion. *Id.* at 7. The Court reached this conclusion despite recognizing the unlikelihood that persons in the plaintiffs' position would obtain such an opinion soon after having purchased the painting from a reputable and professional dealer; the determinative fact, for purposes of the "must await" requirement, was that discovery was possible prior to any specific future time. *Id.* at 6.

Also instructive is *Perry v. Augustine,* 37 Pa. D. & C.2d 416, 418 (1965), which involved a warranty that a heating system "would be able to heat at 75 degrees inside, at a -20 degrees outside temperature." Since discovery of a breach of such a warranty would necessarily have to await the seasonal occurrence of the specified outside temperature, the Court held the "must await" requirement met. *Id.* at 418. If the warranty had guaranteed only that the system would heat effectively or would operate for a specified amount of time, discovery of such a breach would not necessarily have to await winter weather, since the system could have been tested for compliance with such specifications during any season.

Here, the contract documents specify only that the cryoengines will perform for "200 hours of accumulated operation," subject to specified limitations regarding continuous operation. The documents identify no specific date or time in the future. Nor does the product by its nature supply a future date when performance would reasonably be expected, unlike the burial vault in *Mittasch,* 344 N.Y.S.2d at 101-03. To the contrary, the beginning and end of the 200-hour period are both entirely within the control of the purchaser. Both could occur within days of delivery, or could wait until years after delivery. Raytheon had the capacity to discover any breach of warranty as early as it chose to test or operate the cryoengines, or to postpone discovery for as long as it chose to defer such testing or operation. If this language were sufficient to invoke the statutory exception, unoperated cryoengines could remain under warranty years after delivery. *See Wilson,* 850 F.2d at 7. Such a result would thwart the statutory purpose to establish a reasonable period of time beyond which business persons need not worry about stale warranty claims. *See Standard Alliance Ind.,* 587 F.2d at 820; *Cf. Nation Enterprises, Inc., v. Enersyst, Inc.* 749 F.Supp. 1506, 1510 (N.D.Ill.1990) (contract warranting product against defects "for one year from the date of delivery or 2100 accumulated hours of use, whichever expired sooner" held explicit extension to future performance].

**\*5** This conclusion does not depend on whether the 200 hour language in the specification document is an "express warranty" within the meaning of G.L.c. 106, § 2-313(2). [FN2] *See generally, USM Corp. v. Arthur D. Little Systems, Inc.,* 28 Mass.App. at 120, 546 N.E.2d 888 (breach of technical specifications "always regarded by the parties as being of significance" constituted breach of warranty); *Consolidated Data Teninals v. Applied Digital Data Systems,* 708 F.2d 385, 391 (9th Cir.1983)(specific warranty language prevails over general disclaimer of warranty). Assuming, for purposes of this motion, that it is, the question

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d                                                                                      Page 5

Not Reported in N.E.2d, 10 Mass.L.Rptr. 510, 1999 WL 753483 (Mass.Super.), 40 UCC Rep.Serv.2d 736

**(Cite as: 1999 WL 753483 (Mass.Super.))**

remains whether it extends to future performance, and whether discovery must await such future performance, as required by § 2-725(2). For the reasons discussed, the Court concludes that the specification in issue here does not meet the requirements of that provision. Accordingly, the motion to dismiss, as to count I, must be allowed.

> FN2. That statute provides in pertinent part:
> (1) Express warranties by the seller created as follows:
> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description or model.
> (c) Any or model sample ...
> (2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

CONCLUSION

For the reasons stated, the Defendant's Motion Dismiss Count I of the Complaint is *ALLOWED.*

Not Reported in N.E.2d, 10 Mass.L.Rptr. 510, 1999 WL 753483 (Mass.Super.), 40 UCC Rep.Serv.2d 736

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.