UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TRANS-SPEC TRUCK SERVICE, INC. d/b/a TRUCK SERVICE, <br><br> Plaintiff <br><br> vs. <br><br> CATERPILLAR INC. <br><br> Defendant | CIVIL ACTION NO. 04-11836-RCL |

### CATERPILLAR INC.'S OPPOSITION TO MOTION TO AMEND COMPLAINT AND TO ALTER OR AMEND THIS COURT'S ORDER DATED FEBRUARY 26, 2006

Caterpillar opposes the plaintiff Trans-Spec's motion to amend the complaint again and to "alter or amend the judgment" dismissing Counts I and II of the Second Amended Complaint:

- Trans-Spec cites the Court to the wrong legal standard for deciding its motion, because the correct legal standard clearly requires its summary denial.

- Trans-Spec fails to address the facts that the scheduling order set March 23, 2005, as the deadline for motions to amend the complaint and that on October 26, 2005, this Court unequivocally stated that no further amendments of the scheduling order would be allowed.

- Trans-Spec implies its proposed amendment is based on information obtained after the Second Amended Complaint was filed when that is plainly not the case. The supposed "facts" – mostly they are really inventions – which Trans-Spec would like to add to its complaint would (if they *were* facts) for the most part have been known to Trans-Spec before this action was even commenced, and long before the Second Amended Complaint was filed.

- Trans-Spec says permitting substantive amendment of the complaint after all discovery has ended and two weeks before the deadline for summary judgment motions to be filed would not prejudice Caterpillar or delay proceedings in the case, a statement that is obviously false.

1

Trans-Spec has demonstrated no good cause for amending the scheduling order to permit it to file a Third Amended Complaint. The motion to amend should therefore be summarily denied.[1] As Trans-Spec's motion contains no discussion of its request that the Court "alter or amend the judgment" entered on February 26, 2006, identifies no legal error (clear or otherwise) in the February 26 order, and does not even suggest in what respect it would like the February 26 order to be altered or amended, that part of its motion should be summarily denied as well[2].

## THE APPLICABLE LEGAL STANDARD

The law is clear and unequivocal. Once the scheduling order deadline for motions to amend has passed, the liberal standard prescribed by Fed. R. Civ. P. 15(a) no longer governs. When the scheduling order deadline has passed, a motion to amend may be granted only if the moving party demonstrates "good cause" for modifying the scheduling order. "Good cause" in this context means that the moving party must demonstrate it could not reasonably have met the deadline despite having made diligent efforts to do so. O'Connell v. Hyatt Hotels of Puerto Rico, 357 F.3d 152, 154-155 (1st Cir. 2004) and cases cited; Anda v. Ralston Purina Co., 959 F.2d 1149, 1154-1155 (1st Cir. 1992); Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-609 (9th Cir. 1992).

> Unlike Rule 15(a)'s "freely given" standard, which focuses mostly on the bad faith of the moving party and the prejudice to the opposing party, Rule 16(b)'s "good cause" standard emphasizes the diligence of the party seeking the amendment. Prejudice to the opposing party remains relevant but is not the dominant criterion. Indifference by the moving party seals off the avenue of relief irrespective of prejudice because such conduct is incompatible with the showing of diligence necessary to establish good cause.

---

[1] Ordinarily, Caterpillar's counsel would be delighted to have an opportunity to appear in federal court at oral argument with respect to a motion. Caterpillar believes, however, that the present motion is so obviously meritless that the monetary expense to Caterpillar and the claim upon the Court's time of convening a hearing is unwarranted. The motion was clearly filed for improper purposes.

[2] Because Fed. R. Civ. P. 59(e) applies only to motions to alter or amend "judgments," and there has been no judgment entered in this case, as to which see Fed. R. Civ. P. 54(a) and (b), Trans-Spec's ostensible claim to proceed under that rule is obviously meritless. Since the supposed Rule 59(e) motion receives no substantive discussion by Trans-Spec, however, the procedural flaw requires no further attention.

O'Connell, 357 F.3d at 155 (citations, some internal quotation marks, and internal brackets omitted). Trans-Spec's discussion of the Rule 15(a) standard at pages 4 to 6 of its motion is therefore irrelevant at best.[3]

Trans-Spec's counsel knew when they filed the present motion that they were citing inapplicable law to the Court. They knew this (if for no other reason) because Magistrate Judge Alexander, when she granted Trans-Spec's motion in May 2005 for leave to file the Second Amended Complaint, explicitly pointed out to Trans-Spec that:

> If a motion to amend a pleading is filed after a deadline for such motions, however, Rule 15, and its "freely given" standard, gives way to Fed. R. Civ. P. 16(b). O'Connell v. Hotels of Puerto Rico, 357 RF.3d 152, 154 (1st Cir. 2004) (Rule 16(b), rather than Rule 15, governs motions to amend filed after scheduling order deadline). Rule 16(b) requires the District Court to set a scheduling order for certain events in a civil proceeding, and states, as well, that "[a] schedule shall not be modified except upon a showing of good cause …" Fed. R. Civ. P. 16(b).

Order on Motion to Amend Complaint (5/20/05) at 3-4[4]. Caterpillar hopes the Court, if it decides to hold a hearing on Trans-Spec's motion, will take the opportunity to ask Trans-Spec's counsel why they thought it proper to direct the Court to law they knew was inapplicable, and which bore upon a material legal issue, but to make no mention at all of the on-point controlling authority from this jurisdiction. *See generally* Fed. R. Civ. P. 11(b)(2) and Rule 3.3(a)(1) of the Mass. Rules of Professional Conduct.

## THE SCHEDULING ORDER

The scheduling order was entered on October 27, 2004. It specified March 23, 2005, as the deadline for motions to amend the pleadings. Magistrate Judge Alexander implicitly extended that deadline by eight days when, in May 2005, she granted Trans-Spec's first motion

---

[3] Caterpillar thinks it is apparent Trans-Spec's motion would fail even under the Rule 15(a) standard, as discussion later in this Opposition shows. The law identifying the correct standard is so clear, however, that Caterpillar sees no reason to waste more of the Court's time with discussion of what the result would be under an inapplicable standard.
[4] Magistrate Judge Alexander granted Trans-Spec's earlier motion principally because it was filed only eight days late. *Id.* at 4-5. The present motion was 11 months late.

3

to amend even though it had been filed eight days after the deadline. There has been no further extension of the deadline for amending the pleadings and, indeed, not even a request for a further extension of that deadline, though motions to amend *other* deadlines have twice been filed.[5] When the Court granted in part the last motion to amend the scheduling order it stated:

> The motion is granted to the extent that it seeks a change in the scheduling order. However, the scheduling order will be changed only to this extent: the deadline for expert reports from the plaintiff shall be December 7, 2005; the deadline for expert reports from the defendant shall be January 13, 2006; expert discovery shall be concluded by February 17, 2006; dispositive motions shall be filed not later than March 17, 2006. The modification granted today is the third such modification in this case. *The court shall grant no further requests for amendments to the scheduling order.*

(Emphasis supplied). Trans-Spec's present motion thus comes 11 months late; yet it contains not a word about why the Court should disregard the scheduling order or about why the Court should disregard its own unequivocal statement of four months ago that there would be no more amendments to the scheduling order. Eleven months' delay, without a word of justification, warrants summary denial of the motion. *Compare, e.g.*, O'Connell, 357 F.3d at 154-155 (denial of motion to amend was proper where it was approximately five months late); Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1419 (11th Cir 1998) (denial of motion to amend was proper where it was six months late). *See also* Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004) ("Regardless of the context, the longer a plaintiff delays, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend") (affirming, even under Rule 15(a), denial of a motion to amend).

---

[5] The parties jointly moved on May 20, 2005, to extend various discovery-related deadlines, a motion that was granted. Trans-Spec moved on October 27, 2005, without opposition, to amend the deadlines related to expert discovery and dispositive motions. That motion was granted in part and denied in part.

## TRANS-SPEC HAS LEARNED NOTHING NEW OF SUBSTANCE TO WARRANT THIS UNTIMELY PROPOSED AMENDMENT

Trans-Spec tells the Court its proposed Third Amended Complaint reflects information it has gleaned through discovery, thereby implying it could not have included material averments in earlier pleadings. Trans-Spec nowhere affirmatively states, however, that the changes it would now make to its complaint could not reasonably have been made in timely fashion and has made no effort to *demonstrate* they could not have been.  That omission alone requires denial of Trans-Spec's motion under the applicable Rule 16(b) "good cause" standard.  O'Connell, 357 F.3d at 154-155 ; Anda, 959 F.2d at 1154-1155; Johnson, 975 F.2d at 607-60. Let's look at a few of the changes Trans-Spec wishes to make, to see if they look like ones that could not reasonably have been made earlier.

Trans-Spec would amend ¶8 of its Second Amended Complaint to omit all reference to the Specification Proposal (Exhibit A to the Second Amended Complaint) which, in the Second Amended Complaint, Trans-Spec averred was the proposal reached by Trans-Spec itself and Sterling Truck Corporation with respect to the trucks and engines involved in this case. *Compare* ¶8 in the Second Amended Complaint with ¶8 in the proposed Third Amended Complaint.  Trans-Spec certainly had the information long before this action was commenced permitting it to identify its own specification proposal; no information newly acquired over the past year was required to get ¶8 right, if Trans-Spec and its counsel *chose* to get it right.  It simply no longer suits Trans-Spec's perceived interest to have the averment it included in ¶8 of the Second Amended Complaint in its pleading.

Trans-Spec would delete ¶9 of the Second Amended Complaint, which avers that Trans-Spec's president met with, among other people, "Caterpillar representative Harry Calderbank" at a Sterling facility in Ontario "to discuss the exact specifications and intended use of the trucks

Trans-Spec planned to have custom-built"; and Trans-Spec would also delete ¶10 of the Second Amended Complaint where it avers that after the supposed Ontario meeting "the parties signed off on a line ticket which delineated the final components to be included in the trucks." Trans-Spec certainly did not need discovery to know what its own president – who is still its president, as well as its sole stockholder -- did in the course of negotiating Trans-Spec's acquisition of the 22 Sterling trucks involved in this case.

In substitution for ¶¶9 and 10 in the Second Amended Complaint, Trans-Spec would now insert wholly new averments about supposed meetings and discussions with employees of Caterpillar and of Caterpillar's local dealership and representations those persons supposedly made *to Trans-Spec* prior to its acquisition of the 22 Sterling trucks about warranties on the engines, the engines' capabilities, etc. Trans-Spec did not need discovery to know about meetings and discussions its own president supposedly held back in 1999 and 2000, if they in fact occurred. Trans-Spec just did not choose to include reference to them in earlier versions of its complaint, but now would like to do so because now Trans-Spec has concluded it would suit its purposes if such meetings and discussions were to have occurred.

Trans-Spec would insert a new ¶11 in its Third Amended Complaint averring that "Caterpillar orally waived any exclusion of express or implied warranties during the" alleged discussions that would be referenced in ¶¶9 and 10. Trans-Spec apparently would have the Court believe its president just forgot about supposed oral waivers of warranty exclusions that supposedly occurred years before this action was commenced, and only remembered them when warranty exclusions arose in the context of a Rule 12(b)(6) motion to dismiss.

The proposed Third Amended Complaint is 82 paragraphs long (the Second Amended Complaint has only 54 paragraphs) and no useful purpose would be served by walking through it

6

paragraph by paragraph discussing why the multitude of proposed changes could have been made in timely fashion if Trans-Spec had acted diligently. There is especially no useful purpose to be served in doing so where, as here, Trans-Spec itself has omitted any effort to demonstrate "good cause" for its delay: Trans-Spec, after all, bears the burden of satisfying the Rule 16(b) standard. Particularly egregious additional examples, however, include Trans-Spec's tactical decision – now that it has decided it might help its case to do so -- to incorporate into its complaint a *second* alleged express warranty – *see* ¶19 of the proposed Third Amended Complaint – which Trans-Spec's own president admitted at his deposition had been received by Trans-Spec with the trucks years ago, *see* the excerpt from his deposition testimony attached as Exhibit A to this Opposition, and which if it been incorporated in the Second Amended Complaint probably would have changed the result of Caterpillar's unsuccessful motion to dismiss Count III of the Second Amended Complaint.[6]

They include Trans-Spec's proposed ¶¶40 through 50 of the Third Amended Complaint, all of which on their face describe (falsely in almost every instance) supposed events which, if they had occurred, would have been known to Trans-Spec before it commenced this action and long before the deadline for amendments to the pleadings. Those new paragraphs have simply been invented by Trans-Spec and its attorneys: they want to find a way around the statute of limitations bar and the conspicuous exclusions and limitations in the warranty Caterpillar gave, and the only way around them is invention.

---

[6] The document Trans-Spec has decided it would be helpful to allege was the applicable warranty -- and which is indeed the applicable warranty -- contains a conspicuous exclusion of all liability for negligence, a contractual provision which is valid under Massachusetts law and which on its face would have disposed of Count III (a negligence count). *E.g.*, Minassian v. Ogden Suffolk Downs, Inc., 400 Mass. 490, 492-493 (1987); Lee v. Allied Sports Associates, Inc., 349 Mass. 544, 550 (1965). *Compare* Canal Elec. Co. v. Westinghouse Elec. Co., 973 F.2d 988, 997 (1st Cir. 1992).

They include Trans-Spec's attempt – long after discovery has closed and two weeks before the summary judgment deadline – to insert a wholly new theory – alleged breach of an implied warranty of workmanlike performance of repairs – into the action. *See* ¶67 of the proposed Third Amended Complaint.

Enough said. There is no justification for Trans-Spec's belated effort to serve a third amended complaint. Its effort to do so reflects simple disregard for this Court's orders, for Caterpillar's rights, for applicable law, and for factual accuracy.

## THE PREJUDICE THAT WOULD RESULT FROM GRANTING THIS MOTION IS OBVIOUS

Caterpillar has obtained dismissal of two out of the three counts of the Second Amended Complaint. The case is substantially simplified and Caterpillar is in the process of preparing its motion for summary judgment on the one remaining count. That motion is due March 17. Factual discovery and expert discovery are over. Yet Trans-Spec now tells the Court Caterpillar will not be prejudiced by an order *reinstating the dismissed counts,* permitting addition of all sorts of new averments intended to avoid (though not necessarily *effectively* avoiding) the deficiencies that resulted in the dismissal, permitting addition of at least one new substantive theory of liability (*viz*, alleged breach of an implied warranty of workmanlike performance of repairs), and altering in dozens of respects the pleading that has defined the scope of Trans-Spec's claim and guided discovery for the past nine months.

Caterpillar does not believe the Court requires extended discussion on this topic. The principal reason Caterpillar does not think extended discussion is necessary is that Caterpillar is confident to a certainty that the Court will see through Trans-Spec's self-serving assertion in an instant. Another reason is that, under the applicable law, whether or not Caterpillar is prejudiced is not the dispositive question. *See, e.g.,* O'Connell, 357 F.3d at 155.

8

Suffice it to say that Caterpillar would be gravely and unfairly prejudiced if this belated motion were granted. The time and expense it devoted to obtaining dismissal of most of what it was entitled to believe was the last complaint it would see will have been wasted. Trans-Spec will have been granted the renewed opportunity to fabricate, long after Caterpillar was entitled to believe the opportunity for fabrication had ended, new allegations and new claims which Caterpillar would now have to investigate through re-opened discovery and which have obviously been crafted solely to defeat summary disposition of the claim. The summary judgment deadline will have to be postponed. Trial, if a trial is really needed, will have to be postponed. The enormous expense and bitter acrimony that have marred this case will be prolonged. If Trans-Spec believed allowance of a motion to amend after the close of discovery and two weeks before summary judgment motions are due would cause no prejudice to Caterpillar, it was up to Trans-Spec to make a concrete showing of how that can possibly be so. Instead, what Trans-Spec gave the Court was an *ipse dixit*.

## THE MERITS OF THE CLAIMS IN THE PROPOSED THIRD AMENDED COMPLAINT

Why Trans-Spec filed this facially frivolous motion is no mystery. Trans-Spec wants the Court to reconsider its allowance of Caterpillar's motion to dismiss Counts I and II of the Second Amended Complaint. Trans-Spec lost before Magistrate Judge Alexander, lost before District Judge Lindsay, but wants a third try. Trans-Spec especially wants the Court to consider extrinsic materials of the type the Court correctly refused to consider in connection with Caterpillar's motion to dismiss and to hear arguments Trans-Spec chose not to make to the Magistrate Judge. Trans-Spec figures it will be real subtle, and bring all that stuff to the Court's attention by way of an ostensible motion to amend, rather than simply bringing a straightforward motion for reconsideration which it knows would be denied as meritless.

Caterpillar is not going to address whether or not claims that were never made would survive a second Rule 12(b)(6) motion if the Court were to permit them to be made. Absent a showing of good cause for Trans-Spec's untimeliness in moving to amend, the possibility that its proposed amendment might not be futile as a matter of law is simply irrelevant. If the Court grants Trans-Spec's motion, Caterpillar will evaluate the Third Amended Complaint and, if claims in it are dismissible, will once again move to dismiss them. But the time for Caterpillar to incur the expense and devote the time to that evaluation is not yet arrived. Caterpillar hopes and expects it will never arrive: it is time to get this case disposed of, either by summary judgment motion or by trial. Suffice it to say that Caterpillar does not agree the Third Amended Complaint is any better than the Second Amended Complaint. It is certainly no more truthful.

## CONCLUSION

Trans-Spec's motion for leave to file a belated Third Amended Complaint should be summarily denied.

CATERPILLAR INC.,

By its attorneys,

CAMPBELL CAMPBELL EDWARDS
& CONROY, P.C.

_____
John A.K. Grunert (BBO: 213820)
One Constitution Plaza
Boston, MA 02129
(617) 241-3000

CERTIFICATE OF SERVICE

    I, John A.K. Grunert, hereby certify that on March 6, 2006, I served the within Opposition by transmitting it electronically to Nancy M. Reimer, Esquire, Donovan Hatem LLP, Two Seaport Lane, Boston, MA 02210.

_____
John A.K. Grunert