UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TRANS-SPEC TRUCK SERVICE, INC. d/b/a TRUCK SERVICE, ) ) ) )  Plaintiff ) ) vs. ) ) CATERPILLAR INC. ) ) Defendant ) ) | CIVIL ACTION NO. 04-11836-RCL |

CATERPILLAR INC.'S MOTION FOR SUMMARY JUDGMENT ON ALL REMAINING CLAIMS, STATEMENT OF UNDISPUTED MATERIAL FACTS, CERTIFICATE OF CONFERENCE OF COUNSEL, AND REQUEST FOR HEARING

The defendant Caterpillar Inc. hereby moves pursuant to Fed. R. Civ. P. 56(b) for summary judgment dismissing Count III of the plaintiff Trans-Spec Truck Service, Inc.'s Second Amended Complaint, all other counts of the Second Amended Complaint having previously been dismissed. In support of its motion, Caterpillar states (as more fully set forth in the accompanying memorandum) that it is entitled to judgment as a matter of law on Count III, a negligence claim, in its entirety because it is undisputed that negligence liability is expressly excluded by the contract between Caterpillar and Trans-Spec. Caterpillar is separately entitled to judgment as a matter of law, in part, on Count III by virtue of the economic loss doctrine and because claims for punitive damages are not cognizable in Massachusetts except as authorized by statute.

STATEMENT OF UNDISPUTED MATERIAL FACTS

Affidavits, answers to interrogatories, deposition testimony, deposition exhibits, and other material cited in this statement are contained in the accompanying Appendix of Exhibits.

1

(The Second Amended Complaint is already on file with the Court and, therefore, is not included in the Appendix.)

1. Trans-Spec is in the business of hauling petroleum products and providing end dump trailer services. Second Amended Complaint, ¶8

2. Trans-Spec's owner and president, Joseph Howard, decided in 1999 that it was time to replace some of Trans-Spec's fleet of heavy trucks. Deposition of Howard, 13-14 (contained in Exhibit A)

3. Howard negotiated the acquisition of 22 custom-built Sterling Truck Corporation trucks through a Sterling dealership called Minuteman Trucks. Sterling agreed with Howard to equip the trucks with Caterpillar C-12 engines. Second Amended Complaint, ¶8; Deposition of Howard, 77-83, 85-91, 93-94, 104-108 (contained in Exhibit A)

4. Trans-Spec was not compelled to specify Caterpillar engines for its trucks and, in fact, considered equipping its trucks with other manufacturers' engines before settling on Caterpillar engines largely because of its favorable experience with them. Deposition of Howard, 33-38, 66-69, 77-82 (contained in Exhibit A)

5. Sterling purchased the engines from Caterpillar, installed them in the trucks it built for Trans-Spec, and delivered the trucks to Trans-Spec in December, 1999, and January, 2000. Second Amended Complaint, ¶¶8, 11, and 12; Deposition of Howard, 142 (contained in Exhibit A)

6. Caterpillar provided a standard limited warranty for the engines. Trans-Spec Deposition, Vol. 2, 62-63 (contained in Exhibit C); Exhibits 5 and 6 to the Deposition of Howard (contained in Exhibit E); Affidavit of Clarissa Kolmer, ¶5 (Exhibit D)

7. There were actually two warranties, one for engines delivered before January 1, 2000, and the other for engines delivered on or after that date, but the relevant language in each is identical. Exhibits 5 and 6 to the Deposition of Howard (Exhibit E); Affidavit of Clarissa Kolmer, ¶5 (contained in Exhibit D)

8. The warranties contain the following language in bold-faced capital letters:

   **CATERPILLAR EXCLUDES ALL LIABILITY FOR OR ARISING FROM ANY NEGLIGENCE ON ITS PART OR ON THE PART OF ANY OF ITS EMPLOYEES, AGENTS, OR REPRESENTATIVES IN RESPECT OF THE MANUFACTURE OR SUPPLY OF GOODS OR THE PROVISION OF SERVICES RELATING TO THE GOODS**

   Exhibits 5 and 6 to the Deposition of Howard (Exhibit E).

9.      Flywheel housings began loosening on C-12 engines in some of Trans-Spec's 22
        Sterling trucks in 2001. A few more failures of the same type occurred in 2002.
        All told, there were six such failures over the course of those two years. Many
        more failures occurred in 2003, 2004, and 2005. <u>Second Amended Complaint</u>,
        ¶¶14 and 16

10.     Caterpillar initially paid for repair of the flywheel housing failures but, in mid-
        2003, determined the failures were not being caused by defects in the material or
        workmanship of the engines and therefore stopped paying for the repairs.
        <u>Deposition of Kolmer</u>, 14, 52, 74-77 (contained in Exhibit G)

11.     The engine bearing serial number 2KS27878 was installed by Sterling in the truck
        identified by Trans-Spec as Truck 6200. The engine bearing serial number
        2KS27861 was installed by Sterling in the truck identified by Trans-Spec as
        Truck 7800. There is no documentary evidence that any flywheel housing failure
        occurred on either of these two trucks. <u>Trans-Spec Deposition</u>, Vol.1, 113-114
        (contained in Exhibit B); <u>Exhibit 6</u> thereto (Exhibit H); <u>Trans-Spec Deposition,</u>
        Vol. 2, 87-89, 111-115 (contained in Exhibit C)

12.     There is no evidence that, if undocumented flywheel housing failures occurred on
        the engines bearing serial numbers 2KS27878 and 2KS27861, they caused
        damage to non-engine components of the trucks. <u>Trans-Spec Deposition</u>, Vol. 1,
        114 (contained in Exhibit B); <u>Trans-Spec Deposition</u>, Vol. 2, 85-86, 115
        (contained in Exhibit C); excerpts from the reports of Thomas Service and Jack
        Ekchian (Exhibit I).

13.     Trans-Spec sold 20 of its 22 Sterling trucks in mid-2005. The other two trucks
        had been wrecked in accidents so Trans-Spec did not sell them. <u>Trans-Spec
        Deposition</u>, Vol. 2, 56-58 (contained in Exhibit C)

14.     Trans-Spec avers that its Sterling trucks should have had a resale value of $45,000
        apiece but that the price it was actually able to obtain for them was only $33,500
        apiece because of its report to the purchaser of recurrent flywheel housing
        problems. <u>Second Amended Complaint</u>, ¶24; <u>Trans-Spec Deposition</u>, Vol. 1, 26-
        30, 54-56 (contained in Exhibit B)

15.     Trans-Spec lost money and paid no federal income tax in 2000, 2001, 2002, 2003,
        and 2004. <u>Deposition of Pappas</u>, 28-35 (contained in Exhibit K)

16.     Trans-Spec experienced no flywheel housing failures at all until 2001 and a total
        of only six prior to 2003. <u>Second Amended Complaint</u>, ¶14.

17.     Trans-Spec's business required that it operate every one of its trucks six days a
        week. <u>Second Amended Complaint</u>, ¶16.

18.    Trans-Spec's trucks were often down for long periods of time because of delay in obtaining replacement flywheel housings.  Trans-Spec Deposition, Vol. 2, 53-54, 90, 118-119 (contained in Exhibit C)

19.    Damage to other engine components also contributed to downtime of the trucks. Trans-Spec Deposition, Vol. 1, 159 (contained in Exhibit B); Trans-Spec Deposition, Vol. 2, 31, 87-88 (contained in Exhibit C)

20.    Trans-Spec also experienced a variety of other "chronic" engine problems. Plaintiff, Trans-Spec Truck Service Inc., d/b/a Truck Services Amended Supplemental Amended Answers to Caterpillar Inc.'s First Set of Interrogatories, answers 7 and 15 (Exhibit L)

21.    Trans-Spec experienced substantial downtime that prevented proper operation of its business by reason of engine problems alone. Trans-Spec Deposition, Vol. 1, 159 (contained in Exhibit B); Trans-Spec Deposition, Vol. 2, 31, 53-54, 87-88, 90, 118-119 (contained in Exhibit C); Plaintiff, Trans-Spec Truck Service Inc., d/b/a Truck Service's Amended Supplemental Amended Answers to Caterpillar Inc.'s First Set of Interrogatories, answers 7 and 15 (Exhibit L)

22.    Information related to the many flywheel housing failures experienced by Trans-Spec's Sterling trucks is incomplete and inadequate to provide detail regarding the work that was done in connection with each failure.  Trans-Spec Deposition, Vol. 2, 13-14, 22-23, 53-54, 80-86, 92, 97-98, 114-115, 131-132, 140-142 (contained in Exhibit C)

23.    Trans-Spec has no expert testimony to address how long specific repair work would have taken if specific elements of the work had not needed to be done, and thus how much (if at all) the downtime of Trans-Spec's trucks would have been reduced if non-engine components had been undamaged.  Excerpts from the reports of Thomas Service and Jack Ekchian (Exhibit I); Plaintiff, Trans-Spec Truck Service Inc., d/b/a Truck Service's Amended Supplemental Amended Answers to Caterpillar Inc.'s First Set of Interrogatories, supplemental answer #1 (Exhibit L); letter of Trans-Spec's counsel (Exhibit N); Deposition of Pappas, 67-7094-95 (contained in Exhibit K)

24.    There is no evidence that any lost income or diminution in the value of Trans-Spec's business was caused by damage to non-engine components resulting from flywheel housing failures, as distinct from the flywheel housing failures and other alleged engine problems themselves. Second Amended Complaint, ¶16; Trans-Spec Deposition, Vol. 1, 159 (contained in Exhibit B); Trans-Spec Deposition, Vol. 2, 13-14, 22-23, 31, 53-54, 80-88, 90, 92, 97-98, 114-115, 118-119, 131-132, 140-142 (contained in Exhibit C); Plaintiff, Trans-Spec Truck Service Inc., d/b/a Truck Service's Amended Supplemental Amended Answers to Caterpillar Inc.'s First Set of Interrogatories, answers 1, 7 and 15 (Exhibit L); Excerpts from the

reports of Thomas Service and Jack Ekchian (Exhibit I); letter of Trans-Spec's counsel (Exhibit M); Deposition of Pappas, 67-7094-95 (contained in Exhibit K)

25. There is no evidence of any date on which Trans-Spec's non-engine property was contaminated by an oil leak caused by a flywheel housing failure, no evidence identifying any truck or engine involved in any such event, no evidence identifying who cleaned up any such leak, and no evidence of how much Trans-Spec paid to clean up the leak. Trans-Spec Deposition, Vol. 2, 23-26 (contained in Exhibit C); Notice of Taking Resumed Deposition, Schedule A, ¶19 (Exhibit O); Second Set of Supplemental Answers of the Plaintiff, Trans-Spec Truck Service Inc., d/b/a Truck Service, to the Third Set of Interrogatories of the Defendant, Caterpillar Inc., supplemental answer #3 (Exhibit J)

REQUEST FOR ORAL ARGUMENT

Caterpillar requests an opportunity to present oral argument in support of its motion.

CATERPILLAR INC.,

By its attorneys,

CAMPBELL CAMPBELL EDWARDS
& CONROY, P.C.

John A.K. Grunert (BBO: 213820)
One Constitution Plaza
Boston, MA 02129
(617) 241-3000

CERTIFICATE OF CONFERENCE OF COUNSEL

I, John A.K. Grunert, hereby certify pursuant to LR 7.1 that on March 15, 2006, I conferred in good faith by telephone with Christian Samito, counsel for Trans-Spec, with respect to the subject matter of this motion. No agreement with respect to the subject of the motion could be reached.

John A.K. Grunert

<u>CERTIFICATE OF SERVICE</u>

      I, John A.K. Grunert, hereby certify that on March 17, 2006, I served the within motion electronically on Nancy Reimer, Esquire, Donovan Hatem LLP, Two Seaport Lane, Boston, MA 02210.

_____
John A.K. Grunert