UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11836-RCL

| | |
|---|---|
| TRANS-SPEC TRUCK SERVICE, INC. d/b/a TRUCK SERVICE, <br>     Plaintiff <br><br> vs. <br><br> CATERPILLAR INC. <br>     Defendant | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## PLAINTIFF, TRANS-SPEC TRUCK SERVICE INC., d/b/a TRUCK SERVICES, AMENDED SUPPLEMENTAL AMENDED ANSWERS TO CATERPILLAR INC.'S FIRST SET OF INTERROGATORIES

The plaintiff, Trans-Spec Truck Service, Inc. ("Trans-Spec") answers the below interrogatories as follows:

## GENERAL OBJECTIONS OF SPECIFIC APPLICABLITY

1.    These answers to interrogatories are qualified by the objections specifically asserted herein and the answers do not constitute a waiver of any objection asserted.

## INTERROGATORIES

**INTERROGATORY NO. 1**

Identify every person whom you expect to offer expert testimony on your behalf at trial and, as to each such person, state the subject matters on which he or she will testify, state the substance of the facts and opinions to which he or she will testify, and summarize the grounds for each opinion to which he or she will testify.

**ANSWER NO. 1**

Trans-Spec has not determined which experts, if any, it will call at trial and reserves the right to supplement this answer in a timely fashion.

**SUPPLEMENTAL ANSWER NO. 1**

Trans-Spec hereby identifies as its experts:

Thomas H. Service, Ph.D.
Altran Corporation
451 D Street
Boston, MA  02210

Jack A. Ekchian, Ph.D
P.O. Box 429
Belmont, MA 02478

Sam S. Pappas, C.P.A.
175 Thompson Road
P.O. Box 839
Webster, MA 01570-2040

Trans-Spec will produce additional information responsive to this interrogatory on December 7, 2005 as part of its Rule 26(a)(2) disclosure and incorporates that Rule 26(a)(2) disclosure herein.

**INTERROGATORY NO. 6**

Set forth comprehensively and in detail the factual basis for your contention that the problems Trans-Spec has had with the engines are caused by design or manufacturing defects in them rather than by improper installation of the engines by Sterling.

**ANSWER NO. 6**

Trans-Spec objects to this interrogatory to the extent that it seeks information privileged due to the attorney/client relationship or because it was prepared in anticipation of litigation or trial, or because it constitutes attorney work product.  Without waiving and subject to these objections, Trans-Spec states that it believes that the problems with the engines are caused by design defects in the C-12 engine, specifically its propensity to crack due to the added torque generated by its increased horsepower, causing serious and chronic problems with the flywheel housings, front structures, valves, crankshaft seals, and cylinder block castings.  This contention is based on statements made by Cardoza and Charlie Bertram ("Bertram") during the dyno test of one of the trucks at 9:00 a.m. on July 6, 2004 at the Milton-CAT facility in Milford, Massachusetts. Additionally, as a practical matter, the difference between the C-12 engine and other similar Caterpillar models is its increased horsepower.  Thus, the front structures have repeatedly cracked and leaked almost immediately after Trans-Spec's purchase of the trucks; the valves on the engines have consistently broken, and no cure has been found for the recurring flywheel housing failures that have afflicted the engines.  Trans-Spec reserves the right to supplement this response in a timely manner.

**SUPPLEMENTAL ANSWER NO. 6**

Trans-Spec will produce additional information responsive to this interrogatory on December 7, 2005 as part of its Rule 26(a)(2) disclosure and incorporates that Rule 26(a)(2) disclosure herein.

**INTERROGATORY NO. 7**

Set forth comprehensively and in detail the factual basis for your contention that the problems Trans-Spec has had with the engines are caused by design or manufacturing defects in them rather than by characteristics of the trucks for which Trans-Spec and/or Sterling selected them.

**ANSWER NO. 7**

Trans-Spec contends that the problems it has had with the engines are caused by design or manufacturing defects in them rather than by characteristics of the trucks because Sterling and Caterpillar both knew of Trans-Spec's business applications because of prior business transactions and assured Trans-Spec that the C-12 engines were suitable for the characteristics of the trucks. Caterpillar has been selling engines to Trans-Spec dating to 1986. Trans-Spec reiterated these business applications during the negotiations leading to the purchase of Caterpillar engines and fabrication of the trucks. Trans-Spec relied upon representations made by both Caterpillar and Sterling that Caterpillar's C-12 engine was appropriate for Trans-Spec's applications. Since accepting the trucks, Trans-Spec used the trucks only for the applications for which they were designed, and which both Sterling and Caterpillar knew about prior to recommending the C-12 engine.

Notwithstanding the representations of both Sterling and Caterpillar, as well as Trans-Spec's appropriate use of the trucks for the applications for which they were designed, the C-12 engines have manifested serious and chronic problems with their flywheel housings, front structures, valves, crankshaft seals, and cylinder block castings. This contention is based on statements made by Cardoza and Bertram during the dyno test of one of the trucks at 9:00 a.m. on July 6, 2004 at the Milton-CAT facility in Milford, Massachusetts.

**SUPPLEMENTAL ANSWER NO. 7**

Trans-Spec will produce additional information responsive to this interrogatory on December 7, 2005 as part of its Rule 26(a)(2) disclosure and incorporates that Rule 26(a)(2) disclosure herein.

**INTERROGATORY NO. 14**

State separately with respect to each of the trucks all dates on which the truck was out of service as a result of engine problems and, as to each date, the nature of the engine problem that caused it to be out of service and the mileage on the truck at the time.

**ANSWER NO. 14**

Pursuant to Fed. R. Civ. P. 33(d), most of this information has been produced pursuant to Trans-Spec's Local Rule 26.2 and Fed. R Civ. P. 26(a)(1) Automatic Disclosures. Furthermore, pursuant to Fed. R. Civ. P. 33(d), Trans-Spec will produce additional responsive documents for inspection at its office at a mutually convenient time.

**SUPPLEMENTAL ANSWER NO. 14**

Pursuant to Fed. R. Civ. P. 33(d), this information has been produced pursuant to Trans-Spec's Local Rule 26.2 and Fed. R Civ. P. 26(a)(1) Automatic Disclosures and prior document productions, i.e. dispatch log sheets and associated documents. Additional information is contained in documents in Caterpillar's possession, custody or control as well as documents produced by Minuteman Trucks, Tri-State Truck Center, Inc., and Southworth-Milton, Inc.

**INTERROGATORY NO. 15**

Describe with specificity every respect in which the engines were defective when they left Caterpillar's hands.

**ANSWER NO. 15**

Trans-Spec believes that the major design defect in the C-12 engine is its propensity to crack due to the added torque generated by its increased horsepower, causing serious and chronic problems with the flywheel housings, front structures, valves, crankshaft seals, and cylinder block castings. This contention is based on statements made by Cardoza and Bertram during the dyno test of one of the trucks at 9:00 a.m. on July 6, 2004 at the Milton-CAT facility in Milford, Massachusetts. Thus, the front structures have repeatedly cracked and leaked almost immediately after Trans-Spec's purchase of the trucks; the valves on the engines have consistently broken, and no cure has been found for the recurring flywheel housing failures that have afflicted the engines.

**SUPPLEMENTAL ANSWER NO. 15**

Trans-Spec will produce additional information responsive to this interrogatory on December 7, 2005 as part of its Rule 26(a)(2) disclosure and incorporates that Rule 26(a)(2) disclosure herein.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS __ DAY OF DECEMBER, 2005

Joseph M. Howard, Jr.,
President, Trans-Spec Truck Service, Inc.

As to objections:

Nancy M. Reimer, Esq., BBO#555373
Christian G. Samito, Esq., BBO#639825
Donovan Hatem, LLP
Two Seaport Lane
Boston, MA 02210
(617) 406-4500

Date: December 5, 2005