UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TRANS-SPEC TRUCK SERVICE INC., D/B/A TRUCK SERVICE<br><br>     Plaintiff,<br>v.<br><br>CATERPILLAR INC.<br><br>     Defendant. | CIVIL ACTION NO.:04-11836RCL |

## RESPONSE TO CATERPILLAR'S STATEMENT OF UNDISPUTED [SIC] MATERIAL FACTS

1. Admitted

2. Admitted.

3. Admitted.

4. Admitted, though with the caveat that Trans-Spec considered Caterpillar's warranties as well as representations made about its C-12 engine model's capabilities. See Deposition of Howard attached as Exhibit A to Caterpillar's Appendix of Exhibits, 81.16-17 ("And the biggest thing is warranty[.]")

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted.

9. Admitted.

10. Admitted that Caterpillar initially reimbursed for repairs, denied as to the rest of this paragraph. Beginning in 2003, Caterpillar breached its warranty and refused to further reimburse for work performed on the flywheel housings on the engines in Trans-Spec's trucks. Caterpillar Rule 30(b)(6) deposition, September 22, 2005 ("Caterpillar Depo. Day 2"), 14.4-9, attached as

Ex. K[1]; see also Caterpillar Depo. Day 1, 207.3-208.18, Ex. A. The Caterpillar employees who stopped reimbursement for Trans-Spec's flywheel housing failures did not consult with any engineers to confirm whether defective Caterpillar materials or workmanship caused Trans-Spec's problems prior to making their decision, nor did they consult with Caterpillar's Warranty Administration Department. Caterpillar Depo. Day 2, 52.7-60.23, 68.15-23, Ex. K.

11. Denied. Moreover, Caterpillar here argues for inferences as to the lack of credibility or lack of accuracy of firsthand knowledge held by Trans-Spec that is properly the subject of Trans-Spec's oral testimony. Credibility or assertions as to lack of credibility are not a basis for summary judgment. *Cadle Company v. Hayes*, 116 F.3d 957, 959 (1st Cir. 1997); *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 581 (1st Cir. 1994); *Greenburg v. Puerto Rico Maritime Shipping Auth.*, 835 F. 2d 932, 936 (1st Cir. 1987).

12. Denied. Moreover, Caterpillar here argues for inferences as to the lack of credibility or lack of accuracy of firsthand knowledge held by Trans-Spec that is properly the subject of Trans-Spec's oral testimony. Credibility or assertions as to lack of credibility are not a basis for summary judgment. *Cadle Company v. Hayes*, 116 F.3d 957, 959 (1st Cir. 1997); *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 581 (1st Cir. 1994); *Greenburg v. Puerto Rico Maritime Shipping Auth.*, 835 F. 2d 932, 936 (1st Cir. 1987).

13. Admitted as to the first sentence; denied as to the second sentence.

14. Admitted.

15. Admitted, though Trans-Spec states that while its net income was $216,978 in 2004, it was $ -15,217 in 2003, $ - 6,281 in 2002, and $-11,174 in 2001.

16. Denied.

17. Admitted.

18. Admitted.

---

[1] All exhibits referenced herein are attached to the *Appendix Of Exhibits To Trans-Spec Truck Service, Inc.'s Opposition To Caterpillar Inc.'s Motion For Summary Judgment And Affidavit Of Christian G. Samito, Esq.*, unless otherwise noted.

19.     Denied. Damage to other engine components, as well as to non-engine related components, caused by the flywheel housing problems contributed to downtime of the trucks. Joseph M. Howard, Jr. Affidavit, ¶ 11, attached as Ex. Q; Second Set of Supplemental Answers to Third Set of Interrogatories, Answer No. 3, attached as Ex. R; see also Kevin Holmes depo., 47.19-49.10, attached as Ex. S.

20.     Denied. Damage to other engine components, as well as to non-engine related components, caused by the flywheel housing problems contributed to downtime of the trucks. Joseph M. Howard, Jr. Affidavit, ¶ 11, attached as Ex. Q; Second Set of Supplemental Answers to Third Set of Interrogatories, Answer No. 3, attached as Ex. R; see also Kevin Holmes depo., 47.19-49.10, attached as Ex. S.

21.     Admitted, though Trans-Spec also suffered damage to other engine components, as well as to non-engine related components, caused by the flywheel housing problems; this contributed to downtime of the trucks. Joseph M. Howard, Jr. Affidavit, ¶ 11, attached as Ex. Q; Second Set of Supplemental Answers to Third Set of Interrogatories, Answer No. 3, attached as Ex. R; see also Kevin Holmes depo., 47.19-49.10, attached as Ex. S.

22.     Denied. Moreover, Caterpillar here argues for inferences as to the lack of credibility or lack of accuracy of firsthand knowledge held by Trans-Spec that is properly the subject of Trans-Spec's oral testimony. Credibility or assertions as to lack of credibility are not a basis for summary judgment. *Cadle Company v. Hayes*, 116 F.3d 957, 959 (1st Cir. 1997); *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 581 (1st Cir. 1994); *Greenburg v. Puerto Rico Maritime Shipping Auth.*, 835 F. 2d 932, 936 (1st Cir. 1987).

23.     Denied. Moreover, Caterpillar here argues for inferences as to the lack of credibility or lack of accuracy of firsthand knowledge held by Trans-Spec that is properly the subject of Trans-Spec's oral testimony. Credibility or assertions as to lack of credibility are not a basis for summary judgment. *Cadle Company v. Hayes*, 116 F.3d 957, 959 (1st Cir. 1997); *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 581 (1st Cir. 1994); *Greenburg v. Puerto Rico Maritime Shipping Auth.*, 835 F. 2d 932, 936 (1st Cir. 1987). Additionally, by its own choice,

Caterpillar has yet to conclude Trans-Spec's Rule 30(b)(6) deposition and therefore, Trans-Spec's testimony on damages, oil spillage on various properties, and other material matters is incomplete on the record. Resumed Trans-Spec Rule 30(b)96) Deposition, September 28, 2005, page 143, attached Ex. P. Moreover, no expert testimony is needed as to how long specific repair work would have taken.

24.     Denied. Moreover, Caterpillar here argues for inferences as to the lack of credibility or lack of accuracy of firsthand knowledge held by Trans-Spec that is properly the subject of Trans-Spec's oral testimony. Credibility or assertions as to lack of credibility are not a basis for summary judgment. *Cadle Company v. Hayes*, 116 F.3d 957, 959 (1st Cir. 1997); *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 581 (1st Cir. 1994); *Greenburg v. Puerto Rico Maritime Shipping Auth.*, 835 F. 2d 932, 936 (1st Cir. 1987). Additionally, by its own choice, Caterpillar has yet to conclude Trans-Spec's Rule 30(b)(6) deposition and therefore, Trans-Spec's testimony on damages, oil spillage on various properties, and other material matters is incomplete on the record. Resumed Trans-Spec Rule 30(b)(6) Deposition, September 28, 2005, page 143, attached as Ex. P.

25.     Denied. Moreover, Caterpillar here argues for inferences as to the lack of credibility or lack of accuracy of firsthand knowledge held by Trans-Spec that is properly the subject of Trans-Spec's oral testimony. Credibility or assertions as to lack of credibility are not a basis for summary judgment. *Cadle Company v. Hayes*, 116 F.3d 957, 959 (1st Cir. 1997); *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 581 (1st Cir. 1994); *Greenburg v. Puerto Rico Maritime Shipping Auth.*, 835 F. 2d 932, 936 (1st Cir. 1987). Additionally, by its own choice, Caterpillar has yet to conclude Trans-Spec's Rule 30(b)(6) deposition and therefore, Trans-Spec's testimony on damages, oil spillage on various properties, and other material matters is incomplete on the record. Resumed Trans-Spec Rule 30(b)(6) Deposition, September 28, 2005, page 143, attached as Ex. P.

## TRANS-SPEC'S STATEMENT OF SUPPLEMENTAL MATERIAL FACTS

1.  Caterpillar's C-12 engine was an appropriate engine for fuel hauler and dump trailer operations in the New England area where Trans-Spec operates its trucks. Caterpillar Rule 30(b)(6) Deposition, September 21, 2005 ("Caterpillar depo. Day 1"), 134.12-15, attached as Ex. A.

2.  Caterpillar orally waived exclusions of express or implied warranties or negligence on multiple occasions. Trans-Spec's Amended Answer to Interrogatory No. 10, 11, attached as Ex. B; Joseph M. Howard, Jr. Deposition, 66.16-70.16; 109.15-111.19, attached as Ex. C; Albert Cardoza Deposition, 49.4-51.15, attached as Ex. D; Ralph A. Lind, Jr. Deposition, 66.1-67.4, 122.23-125.14, attached as Ex. E; Harry Calderbank Deposition, 37.11-38.23, attached as Ex. F; Donald Medbery Deposition, 29.21-36.19; 38.4-24; 41.15-24, attached as Ex. G.

3.  Around the time Trans-Spec contemplated what types of engines to purchase, two employees of Caterpillar's agent and local distributor, Albert Cardoza ("Cardoza") and Harry Calderbank ("Calderbank") repeatedly met with Trans-Spec personnel to make representations regarding the capabilities of the C-12 engine and warranties associated with it as well as to show Trans-Spec computer simulations, on Caterpillar software, that the C-12 was appropriate for its trucks. Trans-Spec's Amended Answer to Interrogatory No. 10, 11, attached as Ex. B; Joseph M. Howard, Jr. Deposition, 66.16-70.16; 109.15-111.19, attached as Ex. C; Albert Cardoza Deposition, 49.4-51.15, attached as Ex. D; Ralph A. Lind, Jr. Deposition, 66.1-67.4, 122.23-125.14, attached as Ex. E; Harry Calderbank Deposition, 37.11-38.23, attached as Ex. F; Donald Medbery Deposition, 29.21-36.19; 38.4-24; 41.15-24, attached as Ex. G.

4.  Not only did Cardoza and Calderbank participate frequently in the determination of the trucks' configuration, a regional Caterpillar representative based out of Caterpillar's Hartford, Connecticut office also made representations regarding the capabilities of and warranties associated with the C-12 engine. Medbery depo., 29.21-36.19; 38.4-24; 41.15-24, Ex. G.

5.  The Caterpillar representative based out of Caterpillar's Hartford, Connecticut office was "bragging that engine up like there was no tomorrow," Medbery depo., 41.15-24, Ex. G.

6.     As part of its purchase, at or around the time of delivery, Trans-Spec received from Caterpillar an extended warranty "against defects in materials or workmanship under normal use" for five years or 500,000 miles, according to the terms and conditions as specified on the back of the Registration Certificate attached as Ex. H.

7.     Caterpillar also agreed in writing to reimburse Trans-Spec for any "failures due to defects in materials or workmanship under normal use" and to "pay 100% of the components and labor charges for covered failures, with no deductible charges," for a period of five years/500,000 miles, see Ex. H.

8.     Thus, Caterpillar offered Trans-Spec a warranty that its engines would be free from "defects in materials or workmanship under normal use" during a five year period and represented that if any defects in materials or workmanship arose during that specified time, Caterpillar would pay for the necessary repairs. See Ex. H.

9.     As part of its purchase, at or around the time of delivery, Trans-Spec also received a concurrent two year warranty, attached as Ex. I, pursuant to which "Caterpillar Inc. or any of its subsidiaries ('Caterpillar') warrants new . . . C-12 . . . engines sold by it for use in powering on-highway vehicles . . . to be free from defects in material and workmanship" for "24 months after date of delivery to the first user."

10.    In describing the five year/500,000 mile warranty in the text of the two year warranty, Caterpillar states that "parts are warranted against defects in material and workmanship for 60 months or 500,000 miles . . . whichever occurs first after date of delivery to the first user." Ex. I.

11.    According to Caterpillar's records and those of one of its authorized dealers, Minuteman Trucks, Inc., the first of many flywheel housing problems manifested itself in November 2001. See Repair Records attached as Exhibit J.

12.    At first, Caterpillar paid for the corresponding work performed on the engines in connection with the flywheel housing failures pursuant to the five year/500,000 mile warranty and the two year warranty at Exhibits H and I. Caterpillar Statement of Undisputed [sic] Material Facts, ¶ 10 (first phrase; the remainder of this paragraph is denied).

13. The Registration Certificate attached as Ex. H provides reimbursement for covered components' failures "due to defects in Caterpillar materials or workmanship under normal use."; see also Ex. I ("Caterpillar Inc. or any of its subsidiaries ('Caterpillar') warrants new . . . C-12 . . . engines sold by it for use in powering on-highway vehicles . . . to be free from defects in material and workmanship" for "24 months after date of delivery to the first user" and explaining that Caterpillar would "correct the defect" "[i]f a defect in materials or workmanship is found during the *standard warranty* period[.]" (emphasis in original)).

14. Thus, by authorizing repair and replacement for Trans Spec's initial flywheel housing problems, Caterpillar admitted: a) defects in Caterpillar materials or workmanship caused the failures[2]; b) Trans-Spec operated the trucks within normal parameters; and, c) the two year and five year/500,000 mile warranties on defects in materials of workmanship on Trans Spec's engines applied. See also Caterpillar depo. Day 1, 207.3-208.18, Ex. A.

15. In choosing to continually replace one defective part on Trans-Spec's engines with a part containing the same defects, and not rectifying the defect on all twenty two of Trans-Spec's engines, Caterpillar repeatedly breached both the two year and the five year/500,000 mile warranties. Caterpillar failed "to correct the defect," as mandated by the two year warranty at Ex. I or "repair" the failures as called for in the five year/500,000 mile warranty at Ex. H.

16. Beginning in 2003, moreover, Caterpillar openly breached its five year/500,000 mile warranty by refusing to further reimburse for work performed on the flywheel housings on the engines in Trans-Spec's trucks. Caterpillar Rule 30(b)(6) Deposition, September 22, 2005 ("Caterpillar depo. Day 2"), 14.4-9, attached as Ex. K; see also Caterpillar depo. Day 1, 207.3-208.18, Ex. A.

17. The Caterpillar employees who stopped reimbursement for Trans-Spec's flywheel housing failures did not consult with any engineers to confirm whether defective Caterpillar materials or workmanship caused Trans-Spec's problems prior to making their decision, nor did

---

[2] See also Caterpillar Depo. Day 2, 76.12-14, Ex. K: "The decision to reimburse is based upon whether or not the failure is the result of a defect in CAT material or workmanship."

7

they consult with Caterpillar's Warranty Administration Department. Caterpillar depo. Day 2, 52.7-60.23, 68.15-23, Ex. K.

18.     To this day, Caterpillar does not offer a permanent, reliable fix for these problems. Caterpillar depo Day 1, 170.1-175.13, Ex. A.

19.     Trans-Spec's expert, Dr. Ekchian, concluded *inter alia* that: 1) Caterpillar knew the aluminum flywheel housings used in its C-12 engines were flawed; 2) the design of the flywheel housings rendered the Caterpillar C-12 engine model defective; 3) Caterpillar had no basis for rejecting Trans-Spec's warranty claims; and, 4) Caterpillar was aware of alternatives to fix the defect including use of cast iron flywheel housings, a flywheel housing disclosed in a Caterpillar patent application dated in July 1998 (prior to Trans-Spec's purchase of the trucks), or the use of a metal plate under bolt heads as suggested in a Caterpillar document. See Dr. Ekchian Report (without exhibits) attached as Ex. L.

20.     Patent Number 6,065,757, attached as Exhibit M and filed by Caterpillar on July 2, 1998 – a year and a half before Trans-Spec took delivery of the trucks – notes that in aluminum flywheel housings such as the ones on Trans-Spec's engines, "[d]uring normal operation of an engine, cyclic temperature changes can cause thermal expansion and contraction of various components at varying rates. The use of components made of different materials adds to the relative movement between components. For example, the flywheel housing experiences thermal expansion greater than the thermal expansion of a cylinder block causing relative movement between the flywheel housing and the cylinder block. The relative movement . . . **can cause the flywheel housing** or seal to leak, **crack or can destroy connecting bolts used for connecting the flywheel housing to the cylinder block**." (emphasis added) This is precisely what happened on the C-12 engines in Trans-Spec's trucks.

21.     Trans-Spec's second expert, Dr. Service, concluded *inter alia* that the flywheel housing and the bolted connection between the housing and the engine block revealed inherent design defects including overstressing of the flywheel housings under normal operating conditions and an under-designed bolted connection resulting from improper joint design. These defects,

according to Dr. Service, could be remedied by proper engineering design and analysis. See Dr. Service Report (without exhibits) attached as Ex. N.

22.     Caterpillar repeatedly assured Trans-Spec that Caterpillar would compensate it for the damages it suffered in connection with the flywheel house failures. Affidavit of Joseph M. Howard dated June 2005, ¶ 3, attached as Ex. O; see also Ex. B.

23.     Soon after the flywheel housings began to fail in late 2001, Cardoza and Calderbank repeatedly told Trans-Spec that it would be made whole for the damage it suffered as a result of the defective C-12 engines. Trans-Spec's Amended Answer to Interrogatory No. 10, No. 11, Ex. B.

24.     In June 2004, officers of Trans-Spec attended a meeting to address the defective engines. Howard depo., 231.14-23, Ex. C.

25.     This June 2004 meeting included, among others, Caterpillar's Truck Engine District Manager for the New England region, Troy Guidotti ("Guidotti"). Howard depo, 231.14-23; 233.18-234.6, Ex. C.

26.     During this June 2004 meeting, Guidotti told Trans-Spec that "Caterpillar will make you whole," and assured that the problems with the C-12 engines were not Trans-Spec's fault. Howard depo., 238.14-239.15, Ex. C; Trans-Spec's Amended Answer to Interrogatory No. 10, No. 11, Ex. B.

27.     In August 2004, officers of Trans-Spec again attended a meeting. Howard depo., 247.18-248.2, Ex. C.

28.     Along with Guidotti, Caterpillar Regional Manager Schoening attended this August 2004 meeting and explicitly stated, "this is absolutely not your [Trans-Spec's] fault and Caterpillar will make you whole." Howard depo., 250.13-19, Ex. C.

29.     In sum, Caterpillar sold Trans-Spec engines it knew or should have known to be defective; provided warranties on those engines, including warranties against defects in materials or workmanship for two years and for five years/500,000 miles; authorized initial repairs that made it appear to Trans-Spec as if Caterpillar had honored its two year and five year/500,000

mile warranties as to Trans-Spec's flywheel housing failures; and, disclaimed the warranties which failed of their essential purpose. See Paragraphs 1 - 29 above.

30. The economic loss caused by Caterpillar's defective engines goes "beyond the defects" in the engines and the damage caused was not confined to the engines alone. Affidavit of Joseph M. Howard, Jr. dated April 19, 2005, ¶ 10, attached as Ex. Q; Second Set of Supplemental Answers to Third Set of Interrogatories, Answer No. 3, attached as Ex. R; see also Kevin Holmes Deposition, 47.19-49.10, attached as Ex. S.

31. Caterpillar's defective engine units caused damage to other critical systems throughout the trucks unrelated to the Caterpillar engines and caused oil leaks which damaged Trans-Spec's property and that of Trans-Spec's customers. (Howard aff., ¶ 11, Ex. Q; Second Set of Supplemental Answers to Third Set of Interrogatories, Answer No. 3, Ex. R; see also Holmes depo., 47.19-49.10, Ex. S).

32. By its own choice, Caterpillar has yet to conclude Trans-Spec's Rule 30(b)(6) deposition. Resumed Trans-Spec Rule 30(b)(6) Deposition, September 28, 2005, page 143, attached as Ex. P.

        Plaintiff,
        TRANS-SPEC TRUCK SERVICE INC.,
        D/B/A TRUCK SERVICE
        By their attorneys

        /s/ Christian G. Samito
        Nancy M. Reimer, Esq., BBO#555373
        Christian G. Samito, Esq., BBO#639825
        Donovan Hatem, LLP
        Two Seaport Lane
        Boston, MA 02210
        (617) 406-4500

Date: April 18, 2006

## CERTIFICATE OF SERVICE

I, Christian G. Samito, hereby certify that I have this day, April 18, 2006, served a copy of the foregoing pleading electronically and by sending a copy by first class mail, postage prepaid, to:

John A. K. Gruncrt, Esq.
Campbell Campbell Edwards & Conroy
One Constitution Plaza, 3rd Floor
Boston, MA  02129

/s/ Christian G. Samito
Christian G. Samito

00989516