Exhibit 2B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TRANS-SPEC TRUCK SERVICE, INC. d/b/a TRUCK SERVICE, | ) ) ) |
| Plaintiff | ) ) |
| vs. | ) |
| CATERPILLAR INC. | ) ) ) |
| Defendant | ) ) ) |

CIVIL ACTION NO. 04-11836-RCL

AFFIDAVIT OF JOHN GRUNERT

I, John A.K. Grunert, of full age, on my oath depose and say as follows:

1.    I am an attorney and a shareholder in the firm of Campbell Campbell Edwards & Conroy, P.C.  I am a member in good standing of the bars of all jurisdictions where I have been admitted to practice, namely, Massachusetts (1979), New Hampshire (1997), the United States District Court for the District of Massachusetts (1980), the United States District Court for the District of New Hampshire (1998), the United States District Court for the District of Connecticut (2004), and the Court of Appeals for the First Circuit (1981).  I have had responsibility for representing Caterpillar in this case at all times relevant to the accompanying motion for sanctions.

2.    Trans-Spec's attorneys served notices of taking depositions of Caterpillar's trial experts Richard Bowes, Matthew Kiser, Nathan Bjerk, and William Angus on, respectively, February 13, 14, 15 and 16 in Peoria, Illinois.  I first saw the deposition notices on January 31 or February 1, 2006, though they apparently were served on January 30 when I was out of my office.  The dates selected were ones Trans-Spec's counsel and I had discussed some time earlier and which I had

1

reported were feasible for the witnesses and for my office. They were, in other words, agreed dates.

3.        According to their expert reports, neither Mr. Bowes, nor Mr. Kiser, nor Mr. Bjerk, nor Mr. Angus has ever testified at trial or at deposition as an expert witness. My understanding is that Messrs. Kiser, Bjerk, and Angus have never testified at all and that Mr. Bowes's only testimonial experience was at a Rule 30(b)(6) deposition earlier in this case. It was obvious each witness would require preparation if he was to provide the full and responsive deposition testimony that would be expected of him in the manner that would be expected. This was especially so in light of the long list of documents each was asked to produce and about which each presumably would be questioned. Because Mr. Bowes's deposition was scheduled to begin at 10:00 AM on Monday, it was also apparent that his preparation would have to be on the preceding Friday, February 10.

4.        Because the depositions were to be taken on consecutive days and could reasonably be expected to last all day, I concluded that two defense attorneys had to be involved: one to appear at the deposition itself while the second prepared the next day's witness. I have traveled to Peoria, Illinois, many times over the more than 20 years I have represented Caterpillar and I know from experience that the trip takes a long time even on those increasingly rare occasions when there are no significant delays. There is no direct flight from Boston to Peoria, the usual route is through Chicago, and door to door the entire trip generally takes six to seven hours and often more. I therefore knew I would need to catch an early afternoon flight out of Boston on February 9 to assure that I arrived in Peoria at a reasonable hour and would be available to prepare Mr. Bowes the following day. For the same reason, I knew the second attorney – my associate Christopher Parkerson got the assignment – would have to catch a flight out of Boston

no later than the afternoon of Sunday, February 12, to assure he was there bright and early Monday morning.

5.      The deposition notices each had a long schedule of documents to be produced, a few entries in which struck me as objectionable but which for the most part, though onerous, seemed acceptable.  I was surprised, however, to see that each notice said all the identified documents should be produced by the witness at the offices of Donovan Hatem in Boston on February 9, rather than at the time and place of the deposition.  Trans-Spec's attorneys had never mentioned they would want witnesses to ship their files to Boston from Peoria in advance of their depositions, I had never suggested they would do so, and it had never occurred to me that they would be asked to do so.  In my experience, expert witnesses always produce their files when and where they are deposed.  I am aware that occasionally attorneys reach an agreement on advance production of documents – I have heard of it being done when an expert is deposed by videoconference or telephone rather than in person – but I have never actually seen it done and have never heard of it being done absent an express, reciprocal agreement on the subject.  My understanding of what the rules of civil procedure contemplate is that a deponent produces documents when and where he or she is deposed, not days before the deposition in a far-away place.  In any event, I prepared objections to the few objectionable paragraphs in the requests for production and to the date and place specified for production of the documents and served the objections on February 8, well before the date Rule 45 would have required them to be served if Trans-Spec had chosen to subpoena the witnesses.

6.      Later on the 8th, I received a message from my secretary that Trans-Spec's attorneys Nancy Reimer and Christopher Samito had called to speak with me.  It was late afternoon before I could return their call.  After telling me the purpose of their call was to hold a Local Rule 7.1

conference about their objections to Judge Alexander's recommendation that most counts of the second amended complaint be dismissed – a strange statement, I thought, since Rule 7.1 applies to motions, not to objections to a report and recommendation -- they raised the subject of production of the expert witnesses' files the following day in Boston. This was the first time any attorney for Trans-Spec had actually spoken with me on that subject. I told them I had just served objections to that part of their notices, that no documents would be produced in Boston the following day, but that with a few minor exceptions the witnesses would be producing the requested documents at their depositions as is routinely done. There ensued an unpleasant conversation which does not bear recounting in its entirety. Suffice it to say that one or both of Ms. Reimer and Mr. Samito told me they wanted to review the records in advance of the depositions and would file an emergency motion for an order requiring production of the documents in Boston in advance of the depositions. One or both also said, for the first time ever, that *some* of the experts' depositions *might* not be taken if their documents were produced in Boston. Neither told me the depositions would not proceed as scheduled if they did not obtain the relief they said they would seek from the court. I told them that in order to prepare Mr. Bowes for his Monday deposition I had no choice but to fly to Peoria the following day, that I would have to leave for the airport shortly after 11:00 AM, and that no one familiar with the case would be available for a hearing on an emergency motion after that time. My understanding of where things stood at the end of that conversation was that I was very quickly going to see an emergency motion on which Trans-Spec's counsel would attempt to obtain a hearing the next day and that, absent court action, the depositions were going forward.

7.      I was surprised, but pleased, when no emergency motion was served or filed later that afternoon or the following morning. I thought maybe Trans-Spec's attorneys had recognized

they were not entitled to what they were asking for and that the dispute was at an end. I left my office for the airport around 11:15 AM to catch a 1:21 PM flight to Chicago and then to make a connection to Peoria that, if all went well, would get me into downtown Peoria by around 6:30.

8.      Sometime between 12:00 and 12:30 PM, as I sat at Gate 27B at Logan Airport waiting to board the flight, I received a call on my cellphone telling me a letter had arrived from Ms. Reimer. I asked what it said and was given a report. I asked whether an emergency motion had been filed and was told none had been. I told Mr. Parkerson to call Ms. Reimer or Mr. Samito immediately to obtain from them, if it was true, an unequivocal statement that the depositions would not go forward as scheduled *regardless of what action or inaction there was on the as-yet-unfiled motion.* I told him to get the statement in writing, and that it had to be unequivocal, because if I did not get on my flight and Trans-Spec's counsel decided to go forward with the depositions as noticed Mr. Bowes would not be prepared for his deposition. I told Mr. Parkerson I had less than half an hour before boarding, that my bag was already on the aircraft, but that I would still cancel the trip if Ms. Reimer or Mr. Samito told us unequivocally in writing that the depositions would not go forward. Otherwise, I was going to Peoria in expectation that they would be taken as scheduled. I do not have personal knowledge of ensuing communications between Mr. Parkerson and Ms. Reimer or Mr. Samito. I have only seen e-mails that were exchanged, copies of which are attached to the accompanying memorandum, and had Mr. Parkerson's accounts of the conversations he had.

9.      One reason for my insistence that Trans-Spec's attorneys be unequivocal about their intentions, and that their intentions be clearly stated in writing, is that I had come to the conclusion over the course of the litigation that Trans-Spec's attorneys are not forthright or trustworthy in their dealings. I had formed this conclusion rather early based on repeated

5

instances of what appeared to be factual misrepresentations to me or the Court and manipulative conduct. Generally, it had seemed to me that Trans-Spec's attorneys would say pretty much anything anytime if they thought it would serve their purpose. By the time of the events described in this affidavit, I was also aware that Trans-Spec's attorneys had misled me with respect to the availability of one of their experts for deposition on dates when I had told them I wished to depose him, which reinforced the impression I had had since the first deposition taken in the case that Trans-Spec's counsel would behave in a misleading way with respect to scheduling depositions if they thought it would be helpful to them to do so. As I have discussed in the accompanying memorandum, I had asked Ms. Reimer on December 8, by e-mail, to give me dates during the week of December 19 when Trans-Spec's proposed experts, who had first been identified the day before, would be available for deposition. When I finally deposed Trans-Spec's proposed expert Thomas Service in January, I obtained e-mail correspondence between him and Ms. Reimer in which he had told her on December 8 that he was available to be deposed on three out of the five days I had identified. Ms. Reimer, however, had kept that information from me. Instead, Mr. Samito had told me that Mr. Service's availability on dates I had proposed was unknown to Donovan Hatem, that they had been unable to confer with him about his availability, and that he would provide deposition dates in January once Donovan Hatem had conferred with him. Knowing of this duplicity, and that it had been motivated by Trans-Spec's attorneys' wish to delay depositions of its experts until mid-to-late January for tactical reasons, confirmed for me that Trans-Spec's attorneys are willing to make false and misleading statements with respect to the scheduling of depositions if they believe it suits their purpose. So, when I heard as I sat at Logan Airport on February 9 of the communications Trans-Spec's attorneys were having with my office, I was very concerned that one goal of the communications

might be to prevent me – if I did not travel to Peoria as planned – from having adequate time to prepare "virgin" witnesses for their depositions scheduled to go forward the following week. I therefore instructed my associate to obtain an unequivocal written statement that those depositions would not go forward as scheduled under any circumstances, a statement Trans-Spec's attorneys were unwilling to give until Monday, February 13, after the first deposition should already have begun and long after my associate and I had traveled to Peoria.

10.    On Thursday, February 9, I devoted 6.9 hours to preparing for the following weeks' depositions, much of it while in transit to Peoria but some of it both before and after the travel. I also devoted 2.6 hours exclusively to travel. I draw this distinction because my billable rate to Caterpillar is  $122 per hour for time spent exclusively in traveling but $243 per hour for time spent doing productive work, even if it is done while traveling.

11.    On Friday, February 10, I devoted 8.9 hours to preparing Mr. Bowes for his deposition and reviewing documents he had assembled to try to assure that everything that should be produced would be produced

12.    On Saturday, February 11, I devoted only .4 hours to preparation for Mr. Bowes's deposition, as I had work on an appellate case for a different client that needed to be done and could be done in a Peoria hotel room.

13.    On Sunday, February 12, I devoted 3.5 hours to preparation for Mr. Bowes's deposition, (especially to assuring that he would have all the required documents assembled and available) and to beginning preparation for the next day's preparation session with Tuesday's witness, Mr. Kiser.

14.    On Monday, February 13, I met Mr. Bowes in the morning to complete his deposition preparation, reviewed additional documents for production at the deposition, and once he and

Mr. Parkerson left for the deposition began to prepare Mr. Kiser for his deposition on Tuesday. Shortly after 10:00 AM I received a call from Mr. Parkerson telling me no one from Trans-Spec's counsel's office had appeared for the deposition and that there was no court reporter there. The chain of e-mails attached to the accompanying memorandum as Exhibit 6 followed shortly thereafter. My time devoted to these depositions on February 13 was 3.6 hours.

15.     Unfortunately, reportedly because of disruption caused by the snowstorm that struck Boston late Saturday afternoon and Sunday, the earliest flight back to Boston that my secretary was able to get me on at 3:42 PM on Tuesday, February 14. I do not, however, intend to bill Caterpillar for the afternoon of February 13 or the morning of February 14, as I tried to find work on other matters that I could do. I had over 6.0 hours of wasted travel time on February 14, however, for which I will bill at the reduced rate of $122 per hour.

16.     I have devoted more than 8 hours since my return from Peoria to preparation of the accompanying motion and memorandum and this affidavit.

17.     My airfare for this fruitless trip was $929.20, which includes a substantial additional amount I was charged for the last-minute change of my confirmed return flight. My bill at the Pere Marquette Hotel in Peoria ($96.00 per night) was $556.73, which includes tax and a couple of cheap meals. My parking charge at Logan Airport was $144.00. My cab from Peoria Airport to downtown Peoria was $15.00 and the cab ride back to the airport was slightly more. The toll I paid driving home from Logan Airport was $3.00. Documentation of most of these expenses – the cab ride back to Peoria Airport is not documented -- is attached to this affidavit.

17.     Viewed conservatively, my billable time wasted because of Trans-Spec's attorneys' failure to appear for these depositions as noticed is $8655.10, being 31.3 hours at $243 per hour and 8.6 hours at $122 per hour. My wasted expenses exceeded $1662.93. An award of

$10,318.03 will therefore largely, though not entirely, compensate Caterpillar for *my* fees and expenses. Mr. Parkerson is submitting his own affidavit itemizing the somewhat lesser amount of *his* fees and expenses for which compensation is needed.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 17th day of February, 2006.

JOHN A. K. GRUNERT
Campbell Campbell Edwards & Conroy, PC
One Constitution Plaza
Boston, MA  02129
(617) 241-3000

On this 17th day of February, 2006, before me, the undersigned notary public, personally appeared John A. K. Grunert, well known to me to be the person whose name is signed on this affidavit, and who swore or affirmed to me that the contents of the document are truthful and accurate to the best of his knowledge.

Notary Public
My Commission Expires:  1/21/11

## McLaughlin, Mary Beth

**From:** American Airlines@aa.com [notify@aa.globalnotifications.com]
**Sent:** Tuesday, February 07, 2006 5:40 PM
**To:** McLaughlin, Mary Beth
**Subject:** E-Ticket Confirmation



### Actions

▸ Notify me of flight delays or cancellations

### JOHN AK GRUNERT

Date of Issue: 07FEB06

E-Ticket Confirmation/Record
Locator: MAWLBA

▸ Itinerary

▸ Receipt

### Special Notice

▸ Fare Notice



Earn up to 15,000 bonus miles! and NO ANNUAL FEE for 12 months



Free Weekend Day and 1,000 AAdvantage® Bonus Miles!



Last-Minute Packages Book now!

Thank you for choosing American Airlines/American Eagle, a member of the oneworld Alliance.

Check-in times will vary depending on your departure or destination city. In order to determine the time you need to check in at the airport, log on to AA.com or go to the link http://www.aa.com/airportexpectations.

If you have a U.S. DOMESTIC E-TICKET, check in for your flight using FLIGHT CHECK-IN at AA.COM between 1 and 24 hours prior to flight time. You may also use the SELF SERVICE CHECK-IN machine at the airport 1 to 12 hours prior to flight time on your day of departure. Use the E-Ticket confirmation/record locator above to select or change your seat and obtain a boarding pass. On day of departure, you will be required to present a government-issued photo-ID at the airport. See the ENDORSEMENT section below for fare rules pertaining to your ticket.

### Itinerary

| Date: | 09FEB - THURSDAY | |
|---|---|---|
| Flight : | AMERICAN AIRLINES | 509 |
| Departure: | BOSTON | 1:21 PM |
| Arrival: | CHICAGO OHARE | 3:15 PM |
| | JOHN GRUNERT | |
| | SEAT 13F | ECONOMY  FF#: AA 691D7R6 |

| | | |
|---|---|---|
| **Date:** | 09FEB - THURSDAY | |
| **Flight :** | AMERICAN AIRLINES | 4075 |
| **Departure:** | CHICAGO OHARE | 4:43 PM |
| **Arrival:** | PEORIA | 5:34 PM |
| **Operated By:** | OPERATED BY AMERICAN EAGLE | |
| | JOHN GRUNERT | |
| | SEAT 17C    ECONOMY    FF#: AA 691D7R6 | |

| | | |
|---|---|---|
| **Date:** | 17FEB - FRIDAY | |
| **Flight :** | AMERICAN AIRLINES | 3965 |
| **Departure:** | PEORIA | 3:42 PM |
| **Arrival:** | CHICAGO OHARE | 4:33 PM |
| **Operated By:** | OPERATED BY AMERICAN EAGLE FOOD FOR PURCHASE | |
| | JOHN GRUNERT | |
| | SEAT 7A    ECONOMY    FF#: AA 691D7R6 | |

| | | |
|---|---|---|
| **Date:** | 17FEB - FRIDAY | |
| **Flight :** | AMERICAN AIRLINES | 772 |
| **Departure:** | CHICAGO OHARE | 5:15 PM |
| **Arrival:** | BOSTON | 8:34 PM |
| | JOHN GRUNERT | |
| | ECONOMY    FF#: AA 691D7R6 | |

 

Book a Hotel    Book a Car    Buy Trip Insurance

## Receipt

| PASSENGER | TICKET NUMBER | FARE-USD | TAX | TICKET TOTAL |
|---|---|---|---|---|
| JOHN GRUNERT | 0012114508013 | 733.01 | 96.19 | 829.20 |
| **Additional Charges or Fees** 205.00 | | | | |
| **Payment Type:** Exchange, American Express XXXXXXXXXX3019 | | | **Total: $829.20** | |

**Endorsements/Restrictions -**
USD635.34 NONREFUNDABLE NONREF/CHGFEEPLUSFAREDIF/CXL BY FLT
You may have purchased a "Special Fare" and certain restrictions apply. Some fares are NON-REFUNDABLE. If the fare allows changes, a fee may be assessed for the change.

Please print and retain this document for use throughout your trip. Electronic tickets are NOT TRANSFERABLE.   Tickets with non-restrictive fares are valid for one year from original date of issue.

THIS E-MAIL ADDRESS IS NON-RETURNABLE AND WILL NOT ACCOMMODATE REPLIES.

If you are traveling internationally, please ensure that you have the proper documentation. All necessary travel documents for the countries being visited must be presented at airport check-in.  Check with the consulate of these countries to find out the documents required. Consulate phone numbers can be found in the Travel Information section of AA.com.

2/8/2006

 

## McLaughlin, Mary Beth

**From:** American Airlines@aa.com [notify@aa.globalnotifications.com]
**Sent:** Monday, February 13, 2006 3:03 PM
**To:** McLaughlin, Mary Beth
**Subject:** AA eTDS Notification







**Actions**

▸ Notify me of flight delays or cancellations

**Hot Deals**



Earn up to 15,000 bonus miles! and NO ANNUAL FEE for 12 months²



**Budget**
Free Weekend Day and 1,000 AAdvantage® Bonus Miles!



Last-Minute Packages Book now!

### JOHN AK GRUNERT

Date of Issue: 13FEB06

E-Ticket Confirmation/Record
Locator: MAWLBA

▸Receipt

Thank you for choosing American Airlines/American Eagle, a member of the oneworld Alliance.

This is the receipt for fees advised to you by reservations.

THIS E-MAIL ADDRESS IS NON-RETURNABLE AND WILL NOT ACCOMMODATE REPLIES.

If you have any questions regarding your reservations, please call 1-800-433-7300, or visit our Internet Website at http://www.aa.com

Book a Hotel    Book a Car    Buy Trip Insurance

**Receipt**

| PASSENGER | DOCUMENT NUMBER | FEE-USD | TAX | TRANS TOTAL |
|---|---|---|---|---|
| JOHN GRUNERT | 0010615944698 | 100.00 | 0 | 100.00 |

**Payment Type:** Miscellaneous, American Express XXXXXXXXXXX3019

2/15/2006

NRID: 23113352421113133391002100

# Hotel Pere Marquette

Page 1 of 1

501 Main St
Peoria, IL 61602
309-637-6500
pere@hotelperemarquette.com

**John Grunert**
**100 Ne Adams**
**Peoria, IL 61629**

| 1039 | 58671 | 02/09/2006 | 02/14/2006 | 0.00 |
|---|---|---|---|---|
| Master Folio | | Weekday: 96.00 | Weekend: 96.00 | |

| 02/09/2006 | 1039 | Room Taxable | 96.00 | 0.00 | 96.00 |
|---|---|---|---|---|---|
| 02/09/2006 | 1039 | Room Tax - 11.500% | 11.04 | 0.00 | 107.04 |
| 02/10/2006 | 1039 | Room Taxable | 96.00 | 0.00 | 203.04 |
| 02/10/2006 | 1039 | Room Tax - 11.500% | 11.04 | 0.00 | 214.08 |
| 02/11/2006 | 1039 | American Cafe Manual Post - 4248 | 11.90 | 0.00 | 225.98 |
| 02/11/2006 | 1039 | Room Taxable | 96.00 | 0.00 | 321.98 |
| 02/11/2006 | 1039 | Room Tax - 11.500% | 11.04 | 0.00 | 333.02 |
| 02/12/2006 | 1039 | American Cafe Manual Post - 4321 | 9.63 | 0.00 | 342.65 |
| 02/12/2006 | 1039 | Room Taxable | 96.00 | 0.00 | 438.65 |
| 02/12/2006 | 1039 | Room Tax - 11.500% | 11.04 | 0.00 | 449.69 |
| 02/13/2006 | 1039 | Room Taxable | 96.00 | 0.00 | 545.69 |
| 02/13/2006 | 1039 | Room Tax - 11.500% | 11.04 | 0.00 | 556.73 |
| 02/14/2006 | 1039 | American Express | 0.00 | 556.73 | 0.00 |

**Summary and Taxes**
Balance Due                0.00
Taxable Sales            480.00
Room Tax  11.50           55.20

```
        HOTEL PERE MARQUETTE
           501 MAIN ST.
          PEORIA, IL 61602


        S-A-L-E-S  D-R-A-F-T
   BATCH: 781          698000055800

   REF: 5750
   FOLIO 58671
   TR TYPE: CHECK-OUT
   DATE:   FEB 14, 06 12:01:59
   ORIG AMT: $556.73

                   $556.73

   ACCT:              EXP:

   CARDMEMBER ACKNOWLEDGES RECEIPT OF GOODS
         AND/OR SERVICES IN THE AMOUNT OF THE
       TOTAL SHOWN HEREON AND AGREES TO PERFORM
         THE OBLIGATIONS SET FORTH BY THE
        CARDMEMBER'S AGREEMENT WITH THE ISSUER


              THANK YOU!


   X  -----------------------------------

           CUSTOMER COPY
```

MMW
02/14/2006    11:55 AM

# Pekin Peoria Yellow Checker Cab

Date _2-9-06_                    Cash ☐    Charge ☑

Cab ☐    Rivercity ☐    TCF ☐

From: _Airport_

To: _Pere MARquette_

# Passengers _1_

Fare _15.00_

Additional Charges _____

Total _15.00_

Charge To: _____

Signature: _JOHN GRUNERT_

JB # _3727  913815  S3C19_

Air Bill # _617-241-3032_

Additional Billing Info _5708_

_____

_____

_____

P/U Time _____  Drop Time _____

Driver _____  Vehicle # _A.F._

# MASSACHUSETTS TURNPIKE
## RECEIPT

CL      TOLL  DATE PLZ COLL    NO.

1    $3.00  02/14/06  30  30179

---

Massport Parking Facilities                991910
1 Harborside Drive, Suite 200S
East Boston, MA 02128
Phone: (617) 561-1673

Location of your car: Level 1 , Row 3Q

Receipt: 7548/0601/601 02/14/06  Pg. 1/1

Pay Parking Ticket $          144.00
Entered:      02/09/06 11:38
Paid:         02/14/06 21:46
Facility:     Term.B daily parking
Epan:         79120110260040418810
Total Amount       $          144.00
Credit Amex        $          144.00
xxxx xxxxxx xx019

Exhibit
3 C

**Grunert, John A.K.**



| | |
|---|---|
| m: | Christian Samito [csamito@donovanhatem.com] |
| t: | Monday, February 13, 2006 2:10 PM |
| To: | Grunert, John A.K. |
| Cc: | Nancy Reimer |
| Subject: | RE: Trans-Spec v. Caterpillar Expert Depositions |

As we have repeatedly told you and Attorney Parkerson, we are not going to take the expert depositions until we have the requested documents and/or the Court rules on the emergency motion. Accordingly, as Nancy and I communicated to Attorney Parkerson numerous times and in numerous ways on February 9, 2006, the depositions of Bowes, Bjerk, Kiser and Angus have been taken off for February 13-17, 2006.

Christian G. Samito

-----Original Message-----
From: Grunert, John A.K. [mailto:jgrunert@Campbell-trial-lawyers.com]
Sent: Monday, February 13, 2006 2:05 PM
To: Christian Samito
Subject: Re: Trans-Spec v. Caterpillar Expert Depositions

Are you going to take depositions on Tuesday, Wednesday, and/or Thursday or not? Please just answer that simple question. If I do not have an answer by reply e-mail in the next fifteen minutes, all three depositions will be cancelled.

-----Original Message-----
m: Christian Samito <csamito@donovanhatem.com>
To: Grunert, John A.K. <jgrunert@Campbell-trial-lawyers.com>
CC: Nancy Reimer <nreimer@donovanhatem.com>
Sent: Mon Feb 13 13:58:39 2006
Subject: RE: Trans-Spec v. Caterpillar Expert Depositions

Attorney Grunert:

I do not understand what part of the following is unclear: a) the phone call Nancy Reimer and I had with you on the afternoon of February 8, 2006; b) Nancy Reimer's letter sent by facsimile on the morning of February 9, 2006; c) my email exchange with Attorney Parkerson on February 9, 2006; d) the phone call which I had with Attorney Parkerson on the morning of February 9, 2006; e) the phone call Nancy Reimer and I had with Attorney Parkerson on the afternoon of February 9; f) the text of Trans-Spec's emergency motion itself; and, g) the email exchange below. I am also at a complete loss as to why you flew out to Peoria in light of the above-referenced communications and even more confused as to when and why Attorney Parkerson followed.

I hasten to reiterate that if we can reach an agreement regarding the production of requested documents, it is very probable that Trans-Spec will cancel most, and perhaps all, of the expert depositions. As you are aware from the above-referenced communications, Trans-Spec is not interested in copies of documents already produced by Caterpillar, Trans-Spec, or other entities.

Christian G. Samito

-----Original Message-----
F   m: Grunert, John A.K. [mailto:jgrunert@Campbell-trial-lawyers.com]
    Monday, February 13, 2006 1:34 PM
To: Christian Samito
Subject: Re: Trans-Spec v. Caterpillar Expert Depositions

Mr. Bowes appeared for his deposition as scheduled. You were not there.
Mr. Kiser is available as scheduled tomorrow. Messrs. Bjerk and Angus are avalable as scheduled on Wednesday and Thursday. Please tell me now, by return e-mail, which of those depositions will be taken as scheduled. If I do not receive very prompt response, I will tell these three witnesses that their depositions are cancelled and Mr. Parkerson and I will return to Boston to begin work on our mnotion for sanctions.


-----Original Message-----
From: Christian Samito <csamito@donovanhatem.com>
To: Grunert, John A.K. <jgrunert@campbell-trial-lawyers.com>; Parkerson, Christopher B. <cparkerson@Campbell-trial-lawyers.com>
CC: Nancy Reimer <nreimer@donovanhatem.com>
Sent: Mon Feb 13 11:35:50 2006
Subject: Trans-Spec v. Caterpillar Expert Depositions

Attorneys Grunert and Parkerson:

Nancy Reimer informed me just now that Attorney Parkerson is in Peoria (I was under the impression, from Caterpillar's Response to Trans-Spec's Emergency Motion, that Attorney Grunert had travelled to Peoria, though that is neither here nor there).

In light of a) the telephone conversations between counsel which took place on Thursday afternoon and Friday morning; b) Attorney Reimer's Friday morning letter; c) the email exchange between Attorney Parkerson and myself on Friday morning; and, d) the fact that flights were cancelled yesterday due to the weather, I am at a loss as to why either of you travelled to Peoria for expert depositions you knew to have been postponed as of Thursday afternoon.

Attorney Reimer and I repeatedly stated that we would not proceed with the depositions until the Court rules on the Emergency Motion. I hasten to reiterate that if we can reach an agreement regarding the production of requested documents, it is very probably that Trans-Spec will cancel most, and perhaps all, of the expert depositions. Thus, such an agreement would heighten economy and efficiency for all parties in this matter. Trans-Spec continues to stand willing to reach such an agreement. Please call either Attorney Reimer or myself if you would like to discuss this option.

Christian G. Samito



UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11836-RCL

TRANS-SPEC TRUCK SERVICE, INC. )
d/b/a TRUCK SERVICE, )
    Plaintiff )
)
)
vs. )
)
)
CATERPILLAR INC. )
    Defendant )
)
)

## <u>AFFIDAVIT OF NANCY M. REIMER</u>

Nancy M. Reimer hereby deposes and says:

1.    I am a member in good standing of the Bar of the Commonwealth of Massachusetts and the United States District Court for the District of Massachusetts. I am Partner at the law firm of Donovan Hatem LLP. I am counsel to plaintiff Trans-Spec Truck Service, Inc. d/b/a Truck Service ("Trans-Spec"), and I submit this affidavit in support of Trans-Spec's *Opposition of the Plaintiff to Caterpillar Inc.'s Motion for Sanctions.*

2.    Trans-Spec produced the documents requested of its experts prior to their depositions, except for transcripts of depositions reviewed by those experts and excerpts from bulky engineering reference books which it produced at the depositions as per agreement with Caterpillar's counsel.

3.    Trans-Spec heard nothing about the Notices of Deposition or the depositions at issue until I called Caterpillar's counsel after 5:00 p.m. on February 8, 2006 to discuss unrelated matters.

4.    During this February 8, 2006 telephone conversation, which also involved my colleague Attorney Christian G. Samito ("Attorney Samito"), and Caterpillar's counsel, Attorney John

A.K. Grunert ("Attorney Grunert"), Attorney Grunert first informed me that Caterpillar would not produce any documents prior to the depositions in Illinois and Colorado.

5.    I responded during this February 8, 2006 telephone conference that it would improve efficiency and economy for both parties if Caterpillar produced the documents beforehand and that production of the documents would likely obviate the need for the noticed depositions altogether, thus saving both parties related time and costs.

6.    I also informed Attorney Grunert during this February 8, 2006 telephone conference that Trans-Spec would not go forward with the depositions unless it received the documents beforehand or the Court denied an Emergency Motion I would draft and file regarding this issue.

7.    I reiterated the positions articulated in the email correspondence attached as Exhibit D to the Affidavit of Christian G. Samito during a telephone call which I placed in a final effort to resolve this discovery dispute; this telephone call involved Attorney Samito, Attorney Christopher B. Parkerson ("Attorney Parkerson"), and myself and occurred just prior to the filing of the Emergency Motion that afternoon.

8.    At no time during this telephone conference on the afternoon of February 9, 2006 did Attorney Parkerson state that Attorney Grunert had boarded the airplane to Peoria, Illinois.

9.    Immediately after this telephone conference on the afternoon of February 9, 2006, Trans-Spec filed its Emergency Motion.

10.    Attorney Parkerson called me on the morning of February 13, 2006 to inform me that despite the oral and written communications described above or in the Affidavit of Christian G. Samito and accompanying attachments, not only had Attorney Grunert traveled to Peoria, Illinois but Attorney Parkerson flew there as well.

Samito and accompanying attachments, not only had Attorney Grunert traveled to Peoria, Illinois but Attorney Parkerson flew there as well.

11.    As Caterpillar's counsel knew from the February 8, 2006 telephone conference, Trans-Spec's counsel could not fly to Peoria on February 11, 2006 due to a memorial service. A blizzard prevented travel on February 12, 2006.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 23rd DAY OF FEBRUARY, 2006.

Nancy M. Reimer
DONOVAN HATEM LLP
Two Seaport Lane
Boston, Massachusetts 02210
(617) 406-4500

On this 23rd day of February, 2006, Nancy M. Reimer appeared before me, well known to me to be the person whose name is signed on this affidavit, and who swore or affirmed to me that the contents of this document are truthful and accurate to the best of his knowledge.

Notary Public
My Commission Expires:    08/22/08



## CERTIFICATE OF SERVICE

I, Christian G. Samito, hereby certify that on this 23rd day of February, 2006, I served a copy of the foregoing, by electronically filing and by mail, postage prepaid, to:

John A.K. Grunert, Esq.
Campbell Campbell Edwards & Conroy
One Constitution Plaza, 3rd Floor
Boston, MA 02120

00981739

/s/ Christian G. Samito
Christian G. Samito
Counsel for Trans-Spec Truck Service, Inc.