UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TRANS-SPEC TRUCK SERVICE, INC. d/b/a TRUCK SERVICE, | ) ) ) ) |
| Plaintiff | ) ) |
| vs. | ) ) CIVIL ACTION NO. 04-11836-RCL ) |
| CATERPILLAR INC. | ) ) |
| Defendant | ) ) ) |

CATERPILLAR INC.'S REQUEST FOR RECONSIDERATION BY DISTRICT COURT
JUDGE OF MAGISTRATE-JUDGE'S RULING ON PLAINTIFF'S EMERGENCY [SIC]
MOTION TO EXTEND THE DISOVERY DEADLINE AND TO REQUIRE PRODUCTION
OF DOCUMENTS

The defendant Caterpillar Inc. hereby requests reconsideration pursuant to 28 U.S.C.

§636(b)(1)(A) and Fed. R. Civ. P. 72(a) of the June 1, 2006, order of Magistrate-Judge

Alexander granting the motion entitled Emergency Motion of the Plaintiff to Compel Production

of Documents and to Extend Expert Discovery Period (the "June 1 order"). A copy of the June 1

order is attached hereto. It reads in its entirety:

> It is hereby ordered that the depositions noticed by Trans-Spec be taken on or before June
> 30, 2006, notwithstanding the objection of Caterpillar's counsel, who it must be noted,
> requested sanctions for preparing for the depositions. The documents requested by
> Trans-Spec, must be produced by June 14, 2006.

Neither the June 1 order nor the Magistrate-Judge's remarks at the hearing (as to which

*see* the transcript of the hearing attached as Exhibit A to the accompanying memorandum)

identify the basis for her order.

If the Magistrate-Judge granted the motion without first finding that Trans-Spec could

not, by exercising reasonable diligence, have met the scheduling order deadline, then she

committed error of law. If the Magistrate-Judge did make such a finding, the finding is clearly erroneous because there was no evidentiary basis or other basis in the record to support such a finding. Caterpillar refers the Court to the accompanying memorandum and exhibits in further support of this request.

WHEREFORE, Caterpillar asks the Court to reverse the Magistrate-Judge's June 1 order and enter its own order denying Trans-Spec's motion in its entirety.

CATERPILLAR INC.,

By its attorneys,

CAMPBELL CAMPBELL EDWARDS & CONROY, P.C.

John A.K. Grunert (BBO: 213820)
One Constitution Plaza
Boston, MA  02129
(617) 241-3000

## CERTIFICATE OF SERVICE

I, Christopher Parkerson, hereby certify that on June 9, 2006, I served the within request by causing a copy to be transmitted electronically to Christian Samito, Esquire, Donovan Hatem LLP, 2 Seaport Lane, Boston, MA  02210.

Christopher Parkerson

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| TRANS-SPEC TRUCK SERVICE, INC. d/b/a TRUCK SERVICE, | ) ) ) | |
| Plaintiff | ) ) | |
| vs. | ) ) | CIVIL ACTION NO. 04-11836-RCL |
| CATERPILLAR INC. | ) ) | |
| Defendant | ) ) | |

MEMORANDUM IN SUPPORT OF CATERPILLAR INC.'S REQUEST FOR
RECONSIDERATION BY DISTRICT COURT JUDGE OF MAGISTRATE-JUDGE'S
RULING ON PLAINTIFF'S EMERGENCY [SIC] MOTION TO EXTEND THE DISOVERY
DEADLINE AND TO REQUIRE PRODUCTION OF DOCUMENTS

After hearing, the Magistrate-Judge ordered (hereinafter the "June 1 order"):

It is hereby ordered that the depositions noticed by Trans-Spec be taken on or before June 30, 2006, notwithstanding the objection of Caterpillar's counsel, who it must be noted, requested sanctions for preparing for the depositions. The documents requested by Trans-Spec, must be produced by June 14, 2006.

No findings or memorandum of decision were issued[1]. The transcript of the entire May 31,

2006, hearing (several motions in addition to the one now before the Court having been argued at

that hearing) is attached as Exhibit A to this memorandum.

_____

[1] The significance of the Magistrate-Judge's allusion in her order to the motion for sanctions filed by Caterpillar after Trans-Spec's counsel failed to appear for the referenced depositions on the dates for which they had been noticed is unclear. It seems to indicate failure to distinguish the legal and factual issues determinative of a motion to amend the scheduling order (the motion to which this Objection pertains) from the legal and factual issues determinative of a motion for sanctions Fed. R. Civ. P. 30(g)(1) for failure of the party who noticed a deposition to appear at it (an issue on which no actual order has yet been issued, notwithstanding the Magistrate-Judge's statement that she plans to deny Caterpillar's motion for sanctions). If it is relevant, which Caterpillar does not believe it is, review of Caterpillar's Motion for Sanctions and the supporting memorandum and evidential materials will disclose to the Court that the June 1 order does not accurately describe the sanctions Caterpillar sought or the basis on which it sought them and that there is no evidence that all of the witnesses who should have been deposed on the dates for which Trans-Spec noticed their depositions have been prepared to testify. Caterpillar's counsel did not prepare three of the five witnesses and ceased the incipient preparation of a fourth once Trans-Spec told him unequivocally it would not go forward with the depositions.

The standard of review of a Magistrate-Judge's order on a non-dispositive motion is well settled.

Factual findings are reviewed for clear error. 28 U.S.C. §636(b)(1)(A); Fed. R. Civ. P. 72(a). "A magistrate judge's factual finding is considered clearly erroneous when it is contrary to the clear weight of the evidence, or when the court has a definite and firm conviction that a mistake has been committed." Young v. Conductron Corp., 899 F. Supp. 39, 40 (D. N.H. 1995) (internal quotation marks omitted). When the magistrate judge has made no specific findings and has not explained her reasoning, however, her order is "divested of its usual force, and the district judge [is] entitled to discount it to some degree." Quaker State Oil Refining Corp. v. Garrity Oil Co., Inc., 844 F.2d 1510, 1517 n.5 (1st Cir. 1989). Accord, e.g., Holland v. Island Creek Corp., 885 F. Supp. 4, 6 (D. D.C. 1995) (where the magistrate judge offers no reasoned explanation for the decision, the district judge must check the findings against the record with "painstaking care.") If there is no record evidence to support the finding, of course, it constitutes not just clear error but error of law, and must be set aside by the District Court Judge for that reason.

A Magistrate-Judge's rulings of law are subject to de novo review. Any order based upon an error of law, or on failure to apply the governing law, must be set aside. E.g., Gandee v. Glaser, 785 F. Supp. 684, 686 (S.D. Ohio 1992); Pascale v. G.D. Searle & Co., 90 F.R.D. 55, 59 (D. R.I. 1981).

<u>PERTINENT PROCEDURAL BACKGROUND</u>

There is no dispute about any of the following facts.

This action was commenced on August 23, 2004. A scheduling conference was convened pursuant to Fed. R. Civ. P. 16(b) on October 27, 2004 and the Court thereafter issued

its scheduling order. The order, as relevant here, established a July 27, 2005, deadline for Trans-Spec's submission of expert reports, an August 24, 2005, deadline for Caterpillar's submission of expert reports, and an October 26, 2005, deadline for completing depositions of experts.

On May 20, 2005, the parties jointly moved to amend the scheduling order. The motion, as relevant here, asked the Court to enlarge the deadline for Trans-Spec's expert reports to September 27, 2005, for Caterpillar's expert reports to October 24, 2005, and for completion of depositions of experts to December 23, 2005. The Court granted the motion on June 1, 2005.

On August 12, 2005, Trans-Spec moved (with Caterpillar's assent) to amend the scheduling order a second time. The motion, as relevant here, asked the Court to enlarge the deadline for Trans-Spec's expert reports to October 27, 2005, for Caterpillar's expert reports to November 23, 2005, and for completion of depositions of experts to January 23, 2006. The Court granted the motion on August 16, 2005.

On October 7, 2005, Trans-Spec again moved (with Caterpillar's assent) to amend the scheduling order. The motion, as relevant here, asked the Court to enlarge the deadline for Trans-Spec's expert reports to December 27, 2005, for Caterpillar's expert reports to January 23, 2006, and for completion of depositions of experts to March 23, 2006. This time, the Court did not grant the motion in its entirety. On October 26, 2005, the Court issued its order stating:

> The motion is granted to the extent that it seeks a change to the scheduling order. However, the scheduling order will be changed only to this extent: the deadline for expert reports from the plaintiff shall be December 7, 2005; the deadline for expert reports from the defendant shall be January 13, 2005; expert discovery shall be concluded by February 17, 2006; dispositive motions shall be filed not later than March 17, 2006. The modification granted today is the third of such modifications in this case. The court will grant no further requests for amendments to the scheduling order.

Caterpillar supplied expert reports to Trans-Spec on January 13, 2006, as required by the thrice-amended scheduling order. *See* Emergency Motion of the Plaintiff to Compel Production

of Documents and to Extend Expert Discovery Period (hereinafter "Plaintiff's Motion") at 2. On

January 30, 2006, Trans-Spec first served notices of taking depositions of Caterpillar's experts.

Trans-Spec noticed depositions in Peoria, Illinois, for February 13, 14, 15 and 16, all agreed

dates[2]. Affidavit of John Grunert, ¶2. (This affidavit, a copy of which is attached to this

memorandum as Exhibit B, was exhibit 2 to Caterpillar's motion for sanctions that was heard at

the same time as Plaintiff's Motion and, as suggested by the language of the June 1 order itself,

treated by the Magistrate-Judge together with Plaintiff's Motion.)    Trans-Spec noticed the

deposition of a fifth expert for February 24, 2006, in Denver, Colorado.    Caterpillar did not

object to the minimally-late date specified for the fifth deposition in light of Trans-Spec's

counsel's stated unavailability to depose the fifth expert when he was available prior to the

deadline. The witnesses were at all times available for their depositions on the scheduled dates,

as were defense counsel. Affidavit of John Grunert, ¶¶13 and 14, and the e-mail attached as

Exhibit C hereto.

The deposition notices had appended to them schedules of documents which the

witnesses were asked to produce. The schedules varied in length from 61 to 76 separate requests.

*See* Exhibits A through E to Plaintiff's Motion. Each notice stated that the requested documents

were to be produced by the witness in Boston, Massachusetts, on February 9, 2006, rather than at

the time and place of the deposition. *Id.* Trans-Spec's counsel had not previously raised with

---

[2]  The Magistrate-Judge at one point during the hearing stated, "It seems as though a deposition was, and I don't
even know if I'm using the correct words, but tentatively scheduled and there was some – well the tentativeness
seems to be because of the discussion between Caterpillar and Trans-Spec." Hearing Transcript at 8 (lines 10-14).
Nothing in the record indicates the deposition scheduling was "tentative" and Trans-Spec made no such assertion in
its motion.  *See* Plaintiff's Motion at 3 ("Trans-Spec did not subpoena the individuals designated as experts by
Caterpillar but, instead, arranged for mutually convenient dates and times with the attorney for Caterpillar.")  The
only evidence is that the dates were chosen by agreement of the parties, they were embodied in formal notices of
taking deposition, and the witnesses and defense counsel were at all times ready to proceed on the dates scheduled.
*See* Exhibits B to E to Plaintiff's Motion, ¶¶2 and 14 ; e-mail of February
13, 2006 (this e-mail, Exhibit C to this Objection, was Exhibit 6 to the motion for sanctions heard at the same time
as Plaintiff's Motion).  Any belief the Magistrate-Judge may have held to the contrary was plainly wrong.

defense counsel the idea of Caterpillar's experts producing documents in advance of their depositions or anywhere other than at the place of the deposition, and defense counsel had not agreed that such production would be made. <u>Affidavit of John Grunert</u>, ¶5. On February 8, 2006, each witness served a timely response pursuant to Fed. R. Civ. P. 45(c)(2)(B) in which, *inter alia*, he objected to the time and place specified for production of the requested documents and stated that (subject to a few objections) they would be produced at the deposition. *See* Exhibit G to Plaintiff's Motion.

Late in the day on February 8, before they received the Rule 45(c)(2)(B) objections, Trans-Spec's counsel called defense counsel and raised the subject of the desired document production. Defense counsel reported that timely objections had been served to the specified date and place for production but that each expert would produce the requested documents at his deposition in accordance with law and customary practice. Trans-Spec's counsel said they wanted the documents in advance, would file an "emergency" motion to require production of the documents in advance and in Boston, and would not go forward with the depositions as scheduled unless their emergency motion was denied or the documents were produced in advance in Boston. <u>Affidavit of John Grunert</u>, ¶6; <u>Affidavit of Nancy M. Reimer</u>, ¶6 ("I also informed Attorney Grunert during this February 8, 2006 telephone conference that Trans-Spec would not go forward with the depositions unless it received the documents beforehand or the Court denied an Emergency Motion I would draft and file regarding this issue.") (this affidavit, of which a copy is Exhibit D to this memorandum, was attached to Trans-Spec's opposition to Caterpillar's motion for sanctions)

No motion was filed that day or the following morning. Defense counsel, therefore believing the depositions would go forward as scheduled, left for Peoria to begin preparing the

first witness for his deposition, as he had told Trans-Spec's counsel he would do.[3] <u>Affidavit of John Grunert</u>, ¶7. At 3:18 PM on February 9 the motion to which the present Objection pertains was filed. Though entitled an "emergency" motion, it was not captioned in accordance with LR 5.1(c) (pertaining to requests for action outside the ordinary course). The record contains no evidence of what, if any, effort Trans-Spec made to cause the Court to address the motion on an emergency basis and Caterpillar has no information on that subject. Caterpillar served and filed Caterpillar Inc.'s Response to Emergency Motion of the Plaintiff to Compel Production of Documents and to Extend Expert Discovery Period (hereinafter "Caterpillar's Opposition") at 10:18 AM on February 10, including in it a request for immediate hearing and indicating its counsel's availability for hearing any time that day by telephone. Caterpillar's Opposition specifically told Trans-Spec's counsel, if they did not already know, that Caterpillar's counsel was in Peoria anticipating that the depositions would go forward as scheduled. Caterpillar's Opposition at 6-7. There was no action on the motion.

On February 13, 2006, that day's scheduled witness (Mr. Richard Bowes) appeared at the time and place specified for his deposition, but Trans-Spec's counsel did not appear. <u>Affidavit of John Grunert</u>, ¶14. Caterpillar's counsel communicated with Trans-Spec's counsel confirming the availability of the February 14, 15, and 16 witnesses as well, but Trans-Spec's counsel stated the depositions would not be taken as scheduled. Exhibit C hereto.

Hearing on Trans-Spec's motion was held before the Magistrate-Judge on May 31, 2006. No evidence was presented to indicate the depositions could not readily have been taken as scheduled. The only "evidence" was that Trans-Spec's counsel, for tactical reasons, *did not wish* to take them as scheduled: she felt she would take them more effectively if she had an

---

[3] February 8 was a Wednesday. Defense counsel had to fly to Peoria on Thursday, February 9, in order to be available on Friday morning, February 10, to prepare the witness scheduled to be deposed beginning at 10:00 AM the following Monday, February 13. <u>Affidavit of John Grunert</u>, ¶4.

opportunity to spend a few days reviewing the experts' documents before deposing them. But no explanation was offered for why Trans-Spec's counsel had not timely raised those alleged concerns with defense counsel – why, for example, the subject was not raised when counsel for the parties were discussing dates for the depositions – so that they could have been addressed consistent with the scheduling order. <u>Affidavit of John Grunert</u>, ¶¶2 and 5. Nor was an explanation offered for why Trans-Spec's counsel never raised the issue with the Court, for example in the multiple requests for amendments to the scheduling order they filed. The Magistrate-Judge, however, did not inquire on those subjects. *See* Hearing Transcript, especially pages 7 to 14 and 29 to 37.

ARGUMENT

Fed. R. Civ. P. 16(b) directs that a scheduling order "shall not be modified except upon a showing of good cause." The Advisory Committee's Note to Rule 16(b) says, in pertinent part, that the order may be modified "on a showing of good cause, if it cannot reasonably be met despite the diligence of the party seeking the extension." Advisory Committee Note to the 1983 Amendment to Subdivision (b). The Court of Appeals for the First Circuit recently instructed, "Rule 16(b)'s 'good cause' standard emphasizes the diligence of the party seeking the amendment." <u>O'Connell</u> v. <u>Hyatt Hotels of Puerto Rico</u>, 357 F.3d 152, 155 (1st Cir. 2004). The Court of Appeals for the Ninth Circuit has explained:

> The district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." Fed.R.Civ.P. 16 advisory committee's notes (1983 amendment). Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although the existence and degree of prejudice to the party opposing the modification might supply additional reasons for denying a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end.

Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992) (most citations omitted). LR 16.1(G) provides that the "showing" of good cause is to be supported by affidavits, other evidentiary materials, or references to pertinent portions of the record. Rule 16(b) and the cases discussing it supply the legal standard the Court must apply in deciding Trans-Spec's motion. Failure to apply the correct legal standard is reversible error of law.

Trans-Spec presented the Court with no affidavits or other evidentiary material on which the Magistrate-Judge could have found that Trans-Spec exercised diligence in attempting to take the depositions of Caterpillar's experts within the time allowed by the thrice-amended scheduling order; nor did Trans-Spec direct the Magistrate-Judge to matter already in the record upon which such a finding could have been based. In fact there is no such evidence. The evidence is that Trans-Spec *chose*, for tactical reasons, not to take these depositions within the time allowed; Trans-Spec found the constraints imposed by the October 26 order inconvenient so it disregarded them, notwithstanding the unequivocal warning with which the Court concluded that order.

There were seven exhibits attached to Plaintiff's Motion, the first five of which consist solely of copies of the deposition notices themselves, the sixth of which consists of Trans-Spec's counsel's February 9 letter explaining her alleged tactical reasons for wanting to see the experts' documents in advance, and the last of which consists of copies of the experts' Rule 45(c)(2)(B) objections[4]. In the motion itself Trans-Spec directed the Court's attention to the October 26 order but otherwise to nothing in the record bearing on the issue of Trans-Spec's diligence. No further evidence and no further references to the record were made at the hearing. *See* Hearing Transcript[5]. In particular, Trans-Spec offered no explanation (and the Court requested none) for

---

[4]   Trans-Spec's counsel repeatedly referred to the aborted depositions as Rule 30(b)(6) depositions. The Court can see from the notices themselves that as a matter of law they were not Rule 30(b)(6) depositions.
[5]   There was a variety of evidential material before the Court in connection with other motions heard at the same time as this one. None of that material, except for items attached as exhibits to this memorandum, bore upon Trans-

why its counsel waited until January 30, 2006, to notify Caterpillar's counsel *for the first time ever* that they would want defense experts' documents produced in Boston a mere ten days later[6]; and it offered no explanation (and the Court requested none) for why it waited more than two weeks after receiving Caterpillar's experts' reports in mid-January before issuing notices of taking their depositions on dates just about as late within the discovery period as possible.

The Magistrate-Judge's order granting Trans-Spec's motion does not refer to the governing legal standard established by Rule 16(b) and O'Connell and does not contain any reference, explicit or implicit, to Trans-Spec's diligence or lack thereof. The hearing transcript is likewise devoid of such references.[7] *Compare* Quaker State Oil Refining, 884 F.2d at 1517 n. 5 ("The magistrate's order was cryptic. She made no findings and offered no hint as to her reasons for believing the late amendment to be justified. Under such circumstances, the order was divested of its usual force, and the district judge was entitled to discount it to some degree.") It is therefore wholly unclear whether the Magistrate-Judge applied an incorrect legal standard, made a factual finding (to wit, that Trans-Spec could not with reasonable diligence have met the amended deadline) that is unsupported by evidence, or both. What is unmistakably clear,

---

(cont'd.) Spec's diligence or lack of diligence in trying to take these depositions, and (as the Hearing Transcript demonstrates) Trans-Spec did not direct the Court's attention to any such evidence for that purpose. If the Court wishes to satisfy itself on this score, however, it may review the evidential materials filed in connection with the other motions heard that day, which were Caterpillar Inc.'s Motion for Sanctions, Caterpillar Inc.'s Motion for Summary Judgment on all Remaining Claims, Caterpillar Inc.'s Motion to Strike Certain Exhibits to Trans-Spec's Opposition to Motion for Summary Judgment, and the plaintiff's Motion to Amend the Complaint and to Alter or Amend this Court's Order Dated February 26, 2006.

[6] The rules of civil procedure contemplate that, ordinarily, a deponent who is asked to produce documents as well as provide testimony will produce the documents at the deposition itself. *See* Fed. R. Civ. P. 30(b)(5); Fed. R. Civ. P. 45(a)(2) and (c)(2)A).

[7] The closest thing to such a reference is at pages 8 to 9 of the hearing transcript, where the Magistrate-Judge stated that she did not need to know, and did not deem pertinent, the reasons for Trans-Spec's counsel's wish to have the documents in advance. Caterpillar agrees the reasons were not pertinent – what was pertinent was why Trans-Spec had not raised its wish in reasonably timely fashion with Caterpillar's counsel or with the Court, not whether its position if timely raised would have had any merit. The Magistrate-Judge's immediately ensuing remarks, however, make clear she was not thinking in terms of Trans-Spec's diligence *vel non* when she declined to hear about the reasons why Trans-Spec's counsel supposedly wanted the documents in advance. Those remarks instead suggest the Magistrate-Judge had confused issues related to Caterpillar's motion for sanctions with the issued dispositive of the Plaintiff's Motion to amend the scheduling order again.

however, is that she committed at least one of those two errors and that the June 1 order must therefore be reversed.

Scheduling orders become worse than meaningless if a party is permitted, as Trans-Spec has been, to disregard them unilaterally just to achieve its own tactical objectives. Caterpillar says "worse than meaningless" because when that occurs the scheduling order not only fails to serve its intended purpose – to assure orderly progress of the litigation – but parties who have in good faith relied on the integrity of the order are effectively penalized for that reliance. The expert witnesses whose depositions were scheduled for February 13, 14, 15 and 16 are all regular Caterpillar employees who were specially assigned because of their expertise to provide technical assistance in this case: they are not professional litigation consultants who earn a living testifying. They substantially inconvenienced themselves to assure that they could appear, adequately prepared, to testify on dates they had every reason to believe were firm dates. Caterpillar itself incurred very substantial expense in assuring that its witnesses and counsel would comply with the October 26 order. Notwithstanding the fact that Caterpillar and its experts did all that was necessary to fulfill *their* obligations to comply with the scheduling order and under the rules of civil procedure, the Magistrate-Judge has now entered an order that will impose on them – the ones who *complied* with the scheduling order, not the ones who violated it -- substantial new expense and inconvenience that is indistinguishable from a penalty.

If there were a substantial basis in evidence for concluding that Trans-Spec *reasonably could not have taken* these depositions as scheduled, then it might well be within the Court's discretion to deem the expense and inconvenience imposed on Caterpillar and its witnesses outweighed by Trans-Spec's need to conduct the discovery it failed to conduct earlier. But there is no basis in evidence for concluding that. Trans-Spec chose not to take these depositions

within the scheduling order deadline because it suited Trans-Spec's purpose not to take them within the deadline, and Trans-Spec was willing to bet this Court would let it off the hook again despite the unambiguous language with which the Court concluded its October 26, 2006, order. Granting Trans-Spec's motion on that record is error of law and clearly erroneous.

CONCLUSION

The Court should reconsider the Magistrate-Judge's order of June 1, 2006, reverse it, and deny in its entirety the Emergency Motion of the Plaintiff to Compel Production of Documents and to Extend Expert Discovery Period.

CATERPILLAR INC.,

By its attorneys,

CAMPBELL CAMPBELL EDWARDS & CONROY, P.C.

John A.K. Grunert (BBO: 213820)
One Constitution Plaza
Boston, MA  02129
(617) 241-3000

CERTIFICATE OF SERVICE

I, Christopher Parkerson, hereby certify that on June 9 , 2006, I served the within memorandum by causing a copy to be transmitted electronically to Christian Samito, Esquire, Donovan Hatem LLP, Two Seaport Lane, Boston, MA  02210.

Christopher Parkerson

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS


TRANS-SPEC TRUCK SERVICE INC., )
                    Plaintiff, )
                                )
-V-                             )    CIVIL DOCKET NO.
                                )    04-11836-RCL
CATERPILLAR INC.,               )
                    Defendant. )


MOTION HEARING
BEFORE THE HONORABLE JOYCE LONDON ALEXANDER
UNITED STATES MAGISTRATE JUDGE


May 31, 2006

Boston, Massachusetts

For the Plaintiff:

    NANCY M. REIMER, ESQ.
    CHRISTIAN G. SAMITO, ESQ.
    Donovan Hatem, LLP
    Two Seaport Lane
    8th Floor
    Boston, MA 02210
    617-406-4500


For the Defendant:

    JOHN A.K. GRUNERT, ESQ.
    CHRIS PARKERSON, ESQ.
    Campbell, Campbell, Edwards & Conroy, PC
    One Constitution Plaza
    Boston, MA 02129
    617-241-3000


Proceedings recorded by electronic sound recording,
transcript produced by Apex Reporting.

2

P R O C E E D I N G S

THE CLERK:  All rise.  United States District
Court for the District of Massachusetts is now in session,
the Honorable Joyce London Alexander presiding.  You may be
seated.  Today is May 31st, 2006 in the matter of Trans-Spec
Truck Services, Inc., versus Caterpillar, Inc., Civil Action
04-11836.  Will counsel please identify themselves for the
record?

MS. REIMER:  Good afternoon, your Honor.  My name
is Nancy Reimer and with me is Christian Samito.  We
represent the plaintiff, Trans-Spec.

THE COURT:  Good afternoon.

MR SAMITO:  Good afternoon, your Honor.

MR. GRUNERT:  My name is John Grunert,
representing Caterpillar.  With me is my associate, Chris
Parkerson.

THE COURT:  Good afternoon.

MR. PARKERSON:  Good afternoon.

THE COURT:  I have the motion to compel production
of documents and extend expert discovery and the motion for
sanctions.  I also have the motion to amend and motion for
summary judgement, is that correct?

MS. REIMER:  Yes, your Honor.

THE COURT:  Let me hear you on the motion to

3

1   amend.

2          MR. SAMITO:  Your Honor, in short, this is a case

3   where Caterpillar is saying, we made a promise but we didn't

4   promise to keep it.  Your Honor dismissed two counts of a

5   three count complaint.  Trans-Spec moved to amend based on

6   information that was obtained in the course of discovery.

7   Much of it after the argument to amend -- on the motion to

8   dismiss.  Character raised here is the issue that Rule 16

9   governs on this motion to amend.  In fact, this motion to

10  amend would be valid even under a Rule 16(e) manifest

11  injustice standard.  That's not what we have here.

12          It is in the Court's discretion, regardless of a

13  schedule (unintelligible), to grant a motion to amend.  More

14  importantly, however, there's a large body of case law in

15  the Supreme Court and the First Circuit that addresses what

16  happens when a motion to dismiss is granted.  And uniformly

17  what that case law states is that leave should be granted.

18          If you look at Fullman v. Davis, a case that

19  doesn't into Rule 15 or Rule 16, and which applies, it says

20  after dismissal we revert back to the Rule 15 standard.

21  Under the Gaffney case, 1973 in the First Circuit, the First

22  Circuit doesn't get into Rule 15 or 16. It says, there was a

23  dismissal.  There was a way to cure the defects that were

24  found in the dismissal, and leave should be granted.  And

25  there's a body of case law that's in the papers in the

1  motion to amend that gets into this issue.   That repeats

2  time and again, if you can cure deficiency or what is

3  thought to be deficiency and the case can go forward based

4  on based on the new complaint that leave should be granted.

5  It's almost automatic, based on the case law that's cited in

6  our brief.   The other argument that Caterpillar makes deals

7  with the merits.   This is a case where Trans-Spec purchased

8  22 truck engines from Caterpillar.

9         THE COURT:  But you were allowed a motion to amend

10  a year ago, is that not correct?

11         MR. SAMITO:  We were allowed to amend the

12  negligence count.

13         THE COURT:  And you're asserting that information

14  was not known since before you were allowed to amend in

15  2005?

16         MR. SAMITO:  Well your Honor, we've had a number

17  of discovery issues, and frankly it's been very difficult

18  getting a lot of documents from Caterpillar.   We did not

19  take the Rule 30(b)(6) deposition due to those document

20  discovery issues, and if you look at the record there's a

21  number of motions to compel and we have a number of

22  discovery issues --

23         THE COURT:  What, in particular, did you not know.

24  What, in particular, did you not know, that's just come into

25  your possession?

5

1          MR. SAMITO:  Well one of the big issues here is

2   according to the warranties that are in play, Caterpillar

3   warranted the engines and the flywheel housings in

4   particular.

5          THE COURT:  I know about that.  I've had this case

6   forever.

7          MR. SAMITO:  What the issue is, is that the

8   warranties say it's for defects in workmanship and

9   materials, and it turns out Caterpillar never checked to

10  find out if it was a defect in workmanship or materials.  In

11  fact, they started honoring the warranty and admitted that

12  it was a defect in workmanship and materials.  Then in 2003,

13  some gentleman in the Caterpillar Connecticut office,

14  without consulting any engineers, without consulting anyone

15  decided, we're going to stop making payments on this five

16  year warranty.  And that was discovered in the September

17  21st, 2005, after the motion to dismiss hearing.

18          There was a two year warranty document that we

19  didn't have until around the time of the motion to dismiss

20  hearing that bears on this. That two year warranty document

21  explicitly shows that Caterpillar treats the five

22  year/500,000 mile warranty as more than a repair or replace

23  warranty, as your Honor found on the motion to dismiss.  It

24  explicitly states -- under the two year warranty that we got

25  after the hearing, it shows that Caterpillar treats the 5

1    year/500,000 mile warranty as a straight warranty, not a

2    repair or replace and that bears directly on your Honor's

3    ruling in that motion to dismiss.  We didn't have that at

4    the time of the hearing.  These are two key facts why we're

5    in here, among many others.

6                 THE COURT:  Let me hear from the opposition.

7                 MR. GRUNERT:  The statement that Trans-Spec did

8    not have the warranty is false.

9                 They were given a copy of that warranty.  The

10   attorneys were given a copy of that warranty in

11   Caterpillar's automatic disclosure.  I had no reason to

12   think that that representation would be made to you or else

13   I would've brought the documents to show that.  However,

14   beyond that, Mr. Howard, himself, testified that he received

15   those warranties with the trucks, so that Mr. Howard had

16   those warranties before this case was commenced.

17                 Now the question you asked, of course, is the

18   pertinent one.  What specific information with reasonable

19   diligence, could Trans-Spec not have had before the deadline

20   for moving to amend complaint of their complaint, and they

21   have not identified anything other than a document, which in

22   fact they did have.  The legal standard in the First

23   Circuit, and I have cited the O'Connell v. Hyatt Hotels case

24   to you that there are many cases at the appellate level.

25   The legal standard, regardless of what it was in 1973, since

1  the amendments to Rule 16 are that a scheduling order

2  deadline may not be amended unless there is a showing of

3  good cause, and good cause means that with reasonable

4  diligence the deadline could not have been met.  There is no

5  reason the deadline could not have been met.  I went

6  through, at some length, in my opposition, all of the facts

7  that they now want to allege that obviously were known to

8  Mr. Howard and to his attorneys many years ago.

9          Judge Lindsay could not have been clearer in his

10  order in October, 2005 that there are going to be no more

11  amendments to this scheduling order.  And I suggest to you

12  that this motion is meritless on its face and it should be

13  summarily denied.  It is, in essence, just a attempt to get

14  your Honor and Judge Lindsay to reconsider the dismissal of

15  the warranty claims, which was an absolutely proper

16  dismissal.

17          Thank you, your Honor.

18          THE COURT:  Let me hear Trans-Spec's emergency

19  motion to compel.

20          MS. REIMER:  Your Honor, this deals with the

21  30(b)(6) deposition and information that we didn't have.  We

22  noticed, in accordance with the time schedule, we noticed

23  Trans-Spec's 30(b)(6) deposition.

24          In the notice, I intentionally set it up so that

25  approximately a week before the deposition, Trans-Spec would

1 produce to us those documents upon which its experts, and I

2 use that word very loosely because Trans-Spec identified a

3 number of experts who --

4      THE COURT: Let me just narrow this for you

5 because this motion goes back and forth. It's one of the

6 more fascinating motions I've ever read in my life, motions

7 and oppositions. And I'll tell you the one reason, because

8 I've never had a motion where someone has asked for

9 information about hotels and air travel to prove a point.

10      It seems as though a deposition was, and I don't

11 even know if I'm using the correct words, but tentatively

12 scheduled and there was some -- well the tentativeness seems

13 to be because of the discussion between Caterpillar and

14 Trans-Spec. Are we having a deposition? You need to have

15 the documents in which to conduct the deposition. Who will

16 come, is this being canceled, we won't come if you're not

17 going to have the documents to us.

18      MS. REIMER: It certainly was straightforward than

19 that even, your Honor. Under the notice, the notice called

20 for the documents to be produced before the deposition. The

21 reason, and the very specific reason, is because these

22 depositions in the 30(b)(6) dealt with --

23      THE COURT: I don't need the reason. That's not

24 pertinent to what --

25      MS. REIMER: Well --

1          THE COURT:  It's not pertinent to the Court's

2  inquiry.  The Court must make the decision.

3          So, the reason you want the documents right now is

4  not to me a major issue.  The issue is, you scheduled the

5  deposition, then what happened on the other side?

6          MS. REIMER:  In a telephone conversation on

7  February 8th, two days before which the documents were to be

8  produced, on a completely unrelated subject matter, I asked

9  Mr. Grunert if he was going to -- when he was going to be

10 producing the documents.  He made it quite clear to me that

11 he was not going to produce the documents and they would be

12 available at the deposition.  I responded to Mr. Grunert and

13 said, there was a reason why we wanted the documents

14 beforehand.  It's because they dealt with technical

15 engineering issues.  I'm not an engineer, your Honor, I'm an

16 attorney.

17         THE COURT:  No, that's fine.  I understand that.

18         MS. REIMER:  So then I sent -- Mr. Grunert refused

19 to produce the documents.  I wrote him a letter confirming

20 the conversation and I said, if you refuse to produce the

21 documents before the deposition, we would not go forward.

22 The very next day I filed this emergency motion to compel,

23 asking the Court to require Caterpillar to produce the

24 documents before the deposition and then to extend the date

25 because we were running up against the discovery deadline

10

1    for the expert depositions.  To extend the date so that we

2    could have the documents, have our expert engineer review

3    them before the deposition and then take the deposition in

4    an orderly fashion and without, frankly, wasting the

5    witness' time at the deposition trying to go through the

6    documents and our time in the interest of economy and

7    efficiency to make this deposition go smoothly, given the

8    fact --

9            THE COURT:  One second.  But they told you -- you

10   filed the motion.  Before you filed that motion Caterpillar

11   said to you, we're not going to go, is that correct?

12           MS. REIMER:  They said they were not --

13           THE COURT:  They pulled out?

14           MS. REIMER:  That's right.

15           THE COURT:  That's what they said?

16           MS. REIMER:  That's right.

17           THE COURT:  So then why did you not say, "Okay.

18   The deposition is off."  That's what you said on the phone.

19           MS. REIMER:  We did and I said it in my letter and

20   I said it in email correspondence.  Frankly, I do not

21   understand Caterpillar's misunderstanding.  What they're

22   trying to do here is trying to misdirect the Court for their

23   own abuse of discovery and trying to table our loss and say,

24   because I didn't get on a plane during the day of a

25   blizzard, in which Logan Airport was closed --

1    THE COURT:  Now let me ask Caterpillar.

2  Caterpillar, what makes you think, after counsel had told

3  you, "We're not going forward.", that you shouldn't believe

4  them?

5    MR. GRUNERT:  That's not what they told me, your

6  Honor, and if I may just refer you to the documentation.

7  And the first part of the documentation I'd like to refer

8  you to is Ms. Reimer's affidavit supplied in opposition to

9  my motion.

10    Paragraph 6, she recounts the conversation on

11  February 8th.  She says, "I also informed Attorney Grunert,

12  during this February 8th, 2006 telephone conference, that

13  Trans-Spec would not go forward with the depositions unless

14  it received the documents beforehand or the Court denies an

15  emergency motion.

16    THE COURT:  And the Court didn't.

17    MR. GRUNERT:  That's right.

18    THE COURT:  Right.  But counsel, to me this is all

19  a matter of semantics, we're all grown.  This is a matter of

20  semantics -- I'm not going forward with the deposition

21  unless I get the documents, I'm not showing.

22    MR. GRUNERT:  Your Honor --

23    THE COURT:  So the motion for sanction is denied.

24  You can appeal it if you wish.

25    MR. GRUNERT:  Your Honor, may I be heard further?

12

1        THE COURT:  You may be heard for about two minutes

2   because the Court has decided.  And I've looked at all of

3   these matters and I just -- I don't even see your point.

4        MR. GRUNERT:  What I was told was that the

5   depositions would not go forward unless the Court denied an

6   emergency motion.

7        THE COURT:  No, she didn't say that on the phone.

8        MR. GRUNERT:  She said that on the phone and I

9   recounted that in my affidavit.  She said it in her own

10  affidavit and they said it in their opposing papers

11  themselves.

12       THE COURT:  Unless they got the documents or the

13  Court denied the emergency motion, but she wasn't given the

14  documents and you knew it.  So you knew --

15       MR. GRUNERT:  I did not know, however, that the

16  Court was not going to deny their motion.  In fact, my

17  expectation was that that motion was going to be promptly

18  filed and that steps would be taken to have it heard and

19  decided.  And if you look at the opposition we filed,

20  Mr. Parkerson specifically said he was available for a

21  hearing on that motion by telephone.

22       I did not have the luxury of waiting to find out

23  whether that motion was going to be denied and the

24  depositions were going to go forward as scheduled.  I asked,

25  from the airport, I asked Trans-Spec's lawyers repeatedly,

13

1    just tell me that regardless of what happens with your

2    emergency motions, these depositions are not going forward

3    as scheduled and even though my bags are already on the

4    plane, I'll come home, I won't go to Peoria.  They would not

5    tell me that.  And the last e-mail that they sent, and you

6    have it, it's an Exhibit filed to my motion, Mr. Samito

7    said, "No, we're not canceling the depositions regardless of

8    what the Court does on the motion."  So this was a

9    conditional statement that, depending on what happened with

10   that motion, either they were going forward or they were

11   not.  And if they had decided to go forward and I hadn't

12   shown up, then they'd be looking for sanctions.

13           THE COURT:  But it would seem to the Court that if

14   there is a motion before the Court and step one, counsel

15   says, "My client will not go forward with the deposition

16   unless the documents are produced prior."  Two, emergency

17   motion filed with this Court, this Court does not act.  One

18   would presume, given the prior statement, that that

19   deposition is not going forward.

20           MR. GRUNERT:  Your Honor --

21           THE COURT:  Counsel would have called the Court

22   and the Court would've said it's on the calendar, it may be

23   rescheduled, but the hearing will take place.  Obviously,

24   there's an issue here and so --

25           MR. GRUNERT:  Your Honor, the problem is that I

1  looked for exactly the unequivocal statement that you have

2  just suggested and I received in response a statement saying

3  that whether we were going forward or not depended on what

4  the Court did with this emergency motion.  I had to go to

5  Peoria.  I had to get a flight there to prepare the witness

6  and to have the witness' documents available.  I couldn't

7  wait.  These depositions were not tentatively scheduled,

8  they had been noticed for specific dates that were agreed

9  upon.  And all I wanted was an unequivocal statement, one

10  way or the other, are we going forward and they would not

11  give it to me.

12          THE COURT:  It seems to the Court that the two

13  parties that counsel have or for counsel have more additions

14  than the parties themselves.

15          What's the next issue, the motion for a summary

16  judgement.  You may be heard.

17          MR. GRUNERT:  Your Honor, there was only one claim

18  remaining and that's the negligence claim.  And there are

19  two separate grounds why that claim fails as a matter of

20  law.

21          One ground disposes of the entire claim.

22          The second ground would leave a small amount of

23  that claim pending, so the second ground is in the nature of

24  a motion for partial summary judgement.  The document -- and

25  by the way, when I think of it, attached to my motion for

1   summary judgement are the warranties that Caterpillar gave.

2   These are the warranties, and I attached the testimony from

3   Mr. Howard saying that he received them.   Those are the very

4   warranties you were told on the motion to amend that the

5   plaintiff didn't have until recently, by the way.

6        So the warranty that was given contains in bold

7   faced print, capitalized letters, an exclusion that says

8   that Caterpillar is not liable for any negligence in

9   connection with these engines.   That exclusion, under

10  General Laws Chapter 220110, is conspicuous as a matter of

11  law and is enforceable.   And Massachusetts law could not be

12  clearer that exclusions of negligence liability, at least

13  between businessmen, are not only enforceable but they're

14  favored.   The Sharon case, <u>Sharon v. City of Newton</u> says

15  they're favored because the law encourages the consensual

16  allocation of risk between business people.

17       There's no dispute that that document is the

18  warranty.   There's no dispute that it was received.   The

19  legal effect of that language is clear.   Under the <u>Sharon v.</u>

20  <u>Newton</u> case, once that exclusion has been presented to you,

21  the burden is on the plaintiff to come forward with specific

22  evidence to show you that there is some reason why that

23  release should not be given effect.   I have gone through, at

24  considerable length in my required brief, the various

25  grounds that Trans-Spec has advanced.   But I think I need to

1   say --

2               THE COURT:  How do you respond to Trans-Spec's

3   asseveration that a product has an apparent defect the buyer

4   receives less than what the contract calls for.

5               MR. GRUNERT:  The --

6               THE COURT:  And therefore, the remedy fails of its

7   specific purpose, of its essential purpose?

8               MR. GRUNERT:  The section of the uniform

9   commercial code, I think it's 20219.  I could be wrong, it

10  might be 2207, but the section of the uniform commercial

11  code that pertains to failure of the essential purpose says

12  that if a particular provision in a contract, if a

13  limitation of remedies provision fails of its essential

14  purpose, then other UCC remedies are available.  Negligence

15  is not a UCC remedy.  There are no UCC remedies in this case

16  because that claim is barred by the statute of limitations.

17  So the failure of essential purpose, and I cited the case

18  authority to you your Honor, the <u>Canal Electric v.</u>

19  <u>Westinghouse</u> case is SJC decision that's right on point.

20  There's also a decision out of the Ninth Circuit, <u>Tokyo</u>

21  <u>Marine v. Mcdonnell Douglas</u>, I believe, it's again cited in

22  my brief, where there's exactly this issue.  There was a

23  negligence claim and the defense was there's an exclusion

24  about negligence claims and the plaintiff said, well the

25  contract failed of its essential purpose.  And that, like

 1    this one, was a case where the warranty claims were barred

 2    by the statute of limitations.    The Ninth Circuit says, no,

 3    no, no, no.    Failure of essential purposes means you have

 4    UCC remedies.    Your UCC remedies failed under the statute of

 5    limitations.    You've got no -- that failure of essential

 6    purpose has no effect on an exclusion of negligence.

 7                THE COURT:    What about the economic loss doctrine

 8    being an all or nothing doctrine?

 9                MR. GRUNERT:    Again, that's just not the law.    And

10    I think on that subject, the most illustrative case is

11    probably the <u>Icelandic Coast Guard v. United Technologies</u>

12    case that I cited to you.    Although, there's another case

13    that I didn't cite to you, but I'd like to give you the cite

14    now, it's Northern States Power Company v. International

15    Telephone and Telegraph.    It's at 550 F.Supp. 108 out of the

16    District of Minnesota, which is also illustrative.

17                What these cases show and really, the <u>Icelandic</u>

18    <u>Coast Guard</u> case is very good, because what happened in that

19    case is the defendant had sold a helicopter to the Coast

20    Guard.    The helicopter crashed as a result of a product

21    defect.    And as a result of the crash, the crew members were

22    killed, and the Coast Guard had to expend a lot of money on

23    finding and retrieving their bodies.    The Coast Guard also

24    had to expend a lot of money finding the wreckage of the

25    helicopter, with lost use of the helicopter, had to replace

1  the helicopter.  And so, the Coast Guard sued United

2  Technologies and United Technologies said, well your claim

3  is barred by the economic loss doctrine.

4         And what the District Court in Connecticut said

5  is, well you've got various kinds of losses here.  To the

6  extent that this crash caused injury to the crew members,

7  that's an injury to persons or other property.  And so, you,

8  the Coast Guard can recover what you expended in finding and

9  retrieving the crew members bodies.

10         As to the other categories of damages, the expense

11  of finding the wreckage of the helicopter, the lost time,

12  lost use of the helicopter, the cost of replacing the

13  helicopter, those are all economic losses caused just by a

14  defect in the product itself.  Those you cannot recover.

15         So it says, summary judgement, as to the claims

16  for those elements.  No summary judgement for the claims for

17  expenses searching for the crew members body.  And if you

18  review the <u>Jeldwin</u> case, if you review the other cases that

19  I cited to you, you will see that that consistently is how

20  the economic loss doctrine is applied.

21         The economic loss doctrine permits recovery of

22  damages proximately caused by damage to other property.

23  That is to say, property other than the product itself, or

24  to person.  It bars elements of damage that are attributable

25  just to the defect in the product itself, to the loss of use

1    of the product through reduction in value.  It's not an all

2    or nothing matter in that case that Trans-Spec cites for

3    that proposition doesn't stand for it.  I talked to you

4    about that in the brief.  I don't think I need to recount it

5    here, but that that statement was just a vague passing

6    reference and a general history and it was followed by a

7    number of citations to other authority, and if you read the

8    other authority, you see that it says exactly what I just

9    explained to you.

10             The economic loss doctrine requires

11   differentiation between different types of damages.  And the

12   reason it does that is that if there are tort type damages

13   that have been caused, the courts don't want to deny

14   recovery but the problem of tort law swallowing up contract

15   law remains.  And so, the courts are very tough in saying

16   that you cannot recover economic losses, economic type

17   damages unless they are caused by damage to other property,

18   not to the product itself.

19             THE COURT:  Thank you.

20             MR. GRUNERT:  Thank you, your Honor.

21             THE COURT:  Trans-Spec, talk to the Court about

22   the warning disclaimer not being enforceable because of its

23   failure of its essential purpose.

24             MR. SAMITO:  Well your Honor, I think _Andover Air_

25   case is very instructive, in that Judge Zobel -- the

1    plaintiff, Andover -- if Andover proves that the warranty

2    failed in its essential purpose, the exclusion of other

3    damages becomes inoperative and Andover may seek

4    consequential and incidental damages as allowed by the code.

5         THE COURT:  But Caterpillar has said that

6    negligence is not a UCC remedy and therefore, you can't even

7    invoke that.

8         MR. SAMITO:  But where the warranty fails of its

9    essential purpose, your Honor, all bets are off.  You can't

10    just claim negligence, have everything else fall to the

11    wayside and allow the breaching party to hold onto that

12    disclaimer that benefits it.  They're not getting the

13    benefit.  There's a difference, and there's other cases.  I

14    mean, the Hadar case from the Southern District of New York

15    bears on this.  In other cases that are cited --

16         THE COURT:  But Caterpillar says that it doesn't

17    fail -- in Court, the Court -- if the Court is wrong, did

18    you not say that Caterpillar -- did Caterpillar not say that

19    it doesn't fail of its essential purpose, is the Court

20    correct?

21         MR. GRUNERT:  I don't concede that --

22         THE COURT:  Negligence is not a UCC remedy.

23    That's what Trans-Spec is invoking when it says that it

24    fails of its essential purpose?

25         MR. GRUNERT:  I don't believe --

1          THE COURT:  That the remedy fails?

2          MR. GRUNERT:  I don't believe that --

3          THE COURT:  Okay.

4          MR. GRUNERT:  For purposes of --

5          THE COURT:  Let me ask you and then have you

6   respond.  Let me ask Caterpillar the following question:

7   Trans-Spec says that the disclaimer is unenforceable because

8   it fails of its essential purpose.  What do you say to that?

9          MR. GRUNERT:  I say number one, that the -- what

10  Trans-Spec claims failed of its essential purpose is the

11  warranty that Caterpillar --

12         THE COURT:  So you're saying they're saying the

13  warranty failed of its specific purpose?

14         MR. GRUNERT:  That's right.

15         THE COURT:  That has nothing to do with this

16  negligence claim.

17         MR. GRUNERT:  That's correct.  And if there had

18  been a timely action brought to breach of warranty and if

19  Trans-Spec --

20         THE COURT:  We're dealing with the negligence.

21         MR. GRUNERT:  Right, right.

22         THE COURT:  Stop saying anything about the

23  warranty.  They're saying this disclaimer is unenforceable

24  because it fails of its essential purpose.  You say what

25  again, and don't bring in the warranty?

1          MR. GRUNERT:  The essential purpose of the

2    disclaimer is obviously to disclaim liability for

3    negligence.  The argument that the warranty failed of its

4    essential purpose as a matter of law means only that if that

5    were found to be true, they would have other UCC remedies

6    available to them.  In other words, the limitation to a

7    repair or replacement of defective parts would fall out of

8    the case and Trans-Spec could sue for contract damages.  The

9    warranty claim -- all contract damages are barred by the

10   statute of limitations.

11         THE COURT:  But this is negligence.

12         MR. GRUNERT:  That's right.  Negligence is not a

13   UCC remedy.  So the failure of essential purpose law is

14   simply irrelevant to this motion.  And I cited --

15         THE COURT:  That's what I wanted to hear you say.

16   Thank you.

17         MR. SAMITO:  Well your Honor, with all due respect

18   here, Caterpillar, the cases that they cite involve

19   situations including the Canal case, where the defendant

20   tried to perform under the contract.  Here, Caterpillar

21   breached the contract, breached the warranty in 2001,

22   breached it again in 2003 all together, and that's the

23   difference.

24         It's one thing for the Court to look at a

25   situation where Caterpillar was performing under the

1  warranty and then it may be a different story in terms of

2  the exclusion of negligence, but that's not what happened

3  here.  And the cases that Caterpillar cites don't apply for

4  that reason.

5       This is a situation where Caterpillar left

6  Trans-Spec holding an open bag.  Said we're not going to

7  honor any other provision in these two warranty documents

8  except for the disclaimer of negligence.  That, we're going

9  to cite that.  We'll honor that because it benefits us.  And

10  that's the situation.

11       Time and again, the cases cited from <u>Boston</u>

12  <u>Helicopter</u> to <u>Hadar</u>, the rejection of negligence

13  disclaimers, <u>Somerset Savings</u>, <u>Omni Flying</u>, <u>Andover</u>, again

14  and again said, that you can't have disclaimer of negligence

15  where it's unconscionable or where it failed of its

16  essential purpose.  It's integrated into a document that

17  completely fails.  The Court will enforce that one

18  provision.  And again, the <u>Andover Air</u> case provides

19  excellent guidance on that point.  Judge Zobel talks about

20  that unconscionability of the limited remedy and where it

21  fails of its essential purpose.

22       THE COURT:  So that Caterpillar's whole issue

23  about the code is really irrelevant?

24       MR. SAMITO:  Yes, your Honor.

25       THE COURT:  Okay.  Let me hear you on the economic

1    loss.

2         MR. SAMITO:  Again, your Honor, the cases that

3    Caterpillar cites involve situations where the loss is

4    purely economic.  If you look at the <u>Binding Berish</u> case, I

5    remember from the last hearing that your Honor knows the

6    <u>Berish</u> case quite well, referred to it as well as other

7    cases that are cited here.  The Massachusetts Supreme

8    Judicial Court, not Connecticut, we'll dealing with

9    Massachusetts law, <u>Berish</u> is binding.  The SJC in <u>Berish</u>

10   said, where you have damage, both to the actual property but

11   then to elements outside of the property, the economic loss

12   doctrine doesn't apply.  The <u>Damon</u> court, in 1998, does cite

13   three prior Wisconsin cases and then it comes down with its

14   statement, the economic loss doctrine does not bar

15   commercial purchasers claims based on personal injury or

16   damage to property other than the product, or economic loss

17   claims that are alleged in combination with non-economic

18   losses.

19         Now what Caterpillar does here, is it files a

20   motion for summary judgement, complains throughout that

21   Trans-Spec doesn't provide adequate proof of the damages.

22   Doesn't complete its Rule 30(b)(6) deposition of Trans-Spec,

23   and then it says, well there's not enough proof in the

24   record and the proof that is there is not credible.  And

25   issues of credibility aren't for the Court to decide at the

25

1    summary of judgement stage, they're for the jury to decide.

2         And the issues in terms of whether the damage was

3    economic or not economic going forward, by Caterpillar's own

4    notion, they concede that the damage to the truck's

5    clutches, the drive trains, the transmissions, damage to

6    property of Trans-Spec in terms of the actual physical

7    ground, the oil leaks on other peoples, other customer's

8    property.  That's all issues that show the economic loss

9    doctrine doesn't apply here.  It's by the <u>Binding Berish</u>

10   case.  There was damage to property outside of the engines

11   themselves.  And if the damage was just confined to the

12   engines, that may be one story, but that isn't what was the

13   case here in the deposition testimony.  We have affidavits

14   that point to the fact that there was damage to other

15   property.

16        The fact that Caterpillar doesn't like that

17   evidence and doesn't like the affidavits is not neither here

18   nor there.  I note that Caterpillar moves to strike four out

19   of five documents.  Four of the documents are documents that

20   they actually append to their own motion for summary

21   judgement.  And now they're saying, oh we should exclude

22   that.  They want to exclude any evidence that there was

23   damage to other property.

24        There's also issues with misrepresentations.

25   Negligent breach of contract, those are two issues of

1   negligence that are encompassed in the negligence count that

2   are carved out of the economic loss doctrine, and I need not

3   spend the time of the Court, indeed the cases are cited in

4   our opposition papers.  But negligent misrepresentation, and

5   we (unintelligible) the history with documents, with

6   Caterpillar testimony, with affidavits, and the negligent

7   breach of the warranty documents -- the negligent breach of

8   contract --

9           THE COURT:  One of the arguments you make is that

10  the Court twice rejected Caterpillar's contention, but the

11  Court did not because it said at that stage of the

12  proceedings it was not prepared to render a decision on that

13  issue.  But the Court didn't reject Caterpillar's assertions

14  outright.  And so now Caterpillar brings them and you're

15  saying, based on the cases that have been previously cited,

16  that the Court should now reject Caterpillar's assertions

17  outright?

18          MR. SAMITO:  I don't remember if I cited all the

19  cases, but the <u>Berish v. Bernstein</u> in 2002, the <u>Aldridge v.</u>

20  <u>ADD</u>, which is SJC 2002, several other cases that are given

21  are in Caterpillar's own memorandum on page 6 are all

22  reasons why the Court should deny as to the economic loss

23  argument because there was damage to property outside of the

24  engines themselves.  And as a result of that, the negligence

25  claim on that ground goes forward.

1    THE COURT:  Counsel, what about the injury or

2   damage to other than the design or manufacture.

3    MR. GRUNERT:  I told you when I started that, as

4   far as the economic loss doctrine is concerned, it's a

5   motion for partial summary judgement.

6    I have seen records indicating that, at least,

7   sometimes when a flywheel housing failed there would be

8   damage to a clutch or a starter motor, and those would have

9   had to have been replaced.  The cost of replacing those

10   sorts of incidental parts is a tiny fraction of the damages

11   sought in this case.  But I was explicit that that extent,

12   to the extent that recovery is sought for damage, the cost

13   of replacing damaged truck parts, that I don't seek summary

14   judgement under the economic loss doctrine, although I do

15   under the contractual exclusion.

16    Beyond that, I just have two comments.  Number

17   one, you will not find anything in my brief that talks about

18   credibility.  I'll be perfectly content if your Honor simply

19   looks at the evidence attached both to my motion and to the

20   opposition, and if you'll see what the evidence shows as

21   distinct from what the attorneys say in their brief.

22    And the second thing is that the Berish case has

23   nothing to do with this issue.  The Berish case does not

24   address the subject of whether when there are both economic

25   losses and non-economic losses, whether the plaintiff is

1  limited to recovering only losses that are proximately

2  caused by damage to other property, and that is the issue

3  that's addressed here and that is the issue that is

4  addressed in all of the cases that I've cited you on the

5  economic loss doctrine, your Honor.

6          THE COURT:  Well the Berish case says that the

7  economic loss doctrine precludes recovery for negligence in

8  the design or manufacturer of the product if the negligence

9  causes no injury other than to the product itself.  That's

10 what it says.

11         MR. GRUNERT:  Correct.

12         THE COURT:  And so that if portions of the

13 decision sort of argues in favor of Trans-Spec, do you

14 disagree with that?

15         MR. GRUNERT:  Well yes.  I mean, as you know --

16         THE COURT:  I should've known that.

17         MR. GRUNERT:  As you know, courts decide the

18 issues that are presented to them.  Nothing in the Berish

19 case indicates that the Court was asked to decide whether,

20 in the presence both of damage to both other property and

21 what would typically be just economic loss, damage to the

22 product itself, they weren't asked to decide whether you can

23 collect for the damage caused to other property but not for

24 the product itself.  That issue wasn't before them, it is

25 not addressed.

29

1       What that Court basically said is, well the

2  product in this instance is the whole house, it's not just

3  the windows.  And you know, we accept that.  That, I guess,

4  is the law of Massachusetts.  But it didn't address the

5  issue that's before you now and why would they go out on a

6  limb to address that issue, but the issue has been

7  addressed, it was addressed in the <u>Jeldwin</u> case and it was

8  addressed in the other cases that I've cited to you.  And I

9  suggest to you that those cases make perfect analytical

10  sense.

11       And Trans-Spec has not cited you to any authority

12  to the contrary if you actually read the cases that they've

13  cited you.  So that's really all I have to say about the

14  Berish case.  You've characterized that when we were before

15  you once before as a, I'm not sure of the words you used,

16  but it indicated that it is sort of a difficult case to

17  understand how they got to where they were going.

18       THE COURT:  But they got there.

19       MR. GRUNERT:  They got there.  They got to say

20  what the law is, but the issue that is before you is not one

21  that they addressed or decided.  Thank you, your Honor.

22       THE COURT:  Now before you leave and I take all of

23  this under advisement to send to you, when is the deposition

24  going to take place and when are these documents going to be

25  produced?  Is it sometime in June?

30

1          MS. REIMER:  There is no date scheduled.  I'm

2    reluctant to take the deposition without reviewing the

3    documents because --

4          THE COURT:  Are the documents ready?

5          MR. GRUNERT:  Well your Honor, I object to having

6    the depositions taken or having any --

7          THE COURT:  Right.  So they'll be taken.  Will

8    they be ready in June?  Will the documents be ready in June?

9          MR. GRUNERT:  I --

10         THE COURT:  I've just said we're going to take

11   these depositions, we're going to produce these documents

12   and end this case.  The next person you should see will be

13   Judge Lindsay, it should be going to trial.  Of course, what

14   you should be doing, this case should've been settled a long

15   time ago.  But notwithstanding that fact, let's get a date

16   within the next two weeks.  Can we agree on a date?

17         MS. REIMER:  Your Honor, I actually have a trial

18   scheduled in Suffolk for June 12th.  I presume it's going

19   forward with Suffolk --

20         THE COURT:  That's June 12th, we're talking --

21         MS. REIMER:  That's in two weeks.

22         THE COURT:  We're talking about -- that's two days

23   before the Court is talking about.  I'm talking about

24   between now and June 12th, can the documents be produced and

25   can the deposition -- and can we agree on a date?

1    Listen, I really think counsel are nice, but I
2  don't want to see you again.  So I really would like to get
3  this done today.  I'd like to find out when you're going to
4  produce the documents and when this deposition is taking
5  place.
6    MR. GRUNERT:  Your Honor, there is no way that I
7  could appear for depositions, and I don't even know what the
8  schedule of the witnesses are.
9    THE COURT:  Well no, you're going to tell the
10  witnesses because otherwise they're going to be in big
11  trouble.
12    So you're going to tell the witnesses that the
13  Judge has ordered that these depositions will take place on
14  or before.  That's what you will tell them.  So I would say
15  if it could be done between now and -- today is the 31st of
16  May.  So if they could be done between now and the 9th, that
17  would probably be good because I think the last week in June
18  your clients will tell you they're going on vacation because
19  we're going into July 4th.  I know that, it happens every
20  time.  So it would be wise -- why don't we do this.  I'm
21  going to leave the bench, you're going to call your clients
22  and you're going to give each other some dates to get this
23  done.  Let's go off.
24    (A brief recess was taken)
25    THE COURT:  Court is back in session.  You may be

32

1   seated.

2        THE COURT:  I'm informed that you were unable to

3   get -- Caterpillar, you weren't able to contact the experts?

4        MR. GRUNERT:  Your Honor, the people that I

5   attempted to contact are the two Caterpillar coordinators

6   who have the contact information for these experts.  I also

7   tried to contact one of the experts themselves.  I was

8   unable to reach any of those people.  That's the status of

9   where things stand.

10       THE COURT:  Okay.  Well, on or before June 30th.

11       MR. GRUNERT:  Your Honor, I'll just point out that

12   in the papers that Trans-Spec filed, their opposition to my

13   motions for sanctions, they do state that if they get these

14   documents they do not need to take the deposition.

15       THE COURT:  Is that correct?

16       MS. REIMER:  What we stated is that we may not

17   need to take the depositions --

18       THE COURT:  No, I need to know whether you're

19   going to take them or not.  I mean, we're at the 11th hour

20   here.

21       MS. REIMER:  If the documents answer our questions

22   with respect to the reports that were filed, we probably

23   will not take the depositions.  If there are questions that

24   arise because of the documents that we would need to ask,

25   then we'd need to take the depositions.

33

1      THE COURT:  Oh no, no, you have a one shot deal

2   here.

3      You two need to talk and make up your minds

4   whether you're going to take these depositions if you get

5   the documents.  If you get the document, you will not need

6   to take the depositions or you're going to take the

7   depositions, or you're going to tell counsel -- if counsel

8   is asking his experts to take time out of what is a vacation

9   time, and he's asking them to take time, then you've got to

10   let them know.

11      MS. REIMER:  I'm not disputing with you --

12      THE COURT:  No, we're way past discovery.  I need

13   to know the answer to that now.  You two need to talk?

14      MS. REIMER:  All right.  Just one second.

15      MR. GRUNERT:  Your Honor, could I direct your

16   attention to the last sentence of the opposition of the

17   plaintiff to Caterpillar, in its motion to sanction

18   immediately above the word "Conclusion" where they say

19   "Trans-Spec reiterates that if Caterpillar produces complete

20   copies of all the documents requested on Schedule A to the

21   notice of the deposition, Trans-Spec does not need to depose

22   Caterpillar's --

23      THE COURT:  Well you should've given them those

24   documents before you came in here today and that would've

25   facilitated this matter.

34

1    MR. GRUNERT:  I can tell you that I have given

2  them many of them already.

3    THE COURT:  But you haven't given them all of

4  them, and that's a problem.  If counsel -- I tell you, I

5  can't imagine, and I don't have this for trial so I can say

6  this.  I can't imagine that the counsel in this case, and

7  this is on the record, haven't spent more money arguing

8  these motions than probably the damages in this case of the

9  clients.  This is ridiculous.

10    Now do you wish to change this around a bit?

11    MS. REIMER:  Your Honor, if we receive the

12  documents, we will not take the depositions.

13    THE COURT:  When can you get them the documents?

14  That's the first question.  You say you've given them most

15  of them, when can you give them all the documents?

16    MR. GRUNERT:  Your Honor, that's what I tried to

17  find out.  I can tell you -- let me tell you --

18    THE COURT:  Well you were on the case, you're the

19  lawyer.

20    MR. GRUNERT:  Your Honor, lawyers --

21    THE COURT:  You said you prepared -- you were in

22  the process of preparing the witnesses for testimony based

23  on those documents, so they must be at hand.

24    MR. GRUNERT:  Your Honor, a lot of these documents

25  were in electronic form.  The witnesses were going to be

1   prepared to present them electronically at the deposition.

2          THE COURT:  That ought to make it faster.

3          MR. GRUNERT:  Well it would, but there is an issue

4   with one of them.  The software is proprietary software and

5   so, there's been a lot of work going on trying to translate

6   those documents into a form that can be readable.

7          THE COURT:  Okay.  I'll issue an order today.

8          Do you think they can get it Friday?  Do you think

9   they can get it by Monday?

10         MR. GRUNERT:  I think, your Honor, that June 30th

11  was --

12         THE COURT:  No, that's too long for the documents

13  because if you don't give them all the documents within two

14  weeks, then we have two weeks in which to notice

15  depositions.

16         MS. REIMER:  Your Honor, there's one other --

17         THE COURT:  So by June 14th it is hereby ordered

18  that all of the documents be produced.  Then you may not

19  need depositions.

20         MR. GRUNERT:  May I raise one other issue?

21         I did object, or the witnesses did object to these

22  notices to the extent, for example, that they seek

23  attorney/client privilege --

24         THE COURT:  Give them a list.  You know how to do

25  that.  That is so basic.

36

1        MR. GRUNERT:  So long as that's clear.

2        THE COURT:  Give them the documents.  Thank you.

3        Yes?

4        MS. REIMER:  Your Honor, with respect to the

5   privilege issue.  If these individuals are in fact experts

6   who are testifying experts, there should be no

7   attorney/client privilege issues, as we're entitled to all

8   the documents upon which these individuals relied on in

9   their opinion.

10        THE COURT:  Exactly.  And you'll battle that out

11   I'm sure at the deposition.

12        MS. REIMER:  Right, or we'll be back in court

13   saying --

14        THE COURT:  No, you won't be back in the Court

15   because if defense counsel comes back into this Court and

16   brings up an attorney/client privilege issue where there is

17   no basis in fact, he knows he will be held in contempt, so

18   that's not an issue.

19        MS. REIMER:  Thank you, your Honor.

20        MR. GRUNERT:  Your Honor, you said that this was

21   on the record.  Is there a recording of this hearing?

22        THE COURT:  There certainly is.

23        Now, by June 14th all documents.

24        Depositions to be completed on or before June

25   30th.  So you should notice those documents as soon -- you

37

1    should read them, obviously, as soon as you get them and

2    then notice the depositions.  And the Court will issue an

3    order in this case by the end of the day.

4            MS. REIMER:  Thank you, your Honor.

5            THE COURT:  Court is adjourned.

6            (Whereupon, the hearing was concluded.)

38

## CERTIFICATE OF TRANSCRIBER

This is to certify that the attached proceedings

before: U.S. DISTRICT COURT, DISTRICT OF MASSACHUSETTS

in the Matter of:

```
TRANS-SPEC TRUCK SERVICE INC., )
                       Plaintiff, )
                                   )
-V-                                )   CIVIL DOCKET NO.
                                   )   04-11836-RCL
CATERPILLAR INC.,                  )
                       Defendant. )
```

Place: Boston, Massachusetts

Date:  May 31, 2006

Were held as herein appears, and that this is the true,

accurate and complete transcript prepared from the

recordings taken  of the above entitled proceeding.

J. Mocanu                          06/05/06
Transcriber                        Date