1

1 - 38

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

TRANS-SPEC TRUCK SERVICE INC., )
                    Plaintiff, )
                            )
-V-                    )   CIVIL DOCKET NO.
                            )   04-11836-RCL
CATERPILLAR INC.,         )
                Defendant. )

MOTION HEARING
BEFORE THE HONORABLE JOYCE LONDON ALEXANDER
UNITED STATES MAGISTRATE JUDGE

May 31, 2006

Boston, Massachusetts

<u>For the Plaintiff:</u>

    NANCY M. REIMER, ESQ.
    CHRISTIAN G. SAMITO, ESQ.
    Donovan Hatem, LLP
    Two Seaport Lane
    8th Floor
    Boston, MA 02210
    617-406-4500

<u>For the Defendant:</u>

    JOHN A.K. GRUNERT, ESQ.
    CHRIS PARKERSON, ESQ.
    Campbell, Campbell, Edwards & Conroy, PC
    One Constitution Plaza
    Boston, MA 02129
    617-241-3000

Proceedings recorded by electronic sound recording,
transcript produced by Apex Reporting.

*APEX Reporting*
(617) 426-3077

2

P R O C E E D I N G S

THE CLERK:  All rise.  United States District
Court for the District of Massachusetts is now in session,
the Honorable Joyce London Alexander presiding.  You may be
seated.  Today is May 31st, 2006 in the matter of Trans-Spec
Truck Services, Inc., versus Caterpillar, Inc., Civil Action
04-11836.  Will counsel please identify themselves for the
record?

MS. REIMER:  Good afternoon, your Honor.  My name
is Nancy Reimer and with me is Christian Samito.  We
represent the plaintiff, Trans-Spec.

THE COURT:  Good afternoon.

MR SAMITO:  Good afternoon, your Honor.

MR. GRUNERT:  My name is John Grunert,
representing Caterpillar.  With me is my associate, Chris
Parkerson.

THE COURT:  Good afternoon.

MR. PARKERSON:  Good afternoon.

THE COURT:  I have the motion to compel production
of documents and extend expert discovery and the motion for
sanctions.  I also have the motion to amend and motion for
summary judgement, is that correct?

MS. REIMER:  Yes, your Honor.

THE COURT:  Let me hear you on the motion to

1  amend.

2          MR. SAMITO:  Your Honor, in short, this is a case

3  where Caterpillar is saying, we made a promise but we didn't

4  promise to keep it.  Your Honor dismissed two counts of a

5  three count complaint.  Trans-Spec moved to amend based on

6  information that was obtained in the course of discovery.

7  Much of it after the argument to amend -- on the motion to

8  dismiss.  Character raised here is the issue that Rule 16

9  governs on this motion to amend.  In fact, this motion to

10  amend would be valid even under a Rule 16(e) manifest

11  injustice standard.  That's not what we have here.

12          It is in the Court's discretion, regardless of a

13  schedule (unintelligible), to grant a motion to amend.  More

14  importantly, however, there's a large body of case law in

15  the Supreme Court and the First Circuit that addresses what

16  happens when a motion to dismiss is granted.  And uniformly

17  what that case law states is that leave should be granted.

18          If you look at <u>Fullman v. Davis</u>, a case that

19  doesn't into Rule 15 or Rule 16, and which applies, it says

20  after dismissal we revert back to the Rule 15 standard.

21  Under the <u>Gaffney</u> case, 1973 in the First Circuit, the First

22  Circuit doesn't get into Rule 15 or 16. It says, there was a

23  dismissal.  There was a way to cure the defects that were

24  found in the dismissal, and leave should be granted.  And

25  there's a body of case law that's in the papers in the

1    motion to amend that gets into this issue.  That repeats

2    time and again, if you can cure deficiency or what is

3    thought to be deficiency and the case can go forward based

4    on based on the new complaint that leave should be granted.

5    It's almost automatic, based on the case law that's cited in

6    our brief.  The other argument that Caterpillar makes deals

7    with the merits.  This is a case where Trans-Spec purchased

8    22 truck engines from Caterpillar.

9            THE COURT:  But you were allowed a motion to amend

10   a year ago, is that not correct?

11           MR. SAMITO:  We were allowed to amend the

12   negligence count.

13           THE COURT:  And you're asserting that information

14   was not known since before you were allowed to amend in

15   2005?

16           MR. SAMITO:  Well your Honor, we've had a number

17   of discovery issues, and frankly it's been very difficult

18   getting a lot of documents from Caterpillar.  We did not

19   take the Rule 30(b)(6) deposition due to those document

20   discovery issues, and if you look at the record there's a

21   number of motions to compel and we have a number of

22   discovery issues --

23           THE COURT:  What, in particular, did you not know.

24   What, in particular, did you not know, that's just come into

25   your possession?

1    MR. SAMITO:  Well one of the big issues here is

2  according to the warranties that are in play, Caterpillar

3  warranted the engines and the flywheel housings in

4  particular.

5    THE COURT:  I know about that.  I've had this case

6  forever.

7    MR. SAMITO:  What the issue is, is that the

8  warranties say it's for defects in workmanship and

9  materials, and it turns out Caterpillar never checked to

10  find out if it was a defect in workmanship or materials.  In

11  fact, they started honoring the warranty and admitted that

12  it was a defect in workmanship and materials.  Then in 2003,

13  some gentleman in the Caterpillar Connecticut office,

14  without consulting any engineers, without consulting anyone

15  decided, we're going to stop making payments on this five

16  year warranty.  And that was discovered in the September

17  21st, 2005, after the motion to dismiss hearing.

18    There was a two year warranty document that we

19  didn't have until around the time of the motion to dismiss

20  hearing that bears on this. That two year warranty document

21  explicitly shows that Caterpillar treats the five

22  year/500,000 mile warranty as more than a repair or replace

23  warranty, as your Honor found on the motion to dismiss.  It

24  explicitly states -- under the two year warranty that we got

25  after the hearing, it shows that Caterpillar treats the 5

1   year/500,000 mile warranty as a straight warranty, not a

2   repair or replace and that bears directly on your Honor's

3   ruling in that motion to dismiss.  We didn't have that at

4   the time of the hearing.  These are two key facts why we're

5   in here, among many others.

6           THE COURT:  Let me hear from the opposition.

7           MR. GRUNERT:  The statement that Trans-Spec did

8   not have the warranty is false.

9           They were given a copy of that warranty.  The

10  attorneys were given a copy of that warranty in

11  Caterpillar's automatic disclosure.  I had no reason to

12  think that that representation would be made to you or else

13  I would've brought the documents to show that.  However,

14  beyond that, Mr. Howard, himself, testified that he received

15  those warranties with the trucks, so that Mr. Howard had

16  those warranties before this case was commenced.

17          Now the question you asked, of course, is the

18  pertinent one.  What specific information with reasonable

19  diligence, could Trans-Spec not have had before the deadline

20  for moving to amend complaint of their complaint, and they

21  have not identified anything other than a document, which in

22  fact they did have.  The legal standard in the First

23  Circuit, and I have cited the O'Connell v. Hyatt Hotels case

24  to you that there are many cases at the appellate level.

25  The legal standard, regardless of what it was in 1973, since

1    the amendments to Rule 16 are that a scheduling order

2    deadline may not be amended unless there is a showing of

3    good cause, and good cause means that with reasonable

4    diligence the deadline could not have been met.  There is no

5    reason the deadline could not have been met.  I went

6    through, at some length, in my opposition, all of the facts

7    that they now want to allege that obviously were known to

8    Mr. Howard and to his attorneys many years ago.

9         Judge Lindsay could not have been clearer in his

10   order in October, 2005 that there are going to be no more

11   amendments to this scheduling order.  And I suggest to you

12   that this motion is meritless on its face and it should be

13   summarily denied.  It is, in essence, just a attempt to get

14   your Honor and Judge Lindsay to reconsider the dismissal of

15   the warranty claims, which was an absolutely proper

16   dismissal.

17        Thank you, your Honor.

18        THE COURT:  Let me hear Trans-Spec's emergency

19   motion to compel.

20        MS. REIMER:  Your Honor, this deals with the

21   30(b)(6) deposition and information that we didn't have.  We

22   noticed, in accordance with the time schedule, we noticed

23   Trans-Spec's 30(b)(6) deposition.

24        In the notice, I intentionally set it up so that

25   approximately a week before the deposition, Trans-Spec would

1  produce to us those documents upon which its experts, and I

2  use that word very loosely because Trans-Spec identified a

3  number of experts who --

4      THE COURT:  Let me just narrow this for you

5  because this motion goes back and forth.  It's one of the

6  more fascinating motions I've ever read in my life, motions

7  and oppositions.  And I'll tell you the one reason, because

8  I've never had a motion where someone has asked for

9  information about hotels and air travel to prove a point.

10      It seems as though a deposition was, and I don't

11 even know if I'm using the correct words, but tentatively

12 scheduled and there was some -- well the tentativeness seems

13 to be because of the discussion between Caterpillar and

14 Trans-Spec.  Are we having a deposition?  You need to have

15 the documents in which to conduct the deposition.  Who will

16 come, is this being canceled, we won't come if you're not

17 going to have the documents to us.

18      MS. REIMER:  It certainly was straightforward than

19 that even, your Honor.  Under the notice, the notice called

20 for the documents to be produced before the deposition.  The

21 reason, and the very specific reason, is because these

22 depositions in the 30(b)(6) dealt with --

23      THE COURT:  I don't need the reason.  That's not

24 pertinent to what --

25      MS. REIMER:  Well --

9

1        THE COURT:  It's not pertinent to the Court's

2   inquiry.  The Court must make the decision.

3        So, the reason you want the documents right now is

4   not to me a major issue.  The issue is, you scheduled the

5   deposition, then what happened on the other side?

6        MS. REIMER:  In a telephone conversation on

7   February 8th, two days before which the documents were to be

8   produced, on a completely unrelated subject matter, I asked

9   Mr. Grunert if he was going to -- when he was going to be

10  producing the documents.  He made it quite clear to me that

11  he was not going to produce the documents and they would be

12  available at the deposition.  I responded to Mr. Grunert and

13  said, there was a reason why we wanted the documents

14  beforehand.  It's because they dealt with technical

15  engineering issues.  I'm not an engineer, your Honor, I'm an

16  attorney.

17        THE COURT:  No, that's fine.  I understand that.

18        MS. REIMER:  So then I sent -- Mr. Grunert refused

19  to produce the documents.  I wrote him a letter confirming

20  the conversation and I said, if you refuse to produce the

21  documents before the deposition, we would not go forward.

22  The very next day I filed this emergency motion to compel,

23  asking the Court to require Caterpillar to produce the

24  documents before the deposition and then to extend the date

25  because we were running up against the discovery deadline

1    for the expert depositions.  To extend the date so that we

2    could have the documents, have our expert engineer review

3    them before the deposition and then take the deposition in

4    an orderly fashion and without, frankly, wasting the

5    witness' time at the deposition trying to go through the

6    documents and our time in the interest of economy and

7    efficiency to make this deposition go smoothly, given the

8    fact --

9           THE COURT:  One second.  But they told you -- you

10   filed the motion.  Before you filed that motion Caterpillar

11   said to you, we're not going to go, is that correct?

12          MS. REIMER:  They said they were not --

13          THE COURT:  They pulled out?

14          MS. REIMER:  That's right.

15          THE COURT:  That's what they said?

16          MS. REIMER:  That's right.

17          THE COURT:  So then why did you not say, "Okay.

18   The deposition is off."  That's what you said on the phone.

19          MS. REIMER:  We did and I said it in my letter and

20   I said it in email correspondence.  Frankly, I do not

21   understand Caterpillar's misunderstanding.  What they're

22   trying to do here is trying to misdirect the Court for their

23   own abuse of discovery and trying to table our loss and say,

24   because I didn't get on a plane during the day of a

25   blizzard, in which Logan Airport was closed --

1    THE COURT:  Now let me ask Caterpillar.

2  Caterpillar, what makes you think, after counsel had told

3  you, "We're not going forward.", that you shouldn't believe

4  them?

5    MR. GRUNERT:  That's not what they told me, your

6  Honor, and if I may just refer you to the documentation.

7  And the first part of the documentation I'd like to refer

8  you to is Ms. Reimer's affidavit supplied in opposition to

9  my motion.

10    Paragraph 6, she recounts the conversation on

11  February 8th.  She says, "I also informed Attorney Grunert,

12  during this February 8th, 2006 telephone conference, that

13  Trans-Spec would not go forward with the depositions unless

14  it received the documents beforehand or the Court denies an

15  emergency motion.

16    THE COURT:  And the Court didn't.

17    MR. GRUNERT:  That's right.

18    THE COURT:  Right.  But counsel, to me this is all

19  a matter of semantics, we're all grown.  This is a matter of

20  semantics -- I'm not going forward with the deposition

21  unless I get the documents, I'm not showing.

22    MR. GRUNERT:  Your Honor --

23    THE COURT:  So the motion for sanction is denied.

24  You can appeal it if you wish.

25    MR. GRUNERT:  Your Honor, may I be heard further?

1        THE COURT:  You may be heard for about two minutes

2  because the Court has decided.  And I've looked at all of

3  these matters and I just -- I don't even see your point.

4        MR. GRUNERT:  What I was told was that the

5  depositions would not go forward unless the Court denied an

6  emergency motion.

7        THE COURT:  No, she didn't say that on the phone.

8        MR. GRUNERT:  She said that on the phone and I

9  recounted that in my affidavit.  She said it in her own

10  affidavit and they said it in their opposing papers

11  themselves.

12        THE COURT:  Unless they got the documents or the

13  Court denied the emergency motion, but she wasn't given the

14  documents and you knew it.  So you knew --

15        MR. GRUNERT:  I did not know, however, that the

16  Court was not going to deny their motion.  In fact, my

17  expectation was that that motion was going to be promptly

18  filed and that steps would be taken to have it heard and

19  decided.  And if you look at the opposition we filed,

20  Mr. Parkerson specifically said he was available for a

21  hearing on that motion by telephone.

22        I did not have the luxury of waiting to find out

23  whether that motion was going to be denied and the

24  depositions were going to go forward as scheduled.  I asked,

25  from the airport, I asked Trans-Spec's lawyers repeatedly,

1  just tell me that regardless of what happens with your

2  emergency motions, these depositions are not going forward

3  as scheduled and even though my bags are already on the

4  plane, I'll come home, I won't go to Peoria.  They would not

5  tell me that.  And the last e-mail that they sent, and you

6  have it, it's an Exhibit filed to my motion, Mr. Samito

7  said, "No, we're not canceling the depositions regardless of

8  what the Court does on the motion."  So this was a

9  conditional statement that, depending on what happened with

10  that motion, either they were going forward or they were

11  not.  And if they had decided to go forward and I hadn't

12  shown up, then they'd be looking for sanctions.

13          THE COURT:  But it would seem to the Court that if

14  there is a motion before the Court and step one, counsel

15  says, "My client will not go forward with the deposition

16  unless the documents are produced prior."  Two, emergency

17  motion filed with this Court, this Court does not act.  One

18  would presume, given the prior statement, that that

19  deposition is not going forward.

20          MR. GRUNERT:  Your Honor --

21          THE COURT:  Counsel would have called the Court

22  and the Court would've said it's on the calendar, it may be

23  rescheduled, but the hearing will take place.  Obviously,

24  there's an issue here and so --

25          MR. GRUNERT:  Your Honor, the problem is that I

1    looked for exactly the unequivocal statement that you have

2    just suggested and I received in response a statement saying

3    that whether we were going forward or not depended on what

4    the Court did with this emergency motion.  I had to go to

5    Peoria.  I had to get a flight there to prepare the witness

6    and to have the witness' documents available.  I couldn't

7    wait.  These depositions were not tentatively scheduled,

8    they had been noticed for specific dates that were agreed

9    upon.  And all I wanted was an unequivocal statement, one

10   way or the other, are we going forward and they would not

11   give it to me.

12            THE COURT:  It seems to the Court that the two

13   parties that counsel have or for counsel have more additions

14   than the parties themselves.

15            What's the next issue, the motion for a summary

16   judgement.  You may be heard.

17            MR. GRUNERT:  Your Honor, there was only one claim

18   remaining and that's the negligence claim.  And there are

19   two separate grounds why that claim fails as a matter of

20   law.

21            One ground disposes of the entire claim.

22            The second ground would leave a small amount of

23   that claim pending, so the second ground is in the nature of

24   a motion for partial summary judgement.  The document -- and

25   by the way, when I think of it, attached to my motion for

1  summary judgement are the warranties that Caterpillar gave.

2  These are the warranties, and I attached the testimony from

3  Mr. Howard saying that he received them.   Those are the very

4  warranties you were told on the motion to amend that the

5  plaintiff didn't have until recently, by the way.

6        So the warranty that was given contains in bold

7  faced print, capitalized letters, an exclusion that says

8  that Caterpillar is not liable for any negligence in

9  connection with these engines.   That exclusion, under

10  General Laws Chapter 220110, is conspicuous as a matter of

11  law and is enforceable.   And Massachusetts law could not be

12  clearer that exclusions of negligence liability, at least

13  between businessmen, are not only enforceable but they're

14  favored.   The Sharon case, Sharon v. City of Newton says

15  they're favored because the law encourages the consensual

16  allocation of risk between business people.

17        There's no dispute that that document is the

18  warranty.   There's no dispute that it was received.   The

19  legal effect of that language is clear.   Under the Sharon v.

20  Newton case, once that exclusion has been presented to you,

21  the burden is on the plaintiff to come forward with specific

22  evidence to show you that there is some reason why that

23  release should not be given effect.   I have gone through, at

24  considerable length in my required brief, the various

25  grounds that Trans-Spec has advanced.   But I think I need to

1  say --

2          THE COURT:   How do you respond to Trans-Spec's

3  asseveration that a product has an apparent defect the buyer

4  receives less than what the contract calls for.

5          MR. GRUNERT:   The --

6          THE COURT:   And therefore, the remedy fails of its

7  specific purpose, of its essential purpose?

8          MR. GRUNERT:   The section of the uniform

9  commercial code, I think it's 20219.  I could be wrong, it

10  might be 2207, but the section of the uniform commercial

11  code that pertains to failure of the essential purpose says

12  that if a particular provision in a contract, if a

13  limitation of remedies provision fails of its essential

14  purpose, then other UCC remedies are available.  Negligence

15  is not a UCC remedy.  There are no UCC remedies in this case

16  because that claim is barred by the statute of limitations.

17  So the failure of essential purpose, and I cited the case

18  authority to you your Honor, the <u>Canal Electric v.</u>

19  <u>Westinghouse</u> case is SJC decision that's right on point.

20  There's also a decision out of the Ninth Circuit, <u>Tokyo</u>

21  <u>Marine v. Mcdonnell Douglas</u>, I believe, it's again cited in

22  my brief, where there's exactly this issue.  There was a

23  negligence claim and the defense was there's an exclusion

24  about negligence claims and the plaintiff said, well the

25  contract failed of its essential purpose.  And that, like

1   this one, was a case where the warranty claims were barred

2   by the statute of limitations.  The Ninth Circuit says, no,

3   no, no, no.  Failure of essential purposes means you have

4   UCC remedies.  Your UCC remedies failed under the statute of

5   limitations.  You've got no -- that failure of essential

6   purpose has no effect on an exclusion of negligence.

7        THE COURT:  What about the economic loss doctrine

8   being an all or nothing doctrine?

9        MR. GRUNERT:  Again, that's just not the law.  And

10  I think on that subject, the most illustrative case is

11  probably the Icelandic Coast Guard v. United Technologies

12  case that I cited to you.  Although, there's another case

13  that I didn't cite to you, but I'd like to give you the cite

14  now, it's Northern States Power Company v. International

15  Telephone and Telegraph.  It's at 550 F.Supp. 108 out of the

16  District of Minnesota, which is also illustrative.

17        What these cases show and really, the Icelandic

18  Coast Guard case is very good, because what happened in that

19  case is the defendant had sold a helicopter to the Coast

20  Guard.  The helicopter crashed as a result of a product

21  defect.  And as a result of the crash, the crew members were

22  killed, and the Coast Guard had to expend a lot of money on

23  finding and retrieving their bodies.  The Coast Guard also

24  had to expend a lot of money finding the wreckage of the

25  helicopter, with lost use of the helicopter, had to replace

1  the helicopter.  And so, the Coast Guard sued United

2  Technologies and United Technologies said, well your claim

3  is barred by the economic loss doctrine.

4       And what the District Court in Connecticut said

5  is, well you've got various kinds of losses here.  To the

6  extent that this crash caused injury to the crew members,

7  that's an injury to persons or other property.  And so, you,

8  the Coast Guard can recover what you expended in finding and

9  retrieving the crew members bodies.

10       As to the other categories of damages, the expense

11  of finding the wreckage of the helicopter, the lost time,

12  lost use of the helicopter, the cost of replacing the

13  helicopter, those are all economic losses caused just by a

14  defect in the product itself.  Those you cannot recover.

15       So it says, summary judgement, as to the claims

16  for those elements.  No summary judgement for the claims for

17  expenses searching for the crew members body.  And if you

18  review the Jeldwin case, if you review the other cases that

19  I cited to you, you will see that that consistently is how

20  the economic loss doctrine is applied.

21       The economic loss doctrine permits recovery of

22  damages proximately caused by damage to other property.

23  That is to say, property other than the product itself, or

24  to person.  It bars elements of damage that are attributable

25  just to the defect in the product itself, to the loss of use

1    of the product through reduction in value.  It's not an all

2    or nothing matter in that case that Trans-Spec cites for

3    that proposition doesn't stand for it.  I talked to you

4    about that in the brief.  I don't think I need to recount it

5    here, but that that statement was just a vague passing

6    reference and a general history and it was followed by a

7    number of citations to other authority, and if you read the

8    other authority, you see that it says exactly what I just

9    explained to you.

10          The economic loss doctrine requires

11   differentiation between different types of damages.  And the

12   reason it does that is that if there are tort type damages

13   that have been caused, the courts don't want to deny

14   recovery but the problem of tort law swallowing up contract

15   law remains.  And so, the courts are very tough in saying

16   that you cannot recover economic losses, economic type

17   damages unless they are caused by damage to other property,

18   not to the product itself.

19          THE COURT:  Thank you.

20          MR. GRUNERT:  Thank you, your Honor.

21          THE COURT:  Trans-Spec, talk to the Court about

22   the warning disclaimer not being enforceable because of its

23   failure of its essential purpose.

24          MR. SAMITO:  Well your Honor, I think <u>Andover Air</u>

25   case is very instructive, in that Judge Zobel -- the

1   plaintiff, Andover -- if Andover proves that the warranty

2   failed in its essential purpose, the exclusion of other

3   damages becomes inoperative and Andover may seek

4   consequential and incidental damages as allowed by the code.

5           THE COURT:  But Caterpillar has said that

6   negligence is not a UCC remedy and therefore, you can't even

7   invoke that.

8           MR. SAMITO:  But where the warranty fails of its

9   essential purpose, your Honor, all bets are off.  You can't

10  just claim negligence, have everything else fall to the

11  wayside and allow the breaching party to hold onto that

12  disclaimer that benefits it.  They're not getting the

13  benefit.  There's a difference, and there's other cases.  I

14  mean, the Hadar case from the Southern District of New York

15  bears on this.  In other cases that are cited --

16          THE COURT:  But Caterpillar says that it doesn't

17  fail -- in Court, the Court -- if the Court is wrong, did

18  you not say that Caterpillar -- did Caterpillar not say that

19  it doesn't fail of its essential purpose, is the Court

20  correct?

21          MR. GRUNERT:  I don't concede that --

22          THE COURT:  Negligence is not a UCC remedy.

23  That's what Trans-Spec is invoking when it says that it

24  fails of its essential purpose?

25          MR. GRUNERT:  I don't believe --

1          THE COURT:  That the remedy fails?

2          MR. GRUNERT:  I don't believe that --

3          THE COURT:  Okay.

4          MR. GRUNERT:  For purposes of --

5          THE COURT:  Let me ask you and then have you

6    respond.  Let me ask Caterpillar the following question:

7    Trans-Spec says that the disclaimer is unenforceable because

8    it fails of its essential purpose.  What do you say to that?

9          MR. GRUNERT:  I say number one, that the -- what

10   Trans-Spec claims failed of its essential purpose is the

11   warranty that Caterpillar --

12         THE COURT:  So you're saying they're saying the

13   warranty failed of its specific purpose?

14         MR. GRUNERT:  That's right.

15         THE COURT:  That has nothing to do with this

16   negligence claim.

17         MR. GRUNERT:  That's correct.  And if there had

18   been a timely action brought to breach of warranty and if

19   Trans-Spec --

20         THE COURT:  We're dealing with the negligence.

21         MR. GRUNERT:  Right, right.

22         THE COURT:  Stop saying anything about the

23   warranty.  They're saying this disclaimer is unenforceable

24   because it fails of its essential purpose.  You say what

25   again, and don't bring in the warranty?

22

1          MR. GRUNERT:  The essential purpose of the

2     disclaimer is obviously to disclaim liability for

3     negligence.  The argument that the warranty failed of its

4     essential purpose as a matter of law means only that if that

5     were found to be true, they would have other UCC remedies

6     available to them.  In other words, the limitation to a

7     repair or replacement of defective parts would fall out of

8     the case and Trans-Spec could sue for contract damages.  The

9     warranty claim -- all contract damages are barred by the

10    statute of limitations.

11          THE COURT:  But this is negligence.

12          MR. GRUNERT:  That's right.  Negligence is not a

13    UCC remedy.  So the failure of essential purpose law is

14    simply irrelevant to this motion.  And I cited --

15          THE COURT:  That's what I wanted to hear you say.

16    Thank you.

17          MR. SAMITO:  Well your Honor, with all due respect

18    here, Caterpillar, the cases that they cite involve

19    situations including the Canal case, where the defendant

20    tried to perform under the contract.  Here, Caterpillar

21    breached the contract, breached the warranty in 2001,

22    breached it again in 2003 all together, and that's the

23    difference.

24          It's one thing for the Court to look at a

25    situation where Caterpillar was performing under the

1   warranty and then it may be a different story in terms of

2   the exclusion of negligence, but that's not what happened

3   here.   And the cases that Caterpillar cites don't apply for

4   that reason.

5          This is a situation where Caterpillar left

6   Trans-Spec holding an open bag.  Said we're not going to

7   honor any other provision in these two warranty documents

8   except for the disclaimer of negligence.  That, we're going

9   to cite that.  We'll honor that because it benefits us.  And

10  that's the situation.

11         Time and again, the cases cited from Boston

12  Helicopter to Hadar, the rejection of negligence

13  disclaimers, Somerset Savings, Omni Flying, Andover, again

14  and again said, that you can't have disclaimer of negligence

15  where it's unconscionable or where it failed of its

16  essential purpose.  It's integrated into a document that

17  completely fails.  The Court will enforce that one

18  provision.  And again, the Andover Air case provides

19  excellent guidance on that point.  Judge Zobel talks about

20  that unconscionability of the limited remedy and where it

21  fails of its essential purpose.

22         THE COURT:  So that Caterpillar's whole issue

23  about the code is really irrelevant?

24         MR. SAMITO:  Yes, your Honor.

25         THE COURT:  Okay.  Let me hear you on the economic

1    loss.

2          MR. SAMITO:  Again, your Honor, the cases that

3    Caterpillar cites involve situations where the loss is

4    purely economic.  If you look at the <u>Binding Berish</u> case, I

5    remember from the last hearing that your Honor knows the

6    <u>Berish</u> case quite well, referred to it as well as other

7    cases that are cited here.  The Massachusetts Supreme

8    Judicial Court, not Connecticut, we'll dealing with

9    Massachusetts law, <u>Berish</u> is binding.  The SJC in <u>Berish</u>

10   said, where you have damage, both to the actual property but

11   then to elements outside of the property, the economic loss

12   doctrine doesn't apply.  The <u>Damon</u> court, in 1998, does cite

13   three prior Wisconsin cases and then it comes down with its

14   statement, the economic loss doctrine does not bar

15   commercial purchasers claims based on personal injury or

16   damage to property other than the product, or economic loss

17   claims that are alleged in combination with non-economic

18   losses.

19          Now what Caterpillar does here, is it files a

20   motion for summary judgement, complains throughout that

21   Trans-Spec doesn't provide adequate proof of the damages.

22   Doesn't complete its Rule 30(b)(6) deposition of Trans-Spec,

23   and then it says, well there's not enough proof in the

24   record and the proof that is there is not credible.  And

25   issues of credibility aren't for the Court to decide at the

1  summary of judgement stage, they're for the jury to decide.

2       And the issues in terms of whether the damage was

3  economic or not economic going forward, by Caterpillar's own

4  notion, they concede that the damage to the truck's

5  clutches, the drive trains, the transmissions, damage to

6  property of Trans-Spec in terms of the actual physical

7  ground, the oil leaks on other peoples, other customer's

8  property.  That's all issues that show the economic loss

9  doctrine doesn't apply here.  It's by the <u>Binding Berish</u>

10 case.  There was damage to property outside of the engines

11 themselves.  And if the damage was just confined to the

12 engines, that may be one story, but that isn't what was the

13 case here in the deposition testimony.  We have affidavits

14 that point to the fact that there was damage to other

15 property.

16      The fact that Caterpillar doesn't like that

17 evidence and doesn't like the affidavits is not neither here

18 nor there.  I note that Caterpillar moves to strike four out

19 of five documents.  Four of the documents are documents that

20 they actually append to their own motion for summary

21 judgement.  And now they're saying, oh we should exclude

22 that.  They want to exclude any evidence that there was

23 damage to other property.

24      There's also issues with misrepresentations.

25 Negligent breach of contract, those are two issues of

1   negligence that are encompassed in the negligence count that
2   are carved out of the economic loss doctrine, and I need not
3   spend the time of the Court, indeed the cases are cited in
4   our opposition papers.  But negligent misrepresentation, and
5   we (unintelligible) the history with documents, with
6   Caterpillar testimony, with affidavits, and the negligent
7   breach of the warranty documents -- the negligent breach of
8   contract --

9         THE COURT:  One of the arguments you make is that
10  the Court twice rejected Caterpillar's contention, but the
11  Court did not because it said at that stage of the
12  proceedings it was not prepared to render a decision on that
13  issue.  But the Court didn't reject Caterpillar's assertions
14  outright.  And so now Caterpillar brings them and you're
15  saying, based on the cases that have been previously cited,
16  that the Court should now reject Caterpillar's assertions
17  outright?

18        MR. SAMITO:  I don't remember if I cited all the
19  cases, but the Berish v. Bernstein in 2002, the Aldridge v.
20  ADD, which is SJC 2002, several other cases that are given
21  are in Caterpillar's own memorandum on page 6 are all
22  reasons why the Court should deny as to the economic loss
23  argument because there was damage to property outside of the
24  engines themselves.  And as a result of that, the negligence
25  claim on that ground goes forward.

1          THE COURT:  Counsel, what about the injury or

2     damage to other than the design or manufacture.

3          MR. GRUNERT:  I told you when I started that, as

4     far as the economic loss doctrine is concerned, it's a

5     motion for partial summary judgement.

6          I have seen records indicating that, at least,

7     sometimes when a flywheel housing failed there would be

8     damage to a clutch or a starter motor, and those would have

9     had to have been replaced.  The cost of replacing those

10    sorts of incidental parts is a tiny fraction of the damages

11    sought in this case.  But I was explicit that that extent,

12    to the extent that recovery is sought for damage, the cost

13    of replacing damaged truck parts, that I don't seek summary

14    judgement under the economic loss doctrine, although I do

15    under the contractual exclusion.

16         Beyond that, I just have two comments.  Number

17    one, you will not find anything in my brief that talks about

18    credibility.  I'll be perfectly content if your Honor simply

19    looks at the evidence attached both to my motion and to the

20    opposition, and if you'll see what the evidence shows as

21    distinct from what the attorneys say in their brief.

22         And the second thing is that the _Berish_ case has

23    nothing to do with this issue.  The _Berish_ case does not

24    address the subject of whether when there are both economic

25    losses and non-economic losses, whether the plaintiff is

1  limited to recovering only losses that are proximately

2  caused by damage to other property, and that is the issue

3  that's addressed here and that is the issue that is

4  addressed in all of the cases that I've cited you on the

5  economic loss doctrine, your Honor.

6           THE COURT:  Well the Berish case says that the

7  economic loss doctrine precludes recovery for negligence in

8  the design or manufacturer of the product if the negligence

9  causes no injury other than to the product itself.  That's

10  what it says.

11           MR. GRUNERT:  Correct.

12           THE COURT:  And so that if portions of the

13  decision sort of argues in favor of Trans-Spec, do you

14  disagree with that?

15           MR. GRUNERT:  Well yes.  I mean, as you know --

16           THE COURT:  I should've known that.

17           MR. GRUNERT:  As you know, courts decide the

18  issues that are presented to them.  Nothing in the Berish

19  case indicates that the Court was asked to decide whether,

20  in the presence both of damage to both other property and

21  what would typically be just economic loss, damage to the

22  product itself, they weren't asked to decide whether you can

23  collect for the damage caused to other property but not for

24  the product itself.  That issue wasn't before them, it is

25  not addressed.

1          What that Court basically said is, well the

2    product in this instance is the whole house, it's not just

3    the windows.  And you know, we accept that.  That, I guess,

4    is the law of Massachusetts.  But it didn't address the

5    issue that's before you now and why would they go out on a

6    limb to address that issue, but the issue has been

7    addressed, it was addressed in the <u>Jeldwin</u> case and it was

8    addressed in the other cases that I've cited to you.  And I

9    suggest to you that those cases make perfect analytical

10   sense.

11         And Trans-Spec has not cited you to any authority

12   to the contrary if you actually read the cases that they've

13   cited you.  So that's really all I have to say about the

14   Berish case.  You've characterized that when we were before

15   you once before as a, I'm not sure of the words you used,

16   but it indicated that it is sort of a difficult case to

17   understand how they got to where they were going.

18         THE COURT:  But they got there.

19         MR. GRUNERT:  They got there.  They got to say

20   what the law is, but the issue that is before you is not one

21   that they addressed or decided.  Thank you, your Honor.

22         THE COURT:  Now before you leave and I take all of

23   this under advisement to send to you, when is the deposition

24   going to take place and when are these documents going to be

25   produced?  Is it sometime in June?

1          MS. REIMER:  There is no date scheduled.  I'm

2   reluctant to take the deposition without reviewing the

3   documents because --

4          THE COURT:  Are the documents ready?

5          MR. GRUNERT:  Well your Honor, I object to having

6   the depositions taken or having any --

7          THE COURT:  Right.  So they'll be taken.  Will

8   they be ready in June?  Will the documents be ready in June?

9          MR. GRUNERT:  I --

10         THE COURT:  I've just said we're going to take

11  these depositions, we're going to produce these documents

12  and end this case.  The next person you should see will be

13  Judge Lindsay, it should be going to trial.  Of course, what

14  you should be doing, this case should've been settled a long

15  time ago.  But notwithstanding that fact, let's get a date

16  within the next two weeks.  Can we agree on a date?

17         MS. REIMER:  Your Honor, I actually have a trial

18  scheduled in Suffolk for June 12th.  I presume it's going

19  forward with Suffolk --

20         THE COURT:  That's June 12th, we're talking --

21         MS. REIMER:  That's in two weeks.

22         THE COURT:  We're talking about -- that's two days

23  before the Court is talking about.  I'm talking about

24  between now and June 12th, can the documents be produced and

25  can the deposition -- and can we agree on a date?

1          Listen, I really think counsel are nice, but I

2    don't want to see you again.  So I really would like to get

3    this done today.  I'd like to find out when you're going to

4    produce the documents and when this deposition is taking

5    place.

6          MR. GRUNERT:  Your Honor, there is no way that I

7    could appear for depositions, and I don't even know what the

8    schedule of the witnesses are.

9          THE COURT:  Well no, you're going to tell the

10   witnesses because otherwise they're going to be in big

11   trouble.

12         So you're going to tell the witnesses that the

13   Judge has ordered that these depositions will take place on

14   or before.  That's what you will tell them.  So I would say

15   if it could be done between now and -- today is the 31st of

16   May.  So if they could be done between now and the 9th, that

17   would probably be good because I think the last week in June

18   your clients will tell you they're going on vacation because

19   we're going into July 4th.  I know that, it happens every

20   time.  So it would be wise -- why don't we do this.  I'm

21   going to leave the bench, you're going to call your clients

22   and you're going to give each other some dates to get this

23   done.  Let's go off.

24         (A brief recess was taken)

25         THE COURT:  Court is back in session.  You may be

32

1    seated.

2            THE COURT:  I'm informed that you were unable to

3    get -- Caterpillar, you weren't able to contact the experts?

4            MR. GRUNERT:  Your Honor, the people that I

5    attempted to contact are the two Caterpillar coordinators

6    who have the contact information for these experts.  I also

7    tried to contact one of the experts themselves.  I was

8    unable to reach any of those people.  That's the status of

9    where things stand.

10            THE COURT:  Okay.  Well, on or before June 30th.

11            MR. GRUNERT:  Your Honor, I'll just point out that

12    in the papers that Trans-Spec filed, their opposition to my

13    motions for sanctions, they do state that if they get these

14    documents they do not need to take the deposition.

15            THE COURT:  Is that correct?

16            MS. REIMER:  What we stated is that we may not

17    need to take the depositions --

18            THE COURT:  No, I need to know whether you're

19    going to take them or not.  I mean, we're at the 11th hour

20    here.

21            MS. REIMER:  If the documents answer our questions

22    with respect to the reports that were filed, we probably

23    will not take the depositions.  If there are questions that

24    arise because of the documents that we would need to ask,

25    then we'd need to take the depositions.

33

1      THE COURT:  Oh no, no, you have a one shot deal

2   here.

3        You two need to talk and make up your minds

4   whether you're going to take these depositions if you get

5   the documents.  If you get the document, you will not need

6   to take the depositions or you're going to take the

7   depositions, or you're going to tell counsel -- if counsel

8   is asking his experts to take time out of what is a vacation

9   time, and he's asking them to take time, then you've got to

10  let them know.

11      MS. REIMER:  I'm not disputing with you --

12      THE COURT:  No, we're way past discovery.  I need

13  to know the answer to that now.  You two need to talk?

14      MS. REIMER:  All right.  Just one second.

15      MR. GRUNERT:  Your Honor, could I direct your

16  attention to the last sentence of the opposition of the

17  plaintiff to Caterpillar, in its motion to sanction

18  immediately above the word "Conclusion" where they say

19  "Trans-Spec reiterates that if Caterpillar produces complete

20  copies of all the documents requested on Schedule A to the

21  notice of the deposition, Trans-Spec does not need to depose

22  Caterpillar's --

23      THE COURT:  Well you should've given them those

24  documents before you came in here today and that would've

25  facilitated this matter.

34

1        MR. GRUNERT:  I can tell you that I have given

2    them many of them already.

3        THE COURT:  But you haven't given them all of

4    them, and that's a problem.  If counsel -- I tell you, I

5    can't imagine, and I don't have this for trial so I can say

6    this.  I can't imagine that the counsel in this case, and

7    this is on the record, haven't spent more money arguing

8    these motions than probably the damages in this case of the

9    clients.  This is ridiculous.

10        Now do you wish to change this around a bit?

11        MS. REIMER:  Your Honor, if we receive the

12    documents, we will not take the depositions.

13        THE COURT:  When can you get them the documents?

14    That's the first question.  You say you've given them most

15    of them, when can you give them all the documents?

16        MR. GRUNERT:  Your Honor, that's what I tried to

17    find out.  I can tell you -- let me tell you --

18        THE COURT:  Well you were on the case, you're the

19    lawyer.

20        MR. GRUNERT:  Your Honor, lawyers --

21        THE COURT:  You said you prepared -- you were in

22    the process of preparing the witnesses for testimony based

23    on those documents, so they must be at hand.

24        MR. GRUNERT:  Your Honor, a lot of these documents

25    were in electronic form.  The witnesses were going to be

1   prepared to present them electronically at the deposition.

2           THE COURT:  That ought to make it faster.

3           MR. GRUNERT:  Well it would, but there is an issue

4   with one of them.  The software is proprietary software and

5   so, there's been a lot of work going on trying to translate

6   those documents into a form that can be readable.

7           THE COURT:  Okay.  I'll issue an order today.

8           Do you think they can get it Friday?  Do you think

9   they can get it by Monday?

10          MR. GRUNERT:  I think, your Honor, that June 30th

11  was --

12          THE COURT:  No, that's too long for the documents

13  because if you don't give them all the documents within two

14  weeks, then we have two weeks in which to notice

15  depositions.

16          MS. REIMER:  Your Honor, there's one other --

17          THE COURT:  So by June 14th it is hereby ordered

18  that all of the documents be produced.  Then you may not

19  need depositions.

20          MR. GRUNERT:  May I raise one other issue?

21          I did object, or the witnesses did object to these

22  notices to the extent, for example, that they seek

23  attorney/client privilege --

24          THE COURT:  Give them a list.  You know how to do

25  that.  That is so basic.

1          MR. GRUNERT:  So long as that's clear.

2          THE COURT:  Give them the documents.  Thank you.

3          Yes?

4          MS. REIMER:  Your Honor, with respect to the

5     privilege issue.  If these individuals are in fact experts

6     who are testifying experts, there should be no

7     attorney/client privilege issues, as we're entitled to all

8     the documents upon which these individuals relied on in

9     their opinion.

10          THE COURT:  Exactly.  And you'll battle that out

11     I'm sure at the deposition.

12          MS. REIMER:  Right, or we'll be back in court

13     saying --

14          THE COURT:  No, you won't be back in the Court

15     because if defense counsel comes back into this Court and

16     brings up an attorney/client privilege issue where there is

17     no basis in fact, he knows he will be held in contempt, so

18     that's not an issue.

19          MS. REIMER:  Thank you, your Honor.

20          MR. GRUNERT:  Your Honor, you said that this was

21     on the record.  Is there a recording of this hearing?

22          THE COURT:  There certainly is.

23          Now, by June 14th all documents.

24          Depositions to be completed on or before June

25     30th.  So you should notice those documents as soon -- you

1    should read them, obviously, as soon as you get them and

2    then notice the depositions.  And the Court will issue an

3    order in this case by the end of the day.

4              MS. REIMER:  Thank you, your Honor.

5              THE COURT:  Court is adjourned.

6              (Whereupon, the hearing was concluded.)

38

## CERTIFICATE OF TRANSCRIBER

This is to certify that the attached proceedings

before: U.S. DISTRICT COURT, DISTRICT OF MASSACHUSETTS

in the Matter of:

```
TRANS-SPEC TRUCK SERVICE INC., )
                      Plaintiff, )
                                 )
-V-                              )    CIVIL DOCKET NO.
                                 )    04-11836-RCL
CATERPILLAR INC.,                )
                      Defendant. )
```

Place: Boston, Massachusetts

Date:  May 31, 2006

Were held as herein appears, and that this is the true,
accurate and complete transcript prepared from the
recordings taken  of the above entitled proceeding.

J. Mocanu                         06/05/06
Transcriber                       Date