UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| TRANS-SPEC TRUCK SERVICE, INC. d/b/a TRUCK SERVICE, Plaintiff | ) ) ) ) ) | CIVIL ACTION NO. 04-11836-RCL |
| vs. | ) ) |  |
| CATERPILLAR INC. Defendant | ) ) ) ) |  |

**PLAINTIFF TRANS-SPEC TRUCK SERVICE, INC.'S OBJECTION TO THE MAGISTRATE JUDGE'S ORDER ON ITS MOTION TO AMEND COMPLAINT AND TO ALTER OR AMEND THIS COURT'S ORDER DATED FEBRUARY 26, 2006**

Pursuant to Fed. R. Civ. P. 72(a) and Rule 2(b) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts ("Magistrate Rule 2(b)"), Plaintiff Trans-Spec Truck Service, Inc. ("Trans-Spec"), hereby objects to the Magistrate Judge's June 9, 2006 Order on its *Motion to Amend Complaint and to Alter or Amend This Court's Order Dated February 26, 2006 and Local Rule 7.1 Certificate and Request for Oral Argument* ("Motion to Amend or Alter").[1] Pursuant to Fed. R. Civ. P. 72(a), the district judge "shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." See also Magistrate Rule 2(b). Here, the Magistrate Judge: 1) **ignored binding Supreme Court and First Circuit precedent** to apply the wrong standard regarding Trans-Spec's motion to amend; 2) **ignored binding First Circuit precedent** regarding the applicability of Fed. R. Civ. P. 59(e) to her prior ruling dismissing Counts I and II of Trans-Spec's Complaint and **failed to correct clear errors of law as to binding First Circuit and Massachusetts law** in that ruling; and, 3) erroneously found that Trans-Spec failed to demonstrate good cause under Fed. R. Civ. P. 16(b) to warrant amendment of its Complaint.

---

[1] Hereinafter, the Magistrate Judge's Order is cited as (Order at p. __); it is attached as Exhibit A. Trans-Spec specifically objects to pages 3 through 7 of the Magistrate Judge's Order denying leave to amend Trans-Spec's Complaint and refusing to alter or amend the Court's dismissal of Counts I and II of Trans-Spec's Complaint.

## INTRODUCTION

Trans-Spec incorporates herein by reference its underlying Motion to Amend or Alter, attached as Exhibit B, and refers the Court to pages 1 through 4 for a brief summation of the factual and procedural history of this case.

## OBJECTIONS AND ARGUMENT

**A.** **The Magistrate Judge ignored binding Supreme Court and First Circuit precedent to apply the wrong standard regarding Trans-Spec's motion to amend**

The Magistrate Judge incorrectly held that Fed. R. Civ. P. 16 applies here. (Order at p. 4, 5). *Inter alia*, the Supreme Court, First, Second, Fifth, and Ninth Circuits, Southern District of New York, and District of Massachusetts do not apply Fed. R. Civ. P. 16 in analyzing motions to amend following dismissal. Additionally, these jurisdictions do not examine whether the information sought to be added could have been added prior to dismissal nor do they address the timing of the dismissal. Instead, the guiding principle is solely whether the plaintiff can cure any defects and set forth a viable complaint.

The standard set by the Supreme Court, First Circuit, and other jurisdictions mandates that after dismissal, "amendment to correct a deficiency in pleading should be 'freely given when justice so requires[.]' **Where the amended complaint would state a valid cause of action, a motion to amend should normally be granted.**" *Gaffney v. Silk*, 488 F.2d 1248, 1251 (1st Cir. 1973) (citations omitted, emphasis added); see also *Coyne v. City of Somerville*, 972 F.2d 440, 446 (1st Cir. 1992) (**explicitly adopting the Fed. R. Civ. P. 15(a) standard that after dismissal, "[l]eave to amend 'shall be freely given when justice so requires,"** though denying leave in that particular case because plaintiff sought to make minimal, futile changes to his complaint). *Gaffney* and *Coyne* define the standard applicable where a plaintiff brings a motion to amend after the granting of a motion to dismiss, not the Fed. R. Civ. P. 16 standard the Magistrate Judge adopted and not the cases Caterpillar cited in opposing the Motion to Amend or Alter and which did not address amendments following dismissal. The Fed. R. Civ. P. 16(b) standard and cases Caterpillar cited dealt with other types of amendments, i.e. to add parties and

additional claims after the scheduling order deadline or, in the *O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152 (1st Cir. 2004) case, where a Court *denied* a motion to dismiss.

In *Foman v. Davis*, 371 U.S. 178 (1962), the appellant sought and obtained leave to amend a complaint *after* the district court dismissed the complaint. *Foman*, 371 U.S. at 179. When examining a similar situation where a plaintiff sought to amend a complaint after dismissal, the First Circuit Court of Appeals held that where the proposed amended complaint sufficiently stated a cause of action, "the district court abused its discretion in failing to grant plaintiffs' motion to amend." *Gaffney*, 488 F.2d at 1250; see also *Gomez v. Toledo*, 602 F.2d 1018, 1021 (1st Cir. 1979). **"When a claim is dismissed under Rule 12(b)(6), courts customarily allow leave to amend"** because **"[i]f a plaintiff has 'at least colorable grounds for relief, justice does . . . require leave to amend.'"** *Williams v. Astra USA, Inc.*, 68 F. Supp. 2d 29, 33 (D. Mass. 1999) (citations omitted) (emphasis added); <u>see</u> <u>also</u> *Chesterton v. Chesterton*, 1990 U.S. Dist. LEXIS 13136, *1-2 (D. Mass. 1990) (granting plaintiff's request to amend complaint in response to Court's allowance of defendants' motion to dismiss because **"[m]otions to amend should be freely granted, particularly to correct pleadings subsequent to a motion to dismiss."**) (emphasis added).[2]   Accordingly, the Magistrate Judge erred in not

---

[2] It is well-established that leave to amend is freely granted after dismissal of a complaint, see *Buckey v. County of Los Angeles*, 968 F.2d 791, 794-95 (9th Cir. 1992)(overturning district court's denial of leave to amend after it dismissed complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6)); *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48-50 (2nd Cir. 1991) ("we think it an abuse of discretion to deny leave to replead" where claim not futile and "there is no suggestion from the averments of the complaint that an amendment would not supply the facts required to support the allegations and to cure the defect."); *Oliver Sch. v. Foley*, 930 F.2d 248, 252-53 (2nd Cir. 1991) (finding that leave to amend should be granted "[w]here the possibility exists that the defect can be cured" even where the plaintiff did not explicitly move for leave); *Lone Star Motor Import, Inc. v. Citroen Cars Corporation*, 288 F.2d 69, 75-77 (5th Cir. 1961) (court found it a) "prejudice, perhaps irreparable, if leave is not granted" to amend a dismissed complaint to establish allegations which would have made the complaint sufficient, especially where the motion to amend came within the ten days allowed under Fed. R. Civ. P. 59 to move for rehearing; b) disfavored the argument that permitting the amendment constituted prejudice to the defendant; and, c) held that "[i]n the face of a rule which commands that leave 'shall be freely given when justice so requires,'" and "[w]ith the consequences of an outright dismissal so decisive and perhaps final, the minimum required . . . was to give the plaintiff an opportunity" in the "form of allowing the filing of the proposed amendment."); *Orion Elec. Co. v. Funai Elec. Co.*, 2002 U.S. Dist. LEXIS 3928, * 26-27 (S.D.N.Y. 2002) (granting leave to replead because: a) "[i]t is the usual practice upon granting a motion to dismiss"; b) the dismissed claims were not futile; c) "[p]laintiffs may or may not be able to plead the facts necessary to state a claim; they simply have not done so in the Amended Complaint"; and, d) because "this is not a situation where a plaintiff was informed as to what it was required to plead but then failed to do so.").

following the bright-line rule these cases provide wherein leave to amend is nearly automatic following the granting of a motion to dismiss.

Trans-Spec sought leave to amend its Complaint so as to cure any deficiencies noted in the Magistrate Judge's Report and Recommendations adopted by this Court on February 23, 2006 ("Report and Recommendations") dismissing Counts I and II of Trans-Spec's Complaint. For example, page 9 of the Report and Recommendations noted a deficiency in that Trans-Spec's Complaint did not aver "what might have transpired between 2002 and January 2004," but included only references to meetings between Trans-Spec and Caterpillar that took place in the summer of 2004, four years after Trans-Spec took delivery of the subject engines. "[W]hat . . . transpired between 2002 and January 2004" validated Trans-Spec's estoppel argument, and accordingly, Trans-Spec cured this deficiency by pleading the appropriate additional information in its proposed amended complaint. Similarly, while the Magistrate Judge erred on pages 10-11 of the Report and Recommendations in finding that Caterpillar's five year/500,000 mile warranty did not contemplate future performance for statute of limitations purposes (and thus, held that Trans-Spec had only four years after delivery of the subject engines to bring a breach of warranty claim), Trans-Spec cured any question by including in its proposed amended complaint a concurrent two-year warranty undisputedly in effect at the time Trans-Spec accepted delivery of the engines at issue. Not only did this two-year warranty squarely fit within the definition of a warranty of future performance pursuant to case law cited in the Report and Recommendation – and cured any statute of limitations issue in the process – the text of the two-year warranty showed that Caterpillar itself interpreted its five year/500,000 mile warranty as a warranty of future performance such that the Magistrate Judge erred in her analysis regarding the five year/500,000 mile warranty. Under binding case law cited above, it does not matter when Trans-Spec knew this information; what matters is that its proposed amended complaint cures deficiencies so as to render all its counts viable. Accordingly, the Court should grant Trans-Spec the requested leave to amend.

**B.    The Magistrate Judge ignored binding First Circuit precedent regarding the applicability of Fed. R. Civ. P. 59(e) to her prior ruling dismissing Counts I and II of Trans-Spec's Complaint and failed to correct clear errors as to binding First <u>Circuit and Massachusetts law in that ruling</u>**

District courts may reopen proceedings as to a motion to dismiss under Fed. R. Civ. P. 59(e) ("Rule 59(e)"). *McCord v. Horace Mann Insurance Company*, 390 F.3d 138, 144-45 (1st Cir. 2004). Further, "[i]f the district court considers the merits of the unopposed motion to dismiss as it should and errs in its analysis, the plaintiff may also raise a claim of error through a Rule 59(e) motion." *Pomerleau v. West Springfield Public Schools*, 362 F.3d 143, 146 (1s Cir. 2004). See also *United States v. $23,000*, 356 F.3d 157, 165 n.9 (1st Cir. 2004); *Mackin v. City of Boston*, 969 F.2d 1273, 1279 (1st Cir. 1992) ("once a motion to dismiss or a motion for summary judgment has been granted, the district court has substantial discretion in deciding whether to reopen the proceedings"); *Lone Star Motor Import, Inc.*, 288 F.2d 69, 75-77 (court found it "prejudice, perhaps irreparable, if leave is not granted" to amend a dismissed complaint to establish allegations which would have made the complaint sufficient, especially where the motion to amend came within the ten days allowed under Fed. Rule 59(e) to move for rehearing).

Moreover, Trans-Spec could simply ask the Court to reconsider its prior decision without reference to the Federal Rules. *Platten v. HG Berm. Exempted Ltd.*, 437 F.3d 118, 126 (1st Cir. 2006) (defendants successfully requested district court to reconsider its denial of a motion to dismiss); *Servants of the Paraclete v. Doe*, 204 F.3d 1005, 1012 (1st Cir. 2000) (holding that "a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law"); *Piper v. United States Department of Justice*, 312 F. Supp. 2d 17 (D.D.C. 2004) (because the Federal Rules of Civil Procedure do not explicitly provide for motions to reconsider, Justice Department's motion for reconsideration of court order that it release various documents to plaintiff under the Freedom of Information Act treated as a motion under Fed. R. Civ. P. 59(e)); *Perlmutter v. Shatzer*, 102 F.R.D. 245, 246 (D.Mass. 1984) (plaintiff successfully asked the Court to reconsider its allowance of defendants' motion for leave to amend their answer without reference to any Federal Rule); Wright, Miller & Kane,

Federal Practice and Procedure: Civil 2d §1810.1 at 122 (2nd ed. 1995) ("Rule 59(e) does . . . include motions for reconsideration.").

Here, Trans-Spec's Motion to Amend or Alter established manifest errors of law as required to prevail under a Rule 59(e) motion. *FDIC v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir. 1992). Trans-Spec refers the Court to pages 6-11 of its Motion to Amend or Alter, which shows that, *inter alia*:

- **the Magistrate Judge erred in not applying binding First Circuit and Massachusetts law**, e.g., *Neuhoff v. Marvin Lumber and Cedar Company*, 370 F.3d 197, 201 (1st Cir. 2004) (a "'promise to repair warranty' refers to a type of warranty that stipulated the remedy to be invoked if the produce purchased becomes faulty" and that "[i]f [Caterpillar] does not abide by the promise to repair, then [Trans-Spec] has a cause of action for the underlying breach of warranty for the defective product."); M.G.L. c. 106, §2-725(2) ("where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."; M.G.L. ch. 106, § 2-719(2) ("Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this chapter."); and, *New England Power Company v. Riley Stoker Corporation*, 20 Mass. App. Ct. 25, 30 (1985) ("promises to repair or to replace are generally viewed as specifications of a remedy rather than as an independent or separate warranty," but "when there are a warranty and a promise to repair, the remedy of first resort is the promise to repair. If that promise is not fulfilled, then the cause of action is the underlying breach of warranty."), to her analysis in the Report and Recommendations of Caterpillar's breach of a five year/500,000 mile warranty;

- a concurrent Caterpillar two-year warranty, undisputedly in effect, squarely fit within the definition of warranty of future performance given in cases cited in the Report and Recommendations, rendering any dismissal of Counts I and II of Trans-Spec's Complaint on statute of limitations grounds as clear legal error; and,

- the five year/500,000 mile warranty comprised more than simply a "repair or replace" warranty by Caterpillar's own description of it in the text of its concurrent two year warranty. Instead, the five year/500,000 mile warranty stood as a warranty of future performance pursuant to cases cited in the Report and Recommendations such that the Magistrate Judge's finding that a four year statute of limitations following delivery of the subject engines barred Trans-Spec's claims was clearly erroneous.

Overall, the Report and Recommendation comprised clear legal error because it violated the cardinal rule that complaints are not to be dismissed unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). As shown here and in the Motion to Amend or Alter, Trans-Spec **can** prove a set of facts entitling it to relief on the dismissed claims.

The Magistrate Judge, however, did not realize that she had the ability to alter or amend her prior Report and Recommendation pursuant to Rule 59(e). (Order at p. 6-7). This Court must correct the manifest legal errors described above either by altering or amending its ruling on Caterpillar's Motion to Dismiss or by allowing Trans-Spec to amend its Complaint as proposed, see Exhibit H to the Motion to Amend or Alter.

**C.    Even if Fed. R. Civ. P. 16(b) applied here, and it does not, the Magistrate
Judge erroneously found that Trans-Spec failed to demonstrate good cause
<u>to warrant amendment of its Complaint</u>**

Even if the "good cause" standard articulated in Fed. R. Civ. P. 16(b) applied here – and binding case law holds it does not – the Magistrate Judge erred in finding that Trans-Spec failed to demonstrate good cause for seeking to amend its Complaint. (Order at p. 6). Trans-Spec respectfully submits that its motion to amend meets even the higher "manifest injustice" standard of Fed. R. Civ. P. 16(e). Not allowing Trans-Spec to amend its complaint prevents it from asserting viable claims for Caterpillar's breach of warranty and violation of M.G.L. ch. 93A and eliminates, in violation of the law, its ability to obtain full justice and complete vindication of its rights. Trans-Spec shows additional good cause where allowing it to amend its complaint corrects the Court's mistakes of law, as outlined in the preceding section and in the underlying Motion to Amend or Alter.

In the course of discovery, Trans-Spec ascertained more precisely Caterpillar's actions. The proposed amendments to the Complaint makes it conform to the evidence and facts learned during discovery and expected to be proved at trial and include additional supporting documents and information obtained in the course of discovery which, fairly viewed, supports assertion of all claims in the proposed amended complaint. There was no undue delay in the bringing of the Motion to Amend or Alter within the ten day period following this Court's adoption of the Report and Recommendations nor would any party experience improper prejudice when this

Court grants it. See *Lone Star Motor Import, Inc.*, 288 F.2d 69, 75-77 (court disfavored the argument that permitting an amendment after dismissal constituted prejudice to the defendant). Permission of the amendment will serve the interests of justice. The proposed amended complaint sets forth more completely than possible at any prior time the claims properly able to be asserted by Trans-Spec.

Critically to the Court's Fed. R. Civ. P. 16(b) analysis (even though Fed. R. Civ. P. 16(b) does not apply), Trans-Spec's proposed amended complaint contains additional information not known to it at the time it opposed Caterpillar's Motion to Dismiss. For example, Trans-Spec learned at Caterpillar's Fed. R. Civ. P. 30(b)(6) deposition held on September 22, 2005 ("Rule 30(b)(6) deposition") – over a month after the Magistrate Judge heard oral argument on Caterpillar's Motion to Dismiss – that Caterpillar reimbursed for work performed as to Trans-Spec's first six flywheel housing failures pursuant to Caterpillar's warranties (as opposed to goodwill). See proposed amended complaint at Paragraph 22. This is critical because, by authorizing repair and replacement for Trans Spec's initial flywheel housing problems under the warranties, Caterpillar admitted: a) defects in Caterpillar materials or workmanship caused the failures[3]; b) Trans-Spec operated the trucks within normal parameters; and, c) both the two year and five year/500,000 mile warranties on defects in materials of workmanship on Trans Spec's engines applied. Whether Caterpillar reimbursed under goodwill or warranty could not have been known prior to its Rule 30(b)(6) deposition and this information directly bears on whether Caterpillar breached its warranties and whether these warranties failed of their essential purpose. Caterpillar and its warranties did, respectively, and this renders Trans-Spec's claims timely under the statute of limitations pursuant to *Neuhoff*, 370 F.3d at 201, *New England Power Company*, 20 Mass. App. Ct. at 30, and M.G.L. ch. 106, § 2-719(2) and §2-725(2).

Trans-Spec also learned at the Rule 30(b)(6) deposition that the Caterpillar employees who stopped reimbursement for Trans-Spec's flywheel housing failures did not investigate

---

[3] See also Rule 30(b)(6) deposition, 76.12-14, Ex. D to the Motion to Amend or Alter: "The decision to reimburse is based upon whether or not the failure is the result of a defect in CAT material or workmanship."

whether defective Caterpillar materials or workmanship caused Trans-Spec's problems prior to making their decision, did not consult with any engineers, and did not consult with Caterpillar's Warranty Administration Department. See proposed amended complaint at Paragraph 29. This new information is integral both as it bears on the issues raised in the preceding paragraph but also Trans-Spec's M.G.L. 93A claims (which encompass more than Caterpillar's discrete breach of the five year/500,000 mile warranty). This new information could not have been known prior to Caterpillar's Rule 30(b)(6) deposition either.

Additionally, Caterpillar has engaged in a pattern of dilatory discovery tactics in this case, an unlawful strategy which has greatly impeded Trans-Spec's prosecution of its claims. For example, perceiving the devastating effect it would have on Caterpillar's defense, Caterpillar's counsel initially denied the existence of Caterpillar's warranty claim database. Following the deposition testimony of a Caterpillar dealer and Trans-Spec's filing of a motion to compel, however, Caterpillar changed its position and produced hundreds of pages of records printed from the database that purportedly did not exist a short time earlier. Just as troubling is Caterpillar's failure to disclose, as part of its automatic disclosure, that it had caused to be preserved over half a dozen of Trans-Spec's failed flywheel housings at issue in this lawsuit. Caterpillar remained silent on the existence of the flywheel housings until October 27, 2005 – over a year after Trans-Spec filed suit – at which time Caterpillar's counsel disclosed their existence. See Letter of Christian G. Samito to John A. K. Grunert, October 31, 2005, attached as Exhibit C. Caterpillar refused to produce these flywheel housings to Trans-Spec for inspection in Boston and instead, forced Trans-Spec's expert to fly to Illinois to inspect the undisclosed flywheel housings. Trans-Spec did not, as a courtesy, seek sanctions on this matter.

Caterpillar's discovery tactics bear on this Court's analysis of Trans-Spec's Motion to Amend or Alter pursuant to a Fed. R. Civ. P. 16(b) standard. Caterpillar routinely failed to produce documents and items that should have been produced as a part of its automatic disclosures and responses to discovery requests duly served by Trans-Spec, e.g a July 1998 patent never disclosed by Caterpillar and obtained by Trans-Spec by other means (again, Trans-

Spec did not, as a courtesy, seek sanctions on this matter).  Patent Number 6,065,757, attached as Exhibit F to the Motion to Amend or Alter and filed by Caterpillar on July 2, 1998 – a year and a half before Trans-Spec took delivery of the trucks – notes that in aluminum flywheel housings such as the ones on Trans-Spec's engines, "[d]uring normal operation of an engine, cyclic temperature changes can cause thermal expansion and contraction of various components at varying rates.  The use of components made of different materials adds to the relative movement between components.  For example, the flywheel housing experiences thermal expansion greater than the thermal expansion of a cylinder block causing relative movement between the flywheel housing and the cylinder block.  The relative movement . . . **can cause the flywheel housing** or seal to leak, **crack or can destroy connecting bolts used for connecting the flywheel housing to the cylinder block.**" (emphasis added)  This is precisely what happened on the C-12 engines in Trans-Spec's trucks.

Thus, Trans-Spec now is able to include in Paragraph 35 of its proposed amended complaint the averment that Caterpillar was aware of the defect as well as alternatives to fix the defect, including use of cast iron flywheel housings (as suggested in Caterpillar-produced documents); **a flywheel housing disclosed in a Caterpillar patent application dated in July 1998** (prior to Trans-Spec's purchase of the trucks); or, the use of a metal plate under bolt heads (as suggested in Caterpillar-produced documents).  This new information could not have been known except for documents produced by Caterpillar as well as the patent withheld by Caterpillar and obtained by Trans-Spec by other means.  This new information not only bears on the issues of whether Caterpillar breached its warranties, whether these warranties failed of their essential purpose, and Trans-Spec's M.G.L. ch. 93A claims, but also on Trans-Spec's argument that Caterpillar's fraud and misrepresentations, as well as estoppel, tolled the statute of limitations as to Trans-Spec's claims.

## CONCLUSION

Accordingly, Trans-Spec respectfully objects to the Magistrate Judge's Order and requests that this Court modify that Order to allow Trans-Spec to amend its Complaint and/or alter or amend the Court's dismissal of Counts I and II of Trans-Spec's Complaint.

Respectfully submitted,
TRANS-SPEC TRUCK SERVICE, INC.
d/b/a TRUCK SERVICE
By its Attorneys,

/s/ Christian G. Samito
Nancy M. Reimer, Esq., BBO # 555373
Christian G. Samito, Esq., BBO # 639825
Donovan Hatem, LLP
Two Seaport Lane
Boston, MA 02210
Date: June 14, 2006                (617) 406-4500

## LOCAL RULE 7.1 CERTIFICATE OF CONSULTATION

Counsel for Trans-Spec hereby certifies that he has conferred with defendant's counsel and attempted in good faith to resolve or narrow the issues presented in *Plaintiff Trans-Spec Truck Service, Inc.'s Objection To The Magistrate Judge's Order On Its Motion To Amend Complaint And To Alter Or Amend This Court's Order Dated February 26, 2006.*

/s/ Christian G. Samito

## REQUEST FOR ORAL ARGUMENT

If the Court deems it necessary, Trans-Spec requests oral argument on *Plaintiff Trans-Spec Truck Service, Inc.'s Objection To The Magistrate Judge's Order On Its Motion To Amend Complaint And To Alter Or Amend This Court's Order Dated February 26, 2006.*

## CERTIFICATE OF SERVICE

I, Christian G. Samito, hereby certify that on this 14th day of June, 2006, I served a copy of the foregoing, by electronically filing and by mail, postage prepaid, to:

John A.K. Grunert, Esq.
Campbell Campbell Edwards & Conroy
One Constitution Plaza, 3rd Floor
Boston, MA 02120

/s/ Christian G. Samito

01009454

- 11 -