

EXHIBIT

B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

TRANS-SPEC TRUCK SERVICE INC.,　　　）
D/B/A TRUCK SERVICE　　　　　　　　　 ）
　　　　　　　　　　　　　　　　　　　　）
　　　　　　　　　　　　　Plaintiff,　　　）　　　CIVIL ACTION NO.:04-11836RCL
　　　　　　　　　　　　　　　　　　　　）
v.　　　　　　　　　　　　　　　　　　　 ）
　　　　　　　　　　　　　　　　　　　　）
CATERPILLAR INC.　　　　　　　　　　　 ）
　　　　　　　　　　　　　　　　　　　　）
　　　　　　　　　　　　　Defendant.　　 ）
　　　　　　　　　　　　　　　　　　　　）

## MOTION TO AMEND COMPLAINT AND TO ALTER OR AMEND THIS COURT'S ORDER DATED FEBRUARY 26, 2006 AND LOCAL RULE 7.1 CERTIFICATE AND REQUEST FOR ORAL ARGUMENT

Pursuant to Fed. R. Civ. P. 15(a), plaintiff Trans-Spec Truck Service Inc., d/b/a Truck Service ("Trans-Spec") respectfully moves this Court to allow this Motion to Amend Complaint against defendant Caterpillar Inc. ("Caterpillar"). Pursuant to Fed. R. Civ. P. 59(e), Trans-Spec also respectfully moves this Court to alter or amend its Order dated February 23, 2006 to correct clear legal error and to prevent manifest injustice for the reasons discussed below.

### I.　　BACKGROUND

### A.　　Factual History

In December 1999 and January 2000, Trans-Spec took delivery of twenty-two heavy-duty, custom built trucks to be used by Trans-Spec in its oil delivery service and dump trailer operations. Caterpillar's C-12 engine was an appropriate engine for fuel hauler and dump trailer operations in the New England area where Trans-Spec operates its trucks. Caterpillar Rule 30(b)(6) deposition, September 21, 2005 ("Caterpillar Depo. Day 1"), 134.12-15, attached as Ex. A. Caterpillar C-12 engines powered all twenty-two of Trans-Spec's new trucks. As part of its purchase, at or around the time of delivery, Trans-Spec received from Caterpillar an extended warranty covering the engines "against defects in materials or workmanship under normal use" for five years or 500,000 miles, according to the terms and conditions as specified on the back of the Registration Certificate attached as Ex. B. As part of its purchase, at or around the time of delivery, Trans-Spec also received a concurrent two year warranty, attached as Ex. C, pursuant to

which "Caterpillar Inc. or any of its subsidiaries ('Caterpillar') warrants new . . . C-12 . . . engines sold by it for use in powering on-highway vehicles . . . to be free from defects in material and workmanship" for "24 months after date of delivery to the first user."

By November 2001, serious problems with the flywheel housings in Trans-Spec's C-12 engines began to manifest. At first, Caterpillar paid for the corresponding work performed on the engines in connection with the flywheel housing failures pursuant to the five year/500,000 mile warranty and the two year warranty at Exhibits B and C. Beginning in 2003, however, Caterpillar breached its warranty and refused to further reimburse for work performed on the flywheel housings on the engines in Trans-Spec's trucks. Caterpillar Rule 30(b)(6) deposition, September 22, 2005 ("Caterpillar Depo. Day 2"), 14.4-9, attached as Ex. D; see also Caterpillar Depo. Day 1, 207.3-208.18, Ex. A. To this day, Caterpillar does not offer a permanent, reliable fix for these problems. Caterpillar Depo Day 1, 170.1-175.13, Ex. A. The Caterpillar employees who stopped reimbursement for Trans-Spec's flywheel housing failures did not consult with any engineers to confirm whether defective Caterpillar materials or workmanship caused Trans-Spec's problems prior to making their decision, nor did they consult with Caterpillar's Warranty Administration Department. Caterpillar Depo. Day 2, 52.7-60.23, 68.15-23, Ex. D.

Trans-Spec's expert, Dr. Ekchian, concluded *inter alia* that: 1) Caterpillar knew that the aluminum flywheel housings used in its C-12 engines were flawed; 2) the design of the flywheel housings rendered the Caterpillar C-12 engine model defective; 3) Caterpillar had no basis for rejecting Trans-Spec's warranty claims; and, 4) Caterpillar was aware of alternatives to fix the defect including use of cast iron flywheel housings, a flywheel housing disclosed in a Caterpillar patent application dated in July 1998 (prior to Trans-Spec's purchase of the trucks), or the use of a metal plate under bolt heads as suggested in a Caterpillar document.[1] See Dr. Ekchian Report

---

[1] Patent Number 6,065,757, attached as Exhibit F and filed by Caterpillar on July 2, 1998 – a year and a half before Trans-Spec took delivery of the trucks – notes that in aluminum flywheel housings such as the ones on Trans-Spec's engines, "[d]uring normal operation of an engine, cyclic temperature changes can cause thermal expansion and contraction of various components at varying rates. The use of components made of different materials adds to the relative movement between components. For example, the flywheel housing experiences thermal expansion greater than the thermal expansion of a cylinder block causing relative movement between the flywheel housing and the

(without exhibits) attached as Ex. E. Trans-Spec's second expert, Dr. Service, concluded *inter alia* that the flywheel housing and the bolted connection between the housing and the engine block revealed inherent design defects including overstressing of the flywheel housings under normal operating conditions and an under-designed bolted connection resulting from improper joint design. These defects, according to Dr. Service, could be remedied by proper engineering design and analysis. See Dr. Service Report (without exhibits) attached as Ex. G.

In sum, Caterpillar sold Trans-Spec engines it knew or should have known to be defective; provided warranties on those engines, including warranties against defects in materials or workmanship for two years and for five years/500,000 miles; authorized initial repairs that made it appear to Trans-Spec as if Caterpillar had honored its two year and five year/500,000 mile warranties as to Trans-Spec's flywheel housing failures; and, disclaimed the five year/500,000 mile warranty, which accordingly failed of its essential purpose, in 2003 after the flywheel housing defects continued to manifest themselves.

### B.    Procedural History

Trans-Spec brought this suit against Caterpillar on August 23, 2004 alleging breach of warranty and violation of Mass. Gen. Laws c. 93A ("Chapter 93A"). Trans-Spec amended its Complaint on August 26, 2004 so as to correct a clerical mistake in naming one of the parties. Trans-Spec subsequently sought leave from the Court to amend its Complaint to assert a claim of negligence; the Court granted leave to do so on May 20, 2005.

On January 31, 2006, Magistrate Judge Joyce London Alexander submitted her Report and Recommendations regarding Caterpillar's *Motion to Dismiss the Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)*. The Magistrate Judge recommended dismissing Counts I and II of the Second Amended Complaint, regarding Caterpillar's breach of warranty

---

cylinder block. The relative movement . . . **can cause the flywheel housing** or seal to leak, **crack or can destroy connecting bolts used for connecting the flywheel housing to the cylinder block.**" (emphasis added)  This is precisely what happened on the C-12 engines in Trans-Spec's trucks.

and violation of Chapter 93A, on statute of limitation grounds. The Magistrate Judge did not specify whether this dismissal was to be with or without prejudice.

On February 9, 2006, Trans-Spec filed its Objection to the Magistrate Judge's Report and Recommendations. In this Objection, Trans-Spec sought leave to amend its Complaint. On February 22, 2006, Caterpillar filed its Reply to Trans-Spec's Objection. On February 23, 2006, Judge Reginald C. Lindsay entered the following Electronic Order:

> ADOPTING REPORT AND RECOMMENDATIONS for [56] MOTION of Caterpillar Inc. to Strike Portions of the Plaintiffs Opposition to Motion to Dismiss and to Strike Certain Attachments and [53] MOTION of Caterpillar, Inc. to Dismiss Second Amended Complaint Action on motion: The motion to dismiss counts I and II of the second amended complaint is granted. Because neither the magistrate judge nor I have relied on the documents attached to the plaintiff's opposition, the motion to strike those documents and the portion of the opposition referring to them is moot.

Thus, the District Court did not address the Motion to Amend contained in Trans-Spec's Objection nor did it specify whether the dismissal of Counts I and II of the Second Amended Complaint were with or without prejudice. Accordingly, Trans-Spec brings this Motion.

## II.    ARGUMENT

### A.    Leave to Amend Is Appropriate Here

Leave to amend a complaint "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), and is appropriate here. The express policy of this rule favors allowing amendments "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). To justify a denial of a motion to amend, there must be undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by previous amendments allowed, undue prejudice to the opposing party, or futility of amendment. *Id.* In the absence of such a reason, as here, leave to amend should be granted. *Id.*

In *Foman*, the appellant sought and obtained leave to amend a complaint *after* the complaint had been dismissed by the district court. *Foman*, 371 U.S. at 179. When examining a similar situation where a plaintiff sought to amend a complaint after dismissal, the First Cirsuit

Court of Appeals held, "while permission to amend a complaint after dismissal of the action rests in the sound discretion of the court, amendment to correct a deficiency in pleading should be 'freely given when justice so requires[.]' **Where the amended complaint would state a valid cause of action, a motion to amend should normally be granted.**" *Gaffney v. Silk*, 488 F.2d 1248, 1251 (1st Cir. 1973) (citations omitted, emphasis added); see also *Gomez v. Toledo*, 602 F.2d 1018, 1021 (1st Cir. 1979). Thus, the *Gaffney* court held that where the proposed amended complaint sufficiently stated a cause of action, "the district court abused its discretion in failing to grant plaintiffs' motion to amend." *Gaffney*, 488 F.2d at 1250. When a claim is dismissed under Rule 12(b)(6), courts customarily allow leave to amend" because "[i]f a plaintiff has 'at least colorable grounds for relief, justice does . . . require leave to amend.'" *Williams v. Astra USA, Inc.*, 68 F. Supp. 2d 29, 33 (D. Mass. 1999).[2]

Here, Trans-Spec seeks leave to amend its Complaint so as to make it conform to the evidence and facts learned during discovery and expected to be proved at trial.[3] In the course of discovery, Trans-Spec ascertained more precisely Caterpillar's actions. The Amended Complaint includes additional supporting documents and information obtained in the course of discovery

---

[2] It is well-established that leave to amend is freely granted after dismissal of a complaint, see *Buckey v. County of Los Angeles*, 968 F.2d 791, 794-95 (9th Cir. 1992)(overturning district court's denial of leave to amend after it dismissed complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6)); *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48-50 (2nd Cir. 1991) ("we think it an abuse of discretion to deny leave to replead" where claim not futile and "there is no suggestion from the averments of the complaint that an amendment would not supply the facts required to support the allegations and to cure the defect."); *Oliver Sch. v. Foley*, 930 F.2d 248, 252-53 (2nd Cir. 1991) (finding that leave to amend should be granted "[w]here the possibility exists that the defect can be cured" even where the plaintiff did not explicitly move for leave); *Lone Star Motor Import, Inc. v. Citroen Cars Corporation*, 288 F.2d 69, 75-77 (5th Cir 1961) (court found it a) "prejudice, perhaps irreparable, if leave is not granted" to amend a dismissed complaint to establish allegations which would have made the complaint sufficient, especially where the motion to amend came within the ten days allowed under Fed. R. Civ. P. 59 to move for rehearing; b) disfavored the argument that permitting the amendment constituted prejudice to the defendant; and, c) held that "[i]n the face of a rule which commands that leave 'shall be freely given when justice so requires,'" and "[w]ith the consequences of an outright dismissal so decisive and perhaps final, the minimum required . . . was to give the plaintiff an opportunity" in the "form of allowing the filing of the proposed amendment."); *Orion Elec. Co. v. Funai Elec. Co.*, 2002 U.S. Dist. LEXIS 3928, * 26-27 (S.D.N.Y. 2002) (granting leave to replead because: a) "[i]t is the usual practice upon granting a motion to dismiss"; b) the dismissed claims were not futile; c) "[p]laintiffs may or may not be able to plead the facts necessary to state a claim; they simply have not done so in the Amended Complaint"; and, d) because "this is not a situation where a plaintiff was informed as to what it was required to plead but then failed to do so.").

[3] In doing so, Trans-Spec cures any deficiencies noted in the Magistrate Judge's Report and Recommendations adopted by this Court on February 23, 2006.

and this evidence, fairly viewed, supports assertion of all claims in the proposed Amended Complaint. There is no undue delay in the bringing of this Motion nor will any party experience improper prejudice when this Court grants it. Permission of the amendment will serve the interests of justice. The proposed Amended Complaint sets forth more completely than possible at any prior time the claims properly able to be asserted by Trans-Spec but does not add any new theory of law or recovery.

**B.     Proposed Additional Material**

In the proposed Third Amended Complaint attached as Exhibit H, Trans-Spec has added only information gleaned from depositions taken under oath and with an opportunity for cross-examination or pursuant to documents produced by Caterpillar or other entities in the course of discovery. Based on the source of the material to be added, the allowance of this Motion will not unduly prejudice any party in this matter. No further discovery is needed by either party as a result of the proposed amendment. Moreover, Caterpillar suspended, but did not close, Trans-Spec's Rule 30(b)(6) deposition. Although discovery is closed, Trans-Spec will not object if Caterpillar wishes to seek any additional testimony from Trans-Spec.

**C.     The Court Should Grant This Motion Regardless of Caterpillar's Anticipated Objection That It Is Futile**

Trans-Spec anticipates that Caterpillar will object to this Motion on the purported grounds that it is futile because Trans-Spec's breach of warranty and Chapter 93A claims are barred by the applicable statute of limitations. This argument is incorrect.

**1.     Trans-Spec's causes of action are viable and are not barred by the statute of limitations.**

**a.     Breach of Warranty**

Count I of Trans-Spec's Third Amended Complaint alleges breaches of implied and express warranties. Trans-Spec alleges that Caterpillar extended warranties during negotiations for the sale of the subject C-12 engines. Upon consummation of that sale, Caterpillar also expressly agreed in writing to reimburse Trans-Spec for any "failures due to defects in materials or workmanship under normal use" for a period of five years/500,000 miles. Caterpillar further

extended to Trans-Spec a concurrent written warranty pursuant to which Caterpillar "warrants new . . . C-12 . . . engines    . . . to be free from defects in material and workmanship" for "24 months after date of delivery to the first user." See Exs. B and C for the five year/500,000 mile and the two year warranties.

i.    **Future Performance Under the Five year/500,000 mile warranty**

Trans-Spec's breach of warranty count encompasses types of warranties governed by the statute of limitations provision contained in M.G.L. ch. 106, § 2-725(2). Separate from the warranties Caterpillar extended in connection with the sale of the C-12 engines, Caterpillar also agreed that it would "pay 100% of the components and labor charges for covered failures, with no deductible charges" for five years or five hundred thousand miles. See Ex. B. Thus, Caterpillar offered Trans-Spec a warranty that its engines would be free from "defects in materials or workmanship under normal use" during a five year period and represented that if any defects in materials or workmanship arose during that specified time, Caterpillar would pay for the necessary repairs. See Ex. B.

Trans-Spec alleges as part of its breach of warranty count that certain engine components were not repaired by Caterpillar when they broke. Caterpillar confirmed that it breached its warranty and refused to further reimburse for repairs to flywheel housings on Trans-Spec's trucks beginning in 2003. Caterpillar Depo. Day 2, 14.4-9, Ex D. Caterpillar further admitted that the Caterpillar employees who stopped reimbursement for Trans-Spec's flywheel housing failures did not consult with any engineers to confirm whether defective Caterpillar materials or workmanship caused Trans-Spec's problem prior to making their decision, nor did they consult with Caterpillar's Warranty Administration Department. Caterpillar Depo. Day 2, 52.7-60.23, 68.15-23, Ex. D. Pursuant to M.G.L. ch. 106, § 2-725(2), **Trans-Spec's breach of warranty claims in this regard accrued in 2003.** Trans-Spec brought this suit in August 2004, well before the applicable statute of limitations runs in 2007.

In *Standard Alliance Industries, Inc. v. The Black Clawson Company*, 587 F.2d 813 (6th Cir. 1978), cert. denied, 441 U.S. 923 (1979), the Court held that "**[i]f a seller expressly**

warrants a product for a specified number of years, it is clear that, by this action alone, he is explicitly warranting the future performance of the goods for that period of time." *Standard Alliance*, 587 F.2d at 820-21 (emphasis added). Accordingly, where a defendant warranted a machine for one year, "the warranties explicitly extended to future performance for a period of one year," and "under § 2-725(2) the cause of action accrued when plaintiff discovered or should have discovered that the machine was defective, so long as the defect arose within the warranty period." *Id.* In an analogy directly applicable to this case, the Court noted, "if an automobile is warranted to last for twenty-four thousand miles or four years, the warranty should extend to future performance. If the car fails within the warranty period, the limitations period should begin to run from the day the defect is or should have been discovered." *Standard Alliance*, 587 F. 2d at 821.

A warranty guaranteeing Trans-Spec that engines it purchased will be free from any defects in materials or workmanship for five years/500,000 miles and assuring that Caterpillar will reimburse for necessary repairs if any defects in materials or workmanship arose during that specified time explicitly extends to future performance. See *Grand Island Express v. Timpte Indus., Inc.,* 28 F.3d 73, 75 (8th Cir. 1994) (holding that a warranty promising that trailers would be free from defects in material and workmanship for a period of five years from the date of delivery to the purchaser extended to future performance); *R. W. Murray Co. v. Shatterproof Glass Corp.*, 697 F.2d 818, 823 (8th Cir. 1983) (holding that warranties providing that glass units would perform in a specified manner for a specified period of time with a limitation of the remedy to repair or replacement in the event of a breach of those warranties extended to future performance); *Standard Alliance*, 587 F.2d at 820-21; *Executone Bus. Sys. Corp. v. IPC Communications, Inc.*, 177 Mich. App. 660, 668-69, 442 N.W.2d 755, 760 (1989) (holding that warranty that guaranteed telephone systems to be free from defects in material and workmanship for a period of 13 months extended to future performance), review denied (Mich. Feb. 26, 1990). As aptly stated by the Supreme Court of Pennsylvania in *Nationwide Ins. Co. v. General Motors Corp.*, 533 Pa. 423, 625 A.2d 1172, 1178 (1991),

> There can be little question that the consumer will consider the length of any warranty offered in determining whether to purchase a particular vehicle: [sic] The consumer naturally would believe that the longer the warranty, the greater the protection, and hence, the better the value, he or she is receiving. If Appellee's position were to prevail, the protection afforded the buyer during the latter part of a warranty approaching four years would be largely illusory, as the buyer would have a very short period of time in which to bring a cause of action for breach. Moreover, the longer-term protection afforded by a warranty extending beyond four years would be completely illusory.

Any holding that Caterpillar's warranty expired four years after delivery of the truck engines is inconsistent with the warranty's express language providing for a five-year period as well as the above-cited case law.

Furthermore, the First Circuit has held that **a "'promise to repair warranty' refers to a type of warranty that stipulates the remedy to be invoked if the product purchased becomes faulty," and that "[i]f the promisor does not abide by the promise to repair, then the promisee has a cause of action for the underlying breach of warranty for the defective product."** *Neuhoff v. Marvin Lumber and Cedar Company*, 370 F.3d 197, 201 (1st Cir. 2004)(emphasis added)(citing *Standard Alliance*, 587 F.2d at 818 n.10). In other words, a warranty explicitly extending to future performance of the goods for a specified time exists where Caterpillar limited Trans-Spec's remedy to repair and replacement of the goods for a period of time, and where, as here, this exclusive or limited remedy fails of its essential purpose, all remedies provided by the Uniform Commercial Code become available. *R. W. Murray*, 697 F.2d at 823; M.G.L. ch. 106, § 2-719.

Finding Trans-Spec's breach of warranty count as barred by the statute of limitations would relieve manufacturers from honoring any warranty past the four year mark. The extended service coverage plan given by Caterpillar to Trans-Spec explicitly warranted future performance (payment for charges for engine part failures) for a specific future time (five years or five hundred thousand miles). Holding Trans-Spec's breach of warranty claim as barred, however, invalidates any such warranty or extended service coverage plan insofar as it extends beyond four years. By precluding suits past the four year statute of limitations, this Court would nullify lifetime warranties commonly extended by manufacturers, time- or mileage-based warranties

such as the one Caterpillar extended to Trans-Spec, and which are of the type commonly provided to consumers by automotive and trucking companies, and even federal emissions warranties promulgated by the Environmental Protection Agency, see 42 U.S.C.S. § 7541, which run for eight years or 80,000 miles of vehicle use.

M.G.L. c. 106, §2-725(2) governs here. It holds, "where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." Under this provision, **Trans-Spec's cause of action** as to its breach of warranty claims related to the five year/500,000 mile warranty **accrued in 2003**. Accordingly, the statute of limitations as to this portion of Trans-Spec's claims **does not run until 2007** and the amendments for which Trans-Spec seeks leave are not futile.

### ii.    Future performance under the two-year limited warranty

Upon consummation of the sale, Caterpillar also extended to Trans-Spec a two year warranty, Ex. C, which ran concurrently with the five year/500,000 mile warranty described above. This second warranty explicitly state that "Caterpillar Inc. or any of its subsidiaries ('Caterpillar') warrants new . . . C-12 . . . engines sold by it for use in powering on-highway vehicles . . . to be free from defects in material and workmanship" for a period of "24 months after date of delivery to the first user." Ex. C.

As with the five year/500,000 mile warranty, this second warranty extended to future performance controlled by M.G.L. ch. 106, § 2-725(2). *Grand Island*, 28 F.3d at 75; *R. W. Murray Co.*, 697 F.2d at 823; *Standard Alliance*, 587 F.2d at 820-21; *Nationwide Ins. Co.*, 625 A.2d at 1178; *Executone Bus. Sys. Corp.*, 442 N.W.2d at 760.

Any reliance on the non-binding analysis in *Ontario Hydro v. Zallea Systems, Inc.* 569 F. Supp. 1261 (D. Del. 1983) regarding Caterpillar's warranties is misplaced in light of the binding *Neuhoff* case and M.G.L. ch. 106, § 2-719 cited on pp. 10-11 above. Moreover, even the *Ontario Hydro* court would concede that Caterpillar's two year warranty is one of future performance pursuant to M.G.L. ch. 106, § 2-725(2): "A warranty of future performance of a product must

expressly provide some form of guarantee that the product will perform in the future as promised." *Ontario Hydro*, 569 F. Supp. at 1266.[4] Here, Caterpillar's second warranty unambiguously "warrants new . . . C-12 . . . engines . . . to be free from defects in material and workmanship" for "24 months" as well as provides the remedy of repair or replacement at no cost to the first user.[5]

According to Caterpillar's records and those of one of its authorized dealers, Minuteman Trucks, Inc., the first flywheel housing problem manifested itself – thus setting the earliest time Trans-Spec could have discovered the defects in Caterpillar's materials and workmanship – in November 2001. Even if this flywheel housing failure was on one of the trucks delivered to Trans-Spec in December 1999, the two year warranty would not have expired until December 2001. As a warranty of future performance subject to M.G.L. ch. 106, § 2-725(2), Trans-Spec's claims accrued in November 2001. Thus, the statute of limitations did not run until November 2005, **over a year after** Trans-Spec filed this suit.

Moreover, in choosing to continually replace one defective part on Trans-Spec's engines with a part containing the same defects, and not rectifying the defect on all twenty two of Trans-Spec's engines, Caterpillar repeatedly breached both the two year and the five year/500,000 mile warranties. Caterpillar failed "to correct the defect," as mandated by the two year warranty at Ex. C or "repair" the failures as called for in the five year/500,000 mile warranty at Ex. B. Accordingly, Trans-Spec brought this suit, and it did so within the applicable statute of limitations such that the amendments for which leave is sought by Trans-Spec are not futile.

---

[4] See also *New England Power Company v. Riley Stoker Corporation*, 20 Mass. App. Ct. 25, 30 (1985), which states that **"promises to repair or to replace are generally viewed as specifications of a remedy rather than as an independent or separate warranty,"** it also holds that **"when there are a warranty and a promise to repair, the remedy of first resort is the promise to repair. If that promise is not fulfilled, then the cause of action is the underlying breach of warranty."** (emphasis added).

[5] Furthermore, in describing the five year/500,000 mile warranty in the text of the two year warranty, Caterpillar states that "parts are warranted against defects in material and workmanship for 60 months or 500,000 miles . . . whichever occurs first after date of delivery to the first user." Ex. C. This further supports the interpretation that the five year/500,000 mile warranty is more than simply a "repair or replace" warranty but one that warrants against defects in material or workmanship for five years of 500,000 miles and places it within the category of a warranty of future performance even pursuant to the *Ontario Hydro* ruling.

### iii.   <u>Estoppel tolls the applicable statute of limitations as to all of Trans-Spec's breach of warranty claims</u>

Estoppel tolls the applicable statute of limitations as to all of Trans-Spec's breach of warranty claims. Trans-Spec initiated this litigation only **after years of negotiation** with Caterpillar and Caterpillar's local agent and distributor, Southworth Milton, Inc. ("Milton"), failed to remedy its losses. Deposition of Joseph M. Howard, Jr., 227.15-228.20; 231.14-233.11, attached as Ex. I; Affidavit of Joseph M. Howard, Jr. ¶ 2, attached as Ex. J. Trans-Spec declined to file suit during this time because it relied on repeated assurances that Caterpillar would compensate it for the damages it suffered. Howard aff., ¶ 3, Ex. J.

Discussions between Trans-Spec and Caterpillar and/or Caterpillar's agent took place prior to as well as since Caterpillar's disclaimer of its warranty in 2003, and these conversations fell within the four year statute of limitations. In addition to the above-referenced testimony from Trans-Spec's owner and president, an employee of Caterpillar's agent Milton testified about repeated conversations he had with both Caterpillar and Trans-Spec about the flywheel housing failures beginning in late 2002. Deposition of Albert Cardoza, 116.23-118.7, attached as Ex. K; Deposition of Joseph M. Howard, Jr., August 9, 2005, 94.2-24, attached as Ex. L. Cardoza and another employee of Caterpillar's agent and local distributor Milton, Harry Calderbank ("Calderbank"), made repeated representations to Trans-Spec that Trans-Spec would be made whole for the damage it suffered as a result of the defective C-12 engines. Trans-Spec's Amended Answer to Interrogatory No. 11, Ex. M. Meetings Trans-Spec attended in June and August 2004 put the capstone on a long pattern of assurance from Caterpillar and Caterpillar's agent that Trans-Spec would be made whole for the damages it suffered. Moreover, by replacing flawed parts with the same flawed parts until 2003, Caterpillar authorized work which it knew would not fix Trans-Spec's flywheel housings but which would extend performance of the engines to the future, make Trans-Spec believe that Caterpillar had fixed the problems, and postpone this lawsuit.

Additionally, it is undisputed that Caterpillar initially authorized repair and replacement for Trans-Spec's flywheel housing problems pursuant to the two year and five year/500,000 mile warranties on Trans-Spec's engines. Caterpillar's doing so directly bears on the applicable statute of limitations. The Registration Certificate attached as Ex. B provides reimbursement for covered components' failures "due to defects in Caterpillar materials or workmanship under normal use." Thus, by authorizing repair and replacement for Trans Spec's initial flywheel housing problems, Caterpillar admitted that: a) defects in Caterpillar materials or workmanship caused the failures[6]; b) Trans-Spec operated the trucks within normal parameters; and, c) the two year and five year/500,000 mile warranties on defects in materials of workmanship on Trans Spec's engines applied. See also Caterpillar Depo. Day 1, 207.3-208.18, Ex. A.

Trans-Spec believed that Caterpillar would correct the defects pursuant to assurances in its warranties that it would "correct the defect," Ex. C, and "repair" the failures, Ex. B, and that no lawsuit would be necessary. Caterpillar's actions in agreeing to repair the initial flywheel housing failures until 2003 gulled Trans-Spec into thinking that Caterpillar had or would devise an adequate fix for the flywheel housing defects on its truck engines and that Caterpillar would employ that fix on every one of truck engines when they failed. As shown more fully in Dr. Eckhian's report attached as Ex. E, Caterpillar was aware of alternatives to fix the defect including the use of cast iron flywheel housings, a flywheel housing disclosed in a Caterpillar patent application attached as Exhibit F dated in July 1998 (prior to Trans-Spec's purchase of the trucks), or the use of a metal plate under bolt heads as suggested in a Caterpillar document. Instead of utilizing any of these fixes, however, Caterpillar simply replaced Trans-Spec's defective flywheel housings with similarly flawed parts until refusing, in 2003, to do even this. Caterpillar never rectified Trans-Spec's problem, though it managed to temporarily postpone Trans Spec's future engine failures and this lawsuit. Caterpillar's affirmative acts prevented Trans-Spec from discovering its cause of action until Trans-Spec realized, through repeat

---

[6] See also Caterpillar Depo. Day 2, 76.12-14, Ex. D: "The decision to reimburse is based upon whether or not the failure is the result of a defect in CAT material or workmanship."

flywheel housing failures, that Caterpillar never fixed the defective parts in the first place. As a result of Caterpillar's fraudulent concealment, the statute of limitations under the Uniform Commercial Code is tolled. M.G.L. ch. 260, § 12; *Bogosian v. Energy North, Inc.*, 2001 Mass. Super. LEXIS 617, * 7 n. 3.

Whether "a promisor making such a promise should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and if the promise did induce such action or forbearance" is a question of fact appropriately left to the jury for determination. *Neuhoff*, 370 F.3d at 204-05. Trans-Spec is accordingly entitled to present proof to the jury that Caterpillar is estopped from asserting a statute of limitations defense where it "made representations [it] knew or should have known would induce the plaintiffs to put off bringing a suit and . . . the plaintiffs did in fact delay in reliance on the representations." *Coady v. Marvin Lumber and Cedar Company*, 167 F.Supp. 2d 166, 171 (D. Mass. 2001); see also *Deisenroth v. Numonics Corporation*, 997 F. Supp. 153, 157 (D. Mass. 1998) ("[A] defendant waives the statute of limitation defense . . . where it gulls plaintiff by making such representations throughout the entire statutory period."). "[I]t would be contrary to justice for [Caterpillar] to hold out the hope of an amicable adjustment of a loss, and thus delay the action of [Trans-Spec], and then be permitted to plead this very delay, caused by its course of conduct, as a defense to the action when brought." *Thompson v. Phenix Insurance Co.*, 136 U.S. 287, 299 (1890). Thus, Caterpillar is estopped from relying on a statute of limitations defense regarding any claim of breach of warranty, express or implied, or violation of Chapter 93A where Trans-Spec was "induced by the conduct of [Caterpillar] to do something different from what otherwise would have been done and which has resulted to his harm and that the other knew or had reasonable cause to know that such consequence might follow." *Boston & A. R. R. v. Reardon*, 226 Mass. 286, 291 (1917).

Accordingly, estoppel tolls the applicable statute of limitations such that the amendments for which Trans-Spec seeks leave are not futile.

iv.    **Caterpillar's Purported Disclaimers Do Not Bar Any of Trans-Spec's Claims**

Trans-Spec anticipates that Caterpillar will claim that so much of Count I as is based on Caterpillar's breaches of implied warranties is barred by Caterpillar's disclaimer on the applicable warranty documents. Nonetheless, "[n]o principle of law is more clearly established than that '[w]hen a party binds himself by contract to do a work or to perform a service, he agrees by implication to do a workmanlike job and to use reasonable and appropriate care and skill in doing it.'" *George v. Goldman*, 333 Mass. 496, 497 (1956). "This is true whether the work consists in building a house, repairing an automobile, treating a patient or defending against a claim or a lawsuit." *Abrams v. Factory Mut. Liability Ins. Co.*, 298 Mass. 141, 143 (1937). Allowing Caterpillar to disclaim its implied duty to perform repairs under its warranty in a workmanlike manner and to use reasonable and appropriate care and skill in doing so would render its warranty obligations meaningless and hollow. As Trans-Spec has confirmed through ongoing discovery, Caterpillar mandated inappropriate or inadequate repairs to be performed on Trans-Spec's trucks even where it purported to honor its warranty obligations. Deposition of Kevin Holmes, 80.1-82.11, attached as Ex. N; Deposition of Robert Barton, 167.15-169.2, attached as Ex. O. Furthermore, even an offer of continual replacement of the engine blocks does not provide a permanent solution because, *inter alia*, breakdowns and the loss of business that accompanies them will continue to occur. As confirmed by Caterpillar itself, no reliable or permanent fix exists for the type of engine problems Trans-Spec has suffered. Caterpillar Depo Day 1, 170.1-175.13, Ex. A.

Furthermore, while the warranty document drafted by Caterpillar purports to disclaim all warranties in general terms, it does not contain an integration clause disclaiming any representations or warranties not set forth in the agreement or preventing Trans-Spec from introducing evidence of oral representations. *Cummings v. HPG Int'l, Inc.*, 244 F.3d 16, 21 n.2 (1st Cir. 2001); *Town & Country Fine Jewelry Group v. Hirsch*, 875 F. Supp. 872, 876-77 (D. Mass. 1994). Caterpillar orally waived any exclusion of express or implied warranties on multiple occasions. Trans-Spec's Amended Answer to Interrogatory No. 11, attached as Ex. M.

Caterpillar made warranties of merchantability, safety and fitness for ordinary purposes as well as fitness for the particular purpose for which the engines were to be used at the time of purchase. Around the time Trans-Spec contemplated what types of engines to purchase, Cardoza and Calderbank repeatedly met with Trans-Spec personnel to make representations regarding the capabilities of the C-12 engine and warranties associated with it. Howard depo, 66.16-70.16; 109.15-111.19, Ex. I; Cardoza depo., 49.4-51.15, Ex. K; Deposition of Ralph A. Lind, Jr., 66.1-67.4, 122.23-125.14, attached as Exhibit P. Not only did Cardoza and Calderbank participate frequently in the determination of the trucks' configuration, a regional Caterpillar representative based out of Caterpillar's Hartford, Connecticut office also made representations. Deposition of Donald Medbery, 29.21-36.19; 38.4-24; 41.15-24, attached as Exhibit Q.

After the flywheel housings began to fail, Cardoza and Calderbank repeatedly told Trans-Spec that it would be made whole for the damage it suffered as a result of the defective C-12 engines. Trans-Spec's Amended Answer to Interrogatory No. 11, Ex. M. In June 2004, officers of Trans-Spec attended a meeting to address the defective engines. Howard depo., 231.14-23, Ex. I. This meeting included, among others, Caterpillar's Truck Engine District Manager for the New England region, Troy Guidotti ("Guidotti"). Howard depo, 231.14-23; 233.18-234.6, Ex. I. During this meeting, Guidotti told Trans-Spec that "Caterpillar will make you whole," and assured that the problems with the C-12 engines were not Trans-Spec's fault. Howard depo., 238.14-239.15, Ex. I; Trans-Spec's Amended Answer to Interrogatory No. 11, Ex. M. In August 2004, officers of Trans-Spec again attended a meeting. Howard depo., 247.18-248.2, Ex. I. Along with Guidotti, Caterpillar Regional Manager Schoening attended and explicitly stated, "this is absolutely not your [Trans-Spec's] fault and Caterpillar will make you whole." Howard depo., 250.13-19, Ex. I. Nonetheless, Caterpillar has done nothing to make Trans-Spec whole for the losses it suffered as a result of purchasing Caterpillar engines.

Moreover, Caterpillar knew or should have known that its C-12 engines were defective and it ignored its warranty obligations. Thus, Caterpillar's warranties failed of their essential purpose. Additionally, Caterpillar's attempt to disclaim the warranties is oppressive and

unconscionable and warrants nullification of any purported disclaimers. *Andover Air Limited Partnership v. Piper Aircraft Corp.*, 1989 U.S. Dist. LEXIS 7345, *19, 21 (D. Mass. 1989) ("Massachusetts courts have required that a contract clause resulting in unfair surprise and oppression of the allegedly disadvantaged party will be declared unconscionable"); *see also Zapatha v. Dairy Mart Inc.* 381 Mass. 284, 294 (1980); *Sosik v. Albin Marine, Inc.*, 2003 Mass. Super. LEXIS 160, *19-23 (finding disclaimer unconscionable and denying summary judgment on a claim for breach of implied warranty of merchantability and implied warranty of fitness).[7]

Accordingly, Caterpillar's purported disclaimers do not bar any of Trans-Spec's claims and the amendments for which Trans-Spec seeks leave are not futile.

**b.    Trans-Spec's Chapter 93A claim is not barred.**

Count II of Trans-Spec's Complaint alleges that Caterpillar breached Chapter 93A. The accrual date of a Chapter 93A claim is established by the same principles that govern the determination of the underlying actions. *Hanson Housing Authority v. Dryvit System, Inc.*, 29 Mass. App. Ct. 440, 448 (1990). Therefore, Trans-Spec's Chapter 93A claims accrued at the same time as the breach of warranty claims. Whether estoppel applies or accrual dates of November 2001 (pursuant to the two year warranty) and 2003 (pursuant to Caterpillar's undisputed disclaimer of its five year/500,000 mile warranty, Caterpillar Depo. Day 2, 14.4-9, Ex D), are used, the outcome remains the same: Trans-Spec's Chapter 93A claims that Caterpillar knowingly sold defective engines, inappropriately breached its warranties, and refused to remedy the harm it caused Trans-Spec, survive the statute of limitations.

Furthermore, the Court has implied the appropriateness of using the discovery rule in conjunction with the statute of limitation of Chapter 93A claims. *Coady*, 167 F.Supp. 2d at 171.

---

[7] Trans-Spec anticipates that Caterpillar will cite a purported disclaimer of negligence in the Two Year Warranty at Exhibit C. Besides the fact that the Two Year Warranty failed of its essential purpose, the Two Year Warranty's disclaimer of Caterpillar's negligence is void as unconscionable. *Somerset Savings Bank v. Chicago Title Insurance Company*, 420 Mass. 422, 431-32 (1995) (rejecting a disclaimer of negligence after "balancing . . . the freedom of contract against possible harm to the public resulting from allowing such exculpation"); *Omni Flying Club, Inc. v. Cessna Aircraft Co.*, 366 Mass. 154, 159-160 (1974) (rejecting a disclaimer of negligence where the disclaimer appeared, as here, "in [Caterpillar's] own standard warranty provision which was not signed by either party . . . and which the plaintiff may or may not have had a copy of at the time the agreement was signed.").

In *Coady*, the plaintiff bought the defective goods in 1985 but discovered their defective condition in 1987, and the Court held the plaintiff's Chapter 93A claim "time-barred because it was not asserted within four years of either date." *Id.* Here, Trans-Spec could not have known that its flywheel housings had defects until they began to fail in November 2001.

Additionally, Trans-Spec's Chapter 93A claim encompasses other acts committed by Caterpillar and learned in the course of discovery, specifically that Caterpillar misled Trans-Spec into believing that Caterpillar had or would devise an adequate fix for the flywheel housing defects and that Caterpillar would employ that fix on all of its engines as they failed.

Accordingly, Trans-Spec's Chapter 93A claim is not barred and the amendments for which Trans-Spec seeks leave are not futile.

## IV.    CONCLUSION

WHEREFORE, Trans-Spec respectfully requests that this Court allow this Motion to Amend Complaint for the foregoing reasons.

<div style="margin-left: 40%;">

Plaintiff,
TRANS-SPEC TRUCK SERVICE INC.,
D/B/A TRUCK SERVICE
By their attorneys

/s/ Christian G. Samito
Nancy M. Reimer, Esq., BBO#555373
Christian G. Samito, Esq., BBO#639825
Donovan Hatem, LLP
Two Seaport Lane
Boston, MA 02210
(617) 406-4500

</div>

Date:  March 1, 2006

### LOCAL RULE 7.1 CERTIFICATE OF CONSULTATION

I, Christian G. Samito, hereby certify that Counsel for Trans-Spec has conferred with defendant's counsel and attempted in good faith to resolve or narrow the issues presented in this *Motion to Amend Complaint and to Alter or Amend This Court's Order Dated February 26, 2006.*

<div style="margin-left: 50%;">

/s/ Christian G. Samito
Christian G. Samito

</div>

### REQUEST FOR ORAL ARGUMENT

If the Court deems it necessary, Trans-Spec requests oral argument on its *Motion to Amend Complaint and to Alter or Amend This Court's Order Dated February 26, 2006.*

## CERTIFICATE OF SERVICE

I, Christian G. Samito, hereby certify that I have this day, March 1, 2006, served a copy of the foregoing pleading electronically and by sending a copy by first class mail, postage prepaid, to:

John A. K. Grunert, Esq.
Campbell Campbell Edwards & Conroy
One Constitution Plaza, 3rd Floor
Boston, MA  02129

/s/ Christian G. Samito
Christian G. Samito

00982473