UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TRANS-SPEC TRUCK SERVICE, INC. d/b/a TRUCK SERVICE, <br><br> Plaintiff <br><br> vs. <br><br> CATERPILLAR INC. <br><br> Defendant | CIVIL ACTION NO. 04-11836-RCL |

### CATERPILLAR INC.'S OPPOSITION TO PLAINTIFF'S OBJECTION TO THE MAGISTRATE JUDGE'S ORDER DENYING MOTION TO AMEND THE COMPLAINT

The defendant Caterpillar Inc. opposes Plaintiff Trans-Spec Truck Service, Inc.'s Objection to the Magistrate Judge's Order on its Motion to Amend Complaint and to Alter or Amend this Court's Order Dated February 26, 2006 [sic]. Denial of the underlying motion was mandated as a matter of law because the proposed amendment was untimely under the amended scheduling order and Trans-Spec showed no good cause for its delay.

### ARGUMENT

The Court issued a scheduling order on October 27, 2004, pursuant to Fed. R. Civ. P. 16. The scheduling order established March 23, 2005, as the deadline for amendments to the pleadings. The Magistrate Judge implicitly extended that deadline once for Trans-Spec's benefit when she permitted it to file its Second Amended Complaint even though Trans-Spec had not sought leave to do so until a few days after the March 23 deadline had passed. That March, 2005, deadline, however, is now more than a year expired. On October 26, 2005, the Court

1

issued an order informing the parties it would not allow any more amendments to the scheduling order. Caterpillar has conducted itself in reliance on that order.

1. <u>Trans-Spec's Argument that its Motion to Amend is Governed by the Rule 15(a) Standard Rather than the More Stringent Rule 16(b) "Good cause" Standard is Contrary to Governing Law, Unsupported by Authority, and Simply Nonsensical</u>

The law is crystal clear that, once a scheduling order deadline for amending the pleadings has passed, a motion to amend the complaint may properly be granted only if the plaintiff first demonstrates it could not, through diligent action, have brought its motion within the deadline. <u>O'Connell</u> v. <u>Hyatt Hotels of Puerto Rico</u>, 357 F.3d 152, 154-155 (1st Cir. 2004); <u>Anda</u> v. <u>Ralston Purina Co.</u>, 959 F.2d 1149, 1154-1155 (1st Cir. 1992). *Accord, e.g.*, <u>S&W Enterprises, LLC</u> v. <u>Southeast Bank of Alabama</u>, 315 F.3d 533, 536 (5th Cir. 2003); <u>Parker</u> v. <u>Columbia Pictures Indus.</u>, 204 F.3d 326, 340 (2nd Cir. 2000); <u>In re Milk Prods. Antitrust Litig.</u>, 195 F.3d 430, 437 (8th Cir. 1999); <u>Sosa</u> v. <u>Airprint Sys., Inc.</u>, 133 F.3d 1417, 1419 (11th Cir. 1998); <u>Johnson</u> v. <u>Mammoth Recreations, Inc.</u>, 975 F.2d 604, 610 (9th Cir. 1992). Our local rules require that such a showing be made by means of "affidavits, other evidentiary materials, or references to pertinent portions of the record." LR 16.1(G). The say-so of requesting counsel is not sufficient.

Trans-Spec has cited no authority for its proposition that the lenient Rule 15(a) standard, rather than the Rule 16 standard, is the governing one. No case cited by Trans-Spec involved a motion to amend brought after the scheduling order deadline had passed. Indeed, no case cited by Trans-Spec even mentions a scheduling order deadline. The cases cited by Trans-Spec were all ones in which amendment was allowed very early in the proceedings, when only Rule 15(a)

2

was applicable. They have nothing to say with respect to this case[1]. To the extent a situation similar to the one presented by this case has arisen elsewhere, courts have applied the "good cause" standard mandated by Rule 16. *See, e.g.*, Baylor Univ. Med. Ctr. v. Epoch Group, 2005 WL 212426 (N.D. Tex. 2005) at *7 - *9; Dorsey v. Northern Life Ins. Co., 2005 WL 2036738 (E.D. La. 2005) at *21; Tufaro v. Bd. of Comm'rs. for Orleans Levee District, 2003 WL 22290290 (E.D. La. 2003) at *2 - *3. (Copies of these decisions are collected under Tab 1)

Apart from being contrary to law, the distinction Trans-Spec would draw is contrary to common sense. If Trans-Spec's position were correct, a plaintiff who moves to amend his complaint after the scheduling order deadline has passed but *before* his original complaint is dismissed would have to satisfy Rule 16's "good cause" standard by proving he could not with reasonable diligence have met the deadline; but if the same plaintiff delays his motion a few weeks or months longer, until *after* dismissal of his original complaint, he would by virtue of his further delay alone relieve himself of the need to prove his diligence. The distinction Trans-Spec draws would therefore positively encourage and reward delay in filing motions to amend. No wonder Trans-Spec cannot cite the Court to authority for its position. Its position is absurd.

2.   <u>Trans-Spec Made No Showing of Good Cause</u>

A plaintiff who wishes to amend his complaint after the scheduling order deadline for amendments has passed must demonstrate, by means of "affidavits, other evidentiary materials, or references to pertinent portions of the record," LR 16.1(G), that he could not have met the scheduling order deadline through the exercise of reasonable diligence. O'Connell, 357 F.3d at 154-155; Johnson, 975 F.2d at 607-609. Trans-Spec has not and cannot make that showing.

---

[1] Indeed, the cases on which Trans-Spec places principal reliance, Foman v. Davis, 371 U.S. 178 (1962) and Gaffney v. Silk, 488 F.2d 1248 (1st Cir. 1973), pre-date the 1983 amendment to Rule 16 that inserted the controlling language. They would thus have nothing useful to say even if they involved (as they did not) late amendments. Another case cited by Trans-Spec, Gomez v. Toledo, 602 F.2d 1018 (1st Cir. 1979), *reversed*, 446 U.S. 635 (1980), did not even involve a motion to amend.

3

Trans-Spec's counsel says it first learned on September 22, 2005, that Caterpillar paid under warranty for repairs to the first several flywheel housings that failed on its trucks. That is untrue. Trans-Spec's owner and president, Joseph Howard, himself testified on May 3, 2005:

> Q. Then, as I understand it, in the year 2001, there were two or three of these trucks that had a flywheel housing problem?
>
> A. Yes.
>
> Q. Is that consistent with your memory?
>
> A. Yes.
>
> Q. In the year 2001, were those flywheel housing problems brought to your attention?
>
> A. Yes.
>
> Q. Did you bring them to the attention of anyone at Southworth-Milton or anyone at Caterpillar?
>
> A. Harry Calderbank.
>
> Q. What did Harry say?
>
> A. Where do you want to get it fixed.
>
> Q. Did he say anything else?
>
> A. No.
>
> Q. *Those problems were fixed under warranty, correct?*
>
> A. *Yes.*

<u>Deposition of Joseph Howard</u> at 164 (emphasis supplied) (attached under Tab 2).[2] There was never any doubt in anyone's mind that Caterpillar routinely processed and paid as warranty claims the claims it received in 2001 and 2002 (and, indeed, in the first part of 2003) related to

---

[2] Trans-Spec's first several flywheel housing failures occurred in 2001. *See* Second Amended Complaint, ¶14.

Trans-Spec's flywheel housing failures. Trans-Spec's counsel just made up that supposed ignorance because they think it would be helpful if the Court were to believe it.[3]

Trans-Spec says Caterpillar "engaged in a pattern of dilatory discovery tactics" and thereby impeded Trans-Spec's prosecution of its claims. Characteristically, it directs the Court to nothing in the record to support its charge, which is wholly untrue. There is good reason for LR 16.1's requirement that a showing of "good cause" must be made by means of affidavits, evidential materials, and specific references to the record rather than by means of lawyers' unsubstantiated assertions in briefs: false assertions in briefs will be discouraged if the person making them knows he will be required to produce objective support for what he says.

Trans-Spec says Caterpillar's counsel "initially denied the existence of Caterpillar's warranty claim database." That is false. It is an invention of Trans-Spec's counsel, just as he invented, at the May 31 hearing before the Magistrate Judge, his supposed ignorance until mid-August 2005 of the existence of warranties he previously chose not to plead but now would like to plead. *Compare* Hearing Transcript at 4-6 (attached under Tab 4) and Exhibit D to the proposed Third Amended Complaint *with* Exhibit C to Caterpillar Inc.'s Opposition to Plaintiff's Amended Motion for a Preliminary Injunction (filed September 9, 2004) (the very warranties counsel told the Magistrate Judge he did not know of until August 2005) and ¶¶13, 15, 16 and 17 in Caterpillar Inc.'s Response to Trans-Spec Truck Service Inc.'s First Request for Production of Documents (served January 28, 2005 and directing Trans-Spec's counsel by Bates number to the warranties that had earlier been produced as part of Caterpillar's automatic disclosure) (attached

---

[3] Caterpillar feels constrained to add that, in any case, the inquiry under Rule 16 is not what Trans-Spec or its counsel *knew* but what, if they had been diligent, they *could have known*. If Trans-Spec had bothered to subpoena the records of Minuteman Trucks, which did most of its early flywheel housing repairs, it would have obtained documents like that attached under Tab 3, which if read with attention would have told Trans-Spec's counsel that the flywheel housing repair was paid under warranty while associated damage was paid under "policy." Similarly, if Trans-Spec was interested in knowing which flywheel housing repairs Caterpillar paid under warranty all Trans-Spec needed to do was serve an interrogatory on the subject; Trans-Spec never bothered to take that simple step.

under Tab 5). The only real difference is that the falsity of what Trans-Spec's counsel told the Magistrate Judge on May 31 was easily demonstrable from documents in the court record itself, while the truth on this particular subject cannot so readily be demonstrated to the Court in objective fashion.

Trans-Spec says Caterpillar "fail[ed] to disclose, as part of its automatic disclosure" that it had "caused to be preserved" certain flywheel housings removed from Trans-Spec's trucks. Trans-Spec forgets to mention that, because those housings were removed by the dealer *at Trans-Spec's request* and *with Trans-Spec's knowledge*, Trans-Spec had *actual knowledge* that the dealer had them – knowledge that preceded in time Caterpillar's knowledge on the same subject. All Caterpillar did was take steps to assure they were not lost, in hopes of avoiding the charges of spoliation of evidence that undoubtedly would have been forthcoming had it not taken those steps. Trans-Spec forgets to mention that its attorneys *neglected even to serve a discovery request* asking for flywheel housings or, for that matter, any other physical evidence, an omission that was the exact opposite of "reasonable diligence."[4] Trans-Spec forgets to mention that the automatic disclosure obligation extends only to items the disclosing party expects to use affirmatively in support of its claims or defenses, Fed. R. Civ. P. 26(a)(1)(B), and that Caterpillar thus had no obligation to identify Trans-Spec's broken flywheel housings – having, it must be repeated, been asked nothing about them by Trans-Spec -- until it first began to appear they might be useful at trial; and Trans-Spec forgets to mention that Caterpillar's counsel took it upon himself voluntarily to identify the flywheel housings – notwithstanding Trans-Spec's lawyers' neglect to ask about them – when the continuing "evolution" of Trans-Spec's allegations caused it first to appear they might be useful in Caterpillar's case-in-chief. Trans-Spec forgets to mention that Caterpillar then voluntarily produced the flywheel housings for inspection by

---

[4] If Trans-Spec claims to have served such a request, it should favor the Court with a copy.

Trans-Spec's proposed expert witnesses even though Trans-Spec had never formally requested their production and even though the deadline for factual discovery had expired.

Trans-Spec tells the Court Caterpillar failed to produce during discovery a *patent* Trans-Spec says is relevant; but once again Trans-Spec does not direct the Court to any discovery request that might have included the patent within its scope – there was none -- and does not suggest why Caterpillar might have been obliged to produce without request a patent which Caterpillar not only had no plan to use in support of its defense, *see* Rule 26(a)(1)(B), but which is not even relevant because it does not concern flywheel housings materially similar to those involved in this case.[5] There is no misconduct in a party's failure to produce documents or information which it views as irrelevant and which its opponent does not even bother to request.

Trans-Spec has historically been liberal with the aspersions it casts upon Caterpillar and its attorneys, but it has been chronically remiss when it comes to providing substantiation for what its attorneys are willing to say in their briefs and oral presentations. The Court, if it is not to be misled in material ways, must disregard Trans-Spec's assertions of historical or procedural "fact" unless they are anchored by references to substantiating evidential material or to substantiating items identified in the record. *See generally* LR 7.1(B)(1) ("[a]ffidavits and other documents setting forth or evidencing facts on which the motion is based shall be filed with the motion"); LR 16.1(G) (motion to amend a Rule 16 order may be granted only upon a showing of good cause "supported by affidavits, other evidentiary materials, or references to pertinent portions of the record.") Caterpillar has demonstrated to the Court in this Opposition some of the material misrepresentations Trans-Spec has made in its Objection, but it is neither practical, nor fair, nor in accordance with law to expect Caterpillar to demonstrate the falsity of every self-

---

[5] Curiously, Trans-Spec neglects to mention when and how its counsel came upon this publicly-available patent that was available from the patent office since 1998 to anyone who asked, subject matters that one would think would be mentioned in a motion dependent upon a showing of Trans-Spec's diligence.

7

serving assertion Trans-Spec's counsel are willing to insert undocumented into their briefs. The rules require material statements of fact to be substantiated by evidence. When they are not, they must be disregarded.

The burden was on Trans-Spec to show it could not have filed its proposed Third Amended Complaint in accordance with the scheduling order deadline if it had been diligent. Trans-Spec has made no such showing. The *evidence* (as distinct from Trans-Spec's counsel's *assertions*) shows Trans-Spec had actual knowledge well before the scheduling order deadline of much of the information it would now like to put in a belated Third Amended Complaint and that, with a modicum of effort on the part of its attorneys, could easily have had all the rest. This case cries out for denial Trans-Spec's motion.[6]

3.  Trans-Spec's Motion to "Alter or Amend the Judgment" Dismissing Counts I, II and III of its Second Amended Complaint, No Matter How Characterized, is Meritless

Trans-Spec captioned the motion presently under review "Motion to Amend Complaint and to Alter or Amend this Court's Order Dated February 26, 2006" and referenced Fed. R. Civ. P. 59(e) in the introductory paragraph; it did not again mention Rule 59(e), however, and never told the Court exactly how it wanted the order altered or amended.[7] It is therefore difficult even to tell what relief Trans-Spec sought, much less why Trans-Spec thought it was entitled to that relief. It appears from the discussion in Section I.B. at page 4 of the original motion, however, that what Trans-Spec sought was merely amendment of the order dismissing Counts I, II and III

---

[6] Trans-Spec has attached as Exhibit B to its motion a copy of the original filing it made before the Magistrate-Judge. That being so, Caterpillar refers the Court to Caterpillar Inc.'s Opposition to Motion to Amend Complaint and to Alter or Amend this Court's Order Dated February 26, 2006, filed March 6, 2006. Caterpillar does not think it necessary to burden the file with another copy of that Opposition, though Caterpillar will be happy to do so upon request. What the original Opposition contains that is omitted from this Opposition is detailed discussion of some, though by no means all, of the many differences between the Second and proposed Third Amended Complaint, and why they obviously could have been included in the Second Amended Complaint if Trans-Spec's counsel had found their inclusion to suit their purposes of the moment.

[7] The February 23, 2006, order dismissing Counts I, II and III is not a "judgment" and therefore is not subject to Rule 59(e). Trans-Spec's request to alter or amend that order is just a motion for reconsideration, which the Court need not even consider on its merits absent any identified material change in circumstances or governing law.

of its Second Amended Complaint to insert a provision granting it leave to file an untimely Third Amended Complaint. If that is what Trans-Spec sought, no further discussion is needed: Trans-Spec's failure to make a showing sufficient to justify granting it leave to amend its complaint again has already been adequately discussed.

Trans-Spec's failure to identify any other "alteration" or "amendment" it sought is, Caterpillar believes, in and of itself sufficient basis for the Court's having denied that part of Trans-Spec's motion. It was not the Court's responsibility to try to figure out what relief Trans-Spec wanted when Trans-Spec itself failed to be explicit on the subject; and by failing to be explicit on the subject Trans-Spec effectively prevented Caterpillar from being explicit about why such relief was unwarranted. Fed. R. Civ. P. 7(b)(1) required Trans-Spec to identify in its motion the specific relief or order it sought. That requirement is not in Rule 7 only for the Court's convenience; it is also there to enable opposing parties to know what they have to oppose, so that they may do it effectively. The only relief Trans-Spec sought in its motion was leave to file a Third Amended Complaint. *See* the section headed "Conclusion" at page 18 of the Motion to Amend Complaint and to Alter or Amend this Court's Order Dated February 26, 2006. The request to alter or amend the February 23 order is therefore wholly redundant of the motion for leave to file a Third Amended Complaint and fails for the identical reason.

Trans-Spec argues for the first time at pages 5 to 7 of its Objection that the February 23 order should have been "altered" or "amended" by vacating it insofar as it dismissed Counts I, II and III and substituting for it a denial of Caterpillar's motion to dismiss those counts. Trans-Spec does so even though the failure of those counts to state cognizable causes of action was first fully considered by the Magistrate Judge and then affirmed after *de novo* review by the District Court Judge. Trans-Spec, in other words, is not satisfied with the dispositive statute of

limitations issue having been fully considered *twice*; it wants a *third* bite at the apple. That, to put it mildly, would be an inefficient use of judicial resources.

Caterpillar, having fully briefed the statute of limitations issue twice, does not intend to brief it again here. This is especially so because Trans-Spec has presented no developed argument as to why the February 23 order might be deemed erroneous. Caterpillar refers the Court for its position on the merits of its Rule 12(b)(6) motion to dismiss to its previously-filed <u>Memorandum in Support of Caterpillar Inc.'s Motion to Dismiss the Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)</u> (filed May 26, 2005) and <u>Caterpillar Inc.'s Response to Plaintiff Trans-Spec Truck Service, Inc.'s Objection to the Magistrate Judge's Report and Recommendation on the Defendant's Motion to Dismiss and Motion to Strike</u> (filed February 22, 2006). Suffice it to say here:

- The authorities cited in the first "bullet" at page 6 of Trans-Spec's present motion *support* the Court's order: they make clear the legal distinction between the remedy (repair or replace) and the underlying warranty, and that the statute of limitations runs from the date the underlying warranty was given (in this instance, considerably more than four years before the action was commenced) rather than from the date allegedly inadequate repairs are made.

- The reference to a concurrent two-year warranty contained in the second "bullet" at page 6 -- even if Trans-Spec's inaccurate characterization of that warranty were not inaccurate, which it is – is immaterial. The Second Amended Complaint contained no reference to that two-year warranty and purported to make no claim under it.[8] Naturally, therefore, the parties included no argument with respect to that warranty in their papers with respect to Caterpillar's Rule 12(b)(6) motion to dismiss. "Rule 59(e) motions are aimed at *re*consideration, not initial consideration. Thus, parties should not use them to raise arguments which could, and should, have been made before judgment issued." <u>FDIC</u> v. <u>World University</u>

---

[8] This is the same warranty that Trans-Spec's counsel had in his possession no later than September 9, 2004, more than six months before the deadline for amending the pleadings, *see supra* at 5, and that Trans-Spec itself had before the action was even commenced. It is defense counsel's belief – that is all it is, because defense counsel is not privy to Trans-Spec's counsel's work product – that the decision not to rely on this warranty was driven by Trans-Spec's wish to assert a negligence claim. As discussed in the pending motion for summary judgment on the remnant negligence count, the warranty contains a conspicuous and unequivocal exclusion of all liability for negligence that is presumptively valid under Massachusetts law. Had Trans-Spec relied on it in its Second Amended Complaint and referenced it in its motion for leave to file that Second Amended Complaint (whereby it added the negligence count), defense counsel thinks Trans-Spec would have faced a tougher sell getting that motion granted.

Inc., 978 F.2d 10, 16 (1st Cir. 1992) (emphasis original; citations and internal quotation marks omitted).

- The two year warranty referenced in the third "bullet" at page 6 is the same one discussed immediately *supra* herein, and any argument based on it therefore cannot serve as a basis for "*re*consideration" of the order dismissing Counts I, II and III. Trans-Spec's counsel's bald statement that the *different* document it asserted in its Second Amended Complaint to be the applicable warranty was a warranty of a future performance is no more than an unanalytical assertion that the Magistrate Judge and the District Court Judge were both wrong when they held otherwise based on ample legal authority.

Trans-Spec's motion to alter or amend the February 23 order should be summarily denied.

## CONCLUSION

Plaintiff Trans-Spec Truck Service, Inc.'s Objection to the Magistrate Judge's Order on its Motion to Amend the Complaint and to Alter or Amend this Court's Order Dated February 26, 2006 should be overruled and the order denying the motion for leave to amend the complaint and third time and to alter or amend the February 23, 2006, order dismissing Counts I, II and III of the Second Amended Complaint should be adopted.

CATERPILLAR INC.,

By its attorneys,

CAMPBELL CAMPBELL EDWARDS
& CONROY, P.C.

John A.K. Grunert (BBO: 213820)
One Constitution Plaza
Boston, MA 02129
(617) 241-3000

## CERTIFICATE OF SERVICE

    I, John A.K. Grunert, hereby certify that on June 19, 2006, I served the within Opposition by causing a copy to be transmitted electronically to Nancy M. Reimer, Esquire, Donovan Hatem LLP, 2 Seaport Lane, Boston, MA 02210.

_____
John A.K. Grunert