Not Reported in F.Supp.2d, 2005 WL 2124126 (N.D.Tex.)

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
N.D. Texas, Dallas Division.
BAYLOR UNIVERSITY MEDICAL CENTER, et al., Plaintiffs,
v.
EPOCH GROUP, L.C., Defendant,
v.
VAN ENTERPRISES, INC. Employee Benefit Trust, et al., Third-Party Defendants.
No. Civ.A. 303CV2392G.
Sept. 1, 2005.

Larry Hallman, Burford & Ryburn, Dallas, TX, for Plaintiffs.
Elaine Cribbs Rizza, The Rizza Group, Washington, PA, Lee Foster Christie, Pope Hardwicke Christie
Harrell Schell & Kelly, Fort Worth, TX, Christopher A. Roach, Baker Botts, Dallas, TX, Nicholas P.
Hansen, Hansen Law Firm, Denver, CO, for Defendant.

*MEMORANDUM OPINION AND ORDER*

FISH, Chief J.

*1 Before the court is the motion of third-party defendants Van Enterprises, Inc. Employee Benefit
Trust and Van Enterprises, Inc. (collectively, "Van") to dismiss defendant/third-party plaintiff Epoch
Group, Limited Company ("Epoch")'s claims against them for (1) lack of standing and (2) failure to
state a claim on which relief can be granted. Also before the court is Epoch's motion for leave to file
an amended third-party complaint against Van. For the reasons discussed below, the motions are
granted in part and denied in part.

I. *BACKGROUND*

On May 5, 2004, the plaintiffs, Baylor University Medical Center, Our Children's House at Baylor,
Baylor Medical Center at Grapevine, Baylor Medical Center-Irving, and Baylor All Saints Medical
(collectively, "Baylor"), filed their first amended complaint against Epoch seeking recovery for breach
of contract and late payment of claims. *See generally* Plaintiffs' First Amended Complaint.
On May 24, 2004, Epoch filed a motion for summary judgment under FED. R. CIV. P. 56 arguing that,
as a matter of law, (1) Baylor is not entitled to recover for breach of contract or for late payment of
claims because Epoch is not a party to any contract with Baylor, and (2) the Employee Retirement
Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.,* completely preempts Baylor's
breach of contract claims. *See generally* Defendant's Brief in Support of Third Motion to Dismiss/For
Summary Judgment. On August 18, 2004, this court denied that motion and determined, among
other things, that Baylor's breach of contract claim was not completely preempted by ERISA. *See
generally* August 18, 2004, Memorandum Order. In response to motions by Epoch to reconsider
Epoch's motion to dismiss as it relates to ERISA preemption, or in the alternative for leave to file
another motion to dismiss reasserting its ERISA preemption argument, this court denied both
requests. October 29, 2004, Memorandum Order.
On March 16, 2005, this court issued its scheduling order setting the trial for the court's four-week
docket beginning January 3, 2006. Order Establishing Schedule and Certain Pretrial Requirements
("scheduling order") ¶ 2. Among the deadlines included in the court's scheduling order was a
requirement that all amended pleadings were to be filed by June 16, 2005.[FN1] *Id.* ¶ 3.

FN1. The scheduling order has been amended twice since it was issued: first, to extend
the deadline for filing motions for summary judgment to September 8, 2005, *see* Order
entered August 15, 2005, and, second, to extend the deadline for Epoch and Van to file

dispositive motions against each other to October 4, 2005, *see* Order entered August 30, 2005.

On April 7, 2005, Epoch filed a third-party complaint against Van, Defendant's Original Third Party Complaint ("Third-Party Complaint"), which Van answered on June 20, 2005. Van's Original Answer to Third Party Complaint. On that same date (four days after the amended pleadings were due), Van also filed the instant motion to dismiss Epoch's third-party complaint. Van Enterprises, Inc. Employee Benefit Trust's and Van Enterprises, Inc.'s Motion to Dismiss Pursuant to Rule 12(b)(1) and 12(b)(6) ("Motion to Dismiss"). On July 12, 2005, Epoch filed this motion for leave to file a first amended third-party complaint against Van. Motion for Leave to File First Amended Third-Party Complaint ("Motion for Leave"). Van has not filed a response to this motion,[FN2] but both parties have argued Van's motion to dismiss. *See generally* Defendant's Response in Opposition to Third-Party Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1) and Rule 12(b)(6) and Brief in Support of Defendant's Opposition to Third-Party Defendants' Motion ("Response"); Van Enterprises, Inc. Employee Benefit Trust's and Van Enterprises, Inc.'s Reply to Epoch Group L.C.'s Response to Motion to Dismiss Pursuant to Rule 12(b)(1) and 12(b)(6) ("Reply"); Defendant's Surrreply to Third-Party Defendants' Reply to Defendant's Response in Opposition to Third-Party Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1) and 12(b)(6) and Supporting Brief.

> FN2. Although Van did not file a response to Epoch's motion for leave, the motion is opposed. Van did not agree to the motion when it was filed on July 12, 2005. *See* Certificate of Conference, Motion for Leave at 5. In addition, Van argues in its reply to Epoch Group L.C.'s response to motion to dismiss pursuant to Rule 12(b)(1) and 12(b)(6) ("Reply") that Epoch's motion for leave is untimely. Reply ¶ 14.

## II. *ANALYSIS*

***2** The third-party defendants assert two grounds for dismissal: (1) the court lacks subject matter jurisdiction over this case because the third-party plaintiff does not have standing; and (2) the third-party plaintiff has failed to state a claim upon which relief can be granted. Motion to Dismiss at 2-3. In general, a third-party defendant may raise by motion any of the defenses enumerated in Rule 12 (b), and the principles that govern the disposition of Rule 12(b) motions in other contexts apply under FED. RULE CIV. P. 14 as well. 6 C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE ("WRIGHT & MILLER") § 1455 (2d ed.1990) at 431-32.

### A. *Motion for Dismissal under Rule 12(b)(1)*

#### 1. *Subject Matter Jurisdiction-Legal Standard*

Federal courts are courts of limited jurisdiction. See *Kokkonen v. Guardian Life Insurance Company of America,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Owen Equipment and Erection Company v. Kroger,* 437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). A federal court may exercise jurisdiction over cases only as expressly provided by the Constitution and laws of the United States. *See* U.S. CONST. art. III §§ 1-2; see also *Kokkonen,* 511 U.S. at 377. Federal law gives the federal district courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A party seeking relief in a federal district court bears the burden of establishing the subject matter jurisdiction of that court. *United States v. Hays,* 515 U.S. 737, 743, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995); *McNutt v. General Motors Acceptance Corporation of Indiana, Inc.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Langley v. Jackson State University,* 14 F.3d 1070, 1073 (5th Cir.), *cert. denied,* 513 U.S. 811, 115 S.Ct. 61, 130 L.Ed.2d 19 (1994). Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes the dismissal of a case for lack of jurisdiction over the subject matter. *See* FED. R. CIV. P. 12(b)(1). A motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction must be considered by the court before any other challenge because "the court must find jurisdiction before determining the validity of a claim." *Moran*

*v. Kingdom of Saudia Arabia,* 27 F.3d 169, 172 (5th Cir.1994) (internal citation omitted); see also *Ruhrgras AG v. Marathon Oil Company,* 526 U.S. 574, 577, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) ("The requirement that jurisdiction be established as a threshold matter ··· is inflexible and without exception") (citation and internal quotation marks omitted).

On a Rule 12(b)(1) motion, which "concerns the court's 'very power to hear the case ··· [,] the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.' ' *MDPhysicians & Associates, Inc. v. State Board of Insurance,* 957 F.2d 178, 181 (5th Cir.) (quoting *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.), cert. denied,454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981)), cert. denied,506 U.S. 861 (1992). In ruling on a motion to dismiss under Rule 12(b)(1), the court may rely on: "1) the complaint alone; 2) the complaint supplemented by undisputed facts; or 3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts." *MCG, Inc. v. Great Western Energy Corporation,* 896 F.2d 170, 176 (5th Cir.1990) (citing *Williamson,* 645 F.2d at 413). When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir.1977) (per curiam). This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. *Id.*

### 2. *Epoch's Standing to Bring Third-Party Claims*

*3 Van argues that Epoch's claims against Van should be dismissed under Federal Rule of Civil Procedure 12(b)(1) because this court lacks subject matter jurisdiction over Epoch's claims. Van asserts that although the plaintiff Baylor specifically states that it is not seeking benefits under an ERISA plan, Epoch's sole basis for joining Van in this suit is "pursuant to an ERISA plan." Therefore, Van argues, Epoch-being neither a participant in, nor beneficiary of, an ERISA plan-lacks standing under ERISA, and this court lacks subject matter jurisdiction. Motion to Dismiss at 4; Reply at 4. Moreover, Van maintains, Epoch lacks standing since it has not alleged a dispute between Van and Epoch in its complaint. Reply at 5. Epoch responds that its third-party claims against Van are within this court's supplemental jurisdiction under 28 U.S.C. § 1367. Response at 6.

The policy underlying Rule 14 is to promote judicial economy by eliminating circuity of action. See, e.g., *Powell, Inc. v. Abney,* 83 F.R.D. 482, 485 (S.D.Tex.1979); *Crude Crew v. McGinnis & Associates, Inc.,* 572 F.Supp. 103, 109 (E.D.Wis.1983) ("The general purpose of Rule 14 is to avoid circuity of actions and to expedite the resolution of secondary actions arising out of or in consequence of the action originally instituted."). Rule 14 thus permits a defendant to bring into a civil suit any person "not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." FED. R. CIV. P. 14(a). Accordingly, Rule 12(b)(1) challenges to a court's subject matter jurisdiction over third-party claims will generally be unsuccessful since such proceedings have been considered ancillary to the main action and therefore do not require independent subject matter jurisdiction. 6 WRIGHT & MILLER § 1455 at 434.

Section 1367(a) provides that

in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). Congress, however, has limited this grant of subject matter jurisdiction. Section 1367(a) does not apply to claims by plaintiffs against parties made part of the action by Rule 14 if the original jurisdiction of the district court is based on 28 U.S.C. § 1332.FN3 28 U.S.C. § 1367(b). The practice commentary emphasizes that the limitation in § 1367(b) applies only to plaintiffs who attempt to assert claims against third-party defendants.FN4 Practice Commentary § 1367 ("Subdivision (b) of § 1367 is concerned only with efforts of a plaintiff to smuggle in claims that the plaintiff would not otherwise be able to interpose."). This limitation does not apply to a third-party plaintiff's claims against a third-party defendant; it is well-settled that there need be no independent jurisdictional basis for a defendant's claim against a third-party defendant if jurisdiction over the original parties exists via diversity of citizenship or presence of a federal question. 6 WRIGHT & MILLER § 1444 at 321-24 (citing *Fawvor v. Texaco, Inc.,* 387 F.Supp. 626, 629 (E.D.Tex.1975), aff'd, 546 F.2d 636 (5th Cir.1977)).

FN3. 28 U.S.C. § 1332(a) provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between [persons of diverse citizenship]."28 U.S.C. § 1332(a).

FN4. The practice commentary states that: "D's impleader claim against X [a nondiverse third-party defendant] gets ancillary jurisdiction, and nothing in subsection (b) of § 1367 changes that." Practice Commentary, 28 U.S.C. § 1367.

**\*4** The mere fact that a third-party claim arises from the same general facts as the original dispute is not sufficient, however; it will be dismissed if it is an entirely independent claim. *United States v. Joe Grasso and Son, Inc.,* 380 F.2d 749, 751 (5th Cir.1967). In other words, third-party practice is proper under Rule 14 only if the third-party defendant is or may be liable to the defendant for all or part of the plaintiff's recovery, or the defendant attempts to pass on to the third party all or part of the liability asserted against the defendant. *Id.* (citing 1A BARRON & HOLTZOFF, FEDERAL PRACTICE AND PROCEDURE § 426 at 664-69 (1960 ed.); 3 Moore's Federal Practice ¶ 14.07 at 512 (2d ed.1966)). Here, there is no question that this court has original jurisdiction over the dispute between Epoch and Baylor.[FN5] Epoch has been "haled into court against [its] will," *Owen Equipment and Erection Company,* 437 U.S. at 376, and seeks to assert claims, pursuant to Rule 14, which form part of the same case or controversy as the original action. The instant case represents a traditional use of third-party practice: derivative liability. The *Equitable Life Insurance Society of the United States v. Lafferty,* No. 3:02-CV-2453-D, 2003 WL 22946473, at \*2 (N.D.Tex. Feb.11, 2003) ("Because the liability of the third-party defendant to the defendant on the impleader claim is derivative of the defendant's underlying liability to the plaintiff in the underlying case, the impleader claim by definition is concerned with the same transaction or occurrence, or common nucleus of operative fact, as the underlying suit."). Epoch seeks to shield itself from paying Baylor's claims by virtue of an Administration Agreement.[FN6] Under this Administration Agreement, Van retained Epoch to serve as Claims Supervisor, whereby Epoch processed claims for benefits and Van provided funding to pay for such claims. Response at 2. According to the response, Epoch was responsible for paying Baylor only if the services Baylor provided fell within coverage of the Plan. *Id.* at 3. Van and the Plan were then required to pay for claims processed by Epoch if the claims were covered by the Plan. *Id.* Upon resolution of the original claim, Van may be liable to Epoch for all or part of Baylor's claim against Epoch. Van's derivative liability to Epoch thus falls within the traditional use of third-party practice, precluding dismissal under Rule 12(b)(1).

FN5. The plaintiffs concede that there is diversity jurisdiction, as each of the plaintiffs is a Texas non-profit corporation and Epoch is a foreign corporation, and the amount in controversy exceeds $75,000. Plaintiffs' Brief in Support of Response to Epoch's Third Motion to Dismiss/For Summary Judgment at 2; *see also* Plaintiffs' First Amended Complaint ¶¶ 1-2.

FN6. Although Epoch did not attach the Administration Agreement to its original Third-Party Complaint against Van, that agreement was subsequently included in documentation related to the motion to dismiss and will therefore be considered by the court on Van's 12(b)(1) motion. *See* Exhibit B *attached to* Motion for Leave; Exhibit 1 *attached to* Response.

With regard to Van's argument that Epoch lacks standing in this third-party action because it did not allege an injury, *see* Motion to Dismiss at 5 and Reply ¶ 10, third-party practice under Rule 14 does not require imminent injury. Third-party actions are proper even though the third-party defendant's liability is contingent. *Travelers Insurance Company v. Busy Electric Company,* 294 F.2d 139, 145 (5th Cir.1961). In fact, Rule 14's "is or may be liable" language makes it clear that third-party practice is proper even though a third-party defendant's liability is not automatically established upon resolution of the third-party plaintiff's liability to the original plaintiff. 6 WRIGHT & MILLER § 1446 at 373 (citing *Powell,* 83 F.R.D. at 486; *Travelers Insurance Company,* 294 F.2d at 145). As already stated, Van "may be liable" to Epoch upon resolution of Baylor's original claim against Epoch, so

Epoch does not lack standing for failure to allege an injury.
**\*5** The court concludes that jurisdiction over Epoch's claims against the third-party defendants exists on the basis of <u>section 1367(a)</u>. Accordingly, Van's motion to dismiss Epoch's third-party complaint for lack of subject matter jurisdiction is denied.

B. <em>Motion for Dismissal under <u>Rule 12(b)(6)</u></em>

1. <em>Failure to State a Claim-Legal Standard</em>

<u>Rule 12(b)(6)</u> authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."<u>FED. R. CIV. P. 12(b)(6)</u>. There are two primary principles that guide the court's determination of whether dismissal under <u>Rule 12(b)(6)</u> should be granted. First, a motion under <u>Rule 12(b)(6)</u> should be granted only if it appears beyond doubt that the nonmovant could prove no set of facts in support of its claims that would entitle it to relief. *Conley v. Gibson,* 335 U.S. 41, 45-46 (1957); *Leffall v. Dallas Independent School District,* <u>28 F.3d 521, 524 (5th Cir.1994)</u>; see also *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982) (citing <u>5B WRIGHT & MILLER § 1357 at 598 (1969)</u>, for the proposition that "the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted"), *cert. denied,*<u>459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983)</u>. Second, the court must accept all well-pleaded facts as true and view them in the light most favorable to the nonmovant. See *Capital Parks, Inc. v. Southeastern Advertising and Sales System, Inc.,* <u>30 F.3d 627, 629 (5th Cir.1994)</u>; *Norman v. Apache Corporation,* <u>19 F.3d 1017, 1021 (5th Cir.1994)</u>; *Chrissy F. by Medley v. Mississippi Department of Public Welfare,* <u>925 F.2d 844, 846 (5th Cir.1991)</u>. However, conclusory allegations and unwarranted factual deductions will not suffice to avoid a motion to dismiss. *United States ex rel. Willard v. Humana Health Plan of Texas Inc.,* <u>336 F.3d 375, 379 (5th Cir.2003)</u>. In addition, a court must not look beyond the pleadings when determining whether a complaint states a claim upon which relief may be granted. *Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc.,* <u>690 F.2d 489, 499-500 (5th Cir.1982)</u>, *cert. denied,*<u>464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983)</u>.

2. <em>Van's Motion to Dismiss Under <u>Rule 12(b)(6)</u></em>

Third-party complaints are subject to the pleading requirements of Rule 8 and must set forth a short and plain statement of the claim showing that defendant is entitled to relief from the third party. <u>6 WRIGHT & MILLER § 1453 at 417</u>. Specifically, for complaints filed under <u>Rule 14</u>, the complaint must indicate that the third-party defendant is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the defendant. *Id.* at 417-18 (citing *Joe Grasso and Son, Inc.,* <u>380 F.2d at 751-52)</u>.
Epoch's original third-party complaint addresses Van's liability to Epoch for all or part of Baylor's claims. Specifically, Epoch's complaint alleges:
9. If the claims for benefits submitted by Baylor to EPOCH for medical services that Baylor provided as identified under either Count V(A) or V(B) are both covered and payable under the Plan then the Third-Party Defendants would be responsible for paying those claims, not EPOCH.
**\*6** 10. If EPOCH is found to be liable to Baylor with regard to either Count V(A) or Count V(B), as it relates to participants or beneficiaries in the Plan, then Third-Party Defendants are liable to EPOCH for any sums assessed against EPOCH with respect to Count V(A) and for any sums assessed against EPOCH with respect to Count V(B) relating to participants or beneficiaries in the Plan.
Third-Party Complaint ¶¶ 9-10. However, even if Epoch addresses liability sufficiently in order to satisfy <u>Rule 14</u> requirements, Epoch's third-party complaint may still be dismissed for failure to state a claim in compliance with Rule 8 requirements. <u>6 WRIGHT & MILLER § 1453 at 417</u>.
Since Epoch claims that its proposed amended complaint is merely clarifying its contractual claims against Van, *see* Response at 6, n. 3, the court looks to that document to elucidate those claims. Essentially, Epoch argues that Van ( *i.e.,* both Van Enterprises, Inc. Employee Benefit Trust and Van Enterprises, Inc.) breached a written contract (the Administration Agreement), as well as an oral or implied-in-fact contract. *See generally* Defendant's First Amended Third-Party Complaint ("Amended Complaint") at 2-6, *attached to* Motion for Leave as Exhibit 1.<u>FN7</u> However, since the court may not consider proposed amendments and documents not attached to the original complaint when deciding a motion under <u>Rule 12(b)(6)</u>, *Lovelace v. Software Spectrum Inc.,* <u>78 F.3d 1015, 1017 (5th</u>

Cir.1996); *Carpenters Local Union No. 1846,* 690 F.2d at 499-500, the court returns to the original pleadings.

> **FN7.** Although Van argues that Epoch seeks relief from Van solely on ERISA grounds, Reply ¶¶ 2, 5-6, Epoch explicitly concedes it lacks standing under ERISA. Response at 4. Therefore, the court will not discuss Van's arguments regarding alleged ERISA claims; instead, only the contractual claims asserted by Epoch will be addressed.

Under Texas law,[FN8] a breach of contract claim requires: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from the defendant's breach. *Kay v. North Texas Rod & Custom,* 109 S.W.3d 924, 927 (Tex.App.-Dallas 2003, no pet.). A contract is implied in fact where, despite the absence of any express declaration of intent by the parties, their acts are such as to indicate, according to common understanding and the ordinary courses of dealing between men, a mutual intent to contract. *A/S Hydraulico Works v. Fort Worth & Denver Railway Company,* 483 F.Supp. 518, 521 (S.D.Tex.1980) (citing 13 Tex. Jur.2d Contracts § 5). Such a contract can be formed by conduct. See *Live Oak Insurance Agency v. Shoemake,* 115 S.W.3d 215, 219 (Tex.App.-Corpus Christi 2003, no pet.). Although Rule 8 pleading requirements are minimal, a complaint based on breach of contract must describe the alleged terms of the contract in a sufficiently specific manner to give the defendant notice of the nature of the claim. *American Realty Trust, Inc. v. Travelers Casualty and Surety Company of America,* 362 F.Supp.2d 744, 753 (N.D.Tex.2005). For instance, a claim on a written contract must either (1) quote relevant contractual language; (2) include a copy of the contract as an attachment; or (3) summarize the contract's purported legal effect. *Id.* (citing 5 WRIGHT & MILLER § 1235 at 393; FED. R. CIV. P. Official Form 3). Presumably, there is no reason why a party alleging an oral contract should be excused from providing a corresponding level of detail. *Id.*

> **FN8.** As stated previously in note 5, subject matter jurisdiction for the original action ( *Baylor v. Epoch* ) is based on diversity of citizenship. Accordingly, these claims are controlled by Texas law. See *Erie Railroad Company v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Rogers v. Corrosion Products, Inc.,* 42 F.3d 292, 295 (5th Cir.), cert. denied, 515 U.S. 1160, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995).

**\*7** Epoch's causes of action depend upon the existence of a contract or behavior of the parties evincing such a contract. In its pleading, however, Epoch fails to identify or attach any contract or agreement between itself and Van. Although Epoch argues that its complaint sufficiently states a breach of contract claim through the allegation that "Van Enterprises *retained* EPOCH to serve as the Claims Supervisor for the Plan ⋯", Response at 5 (citing Third-Party Complaint ¶ 5), Epoch fails to allege the number of writings involved, their dates, the specific subject matter or terms of the contracts, or any other information which would give Van notice of the basis upon which Epoch may be entitled to relief.[FN9] In addition, Epoch has not alleged facts regarding the behavior of the parties that would give rise to a possible implied-in-fact contract claim. Therefore, Epoch's petition does not include sufficient operative facts to support its breach of contract claims. See *Askanase v. Fatjo,* 148 F.R.D. 570, 573-74 (S.D.Tex.1993) ("The cross-claims of the [cross-claimants] merely state in conclusory fashion that they are entitled to indemnity and/or contribution from [cross-defendants]. This falls far short of meeting the fair notice requirement of Rule 8."); *cf. McCann v. Texas City Refining, Inc.,* 984 F.2d 667, 674 (5th Cir.1993) (plaintiff failed to state claim for tortious interference with employment contract where complaint did not allege existence of employment contract). In short, Epoch has failed to aver a set of facts, which, if proven, would entitle it to relief on its breach of contract claim. See *Conley,* 355 U.S. at 45-46.

> **FN9.** As mentioned above, an unsigned "Administration Agreement" was attached to Epoch's response, see Exhibit 1 *attached to* Response, and motion for leave, see Exhibit B *attached to* Motion for Leave, but not to its original third-party complaint. Consequently, the Administration Agreement cannot be considered on a motion to dismiss under Rule 12(b)(6). *Lovelace v. Software Spectrum Inc.,* 78 F.3d at 1017;

*Carpenters Local Union No. 1846*, 690 F.2d at 499-500.

Accordingly, since Epoch has failed to give Van notice of the nature of its claim, Epoch's original third-party complaint is dismissed under Rule 12(b)(6).

### C. *Epoch's Motion for Leave to Amend Third-Party Complaint*

If it appears that a more carefully drafted pleading might state a claim upon which relief could be granted, the court should give the claimant an opportunity to amend its claim rather than dismiss it. *Friedlander v. Nims*, 755 F.2d 810, 813 (11th Cir.1985); *Taylor v. Dallas County Hospital District*, 976 F.Supp. 437, 438 (N.D.Tex.1996). Epoch therefore argues, in support of its motion for leave, that granting leave to amend will "preserve its claims against Third-Party Defendants." Motion for Leave at 2. Epoch cites Rule 15(a) of the Federal Rules of Civil Procedure for the proposition that leave should be "freely given when justice so requires." *Id.* (citing FED. R. CIV. P. 15(a)). While this is a correct statement of the general rule regarding amendment of pleadings, "Rule 16(b) governs amendment of pleadings after a [district court's] scheduling order deadline has expired." *S & W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 536 (5th Cir.2003). "Rule 16(b) provides that a scheduling order 'shall not be modified except upon a showing of good cause and by leave of the district judge.' " *Id.* at 535 (citing FED. R. CIV. P. 16(b)). "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.' " *Id.* (citing 6A WRIGHT & MILLER § 1522.1 at 231). "Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." [FN10] *Id.* at 536. The Fifth Circuit established a test in *S & W Enterprises* for determining whether an untimely motion to amend should be allowed, despite the existence of a scheduling order: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Id.* at 536 (internal quotations and brackets excluded). As discussed below, three of the four factors weigh against granting Epoch leave to amend its original third-party complaint.

FN10. Federal Rule of Civil Procedure 15(a) provides that leave to amend should be "freely given when justice so requires." The Fifth Circuit has repeatedly held that Rule 15 (a) evinces a liberal amendment policy. See, *e.g., Lowrey v. Texas A & M University System*, 117 F.3d 242, 245 (5th Cir.1997); *Nance v. Gulf Oil Corporation*, 817 F.2d 1176, 1180 (5th Cir.1987); *Youmans v. Simon*, 791 F.2d 341, 348 (5th Cir.1986). A motion to amend under Rule 15(a), therefore, should not be denied unless there is a substantial reason to do so. *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir.1998) (citing *Leffall v. Dallas Independent School District*, 28 F.3d 521, 524 (5th Cir.1994)).

#### 1. *Explanation for Failure to Timely Move for Leave to Amend*

**\*8** The first factor weighs against Epoch because it has offered no adequate basis for its failure to amend prior to the court-ordered deadline. Epoch bears the burden of showing that, despite its due diligence, the deadlines of the scheduling order could not be met. However, in its motion for leave, Epoch merely addresses the requirements under Rule 15(a). *See generally* Motion for Leave at 2-4. According to Epoch, the motion was untimely because Epoch had no reason to believe its third-party complaint needed amendment until Van filed its motion to dismiss after the scheduling order deadline expired. *Id.* at 3.

The motion to amend in this case was made more than three years after the events in question had occurred. It was made almost two years after the filing of Baylor's original complaint, and almost four weeks after the scheduling order's deadline for amended pleadings. *See generally* Docket Sheet; Scheduling Order. Despite such delay, the proposed amendment appears to rely on an agreement known to Epoch from the time of its original pleading, but not included therein. *See* "Administration Agreement," *attached to* Epoch's Motion for Leave as Exhibit B. Epoch therefore could have clarified its theory at that time or, at the very least, within the two months remaining before the scheduling order deadline. Consequently, Epoch's only explanation for the delay-notice that its third-party

complaint may need amendment upon Van's motion to dismiss-"is tantamount to no explanation at all." *S & W Enterprises*, 315 F.3d at 536. Nor does the bare assertion that "the proposed amendment will not cause undue prejudice to Third-Party Defendants," Motion for Leave at 3, offer an explanation for its failure to timely move for leave to amend. *STMicroelectronics, Inc. v. Motorola, Inc.*, 307 F.Supp.2d 845, 850-51 (E.D.Tex.2004). The amended claims are not the result of new information discovered in investigations, recent breach of agreements between the parties, or disclosure of facts previously hidden by nonmovants; instead, Epoch seeks to amend its complaint to avoid dismissal under Rule 12(b)(6). Motion for Leave at 2. However, the facts on which Epoch's breach of contract claim is based were fully known to Epoch from the outset of the lawsuit and, indeed, were relied on by Epoch, though under a different theory, in its original third-party complaint. It was not until that theory was challenged by Van in its motion to dismiss that the amendment was tendered. Therefore, this factor weighs against Epoch.

### 2. *Importance of the Amendment*

While it is important for a court to allow amendment of claims so that cases may be heard on their merits, Epoch's failure to timely amend its claims undercuts the importance of the amended complaint. Accordingly, the court does not weigh this factor in favor of granting or denying leave. However, should this court grant Van's motion to dismiss without prejudice, Epoch is free to file an independent claim for relief against Van in this forum or another, particularly if new facts come to light or Epoch is able to recast its claim in compliance with Rule 8 standards.[FN11] Therefore, all is not lost for Epoch.

> **FN11.** Dismissal with prejudice for failure to state a claim is a decision on the merits and essentially ends the plaintiff's lawsuit. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir.1977); *see also* Rule 41. However, Rule 41(b) expressly provides that the district court may specify that a dismissal is without prejudice; in such circumstances, a second suit is not barred. 9 WRIGHT & MILLER § 2373 at 401. "The cardinal principle is that the second action is precluded unless the new allegations supply a material deficiency of the complaint in the first action." *Estevez v. Nabers*, 219 F.2d 321, 323 (5th Cir.1955). It appears to the court that the present circumstances merit a dismissal without prejudice.

### 3. *Potential Prejudice in Allowing the Amendment*

**\*9** The third factor also weighs against Epoch. Van may suffer prejudice if a cause of action based on additional documents is added approximately four months prior to trial (January 2006) and within approximately two months of the close of discovery (October 31, 2005). *See* Scheduling Order ¶¶ 2, 6. While the court could extend the discovery period in order to cure this prejudice, such an extension would cause undue delay and possibly require the court to reset the current trial date and/or extend other pretrial deadlines.[FN12]

> **FN12.** The court notes that since Van has not engaged in any discovery to date, Motion for Leave at 3, Van could effectively conform any future discovery to Epoch's first amended complaint. However, the potential for delay-given that Van is beginning discovery within such a compressed time frame-leads the court to be concerned that the trial date would nonetheless be affected.

### 4. *Availability of a Continuance to Cure Such Prejudice*

In light of Epoch's failure to present any adequate explanation for its untimely motion, such disruption to the court's docket is unwarranted. See *Reliance Insurance Company v. Louisiana Land and Exploration Company*, 110 F.3d 253, 258 (5th Cir.1997) ("District judges have the power to control their dockets by refusing to give ineffective litigants a second chance to develop their case"); *Guillory v. Domtar Industries Inc.*, 95 F.3d 1320, 1332 (5th Cir.1996) ("It is well established that the district

court is entitled the [sic] manage its court room and docket"); _Freeman v. Continental Gin Company,_ 381 F.2d 459, 469 (5th Cir.1967) ("A busy district court need not allow itself to be imposed upon by the presentation of theories seriatim"). The fourth factor, therefore, also weighs against granting Epoch leave to amend.

Epoch has not shown that it was diligent in its attempt to file for leave to amend its third-party complaint by the deadline established by the court's original scheduling order. Epoch has failed to show good cause, pursuant to FED. R. CIV. P. 16(b), to modify the scheduling order, and its motion for leave to amend is accordingly denied.[FN13]

> FN13. Because Epoch has failed to meet the good cause standard of Rule 16(b), the court need not address whether Epoch's motion satisfies the requirements of Rule 15(a). See _S & W Enterprises,_ 315 F.3d at 536.

### III. CONCLUSION

For the reasons stated above, Van's motion to dismiss under 12(b)(1) is DENIED, Van's motion to dismiss under 12(b)(6) is GRANTED, and Epoch's motion for leave to amend its third-party complaint is DENIED. Under the circumstances of this case, Epoch's claims against Van are DISMISSED without prejudice.

SO ORDERED.

Copr. (C) West 2006 No Claim to Orig. U.S. Govt. Works N.D.Tex.,2005.

Baylor University Medical Center v. Epoch Group, L.C.

Not Reported in F.Supp.2d, 2005 WL 2124126 (N.D.Tex.)

Motions, Pleadings and Filings (Back to top)

• 2004 WL 2656486 (Trial Motion, Memorandum and Affidavit) Defendant's Reply to Plaintiffs' Response to EPOCH's Third Motion to Dismiss/For Summary Judgment and Brief in Support (Jun. 29, 2004)

• 2004 WL 2656483 (Trial Motion, Memorandum and Affidavit) Defendant's Response to Plaintiff's Motion to Strike Defendant's Third Motion to Dismiss/For Summary Judgment and Brief in Support (Jun. 25, 2004)

• 2004 WL 2656478 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Epoch's Third Motion to Dismiss/ for Summary Judgment (Jun. 14, 2004)

• 2004 WL 2656481 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Brief in Support of Response to Epoch's Third Motion to Dismiss/ For Summary Judgment (Jun. 14, 2004)

• 2004 WL 2656474 (Trial Motion, Memorandum and Affidavit) Defendant's Brief in Support of Third Motion to Dismiss/For Summary Judgment (May 24, 2004)

• 2004 WL 2656470 (Trial Motion, Memorandum and Affidavit) Defendant's Reply to Plaintiffs' Response to Defendant's Second Motion to Dismiss/For Summary Judgment and Brief in Support (May 20, 2004)

• 2004 WL 2656458 (Trial Pleading) Plaintiffs' First Amended Complaint (May 5, 2004)

• 2004 WL 2656462 (Trial Motion, Memorandum and Affidavit) Baylor University Medical Center and Our Children's House at Baylor's Response to Epoch's Second Motion to Dismiss/ for Summary Judgment (May 5, 2004)

• 2004 WL 2656466 (Trial Motion, Memorandum and Affidavit) Baylor University Medical Center and Our Children's House at Baylor's Brief in Support of Plaintiffs' Response to Epoch's Second Motion to Dismiss/ for Summary Judgment (May 5, 2004)

• 2004 WL 2656455 (Trial Motion, Memorandum and Affidavit) Defendant's Brief in Support of Second Motion to Dismiss/For Summary Judgment (Apr. 15, 2004)

• 2004 WL 2656453 (Trial Motion, Memorandum and Affidavit) Defendant's Reply to Plaintiffs' Response to Defendant's Motion to Dismiss/For Summary Judgment and Brief in Support (Jan. 20, 2004)

• 2004 WL 2656450 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Defendant Epoch Group, L.C.'s Motion for Summary Judgment (Jan. 6, 2004)

• 2003 WL 23892292 (Trial Motion, Memorandum and Affidavit) Defendant the EPOCH Group, L.C.'s Supplemental Response in Opposition to Plaintiffs' Motion to Remand and Brief in Support (Dec. 30, 2003)

• 2003 WL 23892287 (Trial Motion, Memorandum and Affidavit) Defendant the EPOCH Group, L.C.'s Reply to Plaintiffs' Response to the EPOCH Group's Motion for Leave to Amend Notice of Removal and Defendant's Brief in Support of Defendant's Reply (Dec. 17, 2003)

• 2003 WL 23892284 (Trial Motion, Memorandum and Affidavit) Baylor University Medical Center and Our Children's House at Baylor's Reply to Epoch Group L.C.'s Response to Plaintiffs' Motion to Remand and Brief in Support Thereof (Dec. 11, 2003)

• 2003 WL 23892279 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Defendant Private Healthcare System Inc.'s Combined Motions to Dismiss, to Stay Further Proceedings, to Compel Arbitartion, and for the Award of Attorney's Fees and Costs and Brief in Support Thereof (Dec. 10, 2003)

• 2003 WL 23892273 (Trial Motion, Memorandum and Affidavit) Defendant the EPOCH Group, L.C.'s Response in Opposition to Plaintiffs' Motion to Remand and Plaintiffs' Motion for Attorney's Fees and Defendant's Brief in Support of Defendant's Opposition to Plaintiffs' Motions (Nov. 26, 2003)

• 2003 WL 23892269 (Trial Motion, Memorandum and Affidavit) Defendant Private Healthcare Systems, Inc.'s Memorandum Brief in Support of Combined Motion: (1) to Dismiss; (2) to Stay Further Proceedings; (3) to Compel Arbitration; and (4) for the Award of Attorneys' Fees and Costs (Nov. 20, 2003)

• 2003 WL 23892263 (Trial Motion, Memorandum and Affidavit) Defendant's Brief in Support of Motion to Dismiss/For Summary Judgment (Nov. 13, 2003)

• 2003 WL 24147869 (Trial Motion, Memorandum and Affidavit) Defendant's Reply to Plaintiffs' Response in Opposition to Defendant's Motion Pursuant to LR. 56.2(b) for Permission to File Additional Motion for Summary Judgment and Brief in Support (2003)

END OF DOCUMENT

(C) 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 2036738 (E.D.La.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,E.D. Louisiana.
Donna M. DORSEY, et al.
v.
NORTHERN LIFE INSURANCE CO., et al.
**No. Civ.A. 04-0342.**

Aug. 15, 2005.

Kevin Richard Tully, Charles W. Schmidt, III, Howard Carter Marshall, James F. Holmes, William Kearney Christovich, Christovich & Kearney, LLP, New Orleans, LA, for Donna M. Dorsey, et al.
Eugene R. Preaus, Mayra L. Scheuermann, Virginia N. Roddy, Preaus, Roddy & Associates, LLP, New Orleans, LA, Benjamin L. Tompkins, J ames F. Jorden, Jerome V. Bolkcom, W. Glenn Merten, Jorden Burt LLP, Washington, DC, for Northern Life Insurance Co., et al.

*ORDER AND REASONS*
AFRICK, J.
**\*1** Before the Court is a motion for a judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), filed on behalf of defendants, Northern Life Insurance Company, ING Reliastar Life Insurance Company, ING Life Insurance and Annuity Company, and ING Financial Advisors, LLC.[FN1] Plaintiffs, Donna M. Dorsey, Kathleen "Bebe" Labourdette, Lily C. Miller, Joseph W. Pitts and/or Joseph W. Pitts CLU, Inc., Carlos "Chuck" Sabad ie, Jr., and Tasha Nicole Galan, d/b/a United Consumers Healthcare Association, Inc. oppose the motion.[FN2]

FN1. Rec. Doc. No. 57.

FN2. Rec. Doc. No. 74.

Also before the Court is a motion for a judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), filed on behalf of defendants-in-counterclaim, Joseph W. Pitts and Joseph W. Pitts, CLU (collectively, "Pitts" ).[FN3] Defendants oppose the motion.

FN3. Rec. Doc. No. 89.

After consideration of the motions, the legal memoranda submitted by the parties, the undisputed facts and the law, for the reasons assigned, defendants' motion for judgment on the pleadings, to the extent that it seeks the entry of final judgment as to plaintiffs' claims pursuant to Fed.R.Civ.P. 54, is DENIED. To the extent that defendants seek dismissal of plaintiffs' claims pursuant to the standard applicable to Fed.R.Civ.P. 12(b)(6) motions, the motion is GRANTED IN PART AND DENIED IN PART. As to Pitts' motion for a judgment on the pleadings, the motion is DENIED.

*BACKGROUND*

Plaintiffs are independent insurance agents licensed by the State of Louisiana. Between 1990 and 2000, they sold insurance pursuant to separate sales agreements with Northern Life Insurance Company ( "Northern Life") which, according to the complaint, is owned, operated, controlled and/or is the alter ego of named defendant ING Life Insurance and Annuity Company and/or ING Financial Advisors, LLC.[FN4] A portion of the agents' clientele included public school employees to whom they marketed certain tax-deferred annuities, called section 403(b) annuities, in Orleans Parish and elsewhere.[FN5] Pursuant to their contracts with Northern Life, plaintiffs allege that they were permitted to act as independent agents for other insurance and annuity companies selling similar products.[FN6]

FN4. *See* Rec. Doc. No. 1, Comp., ¶ 10.

FN5. Sections 403(b) and 457 are the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 2

Not Reported in F.Supp.2d, 2005 WL 2036738 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

Internal Revenue Code provisions which cover pre-tax funding of teacher and governmental worker retirement accounts through the purchase of annuities. 26 U.S.C. §§ 403(b), 457.

FN6. *See* Comp., ¶¶ 11-13.

Northern Life subsequently merged into its parent company, Reliastar Life Insurance Company, which is a wholly-owned subsidiary of ING. As agents of ING, plaintiffs continued selling the same insurance products. About the same time, ING also acquired the annuity and life insurance business of a former competitor, Aetna Life Insurance Company, which had a salaried sales force. Plaintiffs allege that the acquired company became reorganized under ING as ING Reliastar Life Insurance and Annuity Company ("ILIAC").FN7 As a result of the acquisition, plaintiffs allege that ING had two groups of agents-a group of independent agents, which included plaintiffs, and a group of employee agents which included the former Aetna agents.FN8

FN7. *Id.,* ¶¶ 16-17.

FN8. *Id.,* ¶ 17.

Plaintiffs allege that in conjunction with their individual insurance agency businesses, plaintiffs built up their own individual reputations and defendants' reputations in the school districts in which plaintiffs marketed and sold section 403(b) annuities. Plaintiffs assert that as part of their business, each plaintiff developed his or her own client list which was shared with Northern Life and, subsequently, with defendants, ING Financial Advisors, LLC and ING Life Insurance and Annuity Company, in conjunction with promoting and selling Northern Life annuity and insurance products.FN9 Plaintiffs allege that ING undertook an effort to offer new section 403(b) and section 457 annuity products that would be endorsed by the American Federation of Teachers ("AFT"). According to the complaint, ING worked through the president of the Orleans Parish local chapter of the AFT in an effort to acquire section 403(b) and/or section 457 "pay slots" in the Orleans Parish

school system which would allow the ILIAC employee-agents to market and sell the AFT-endorsed ING annuity products to AFT-member teachers in the Orleans Parish School system.FN10 According to the complaint, in September 2003, the Southeast regional manager of ING came to New Orleans and met with a group of ING independent agents, including some of the named plaintiffs, and advised the agents that they would no longer be allowed to sell the ING and/or Reliastar section 403(b) plans they were selling if they utilized an AFT endorsement to procure business within the Orleans Parish school system. FN11 Plaintiffs allege that to facilitate the success of the ILIAC employee-agents, ING has provided or will provide the ILIAC employee-agents with plaintiffs' confidential customer information in an effort to misappropriate plaintiffs' clients.FN12

FN9. *Id.,* ¶¶ 13-15.

FN10. According to ING, "pay slots" refer to the financial institutions chosen by a local school district from which annuity products and mutual funds may be purchased by section 403(b) participants.

FN11. Prior to September 2003, defendants offered two fixed annuities and one variable annuity in the section 403(b) market. *See* Rec. Doc. No. 54, at 14, ¶ 10.

FN12. *See* Comp., ¶¶ 18-23.

**\*2** Plaintiffs filed this lawsuit on February 6, 2004, in the Eastern District of Louisiana, invoking this Court's diversity jurisdiction. Plaintiffs claim that after the Aetna acquisition, ING violated several different provisions of Louisiana law when it used plaintiffs' customer lists in order to market the new AFT-endorsed annuity product through the ILIAC agents. Plaintiffs allege claims based upon the Louisiana Unfair Trade Practices Act, La.Rev.Stat. § 51:1401-30, the Louisiana Trade Secrets Act, La.Rev.Stat. § 51:1431-39, La. Civ.Code art. 2315, unjust enrichment pursuant to La. Civ.Code art. 2298, detrimental reliance, breach of contract, fraudulent and/or negligent misrepresentation in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 2036738 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

violation of Louisiana law, and tortious interference with contract in violation of Louisiana law.[FN13]

> FN13. In the complaint, plaintiffs did not specifically invoke Louisiana law with respect to their claims for detrimental reliance and breach of contract.

On January 11, 2005, this Court granted defendants' request for a more definite statement and granted plaintiff's request to amend the complaint. *See Dorsey v. Northern Life Ins. Co.,* 2005 WL 78937 (E.D.La. January 11, 2005). On January 27, 2005, plaintiffs filed an amended complaint alleging the same causes of action and adding several allegations in support of such causes of action.[FN14] Specifically, plaintiffs allege that since the filing of this litigation, defendants have taken several retaliatory actions against plaintiffs which has caused damage to plaintiffs' business, including canceling plaintiffs' earned-reward trips and refusing to permit plaintiffs to attend out-of-town conventions.[FN15] Plaintiffs also allege that defendants intentionally and/or negligently misrepresented to plaintiffs the purpose for which their confidential customer lists and information provided to defendants would be used and led plaintiffs' to believe that such customer lists would not be misused or usurped by defendants to obtain an unjust advantage over plaintiffs.[FN16] Plaintiffs allege that had they known of defendants' intention at the inception of their relationship, plaintiffs would not have agreed to use their labor and skill to develop business for defendants.[FN17] On April 11, 2005, defendants filed the instant motion for judgment on the pleadings.[FN18]

> FN14. Rec. Doc. No. 49 ("Amd.Comp.").

> FN15. Amd. Comp., ¶ 23(a).

> FN16. *See id.* at ¶ 38(a).

> FN17. *Id.* at ¶ 38(b).

> FN18. Rec. Doc. No. 57.

*LAW AND ANALYSIS*

I. *Standard Applicable to Motion for Judgement on the Pleadings*

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." When analyzing a Rule 12(c) motion, the pleadings should be construed liberally, and adjudgment on the pleadings is appropriate only if there are no material facts in dispute and questions of law are all that remain. *Brittan Comm. Int'l Corp. v. Southwestern Bell Tel. Co.,* 313 F.3d 899, 904 (5th Cir.2002); *Voest-Alpine Trading USA Corp. v. Bank of China,* 142 F.3d 887, 891 (5th Cir.1998); *Hebert Abstract Co. v. Touchstone Props., Ltd,* 914 F.2d 74, 76 (5th Cir.1990) (citing 5A Wright & Miller, Federal Practice & Procedure § 1367 at 510). A motion brought pursuant to Rule 12(c) is designed to dispose of cases when a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts. *Great Plains Trust Co. v. Moran Stanley Dean Witter & Co.,* 313 F.3d 305, 312 (5th Cir.2000) (citation omitted). In determining whether to grant a Rule 12(c) motion, a court ordinarily "must look only to the pleadings and accept all allegations in them as true." *St. Paul Fire & Marine Ins. Co. v. Convalescent Serv., Inc.,* 193 F.3d 340, 342 (5th Cir.1999). "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Brittan,* 313 F.3d at 904 (internal quotations omitted).

**\*3** When a party moves for judgment on the pleadings on the ground that the non-moving party has failed to state a claim, the standard for analyzing the claims is substantially the same as that which governs a motion to dismiss brought pursuant to Fed.R.Civ.P. 12(b)(6). *See Jones v. M.L Greninger,* 188 F.3d 322, 324 (5th Cir.1999); *Boswell v. Hon. Gov. of Texas,* 138 F.Supp.2d 782, 784-85 (N.D.Tex.2000); *see also Scott v. The Houma-Terrebonne Hous. Auth.,* 2002 WL 31007412, at \*3 (E.D.La. Sept.6, 2002)(citing *St. Paul Ins. Co. of Bellaire, Tex. v. AFIA Worldwide*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 2036738 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

*Ins. Co.,* 937 F.2d 274, 279 (5th Cir.1991)). Pursuant to that standard, the Court will not dismiss a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Blackburn v. City of Marshall,* 42 F.3d 925, 931 (5th Cir.1995). Accordingly, the court should not dismiss a claim "unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Jones,* 188 F.3d at 324 (citing *Vander Zee v. Reno,* 73 F.3d 1365, 1368 (5th Cir.1996)); *see also Indest v. Freeman Decorating, Inc.,* 164 F.3d 258, 261 (5th Cir.1999)("A dismissal will not be affirmed if the allegations support relief on any possible theory. "). However, " 'a plaintiff must plead specific facts, not mere conclusory allegations....' " *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir.1992) (quoting *Elliott v. Foufas,* 867 F.2d 877, 881 (5th Cir.1989)). Additionally, " 'legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.' " *Blackburn,* 42 F.3d at 931 (quoting *Fernandez-Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir.1993)). " [T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery ... or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio,* 43 F.3d 973, 975 (5th Cir.1995) (internal quotation and citation omitted). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim." *Jones,* 188 F.3d at 324 (citing *Doe v. Hillsboro Indep. Sch. Dist.,* 81 F.3d 1395, 1401 (5th Cir.1996) ).

Ordinarily, the Court may look only to the contents of the pleadings and attachments thereto in deciding a motion to dismiss. *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir.2000). However, the Fifth Circuit has recognized one " limited exception" to that rule. *Scanlan v. Tex. A & M Univ.,* 343 F.3d 533, 536 (5th Cir.2003). Documents attached to a motion to dismiss may be considered by a court if such documents are "

referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Id.; Collins,* 224 F.3d at 499 (citation omitted). The Fifth Circuit has noted that a plaintiff's failure to object to consideration of such documents is "central to this Court's approval of that practice." *Scanlan,* 343 F.3d at 536. By attaching documents central to the claims alleged, "the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins,* 224 F.3d at 499.

*4 Defendant has attached plaintiffs' sales agreements to its motion for judgment on the pleadings. Plaintiffs refer to the sales agreements numerous times in both the original complaint and the amended complaint and the sales agreements are central to plaintiffs' claims in that all of plaintiffs' claims relate to the parties' contractual relationship. Furthermore, plaintiffs have not objected to this Court's consideration of the sales agreements. Therefore, in addition to the pleadings, this Court will consider the sales agreements in connection with deciding defendants' motion for judgment on the pleadings.

## II. *Choice of Law*

It is well-settled that "[a] federal court sitting in diversity applies the conflict-of-laws rules of the state in which it sits." *Vasquez v. Bridgestone/Firestone, Inc.,* 325 F.3d 665, 674 (5th Cir.2003) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Louisiana law "generally gives contracting parties the freedom to choose which state's law will govern disputes arising out of the contract." *Cherokee Pump & Equip., Inc. v. Aurora Pump,* 38 F.3d 246, 250 (5th Cir.1994)(citing La. Civ.Code art. 3540). Louisiana law provides that, with the exception of issues pertaining to the form of a contract or capacity to enter into a contract:

All other issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 2036738 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 5

3537.

La. Civ.Code art. 3540 & 1991 Revision cmts.[FN19]

FN19. Plaintiffs do not contend that the choice of law clause contravenes any public policy of any state.

The parties' sales agreements contain a provision entitled "Disputes" which sets forth a choice of law clause and a permissive forum selection clause:
This Agreement is governed by the laws of the State of Washington. In any action or proceeding brought to enforce or otherwise arising out of or relating to this Agreement, you agree (1) to submit to the jurisdiction of any court sitting in King County, Washington, (2) to waive any objection you may have now or in the future to the laying of venue in any such action or proceeding in any such court, and (3) if you are not the prevailing party, to pay all of our expenses, including reasonable attorneys' fees, incurred by us to enforce our rights.[FN20]

FN20. Rec. Doc. No. 57, Exs. 3, 7 at ¶ 20; *id.,* Exs. 4-6, 8 at ¶ 20. This Court has previously held that the forum selection clause contained in the above-quoted provision is a permissive forum selection clause. *See Dorsey v. Northern Life Ins. Co.,* 2004 WL 2496214, at *4 (E.D.La. November 5, 2004).

Plaintiff concedes that, pursuant to the "Disputes" provision, issues pertaining to contract construction and enforcement are governed by Washington law. The dispute with respect to the choice of law provision is whether plaintiffs' tort and statutory claims fall within the scope of the provision. Citing La. Civ.Code art. 3540, defendants argue that all of plaintiffs' tort and statutory claims are subject to dismissal for failure to plead such claims pursuant to Washington law in accordance with the choice of law clause. Defendants contend that the "Disputes" provision, when read as a whole, provides that Washington law should apply to any dispute " arising out of or relating to" the sales agreements.

Plaintiffs respond by arguing that the choice of law with respect to plaintiffs' tort claims is not governed by article 3540, which is applicable to conventional obligations, but by La. Civ.Code art. 3515, which is the Louisiana general choice of law provision. [FN21] Additionally, plaintiffs argue that the language in the choice of law clause is not sufficiently broad to encompass their tort claims and that courts in this circuit have held that similarly worded provisions do not apply to tort claims.

FN21. La. Civ.Code art. 3515 provides:
Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.
Plaintiffs contend, and defendants do not dispute, that Louisiana law would apply to plaintiffs' tort claims absent the choice of law provision in the contract. Defendants argument for dismissal rests entirely on the argument that the choice of law provision is broad enough to encompass all of plaintiffs' claims.

*5 Pretermitting the issue of whether plaintiffs' tort claims raise "issues of conventional obligations" within the meaning of article 3540, the Court is unpersuaded by defendants' argument that the language in the choice of law clause in the "Disputes " provision is broad enough to encompass plaintiffs' tort and statutory claims. As an initial matter, this Court notes that the choice of law clause and the permissive forum selection clause contained in the "

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 2036738 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

Disputes" provision are distinct. The first sentence of the "Disputes" provision addresses choice of law and it states that "[t]his Agreement is governed by the laws of the State of Washington." The second sentence in the "Disputes" provision is addressed to the parties' agreement with respect to a permissive choice of forum and plaintiffs' potential liability for defendants' attorney's fees and costs. Interpreting the second sentence of the provision, upon which defendants rely, this Court has already stated that it " requires only that plaintiffs ... submit to the jurisdiction of the [Washington] court and waive any objections to venue should a lawsuit be filed in that venue." *Dorsey,* 2004 WL 2496214, at \*4. The permissive choice of forum provision applies, by its own terms, to "any action or proceeding brought to enforce or otherwise arising out of or relating to this Agreement."

Plaintiffs do not contend that their claims are not claims "otherwise arising out of or relating to this Agreement." Instead, the parties' arguments pertaining to the "Disputes" provision revolves around one central issue: whether the language used in the second sentence, *i.e.,* the choice of forum sentence, may be read to modify or expand the language used in the first sentence of the provision, *i.e.,* the choice of law provision. Neither party has directed the Court to any Louisiana or U.S. Fifth Circuit decision explicitly addressing this issue. However, two New York courts have addressed the issue of "whether the court should 'consider language in a forum selection clause to add to, and/or modify, the terms of the choice-of-law clause " ' and have answered that question in the negative. *See Robbins & Myers, Inc. v. J.M. Huber Corp.,* 2001 WL 967606, at \*3 (W.D.N.Y. August 23, 2001)(quoting *In re Lois/USA Inc.,* 264 B.R. 69, 101 (Bankr.S.D.N.Y.2001)). As explained by those courts:
The choice-of-law clause does not address the court or courts in which the law is to be applied, and the forum selection clause does not address the law the chosen forum is to apply when the chosen forum ... hears the case. Among many other things, the former goes much more to the parties' substantive rights, and the latter goes much more to the parties' litigation needs, and in particular, the place where, and procedures under which, their substantive rights

are determined. A choice-of-law clause and a forum selection clause are not the same, and address different needs and concerns.

**\*6** *Robbins & Myers,* 2001 WL 967606, at \*3 (internal quotations and citation omitted); *In re Lois,* 264 B.R. at 101. Based upon that rationale, both courts ultimately concluded that the scope of a choice of law provision was controlled by its own language and that broader language in a forum selection provision did not govern the scope of a choice of law provision. *See Robbins & Myers,* 2001 WL 967606, at \*3; *In re Lois,* 264 B.R. at 103 . [FN22] The holdings in *Robbins & Myers* and *In re Lois* are consistent with the Fifth Circuit's recognition of the general principle that it is not illogical that a choice of law clause would select one forum's substantive law to resolve a dispute when a forum selection clause in the same agreement specifies a different forum as the place for the resolution of such a dispute if such an interpretation is supported by the language in the provision. *See Mitsui & Co. v. MIRA M/V,* 111 F.3d 33, 37 (5th Cir.1997)(rejecting the argument that the application of American law pursuant to a choice of law provision was inconsistent with a forum selection clause in the same contract selecting English courts for the resolution of disputes).

> FN22. The Court notes that in both *Robbins & Myers* and *In re Lois,* the courts noted that the choice of law provisions were in separate sections of the agreements at issue. However, the reasoning in those cases does not rest on that fact. The *In re Lois* court specifically declined to apply a Second Circuit decision, *Turtur v. Rithschild Registry Intern., Inc.,* 26 F.3d 304, 310 (2d Cir.1994), that "used language in the second sentence of that paragraph-the forum selection clause-to broaden the scope of the first sentence, choice of law" because there was no suggestion that the parties in *Turtur* briefed or argued whether language in a forum selection clause properly should be deemed to modify the choice-of-law clause

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 7

Not Reported in F.Supp.2d, 2005 WL 2036738 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

and, consequently, there was no indication that the *Turtur* court specifically ruled on that issue or focused on it. 264 B.R. at 101 . In this case, plaintiff has specifically raised the argument that the forum selection clause should not be interpreted to broaden the language of the choice of law clause. Because the issue is squarely presented in this case, the Court finds the reasoning of the *In re Lois* and *Robbins & Myers* decisions persuasive notwithstanding that the choice of law clause and the permissive forum selection clause at issue in this case, as in *Turtur*, appear in the same provision of the plaintiffs' sales agreements.

Based upon the foregoing authorities, the Court rejects defendants' argument that the "Disputes" provision expressly provides for the application of Washington substantive law to all disputes "arising out of or relating to" the sales agreements. The broad language upon which defendants rely is contained in the sentence addressed to the parties' waiver of any objection to the jurisdiction of the Washington courts. The first sentence of the " Disputes" provision, the choice of law sentence, contains narrower language and it addresses a different aspect of the parties' agreement with respect to the resolution of disputes. The choice of law sentence states only that *"[t]his Agreement* is governed by the laws of the State of Washington." [FN23] Courts in this circuit have repeatedly construed similarly worded choice of law clauses to apply only to contract claims and not to tort claims arising out of the contractual relationship. *See Benchmark Elecs., Inc. v. J.M. Huber Corp.,* 343 F.3d 719, 726-27 (5th Cir.2003)(applying Texas choice of law principles and holding that a choice of law clause stating that the "Agreement shall be governed by, and construed in accordance with, the internal laws of the State of New York" applied only to construction and interpretation of the contract and did not encompass plaintiff's claims of fraud and negligent misrepresentation); *Thompson & Wallace of Memphis, Inc. v. Falconwood Corp.,* 100 F.3d 429, 433 (5th Cir.1996)(holding that a choice of law clause that applied to the "agreement and its enforcement" did not encompass tort claims

because such claims were separate from the agreement and its enforcement); *Caton v. Leach Corp.,* 896 F.2d 939, 943 (5th Cir.1990)(holding that a choice of law clause that stated that "[t]his Agreement shall be construed under the laws of the State of California" did not encompass tort claims because "the choice of law clause does not address the general rights and liabilities of the parties"); *Thomas v. Fidelity Brokerage Servs., Inc.,* 977 F.Supp. 791, 795-96 (W.D.La.1997)(holding that a choice of law provision stating that "this Agreement and its enforcement shall be governed by the laws of the Commonwealth of Massachusetts" unambiguously stated the parties' intent to apply Massachusetts law to issues of contract construction and enforcement only). Because the choice of law provision applies only to "[t]his Agreement," the clause does not encompass plaintiffs' tort and statutory claims and such claims are not subject to dismissal for failure to plead them pursuant to Washington law. Accordingly, this Court analyzes plaintiffs' tort claims and statutory claims as plead pursuant to Louisiana law.

FN23. (emphasis supplied).

### III. *Breach of Contract/Breach of the Duty of Good Faith and Fair Dealing*

*7 Plaintiffs allege that defendants breached the written sales agreements and certain unspecified oral agreements by (1) creating an AFT-endorsed § 457/403(b) plan; (2) advising plaintiffs that they could not sell ING or Reliastar § 403(b) plans if plaintiffs relied on an AFT endorsement to do so; (3) utilizing in-house agents to sell the newly created AFT-endorsed annuity plans to AFT teachers; and (4) using plaintiffs' "individual proprietary information" [FN24] in order to sell the AFT-endorsed annuity product. Plaintiffs allege that defendants violated the implied covenant of good faith and fair dealing, and that they breached the entire contract by "effectively wiping out any and all commissions, premiums and sales to which plaintiffs were entitled." [FN25]

FN24. *See* Comp., ¶ 36.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                Page 8

Not Reported in F.Supp.2d, 2005 WL 2036738 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

FN25. Amd. Comp., ¶ 36(c).

Although not alleged in any complaint, plaintiffs argue in their brief that defendants excluded them from selling annuity products to AFT teachers because plaintiffs intended to advise those teachers that the new AFT-endorsed annuity was less suitable for their retirement needs than the existing annuity products offered by defendants.[FN26] Plaintiffs also allege that defendants have retaliated against plaintiffs by canceling earned-reward trips and by denying plaintiffs participation in out-of-town agent conventions in contravention of " oral, written or customary agreements." [FN27]

FN26. Defendants have argued that this Court cannot consider any such allegation because it is not alleged in any complaint. However, this Court may not dismiss plaintiffs claim "unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Jones,* 188 F.3d at 324 (citing *Vander Zee v. Reno,* 73 F.3d 1365, 1368 (5th Cir.1996)). Because plaintiffs' allegation as to defendants' motive for allegedly precluding plaintiffs from selling § 457/403(b) annuities to AFT teachers is consistent with and merely amplifies the factual allegations in the complaint, plaintiffs argument with respect to defendants' alleged motive may be considered when deciding if plaintiffs can state a claim under any set of facts consistent with those facts alleged in the complaint.

FN27. Amd. Comp., ¶ 23(a).

Defendants argue that plaintiffs' contract claim cannot be sustained because (1) plaintiffs have not and cannot identify any term of the written sales agreements that was breached; (2) the contract expressly permits the conduct alleged; and (3) the integration provisions of the sales agreements bar enforcement of any alleged oral contracts. Plaintiff responds by arguing that (1) plaintiffs should be

afforded discovery to establish their breach of contract claim; (2) the sales agreements do not permit the defendants' conduct; and (3) the sales agreements' various terms do not preclude enforcement of any oral agreements.

Pursuant to Washington law, the essential elements of a breach of contract claim are: "(1) the existence of a contract, (2) a material breach of that contract, and (3) resulting damage." *St. John Med. Ctr. v. State ex. rel. Dept. of Soc. and Health Servs.,* 110 Wash.App. 51, 38 P.3d 383, 390 (Wash.Ct.App.2002). "A breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant." *Northwest Indep. Forest Mfrs. v. Dep't of Labor & Indus.* 78 Wash.App. 707, 899 P.2d 6, 9 (Wash.Ct.App.1995). "The touchstone of contract interpretation is the parties' intent." *Tanner v. Puget Sound Power & Light Co.,* 128 Wash.2d 656, 911 P.2d 1301, 1310 (Wash.1996) (citation omitted). As noted by the Washington Supreme Court:

In Washington, the intent of the parties to a particular agreement may be discovered not only from the actual language of the agreement but also from viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties.

*\*8 Id.* Interpretation of a contract's provisions is a question of law "only when (1) the interpretation does not depend on the use of extrinsic evidence, or (2) only one reasonable inference can be drawn from the extrinsic evidence." *Id.*

A. *Written Sales Agreements*

With respect to the written sales agreements, the Court agrees with defendants that plaintiffs have failed to state a breach of contract claim. In the complaint, the amended complaint and multiple filings directed to this Court, plaintiffs have been unable to identify any term of the written sales agreements they claim was breached. Instead,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 2036738 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

plaintiffs simply assert the need to conduct discovery on the issue. The sales agreements expressly provide that defendants "reserve the right to appoint other sales representatives in the same states." [FN28] Additionally, each written agreement provides that "any ... documents ... and other books or papers" connected with plaintiffs' appointment as independent sales agents "are our property, whether or not we paid for them." [FN29] Finally, the written agreements provide that defendants may unilaterally change the terms of the sales agreements with respect to commissions and service fees on business written after such a change.[FN30]

> FN28. Rec. Doc. No. 57, Exs. 3-8, ¶ 1.
>
> FN29. *Id.,* Exs. 3-8, ¶ 11.
>
> FN30. *Id.,* Exs. 3, 4, 6 & 8 at ¶ 6; Exs. 5 & 7 at ¶ 7.

The language of the sales agreements is clear, unambiguous, and does not depend on extrinsic evidence for its interpretation. The contract provisions plainly and expressly contemplate that other sales agents would be appointed to sell defendants' annuity products in plaintiffs' sales area and expressly declares that "any ... documents" connected with plaintiffs' appointment are defendants' property. The language of the sales agreements is broad and encompasses the possibility that other sales agents could be appointed and that lists of plaintiffs' customers given to defendants could be used by defendants in conjunction with selling other annuity products. Moreover, to the extent that plaintiffs allege that defendants' creation of an AFT-endorsed annuity and their use of in-house agents to sell such a product has impacted plaintiffs' entitlement to certain commissions and fees, the contract reserves to defendants the right to set commissions and fees on such a product. Notably, plaintiffs do not allege that they were precluded from participating in the sale of the AFT-endorsed annuity product. Rather, plaintiffs argue that they thought such product was unsuitable for their AFT-teacher clients. Given the plain terms of the sales agreements coupled with plaintiffs' inability to identify any term of the sales

agreement that was allegedly breached by defendants' conduct, defendants are entitled to dismissal of plaintiffs' breach of contract claim insofar as it is based on a breach of the written sales agreements.

For the same reasons, plaintiffs cannot maintain a claim for the breach of the duty of good faith as it pertains to the written sales agreements. The applicable principles of law were set forth by the Washington Supreme Court in *Badgett v. Sec. State Bank,* 116 Wash.2d 563, 807 P.2d 356, 360 (Wash.1991):

**\*9** There is in every contract an implied duty of good faith and fair dealing. This duty obligates the parties to cooperate with each other so that each may obtain the full benefit of performance. *Metropolitan Park Dist. of Tacoma v. Griffith,* 106 Wash.2d 425, 437, 723 P.2d 1093 (1986); *Lonsdale v. Chesterfield,* 99 Wash.2d 353, 357, 662 P.2d 385 (1983); *Miller v. Othello Packers, Inc.,* 67 Wash.2d 842, 844, 410 P.2d 33 (1966). However, the duty of good faith does not extend to obligate a party to accept a material change in the terms of its contract. *Betchard-Clayton, Inc. v. King,* 41 Wash.App. 887, 890, 707 P.2d 1361, *review denied,* 104 Wash.2d 1027 (1985). Nor does it "inject substantive terms into the parties' contract". Rather, it requires only that the parties perform in good faith the obligations imposed by their agreement. *Barrett v. Weyerhaeuser Co. Severance Pay Plan,* 40 Wash.App. 630, 635 n. 6, 700 P.2d 338 (1985). Thus, the duty arises only in connection with terms agreed to by the parties. *See Matson v. Emory,* 36 Wash.App. 681, 676 P.2d 1029 (1984); *Lonsdale v. Chesterfield,* 99 Wash.2d 353, 662 P.2d 385 (1983) ; *CHG Int'l, Inc. v. Robin Lee Inc.,* 35 Wash.App. 512, 667 P.2d 1127, *review denied,* 100 Wash.2d 1029 (1983); *Miller v. Othello Packers, Inc.,* 67 Wash.2d 842, 843-44, 410 P.2d 33 (1966).

The *Badgett* court specifically rejected the principle that the scope of the good faith obligation can be expanded by the conduct of a contracting party which gives rise to reasonable expectations on the part of the other party. *Id.* at 360 n. 2. Instead, the court emphasized that the duty of good faith is not a "free-floating duty of good faith unattached to the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 10

Not Reported in F.Supp.2d, 2005 WL 2036738 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

underlying legal document" and that "the duty to cooperate exists only in relation to performance of a specific contract term." *Id.* (citation omitted). The court concluded that "[a]s a matter of law, there cannot be a breach of the duty of good faith when a party simply stands on its rights to require performance of a contract according to its terms." *Id.*

Because the plaintiffs have failed to identify any term of the sales agreements which imposed a duty that was breached, and because the plain terms of the contract expressly contemplate the conduct of which plaintiffs complain, plaintiffs cannot sustain a breach of the duty of good faith based upon defendants' performance of any term of the sales agreements.

### B. *Alleged Oral Agreements*

With respect to the alleged oral agreements, however, the Court comes to a different conclusion. Defendants' argue that two clauses of the sales agreements preclude enforcement of any alleged oral agreements. The sales agreements provide:
This Agreement replaces and terminates any prior Agreement between us regarding the products shown in your Compensation Schedule.... [FN31]

FN31. *E.g.,* Rec. Doc. No. 57, Ex. 3, ¶ 16.

The sales agreements further provide:
We have the right to change the terms of this Agreement as they relate to commissions and service fees on business written after such change. *No other change can be made unless in writing and signed by you and our Assistant Secretary or Vice President.* [FN32]

FN32. *E.g., id.,* ¶ 7 (emphasis supplied).

**\*10** Based upon these two provisions, defendants argue that the sales agreements are fully integrated expressions of the relationship between the parties

and, therefore, any oral alterations to the sales agreements are unenforceable.

An integrated writing is "a writing intended as a final expression of the terms of the agreement." *Emrich v. Connell,* 105 Wash.2d 551, 716 P.2d 863, 866 (Wash.1986). Whether the parties intend a written document to be a final expression of the terms of the agreement is a question of fact. *M.A. Mortenson Co., Inc. v. Timberline Software Corp.,* 140 Wash.2d 568, 998 P.2d 305, 311 (Wash.2000).
In making this preliminary determination of whether the parties intended the written document to be an integration of their agreement, which is a question of fact, the trial court must hear all relevant, extrinsic evidence, oral or written. If, after hearing all the evidence, the court determines that the writing is the final and complete expression of the parties' agreement-*i.e., completely integrated*-then the extrinsic evidence is disregarded. If, however, the court finds that the parties intended the writing to be a final expression of the terms it contains but not a complete expression of all terms agreed upon-*i.e., partially integrated*-then the terms not included in the writing may be proved by extrinsic evidence *only insofar as they are not inconsistent with the written terms.*

*Emrich,* 716 P.2d at 866-67 (internal citations omitted) (emphasis in original). "The presence of an integration clause 'strongly supports a conclusion that the parties' agreement was fully integrated....' ' *M.A. Mortenson Co.,* 998 P.2d at 311 (quoting *Olsen Media v. Energy Sciences, Inc.,* 32 Wash.App. 579, 648 P.2d 493, 497 (Wash.Ct.App.1982)). However, the presence of an integration clause is not conclusive. *See Olsen,* 648 P.2d at 497; *see also AEA Int'l USA, Inc. v. Boudreaux,* 108 Wash.App. 1054, 2001 WL 1338452, at \*3 (Wash.Ct.App. Oct.29, 2001).

The presence of the two clauses addressing both prior agreements and subsequent amendments to the sales agreements are strong evidence that the parties intended that the sales agreements be the final expression of the terms of those agreements. However, Washington law clearly disfavors making a determination with respect to the parties' intent regarding integration of a contract absent

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 2036738 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

evidentiary development of a case. Although the Court agrees that, in large part, plaintiffs allegations regarding alleged oral contracts are vague, plaintiffs have, for example, specifically alleged in the amended complaint that defendants violated oral and/or customary agreements pertaining to plaintiffs' participation in earned reward trips and out-of-town conventions. Plaintiffs have alleged that they were damaged by defendants' conduct in this regard by suffering loss of business contacts, lost business opportunities, and lost networking opportunities.[FN33] The sales agreements contain no provision that addresses plaintiffs' entitlement to bonus or incentive programs such as earned-reward trips and attendance at out-of-town conventions. Therefore, the sales agreements may be found to be incomplete and, hence, only partially integrated. If plaintiffs prove the existence of oral agreements that touch subject matter not addressed in the sales agreements, the clauses cited by defendants would not preclude enforcement of an alleged oral agreement with respect to such subject matter. *See Clark v. Clark,* 94 Wash.App. 1022, 1999 WL 106898, at *5 (Wash.Ct.App. March 1, 1999) (reasoning that an integration clause in a property agreement which did not delineate the parties' obligations with respect to support for a child did not bar enforcement of a separate agreement addressing the support issue). Because any finding of integration pursuant to Washington law is a question of fact, defendants are not, based upon the integration clauses alone, entitled to a judgment on the pleadings with respect to the alleged oral agreements.[FN34]

FN33. Amd. Comp., ¶ 23(a).

FN34. Such an issue is more appropriately addressed on a motion for summary judgment.

### IV. *LUTPA*

**\*11** The Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA"), La.Rev.Stat. §§ 51:1401-30, provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." La.Rev.Stat. § 51:1405(A). "A trade practice is unfair when it offends public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Marshall v. Citicorp,* 601 So.2d 669, 670 (La.App. 5th Cir.1992); *see also Turner v. Purina Mills, Inc.,* 989 F.2d 1419, 1422 (5th Cir.1993); *Camp, Dresser & McKee, Inc. v. Steimle and Associates, Inc.,* 652 So.2d 44, 48 (La.App. 5th Cir.1995).

Defendants argue that plaintiffs cannot maintain an action pursuant to LUTPA because plaintiffs are neither business competitors nor consumers. LUTPA grants a personal right of action to "[a]ny person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by R.S. 51:1405...." La.Rev.Stat. § 51:1409. Some Louisiana Courts of Appeal have interpreted the statute narrowly and held that standing to assert a LUTPA claim is restricted to business competitors and direct consumers; other Louisiana Courts of Appeal have read the statue broadly stating that business competitors and consumers are not the exclusive classes of persons who may bring a LUTPA claim. *Compare, e.g., Sportsman Cove, Inc. v. Brunswick Corp.,* 845 So.2d 1231, 1232 (La.App. 5th Cir.2003) (holding that the personal right of action granted by LUTPA is restricted to direct consumers or business competitors); *Nat'l Gypsum Co. v. Ace Wholesale,* 738 So.2d 128, 130 (La.App. 5th Cir.1999) (acknowledging that some courts have given the statute a broad reading, but restricting a LUTPA claim to direct consumers and business competitors because LUTPA was not intended to confer such a broad scope of action); *Morris v. Rental Tools, Inc.,* 435 So.2d 528, 533 (La.App. 5th Cir.1983) (adopting the narrow interpretation of the scope of LUTPA, but extending a right of action to " potential as well as actual competitors") *with Capitol House Pres. Co., L.L.C. v. Perryman Consultants, Inc.,* 725 So.2d 523, 530 (La.App. 1st Cir.1999) ("Although business consumers and competitors are included in the group afforded this private right of action, Louisiana courts have repeatedly held they are not its exclusive members"

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 12

Not Reported in F.Supp.2d, 2005 WL 2036738 (E.D.La.)
(Cite as: Not Reported in F.Supp.2d)

) (citations omitted); *Monroe Med. Clinic, Inc. v. Hosp. Corp. of Am.,* 622 So.2d 760, 763 (La.App. 2d Cir.1993) (same); *Jarrell v. Carter,* 577 So.2d 120, 123 (La.App. 1st Cir.1991) (same). Noting the split in the state courts, the U.S. Fifth Circuit Court of Appeals has followed the narrow interpretation and held that the scope of the private right of action afforded by LUTPA is "limited to consumers and business competitors." *Ga rdes Directional Drilling v. U.S. Turnkey Exploration Co.,* 98 F.3d 860, 868 (5th Cir.1996); *see also Tubos De Acero De Mexico, S.A. v. Am. Int'l Inv. Corp., Inc.,* 292 F.3d 471, 480 (5th Cir.2002) ("LUTPA's private right of action is limited to direct consumers or to business competitors.") (citation omitted); *Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.,* 220 F.3d 396, 405 (5th Cir.2000); *Delta Truck & Tractor, Inc. v. J.I. Case Co.,* 975 F.2d 1192, 1205 (5th Cir.1992). Similarly, federal district courts have followed the narrow interpretation of LUTPA. *See e.g., Intra-Operative Monitoring Servs., Inc. v. Blue Cross/Blue Shield of Ala.,* No. Civ. A. 03-2829, 2004 WL 42635, at *2 (E.D.La. Jan.5, 2004) (dismissing a LUTPA claim because "[c]onstruing the allegations of the Petition in plaintiff's favor, plaintiff does not qualify as either a consumer or competitor"); *Bollinger v. Tanner Cos., LP,* No. Civ. A. 02-3248, 2003 WL 1824836, at *3 (E.D.La. Apr.7, 2003) ("The Act provides a cause of action only for direct consumers and business competitors.") (citations omitted); *see also Plaquemine Marine, Inc. v. Mercury Marine,* 859 So.2d 110, 117 (La.App. 1st Cir.2003) (noting that the federal courts have followed the Louisiana Fifth Circuit in limiting standing to assert a LUTPA claim to consumers and business competitors).

*12 Plaintiffs argue that they are competitors with defendants because they are not contractually barred from acting as independent agents for other insurance companies and because they are actually competing with defendants by selling defendants' competitors insurance and annuity products. In a factually analogous context, the Louisiana Fifth Circuit Court of Appeal has held that a LUTPA claim cannot be asserted in the context of a distributor/manufacturer business relationship. *See Sportsman Cove, Inc.,* 845 So.2d at 1232 (holding that a marine retail dealer did not have standing to

assert a LUTPA claim against a defendant with whom it had contracted to market marine outboard motor); *Nat'l Gypsum Co.,* 738 So.2d at 130 (holding that a business did not have standing to bring a LUTPA claim against its distributor because a distributor is not a competitor). The *National Gypsum Co.* court explicitly rejected the argument that a distributor becomes a competitor by virtue of its potential to compete with a supplier by obtaining a different supplier of the same or similar products. *Id.; see also Bollinger,* 2003 WL 1824836, at *3 (finding that a plaintiff who had contracted with the defendant to serve as a sales representative and who was not contractually barred from competing with defendant did not have standing to assert a LUTPA claim).

All of plaintiffs' claims arise out their status as distributors of defendants' annuity products and defendants' alleged conduct within the context of that relationship. None of the plaintiffs' causes of action center on plaintiffs' ability to sell competing insurance or annuity products, there are no allegations that defendants interfered with plaintiffs' contractual rights to sell such competing products, and there is no allegation that defendants' direct competitors, *i.e.,* other insurance companies, were harmed. *See Nursing Enters., Inc.,* 719 So.2d 524, 528 (La.App. 2d Cir.1998) (noting that pursuant to LUTPA, a defendant's motivation "must have been taken with the specific purpose of harming the competition"). Accordingly, the allegations in plaintiffs' complaints, viewed in the light most favorable to plaintiff, do not support an inference that plaintiffs are defendants' business competitors. Therefore, plaintiffs do not have standing to pursue a LUTPA claim.[FN35]

FN35. Because the Court finds that plaintiffs lack standing to assert a LUTPA claim, the Court does not address defendants' alternative argument that plaintiffs' LUTPA claims are barred because such claims concern actions subject to the jurisdiction of the insurance commissioner. *See* La.Rev.Stat. § 51:1406(1).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.