Not Reported in F.Supp.2d                                                                                              Page 13
Not Reported in F.Supp.2d, 2005 WL 2036738 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

### V. *LUTSA*

Plaintiffs allege that defendants' conduct violated the Louisiana Uniform Trade Secrets Act ("LUTSA"), La.Rev.Stat. §§ 51:1431-39. The essential elements of a claim pursuant to LUTSA are: (a) the existence of a trade secret; (b) a misappropriation of the trade secret by another; and (c) the actual loss caused by the misappropriation. *Computer Mgmt. Assistance Co.,* 220 F.3d at 403 (citing *Reingold v. Swiftships, Inc.,* 126 F.3d 645, 648 (5th Cir.1997) (citations omitted)).[FN36] In order to maintain a cause of action pursuant to LUTSA, "[t]he plaintiff has the burden of establishing both the existence of a legally protectable secret and a legal basis upon which to predicate relief." *Pontchartrain Med. Labs, Inc. v. Roche Biomedical Labs., Inc.,* 677 So.2d 1086, 1090 (La.App. 1st Cir.1996). The analytical framework applicable to a LUTSA claim is as follows:

> FN36. Pursuant to LUTSA:
> "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
> (a) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and
> (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
> La.Rev.Stat. Ann. § 51:1431(4). " 'Misappropriation' means ... disclosure or use of a trade secret of another without express or implied consent by a person who ... at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was ... acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use...." La.Rev.Stat. § 51:1431(2)(b)(ii)(bb).

*13 The threshold inquiry in every trade secrets case is whether a legally protectable trade secret actually existed. The second element is whether an express or implied contractual or confidential relationship existed between the parties which obligated the party receiving the secret information not to use or disclose it. Finally, the plaintiff must prove the party receiving the secret information wrongfully breached its duty of trust or confidence by disclosing or using the information to the injury of plaintiff.
*Pontchartrain Med. Labs,* 677 So.2d at 1090 (internal citations omitted); *see Engineered Mech. Servs., Inc. v. Applied Mech. Tech., Inc.,* 464 So.2d 329, 333-34 (La.App. 1st Cir.1985).

A customer list may constitute a trade secret "if efforts are made to maintain its secrecy." *Id.* (citing *Wyatt v. PO2, Inc.,* 651 So.2d 359 (La.App. 2d Cir.1995)). Although the Louisiana courts have stated that whether something constitutes a trade secret is a question of fact, *Wyatt,* 651 So.2d at 363, a judgment on the pleadings is nevertheless appropriate if a plaintiff would not be entitled to relief under any set of facts that he could prove consistent with the allegations in the complaint. *Great Plains Trust Co.,* 313 F.3d at 312; *Jones,* 188 F.3d at 324. Plaintiffs repeatedly plead that plaintiffs' client lists are "confidential" and constitute "proprietary information."[FN37] However, in order to survive defendants' motion, plaintiffs must plead specific facts, not mere conclusory allegations. *Guidry,* 954 F.2d at 281. This Court will not accept as true conclusory allegations or unwarranted deductions of fact. *Great Plains Trust Co.,* 313 F.3d at 312.

> FN37. *E.g.,* Comp., ¶¶ 15, 22, 23.

There are no allegations in the complaint from which it can be inferred that plaintiffs made any efforts to maintain secrecy with respect to plaintiffs' customer lists vis-à-vis defendants. The allegations in the complaint and the terms of the sales agreements lead inexorably to an opposite inference. Plaintiffs allege that in connection with their appointment as independent insurance agents, each plaintiff shared his or her client list with the defendants.[FN38] The sales agreements specifically

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 14
Not Reported in F.Supp.2d, 2005 WL 2036738 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

provide that "any ... documents ... and other books or papers" connected with plaintiffs' appointment as independent sales agents "are our property, whether or not we paid for them." [FN39] These circumstances preclude any inference that plaintiffs' client lists were confidential. *See Millet v. Crump,* 687 So.2d 132, 136 (La.App. 5th Cir.1997) (" [I]nformation regarding policyholders is generally not confidential since that information is readily obtainable from the policyholders, the policies, and from the insurance company."). Taking the allegations of the complaint as true, plaintiffs turned over their client lists in the face of a contractual agreement which provided that all such documents are defendants' property. Additionally, the sales agreements contain no confidentiality clause or any other clause restricting defendants' use of information provided to them by plaintiffs. *See Wyatt,* 651 So.2d at 363 (finding that a customer list is not a trade secret where there was no contractual agreement addressing the confidentiality of such information and no restrictions on the use of such information). Given these circumstances, it appears beyond doubt that plaintiff can prove no set of facts consistent with the allegations in the complaint and consistent with the terms of the sales agreements which would entitle them to relief pursuant to LUTSA.

FN38. *See* Comp., ¶ 15.

FN39. *Id.,* Exs. 3-8, ¶ 11.

VI. *Violations of Louisiana Civil Code Article 2315*

*14 Article 2315 of the Louisiana Civil Code provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." It has long been established that "[t]his single article forms the basis of all tort liability in Louisiana." *Devore v. Hobart Mfg. Co.,* 367 So.2d 836, 840 (La.1979).

Citing *Sun Drilling Prods. Corp. v. Rayborn,* 798 So.2d 1141, 1158 (La.App. 4th Cir.2001), defendants argue that because of the existence of the sales agreements, which defendants contend govern the parties' entire relationship, plaintiffs cannot, as a matter of law, assert any tort claims and plaintiffs' only remedy is for breach of contract.

A close reading of *Sun Drilling* reveals, however, that defendants read that decision too broadly. The issue in *Sun Drilling* was whether the trial evidence supported the plaintiff's claim that officers of a corporation had tortiously interfered with a contract between the plaintiff and the corporation. *See id.* at 1154-59. In its discussion of Louisiana's narrow cause of action for tortious interference with contract, the court reiterated that the Louisiana courts have rejected formulating a "broad and undefined tort ... in which liability turns on the purpose for which the defendant acts, with the indistinct notion that the purposes must be considered improper in some undefined way." *Id.* at 1158 (citation, internal quotation marks, and emphasis omitted). The court reasoned that although the Louisiana Supreme Court has recognized that article 2315 imposes a broad basis for delictual liability, a narrow cause of action for tortious interference with contract was justified by " the need to avoid blurring the distinction between tort and contract claims." *See id.* Having previously noted that a tortious interference with contract claim requires the plaintiff to show that a corporate officer caused his corporation-employer to breach a contract or make the performance of such a contract impossible or more burdensome, the court reasoned:
The rules governing contract disputes and breaches are separate from those governing offenses and quasi offenses, and these separate legal domains should not overlap unless there is a duty on the part of the person or legal entity, separate and apart from the obligations created by the terms of a contract. *Spears v. American Legion Hospital,* 00-865 (La.App. 3 Cir. 1/31/01), 780 So.2d 493, 497.

*Id.*

In the context of discussing the narrow delict of tortious interference with contract, neither the *Sun Drilling* court nor the court deciding *Spears,* the cased cited by the *Sun Drilling* court, purported to lay down a broad principle of law that the existence of a contract between a plaintiff and defendant precludes a plaintiff from seeking recovery in tort or that the existence of contractual obligations

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                      Page 15
Not Reported in F.Supp.2d, 2005 WL 2036738 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

negates the applicability of delictual duties. The distinction between an action on a contract and a tort action is that " 'the former flows from the breach of a special obligation contractually assumed by the obligor, whereas the latter flows from the violation of a general duty owed to all persons." ' *Certain Underwriters at Lloyd's, London v. Sea-Lar Mgmt.,* 787 So.2d 1069, 1075 (La.App. 4th Cir.2001) (quoting *Ride Oak Dev., Inc. v. Murphy,* 641 So.2d 586, 591 (La.App. 4th Cir.1994)). However, it is well-settled in Louisiana that the same acts or omissions may constitute a breach of both general duties and contractual duties and may give rise to both actions in tort and actions in contract. See *Corbello v. Iowa Prod.,* 850 So.2d 686, 708 (La.2003) ("We recognize the long-standing rule that 'when a party has been damaged by the conduct of another arising out of a contractual relationship, the former may have two remedies, a suit in contract, or an action in tort, and that he may elect to recover his damages in either of the two actions." ') (quoting *Fed. Ins. Co. v. Ins. Co. of N. Am.* 262 La. 509, 263 So.2d 871, 872 (1972)); *Cooper v. La. Dep't of Public Works,* 870 So.2d 315, 331 (La.App. 3d Cir.2004) ("[W]hen a party's damage arises from the breach of a contractual relationship, he or she may have a remedy both in contract and in tort.") (citation omitted); *Franklin v. Able Moving & Storage Co., Inc.,* 439 So.2d 489, 491 (La.App. 1st Cir.1983) (" The same acts or omissions may constitute breaches of both general duties and contractual duties giving rise to actions in both tort and contract.").

*15 In addition to pleading a cause of action for tortious interference with contract, plaintiffs argue that they have plead facts and causes of action which implicate general duties as well as contractual duties and, therefore, their tort claims are not precluded by the existence of the sales agreements. Specifically, plaintiffs argue that (1) they have alleged a breach of the duty of good faith and fair dealing; (2) they have alleged a claim of negligent misrepresentation; and (3) the facts alleged in the complaint support recovery pursuant to article 2315 on the legal theory that defendants tortiously interfered with plaintiffs' business relations with third parties.

With respect to a breach of the duty of good faith and fair dealing, defendants correctly note that such a claim does not support a tort claim pursuant to article 2315. Pursuant to both Louisiana and Washington law, the duty of good faith and fair dealing does not exist absent a contract. *Spillway Inv., L.L.C. v. Pilot Travel Centers L.L.C.,* No. Civ. A. 04-2451, 2005 WL 517498, at *7 (E.D.La. Feb.22, 2005) ("Louisiana recognizes an implied covenant of good faith and fair dealing in every contract.... Conversely, where no enforceable contract exists, no covenant of good faith and fair dealing can be implied.") (internal citations omitted); *Badgett,* 807 P.2d at 360 ("[T]he duty arises only in connection with terms agreed to by the parties."). However, plaintiffs' claims of fraud, negligent misrepresentation, as well as their argument that the facts alleged demonstrate that defendants tortiously interfered with plaintiffs' business relations, implicate general tort duties which do not arise as a result of the existence of the written sales agreements, but instead, from the broad basis of tort liability established by article 2315.[FN40] Because a given set of facts may provide the basis for recovery in both contract and tort, the existence of the written sales agreements, alone, does not necessarily preclude plaintiffs from asserting tort claims. Instead, the resolution of plaintiffs' tort claims depends upon whether the facts plead in plaintiffs' pleadings state a claim for relief under any tort theory raised. Therefore, the Court will proceed to address the merits of plaintiffs' individual tort claims.

> FN40. Defendants correctly note that plaintiffs have not specifically plead a cause of action for tortious interference with business relations and they complain that plaintiffs should not be permitted to amend their complaint in their opposition to the motion for judgment on the pleadings. Although plaintiffs have not specifically plead such a cause of action, plaintiffs have plead violations of article 2315. Article 2315 provides the basis for a tortious interference with business theory of recovery as well as fraud and negligent misrepresentation theories. See *Griffin v.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 16
Not Reported in F.Supp.2d, 2005 WL 2036738 (E.D.La.)
(Cite as: Not Reported in F.Supp.2d)

*BSFI Western E & P, Inc.,* 812 So.2d 726, 734 (La.App. 1st Cir.2002)(noting that intentional or negligent misrepresentation may be characterized as a delict recognizable pursuant to La. Civ.Code 2315); *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 601 (5th Cir.1981) (noting that article 2315 is the basis for a claim of tortious interference with business relations). The Court may not dismiss plaintiffs' claims pursuant to article 2315 unless it is clear that plaintiffs cannot recover under any theory cognizable under that article. Moreover, in their reply, defendants have addressed that claim and argued that plaintiff has failed to state such a claim. Under these circumstances, the Court will address the merits of plaintiffs' tortious interference with business claim.

A. *Tortious Interference with Business Relations*

Louisiana courts have recognized a cause of action for tortious interference with business. *Junior Money Bags, Ltd. v. Segal,* 970 F.2d 1, 10 (5th Cir.1992) (citations omitted); *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 601 (5th Cir.1981). "In Louisiana, the delict is based on the principle that the right to influence others not to deal is not absolute." *Junior Money Bags,* 970 F.2d at 10 (citing *Ustica Enters., Inc. v. Costello,* 434 So.2d 137, 140 (La.App. 5th Cir.1983)). The U.S. Fifth Circuit has summarized the governing rule stating that "Louisiana law protects the businessman from ' malicious and wanton interference', permitting only interferences designed to protect a legitimate interest of the actor." *Dussouy,* 660 F.2d at 601. A plaintiff bringing a claim for tortious interference with business must ultimately show " 'by a preponderance of the evidence that the defendant improperly influenced others not to deal with the plaintiff.' " *Junior Money Bags,* 970 F.2d at 10 (quoting *McCoin v. McGehee,* 498 So.2d 272, 274 (La.App. 1st Cir.1986) (citation omitted)). It is not sufficient for plaintiff to allege conduct which merely has an effect on its business relationships or economic opportunities absent allegations that a defendant maliciously attempted to prevent a third party from dealing with the plaintiff. *See Nowling v.*

*Aero Servs. Int'l, Inc.,* 752 F.Supp. 1304, 1312 n. 7 (E.D.La.1990); *Ustica,* 434 So.2d at 140.

*16 The Louisiana Fourth Circuit Court of Appeals has noted:
Although this cause of action has an ancient vintage, Louisiana jurisprudence has viewed it with disfavor. Louisiana courts have limited this cause of action by imposing a malice element, which requires that the plaintiff show the defendant acted with actual malice. [*Dussouy,* 660 F.2d at 602]. " Although its meaning is not perfectly clear, the malice element seems to require a showing of spite or ill will, which is difficult (if not impossible) to prove in most commercial cases in which conduct is driven by the profit motive, not by bad feelings. In fact, there appear to be no reported cases in which anyone actually has been held liable for the tort." George Denegre, Jr., et al., *Tortious Interference and Unfair Trade Claims: Louisiana's Elusive Remedies for Business Interference,* 45 Loy. L.Rev. 395, 401 (1999). "Simply put, in most cases in which a corporation is acting to maximize profits-rather than to harm another business-it will be difficult for a plaintiff to produce evidence of bad faith or malicious intent." *Id.* at 404.

*JCD Marketing Co. v. Bass Hotels and Resorts, Inc.,* 812 So.2d 834, 841 (La.App. 4th Cir.2002); *see also Junior Money Bags,* 970 F.2d at 11 (noting that tortious interference with business is a "very limited form of recovery" in Louisiana). Malice is an essential element of a claim and actual malice must be plead in the complaint. *Dussouy,* 660 F.2d at 602.[FN41]

   FN41. Ordinarily, the failure to plead malice does not warrant dismissal of a claim. *Dussouy,* 660 F.2d at 602. If the standards for reviewing requests to amend pursuant to Fed.R.Civ.P. 15(a) apply, "the appropriate course is to allow the plaintiff to amend his complaint to make the necessary allegations." *Id.* As explained further below, the deadline for amending pleadings has past and, therefore, Rule 15(a) does not apply and plaintiffs must show good cause to amend pursuant to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                   Page 17
Not Reported in F.Supp.2d, 2005 WL 2036738 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

Rule 16(b). *See Southwestern Bell Telephone Co. v. City of El Paso,* 346 F.3d 541, 546 (5th Cir.2003); *S & W Enters., L.L.C. v. South Trust Bank of Alabama, NA,* 315 F.3d 533, 536 (5th Cir.2003).

Plaintiffs have alleged that ING met with the AFT in an effort to offer an AFT-endorsed annuity plan.[FN42] Plaintiffs also allege that ING told plaintiffs that they would no longer be permitted to sell ING or Reliastar annuity products if plaintiffs relied on the AFT endorsement to do so.[FN43] Finally, plaintiffs have alleged that ING revealed the identity of plaintiffs' annuity customers to in-house agents for the purpose of "misappropriating" plaintiffs' clients.[FN44] These allegations are insufficient to support a claim for tortious interference with business relations. There are no allegations that any in-house agent actually contacted any of plaintiffs' clients. Moreover, even assuming that the in-house agents had done so, plaintiffs allegations show conduct which merely has an effect on plaintiffs' business relationships or economic opportunities with respect to selling a certain type of annuity product to AFT-member public school employees. There are no allegations that any agent or any corporate defendant maliciously attempted to prevent any AFT-member public school employee who was one of the plaintiffs' clients from dealing with any such plaintiff. Accordingly, the facts alleged do not support a claim for tortious interference with business.

FN42. Comp., ¶ 18.

FN43. *Id.,* ¶ 22.

FN44. *Id.,* ¶ 23.

**B. *Tortious Interference with Contract***

The Louisiana Supreme Court has recognized a cause of action for tortious interference with contract within the limited confines of a corporate officer's duty to refrain from intentional and unjustified interference with a contractual relationship between his employer and a third party. *See Am. Waste & Pollution Control Co. v. Browning-Ferris, Inc.,* 949 F.2d 1384, 1387-91 (5th Cir.1991)(discussing *9 to 5 Fashions v. Spruney,* 538 So.2d 228 (La.1989)). Additionally, the Fifth Circuit has recognized that the Louisiana Supreme Court has established that under some circumstances, a tort action may lie for interference with an attorney-client contract. *Dodson v. Spiliada Maritime Corp.,* 951 F.2d 40, 44 (5th Cir.1992) (citing *Chaffin v. Chambers,* 584 So.2d 665 (La.1991); *Penalber v. Blount,* 550 So.2d 577 (La.1989)).

*17 The elements of a tortious interference with contract claim are the following:
(1) the existence of a contract or a legally protected interest between the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional inducement or causation of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome; (4) absence of justification on the part of the officer; (5) causation of damages to the plaintiff by the breach of contract or difficulty of its performance brought about by the officer.

*9 to 5 Fashions,* 538 So.2d at 234; *see also Sun Drilling,* 798 So.2d at 1155. "To state a cause of action for intentional interference with a contract, the plaintiff must allege and prove a breach of contract." *Sun Drilling,* 798 So.2d at 1155. " Moreover, a plaintiff must prove that the corporate officers acted outside of their corporate authority or in a manner they knew to be detrimental to the corporate interest." *Id.* (citation omitted).

The U.S. Fifth Circuit Court of Appeals, federal district courts in Louisiana, and various Louisiana Courts of Appeal since *9 to 5 Fashions* have " uniformly recognized the narrowness of Louisiana's tortious interference action." *Egrov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey,* 183 F.3d 453, 457 (5th Cir.1999); *see also America's Favorite Chicken Co. v. Cajun Enters.,* 130 F.3d 180, 184 (5th Cir.1997); *Am. Waste & Pollution Control,* 949 F.2d at 1386-87; *Oreck Holdings, L.L.C. v. Euro-Pro Corp.,* 2002 WL 59405, at *2 (E.D.La. Jan.15, 2002); *White v. White,*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 18
Not Reported in F.Supp.2d, 2005 WL 2036738 (E.D.La.)
(Cite as: Not Reported in F.Supp.2d)

641 So.2d 538, 541 (La.App. 3d Cir.1994). The Fifth Circuit has noted that even the Louisiana appellate courts which have purported to expand the cause of action have done so only within the limited confines of *9 to 5 Fashions. Egrov,* 183 F.3d at 457 (citations omitted).

There are no allegations in plaintiffs' complaint or amended complaint of a corporate officer intentionally and unjustifiably interfering with a contract between his corporate employer and a third party. Nor are there any allegations that implicate the narrow expansion of the tort to an attorney-client contract. Plaintiffs have not alleged any facts which support an inference that any corporate officer acted outside his or her authority or that any conduct by any official was detrimental to the corporation. To the contrary, plaintiffs allegations support only the inference that any conduct by any of the defendants' officers was taken on behalf of the various corporate defendants. Accordingly, the allegations in the complaint do not state a claim for intentional interference with contract.

### C. *Intentional/Negligent Misrepresentation*

Defendants have moved to dismiss plaintiffs' intentional and negligent misrepresentation claims for failure to plead such claims with particularity in accordance with Fed.R.Civ.P. 9(b). Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." " 'What constitutes "particularity" will necessarily differ with the facts of each case....' " *Benchmark Elecs., Inc. v. J.M. Huber Corp.,* 343 F.3d 719, 724 (5th Cir.2003) (quoting *Guidry v. Bank of LaPlace,* 954 F.2d 278, 288 (5th Cir.1992)). "At a minimum, Rule 9(b) requires allegations of the particulars of ' time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.' " *Tel-Phonic Servs.,* 975 F.2d at 1138 (quoting 5C Wright & A. Miller, *Federal Practice and Procedure* § 1297, at 590 (1990)); *see also Benchmark Elecs.,* 343 F.3d at 724; *Williams v. WMX Techs., Inc.,* 112 F.3d 175, 177 (5th Cir.1997)

. Agreeing with the Second Circuit's approach, the Fifth Circuit has stated:

*18 [A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.

*WMX Techs.,* 112 F.3d at 177 (citation omitted). " Directly put, the who, what, when, and where must be laid out *before* access to the discovery process is granted." *Id.* at 178. Courts in the Fifth Circuit " apply the rule with force, without apology." *See id.* " A dismissal for failure to plead fraud with particularity as required by rule 9(b) is a dismissal on the pleadings for failure to state a claim." *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.,* 365 F.3d 353, 361 (5th Cir.2004) (citing *Shushany v. Allwaste, Inc.,* 992 F.2d 517, 520 (5th Cir.1993)).

Although Rule 9(b) by its terms does not apply to negligent misrepresentation claims, the Fifth Circuit has applied the heightened pleading requirements when the parties have not urged a separate focus on the negligent misrepresentation claims. *Benchmark Elecs.,* 343 F.3d at 723. In plaintiffs' complaint and amended complaint, plaintiffs have alleged that, based upon all of the factual allegations contained in the pleadings, defendants' conduct "constitutes fraud and/or negligent misrepresentation." [FN45] When, as here, a plaintiff's fraud and negligent misrepresentation claims are based upon the same set of facts, the heightened pleading requirements of Rule 9(b) apply. *Benchmark Elecs.,* 343 F.3d at 723.

FN45. Comp., ¶ 38; Amd. Comp., ¶ 38(e).

Pursuant to Louisiana law, "[f]raud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." *Ballard's Inc. v. N. Am. Land Development Corp.,* 677 So.2d 648, 650 (La.App. 2d Cir.1996); *see also* La. Civ.Code art.1953. The elements of a Louisiana delictual fraud or intentional misrepresentation claim are (1)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                              Page 19
Not Reported in F.Supp.2d, 2005 WL 2036738 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

a misrepresentation of a material fact; (2) made with the intent to deceive; and (3) justifiable reliance thereon with resultant injury. *Guidry v. United States Tobacco,* 188 F.3d 619, 627 (5th Cir.1999) (citations omitted). Fraud may also result from silence or inaction. La. Civ.Code art.1953; *Ballard's,* 677 So.2d at 650. To sustain a claim for intentional misrepresentation by silence or inaction, a plaintiff must demonstrate that there is a duty to disclose information. *Greene v. Gulf Coast Bank,* 593 So.2d 630, 632 (La.1992); *Bunge Corp. v. GATX Corp.,* 557 So.2d 1376, 1383 (La.1990); *Ballard's,* 677 So.2d at 651; *Guidry v. Bank of LaPlace,* 661 So.2d 1052, 1059 (La.App. 4th Cir.1995); *First Downtown Development v. Cimochowski,* 613 So.2d 671, 677 (La.App. 2d Cir.1993). If a misrepresentation claim is based on a failure to disclose, "even fraudulent intent is insufficient to confer liability ... in the absence of a duty to disclose." *First Downtown,* 613 So.2d at 677.

*19 With respect to a claim for negligent misrepresentation, the Louisiana Supreme Court has held that a duty-risk negligence framework governs the analysis of the claim. *Daye v. Gen. Motors Corp.,* 720 So.2d 654, 659 (La.1998). In order to sustain a claim for negligent misrepresentation, whether the plaintiff is a third-party or a party to the alleged negligent misrepresentation, there must be a legal duty on the part of the defendant to supply correct information to the plaintiff, there must be a breach of that duty, and the breach must have caused plaintiff damage. *Daye,* 720 So.2d at 659; *Barrie v. V.P. Exterminators, Inc.,* 625 So.2d 1007, 1013-14 (La.1993).

In their amended complaint, plaintiffs allege:
Defendants intentionally and/or negligently misrepresented to plaintiffs the purpose for which their confidential customer lists and information assembled by the plaintiffs would be used and examined by defendant, intentionally and/or negligently led plaintiffs to believe and rely upon the reasonable belief that plaintiffs' work, effort, industry and skill in developing each plaintiff's client base would not be misused or usurped by defendants to obtain an unjust advantage from or over plaintiffs.... [FN46]

FN46. Amd. Comp., ¶ 38(a).

Although this allegation succinctly states plaintiffs' conclusion, both the complaint and amended complaint lack any factual specificity as to which of the numerous corporate defendants made such alleged misrepresentations, to which plaintiff or plaintiffs such alleged misrepresentations were made, the actual content of any statement by any defendant, or when and where such alleged misrepresentations were made. As noted above, the sales agreements expressly, clearly and unambiguously notified plaintiffs that any documents generated in connection with plaintiffs' appointment as independent insurance agents were the defendants' property. In light of that provision, the need for specificity in this case is particularly acute. The sales agreements place no limitation on defendants' use of any documents generated by plaintiffs in connection with their appointment and, absent any factual allegations of any actual misrepresentation, this Court cannot infer the existence of any of the essential elements of either a fraud or negligent misrepresentation claim from plaintiffs' generalized allegation cited above.

Asserting that they have satisfied Rule 9(b), plaintiffs rely on several paragraphs of the original complaint in which they allege, *inter alia,* that ING met with the AFT in an effort to offer an AFT-endorsed annuity plan, informed plaintiffs that they could not use the AFT endorsement to sell existing annuity plans, and revealed to defendants' in-house agents the identities of plaintiffs' public school employee clients.[FN47] Specifically, plaintiffs point to one paragraph of the complaint which reads:

FN47. *See* Comp., ¶¶ 18-23.

Sometime in September 2003, the Southeast regional manager of ING, came to New Orleans and met with a group of ING independent agents, including some of the named plaintiffs here, and advised that plaintiffs would no longer be allowed to sell ING and/or Reliastar § 403(b) plans if plaintiffs utilize the AFT endorsement to procure any business in the Orleans Parish School system.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 20
Not Reported in F.Supp.2d, 2005 WL 2036738 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

FN48

> FN48. *Id.,* ¶ 19.

***20** This excerpt contains no suggestion that any of the regional manager's statements were false. Nor is there any explanation anywhere in the pleadings as to why any statements or omissions by the regional manager during the alleged meeting were false or misleading. *See Williams,* 112 F.3d at 179 (" [P]laintiffs must also 'set forth an explanation as to why the statement or omission complained of was false or misleading.' ") (quoting *Lovelace v. Software Spectrum, Inc.,* 78 F.3d 1015, 1017 (5th Cir.1996)). To the contrary, plaintiffs' arguments to this Court make clear that the gravamen of their action is that defendants did, in fact, inform plaintiffs that they could not continue to sell the old ING or Reliastar annuity products which were not AFT-endorsed, that plaintiffs did not want to sell the new AFT-endorsed annuity because they felt that such a product was not suitable for their clients, and that plaintiffs were damaged by defendants' alleged conduct in utilizing in-house agents to sell the AFT-endorsed product to the exclusion of the plaintiffs. Given that the truth of the regional manager's alleged representations to plaintiffs is assumed in plaintiffs' argument, the above-cited paragraph clearly does not provide even a hint of insight into the factual bases for plaintiffs' misrepresentation claims. Accordingly, plaintiffs' fraud and/or negligent misrepresentation claims fail for lack of particularity.

### D. *Plaintiffs' Request to Amend*

Plaintiffs request leave to file a second amended complaint should the Court find that their misrepresentation claims are not alleged with particularity. Citing Fed.R.Civ.P. 15(a), plaintiffs argue that dismissal of a claim is warranted only when a plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so.

Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend the pleadings "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). However, the Fifth Circuit has explicitly held that Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired. *Southwestern Bell Telephone Co. v. City of El Paso,* 346 F.3d 541, 546 (5th Cir.2003); *S & W Enters., L.L.C. v. SouthTrust Bank of Alabama, NA,* 315 F.3d 533, 536 (5th Cir.2003).[FN49] Rule 16(b) provides that a scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge." The good cause requirement for a modification of a scheduling deadline requires the "party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S & W Enters.,* 315 F.3d at 535 (citation and internal quotation omitted); *STMicroelectronics, Inc. v. Motorola, Inc.,* 307 F.Supp.2d 845, 851 (E.D.Tex.2004)(noting that "the good cause showing unambiguously centers on [the mover's] diligence"). Only when the movant demonstrates good cause to modify a scheduling order "will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." *S & W Enters.,* 315 F.3d at 536.

> FN49. This Court' scheduling order provides that amendments to pleadings " shall be filed no later than March 18, 2005. " Rec. Doc. No. 53.

***21** In defendants' first motion to dismiss, filed on May 5, 2004, defendants moved the Court to dismiss plaintiffs' fraud and negligent misrepresentation claims for failure to plead with particularity in accordance with Fed.R.Civ.P. 9(b).[FN50] As this Court has previously noted, plaintiffs' primary response in opposition to defendants' motion to dismiss was to repeatedly request to amend the complaint to cure any deficiencies in the complaint.[FN51] Given plaintiffs' right to amend prior to the filing of responsive pleadings, their request to amend the complaint and the fact that defendants' initial motion to dismiss put plaintiffs " on more than adequate notice of defendants' arguments pertaining to the sufficiency of the complaint," this Court granted plaintiffs an opportunity to cure the asserted deficiencies in their

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 21
Not Reported in F.Supp.2d, 2005 WL 2036738 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

complaint.[FN52]

> FN50. Rec. Doc. No. 8, at 24.
>
> FN51. Rec. Doc. No. 38, at 16.
>
> FN52. *Id.,* at 17.

In requesting the opportunity to amend, plaintiffs rely only on the liberal standard applicable to amending pleadings pursuant to Rule 15(a) and make no showing of good cause to extend this Court's scheduling order. Plaintiffs cannot show good cause given that plaintiffs have again failed to allege their claims with any factual specificity notwithstanding their awareness that defendants challenged such claims for failure to plead such claims with particularity in accordance with Rule 9(b). Accordingly, plaintiffs request to file a second amended complaint must be denied.

### VII. *Unjust Enrichment Pursuant to Louisiana Civil Code Article 2298*

Article 2298 of the Louisiana Civil Code provides in pertinent part:
A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.

In order to successfully invoke an action for unjust enrichment, a plaintiff must satisfy five prerequisites: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the impoverishment, (4) an absence of justification or cause for the enrichment and the impoverishment, and (5) no other remedy at law available to the impoverishee. *Minyard v. Curtis Prods., Inc.,* 251 La. 624, 205 So.2d 422, 432 (La.1967); *Coastal Envtl. Specialists, Inc. v. Chem-Lig Intern., Inc.,* 818 So.2d 12, 19 (La.App. 1st Cir.2001). "The root principle of unjustified enrichment is that the plaintiff suffers an economic detriment for which he should not be responsible, while the defendant receives an economic benefit for which he has not paid." *Coastal Envtl.,* 818 So.2d at 19; *see also Bamburg Steel Bldgs., Inc. v. Lawrence Gen. Corp.,* 817 So.2d 427, 437 (La.App. 2d Cir.2002) ("Unjust enrichment is founded on the equitable principle that no one should be enriched at the expense of another.").

*22 Accepting plaintiffs' allegations as true, plaintiffs cannot satisfy the second, fourth and fifth prerequisites for asserting an unjust enrichment claim. Plaintiffs' unjust enrichment claim rests on the same facts as plaintiffs' other causes of action, *i.e.,* that defendants were unjustly enriched by being able to use plaintiffs' client lists to solicit the AFT-endorsed annuity product using in-house agents.

With respect to the fourth element, the obvious justification for defendants' conduct is the written sales agreements. The sales agreements, discussed at length above, provide that the client lists turned over to defendants in connection with plaintiffs appointment "are our property, whether or not we paid for them," [FN53] and the contract permits defendants to appoint other sales agents in plaintiffs' sales area. "[I]f there is a contract between the parties it serves as a legal cause, an explanation, for the enrichment." *Edwards v. Conforto,* 636 So.2d 901, 907 (La.1994). " '[O]nly the unjust enrichment for which there is no justification in law or *contract* allows equity a role in the adjudication." ' *Id.* (emphasis in original) (quoting *Edmonston v. A-Second Mortg. Co. of Slidell, Inc.,* 289 So.2d 116, 122 (La.1974)); *see also* La. Civ.Code art. 2298 ("The term 'without cause' is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law.").

> FN53. *Id.,* Exs. 3-8, ¶ 11.

With respect to the fifth element, plaintiffs cannot show the absence of any remedy at law because the obligations of the parties in this regard are

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 22
Not Reported in F.Supp.2d, 2005 WL 2036738 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

addressed by the written sales agreements and defendants' conduct is the subject of plaintiffs' breach of contract claims. *See Morphy, Makofsky & Masson, Inc. v. Canal Place 2000,* 538 So.2d 569, 572 (La.1989) ("[T]he existence of a claim on an express or implied contract precludes application of [unjust enrichment], for there does not exist one of the latter's requirements, that there be no other remedy available at law ...."); *see also Bethea v. St. Paul Guardian Ins. Co.,* 2003 WL 21105099, at *6 (E.D.La. May 12, 2003) ("First, as there is a contract between plaintiffs and St. Paul, a claim for unjust enrichment does not lie.") (citation omitted); *Jobe v. ATR Mktg., Inc.,* 1998 WL 799236, at *8 (E.D.La. Nov.13, 1998) ("If [an] obligation was contractual, the remedy of unjust enrichment would be unavailable to the plaintiff."); *Wohlschlaeger v. Fairmont Hotel Co.,* 1995 WL 468305, at *3 (E.D.La. Aug.2, 1995) ("A claim for unjust enrichment lies only if the Court finds that there is no contract."); *Wright v. Southwest Life Ins. Co.,* 364 F.Supp. 981, 986 (W.D.La.1972) ("The short answer to plaintiff's claim under the theory of unjust enrichment is that the case is governed not by principles of quasi-contract but by the express terms of the written contract."); *Bamburg Steel Bldgs., Inc. v. Lawrence Gen. Corp.,* 817 So.2d 427, 438 (La.App. 2d Cir.2002) ("Initially, we note that where a contract exists, there can be no recovery in quantum meruit.").[FN54]

> FN54. In finding that plaintiffs cannot show the unavailability of a remedy at law due to the existence of the written sales agreements, the alleged oral contracts, and plaintiffs' breach of contract claims based upon such agreements, the Court notes that whether plaintiffs can succeed in recovering and collecting on their breach of contract claims is not determinative of whether a legal remedy is available. *Coastal Envtl.,* 818 So.2d at 20; *see also Builders Supply of Ruston, Inc. v. Qualls,* 750 So.2d 427, 431 (La.App. 2d Cir.2000) (finding that the materialman's lien statute was an available legal remedy for non-payment for the construction of a home notwithstanding that plaintiff's claim to enforce the lien had prescribed).

*23 Finally, with respect to the second element, impoverishment can be shown "only when the factual circumstances show that the impoverishment was not a result of the plaintiffs' own fault or negligence *or was not undertaken at [their] own risk."* Gray v. McCormick,* 663 So.2d 480, 487 (La.App. 3d Cir.1995) (emphasis supplied); *see also Bamburg Steel Bldgs.,* 817 So.2d at 439 (finding that plaintiff who knowingly and willingly entered into a private contract could not recover on the theory of unjust enrichment when the plaintiff should have anticipated the risk of loss and the plaintiff acted in such a way that caused both its alleged impoverishment and whatever enrichment the defendant may have received); *Tandy v. Pecan Shoppe of Minden, Inc.,* 785 So.2d 111, 117-18 (La.App. 2d Cir.2001) (finding that a plaintiff who voluntarily acted in such a way that caused both his alleged impoverishment and whatever enrichment defendant may have received cannot show unjust enrichment). In this case, plaintiffs have alleged that they voluntarily provided defendants with lists of their clients in connection with their agency relationship with defendants in the face of a written contract which provides that such documents belong to defendants and contains no restrictions on the use of such lists. These allegations preclude plaintiffs from showing an impoverishment. Accordingly, for the reasons stated, plaintiffs' allegations and the terms of the written contract preclude recovery on an unjust enrichment theory.

### VIII. *Detrimental Reliance*

Plaintiffs' claim for detrimental reliance is governed by La. Civ.Code art.1967. Article 1967 provides:
A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                         Page 23
Not Reported in F.Supp.2d, 2005 WL 2036738 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

The essential elements of a detrimental reliance claim pursuant to article 1967 are: (1) a promise made (2) by the defendant who knows or has reason to know (3) that the promise will induce the plaintiff to rely (4) to his detriment (5) provided the reliance is reasonable. See *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1329 (5th Cir.1994) (citing *Morris v. Peoples Bank & Trust Co.*, 580 So.2d 1029, 1033-34 (La.App. 3d Cir.1991). Pursuant to article 1967 "a promise becomes an enforceable obligation when it is made in a manner that induces the other party to rely on it to his detriment." *Morris*, 580 So.2d at 1033. Louisiana cases make clear that recovery for detrimental reliance is not limited to oral promises; the detrimental reliance doctrine applies to representations made by word or by conduct. *Babkow v. Morris Bart, P.L.C.*, 726 So.2d 423, 427 (La.App. 4th Cir.1998). "The detrimental reliance doctrine is 'designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence.' " *Id.*

*24 Relying on the factual allegations discussed above and contained in paragraphs seven through twenty-three of the complaint, plaintiffs allege:
Plaintiffs ... each reasonably relied on defendants not to misuse his or her confidential client lists and that the damages plaintiffs have sustained and/or will sustain and/or will continue to sustain are a direct result of plaintiffs' reasonable reliance on defendants' promises and defendants' breach thereby. [FN55]

   FN55. Compl., ¶ 33.

The amended complaint contains a similar allegation alleged in connection with plaintiffs' fraud and misrepresentation claim.[FN56] Other than these two allegations, the complaint contains no factual allegations concerning any promise, representation, admission, or prior conduct on defendants' part with respect to the use of client information which plaintiffs admit was voluntarily given to defendants. Although plaintiffs argue in their brief that defendants "impliedly promised" that the customer lists would be used only for " legitimate" purposes, there is no hint in the pleadings how such an implied promise was manifested by conduct or by word.

   FN56. See Amd. Comp., ¶ 38(a), set forth in full above in the text of this opinion.

Although this Court must construe the factual allegations in the complaint liberally, plaintiffs must plead specific facts supporting their claim of a promise made by defendants, not mere conclusory allegations. See *Guidry*, 954 F.2d at 281. This Court will not accept as true conclusory allegations or unwarranted deductions of fact. *Great Plains Trust Co.*, 313 F.3d at 312. Moreover, "this court cannot assume facts that were not alleged." *Ratcliff v. Southern C/P/D Inc.*, 2003 WL 1529539, *1 (5th Cir.2003) (unpublished) (noting that a general allegation of a discriminatory policy is insufficient to support a civil rights claim absent factual allegations which show discriminatory conduct) (citing *Robertson v. Plano City of Texas*, 70 F.3d 21, 23 (5th Cir.1995)). Without any factual allegations permitting any inference that such a representation by word or conduct was made by defendants, plaintiffs cannot maintain an action for detrimental reliance.

IX. *Motion for Judgment on the Pleadings Filed on Behalf of Plaintiff, Joseph W. Pitts*

On March 7, 2005, defendants answered plaintiffs' amended complaint and filed counterclaims against all of the plaintiffs in this action.[FN57] On June 24, 2005, defendants-in-counterclaim, Joseph W. Pitts and Joseph W. Pitts, CLU (collectively, "Pitts") moved for a judgment on the pleadings on the ground that defendants' counterclaim fails to state claims for breach of contract or breach of the duty of good faith against Pitts.[FN58]

   FN57. Rec. Doc. No. 54, Answer and counterclaims (herinafter, "Counterclaims" ).

   FN58. Rec. Doc. No. 89.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                        Page 24
Not Reported in F.Supp.2d, 2005 WL 2036738 (E.D.La.)
(Cite as: Not Reported in F.Supp.2d)

The basis for defendants' counterclaim is that plaintiffs breached the written sales agreements and the duty of good faith by attempting to prevent the introduction of the AFT-endorsed annuity product into the New Orleans market. Defendants allege, *inter alia*, that in October, 2003, plaintiffs complained to the Louisiana Department of Insurance ("DOI") concerning the introduction of the AFT-endorsed annuity.[FN59] After the DOI found that the AFT-endorsed product did not violate any provision of the Louisiana Insurance Code, plaintiffs again complained to the DOI in the spring of 2004.[FN60] Additionally, the counterclaim alleges that plaintiff, Sabadie, acting on behalf of all the plaintiffs, met with the Superintendent of the Jefferson Parish School District, disparaged the AFT-endorsed product and incorrectly informed the Jefferson Parish Superintendent that defendants' sales manager was under criminal investigation.[FN61]

    FN59. Counterclaims, ¶ 27.

    FN60. *Id.*, ¶ 28.

    FN61. *Id.*, ¶ 33.

*25 Pitts does not contend that the allegations in the complaint fail to contain allegations which would support a claim for breach of contract or breach of the duty of good faith. Pitts does not challenge the legal sufficiency of the allegations within the context of the law governing such claims. Instead, Pitts primary argument is that the allegations fail to state a claim against Pitts due to the defendants' reference to all of the plaintiffs collectively and the attribution of certain conduct undertaken by Sabadie to the other plaintiffs. Pitts contends that defendants' failure to state any individualized allegations against Pitts is fatal to defendants' counterclaim against Pitts.

As noted above, the Court will not dismiss a claim " unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley* 355 U.S. at 45-46, 78 S.Ct. at 102. That is, a court should not dismiss a claim "unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Jones,* 188 F.3d at 324. However, "a plaintiff must plead specific facts, not mere conclusory allegations...." ' *Guidry,* 954 F.2d at 281 (citation omitted).

Taking the allegations in the counterclaim as true, this Court cannot conclude at this stage of the proceedings that Pitts was not part of the alleged group of plaintiffs who complained to the Department of Insurance or that plaintiff, Sabadie, was not acting on Pitts' behalf as alleged. The fact that the counterclaim alleges certain conduct as to some of the plaintiffs individually does not undermine those allegations which refer to the plaintiffs collectively, allegations which this Court must accept as true. Both parties raise factual arguments in their briefs on the issue of Pitts' involvement in the alleged activities, arguments more properly addressed in the context of a motion for summary judgment. As Pitts does not raise any serious argument that these allegations, if true, would not support defendants' claims of breach of contract and breach of the duty of good faith, the Court need not reach the merits of defendants' counterclaim against Pitts in order to resolve the present motion. Because the allegations in defendants' counterclaim cannot be read to definitively exclude Pitts from the conduct alleged, Pitts is not entitled to dismissal of defendants' counterclaim at this stage of the proceedings.

### X. *Conclusion*

Accordingly, for the above and foregoing reasons,

IT IS ORDERED that the motion for a judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), filed on behalf of defendants, Northern Life Insurance Company, ING Reliastar Life Insurance Company, ING Life Insurance and Annuity Company, and ING Financial Advisors, LLC. (Rec.Doc. No. 57) is GRANTED IN PART AND DENIED IN PART to the extent it seeks dismissal of plaintiffs' claims. With the exception of plaintiffs' claims for breach of the alleged oral contracts, plaintiffs' claims are DISMISSED WITH PREJUDICE.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 25
Not Reported in F.Supp.2d, 2005 WL 2036738 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

**\*26** IT IS FURTHER ORDERED that the motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), filed on behalf of defendant-in-counterclaim, Joseph W. Pitts and Joseph W. Pitts, CLU (Rec.Doc. No. 89), is DENIED.

New Orleans, Louisiana, August *12th,* 2005.

E.D.La.,2005.
Dorsey v. Northern Life Ins. Co.
Not Reported in F.Supp.2d, 2005 WL 2036738 (E.D.La.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 360255 (Trial Motion, Memorandum and Affidavit) Plaintiffs in Counterclaim's Memorandum of Law in Opposition to Joseph W. Pitts' and Joseph W. Pitts, CLU, Inc.'s Motion for Summary Judgment (Jan. 3, 2006)
• 2005 WL 3720645 (Trial Motion, Memorandum and Affidavit) Joseph W. Pitts and Joseph W. Pitts, Clu, Inc.'s Motion for Summary Judgment (Nov. 29, 2005) Original Image of this Document (PDF)
• 2005 WL 3161754 (Trial Motion, Memorandum and Affidavit) Motion to Reconsider (Oct. 24, 2005) Original Image of this Document (PDF)
• 2005 WL 3161750 (Trial Motion, Memorandum and Affidavit) Motion for a Protective Order under Fed. R. Civ. P. 26(c)(1) and (2) Precluding And/Or Limiting the Depositions of Mark Tusa and Defendants' Fed. R. Civ. P. 30(b)(6) Deponent (Aug. 25, 2005) Original Image of this Document (PDF)
• 2004 WL 2886859 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply Memorandum to to Defendants' Reply Memorandum (Jun. 10, 2004) Original Image of this Document (PDF)
• 2004 WL 2886852 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Defendants' Motion to Dismiss (Jun. 9, 2004) Original Image of this Document (PDF)
• 2004 WL 2886846 (Trial Motion, Memorandum and Affidavit) Plaintiffs Memorandum in Opposition to Defendants' Motion to Dismiss Pursuant to F.R.Civ.P. 12(B)(3), or Alternatively, F.R. Civ. P. 12(B)(6) and 9(B) (Jun. 1, 2004) Original Image of this Document (PDF)
• 2004 WL 2886829 (Trial Pleading) Complaint for Damages and Request for Trial by Jury (Feb. 6, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                                    Page 1
Not Reported in F.Supp.2d, 2003 WL 22290290 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

H
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,E.D. Louisiana.
Rock TUFARO
v.
BOARD OF COMMISSIONERS FOR THE
ORLEANS LEVEE DISTRICT et al.
No. Civ.A.02-435.

Oct. 3, 2003.

*ORDER AND REASONS*
WILKINSON, Magistrate J.
*1 Plaintiff filed a Motion to Review Magistrate Judge's Ruling. Record Doc. No. 62. The motion seeks reconsideration of my denial, Record Doc. No. 61, of plaintiff's Motion for Leave of Court to File First Supplemental and Amending Complaint. Record Doc. No. 60. In that motion, plaintiff, Rock Tufaro, seeks to add four new defendants and two new claims in this action in which all other defendants have settled and the case has been dismissed.

After the motion to review was filed, the presiding district judge "ORDERED that the plaintiff's motion to amend the complaint is referred [to me] for further proceedings," Record Doc. No. 63 at p. 2, because plaintiff raised a new argument in his motion to review that he did not raise in his memorandum accompanying his original motion to amend. Record Doc. No. 63. Specifically, Tufaro argues for the first time that his proposed amended complaint has not prescribed and is therefore not futile because the new defendants whom he seeks to name are solidary obligors with the defendants named in the original complaint and, under Louisiana law, prescription is interrupted against all solidary obligors by the timely filing of suit against one such obligor. Thus, I am directed to again address the motion to amend.

Having considered the complaint, the record, and the applicable law, IT IS ORDERED that the motion to amend is again DENIED. It is unnecessary to address plaintiff's new argument concerning interruption of the prescriptive period because the argument has no effect on the outcome of this motion. Tufaro's attempt to amend *this* lawsuit is both untimely and pointless for the following reasons.

*ANALYSIS*

*A. Procedural Background*

On February 15, 2002, about one week before his claims would have prescribed, plaintiff, Rock Tufaro, sued the Board of Commissioners of the Orleans Levee District ("the Levee Board"), Levee Board Officer Thaddeus Petit and Levee Board Officer Craig Robinson. Tufaro alleged causes of action for excessive force, false arrest and conspiracy to violate his constitutional rights under 42 U.S.C. §§ 1983 and 1985, and for assault, battery, intentional infliction of emotional distress, negligence and false arrest under state law, arising out of plaintiff's detention and arrest by those officers during a Mardi Gras parade on February 23, 2001. Complaint, Record Doc. No. 1. Neither the City of New Orleans nor any of its officers were named in the original complaint.

The court entered a scheduling order on June 25, 2002, which established a deadline of July 25, 2002 to amend pleadings and set a jury trial date of April 7, 2003. Record Doc. No. 10.

On February 19, 2003, more than one year after the original complaint was filed and about two years after the incident upon which this case is based, plaintiff filed his first motion for leave to amend his complaint to add the City of New Orleans, the New Orleans Police Department ("NOPD") and two

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 2

Not Reported in F.Supp.2d, 2003 WL 22290290 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

NOPD officers, Justin Crespo and Kevin Johnson, as defendants on all of the same claims as in the original complaint. Record Doc. No. 42. On March 19, 2003, I denied that motion as untimely, unduly delayed and unduly prejudicial to both the original and the proposed new defendants because it was filed seven months after expiration of the deadline to amend pleadings and because the final pretrial conference was scheduled for March 20, 2003 and trial was set for April 7, 2003. Record Doc. No. 47.

*2 On April 4, 2003, three days before the scheduled trial date, having been advised that plaintiff had settled his claims with all defendants, Judge Africk signed an order dismissing the entire case, without prejudice to the right of any party to reopen the case or move to enforce the compromise if the settlement was not consummated within a reasonable time. Record Doc. No. 58.

On May 9, 2003, more than a month after the case had been dismissed, plaintiff filed the instant motion for leave to amend, again seeking to add the City of New Orleans, the NOPD and Officers Crespo and Johnson as defendants on all of the same claims as in the original complaint. Tufaro also sought to add claims that these defendants failed to intervene when the original defendants committed their violations of law and that the NOPD is vicariously liable for the actions of its employees Crespo and Johnson. Plaintiff alleges in his motion papers that he first learned that NOPD officers were involved in his detention and restraint and that they used excessive force against him during depositions taken on February 5, 2003. The motion was set for hearing on May 28, 2003. Record Doc. No. 60.

On May 20, 2003, more than a week *before* the noticed hearing date on his motion to amend, Tufaro filed a new lawsuit, Civil Action No. 03-1429, in this court against the City of New Orleans, the NOPD, former New Orleans Mayor Marc Morial, Officers Crespo and Johnson, the Levee Board and Levee Board Officers Petit and Robinson. In that new lawsuit, he makes the same factual allegations and asserts the same legal theories of relief against all of the same defendants as he made in his original complaint and proposed amended complaint in the instant case. C.A. No. 03-1429, Record Doc. No. 1.

I denied plaintiff's motion to amend in the instant case by minute entry entered on June 2, 2003. I found that the amendment does not relate back to the date of the original complaint under Fed.R.Civ.P. 15(c)(3) and that permitting the amendment would be futile because the claims against the proposed new defendants had prescribed without such relation back. Record Doc. No. 61.

On June 12, 2003, Tufaro moved for reconsideration of my order. The motion for reconsideration was set for hearing on August 6, 2003. Record Doc. No. 62. By minute entry entered on August 4, 2003, Judge Africk directed that I again consider the motion to amend. Record Doc. No. 63.

B. *Plaintiff Must Demonstrate Good Cause to Amend his Complaint After the Court-Ordered Deadline to Amend Has Passed*

Leave to amend "shall be freely given when justice so requires," Fed.R.Civ.P. 15(a), but "is by no means automatic." *Wimm v. Jack Eckerd Corp.,* 3 F.3d 137, 139 (5th Cir.1993)(quotation omitted). Relevant factors to consider include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Id.*

*3 However, where-as here-the court has entered a scheduling order setting a deadline for the amendment of pleadings, Record Doc. No. 10, the schedule "shall not be modified except upon a showing of good cause." Fed.R.Civ.P. 16(b). The Fifth Circuit recently clarified "that Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired. Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." *S & W Enters., L.L.C. v. South Trust Bank of Ala., NA,* 315 F.3d 533, 536 (5th Cir.2003). Thus, "the presence of a scheduling

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 3
Not Reported in F.Supp.2d, 2003 WL 22290290 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

order renders the Rule 15 inquiry secondary." *Id.* at 536 n. 4.

"The good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Id.* at 535 (quotation omitted). In the context of untimely motions to amend pleadings, the court should consider four factors: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Id.* (internal quotations and brackets omitted).

I find that Tufaro has failed to show good cause to amend the instant complaint to add the City, the NOPD and Officers Crespo and Johnson as defendants many weeks after his lawsuit was dismissed. The factors established by the Fifth Circuit in *S & W Enterprises* weigh heavily against a finding of good cause in this case.

First, Tufaro has not demonstrated that he exercised diligence in seeking discovery but still could not reasonably meet the deadline to amend pleadings. Plaintiff's explanation for his failure to move timely for leave to amend is that he only discovered the role that NOPD officers allegedly played in the incident during depositions taken on February 5, 2003.

This lawsuit was filed on February 15, 2002. The deadline for amending pleadings was July 25, 2002. The written status report filed by plaintiff on August 22, 2002 included factual allegations by defendants that the Levee Board officers had been detailed to the NOPD on the date of the incident, that NOPD officers had been involved in plaintiff's detention and arrest and that defendants had advised plaintiff that he might need to add the NOPD as a defendant. Record Doc. No. 15 at pp. 3-4. Defendants' witness list, filed on January 10, 2003, identified three NOPD officers, including proposed defendants Crespo and Johnson, as potential witnesses regarding the incident, Record Doc. No. 29, and plaintiff's own witness list, filed a week later, identified "representatives of the New Orleans Police Department" as possible fact witnesses. Record Doc. No. 34.

Thus, Tufaro had notice as early as August 22, 2002 and well before February 5, 2003 that NOPD officers may have been involved in the incident. He could have investigated and sought leave to amend much sooner than he did. He did not try to amend his complaint for the first time until seven months after the court's deadline for amendments had passed, and did not try to amend the second time until more than nine months after the deadline had passed and the case had been dismissed. His explanation for the delay is not adequate. This factor weighs strongly against permitting the amendment. *See S & W Enters.,* 315 F.3d at 536 (plaintiff effectively offers no explanation for three-month delay beyond deadline for amending pleadings when it knew the same facts at time of original complaint as it knew at time of proposed amendment); *Royal Ins. Co. v. Schubert Marine Sales,* No. 02-0916, 2003 WL 21664701, at *2-3 (E.D.La. July 11, 2003) (Engelhardt, J.) (explanation of defendant, seeking to amend answer to add affirmative defense five weeks after deadline expired, that new evidence emerged during expert's inspection of vessel is not adequate; no justifiable reason for not obtaining the information earlier when incident had occurred more than three years earlier and expert report deadline had been extended twice over more than one-year span of litigation); *Standard Servs. Co. v. Witex USA, Inc.,* No. 02-0357, 2003 WL 1873087, at *1 (E.D.La. Apr. 8, 2003) (Shushan, M.J.) (explanation of defendant, seeking to amend answer to add affirmative defense nine months after deadline expired, that new evidence emerged during discovery is not adequate when defendant could have pled affirmative defenses in the alternative); *Mott v. PFPC, Inc.,* No. 3:02-CV-1366, 2003 WL 21222678, at *2 (N.D.Tex. Mar. 28, 2003) (Fish, C.J.) (plaintiff, seeking to amend to add new cause of action three months after deadline expired, whose explanation for failure to amend earlier was that counsel recognized new cause of action during discovery, " 'is tantamount to no explanation at all' ") (quoting *S & W Enters.,* 315 F.3d at 536).

*4 The second factor, the importance of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 4
Not Reported in F.Supp.2d, 2003 WL 22290290 (E.D.La.)
(Cite as: Not Reported in F.Supp.2d)

amendment, also weighs strongly against plaintiff. I previously addressed plaintiff's relation back argument under Fed.R.Civ.P. 15(c)(3) and found that the amendment does not relate back and would be futile under that rule. Record Doc. No. 61. I now note that, because relation-back analysis is the same under Louisiana law as under federal law, the amendment still does not relate back under Fed.R.Civ.P. 15(c)(1). *Joseph v. Port of New Orleans,* No. 99-1622, 2002 WL 342424, at *14 (E.D.La. March 4, 2002) (Engelhardt, J.) (citing La. Civ.Code art. 1153; *Ray v. Alexandria Mall,* 434 So.2d 1083 (La.1983)), *aff'd,* No. 02-30297, 2002 WL 31933280 (5th Cir. Dec. 27, 2002); *Harris v. Advance Transformer Co.,* No. 98-2312, 2000 WL 762889, at *4 (E.D. La. June 6, 2000) (Vance, J.) (citing La. Civ.Code art. 1153; *Ray,* 434 So.2d at 1085-87). Without relation back, plaintiff gains no particular advantage from obtaining leave to file this amendment in connection with the statute of limitations issue plaintiff must now address.

Furthermore, this case was dismissed on April 4, 2003, one month before the instant motion was brought. On May 20, 2003, *Tufaro filed a new lawsuit in this court,* Civil Action No. 03-1429, that includes the proposed new defendants in this case and concerns the identical incident and causes of action as he proposed to add in this case. This second lawsuit is duplicative of the amended complaint plaintiff seeks to file in the instant lawsuit. The court does not find it important to re-open a closed lawsuit when plaintiff has already filed a new lawsuit asserting the same claims and would obtain no "relation back" advantage in connection with the statute of limitations defense. Under these circumstances, it would be pointless to permit the amendment. The court need not address plaintiff's argument that prescription was interrupted by the filing of the first lawsuit against solidary obligors because he can make that argument in the pending, second lawsuit.

The third factor is potential prejudice in allowing the amendment. This factor is neutral. There would be no prejudice to the settling, dismissed defendants. The prejudice to the proposed new defendants from the staleness of the evidence and the need to defend a lawsuit is the same whether the amendment is permitted in this action or the new lawsuit already filed against them proceeds.

Finally, a "continuance" per se is not available to cure such prejudice because no trial date exists. This case was dismissed. A new trial date would have to be set if the amendment were allowed. This is the only factor in plaintiff's favor but the court does not consider it significant in light of the similar, second lawsuit that is already pending in this court.

Thus, plaintiff has not demonstrated good cause to modify the court's Fed.R.Civ.P. 16(b) scheduling order and permit the amendment. Because good cause does not exist to modify the deadline, the court need not address whether the more liberal standards of Fed.R.Civ.P. 15(a) apply.

*CONCLUSION*

*5 For the foregoing reasons, IT IS ORDERED that plaintiff's Motion for Leave of Court to File First Supplemental and Amending Complaint, Record Doc. No. 60, is DENIED.

E.D.La.,2003.
Tufaro v. Board of C'mrs for Orleans Levee Dist.
Not Reported in F.Supp.2d, 2003 WL 22290290 (E.D.La.)

Briefs and Other Related Documents (Back to top)

• 2003 WL 23834751 (Trial Motion, Memorandum and Affidavit) Plaintiff's Opposition to Motion in Limine (Apr. 3, 2003) Original Image of this Document (PDF)
• 2002 WL 32697638 (Trial Pleading) Answer to Original Complaint (May 6, 2002) Original Image of this Document (PDF)
• 2002 WL 32697621 (Trial Pleading) Original Complaint (Feb. 15, 2002) Original Image of this Document (PDF)
• 2:02CV00435 (Docket) (Feb. 15, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.