

EXHIBIT
Exhibit B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11836-RCL

| | |
|---|---|
| TRANS-SPEC TRUCK SERVICE, INC. d/b/a TRUCK SERVICE, Plaintiff | ) ) ) ) ) |
| vs. | ) ) |
| CATERPILLAR INC. Defendant | ) ) ) |

## NOTICE OF TAKING DEPOSITION

**To:**

John A. K. Grunert, Esq.
Campbell Campbell Edwards & Conroy, P.C.
One Constitution Plaza
Boston, MA 02129

PLEASE TAKE NOTICE that the plaintiff Trans-Spec Truck Service, Inc. will take the deposition pursuant to Fed. R. Civ. P. 30 and 45 of Matthew T. Kiser, MOS 12, P.O. Box 600, Mossville, Illinois, commencing at 10:00 a.m. on February 14, 2006, at the Radisson Hotel, 117 N. Western Ave., Peoria, Illinois, before an officer authorized to administer oaths. The deposition will be recorded stenographically. The deposition will continue from day to day until completed. The deponent is requested to produce the documents listed in the attached Schedule A at the offices of Donovan Hatem LLP, Two Seaport Lane, Boston, Massachusetts on or before February 9, 2006.

You are invited to attend the deposition and cross-examine the witness in accordance with applicable law.

TRANS-SPEC TRUCK SERVICE, INC.
d/b/a TRUCK SERVICE

By its Attorneys,

_____
Nancy M. Reimer, Esq., BBO#555373
Christian G. Samito, Esq., BBO#639825
Donovan Hatem LLP
Two Seaport Lane
Boston, MA 02210
(617) 406-4500

Date: January ___, 2006

## CERTIFICATE OF SERVICE

I, Christian G. Samito, hereby certify that on this ___ day of January, 2006, I served a copy of the foregoing, by facsimile and mail, postage prepaid to:

John A.K. Grunert, Esq.
Campbell Campbell Edwards & Conroy
One Constitution Plaza, 3rd Floor
Boston, MA  02129

                                                    Christian G. Samito, Esq.

00975884.DOC

## **SCHEDULE A - KISER**

1. The complete contents of all files, both paper and electronic, created by or for the witness or reviewed or considered or used by the witness in connection with his work on the Trans-Spec Truck Service, Inc. case (hereinafter called the "Trans-Spec case" or "this case").

2. All photographs (including without limitation photomicrographs), videotapes, or other graphic images taken by or for the witness in connection with his work on the Trans-Spec case.

3. All photographs (including without limitation photomicrographs), videotapes, or other graphic images reviewed by the witness in connection with his work on the Trans-Spec case.

4. All images created in connection with the witness's work on the Trans-Spec case through the use of any x-ray or scanning technology, including without limitation SEM.

5. All images created through use of any x-ray or scanning technology, including without limitation SEM, which the witness reviewed in connection with his work on the Trans-Spec case.

6. All protocols, data, information, and reports relative to testing or analyses conducted by or for the witness in connection with the Trans-Spec case, including without limitation any data and information generated and any raw data and information obtained from such testing or analysis, whether used or not in any way or in any plots or analysis.

7. All protocols, data, information, and reports relative to testing or analyses that the witness reviewed in connection with the Trans-Spec case, including without limitation any data and information generated and any raw data and information obtained from such testing and analysis, whether used or not in any way or in any plots or analysis.

8. All notes, memoranda, calculations, summaries and reports relative to inspections conducted by or for the witness in connection with the Trans-Spec case, whether used in reports or not, whether accepted or rejected.

9. All notes, memoranda, calculations, summaries and reports reviewed by the witness relative to inspections conducted in connection with the Trans-Spec case.

10. All witness statements and notes, summaries, reports, and memoranda of witness interviews reviewed by the witness in connection with the Trans-Spec case.

11. All reports prepared by the witness in connection with the Trans-Spec case, including without limitation all drafts thereof and all comments noted by witness or others.

12.     All correspondence between the witness and attorneys or other employees at the firm of Campbell Campbell Edwards & Conroy, P.C. concerning the Trans-Spec case.

13.     All reports, input data and information, and output data and information with respect to finite element analyses performed by or for the witness in connection with this case, including without limitation any data and information generated and any raw data and information obtained from such testing or analyses, whether used or not in any way or in any plots or analysis.

14.     All reports, input data and information, and output data and information with respect to finite element analyses reviewed by the witness in connection with this case, including without limitation any data and information generated and any raw data and information obtained from such testing or analyses, whether used or not in any way or in any plots or analysis.

15.     All reports, notes, and memoranda generated in connection with failure mode and effects analyses performed by or for the witness in connection with this case, including without limitation any data and information generated and any raw data and information obtained from such testing or analyses, whether used or not in any way or in any plots or analysis.

16.     All reports, notes, and memoranda generated in connection with failure mode and effects analyses reviewed by the witness in connection with this case, including without limitation any data and information generated and any raw data and information obtained from such testing or analyses, whether used or not in any way or in any plots or analysis.

17.     All reports, input data and information, and output data and information with respect to computer simulations and computerized reconstructions performed by or for the witness in connection with this case, including without limitation any data and information generated and any raw data and information obtained from such testing or analyses, whether used or not in any way or in any plots or analysis.

18.     All reports, input data, and output data with respect to computer simulations and computerized reconstructions reviewed by or for the witness in connection with this case, including without limitation any data generated and any raw data obtained from such testing or analyses, whether used or not in any way or in any plots or analysis.

19.     All records of Caterpillar Inc. reviewed by the witness in connection with this case.

20.     All records of Trans-Spec Truck Service, Inc., TS Truck Service, Inc., Southworth-Milton, Inc., Tri-State Truck Service, Inc., Minuteman Trucks, Inc., Colony Ford Truck Center, Inc., or Sterling Truck Corporation reviewed by the witness in connection with this case.

21. All handbooks, design manuals, reference manuals, safety codes, recommended practices, and professional codes, guidelines, and standards which the witness consulted in connection with his work on this case (relevant excerpts of handbooks and manuals are acceptable so long as complete bibliographic information is provided).

22. All notes, memoranda, and summaries prepared by the witness of conversations he had with employees of Caterpillar, Inc., Tri-State Truck Center, Inc., Minuteman Trucks, Inc., Colony Ford Truck Center, Inc., Sterling Truck Corporation, or Southworth-Milton, Inc.

23. All summaries of deposition testimony prepared by or for, or reviewed by, the witness in connection with this case.

24. All deposition transcripts reviewed by the witness in connection with this case except for unannotated transcripts of depositions taken in this case.

25. All notes, memoranda and summaries prepared by the witness during or as a result of inspections of any flywheel housings and flywheel housing bolts belonging to any of Trans-Spec Truck Service, Inc.'s trucks.

26. All notes, memoranda and summaries prepared by the witness during or as a result of inspections in connection with this case of any flywheel housings and/or flywheel housing bolts.

27. All records, except for records produced in this case by Trans-Spec Truck Services, Inc., of flywheel housing and/or flywheel housing bolt failures occurring on Caterpillar engines.

28. All reports, notes, memoranda and summaries prepared or reviewed by the witness of interviews of persons who have reported flywheel housing and/or flywheel housing bolt failures occurring on Caterpillar engines.

29. All published reports of flywheel housing or flywheel housing bolt failures occurring on Caterpillar engines.

30. All communications from attorneys or other persons affiliated with the law firm of Campbell Campbell Edwards & Conroy, P.C. which contain factual information utilized by the witness in connection with this case.

31. The retention contract between the witness and Campbell Campbell Edwards & Conroy, P.C. and/or Caterpillar Inc.

32. The witness's time records identifying dates he spent time on this case.

33. The witness's most current CV.

34.     All documents from which the witness has obtained information concerning the uses to which Trans-Spec Truck Service, Inc. put the Sterling trucks involved in this case, including without limitation all documents recording materials and weights transported by those trucks when used in their end-dump application.

35.     All statistics, data and information, reports, and analyses prepared by or for, or reviewed by, the witness in connection with the frequency of failure of flywheel housings and/or of flywheel housing bolts on C-12 engines other than those owned by Trans-Spec Truck Services, Inc.

36.     All statistics, data and information, reports, and analyses prepared by or for, or reviewed by, the witness in connection with the frequency of failure of aluminum flywheel housings and/or of flywheel housing bolts utilized in flywheel housing assemblies that used aluminum flywheel housings.

37.     All documents that identify or describe PTO's that were installed by Trans-Spec Truck Service, Inc. on the transmissions of the Sterling trucks involved in this case, and all photographs, videotapes, or other graphic images showing such PTOs.

38.     All PTOs inspected by the witness in connection with his work on this case.

39.     All documents that identify or describe product pumps installed on the trucks involved in this case.

40.     All product pumps inspected by the witness in connection with his work on this case.

41.     All specifications, engineering drawings, blueprints, test reports, test data, engineering change notices, information, and warranty records that the witness reviewed in connection with his work in this case with respect to transmissions, including without limitation those manufactured by Meritor, Rockwell, and Eaton Fuller.

42.     All documents reviewed by the witness concerning engines supplied by Caterpillar Inc. to the Department of Defense through Stewart & Stevenson, including without limitation all reports, data and information, and memoranda regarding the causes of flywheel housing failures experienced by some of those engines.

43.     All documents reviewed by the witness concerning Patent Number 6,065,757, including without limitation any applications or other communications with the United States Patent and Trademark Office concerning Patent Number 6,065,757.

44.     All documents created by or for the witness, or reviewed by the witness, related to structural dynamic investigative tests conducted on any of Trans-Spec Truck Service, Inc.'s former trucks at issue in this case, including without limitation those tests conducted on Trans-Spec Trucks Service, Inc.'s Sterling Semi-Tractor #9700, and including without limitation any data and information generated and any raw data and

information obtained from such testing or analyses, whether used or not in any way or in any plots or analysis.

45. All documents that form part of the basis for the witness's conclusion that "the fatigue cracking is not necessarily a result of bolt loosening, but is instead a result of cyclic loading applied to the housing at the interface with the transmission."

46. All documents that form part of the basis for the witness's conclusion that "the material strength, chemistry, and microstructure of the housings are within specification" and "it is further concluded that the occurrence of the fatigue cracks may not be attributed to deficiencies in the specified material."

47. All documents that form part of the basis for the witness's conclusion that "Cracks C and E are separate cracks (Fgs. 8 and 23), but are related in that they are being created by an alternating stress applied to this wall section which places both the surface of the access port (Crack C) and the surface on the transmission side (Crack E) in tension on alternating cycles."

48. All documents that form part of the basis for the witness's conclusion that "[t]he fracture morphology supports that cyclic stresses applied to the housing exceeded the fatigue strength of the aluminum."

49. All documents that form part of the basis for the witness's conclusion that "Cracks C, D, and E support that these stresses where [sic] applied by relative motion at the housing interface with the transmission."

50. All documents that form part of the basis for the witness's conclusion that "bolt loosening or damage to the bolted joint is not required for the cracking in the housing to occur."

51. All documents created by or for the witness or reviewed or considered or used by the witness in connection with this case concerning any and all test and analysis instructions, protocols, test plans, and procedures.

52. All documents created by or for the witness or reviewed or considered or used by the witness concerning the custody record, procurement, repair history, shipment, and transfer of Trans-Spec Truck Service, Inc.'s Sterling Semi-Tractor #9700 or any subpart thereof.

53. All documents, including without limitation manuals and specifications, created by or for the witness or reviewed or considered or used by the witness concerning the selection, placement and operation of sensors, and the selection and operation of signal processing and data acquisition equipment for any of the tests or analyses performed in connection with this case.

54.  All documents created by or for the witness or reviewed or considered or used by the witness concerning the operating conditions, including without limitation the selection of operating conditions, for any of the tests or analyses performed in connection with this case.

55.  All documents created by or for the witness or reviewed or considered or used by the witness concerning the drive shaft of Trans-Spec Truck Service, Inc.'s Sterling Semi-Tractor #9700, including without limitation any component thereof.

56.  All documents created by or for the witness or reviewed or considered or used by the witness, including without limitation all specifications and manuals, concerning a) drive shafts; and, b) engine mounts.

57.  All protocols, data, information, and reports relative to testing or analyses conducted by or for Caterpillar Inc. on Trans-Spec's Truck Service, Inc.'s Semi-Tractor #9700 on November 16, 2005, including without limitation any data and information generated and any raw data and information obtained from such testing or analysis, whether used or not in any way or in any plots or analysis.

58.  All documents that form part of the basis for any of the witness's conclusions, whether included in the witness's report or not.

59.  All documents created by or for the witness or reviewed or considered or used by the witness in any way in connection with his work on this case.

60.  All instructions, test plans, or protocols created by the witness in connection with his work on this case.

61.  A list of parameters, explanation of symbols and abbreviations, and all documents and information necessary to understand the input data and information, output data and information, and any data and information generated and any raw data and information obtained, from any testing or analyses done in connection with this case and for any document produced pursuant to this Schedule A.