UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11836-RCL

TRANS-SPEC TRUCK SERVICE, INC. )
d/b/a TRUCK SERVICE, )
    Plaintiff )
     )
vs. )
     )
CATERPILLAR INC. )
    Defendant )

**OPPOSITION OF THE PLAINTIFF TO CATERPILLAR INC.'S
MOTION FOR SANCTIONS**

Trans-Spec Truck Service, Inc. d/b/a Truck Service ("Trans-Spec"), hereby opposes Caterpillar Inc.'s ("Caterpillar"), Motion for Sanctions and moves the Court to award it all costs related thereto.

As an initial matter, Trans-Spec notes the multitude of misrepresentations and personal invective which permeate Caterpillar's Motion and supporting Memorandum. As a review of prior pleadings shows (and as this Court has noted in the past), Caterpillar and its counsel have repeatedly tried to infect this litigation with inappropriate and inaccurate statements.[1] Trans-Spec and its counsel regret the choice Caterpillar and its attorneys have made to employ this type of tactic. Engaging in the style of litigation Caterpillar's counsel has embraced serves no valid purpose, needlessly heightens the tension between the parties, and demeans the dignity of the

---

[1] As Magistrate Judge Alexander noted in footnote 3 of her May 20, 2005 Order, "[t]he Court also cautions all counsel to cease using papers filed with this Court as vehicles for criticizing opposing counsels' work. Such activities do a disservice to both counsel and their clients." Trans-Spec's counsel agrees and has, from the beginning of this lawsuit, attempted only to parry the worst of the blows and insults issued by Caterpillar's counsel. Unfortunately, in its Motion for Sanctions, Caterpillar's counsel has escalated from denigrating Trans-Spec's counsel's abilities to attacking their integrity. Apparently, any party that engages in a good-faith dispute with Caterpillar or its counsel is duplicitous; see generally the *Memorandum in Support of Caterpillar Inc.'s Motion for Sanctions* and *Affidavit of John Grunert*.

- 1 -

EXHIBIT B

proceedings before this Court. Accordingly, as in the past, Trans-Spec and its counsel do not feel it necessary to waste any of the Court's time objecting to Caterpillar's many misrepresentations and personal invective and trust that the Court understands this choice.[2] Instead, Trans-Spec will focus on facts and the chronology of events. Doing so illuminates that: a) Trans-Spec and its counsel acted appropriately in an attempt to save both parties time and money; and b) Caterpillar and its counsel acted inappropriately and within the pattern they have set early in this case of needlessly increasing the litigation costs of this matter in an effort to outspend Trans-Spec.

On January 30, 2006, Trans-Spec served by hand Notices of Deposition of the individuals Caterpillar designated as experts, attached as Exhibit A to the Affidavit of Christian G. Samito ("Samito Aff.").[3] Each Notice of Deposition contained a Schedule A seeking the production of documents relied upon by each expert in forming his opinion. The Notices of Deposition called for, as requested by Caterpillar, four of the individuals to appear to testify in Peoria, Illinois during the week of February 13, 2006, and that the remaining individual appear to testify at a place in Colorado to be determined by agreement of the parties on February 24, 2006. The Notices of Deposition also requested that the individuals produce the requested documents to Trans-Spec's attorneys on or before February 9, 2006. By receiving the documents prior to the scheduled deposition date, the depositions would be more efficient in that the witnesses would not be required to wait while Trans-Spec's attorneys reviewed and analyzed the documents.[4]

---

[2] Trans-Spec also chooses not to respond to Caterpillar's inaccurate narrative on pages 9-10 of its Memorandum regarding the scheduling of the depositions of Drs. Thomas Service and Jack Ekchian. Although this narrative omits several facts and chronological elements, that is neither material nor relevant as the Court ruled in its January 6, 2006 Order that, despite its misplaced demands, Caterpillar had no legal basis on which to depose Trans-Spec's experts prior to the filing of its own expert reports.
[3] Pursuant to the Court's January 6, 2006 Order, Trans-Spec did not subpoena Caterpillar's experts or their documents.
[4] For this reason, Trans-Spec produced the documents requested of its experts prior to their depositions, except for transcripts of depositions reviewed by those experts and excerpts from bulky engineering reference books which it

Moreover, Trans-Spec contemplated that if the documents contained the data Trans-Spec anticipated they would, the oral testimony of some, and perhaps all, of Caterpillar's designated experts would not be needed.

Trans-Spec heard nothing about the matter until its counsel called Caterpillar's counsel after 5:00 p.m. on February 8, 2006 to discuss unrelated matters. See Reimer Aff., ¶ 3; Samito Aff., ¶ 3. During this February 8, 2006 telephone conversation, counsel for Caterpillar first informed counsel for Trans-Spec that Caterpillar would not produce any documents prior to the depositions in Illinois and Colorado. Reimer Aff., ¶ 4; Samito Aff., ¶ 4. Counsel for Trans-Spec responded by stating that it would improve efficiency and economy for both parties if Caterpillar produced the documents beforehand and that **production of the documents would likely obviate the need for the noticed depositions altogether**, thus saving both parties related time and costs.[5] Reimer Aff., ¶ 5; Samito Aff., ¶ 5. Trans-Spec's counsel informed Caterpillar's counsel during this February 8, 2006 telephone conference that Trans-Spec would not go forward with the depositions unless it received the documents beforehand or the Court denied an Emergency Motion it would draft and file regarding this issue (this Emergency Motion is still pending before the Court). Reimer Aff., ¶ 6; Samito Aff., ¶ 6.

---

produced at the depositions as per agreement with Caterpillar's counsel. See Affidavit of Nancy M. Reimer ("Reimer Aff."), ¶ 2; Letters from Nancy M. Reimer to John A. K. Grunert attached as Exhibit B to the Samito Aff.
[5] Trans-Spec reiterates that if Caterpillar produces the requested documents, Trans-Spec does not need to depose Caterpillar's five designated experts. The only reason Trans-Spec contemplated the need to take oral testimony at all is because, as addressed in prior Motions to Compel on file with the Court, Caterpillar has frequently withheld properly requested information from Trans-Spec, even going so far as to deny the existence of documents it subsequently produced. Had Caterpillar simply produced complete files of the documents requested on the Schedules A to the Notices of Deposition, no oral testimony would be needed and both parties could have saved time and costs. Shockingly, Caterpillar instead chose to exemplify the old adage that no good deed goes unpunished by shunning Trans-Spec's offer to increase economy and efficiency in this matter, fabricating this discovery dispute, filing this needless Motion for Sanctions to recover costs incurred after learning that Trans-Spec had postponed the Peoria, Illinois depositions, and maligning the integrity of Trans-Spec's counsel in inappropriate personal attacks.

The next morning, Trans-Spec's counsel confirmed the substance of the February 8, 2006 telephone conference in writing to Catepillar's counsel. See February 9, 2006 letter from Nancy M. Reimer ("Attorney Reimer") to John A.K. Grunert ("Attorney Grunert"), ("February 9, 2006 Letter") attached as Exhibit C to the Samito Aff. The February 9, 2006 Letter stated, **"As you refused to produce the documents prior to the deposition, I informed you I would not proceed with the depositions as noticed and will seek an emergency court order requiring the production of the documents prior to the taking of the depositions."** *Id.*

Perplexingly, despite the February 9, 2006 Letter, counsel for Caterpillar, Christopher B. Parkerson ("Attorney Parkerson") called counsel for Trans-Spec, Christian G. Samito ("Attorney Samito"), on the morning of February 9, 2006. Samito Aff., ¶ 7. Attorney Samito reiterated that the February 9, 2006 Letter was clear on its face and that the depositions in Peoria, Illinois would not go forward as scheduled pending the Court's ruling on an Emergency Motion to be filed that afternoon. Samito Aff., ¶ 8.

Shortly afterward, at 12:39 p.m., Attorney Parkerson emailed Attorney Samito and informed that Caterpillar's other counsel, Attorney Grunert, planned to board an airplane to Peoria, Illinois in the next fifteen minutes unless Trans-Spec clarified its February 9, 2006 Letter and the two telephone conferences between counsel. See Email correspondence between Attorney Parkerson and Attorney Samito dated February 9, 2006, attached as Exhibit D to the Samito Aff. Attorney Parkerson requested a response "within the next 15 minutes" and he received one. *Id.* At 12:49 p.m., Attorney Samito responded that **"in the absence of Caterpillar's producing the requested documents beforehand, we would not be taking the depositions of Caterpillar's 'experts' next week"** as scheduled. *Id.* Attorney Samito also

asked Attorney Parkerson to send by facsimile Caterpillar's Objections to the Notices of Deposition (up until that point, Trans-Spec knew of these Objections only pursuant to oral representations Attorney Grunert made during the telephone conference on February 8, 2006 but had not received them).[6] *Id.*

At 1:07 p.m., Attorney Parkerson then asked if Trans-Spec would agree to unequivocally cancel the depositions altogether regardless of the outcome of the Emergency Motion. *Id.* Attorney Samito replied at 1:21 p.m., "No, we are not canceling the depositions regardless of the outcome of the emergency motion." *Id.* Trans-Spec had postponed the depositions but would not agree to cancel them altogether in such a way that they could not be rescheduled and taken if need be. Attorney Samito further reiterated in this email, **"that we wish to review the documents beforehand because very likely, we will decide that no oral testimony is necessary. I am at a loss as to why Caterpillar refuses to cooperate when it is likely that production of the documents will obviate the need for the deposition and eliminate the need to travel to Peoria, incur additional fees on behalf of both parties, and take up the days of several Caterpillar employees."** *Id.* Counsel for Trans-Spec reiterated this position in a telephone call it placed in a final effort to resolve this discovery dispute; this telephone call involved Attorney Reimer, Attorney Samito, and Attorney Parkerson and occurred just prior to the filing of the Emergency Motion that afternoon. Reimer Aff., ¶ 7; Samito Aff., ¶ 9. At no time during this telephone conference did Attorney Parkerson state that Attorney Grunert had boarded the airplane to Peoria, Illinois. Reimer Aff., ¶ 8; Samito Aff., ¶ 10. Immediately afterward, Trans-Spec filed its Emergency Motion. Reimer Aff., ¶ 9; Samito Aff., ¶ 11.

---

[6] These Objections contained improper objections including the attorney client privilege and the work product immunity and reiterated Caterpillar's refusal to produce the documents requested prior to deposition. See Objections To Notices Of Taking Deposition attached as Exhibit F to the Samito Aff.

Thus, all parties knew that the depositions in Peoria, Illinois had been taken off pending the Court's ruling on the Emergency Motion. Then, something inexplicable occurred: Attorney Parkerson called Attorney Reimer on the morning of February 13, 2006 to inform her that despite the oral and written communications between counsel on February 8 and 9, 2006 described above, not only had Attorney Grunert traveled to Peoria, Illinois but Attorney Parkerson flew there as well.[7] Reimer Aff., ¶ 10.

Attorney Samito immediately emailed Attorney Grunert and Attorney Parkerson to inquire as to why they flew to Peoria, Illinois for depositions which they knew were postponed as of Wednesday, February 8, 2006. See Email correspondence between Attorney Samito and Attorney Grunert dated February 13, 2006, attached as Exhibit E to the Samito Aff. Attorney Grunert responded that, despite the February 8 and 9, 2006 communications between counsel, the deponent previously scheduled for February 13, 2006 appeared for his deposition. *Id.* Attorney Samito reiterated that, as stated in the a) February 8, 2006 telephone conference; b) February 9, 2006 Letter; c) telephone conference between Attorney Parkerson and Attorney Samito on the morning of February 9, 2006; d) email exchange between Attorney Parkerson and Attorney Samito on February 9, 2006; e) telephone conference between Attorney Reimer, Attorney Samito, and Attorney Parkerson on the afternoon of February 9, 2006; and, f) the Emergency Motion itself, filed electronically on the afternoon of February 9, 2006, Trans-Spec was "not going to take the expert depositions until we have the requested documents and/or the Court rules on the emergency motion" and that, as had been repeatedly communicated "numerous times and in numerous ways . . . the depositions . . . have been taken off for February

---

[7] As Caterpillar's counsel knew from the February 8, 2006 telephone conference, Trans-Spec's counsel could not fly to Peoria on February 11, 2006 due to a memorial service. Reimer Aff., ¶ 11. A blizzard prevented travel on February 12.

13-17, 2006." *Id.*

Even if Caterpillar and its counsel somehow misinterpreted the telephone conference on February 8, 2006, the February 9, 2006 Letter is clear and unambiguous. Moreover, Trans-Spec's counsel subsequently reiterated the position articulated in its February 9, 2006 Letter multiple times and in a variety of ways. What is all the more troubled about the behavior of Caterpillar and its counsel is that Trans-Spec simply sought to increase economy and efficiency in this matter. Trans-Spec reiterates that if Caterpillar produces complete copies of all the documents requested on the Schedules A to the Notices of Deposition, Trans-Spec does not need to depose Caterpillar's five designated experts.

## CONCLUSION

For the reasons above, Trans-Spec respectfully requests this Court to deny Caterpillar's Motion for Sanctions and further moves the Court to award it all costs related thereto. Respectfully submitted,

TRANS-SPEC TRUCK SERVICE, INC.
d/b/a TRUCK SERVICE

By its Attorneys,

/s/ Christian G. Samito
Nancy M. Reimer, Esq., BBO # 555373
Christian G. Samito, Esq., BBO # 639825
Donovan Hatem, LLP
Two Seaport Lane
Boston, MA 02210
(617) 406-4500

Date: February 23, 2006

## REQUEST FOR ORAL ARGUMENT

If the Court deems it necessary, Trans-Spec requests oral argument on *OPPOSITION OF THE PLAINTIFF TO CATERPILLAR INC.'S MOTION FOR SANCTIONS.*

- 8 -

## CERTIFICATE OF SERVICE

I, Christian G. Samito, hereby certify that on this 23rd day of February, 2006, I served a copy of the foregoing, by electronically filing and by mail, postage prepaid, to:

John A.K. Grunert, Esq.
Campbell Campbell Edwards & Conroy
One Constitution Plaza, 3rd Floor
Boston, MA 02120

/s/ Christian G. Samito
Christian G. Samito
Counsel for Trans-Spec Truck Service, Inc.

00981109