TRANS-S1

```
                     1
 1                                                              1 - 38

 2              UNITED STATES DISTRICT COURT
                          FOR THE
 3                 DISTRICT OF MASSACHUSETTS

 4

 5   TRANS-SPEC TRUCK SERVICE INC., )
                        Plaintiff, )
 6                                 )
     -v-                           )  CIVIL DOCKET NO.
 7                                 )  04-11836-RCL
     CATERPILLAR INC.,             )
 8                      Defendant. )

 9
                        MOTION HEARING
10       BEFORE THE HONORABLE JOYCE LONDON ALEXANDER
               UNITED STATES MAGISTRATE JUDGE
11

12                      May 31, 2006

13                   Boston, Massachusetts

14   For the Plaintiff:

15        NANCY M. REIMER, ESQ.
          CHRISTIAN G. SAMITO, ESQ.
16        Donovan Hatem, LLP
          Two Seaport Lane
17        8th Floor
          Boston, MA 02210
18        617-406-4500

19
     For the Defendant:
20
          JOHN A.K. GRUNERT, ESQ.
21        CHRIS PARKERSON, ESQ.
          Campbell, Campbell, Edwards & Conroy, PC
22        One Constitution Plaza
          Boston, MA 02129
23        617-241-3000

24
     Proceedings recorded by electronic sound recording,
25   transcript produced by Apex Reporting.
```


EXHIBIT D part 1

TRANS-S1

2

```
1              P R O C E E D I N G S
2
3         THE CLERK:  All rise.  United States District
4  Court for the District of Massachusetts is now in session,
5  the Honorable Joyce London Alexander presiding.  You may be
6  seated.  Today is May 31st, 2006 in the matter of Trans-Spec
7  Truck Services, Inc., versus Caterpillar, Inc., Civil Action
8  04-11836.  Will counsel please identify themselves for the
9  record?
10        MS. REIMER:  Good afternoon, your Honor.  My name
11 is Nancy Reimer and with me is Christian Samito.  We
12 represent the plaintiff, Trans-Spec.
13        THE COURT:  Good afternoon.
14        MR SAMITO:  Good afternoon, your Honor.
15        MR. GRUNERT:  My name is John Grunert,
16 representing Caterpillar.  With me is my associate, Chris
17 Parkerson.
18        THE COURT:  Good afternoon.
19        MR. PARKERSON:  Good afternoon.
20        THE COURT:  I have the motion to compel production
21 of documents and extend expert discovery and the motion for
22 sanctions.  I also have the motion to amend and motion for
23 summary judgement, is that correct?
24        MS. REIMER:  Yes, your Honor.
25        THE COURT:  Let me hear you on the motion to
```

TRANS-S1

3

1  amend.
2          MR. SAMITO:  Your Honor, in short, this is a case
3  where Caterpillar is saying, we made a promise but we didn't
4  promise to keep it.  Your Honor dismissed two counts of a
5  three count complaint.  Trans-Spec moved to amend based on
6  information that was obtained in the course of discovery.
7  Much of it after the argument to amend -- on the motion to
8  dismiss.  Character raised here is the issue that Rule 16
9  governs on this motion to amend.  In fact, this motion to
10 amend would be valid even under a Rule 16(e) manifest
11 injustice standard.  That's not what we have here.
12         It is in the Court's discretion, regardless of a
13 schedule (unintelligible), to grant a motion to amend.  More
14 importantly, however, there's a large body of case law in
15 the Supreme Court and the First Circuit that addresses what
16 happens when a motion to dismiss is granted.  And uniformly
17 what that case law states is that leave should be granted.
18         If you look at Fullman v. Davis, a case that
19 doesn't into Rule 15 or Rule 16, and which applies, it says
20 after dismissal we revert back to the Rule 15 standard.
21 Under the Gaffney case, 1973 in the First Circuit, the First
22 Circuit doesn't get into Rule 15 or 16. It says, there was a
23 dismissal.  There was a way to cure the defects that were
24 found in the dismissal, and leave should be granted.  And
25 there's a body of case law that's in the papers in the

                    4
1   motion to amend that gets into this issue. That repeats
2   time and again, if you can cure deficiency or what is
3   thought to be deficiency and the case can go forward based
4   on based on the new complaint that leave should be granted.
5   It's almost automatic, based on the case law that's cited in
6   our brief. The other argument that Caterpillar makes deals
7   with the merits. This is a case where Trans-Spec purchased
8   22 truck engines from Caterpillar.
9           THE COURT: But you were allowed a motion to amend
10  a year ago, is that not correct?
11          MR. SAMITO: We were allowed to amend the
12  negligence count.
13          THE COURT: And you're asserting that information
14  was not known since before you were allowed to amend in
15  2005?
16          MR. SAMITO: Well your Honor, we've had a number
17  of discovery issues, and frankly it's been very difficult
18  getting a lot of documents from Caterpillar. We did not
19  take the Rule 30(b)(6) deposition due to those document
20  discovery issues, and if you look at the record there's a
21  number of motions to compel and we have a number of
22  discovery issues --
23          THE COURT: What, in particular, did you not know.
24  what, in particular, did you not know, that's just come into

TRANS-S1

25   your possession?

5

1       MR. SAMITO: Well one of the big issues here is
2  according to the warranties that are in play, Caterpillar
3  warranted the engines and the flywheel housings in
4  particular.
5       THE COURT: I know about that. I've had this case
6  forever.
7       MR. SAMITO: What the issue is, is that the
8  warranties say it's for defects in workmanship and
9  materials, and it turns out Caterpillar never checked to
10 find out if it was a defect in workmanship or materials. In
11 fact, they started honoring the warranty and admitted that
12 it was a defect in workmanship and materials. Then in 2003,
13 some gentleman in the Caterpillar Connecticut office,
14 without consulting any engineers, without consulting anyone
15 decided, we're going to stop making payments on this five
16 year warranty. And that was discovered in the September
17 21st, 2005, after the motion to dismiss hearing.
18      There was a two year warranty document that we
19 didn't have until around the time of the motion to dismiss
20 hearing that bears on this. That two year warranty document
21 explicitly shows that Caterpillar treats the five
22 year/500,000 mile warranty as more than a repair or replace
23 warranty, as your Honor found on the motion to dismiss. It

TRANS-S1
24  explicitly states -- under the two year warranty that we got
25  after the hearing, it shows that Caterpillar treats the 5

                                6
1   year/500,000 mile warranty as a straight warranty, not a
2   repair or replace and that bears directly on your Honor's
3   ruling in that motion to dismiss. We didn't have that at
4   the time of the hearing. These are two key facts why we're
5   in here, among many others.
6           THE COURT: Let me hear from the opposition.
7           MR. GRUNERT: The statement that Trans-Spec did
8   not have the warranty is false.
9           They were given a copy of that warranty. The
10  attorneys were given a copy of that warranty in
11  Caterpillar's automatic disclosure. I had no reason to
12  think that that representation would be made to you or else
13  I would've brought the documents to show that. However,
14  beyond that, Mr.Howard, himself, testified that he received
15  those warranties with the trucks, so that Mr.Howard had
16  those warranties before this case was commenced.
17          Now the question you asked, of course, is the
18  pertinent one. What specific information with reasonable
19  diligence, could Trans-Spec not have had before the deadline
20  for moving to amend complaint of their complaint, and they
21  have not identified anything other than a document, which in
22  fact they did have. The legal standard in the First

TRANS-S1

23  Circuit, and I have cited the O'Connell v. Hyatt Hotels case
24  to you that there are many cases at the appellate level.
25  The legal standard, regardless of what it was in 1973, since

                            7

1   the amendments to Rule 16 are that a scheduling order
2   deadline may not be amended unless there is a showing of
3   good cause, and good cause means that with reasonable
4   diligence the deadline could not have been met. There is no
5   reason the deadline could not have been met. I went
6   through, at some length, in my opposition, all of the facts
7   that they now want to allege that obviously were known to
8   Mr. Howard and to his attorneys many years ago.
9           Judge Lindsay could not have been clearer in his
10  order in October, 2005 that there are going to be no more
11  amendments to this scheduling order. And I suggest to you
12  that this motion is meritless on its face and it should be
13  summarily denied. It is, in essence, just a attempt to get
14  your Honor and Judge Lindsay to reconsider the dismissal of
15  the warranty claims, which was an absolutely proper
16  dismissal.
17          Thank you, your Honor.
18          THE COURT: Let me hear Trans-Spec's emergency
19  motion to compel.
20          MS. REIMER: Your Honor, this deals with the
21  30(b)(6) deposition and information that we didn't have. We

TRANS-S1

22  noticed, in accordance with the time schedule, we noticed
23  Trans-Spec's 30(b)(6) deposition.
24         In the notice, I intentionally set it up so that
25  approximately a week before the deposition, Trans-Spec would

                8

1   produce to us those documents upon which its experts, and I
2   use that word very loosely because Trans-Spec identified a
3   number of experts who --
4          THE COURT: Let me just narrow this for you
5   because this motion goes back and forth. It's one of the
6   more fascinating motions I've ever read in my life, motions
7   and oppositions. And I'll tell you the one reason, because
8   I've never had a motion where someone has asked for
9   information about hotels and air travel to prove a point.
10         It seems as though a deposition was, and I don't
11  even know if I'm using the correct words, but tentatively
12  scheduled and there was some -- well the tentativeness seems
13  to be because of the discussion between Caterpillar and
14  Trans-Spec. Are we having a deposition? You need to have
15  the documents in which to conduct the deposition. Who will
16  come, is this being canceled, we won't come if you're not
17  going to have the documents to us.
18         MS. REIMER: It certainly was straightforward than
19  that even, your Honor. Under the notice, the notice called
20  for the documents to be produced before the deposition. The

TRANS-S1

21  reason, and the very specific reason, is because these
22  depositions in the 30(b)(6) dealt with --
23          THE COURT:  I don't need the reason.  That's not
24  pertinent to what --
25          MS. REIMER:  Well --

                        9
1           THE COURT:  It's not pertinent to the Court's
2   inquiry.  The Court must make the decision.
3           So, the reason you want the documents right now is
4   not to me a major issue.  The issue is, you scheduled the
5   deposition, then what happened on the other side?
6           MS. REIMER:  In a telephone conversation on
7   February 8th, two days before which the documents were to be
8   produced, on a completely unrelated subject matter, I asked
9   Mr.Grunert if he was going to -- when he was going to be
10  producing the documents.  He made it quite clear to me that
11  he was not going to produce the documents and they would be
12  available at the deposition.  I responded to Mr.Grunert and
13  said, there was a reason why we wanted the documents
14  beforehand.  It's because they dealt with technical
15  engineering issues.  I'm not an engineer, your Honor, I'm an
16  attorney.
17          THE COURT:  No, that's fine.  I understand that.
18          MS. REIMER:  So then I sent -- Mr.Grunert refused
19  to produce the documents.  I wrote him a letter confirming

TRANS-S1

20  the conversation and I said, if you refuse to produce the
21  documents before the deposition, we would not go forward.
22  The very next day I filed this emergency motion to compel,
23  asking the Court to require Caterpillar to produce the
24  documents before the deposition and then to extend the date
25  because we were running up against the discovery deadline

                          10
1   for the expert depositions. To extend the date so that we
2   could have the documents, have our expert engineer review
3   them before the deposition and then take the deposition in
4   an orderly fashion and without, frankly, wasting the
5   witness' time at the deposition trying to go through the
6   documents and our time in the interest of economy and
7   efficiency to make this deposition go smoothly, given the
8   fact --
9           THE COURT: One second. But they told you -- you
10  filed the motion. Before you filed that motion Caterpillar
11  said to you, we're not going to go, is that correct?
12          MS. REIMER: They said they were not --
13          THE COURT: They pulled out?
14          MS. REIMER: That's right.
15          THE COURT: That's what they said?
16          MS. REIMER: That's right.
17          THE COURT: So then why did you not say, "Okay.
18  The deposition is off." That's what you said on the phone.

TRANS-S1

19    MS. REIMER: We did and I said it in my letter and
20 I said it in email correspondence. Frankly, I do not
21 understand Caterpillar's misunderstanding. What they're
22 trying to do here is trying to misdirect the Court for their
23 own abuse of discovery and trying to table our loss and say,
24 because I didn't get on a plane during the day of a
25 blizzard, in which Logan Airport was closed --

11

1    THE COURT: Now let me ask Caterpillar.
2 Caterpillar, what makes you think, after counsel had told
3 you, "We're not going forward.", that you shouldn't believe
4 them?
5    MR. GRUNERT: That's not what they told me, your
6 Honor, and if I may just refer you to the documentation.
7 And the first part of the documentation I'd like to refer
8 you to is Ms.Reimer's affidavit supplied in opposition to
9 my motion.
10    Paragraph 6, she recounts the conversation on
11 February 8th. She says, "I also informed Attorney Grunert,
12 during this February 8th, 2006 telephone conference, that
13 Trans-Spec would not go forward with the depositions unless
14 it received the documents beforehand or the Court denies an
15 emergency motion.
16    THE COURT: And the Court didn't.
17    MR. GRUNERT: That's right.

TRANS-S1

18     THE COURT: Right. But counsel, to me this is all
19 a matter of semantics, we're all grown. This is a matter of
20 semantics -- I'm not going forward with the deposition
21 unless I get the documents, I'm not showing.
22     MR. GRUNERT: Your Honor --
23     THE COURT: So the motion for sanction is denied.
24 You can appeal it if you wish.
25     MR. GRUNERT: Your Honor, may I be heard further?

                12
1     THE COURT: You may be heard for about two minutes
2 because the Court has decided. And I've looked at all of
3 these matters and I just -- I don't even see your point.
4     MR. GRUNERT: What I was told was that the
5 depositions would not go forward unless the Court denied an
6 emergency motion.
7     THE COURT: No, she didn't say that on the phone.
8     MR. GRUNERT: She said that on the phone and I
9 recounted that in my affidavit. She said it in her own
10 affidavit and they said it in their opposing papers
11 themselves.
12     THE COURT: Unless they got the documents or the
13 Court denied the emergency motion, but she wasn't given the
14 documents and you knew it. So you knew --
15     MR. GRUNERT: I did not know, however, that the
16 Court was not going to deny their motion. In fact, my

TRANS-S1
17  expectation was that that motion was going to be promptly
18  filed and that steps would be taken to have it heard and
19  decided. And if you look at the opposition we filed,
20  Mr.Parkerson specifically said he was available for a
21  hearing on that motion by telephone.
22          I did not have the luxury of waiting to find out
23  whether that motion was going to be denied and the
24  depositions were going to go forward as scheduled. I asked,
25  from the airport, I asked Trans-Spec's lawyers repeatedly,

                            13
1   just tell me that regardless of what happens with your
2   emergency motions, these depositions are not going forward
3   as scheduled and even though my bags are already on the
4   plane, I'll come home, I won't go to Peoria. They would not
5   tell me that. And the last e-mail that they sent, and you
6   have it, it's an Exhibit filed to my motion, Mr.Samito
7   said, "No, we're not canceling the depositions regardless of
8   what the Court does on the motion." So this was a
9   conditional statement that, depending on what happened with
10  that motion, either they were going forward or they were
11  not. And if they had decided to go forward and I hadn't
12  shown up, then they'd be looking for sanctions.
13          THE COURT: But it would seem to the Court that if
14  there is a motion before the Court and step one, counsel
15  says, "My client will not go forward with the deposition
                        Page 13

TRANS-S1

16  unless the documents are produced prior." Two, emergency
17  motion filed with this Court, this Court does not act. One
18  would presume, given the prior statement, that that
19  deposition is not going forward.
20         MR. GRUNERT:  Your Honor --
21         THE COURT:  Counsel would have called the Court
22  and the Court would've said it's on the calendar, it may be
23  rescheduled, but the hearing will take place. Obviously,
24  there's an issue here and so --
25         MR. GRUNERT:  Your Honor, the problem is that I

           14
1  looked for exactly the unequivocal statement that you have
2  just suggested and I received in response a statement saying
3  that whether we were going forward or not depended on what
4  the Court did with this emergency motion. I had to go to
5  Peoria. I had to get a flight there to prepare the witness
6  and to have the witness' documents available. I couldn't
7  wait. These depositions were not tentatively scheduled,
8  they had been noticed for specific dates that were agreed
9  upon. And all I wanted was an unequivocal statement, one
10 way or the other, are we going forward and they would not
11 give it to me.
12         THE COURT:  It seems to the Court that the two
13 parties that counsel have or for counsel have more additions
14 than the parties themselves.

Page 14

TRANS-S1

15   What's the next issue, the motion for a summary
16 judgement. You may be heard.
17   MR. GRUNERT: Your Honor, there was only one claim
18 remaining and that's the negligence claim. And there are
19 two separate grounds why that claim fails as a matter of
20 law.
21   One ground disposes of the entire claim.
22   The second ground would leave a small amount of
23 that claim pending, so the second ground is in the nature of
24 a motion for partial summary judgement. The document -- and
25 by the way, when I think of it, attached to my motion for

15

1 summary judgement are the warranties that Caterpillar gave.
2 These are the warranties, and I attached the testimony from
3 Mr.Howard saying that he received them. Those are the very
4 warranties you were told on the motion to amend that the
5 plaintiff didn't have until recently, by the way.
6   So the warranty that was given contains in bold
7 faced print, capitalized letters, an exclusion that says
8 that Caterpillar is not liable for any negligence in
9 connection with these engines. That exclusion, under
10 General Laws Chapter 220110, is conspicuous as a matter of
11 law and is enforceable. And Massachusetts law could not be
12 clearer that exclusions of negligence liability, at least
13 between businessmen, are not only enforceable but they're

TRANS-S1

14  favored.  The Sharon case, Sharon v. City of Newton says
15  they're favored because the law encourages the consensual
16  allocation of risk between business people.
17         There's no dispute that that document is the
18  warranty.  There's no dispute that it was received.  The
19  legal effect of that language is clear.  Under the Sharon v.
20  Newton case, once that exclusion has been presented to you,
21  the burden is on the plaintiff to come forward with specific
22  evidence to show you that there is some reason why that
23  release should not be given effect.  I have gone through, at
24  considerable length in my required brief, the various
25  grounds that Trans-Spec has advanced.  But I think I need to

                16
1  say --
2         THE COURT:  How do you respond to Trans-Spec's
3  asseveration that a product has an apparent defect the buyer
4  receives less than what the contract calls for.
5         MR. GRUNERT:  The --
6         THE COURT:  And therefore, the remedy fails of its
7  specific purpose, of its essential purpose?
8         MR. GRUNERT:  The section of the uniform
9  commercial code, I think it's 20219.  I could be wrong, it
10  might be 2207, but the section of the uniform commercial
11  code that pertains to failure of the essential purpose says
12  that if a particular provision in a contract, if a

TRANS-S1
13    limitation of remedies provision fails of its essential
14    purpose, then other UCC remedies are available. Negligence
15    is not a UCC remedy. There are no UCC remedies in this case
16    because that claim is barred by the statute of limitations.
17    So the failure of essential purpose, and I cited the case
18    authority to you your Honor, the Canal Electric v.
19    Westinghouse case is SJC decision that's right on point.
20    There's also a decision out of the Ninth Circuit, Tokyo
21    Marine v. McDonnell Douglas, I believe, it's again cited in
22    my brief, where there's exactly this issue. There was a
23    negligence claim and the defense was there's an exclusion
24    about negligence claims and the plaintiff said, well the
25    contract failed of its essential purpose. And that, like

                    17
1    this one, was a case where the warranty claims were barred
2    by the statute of limitations. The Ninth Circuit says, no,
3    no, no, no. Failure of essential purposes means you have
4    UCC remedies. Your UCC remedies failed under the statute of
5    limitations. You've got no -- that failure of essential
6    purpose has no effect on an exclusion of negligence.
7             THE COURT: What about the economic loss doctrine
8    being an all or nothing doctrine?
9             MR. GRUNERT: Again, that's just not the law. And
10    I think on that subject, the most illustrative case is
11    probably the Icelandic Coast Guard v. United Technologies

TRANS-S1

12  case that I cited to you.  Although, there's another case
13  that I didn't cite to you, but I'd like to give you the cite
14  now, it's Northern States Power Company v. International
15  Telephone and Telegraph.  It's at 550 F.Supp. 108 out of the
16  District of Minnesota, which is also illustrative.
17           What these cases show and really, the Icelandic
18  Coast Guard case is very good, because what happened in that
19  case is the defendant had sold a helicopter to the Coast
20  Guard.  The helicopter crashed as a result of a product
21  defect.  And as a result of the crash, the crew members were
22  killed, and the Coast Guard had to expend a lot of money on
23  finding and retrieving their bodies.  The Coast Guard also
24  had to expend a lot of money finding the wreckage of the
25  helicopter, with lost use of the helicopter, had to replace

                       18
1   the helicopter.  And so, the Coast Guard sued United
2   Technologies and United Technologies said, well your claim
3   is barred by the economic loss doctrine.
4            And what the District Court in Connecticut said
5   is, well you've got various kinds of losses here.  To the
6   extent that this crash caused injury to the crew members,
7   that's an injury to persons or other property.  And so, you,
8   the Coast Guard can recover what you expended in finding and
9   retrieving the crew members bodies.
10           As to the other categories of damages, the expense

TRANS-S1

11  of finding the wreckage of the helicopter, the lost time,
12  lost use of the helicopter, the cost of replacing the
13  helicopter, those are all economic losses caused just by a
14  defect in the product itself. Those you cannot recover.
15          So it says, summary judgement, as to the claims
16  for those elements. No summary judgement for the claims for
17  expenses searching for the crew members body. And if you
18  review the Jeldwin case, if you review the other cases that
19  I cited to you, you will see that that consistently is how
20  the economic loss doctrine is applied.
21          The economic loss doctrine permits recovery of
22  damages proximately caused by damage to other property.
23  That is to say, property other than the product itself, or
24  to person. It bars elements of damage that are attributable
25  just to the defect in the product itself, to the loss of use

                          19

1  of the product through reduction in value. It's not an all
2  or nothing matter in that case that Trans-Spec cites for
3  that proposition doesn't stand for it. I talked to you
4  about that in the brief. I don't think I need to recount it
5  here, but that that statement was just a vague passing
6  reference and a general history and it was followed by a
7  number of citations to other authority, and if you read the
8  other authority, you see that it says exactly what I just
9  explained to you.

TRANS-S1

10      The economic loss doctrine requires
11 differentiation between different types of damages.  And the
12 reason it does that is that if there are tort type damages
13 that have been caused, the courts don't want to deny
14 recovery but the problem of tort law swallowing up contract
15 law remains.  And so, the courts are very tough in saying
16 that you cannot recover economic losses, economic type
17 damages unless they are caused by damage to other property,
18 not to the product itself.
19      THE COURT:  Thank you.
20      MR. GRUNERT:  Thank you, your Honor.
21      THE COURT:  Trans-Spec, talk to the Court about
22 the warning disclaimer not being enforceable because of its
23 failure of its essential purpose.
24      MR. SAMITO:  Well your Honor, I think Andover Air
25 case is very instructive, in that Judge Zobel -- the

                    20
1 plaintiff, Andover -- if Andover proves that the warranty
2 failed in its essential purpose, the exclusion of other
3 damages becomes inoperative and Andover may seek
4 consequential and incidental damages as allowed by the code.
5      THE COURT:  But Caterpillar has said that
6 negligence is not a UCC remedy and therefore, you can't even
7 invoke that.
8      MR. SAMITO:  But where the warranty fails of its