TRANS-S1

9   essential purpose, your Honor, all bets are off.  You can't
10  just claim negligence, have everything else fall to the
11  wayside and allow the breaching party to hold onto that
12  disclaimer that benefits it.  They're not getting the
13  benefit.  There's a difference, and there's other cases.  I
14  mean, the Hadar case from the Southern District of New York
15  bears on this.  In other cases that are cited --
16              THE COURT:  But Caterpillar says that it doesn't
17  fail -- in Court, the Court -- if the Court is wrong, did
18  you not say that Caterpillar -- did Caterpillar not say that
19  it doesn't fail of its essential purpose, is the Court
20  correct?
21              MR. GRUNERT:  I don't concede that --
22              THE COURT:  Negligence is not a UCC remedy.
23  That's what Trans-Spec is invoking when it says that it
24  fails of its essential purpose?
25              MR. GRUNERT:  I don't believe --

                      21
1              THE COURT:  That the remedy fails?
2              MR. GRUNERT:  I don't believe that --
3              THE COURT:  Okay.
4              MR. GRUNERT:  For purposes of --
5              THE COURT:  Let me ask you and then have you
6   respond.  Let me ask Caterpillar the following question:
7   Trans-Spec says that the disclaimer is unenforceable because

EXHIBIT
Dodd2

TRANS-S1

8  it fails of its essential purpose. What do you say to that?
9       MR. GRUNERT: I say number one, that the -- what
10 Trans-Spec claims failed of its essential purpose is the
11 warranty that Caterpillar --
12      THE COURT: So you're saying they're saying the
13 warranty failed of its specific purpose?
14      MR. GRUNERT: That's right.
15      THE COURT: That has nothing to do with this
16 negligence claim.
17      MR. GRUNERT: That's correct. And if there had
18 been a timely action brought to breach of warranty and if
19 Trans-Spec --
20      THE COURT: We're dealing with the negligence.
21      MR. GRUNERT: Right, right.
22      THE COURT: Stop saying anything about the
23 warranty. They're saying this disclaimer is unenforceable
24 because it fails of its essential purpose. You say what
25 again, and don't bring in the warranty?

                     22
1       MR. GRUNERT: The essential purpose of the
2  disclaimer is obviously to disclaim liability for
3  negligence. The argument that the warranty failed of its
4  essential purpose as a matter of law means only that if that
5  were found to be true, they would have other UCC remedies
6  available to them. In other words, the limitation to a

TRANS-S1

7  repair or replacement of defective parts would fall out of
8  the case and Trans-Spec could sue for contract damages.  The
9  warranty claim -- all contract damages are barred by the
10 statute of limitations.
11          THE COURT:  But this is negligence.
12          MR. GRUNERT:  That's right.  Negligence is not a
13 UCC remedy.  So the failure of essential purpose law is
14 simply irrelevant to this motion.  And I cited --
15          THE COURT:  That's what I wanted to hear you say.
16 Thank you.
17          MR. SAMITO:  Well your Honor, with all due respect
18 here, Caterpillar, the cases that they cite involve
19 situations including the Canal case, where the defendant
20 tried to perform under the contract.  Here, Caterpillar
21 breached the contract, breached the warranty in 2001,
22 breached it again in 2003 all together, and that's the
23 difference.
24          It's one thing for the Court to look at a
25 situation where Caterpillar was performing under the

                    23
1  warranty and then it may be a different story in terms of
2  the exclusion of negligence, but that's not what happened
3  here.  And the cases that Caterpillar cites don't apply for
4  that reason.
5          This is a situation where Caterpillar left

TRANS-S1

6  Trans-Spec holding an open bag. Said we're not going to
7  honor any other provision in these two warranty documents
8  except for the disclaimer of negligence. That, we're going
9  to cite that. We'll honor that because it benefits us. And
10 that's the situation.
11         Time and again, the cases cited from Boston
12 Helicopter to Hadar, the rejection of negligence
13 disclaimers, Somerset Savings, Omni Flying, Andover, again
14 and again said, that you can't have disclaimer of negligence
15 where it's unconscionable or where it failed of its
16 essential purpose. It's integrated into a document that
17 completely fails. The Court will enforce that one
18 provision. And again, the Andover Air case provides
19 excellent guidance on that point. Judge Zobel talks about
20 that unconscionability of the limited remedy and where it
21 fails of its essential purpose.
22         THE COURT: So that Caterpillar's whole issue
23 about the code is really irrelevant?
24         MR. SAMITO: Yes, your Honor.
25         THE COURT: Okay. Let me hear you on the economic

24

1  loss.
2         MR. SAMITO: Again, your Honor, the cases that
3  Caterpillar cites involve situations where the loss is
4  purely economic. If you look at the Binding Berish case, I

TRANS-S1

5   remember from the last hearing that your Honor knows the
6   Berish case quite well, referred to it as well as other
7   cases that are cited here.  The Massachusetts Supreme
8   Judicial Court, not Connecticut, we'll dealing with
9   Massachusetts law, Berish is binding.  The SJC in Berish
10  said, where you have damage, both to the actual property but
11  then to elements outside of the property, the economic loss
12  doctrine doesn't apply.  The Damon court, in 1998, does cite
13  three prior Wisconsin cases and then it comes down with its
14  statement, the economic loss doctrine does not bar
15  commercial purchasers claims based on personal injury or
16  damage to property other than the product, or economic loss
17  claims that are alleged in combination with non-economic
18  losses.
19          Now what Caterpillar does here, is it files a
20  motion for summary judgement, complains throughout that
21  Trans-Spec doesn't provide adequate proof of the damages.
22  Doesn't complete its Rule 30(b)(6) deposition of Trans-Spec,
23  and then it says, well there's not enough proof in the
24  record and the proof that is there is not credible.  And
25  issues of credibility aren't for the Court to decide at the

25

1   summary of judgement stage, they're for the jury to decide.
2           And the issues in terms of whether the damage was
3   economic or not economic going forward, by Caterpillar's own

TRANS-S1

4   notion, they concede that the damage to the truck's
5   clutches, the drive trains, the transmissions, damage to
6   property of Trans-Spec in terms of the actual physical
7   ground, the oil leaks on other peoples, other customer's
8   property. That's all issues that show the economic loss
9   doctrine doesn't apply here. It's by the Binding Berish
10  case. There was damage to property outside of the engines
11  themselves. And if the damage was just confined to the
12  engines, that may be one story, but that isn't what was the
13  case here in the deposition testimony. We have affidavits
14  that point to the fact that there was damage to other
15  property.
16        The fact that Caterpillar doesn't like that
17  evidence and doesn't like the affidavits is not neither here
18  nor there. I note that Caterpillar moves to strike four out
19  of five documents. Four of the documents are documents that
20  they actually append to their own motion for summary
21  judgement. And now they're saying, oh we should exclude
22  that. They want to exclude any evidence that there was
23  damage to other property.
24        There's also issues with misrepresentations.
25  Negligent breach of contract, those are two issues of

26

1   negligence that are encompassed in the negligence count that
2   are carved out of the economic loss doctrine, and I need not

TRANS-S1

3  spend the time of the Court, indeed the cases are cited in
4  our opposition papers. But negligent misrepresentation, and
5  we (unintelligible) the history with documents, with
6  Caterpillar testimony, with affidavits, and the negligent
7  breach of the warranty documents -- the negligent breach of
8  contract --
9        THE COURT: One of the arguments you make is that
10 the Court twice rejected Caterpillar's contention, but the
11 Court did not because it said at that stage of the
12 proceedings it was not prepared to render a decision on that
13 issue. But the Court didn't reject Caterpillar's assertions
14 outright. And so now Caterpillar brings them and you're
15 saying, based on the cases that have been previously cited,
16 that the Court should now reject Caterpillar's assertions
17 outright?
18       MR. SAMITO: I don't remember if I cited all the
19 cases, but the Berish v. Bernstein in 2002, the Aldridge v.
20 ADD, which is SJC 2002, several other cases that are given
21 are in Caterpillar's own memorandum on page 6 are all
22 reasons why the Court should deny as to the economic loss
23 argument because there was damage to property outside of the
24 engines themselves. And as a result of that, the negligence
25 claim on that ground goes forward.

                          27
1        THE COURT: Counsel, what about the injury or

TRANS-S1

2  damage to other than the design or manufacture.

3  MR. GRUNERT: I told you when I started that, as
4  far as the economic loss doctrine is concerned, it's a
5  motion for partial summary judgement.

6  I have seen records indicating that, at least,
7  sometimes when a flywheel housing failed there would be
8  damage to a clutch or a starter motor, and those would have
9  had to have been replaced. The cost of replacing those
10 sorts of incidental parts is a tiny fraction of the damages
11 sought in this case. But I was explicit that that extent,
12 to the extent that recovery is sought for damage, the cost
13 of replacing damaged truck parts, that I don't seek summary
14 judgement under the economic loss doctrine, although I do
15 under the contractual exclusion.

16 Beyond that, I just have two comments. Number
17 one, you will not find anything in my brief that talks about
18 credibility. I'll be perfectly content if your Honor simply
19 looks at the evidence attached both to my motion and to the
20 opposition, and if you'll see what the evidence shows as
21 distinct from what the attorneys say in their brief.

22 And the second thing is that the Berish case has
23 nothing to do with this issue. The Berish case does not
24 address the subject of whether when there are both economic
25 losses and non-economic losses, whether the plaintiff is

TRANS-S1

1  limited to recovering only losses that are proximately
2  caused by damage to other property, and that is the issue
3  that's addressed here and that is the issue that is
4  addressed in all of the cases that I've cited you on the
5  economic loss doctrine, your Honor.
6          THE COURT: Well the Berish case says that the
7  economic loss doctrine precludes recovery for negligence in
8  the design or manufacturer of the product if the negligence
9  causes no injury other than to the product itself. That's
10 what it says.
11         MR. GRUNERT: Correct.
12         THE COURT: And so that if portions of the
13 decision sort of argues in favor of Trans-Spec, do you
14 disagree with that?
15         MR. GRUNERT: Well yes. I mean, as you know --
16         THE COURT: I should've known that.
17         MR. GRUNERT: As you know, courts decide the
18 issues that are presented to them. Nothing in the Berish
19 case indicates that the Court was asked to decide whether,
20 in the presence both of damage to both other property and
21 what would typically be just economic loss, damage to the
22 product itself, they weren't asked to decide whether you can
23 collect for the damage caused to other property but not for
24 the product itself. That issue wasn't before them, it is
25 not addressed.

TRANS-S1

29

1        What that Court basically said is, well the
2   product in this instance is the whole house, it's not just
3   the windows.  And you know, we accept that.  That, I guess,
4   is the law of Massachusetts.  But it didn't address the
5   issue that's before you now and why would they go out on a
6   limb to address that issue, but the issue has been
7   addressed, it was addressed in the Jeldwin case and it was
8   addressed in the other cases that I've cited to you.  And I
9   suggest to you that those cases make perfect analytical
10  sense.
11       And Trans-Spec has not cited you to any authority
12  to the contrary if you actually read the cases that they've
13  cited you.  So that's really all I have to say about the
14  Berish case.  You've characterized that when we were before
15  you once before as a, I'm not sure of the words you used,
16  but it indicated that it is sort of a difficult case to
17  understand how they got to where they were going.
18       THE COURT:  But they got there.
19       MR. GRUNERT:  They got there.  They got to say
20  what the law is, but the issue that is before you is not one
21  that they addressed or decided.  Thank you, your Honor.
22       THE COURT:  Now before you leave and I take all of
23  this under advisement to send to you, when is the deposition
24  going to take place and when are these documents going to be
25  produced?  Is it sometime in June?

TRANS-S1

30

```
 1            MS. REIMER:  There is no date scheduled.  I'm
 2   reluctant to take the deposition without reviewing the
 3   documents because --
 4            THE COURT:  Are the documents ready?
 5            MR. GRUNERT:  Well your Honor, I object to having
 6   the depositions taken or having any --
 7            THE COURT:  Right.  So they'll be taken.  Will
 8   they be ready in June?  Will the documents be ready in June?
 9            MR. GRUNERT:  I --
10            THE COURT:  I've just said we're going to take
11   these depositions, we're going to produce these documents
12   and end this case.  The next person you should see will be
13   Judge Lindsay, it should be going to trial.  Of course, what
14   you should be doing, this case should've been settled a long
15   time ago.  But notwithstanding that fact, let's get a date
16   within the next two weeks.  Can we agree on a date?
17            MS. REIMER:  Your Honor, I actually have a trial
18   scheduled in Suffolk for June 12th.  I presume it's going
19   forward with Suffolk --
20            THE COURT:  That's June 12th, we're talking --
21            MS. REIMER:  That's in two weeks.
22            THE COURT:  We're talking about -- that's two days
23   before the Court is talking about.  I'm talking about
24   between now and June 12th, can the documents be produced and
25   can the deposition -- and can we agree on a date?
```

Page 31

TRANS-S1

31

1   Listen, I really think counsel are nice, but I
2   don't want to see you again. So I really would like to get
3   this done today. I'd like to find out when you're going to
4   produce the documents and when this deposition is taking
5   place.
6       MR. GRUNERT: Your Honor, there is no way that I
7   could appear for depositions, and I don't even know what the
8   schedule of the witnesses are.
9       THE COURT: Well no, you're going to tell the
10  witnesses because otherwise they're going to be in big
11  trouble.
12      So you're going to tell the witnesses that the
13  Judge has ordered that these depositions will take place on
14  or before. That's what you will tell them. So I would say
15  if it could be done between now and -- today is the 31st of
16  May. So if they could be done between now and the 9th, that
17  would probably be good because I think the last week in June
18  your clients will tell you they're going on vacation because
19  we're going into July 4th. I know that, it happens every
20  time. So it would be wise -- why don't we do this. I'm
21  going to leave the bench, you're going to call your clients
22  and you're going to give each other some dates to get this
23  done. Let's go off.
24      (A brief recess was taken)
25      THE COURT: Court is back in session. You may be

TRANS-S1

32

1  seated.
2           THE COURT:  I'm informed that you were unable to
3  get -- Caterpillar, you weren't able to contact the experts?
4           MR. GRUNERT:  Your Honor, the people that I
5  attempted to contact are the two Caterpillar coordinators
6  who have the contact information for these experts.  I also
7  tried to contact one of the experts themselves.  I was
8  unable to reach any of those people.  That's the status of
9  where things stand.
10          THE COURT:  Okay.  Well, on or before June 30th.
11          MR. GRUNERT:  Your Honor, I'll just point out that
12 in the papers that Trans-Spec filed, their opposition to my
13 motions for sanctions, they do state that if they get these
14 documents they do not need to take the deposition.
15          THE COURT:  Is that correct?
16          MS. REIMER:  What we stated is that we may not
17 need to take the depositions --
18          THE COURT:  No, I need to know whether you're
19 going to take them or not.  I mean, we're at the 11th hour
20 here.
21          MS. REIMER:  If the documents answer our questions
22 with respect to the reports that were filed, we probably
23 will not take the depositions.  If there are questions that
24 arise because of the documents that we would need to ask,
25 then we'd need to take the depositions.

TRANS-S1

                    33

1         THE COURT:  Oh no, no, you have a one shot deal
2    here.
3         You two need to talk and make up your minds
4    whether you're going to take these depositions if you get
5    the documents.  If you get the document, you will not need
6    to take the depositions or you're going to take the
7    depositions, or you're going to tell counsel -- if counsel
8    is asking his experts to take time out of what is a vacation
9    time, and he's asking them to take time, then you've got to
10   let them know.
11        MS. REIMER:  I'm not disputing with you --
12        THE COURT:  No, we're way past discovery.  I need
13   to know the answer to that now.  You two need to talk?
14        MS. REIMER:  All right.  Just one second.
15        MR. GRUNERT:  Your Honor, could I direct your
16   attention to the last sentence of the opposition of the
17   plaintiff to Caterpillar, in its motion to sanction
18   immediately above the word "Conclusion" where they say
19   "Trans-Spec reiterates that if Caterpillar produces complete
20   copies of all the documents requested on Schedule A to the
21   notice of the deposition, Trans-Spec does not need to depose
22   Caterpillar's --
23        THE COURT:  Well you should've given them those
24   documents before you came in here today and that would've
25   facilitated this matter.

TRANS-S1

                                34

1        MR. GRUNERT:  I can tell you that I have given
2   them many of them already.
3        THE COURT:  But you haven't given them all of
4   them, and that's a problem.  If counsel -- I tell you, I
5   can't imagine, and I don't have this for trial so I can say
6   this.  I can't imagine that the counsel in this case, and
7   this is on the record, haven't spent more money arguing
8   these motions than probably the damages in this case of the
9   clients.  This is ridiculous.
10       Now do you wish to change this around a bit?
11       MS. REIMER:  Your Honor, if we receive the
12  documents, we will not take the depositions.
13       THE COURT:  When can you get them the documents?
14  That's the first question.  You say you've given them most
15  of them, when can you give them all the documents?
16       MR. GRUNERT:  Your Honor, that's what I tried to
17  find out.  I can tell you -- let me tell you --
18       THE COURT:  Well you were on the case, you're the
19  lawyer.
20       MR. GRUNERT:  Your Honor, lawyers --
21       THE COURT:  You said you prepared -- you were in
22  the process of preparing the witnesses for testimony based
23  on those documents, so they must be at hand.
24       MR. GRUNERT:  Your Honor, a lot of these documents
25  were in electronic form.  The witnesses were going to be

                              Page 35

TRANS-S1

                        35
1   prepared to present them electronically at the deposition.
2           THE COURT: That ought to make it faster.
3           MR. GRUNERT: Well it would, but there is an issue
4   with one of them. The software is proprietary software and
5   so, there's been a lot of work going on trying to translate
6   those documents into a form that can be readable.
7           THE COURT: Okay. I'll issue an order today.
8           Do you think they can get it Friday? Do you think
9   they can get it by Monday?
10          MR. GRUNERT: I think, your Honor, that June 30th
11  was --
12          THE COURT: No, that's too long for the documents
13  because if you don't give them all the documents within two
14  weeks, then we have two weeks in which to notice
15  depositions.
16          MS. REIMER: Your Honor, there's one other --
17          THE COURT: So by June 14th it is hereby ordered
18  that all of the documents be produced. Then you may not
19  need depositions.
20          MR. GRUNERT: May I raise one other issue?
21          I did object, or the witnesses did object to these
22  notices to the extent, for example, that they seek
23  attorney/client privilege --
24          THE COURT: Give them a list. You know how to do

Page 36

```
                                            TRANS-S1
25   that.  That is so basic.
```

                    36

1            MR. GRUNERT:  So long as that's clear.
2            THE COURT:  Give them the documents.  Thank you.
3       Yes?
4            MS. REIMER:  Your Honor, with respect to the
5       privilege issue.  If these individuals are in fact experts
6       who are testifying experts, there should be no
7       attorney/client privilege issues, as we're entitled to all
8       the documents upon which these individuals relied on in
9       their opinion.
10           THE COURT:  Exactly.  And you'll battle that out
11      I'm sure at the deposition.
12           MS. REIMER:  Right, or we'll be back in court
13      saying --
14           THE COURT:  No, you won't be back in the Court
15      because if defense counsel comes back into this Court and
16      brings up an attorney/client privilege issue where there is
17      no basis in fact, he knows he will be held in contempt, so
18      that's not an issue.
19           MS. REIMER:  Thank you, your Honor.
20           MR. GRUNERT:  Your Honor, you said that this was
21      on the record.  Is there a recording of this hearing?
22           THE COURT:  There certainly is.
23           Now, by June 14th all documents.

```
                        TRANS-S1
24          Depositions to be completed on or before June
25   30th.  So you should notice those documents as soon -- you


                       37
1    should read them, obviously, as soon as you get them and
2    then notice the depositions.  And the Court will issue an
3    order in this case by the end of the day.
4              MS. REIMER:  Thank you, your Honor.
5              THE COURT:  Court is adjourned.
6              (Whereupon, the hearing was concluded.)
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
```

TRANS-S1

24
25
▯

                    38
1              CERTIFICATE OF TRANSCRIBER
2         This is to certify that the attached proceedings
3    before: U.S. DISTRICT COURT, DISTRICT OF MASSACHUSETTS
4    in the Matter of:
5    TRANS-SPEC TRUCK SERVICE INC., )
                         Plaintiff, )
6                                   )
     -v-                            )   CIVIL DOCKET NO.
7                                   )   04-11836-RCL
     CATERPILLAR INC.,              )
8                        Defendant. )
9
10
11
          Place: Boston, Massachusetts
12
                    Page 39

```
                                            TRANS-S1
          Date:  May 31, 2006
13
14
15   were held as herein appears, and that this is the true,
16   accurate and complete transcript prepared from the
17   recordings taken  of the above entitled proceeding.
18
     J. Mocanu                              06/05/06
19   Transcriber                            Date
```