UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-CV-11836-RCL

TRANS-SPEC TRUCK SERVICE, INC.
D/B/A TRUCK SERVICE

Plaintiff

v.

CATERPILLAR INC.

Defendant

**REPORT AND RECOMMENDATION ON**

**CATERPILLAR INC.'S MOTION FOR SUMMARY
JUDGMENT ON ALL REMAINING CLAIMS**
*(Docket # 102)*

ALEXANDER, M.J.

On January 31, 2006 this Court issued a Report and Recommendation to District Court Judge Reginald C. Lindsay recommending that the Court dismiss two of the three counts in plaintiff Trans-Spec Truck Service, Inc.'s ("Trans-Spec") Second Amended Complaint against defendant Caterpillar Inc. ("Caterpillar"). On February 23, 2006, Judge Lindsay adopted this Court's Report and Recommendation, dismissing Trans-Spec's claims for breaches of warranties of merchantability and

fitness and express warranties (Count I) and violation of Mass. Gen. Laws ch. 93A (Count II). Caterpillar now moves for summary judgment dismissing Count III of Trans-Spec's Second Amended Complaint for negligence in the design, development, assembly, manufacture, inspection, testing, marketing, advertising, and distribution of the C-12 engines purchased by Trans-Spec. Caterpillar asserts that Trans-Spec is contractually barred from raising a negligence claim and, separately, that the relief requested is barred by the economic loss doctrine. Further, Caterpillar maintains that punitive damages are not cognizable in Massachusetts under the instant scenario. After a hearing on the motion and careful consideration of the parties' asseverations, both oral and written, and for the reasons set forth more fully below, this Court RECOMMENDS that the District Court ALLOW Caterpillar's motion for summary judgment.

## RELEVANT BACKGROUND

In March 1999, Trans-Spec and Sterling Truck Corporation ("Sterling") prepared a "specification proposal" for twenty-two heavy-duty, custom-built trucks that Trans-Spec anticipated purchasing from Sterling and using for its oil delivery service and dump trailer operations.[1] The proposal called for the installation of C-12 model engines, manufactured by Caterpillar, in each of the trucks. After finalizing

---

[1] Sterling is not a party to this lawsuit.

the deal, Caterpillar shipped completely assembled C-12 engines to Sterling, who installed the engines in the trucks. Trans-Spec accepted delivery of the trucks in December 1999 and January 2000.

Caterpillar provided a standard limited warranty for the engines containing the following language in bold-faced, capital letters:

> **CATERPILLAR EXCLUDES ALL LIABILITY FOR OR ARISING FROM ANY NEGLIGENCE ON ITS PART OR ON THE PART OF ANY OF ITS EMPLOYEES, AGENTS, OR REPRESENTATIVES IN RESPECT OF THE MANUFACTURE OR SUPPLY OF GOODS OR THE PROVISION OF SERVICES RELATING TO THE GOODS.**[2]

By 2001, serious problems began to occur with the C-12 engines. More specifically, the flywheel housings began to loosen from the engines, leading to disruptions in the use of the trucks. Although Caterpillar reimbursed Trans-Spec for repairs to six trucks that experienced flywheel housing failure in 2001 and 2002, when a seventh truck became inoperable due to engine difficulties Caterpillar refused to pay for additional repairs. Furthermore, according to Trans-Spec, Caterpillar failed to take appropriate remedial steps to address these engine problems once Caterpillar became aware of them. The engine problems also resulted in several of the trucks

---

[2] Two different warranties were issued – one for the engines received in December 1999 and another for the engines received in January 2000, but the relevant language of the two warranties is identical.

leaking oil, sometimes while a truck was at a job site, in violation of environmental laws.

Since the engine problems began, an average of six Trans-Spec trucks have been inoperable at any given time because of engine-related issues. At times, up to ten trucks were out of service at once. Trans-Spec's business requires that it operate all of its trucks six days a week and trucks such as the ones that Trans-Spec uses cannot be rented for temporary use.

Trans-Spec also performed its own in-house repairs on the flywheel housings of sixteen trucks. In some instances, the flywheel housing had to be repaired multiple times on the same trucks. Although Trans-Spec conducted its own repairs, it avers that, pursuant to Caterpillar's warranty, Caterpillar actually should have been performing the repairs. Additionally, although the industry standard, according to Trans-Spec, is to have one mechanic per twenty-two trucks, Trans-Spec was forced to employ three additional mechanics to combat the constant breakdowns. In January 2004, Sterling agreed, upon Caterpillar's demand, to supply transmission mounts for installation in the trucks in an effort to help remedy the problems. The transmission mounts proved to be of no effect.

In June 2004, Caterpillar informed Trans-Spec that it would repair the engine breakdowns. In August 2004, Caterpillar re-iterated that it needed to address the

problems and that the problems were not Trans-Spec's fault. That same month, Trans-Spec initiated the extant suit.

## ANALYSIS

### Summary Judgment Standard

The parameters in which this Court considers a motion for summary judgment are well-defined and familiar. Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996) (internal citations and quotations omitted). The party moving for summary judgment bears responsibility for showing those portions of the discovery record that demonstrate an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

After the moving party has fulfilled this obligation, the burden shifts to the non-moving party to demonstrate that a trier of fact reasonably could find in its favor. DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (citing Celotex, 477 U.S. at 322-25); Ismert & Assoc., Inc. v. New England Mut. Life Ins. Co., 801 F.2d 536, 537

(1st Cir. 1986) (describing the non-moving party's burden as one of demonstrating that there is a need for further exploration of the facts). A party opposing a motion for summary judgment may not rest on mere allegations or denials, but rather, must show that specific facts illustrate a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

In reviewing a motion for summary judgment and the materials offered to support the motion, the role of the Court is not to engage in an analysis of whose evidence is more compelling or credible. Cetronics Fin. Corp. v. El Conquistador Hotel Corp., 573 F.2d 779, 782 (2d Cir. 1978); Peckarsky v. Am. Broad. Co., Inc., 603 F. Supp. 688, 692 (D.D.C. 1984). "[A]t the summary judgment stage, the judge's function is not himself to weigh the evidence." Anderson, 477 U.S. at 249. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." Id. at 255. See also Davis v. Dawson, Inc., 15 F. Supp. 2d 64, 71-72 (D. Mass. 1998); Barretto-Rivera v. Medina-Vargas, 168 F.3d 42, 47 (1st Cir. 1999) ("speculation adverse to the nonmoving party is inappropriate on a motion for summary judgment"); Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990) (in reviewing motions for summary judgment, "evidence of the

nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor"). With these parameters in mind, this Court turns to the parties' assertions.

### Count III – Trans-Spec's Negligence Claim

Count III of Trans-Spec's Second Amended Complaint alleges negligence on the part of Caterpillar for the design, development, assembly, manufacture, inspection, testing, marketing, advertising, and distribution of the C-12 engines purchased by Tans-Spec. Caterpillar defends that Trans-Spec's negligence claim is barred in its entirety because the parties contractually excluded all liability in negligence. In addition, Caterpillar cites to the economic loss doctrine and the unavailability of punitive damages in the instant action as grounds for its motion for summary judgment.[3] Trans-Spec, of course, disagrees and contends that the exclusion of liability is void because the accompanying two year warranty failed of its essential purpose and that the economic loss doctrine is inapplicable.[4]

### Enforceability of the Exclusion of Liability Provision

Mass. Gen. Laws ch. 106, § 2-719 is central to Trans-Spec's position regarding the exclusion of liability. Section 2-719 governs "Contractual Modification or

---

[3]This Court reaches its conclusion based on contract theory and, thus, need not and does not reach the merits of either the economic loss doctrine or punitive damages issues.

[4]Trans-Spec did not provide argument with regard to the availability of punitive damages.

Limitation of Remedy" and states in pertinent part that:

> (1)(a) [an] agreement may provide for remedies in addition to or in substitution for those provided in this Article and may limit or alter the measure of damages recoverable under this Article . . . .
>
> . . .
>
> (2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this chapter.
>
> (3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable . . . .

The independent relationship between § 2-719(2) and § 2-719(3) bears directly on Trans-Spec's claim.

"There can be no doubt that under the law of Massachusetts in the absence of fraud a person may make a valid contract exempting himself from any liability to another which he may in the future incur as a result of his negligence or that of his agents or employees acting on his behalf." Sharon v. City of Newton, 437 Mass. 99, 105, 769 N.E.2d 738, 744 (2002) (quoting Schell v. Ford, 270 F.2d 384, 386) (1st Cir. 1959)) (internal quotation marks and ellipses omitted). Further, under Massachusetts law, a consequential damages exclusion clause – such as the liability exclusion included in Caterpillar's warranty – stands apart from other aspects of the contract and becomes void only if the exclusion is unconscionable. See Canal Elec. Co. v.

Westinghouse Elec. Corp., 406 Mass. 369, 373, 548 N.E.2d 182, 185 (1990). A majority of other jurisdictions follow this approach as well. See Razor v. Hyundai Motor Am., No. 98813, 2006 WL 240746, at *7 (Ill. Feb. 2, 2006) ("This school of thought holds that a limitation of consequential damages must be judged on its own merits and enforced unless unconscionable, regardless of whether the contract also contains a limitation of remedy which has failed of its essential purpose.").

Canal Electric provides helpful guidance. There, the contract included "[limited] repair or replacement remedies, and clauses limiting total liability." Canal Elec., 406 Mass. at 371, 548 N.E.2d at 184. The complaining party asserted that "because the limited repair or replacement remedy failed of its essential purpose . . . it is entitled to all the remedies for breach provided in the Uniform Commercial Code that would otherwise be excluded by the 'Limitation of Liability' clause of the selling policies, including consequential damages." Id. 406 Mass. at 372, 548 N.E.2d at 184. The court found, however, that "[t]he disclaimer of consequential damages is an entirely separate contractual provision from the limited repair or replacement remedy and thus survives the failure of the limited remedy." Id. 406 Mass. at 375, 548 N.E.2d at 186. "'The limited remedy of repair and a consequential damages exclusion are two discrete ways of attempting to limit recovery for breach of warranty . . . . The former survives unless it fails of its essential purpose, while the latter is

valid unless it is unconscionable.'" Id. (quoting Chatlos Syss. v. Nat'l Cash Register Corp., 635 F.2d 1081, 1086 (3d Cir. 1980)).

The Canal Electric court emphasized the importance of providing commercial parties with the ability to allocate risk, noting that § 2-719 was "'intended to encourage and facilitate consensual allocations of risks associated with the sale of goods,' as long as minimum adequate remedies are available to a party injured by a breach." Id. 406 Mass. at 373, 548 N.E.2d at 185 (quoting V-M Corp. v. Bernard Distrib. Co., 447 F.2d 864, 869 (7th Cir. 1971)). Only an "independent" relationship between § 2-719(2) and § 2-719(3) satisfies this purpose. "If a limited remedy has not failed of its essential purpose, that is of course the buyer's only remedy, by definition – this is what it means to have a limited remedy. So in this circumstance a disclaimer of limited damages would be of no effect because it would be redundant. If . . . the disclaimer of limited damages ought not to be enforced when the limited remedy *has* failed of its essential purpose, the language would never have any effect." Razor, 2006 WL 240746, at *10. Thus, only the "independent" approach makes exemption of consequential damages effective as a consensual allocation of risk. This approach also insures a minimum adequate remedy for the buyer. If the limited remedy does fail, § 2-719(2) provides the buyer with non-consequential damages as found in the Uniform Commercial Code ("UCC"). See Canal Elec., 406 Mass. at

375, 548 N.E.2d at 186. Therefore, even if the parties added an enforceable limitation of liability clause excluding consequential damages, if the limited remedy failed, a buyer would still have recourse under the UCC for non-consequential damages.

Accordingly, the agreed exclusion of liability provision is valid and enforceable regardless of whether the two year warranty failed of its essential purpose. As in Canal Electric, Caterpillar's "consequential damages disclaimer . . . was a reasonable accommodation between two commercially sophisticated parties." 406 Mass. at 374, 548 N.E.2d at 185. It cannot be disputed that both Tans-Spec and Caterpillar are commercially sophisticated parties. Trans-Spec's assent to the contract represented a "clear intent to accept the risk of consequential damages." Id. Trans-Spec's negligence claim is, therefore, barred by contract unless the exclusion of liability provision is unconscionable.

### Unconscionability

Trans-Spec maintains that the contracted exclusion of liability for negligence is unconscionable. The issue of unconscionability "is one of law for the court, and the test is to be made as of the time the contract was made." Zapatha v. Dairy Mart, Inc., 381 Mass. 284, 291, 408 N.E.2d 1370, 1375 (1980). Under Massachusetts law, "[a] court will declare a contract unconscionable in order to prevent oppression or unfair surprise." Boston Helicopter Charter, Inc. v. Agusta Aviation Corp., 767

11

F.Supp. 363, 374-75 (D. Mass. 1991) (citing Mass. Gen. L. Ann ch. 106, § 2-302 comment 1 (West 1990)); Zapatha, 381 Mass. 292, 408 N.E.2d 1370). The question of oppression is, in turn, "directed to the substantive fairness to the parties of permitting the [contract] provisions to operate as written." Zapatha, 381 Mass. at 295, 408 N.E.2d at 1377.

Trans-Spec has not demonstrated any oppression by Caterpillar. Massachusetts law allows for the exclusion from liability of negligence through contract. See Sharon, 437 Mass. at 105, 796 N.E.2d at 744. "A party may, by agreement, allocate risk and exempt itself from liability that it might subsequently incur as a result of its own negligence." Id. Such exclusions can reflect "sensible business judgments." Minassian v. Ogden Suffolk Downs, Inc., 400 Mass. 490, 493, 509 N.E.2d 1190, 1192 (1987). More specifically, "limiting damages . . . where the two parties are sophisticated business entities, and where consequential damages . . . could be extensive, is a reasonable business practice." Deerskin Trading Post, Inc. v. Spencer Press, Inc., 398 Mass. 118, 124, 495 N.E.2d 303, 307 (1986). Both parties are sophisticated. Both parties negotiated the subject contract provisions at arms-length. Both parties knew that extensive consequential damages could arise as a result of the consummation of this contract and had the ability to negotiate the allocation of that risk. It is not, therefore, substantively unfair to permit a negotiated and lawful

exclusion of liability provision to operate as written.

Courts "view the question of unfair surprise as focused on the circumstances under which the agreement was entered into." Zapatha, 381 Mass. at 293, 408 N.E. 2d at 1376-77. Trans-Spec's averment that it suffered unfair surprise and oppression because Caterpillar misrepresented the condition of the engines and knew of the engine defects prior to delivery is unconvincing.

First, Trans-Spec provides no evidence that at the time of contract Caterpillar made misrepresentations to Trans-Spec that would cause "an absence of meaningful choice." Zapatha at 294 n. 13, 408 N.E.2d at 1377 n. 13. In support of its position, Trans-Spec vaguely cites to deposition testimony of mostly non-Caterpillar employees that nowhere demonstrates either an affirmative misrepresentation nor Trans-Spec's reliance thereon.

Second, Trans-Spec relies on Caterpillar's patent, number 6,065,757, for a new flywheel housing to demonstrate that Caterpillar knew of the C-12's defects before providing them to Trans-Spec. At most, patent 6,065,757 demonstrates that Caterpillar continued to develop and make improvements to its products. When Caterpillar's inventors contrived a patentable improvement to the flywheel housing, they appropriately patented the new improvement, describing its improved function to distinguish it from the earlier patent. Caterpillar's effort to improve on a piece of

equipment can not be viewed as evidence that unimproved equipment was negligently designed or manufactured. See Fed. R. Evid. 407. If that were the case, litigators would flock to the U.S. Patent office, waiting to see when General Motors, Microsoft, or General Electric made improvements to their cars, software, or refrigerators, and then walk to court with a new lawsuit claiming injury for what must surely have been a negligent or reckless defect in the unimproved product. Such an argument is, of course, nonsensical.

Third, Trans-Spec avers that the exclusion of liability is unconscionable because it deprives Trans-Spec of minimum, adequate remedies. Trans-Spec correctly asserts that "[e]ven in the absence of unfair surprise . . . a court must consider whether the terms of the contract are oppressive and leave the allegedly disadvantaged party without adequate remedy." Andover Air Ltd. P'ship v. Piper Aircraft Corp., No. 87-0532-Z, 1989 WL 110453, at * 9 (D. Mass. Jan. 4, 1989) (citing Zapatha, 381 Mass. at 291-92, 408 N.E.2d at 1376-77). Unlike the plaintiff in Andover Air, however, Trans-Specs has not been deprived of a fair remedy. The facts in the instant case are incompatible with the rationale that made the Andover Air contract unconscionable. There, the exclusion of liability, which had an "additional exclusion of general damages," was considered unfair because the contract concerned an airplane. Id. By nature, "airframe failures are potentially and foreseeable

14

catastrophic." Id. The exclusion would only hold the manufacturer "to the replacement or repair of [a part] costing perhaps tens of dollars when that defective part has allegedly caused damage to the aircraft in excess of $100,000." Id. No such exclusion of general damages is present here and Trans-Spec negotiated and retained adequate minimum remedies under the warranty as well as through the UCC.

As previously discussed, the liability exclusion still left Trans-Spec with remedies under the UCC for non-consequential damages. Trans-Spec's own failure to exercise its rights to those remedies within the applicable statute of limitations does not extinguish the adequate minimum remedies available at the time the parties entered into the agreement.[5] Trans-Spec, therefore, was not deprived of minimum, adequate remedy and the exclusion of liability is not unconscionable.

### Trans-Spec's Alternative Claim for Non-Consequential Damages

As detailed above, this Court has found that an exclusion of liability provision, negotiated at arms-length between sophisticated parties and not otherwise unconscionable, is enforceable even if warranties contained within the same contract fail of their essential purpose, because the two are independent components of the underlying contract. Trans-Spec offers, in response to Caterpillar's economic loss

---

[5]See this Court's Report and Recommendation of January 31, 2006, subsequently adopted by Judge Lindsay on February 23, 2006, dismissing Count I (claims for breaches of warranties of merchantability and fitness and express warranties) as barred by the applicable statute of limitations.

grounds for dismissal, that even if the exclusion of liability provision is enforceable, Trans-Spec may recover consequential damages under the UCC if the warranty failed of its essential purpose.[6] While Trans-Spec's theory would have substantial support were it seeking non-consequential damages, Trans-Spec's argument becomes circular in light of this Court's findings above.

As previously discussed, both the limited remedy provision and exclusion of liability provision of a contract are independent of each other. An enforceable exclusion of liability for negligence would have no independent effect if it could be circumvented by creating a right to proceed with a negligence claim when a limited remedy provision failed of its essential purpose. Trans-Spec cannot accept Caterpillar's exclusion of liability and later claim a right to assert that same excluded liability based on the failure of a separate and independent provision in the contract. Trans-Spec took that risk when it negotiated and agreed to the contract. Therefore, because the contract specifically precludes recovery for negligence, Trans-Spec's claim, even if the limited remedy failed it essential purpose, may not succeed as a matter of law.

---

[6] This Court makes no determination as to whether consequential damages would be available to Trans-Spec under the UCC in the absence of an exclusion of liability provision.

16

## CONCLUSION

Caterpillar has met its burden for summary judgement, demonstrating an absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Likewise, the burden now shifted, Trans-Spec has not successfully fulfilled its obligation to demonstrate that a trier of fact reasonably could find in its favor. DeNovellis, 124 F.3d at 306. Without weighing the credibility of the evidence and drawing all justifiable inferences in favor of the non-moving party, Trans-Spec, this Court finds no genuine issue of material fact and concludes that Caterpillar is entitled to judgment as a matter of law. Anderson, 477 U.S. at 249. Therefore, for the reasons articulated above, this Court RECOMMENDS that the District Court ALLOW Caterpillar's motion for summary judgment.

SO ORDERED.

12/1/06
Date



United States Magistrate Judge

17

## NOTICE TO THE PARTIES

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrate Judges in the United States District Court the District Court of Massachusetts, any party who objects to this proposed Report and Recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of the Report and Recommendation. The written objections must specifically identify the proportions of the proposed findings, recommendations or report to which objection is made and the basis for such objection. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 273 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 687 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111 (1986).