UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ───────────────────────── )<br>TRANS-SPEC TRUCK SERVICE INC., )<br>D/B/A TRUCK SERVICE )<br>　　　　　　　　　 )<br>　　　　　　 Plaintiff, )<br>v. 　　　　　　　　 )<br>　　　　　　　　　 )<br>CATERPILLAR INC. 　　　 )<br>　　　　　　　　　 )<br>　　　　　　 Defendant. )<br>───────────────────────── ) | CIVIL ACTION NO.:04-11836RCL |

## PLAINTIFF TRANS-SPEC TRUCK SERVICE, INC.'S OBJECTION TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON *DEFENDANT CATERPILLAR INC.'S MOTION FOR SUMMARY JUDGMENT ON ALL REMAINING CLAIMS*

Plaintiff Trans-Spec Truck Service, Inc. ("Trans-Spec"), hereby moves the Court to reject the Magistrate Judge's Report and Recommendation on Defendant Caterpillar Inc.'s ("Caterpillar"), *Motion for Summary Judgment on all Remaining Claims* ("Motion for Summary Judgment"), pursuant to Fed. R. Civ. P. 72(b) and Rule 3(b) of the Rules for United States Magistrate Judges in the United States District Court of the District of Massachusetts ("Magistrates Rule 3(b)").[1]

## I.    BACKGROUND

### A.    Factual History

In December 1999 and January 2000, Trans-Spec took delivery of 22 heavy-duty, custom built trucks to be used by Trans-Spec in its oil delivery service and dump trailer operations. Caterpillar's Statement of Undisputed [sic] Material Facts ("Caterpillar Statement"), ¶¶ 3, 5. Caterpillar's C-12 engine was an appropriate engine for fuel hauler and dump trailer operations

---

[1] Hereinafter, the Magistrate Judge's Report and Recommendation is cited as Rec. at _. Trans-Spec specifically objects to pages 7 through 17 of the Magistrate Judge's Report recommending summary judgment in favor of Caterpillar as to Count III of Trans-Spec's Second Amended Complaint. Count III alleges negligence on the part of Caterpillar for the design, development, assembly, manufacture, inspection, testing, marketing, advertising, and distribution of the C-12 engines purchased by Trans-Spec. Trans-Spec incorporates by reference herein *Trans-Spec Truck Service Inc.'s Opposition to Caterpillar Inc.'s Motion for Summary Judgment on all Remaining Claims and Request for Oral Argument* ("Opposition"), filed with this Court on April 18, 2006.

in the New England area where Trans-Spec operates its trucks. Caterpillar Rule 30(b)(6) Deposition, September 21, 2005 ("Caterpillar depo. Day 1"), 134.12-15, attached as Ex. A.[2] Caterpillar C-12 engines powered all 22 new Trans-Spec trucks. Caterpillar Statement, ¶¶ 3, 5.

Caterpillar made repeated representations to Trans-Spec about the performance and capabilities of its C-12 engines as well as the applicable warranties. Joseph M. Howard, Jr. Deposition, 66.16-70.16; 109.15-111.19, attached as Ex. C (Trans-Spec's extensive conversations with Caterpillar regarding engine specifications and performance, the terms of "the warranty," and "who would stand behind their warranty the best"); Albert Cardoza ("Cardoza") Deposition, 49.4-51.15, attached as Ex. D (Caterpillar agent meets with Trans-Spec regarding the specifications and performance of the C-12); Ralph A. Lind, Jr. Deposition, 66.1-67.4, 122.23-125.14, attached as Ex. E (extensive, multiple meetings with Caterpillar agent Cardoza regarding engine capabilities and performance; computer simulations and other information shown to or given to Trans-Spec); Harry Calderbank ("Calderbank") Deposition, 37.11-38.23, attached as Ex. F (Caterpillar simulations and other information given to or discussed with Trans-Spec during the specification process); Donald Medbery Deposition, 29.21-36.19; 38.4-24; 41.15-24, attached as Ex. G (Caterpillar agent and Caterpillar employee make representations about the capabilities, performance, and warranties on the C-12 engines).

In sum, around the time Trans-Spec contemplated what types of engines to purchase, two employees of Caterpillar's agent and local distributor, Cardoza and Calderbank, repeatedly met with Trans-Spec personnel to make representations regarding the capabilities of the C-12 engine and warranties associated with it as well as to show Trans-Spec computer simulations, on Caterpillar software, that the C-12 was appropriate for its trucks. *Id.* Not only did Cardoza and Calderbank participate frequently in the determination of the trucks' configuration, a regional Caterpillar representative based out of Caterpillar's Hartford, Connecticut office also made

---

[2] All exhibits are attached to *Appendix Of Exhibits To Trans-Spec Truck Service, Inc.'s Opposition To Caterpillar Inc.'s Motion For Summary Judgment And Affidavit Of Christian G. Samito, Esq.*, filed with this Court on April 18, 2006 and incorporated by reference herein.

representations regarding the capabilities of and warranties associated with the C-12 engine. Medbery depo., 29.21-36.19; 38.4-24; 41.15-24, Ex. G.

As part of its purchase, at or around the time of delivery, Trans-Spec received from Caterpillar an extended warranty "against defects in materials or workmanship under normal use" for five years or 500,000 miles, according to the terms and conditions specified on the back of the Registration Certificate attached as Ex. H. Caterpillar also agreed to reimburse Trans-Spec for any "failures due to defects in materials or workmanship under normal use" and to "pay 100% of the components and labor charges for covered failures, with no deductible charges," for a period of five years/500,000 miles, see Ex. H. Thus, Caterpillar offered Trans-Spec a warranty that its engines would be free from "defects in materials or workmanship under normal use" during a five year period and represented that if any defects in materials or workmanship arose during that specified time, Caterpillar would pay for the necessary repairs and reimburse for the failures. See Ex. H. As part of its purchase, at or around the time of delivery, Trans-Spec also received a concurrent two year warranty, attached as Ex. I, pursuant to which "Caterpillar Inc. or any of its subsidiaries ('Caterpillar') warrants new . . . C-12 . . . engines sold by it for use in powering on-highway vehicles . . . to be free from defects in material and workmanship" for "24 months after date of delivery to the first user."[3]

According to Caterpillar's records and those of one of its authorized dealers, Minuteman Trucks, Inc., the first of many flywheel housing problems Trans-Spec suffered manifested itself in November 2001.[4] See Repair Records attached as Exhibit J. At first, Caterpillar paid for the corresponding work performed on the engines in connection with the flywheel housing failures pursuant to the five year/500,000 mile warranty and the two year warranty at Exhibits H and I.

---

[3] In describing the five year/500,000 mile warranty in the text of the two year warranty, Caterpillar states that "parts are warranted against defects in material and workmanship for 60 months or 500,000 miles . . . whichever occurs first after date of delivery to the first user." Ex. I. **By Caterpillar's own text, the five year/500,000 mile warranty is more than simply a "repair or replace" warranty but one that warrants against defects in material or workmanship for five years or 500,000 miles.** As noted in Caterpillar Statement, Paragraph 7, two versions of the two year warranty exist, one applicable to engines delivered before January 1, 2000 and one applicable to engines delivered on or after that date. As Caterpillar also notes, the relevant language is identical in each.

[4] Trans-Spec instituted this lawsuit in August 2004.

Caterpillar Statement, ¶ 10 (first phrase; the remainder of this paragraph is denied).   The Registration Certificate attached as Ex. H provides reimbursement for covered components' failures "due to defects in Caterpillar materials or workmanship under normal use."; see also Ex. I ("Caterpillar Inc. or any of its subsidiaries ('Caterpillar') warrants new . . . C-12 . . . engines sold by it for use in powering on-highway vehicles . . . to be free from defects in material and workmanship" for "24 months after date of delivery to the first user" and explaining that Caterpillar would "correct the defect" "[i]f a defect in materials or workmanship is found during the *standard warranty* period[.]" (emphasis in original)).   Thus, **by authorizing repair and replacement for Trans Spec's initial flywheel housing problems, Caterpillar admitted: a) defects in Caterpillar materials or workmanship caused the failures[5]; b) Trans-Spec operated the trucks within normal parameters; and, c) the two year and five year/500,000 mile warranties on defects in materials of workmanship on Trans Spec's engines applied.** See also Caterpillar depo. Day 1, 207.3-208.18, Ex. A.   Unknown to Trans-Spec at the time, in choosing to continually replace one defective part on Trans-Spec's engines with a part containing the same defects, and not immediately and effectively rectifying the defect on all twenty two of Trans-Spec's engines, **Caterpillar repeatedly breached both the two year and the five year/500,000 mile warranties and failed to perform pursuant to either**. Caterpillar failed "to correct the defect," as mandated by the two year warranty at Ex. I or "repair" the failures pursuant to the five year/500,000 mile warranty at Ex. H.

Beginning in **2003**, moreover, **Caterpillar openly breached its five year/500,000 mile warranty** by refusing to further reimburse for work performed on the flywheel housings on the engines in Trans-Spec's trucks.   Caterpillar Rule 30(b)(6) Deposition, September 22, 2005 ("Caterpillar depo. Day 2"), 14.4-9, attached as Ex. K; see also Caterpillar depo. Day 1, 207.3-208.18, Ex. A.   The Caterpillar employees who stopped reimbursement for Trans-Spec's flywheel housing failures did not consult with any engineers to confirm whether defective

---

[5] See also Caterpillar Depo. Day 2, 76.12-14, Ex. K: "The decision to reimburse is based upon whether or not the failure is the result of a defect in CAT material or workmanship."

Caterpillar materials or workmanship caused Trans-Spec's problems prior to making their decision, nor did they consult with Caterpillar's Warranty Administration Department. Caterpillar depo. Day 2, 52.7-60.23, 68.15-23, Ex. K.  To this day, Caterpillar does not offer a permanent, reliable fix for these problems.  Caterpillar depo Day 1, 170.1-175.13, Ex. A.

Trans-Spec's expert, Dr. Ekchian, concluded *inter alia* that: 1) Caterpillar knew the aluminum flywheel housings used in its C-12 engines were flawed; 2) the design of the flywheel housings rendered the Caterpillar C-12 engine model defective; 3) Caterpillar had no basis for rejecting Trans-Spec's warranty claims; and, 4) Caterpillar was aware of alternatives to fix the defect including use of cast iron flywheel housings, a flywheel housing disclosed in a Caterpillar patent application dated in July 1998 (prior to Trans-Spec's purchase of the trucks), or the use of a metal plate under bolt heads as suggested in a Caterpillar document.  See Dr. Ekchian Report (without exhibits) attached as Ex. L.

Patent Number 6,065,757, attached as Exhibit M and filed by Caterpillar on July 2, 1998 – a year and a half before Trans-Spec took delivery of the trucks – notes that in aluminum flywheel housings such as the ones on Trans-Spec's engines, "[d]uring normal operation of an engine, cyclic temperature changes can cause thermal expansion and contraction of various components at varying rates.  The use of components made of different materials adds to the relative movement between components.  For example, the flywheel housing experiences thermal expansion greater than the thermal expansion of a cylinder block causing relative movement between the flywheel housing and the cylinder block.  The relative movement . . . **can cause the flywheel housing** or seal to leak, **crack or can destroy connecting bolts used for connecting the flywheel housing to the cylinder block**." (emphasis added).  Patent Number 6,065,757

precisely foretold what happened on the C-12 engines in Trans-Spec's trucks.[6]

Trans-Spec's second expert, Dr. Service, concluded *inter alia* that the flywheel housing and the bolted connection between the housing and the engine block revealed inherent design defects including overstressing of the flywheel housings under normal operating conditions and an under-designed bolted connection resulting from improper joint design. These defects, according to Dr. Service, could be remedied by proper engineering design and analysis. See Dr. Service Report (without exhibits) attached as Ex. N.

After Trans-Spec began suffering chronic flywheel housing failures on Caterpillar's C-12 engines, **Caterpillar repeatedly assured Trans-Spec that Caterpillar would compensate it for all damages it suffered in connection with the flywheel house failures and Caterpillar orally waived any exclusions of liability in any warranty.** Trans-Spec's Amended Answers to Interrogatory Nos. 10 and 11, attached as Ex. B (Caterpillar officers Troy Guidotti ("Guidotti"), and Stephen Schoening ("Schoening"), and Caterpillar agents Cardoza and Calderbank, waive exclusions); Affidavit of Joseph M. Howard dated June 2005, ¶ 3, attached as Ex. O. Soon after the flywheel housings began to fail in late 2001, Cardoza and Calderbank repeatedly told Trans-Spec that it would be made whole for the damage it suffered as a result of the defective C-12 engines. Trans-Spec's Amended Answer to Interrogatory No. 10, No. 11, Ex. B. In June 2004, officers of Trans-Spec attended a meeting to address the defective engines. Howard depo., 231.14-23, Ex. C. This meeting included, among others, Caterpillar's Truck Engine District Manager for the New England region, Guidotti. Howard depo, 231.14-23; 233.18-234.6, Ex. C. During this meeting, Guidotti told Trans-Spec that "Caterpillar will make you whole," and assured that the problems with the C-12 engines were not Trans-Spec's fault. Howard depo.,

---

[6] Patent Number 6,065,757 represents more than a simple improvement for which Caterpillar sought patent protection, but see Rec. at 13-14. Patent Number 6,065,757 represents **Caterpillar's admission a year and a half before Trans-Spec took delivery of the trucks that aluminum flywheel housings were susceptible to the very problems Trans-Spec experienced on its Caterpillar C-12 engines. Nonetheless, Caterpillar subsequently represented to Trans-Spec – as well as to this Court – that Trans-Spec or some other entity must have caused the problems and failures (as foretold and described exactly in Patent Number 6,065,757) that Trans-Spec repeatedly suffered on its Caterpillar C-12 engines.** Patent Number 6,065,757 even posits a fix and suggests that use of components made of the same material would have eliminated Trans-Spec's flywheel housing failures. Had Caterpillar simply corrected the defect on Trans-Spec's engines, this entire litigation could have been avoided.

238.14-239.15, Ex. C; Trans-Spec's Amended Answer to Interrogatory No. 10, No. 11, Ex. B.  In August 2004, officers of Trans-Spec again attended a meeting.  Howard depo., 247.18-248.2, Ex. C.  Along with Guidotti, Caterpillar Regional Manager Schoening attended and explicitly stated, "this is absolutely not your [Trans-Spec's] fault and Caterpillar will make you whole."  Howard depo., 250.13-19, Ex. C.

**In sum, the record shows that Caterpillar sold Trans-Spec engines it knew or should have known to be defective; provided warranties on those engines, including warranties against defects in materials or workmanship for two years and for five years/500,000 miles; authorized initial repairs that made it appear to Trans-Spec as if Caterpillar had honored its two year and five year/500,000 mile warranties as to Trans-Spec's flywheel housing failures; disclaimed warranties which contained unconscionable language and which failed of their essential purpose; and, failed to fulfill its promise to make Trans-Spec whole..**

**B.    Procedural History**

Trans-Spec brought this suit against Caterpillar on August 23, 2004 alleging breach of warranty and violation of Mass. Gen. Laws c. 93A ("Chapter 93A").  Trans-Spec amended its Complaint on August 26, 2004 so as to correct a clerical mistake in naming one of the parties. Trans-Spec subsequently sought leave from the Court to amend its Complaint to assert a claim of negligence; the Court granted leave to do so on May 20, 2005.

On January 31, 2006, Magistrate Judge Joyce London Alexander submitted her Report and Recommendation regarding Caterpillar's *Motion to Dismiss the Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)*.  The Magistrate Judge recommended dismissing Counts I and II of the Second Amended Complaint, regarding Caterpillar's breach of warranty and violation of Chapter 93A, on statute of limitation grounds.  On February 9, 2006, Trans-Spec filed its Objection to the Magistrate Judge's Report and Recommendation.  In this Objection, Trans-Spec sought leave to amend its Complaint.  On February 22, 2006, Caterpillar filed its Reply to Trans-Spec's Objection.  On February 23, 2006, Judge Reginald C. Lindsay adopted the Magistrate Judge's Report and Recommendations and dismissed Counts I and II of the Second

Amended Complaint. The District Court did not address the Motion to Amend contained in Trans-Spec's Objection. Accordingly, Trans-Spec moved on March 1, 2006 for leave to amend its Complaint and for the Court to alter or amend its order dated February 26, 2006. On June 9, 2006, the Magistrate Judge denied Trans-Spec's Motion to Amend. On June 14, 2006, Trans-Spec filed an Objection to the Magistrate Judge's Order on the grounds that the Magistrate Judge: 1) **ignored binding Supreme Court and First Circuit precedent** to apply the wrong standard regarding Trans-Spec's motion to amend; 2) **ignored binding First Circuit precedent** regarding the applicability of Fed. R. Civ. P. 59(e) to her prior ruling dismissing Counts I and II of Trans-Spec's Complaint and **failed to correct clear errors of law as to binding First Circuit and Massachusetts law** in that ruling; and, 3) erroneously found that Trans-Spec failed to demonstrate good cause under Fed. R. Civ. P. 16(b) to warrant amendment of its Complaint. Trans-Spec's June 14, 2006 Objection is still pending. On December 1, 2006, the Magistrate Judge granted Caterpillar's Motion for Summary Judgment.

## II.    **OBJECTIONS AND ARGUMENT**

### A.    **Standard of Review**

If a party timely objects to the Magistrate Judge's recommendations or findings, the District Court must make a *de novo* determination of the objectionable portions of the Magistrate Judge's recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Magistrates Rule 3(b). The District Court may then accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendations or findings. *Id.* Moreover, the District Court has discretion to completely ignore the Magistrate Judge's recommendations. *Moreau v. Local Union No. 247*, 851 F.2d 516, 518 (1st Cir. 1988) (district court granted a motion after rejecting magistrate's recommendation that it be denied). The District Court also has discretion to consider additional evidence not presented to the Magistrate Judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Magistrates

Rule 3(b); see also *Carpet Group International v. Oriental Rug Importers Association, Inc.*, 227 F.3d 62, 70 (3d Cir. 2000).

**B.    The Magistrate Judge Erred in Her Ruling Because Caterpillar Fails to Meet its Summary Judgment Burden and Improperly Raises Issues Appropriate for Jury Determination.**

"A party moving for summary judgment assumes the burden of affirmatively demonstrating that there is no genuine issue of fact on every relevant issue raised by the pleadings. This is so even though, as a defendant, he would have no burden if the case were to go to trial." *Mack v. Cape Elizabeth School Bd.*, 553 F.2d 720, 722 (1st Cir. 1977). Factual disputes are to be determined in favor of the non-moving party, Trans-Spec. *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990). As evidenced by Trans-Spec's Response to Caterpillar's Statement as well as Trans-Spec's Statement of Supplemental Facts, Caterpillar has failed to meet its burden.

Moreover, a substantial portion of Caterpillar's argument is fact-sensitive. Throughout its Motion for Summary Judgment, and particularly at paragraphs 11, 12, 22, 23, 24, and 25 of its Statement, Caterpillar argues for inferences as to the lack of credibility or lack of accuracy of firsthand knowledge held by Trans-Spec. Credibility or assertions as to lack of credibility are not a basis for summary judgment. Instead, in a motion for summary judgment, the Court must review "the entire record 'in the light most flattering to the nonmovant and indulge[] all reasonable inferences in that party's favor." *Cadle Company v. Hayes*, 116 F.3d 957, 959 (1st Cir. 1997); *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 581 (1st Cir. 1994). "Only if the record, viewed in that manner **and without regard to credibility determinations**, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle Company*, 116 F.3d at 959 (emphasis added); *Greenburg v. Puerto Rico Maritime Shipping Auth.*, 835 F. 2d 932, 936 (1st Cir. 1987). As the *Greenburg* court held,

> Fed. R. Civ. P. 56 does not ask which party's evidence is more plentiful, or better credentialed, or stronger. Rather, the rule contemplates an abecedarian, almost one dimensional, exercise geared to determining whether the nonmovant's most favorable evidence and the most flattering inferences which can reasonably be drawn therefrom are sufficient to create any authentic question of material fact. Among other things, apart from that which may be inherently incredible, the nonmoving party is entitled 'to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts

in [the evidence] resolved favorably to him[.]'  The precincts patrolled by Rule 56 admit of no room for
credibility determinations, no room for the measured weighing of conflicting evidence such as the trial
process entails, no room for the judge to superimpose his own ideas of probability and likelihood (no matter
how reasonable those ideas may be) upon the carapace of the cold record.

*Greenburg*, 835 F.2d at 936 (citations omitted).  Critically, the Magistrate Judge recognized that

the Court is not to engage in credibility determinations at the summary judgment state, see Rec.

at 6-7, but then erred by ignoring this mandate.  **Trans-Spec has a right to jury determination**

**of material facts in dispute.  Trans-Spec has a right to jury determination, *inter alia*, as to**

**whether Caterpillar waived its exclusions, made misrepresentations, and whether**

**Caterpillar's warranties failed of their essential purpose,** as argued below.  Accordingly, this

Court should deny Caterpillar's Motion for Summary Judgment.

> ### C.    The Magistrate Judge Erred By Ignoring Binding Massachusetts Law To Hold That Caterpillar's Purported Exclusion Bars Trans-Spec's Remaining Claims.

The Magistrate Judge erred by adopting Caterpillar's claim that Caterpillar's purported

exclusion of liability bars Trans-Spec's remaining claims.[7]  As shown above, Caterpillar a) knew

or should have known that its C-12 engines were defective prior to Trans-Spec's purchase; b)

made misrepresentations about its C-12 engines; and, c) ignored and otherwise willfully breached

its warranty obligations.  In choosing to continually replace a defective part on Trans-Spec's

engines with a part containing the same defects, and in not rectifying the defect on all twenty two

of Trans-Spec's engines, Caterpillar repeatedly breached its two year and five year/500,000 mile

warranties and made other misrepresentations.  Caterpillar failed "to correct the defect," as

mandated by the two year warranty at Ex. I or "repair" the failures as called for in the five

---

[7] The disclaimer on which the Magistrate Judge bases her Report and Recommendation reads, "**CATERPILLAR EXCLUDES ALL LIABILITY FOR OR ARISING FROM ANY NEGLIGENCE ON ITS PART OR ON THE PART OF ANY OF ITS EMPLOYEES, AGENTS, OR REPRESENTATIVES IN RESPECT OF THE MANUFACTURE OR SUPPLY OF GOODS OR THE PROVISION OF SERVICES RELATING TO THE GOODS.**" Exhibit I (emphasis in original).  **Caterpillar argued in its *Opposition to the Plaintiff's Motion to Amend the Complaint* filed on April 12, 2005 that this provision barred any negligence claim brought by Trans-Spec; the Magistrate Judge expressly disfavored Caterpillar's argument and allowed Trans-Spec to amend its Complaint so as to add a count for negligence,** see Order dated May 20, 2005; compare Rec. at 7-17.

year/500,000 mile warranty at Ex. H.  **Because Caterpillar unfairly surprised Trans-Spec, imposed on Trans-Spec a contract rendered oppressive pursuant to its misrepresentations about the C-12 engines and subsequent repairs to them, withheld prior knowledge of the defects from Trans-Spec, left Trans-Spec without a fair quantum of remedy by disclaiming negligence and liability on a part it knew to be defective, and then disclaimed its warranty obligations altogether, Caterpillar's purported exclusion of liability is void as unconscionable**.  Moreover, because Caterpillar failed "to correct the defect" or "repair" the failures, the two-year and five-year/500,000 mile warranties failed of their essential purpose and any exclusion of liability therein is void.  Moreover, the separate five year/500,000 mile extended warranty received by Trans-Spec from Caterpillar contains no exclusion of liability for Caterpillar's negligence.  See Ex. H.

> i.    **Caterpillar's purported disclaimer is unenforceable because of its oppressive and unconscionable nature.**

The oppressive and unconscionable nature of Caterpillar's purported exclusion warrants its nullification.  Mass. Gen. Laws Ann. ch. 106, § 2-302(1) ("If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contact, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."); *Somerset Savings Bank v. Chicago Title Insurance Company*, 420 Mass. 422, 431-32 (1995) (rejecting a disclaimer of negligence after "balancing . . . the freedom of contract against possible harm to the public resulting from allowing such exculpation"); *Omni Flying Club, Inc. v. Cessna Aircraft Co.*, 366 Mass. 154, 159-160 (1974) (rejecting a disclaimer of negligence where the disclaimer appeared, as here, "in [Caterpillar's] own standard warranty provision which was not signed by either party . . . and which the plaintiff may or may not have had a copy of at the time the agreement was signed."); see also *Andover Air Limited Partnership v. Piper Aircraft Corp.*, 1989 U.S. Dist. LEXIS 7345, *19, 21 (D. Mass. 1989) ("Massachusetts courts have required that a contract clause resulting in unfair surprise and

oppression of the allegedly disadvantaged party will be declared unconscionable"); *Zapatha v. Dairy Mart Inc.*, 381 Mass. 284, 292-92, 294 (1980); *Lechmere Tire & Sales Co. v. Burwick*, 360 Mass. 718, 721 n. 3 (1972) (provisions "attempting to exculpate [Caterpillar] from the consequences of its own negligence . . . are not viewed with favor[.]"); *Chase Commercial Corporation v. Owen*, 32 Mass. App. Ct. 248, 253 (1992) ("contracts are enforceable unless they are unconscionable, offend public policy, or are shown to be unfair in the particular circumstances"); *Sosik v. Albin Marine, Inc.*, 2003 Mass. Super. LEXIS 160, *19-23 (finding disclaimer unconscionable and denying summary judgment); <u>see</u> <u>also</u> Mass. Gen. Laws Ann. ch. 106, § 2-719(3) ("Consequential damages may be limited or excluded unless the limitation of exclusion is unconscionable[.]").  Moreover, the First Circuit notes that exclusions for liability are generally enforceable between commercial parties but recognizes, **"Massachusetts law provides, however, that the damages limitation provision is not enforceable if [Caterpillar] either willfully repudiated or was willfully dilatory in performing its warranty obligations."** *Cambridge Plating Co., Inc. v. Napco, Inc.*, 85 F.3d 752, 768 (1996).  Courts determine unconscionability on a case by case basis. *Zapatha*, 381 Mass. at 292-93.

Trans-Spec suffered unfair surprise and oppression at the hands of Caterpillar at the time it purchased the engines.  Trans-Spec had no reason to know about the engines' negligent design and manufacture, especially in light of (mis)representations made by Caterpillar and Caterpillar's agents.[8]  <u>See</u> above at p. 2.  The unfair surprise wrought on Trans-Spec reaches new heights of oppression when one considers that Caterpillar knew of the engine defects well before Trans-Spec ordered the trucks and at least a year and a half before Trans-Spec took delivery of the trucks, see Exs. L, M.  Caterpillar did not inform Trans-Spec of the negligent design and manufacture of the engines such that Trans-Spec knowingly chose to waive the damages caused

---

[8] Misrepresentation renders a contract unconscionable. *Waters v. Min Ltd.*, 412 Mass. 64, 68 (1992). "There can be no doubt that under the law of Massachusetts **in the absence of fraud** a person may make a valid contract exempting himself from any liability to another which he may in the future incur as a result of hs negligence or that of his agents or employees acting on his behalf." *Sharon v. City of Newton*, 437 Mass. 99, 105 (2002) (emphasis added). **Here, Caterpillar affirmatively misrepresented the capabilities and reliability of its C-12 engine and failed to disclose the C-12 engine's negligent design and manufacture.**

by Caterpillar's negligence. Instead, Caterpillar was "bragging that engine up like there was no tomorrow," Medbery depo., 41.15-24, Ex. G, even while it knew of the C-12's deeply flawed nature. These circumstances created "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party" such that oppression and unconscionability exists. *Zapatha*, 381 Mass. at 294 n. 13.[9] Making matters worse, Caterpillar willfully breached its warranties and left Trans-Spec holding meaningless pieces of paper and 22 defective engines.

In nullifying a disclaimer against incidental and consequential damages in a contract between two commercial parties, the *Andover Air Limited* court held that pursuant to Massachusetts law, there must "be at least a fair quantum of remedy for breach [and] any clause purporting to modify or limit the remedial provisions . . . in an unconscionable manner is subject to deletion." *Andover Air Limited*, 1989 U.S. Dist. LEXIS 7345, at *19. Despite the commercial sophistication of both parties in the *Andover Air Limited* case, as well as the inability of the plaintiff to sustain a claim of unfair surprise because of the "distinct and readable" terms of the warranty, the *Andover Air Limited* court found that it "must consider whether the terms of the contract are oppressive and leave the allegedly disadvantaged party without adequate remedy." *Andover Air Limited*, 1989 U.S. Dist. LEXIS 7345, *20-21. Where, as here, the defendant manufacturer sought to limit liability to replacement or repair of a single part, the court held that "when the defective part has allegedly caused damage to [Trans-Spec's truck]," the warranty left "[Trans-Spec] without a 'fair quantum of remedy' and is therefore unconscionable." *Andover Air Limited*, 1989 U.S. Dist. LEXIS 7345, *22-23.

Caterpillar unfairly surprised Trans-Spec, imposed upon Trans-Spec an oppressive contract, openly breached its warranties, and left Trans-Spec without a fair quantum of remedy

---

[9] In more general terms, courts have defined an unconscionable contract as one "such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Waters,* 412 Mass. at 66; *Bull HN Information Systems Inc. v. Hutson*, 118 F. Supp. 2d 55, 61 (D. Mass. 1999) (both quoting *Hume v. U.S.*, 132 U.S. 406, 411 (1889)). **No commercial party such as Trans-Spec would disclaim negligence under the circumstances of the relevant sale had Caterpillar provided an honest and accurate representation of the capabilities and defects of the C-12 engine.**

by disclaiming its liability on an engine it knew to be defective.  Accordingly, this Court must nullify any purported Caterpillar exclusion of liability on the basis of unconscionability.

### ii.     Caterpillar's purported disclaimer is unenforceable because the two-year warranty failed of its essential purpose.

"Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this chapter." Mass. Gen. Laws Ann. ch. 106, § 2-719(2)[10]; *Hadar v. Concordia Yacht Builders, Inc.*, 886 F.Supp. 1082, 1099-1100 (S.D.N.Y. 1995) (decided under Massachusetts law).  A remedy fails of its essential purpose where applying it would cause a buyer to receive less than what the contract calls for; whether a remedy fails of its essential purpose is a question of fact.  *Boston Helicopter Charter, Inc. v. Agusta Aviation Corporation*, 767 F.Supp. 363, 373 (D. Mass. 1991); *Sosik*, 2003 Mass. Super. LEXIS 160, *16. "To determine whether a remedy fails of its essential purpose the court must look at the way it operates under the circumstances of the transaction at issue." *Hadar*, 886 F. Supp. at 1099 (citing Mass. Gen. Laws Ann. ch. 106, § 2-719); see also *Kos Kam Inc. v. Triangle Pacific Corp.*, 1987 U.S. Dist. LEXIS 16725, at *6 (D. Mass. 1987).

A buyer may receive less than what the contract calls for, causing a remedy to fail, **"as a result of a quality inherent in the defect, for example where the defect cannot be cured, where it is impossible to discover which of many parts has created the defect, or where the defect has completely destroyed the entire product."** *Hadar*, 886 F. Supp. at 1100 (emphasis added); *Boston Helicopter Charter, Inc. v. Agusta Aviation Corp.*, 767 F. Supp. 363, 373-74 (D. Mass. 1991); *Kos Kam*, 1987 U.S. Dist. LEXIS 16725, at *6.  **"A remedy may also fail as a result of the warrantor's actions, as where 'the seller completely refuses to honor its duty to repair or replace.'"** *Hadar*, 886 F. Supp. at 1100 (emphasis added); *Boston Helicopter Charter*,

---

[10] Caterpillar erroneously claims, and the Magistrate Judge holds, that all remedies as allowed by Mass. Gen. Laws Ann. ch. 106, § 2-719(2) are time-barred in this case, see Rec. at. 15; but see pages 6-7 of the still-pending *Objection by Trans-Spec Truck Service, Inc. to the Magistrate Judge's Order on its Motion to Amend Complaint and to Alter or Amend this Court's Order dated February 26, 2006* as well as pages 6-11 of the underlying *Motion to Amend Complaint and to Alter or Amend this Court's Order dated February 26, 2006*, both incorporated herein by reference, which show why this is not the case.

*Inc.*, 767 F. Supp. at 373-74; see also *Neuhoff v. Marvin Lumber and Cedar Company*, 370 F.3d 197, 201 (1st Cir. 2004) ("If the promisor does not abide by the promise to repair, then the promisee has a cause of action for the underlying breach of warranty for the defective product."); *R.W. Murray Co. v. Shatterproof Glass Corp.*, 697 F.2d 818, 823 (8th Cir. 1983) ("when a manufacturer limits its obligation to replacement of defective goods, 'and repeatedly fails to correct the defect as promised within a reasonable time, it is liable for the breach of that promise as a breach of warranty.' In this situation the limited exclusive warranty is considered to fail of its essential purpose . . . and 'all contractual remedies are available to the buyer.'" (citations omitted)).

Caterpillar's warranties failed of their essential purpose for multiple reasons. Although Trans-Spec's engine failures repeatedly occurred, Caterpillar did not offer a cure for Trans-Spec's engine failures. Caterpillar Depo Day 1, 170.1-175.13, Ex. A. Moreover, unknown to Trans-Spec at the time, Caterpillar breached its warranties when it failed "to correct the defect" or "repair" the failures as mandated by the text of the two year and five year/500,000 mile warranties, respectively, and then Caterpillar openly breached the five year/500,000 mile warranty. Where the warranties failed of their essential purpose, so also do any purported exclusions pursuant to Mass. Gen. Laws Ann. ch. 106, § 2-719(2).

### iii.    **Caterpillar's Five Year/500,000 mile warranty contains no exclusion of liability for negligence.**

Caterpillar's five year/500,000 mile warranty contains no exclusion of liability for negligence, see Ex. H. "Massachusetts law permits a cause of action to recover economic losses caused by negligent breach of a contractual duty." *Arthur D. Little International, Inc. v. Dooyang Corporation*, 928 F. Supp. 1189, 1203 (D. Mass. 1996) (denying summary judgment); *Abrams v. Factory Mutual Liability Insurance Company*, 298 Mass. 141, 144 (1937) ("Although the duty arises out of the contract and is measured by its terms, negligence in the manner of performing that duty as distinguished from mere failure to perform it, causing damage, is a

tort."). Trans-Spec is entitled to recover damages resulting from Caterpillar's negligence and failures in relation to its five year/500,000 mile warranty, as described more fully above.

**D.    The Magistrate Judge Erred Because Caterpillar's Disclaimer Does Not Apply To Its Misrepresentations And Caterpillar's Misrepresentations Void The Exclusion Of Liability Provision In Their Own Right.**

The Magistrate Judge erred by assuming without record support that Trans-Spec knowingly agreed upon exclusion of liability pursuant to a valid understanding of the agreed-upon economic risks, so that the parties allocated their risks by agreement and eliminated the need for the special protections of tort law. Rec. at 11-13, 16. That is not the case here. Where, Caterpillar's (mis)representations undermined Trans-Spec's ability to negotiate freely and make an informed decision – the basis for the Magistrate Judge's enforcement of the exclusion of liability provision – the exclusion fails. "There can be no doubt that under the law of Massachusetts **in the absence of fraud** a person may make a valid contract exempting himself from any liability to another which he may in the future incur as a result of hs negligence or that of his agents or employees acting on his behalf." *Sharon v. City of Newton*, 437 Mass. 99, 105 (2002) (emphasis added). Here, Caterpillar affirmatively misrepresented the capabilities and reliability of its C-12 engine, made representations about the warranties at issue, and failed to disclose the C-12 engine's negligent design and manufacture.    Similarly, Caterpillar made misrepresentations when it made it appear to Trans-Spec as if Caterpillar had honored its two year and five year/500,000 mile warranties as to the flywheel housing failures. See p. 4 above. Caterpillar's misrepresentations not only created unfair surprise for Trans-Spec, they precluded Trans-Spec from making a "sensible business judgment," as needed for an enforceable exclusion of liability provision *Minassian v. Ogden Suffolk Downs, Inc.,* 400 Mass. 490, 493 (1987).

Caterpillar's misrepresentations also render the Magistrate Judge's reliance on *Canal Electric Company v. Westinghouse Electric Corporation*, 406 Mass. 369 (1990) misplaced. See Rec. at 9-11. *Canal Electric* involved a buyer's clear and intentional allocation of risk, untainted by the seller's deceit and misrepresentation. *Canal Electric*, 406 Mass. at 374; see also Rec. at 9-

11 (acknowledging this but then ignoring the absence of intentional allocation of risk generated by Caterpillar's acts and omissions here). In *Canal Electric*, the plaintiff did not assert that any of the contract terms were unconscionable. *Canal Electric*, 406 Mass. at 371. **Decisively, the contract terms are unconscionable here, rendering any exclusion unenforceable. Moreover, the Supreme Judicial Court indicated that its holding would be different if "wilful dilatoriness and repudiation" was involved, as they are here**. *Canal Electric*, 406 Mass. at 377 (emphasis added). The Magistrate Judge in clear error ignored the impact of Caterpillar's dilatoriness and repudiation, see Rec. at 8 ("Consequential damages exclusion clause . . . void only if the exclusion is unconscionable"; no mention of impact of "willful dilatoriness and repudiation," as noted by *Canal Electric*, 406 Mass. At 377).

Where Caterpillar "(a) in the course of [its] business, (2) supplies false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance upon the information, and (6) with failure to exercise reasonable care or competence in obtaining or communicating the information," *Nota Construction v. Keyes Associates, Inc.*, 45 Mass. App. Ct. 15, 19-20 (1998), Caterpillar is "subject to liability for pecuniary loss caused to [Trans-Spec] by [its] justifiable reliance upon the information[.]" *Lawton v. Dracousis*, 14 Mass. App. Ct., 164, 171 (1982). "The damages recoverable for [Caterpillar's] negligent misrepresentation are those necessary to compensate [Trans-Spec] for the pecuniary loss to [it] of which the misrepresentation is a legal cause, including (a) the difference between the value of what [it] has received in the transaction and its purchase price or other value given for it; and (b) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation." *Nota*, 45 Mass. App. Ct. at 20, quoting Restatement (Second) of Torts, § 552B (1977).

"Fraud or deceit 'may be perpetrated by an implied as well as by an express representation.'" *Briggs v. Carol Cars, Inc.*, 407 Mass. 391, 396 (1990). "If a statement of fact which is susceptible of knowledge is made as of one's knowledge and is false, it may be the basis of an action for deceit," as well as a violation of M.G.L. ch. 93A. *Briggs*, 407 Mass. at 396.

"Establishing liability for misrepresentation does not require a showing that [Caterpillar] even knew that the statements made were false or that [Caterpillar] actually intended to deceive [Trans-Spec]." *Kitner v. CTW Transport, Inc.*, 53 Mass. App. Ct. 741, 749 (2002). Here, as described more fully above, Caterpillar made misrepresentations to Trans-Spec about both the reliability and capabilities of the C-12 engine, the warranties associated with it, and made it appear to Trans-Spec as if Caterpillar had honored its two year and five year/500,000 mile warranties as to Trans-Spec's flywheel housing failures. Caterpillar accordingly stands liable for the pecuniary damages Trans-Spec suffered as a result of its reliance on Caterpillar's misstatements.

The Court can infer Trans-Spec's negligence misrepresentation claim from its negligence claim and deny Caterpillar's Motion for Summary Judgment. *Gavett v. Roto-Rooter Services Company*, 2001 U.S. Dist. LEXIS 20436, *7-8 (D. Mass.2001) (Court denies defendant's motion to dismiss after addressing the economic loss doctrine in a negligence count, holding, "[a]lthough the complaint is not artfully drawn, I interpret Plaintiffs general negligence claim to include negligent misrepresentation."); *Tasco Construction, Inc. v. Town of Winchendon*, 1994 Mass. Super. LEXIS 373, *9 footnote 4 (while plaintiff "did not actually plead negligent misrepresentation in a count separate from its negligence claim, [plaintiff] argued the issue at oral argument. This Court will liberally construe the complaint to include a claim for negligent misrepresentation."); *Craig v. Everett M. Brooks Co.,* 351 Mass. 497, 499 (1967) (even though negligent count did not use the word "misrepresentation," the Court found the allegations included negligent and erroneous representations). Here, Trans-Spec's Second Amended Complaint, avers that Caterpillar made and breached, *inter alia*, express and implied warranties of merchantability, safety, and fitness for ordinary purpose and the particular purpose for which the engines were to be used, made and breached express warranties that the engines and their subsidiary components were covered for repair or replacement, and negligently marketed, advertised, and distributed the C-12 engine. Second Amended Complaint, ¶¶ 37-39, 52. Caterpillar's misrepresentations are more explicitly pled in the Third Amended Complaint,

pending before this Court pursuant to Trans-Spec's June 14, 2006 Objection. These allegations, as supported by the record facts recounted on pages 1-7 above, should be determined by a jury, not this Court at the summary judgment stage. *Nota*, 45 Mass. App. Ct. at 20 ("claim for negligent misrepresentation is ordinarily one for a jury").

**Critically,** the plain language of Caterpillar's exclusion of liability provision **does not exclude Caterpillar's negligent misrepresentation**. While purporting to exclude liability for negligence in respect to the **manufacture, supply, or provision of services relating to the C-12 engines**, Caterpillar's exclusion of liability **does not address nor does it exclude** liability for misrepresentations.[11] Caterpillar's exclusion of liability provision is clear and unambiguous on its face and, "[w]hen the words of a contract are clear they alone determine the meaning of the contract[.]" *Merrimack Valley Nat'l Bank v. Baird*, 372 Mass. 721, 723 (1977). To the extent this Court finds any ambiguity, the provision is to be construed against the drafter, Caterpillar. *Id.* at 724.

**E.    The Magistrate Judge Erred By Failing To Address That Caterpillar Waived Its Purported Disclaimers.**

**Decisively, while the two-year warranty document drafted by Caterpillar purports to disclaim Caterpillar's negligence in general terms, it does not contain an integration clause disclaiming any representations or warranties not set forth in the agreement or preventing Trans-Spec from introducing evidence of oral representations to the jury.** *Cummings v. HPG Int'l, Inc.*, 244 F.3d 16, 21 n.2 (1st Cir. 2001); *Town & Country Fine Jewelry Group v. Hirsch*, 875 F. Supp. 872, 876-77 (D. Mass. 1994). Caterpillar assured Trans-Spec of the suitable design and fitness of the Caterpillar C-12 engine and the coverage to be provided by the Caterpillar warranties. Trans-Spec relied on these representations to its detriment and purchased Caterpillar C-12 engines which later turned out to be defective. See pp. 1-7 and

---

[11] Even if Caterpillar's warranties addressed misrepresentation, exemption for misrepresentation is unenforceable. *Burten v. Milton Bradley Company*, 763 F.2d 461, 465 (1st Cir. 1985) ("Under Massachusetts law, parties cannot easily contract out of liability for tortious behavior. It is, for example, clearly against public policy for one party to exempt itself from liability for its own gross negligence or its own misrepresentations."); *Mausman v. Nasca*, 30 Mass. App. 789, 799-800 (1981).

citations there. Caterpillar also provided Trans-Spec with a separate five year/500,000 mile extended warranty. **No where does this separate five year/500,000 mile extended warranty exclude liability for negligence nor does it contain an integration clause.**

**Decisively, after the flywheel housings began to fail and the warranties containing unconscionable exclusions failed of their essential purpose, Caterpillar's and Caterpillar's agents repeatedly waived any exclusions, including any based on the economic loss doctrine.** Two employees of Caterpillar's agent and local distributor (Cardoza and Calderbank) as well as **two managers from Caterpillar (Guidotti and Schoening) all told Trans-Spec that Caterpillar would make it whole** for the damage it suffered as a result of the defective C-12 engines. See pp. 6-7 and citations there.[12]

Accordingly, Caterpillar's representations nullify its purported negligence disclaimer and any other exclusion of liability. Moreover, Caterpillar's assurances that it would make Trans-Spec whole includes **all** costs and damages incurred as a result of Caterpillar's negligently designed and manufactured engines, including any damages purportedly barred by the economic loss doctrine.[13] In error, the Magistrate Judge addresses none of these critical factors in her Report and Recommendation and ignored the fact that **Caterpillar's waiver of its purported disclaimers is a matter for jury determination.**

## CONCLUSION

Accordingly, Trans-Spec respectfully objects to the Magistrate Judge's Report and Recommendation and requests that this Court deny Caterpillar's Motion for Summary Judgment on All Remaining Claims.

---

[12] All of these statements could also be categorized as misrepresentations.
[13] The Magistrate Judge did not address the economic loss doctrine, see Rec. at footnote 3. Trans-Spec shows why the economic loss doctrine does not apply in its underlying Opposition at pp. 12-19.

Respectfully submitted,
TRANS-SPEC TRUCK SERVICE, INC.
d/b/a TRUCK SERVICE
By its Attorneys,


/s/ Christian G. Samito
Nancy M. Reimer, Esq., BBO # 555373
Christian G. Samito, Esq., BBO # 639825
Donovan Hatem, LLP
Two Seaport Lane
Boston, MA 02210
Date: December 11, 2006             (617) 406-4500

## REQUEST FOR ORAL ARGUMENT

If the Court deems it necessary, Trans-Spec requests oral argument on *Plaintiff Trans-Spec Truck Service, Inc.'s Objection To The Magistrate Judge's Report And Recommendation On Defendant Caterpillar Inc.'s Motion For Summary Judgment On All Remaining Claims.*


## CERTIFICATE OF SERVICE

I, Christian G. Samito, hereby certify that on this 11th day of December, 2006, I served a copy of the foregoing, by electronic filing, by facsimile, and by mail, postage prepaid, to:

John A.K. Grunert, Esq.
Campbell Campbell Edwards & Conroy
One Constitution Plaza, 3rd Floor
Boston, MA 02120

/s/ Christian G. Samito

01052567