UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| TRANS-SPEC TRUCK SERVICE, INC. d/b/a TRUCK SERVICE, | ) ) ) | |
| Plaintiff | ) ) | |
| vs. | ) ) | CIVIL ACTION NO. 04-11836-RCL |
| CATERPILLAR INC. | ) ) | |
| Defendant | ) ) | |

CATERPILLAR INC.'S OPPOSITION TO PLAINTIFF TRANS-SPEC TRUCK SERVICE INC.'S OBJECTION TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Caterpillar Inc. hereby responds pursuant to 15 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b) to Plaintiff Trans-Spec Truck Service, Inc.'s Objection to the Magistrate Judge's Report and Recommendation on Defendant Caterpillar Inc.'s Motion for Summary Judgment on All Remaining Claims ("Trans-Spec's Objection"). The Magistrate Judge's recommendation that summary judgment enter dismissing the one remaining count of the Second Amended Complaint in its entirety is correct and should be adopted. There is no genuine basis for disputing that Trans-Spec released any claim it might otherwise have had sounding in negligence.

While the Magistrate-Judge was not required to reach the issue, and did not reach it, Caterpillar is also entitled to *partial* summary judgment because Trans-Spec's remaining claim is barred by the economic loss doctrine insofar as Trans-Spec seeks recovery for engine repair costs, alleged diminution in re-sale value of the trucks containing the engines, alleged lost income and diminution in the value of its business, and alleged oil leak clean-up costs. The Court should enter partial summary judgment for Caterpillar on that separate alternative ground

1

as well. Finally, the Court should enter partial summary judgment on Trans-Spec's claim for punitive damages on the separate ground that Massachusetts law does not permit recovery of punitive damages where, as here, there is no specific statutory entitlement to them.

## STANDARD OF REVIEW

The Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 15 U.S.C. §636(b)(1)(C). The statutory language requires the District Judge "to give fresh consideration to those issues to which specific objection has been made by a party," United States v. Raddatz, 447 U.S. 667, 675 (1980), but grants him or her "broad discretion to accept, reject, or modify the magistrate's proposed findings." *Id.*, 680. "Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." *Id.*, 676. The District Judge's review is limited to issues properly raised and argued before the Magistrate-Judge. Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990-991 (1st Cir. 1988). "The rule does not permit a litigant to present new initiatives to the district judge." *Id.*, 990.

## GENERAL BACKGROUND

In 1999 Trans-Spec purchased 22 custom-built Sterling Truck Corporation trucks for use in its business. Second Amended Complaint, ¶¶8 and 26. Sterling built the trucks using model C-12 engines supplied to it by Caterpillar. *Id.*, ¶11. Trans-Spec accepted delivery of the trucks in December 1999 and January 2000. *Id.*, ¶12. The express warranty Caterpillar gave Trans-Spec, *see* Trans-Spec Deposition, Vol. 2 at 62-63 (contained in Caterpillar Exhibit C)[1], and

---

[1] Exhibits in the previously-filed Appendix of Exhibits to Caterpillar Inc.'s Motion for Summary Judgment are identified in this manner. Exhibits Trans-Spec filed in ostensible support of its opposition to the summary judgment motion are referred to as "Trans-Spec Exhibits."

Exhibits 5 and 6 to the Deposition Howard referenced therein (Caterpillar Exhibit E)[2] contained

the following language in bold-faced type, larger in size than most of the rest of the text:

> **CATERPILLAR EXCLUDES ALL LIABILITY ARISING FROM ANY NEGLIGENCE ON ITS PART OR ON THE PART OF ANY OF ITS EMPLOYEES, AGENTS OR REPRESENTATIVES IN RESPECT OF THE MANUFACTURE OR SUPPLY OF GOODS OR THE PROVISION OF SERVICES RELATING TO THE GOODS.**

In 2001 Trans-Spec began to experience serious problems with the C-12 engines in its

Sterling trucks. Second Amended Complaint, ¶14. The principal problem was loosening

flywheel housings. *Id.* Caterpillar paid for repair of some of the problems under its warranty but

not for all of them. *Id.*, ¶¶14 and 15. Trans-Spec avers the problems were caused by a design

defect in the engines. *Id.*, 17.

Trans-Spec commenced this action in August 2004. The original and first amended

complaints purported to state claims for breach of express and implied warranties, violation of

the Magnusson-Moss Warranty Act, and violation of G.L. c. 93A, §§2 and 11. On May 20,

2005, the Court granted Trans-Spec's motion for leave to file a second amended complaint

adding a negligence count. The other counts were unchanged. Caterpillar moved to dismiss the

Second Amended Complaint in its entirety under Fed. R. Civ. P. 12(b)(6). The Magistrate-Judge

recommended dismissal of the breach of express and implied warranty claims, Magnusson-Moss

Warranty Act claim, and Chapter 93A claim (Counts I and II) but concluded that, read leniently

as required at the Rule 12(b)(6) stage, the negligence count (Count III) stated a claim. On

---

[2] There are actually two express warranties, one applicable to engines delivered before January 1, 2000, and the other applicable to engines delivered after that date. No one disputes the two warranties are materially identical.

February 23, 2006, the Court adopted the Magistrate-Judge's recommendations and dismissed everything except the negligence count.[3]

March 17, 2006, was the deadline for dispositive motions. Caterpillar moved that day for summary judgment dismissing the sole remaining count and terminating the action. Caterpillar argued that the negligence claim is barred in its entirety by the conspicuous exclusion of negligence liability contained in the warranty. It argued the negligence claim is also independently barred, for the most part, by the economic loss doctrine. It also argued Trans-Spec's claim for punitive damages fails as a matter of settled Massachusetts law. The motion was heard on May 31, 2006, and the Magistrate-Judge issued her report and recommendation on December 1, 2006. She recommends summary judgment dismissing the remaining count on the basis of the contractual exclusion. She did not reach the other issues. Trans-Spec objects, without merit, to her recommendation.

ARGUMENT

Trans-Spec and its attorneys have kept this litigation going for over two years mostly by just *saying things in briefs.* Whether or not there is record evidence to support what they *say in their briefs* has been of no apparent consequence to them. They continued that tactic before the Magistrate-Judge in opposition to Caterpillar's motion for summary judgment and they continue it now. This case is thus a prime candidate for summary judgment, the principal purpose of which is to cut through the self-serving allegations and assertions that are so easily made in lawyers' briefs and pleadings and, instead, to force the party confronting the motion to come forward with *specific, concrete, admissible evidence* to show there are real material factual issues for a jury to decide. *E.g.,* Wynne v. Tufts University School of Medicine, 976 F.2d 791, 793-

---

[3] Trans-Spec thereafter belatedly moved for leave to amend its complaint for a third time, a motion which the Magistrate-Judge denied. Trans-Spec says at pages 8 and 18-19 of its Objection that its objection to that order "is still pending." That is untrue. *See* the order (Reginald C. Lindsay, District Court Judge) of July 6, 2006.

794, 796 (1st Cir. 1992). Trans-Spec has not done that.[4]  "[P]osturing and conclusory rhetoric," McIntosh v. Antonino, 71 F.3d 29, 33 (1st Cir. 1995), "unsworn allegations," Morris v. Government Development Bank of P.R., 27 F.3d 746, 748 (1st Cir. 1994), "rancorous epithets" and "tenuous insinuations," Wynne, 976 F.2d at 796, are no substitute for concrete evidence.

1.    The Negligence Claim is Barred as a Matter of Law by the Exclusion in the Warranty

"There can be no doubt that under the law of Massachusetts in the absence of fraud a person may make a valid contract exempting himself from any liability to another which he may in the future incur as a result of his negligence or that of his agents or employees acting on his behalf." Sharon v. City of Newton, 437 Mass. 99, 105 (2002) (internal quotation marks and elipses omitted). "The allocation of risk by agreement is not contrary to public policy" and, in the absence of fraud or duress, merely reflects "sensible business judgments." Minassian v. Ogden Suffolk Downs, Inc., 400 Mass. 490, 493 (1987). At least outside the consumer context, the fact that a contract excluding negligence liability may be viewed as a contract of adhesion is no reason to deny enforcement. Id., 492. Similarly, a contracting party's failure to read an exclusion of negligence liability does not render it unenforceable. Lee v. Allied Sports Associates, Inc., 349 Mass. 544, 550-551 (1965). These are settled principles of Massachusetts law. See cases cited at id.

The negligence exclusion in Caterpillar's warranty is clear, unequivocal, and conspicuous. See Caterpillar Exhibit E. It is undisputed Trans-Spec received the warranty. Trans-Spec Deposition, Vol. 2 at 62-63 (in Caterpillar Exhibit C) and Exhibits 5 and 6 to the Deposition of Howard referenced therein (Caterpillar Exhibit E). It is undisputed Trans-Spec claimed and received benefits under the warranty. Affidavit of Clarissa Kolmer, ¶5 (Caterpillar

---

[4]  As it did before the Magistrate-Judge, Trans-Spec asserts a supposed right to have a jury decide its claim. Trans-Spec's Objection at 9-10.  That would be true only if Trans-Spec had come forward, as it did not, with *evidence* sufficient to create a genuine issue of material fact for the jury to decide. Lawyers' assertions are not evidence.

Exhibit D).   If relevant, it is undisputed Trans-Spec was under no compulsion to specify
Caterpillar engines for its trucks, and chose them mostly because of its good experience with
other Caterpillar engines.   *E.g.*, <u>Deposition of Howard</u>, 33-38, 66-69, 77-82 (in Caterpillar
Exhibit A).   So the negligence claim fails as a matter of law because Trans-Spec indisputably
released any such claim.

Trans-Spec tries to avoid this conclusion by asserting: (a) the contractual exclusion of
negligence is unconscionable and therefore unenforceable; (b) the exclusion is unenforceable
because the warranty containing it supposedly failed of its essential purpose; (c) a *different*
contract between Caterpillar and Trans-Spec contains no negligence exclusion; (d) Caterpillar
supposedly induced Trans-Spec's agreement to the negligence exclusion by means of fraud,
rendering it unenforceable; and (e) Caterpillar supposedly waived the negligence exclusion.
Trans-Spec's assorted arguments fail because there is no evidence to support them, because they
are contrary to law, or both.  Caterpillar will address the arguments seriatim.

(a)    <u>The Negligence Exclusion, as a Matter of Law, is not Unconscionable</u>

The issue of unconscionability is one of law for the court.  <u>Zapatha</u> v. <u>Dairy Mart, Inc.</u>,
381 Mass. 284, 291 (1980); <u>NASCO, Inc.</u> v. <u>Public Storage, Inc.</u>, 1995 WL 337072 (D. Mass.
1995)[5].   Unconscionability is judged as of the time the contract was made, with particular
attention to whether the assertedly unconscionable provision would result in "unfair surprise" or
was "oppressive." <u>Zapatha</u>, 381 Mass. at 293; <u>NASCO</u>, 1995 WL 337072 at *4.

Trans-Spec says it was "unfairly surprised" because it "had no reason to know about the
engines' negligent design and manufacture."   Trans-Spec's Objection at 12.   That is just
frivolous.  The warranty Trans-Spec received, and of which it took advantage, said in **BOLD
FACED CAPITAL LETTERS** that Caterpillar excluded all liability for negligence.   Why

---

[5] Copies of this and other cited decisions not contained in the official reports are attached under Tab 1.

would an exclusion of negligence liability be in the contract if there were no possibility negligence had occurred? Some courts have said burying an exclusion among the fine print might render it unfairly surprising, but no court suggests a negligence exclusion is "unfairly surprising" when it is conspicuous as a matter of law, *see* G.L. c. 106, §1-201(10), and contained in the section where other contractual limitations and disclaimers are found. Trans-Spec's principal, Mr. Howard, was an experienced businessman who had been buying trucks and engines for years. Deposition of Howard at 13 and 107-108 (in Caterpillar Exhibit A); Trans-Spec Deposition, Vol. 1 at 52-53 (in Caterpillar Exhibit B). He had available (if he chose to take advantage of it) the advice of an attorney who routinely advised him on matters related to Trans-Spec's business. Deposition of Parks, 15-19 (in Caterpillar Exhibit K). *Compare* Zapatha, 381 Mass. at 294 (the provision held not to be unconscionable was not obscurely worded or buried in fine print; the plaintiff was an experienced businessman; the plaintiff chose not to consult his attorney). There was no surprise, unfair or otherwise.

Trans-Spec says it was surprised and oppressed because Caterpillar made misrepresentations with respect to the C-12 engine. As usual, what Trans-Spec's lawyers *say in their brief* is unsupported by anything in the record. Their comments about misrepresentation are followed only by the reference "see above at p. 2." At the referenced page 2, Trans-Spec cites to testimony at Exhibits C through G to its opposition to the summary judgment motion. But of what does that testimony consist?

Trans-Spec Exhibit C is testimony of Mr. Howard. The first cited excerpt describes conversations he had with Mr. Harry Calderbank.[6] Howard "really [can't] recall the exact conversation": he instead describes various *subject matters* they touched upon, without reporting

---

[6] Calderbank was an employee not of Caterpillar but of Southworth-Milton, Inc., a Caterpillar dealer. Whether what he said can be attributed to Caterpillar is immaterial for present purposes.

what was said about them. The only specific "representations" he reports concern the relative cleanliness and weights of the C-12 engine and a competitive engine. There is no issue in this case about cleanliness or weight -- this case is about flywheel housings -- and, in any event, Trans-Spec identifies no evidence that Calderbank's reported statements on those subjects were not 100% true. The second cited excerpt from Howard's testimony refers to conversations he had with Mr. Al Cardoza[7] *about which he recalls nothing* and other conversations he had with Calderbank in which the only reported statement by Calderbank had to do with the relative weights of the C-12 engine and a model 3406E engine. Again, Trans-Spec identifies no evidence that what Calderbank reportedly said on that subject was untrue. So Howard's testimony provides no support whatsoever for allegations that Caterpillar made misrepresentations.

Trans-Spec Exhibit D is an excerpt from Mr. Cardoza's testimony. The only reported representation by Cardoza is a statement to Trans-Spec's employee Lind that the C-12 engine was a revision of, and very similar to, the model 3176 engine. Trans-Spec does not suggest how that statement might even be relevant and, equally important, identifies no evidence to suggest it was untrue. Again, the *evidence* does not substantiate Trans-Spec's lawyers' statements in their brief about misrepresentations.

Trans-Spec Exhibit E is testimony by its employee Ralph Lind. The first cited excerpt reports that Lind spoke with Cardoza about the "ability," "horsepower ratings," and "torque ratings" of the C-12 engine; but Lind disclaimed all memory of what Cardoza actually *said* on those subjects -- which, in any event, are of no apparent relevance in a case involving flywheel housings -- and he offered no suggestion that any of the unremembered statements was untrue.

---

[7] Cardoza was an employee not of Caterpillar but of Southworth-Milton. Whether what he said can be attributed to Caterpillar is immaterial for present purposes.

The second excerpt from Lind's testimony again, for the most part, just identifies *subjects* of conversation with Cardoza, without reporting what he actually said. The only actual statements reported are that the C-12 engine was "suitable for Trans-Spec's business purposes" and suitable for 80,000 GVWR trucks in New England. Not only does Trans-Spec identify no evidence to indicate those statements were untrue: it *agrees* they were true. *See* <u>Response to Caterpillar's Statement of Undisputed Material Facts</u> at 5, ¶1. So once again, the *evidence* does not support what Trans-Spec's lawyers say in their brief.

Trans-Spec Exhibit F is testimony of Mr. Calderbank. It reports nothing at all that Calderbank actually said to Trans-Spec. All it reports is that he provided Howard information from a computer program "regarding speed capabilities, torque capabilities, startability, things of that nature." It does not say *what* information was supplied on those subjects, much less indicate that any of the undescribed information was untrue.[8]

Trans-Spec Exhibit G is testimony of Mr. Donald Medbery. Medbery worked for the Sterling dealership that sold Trans-Spec the trucks; he did not work for Trans-Spec, Caterpillar, or even a Caterpillar dealer. He spoke with Calderbank, a "very, very knowledgeable" and "very conscientious" man who "didn't want to do the wrong thing." Trans-Spec Exhibit G at 29 and 32. Calderbank gave Medbery data about the C-12 engine for Sterling's use: "fuel economy, road speed, gradability, miles per hour, horsepower, performance capability," but Medbery did not say *what* data on those subjects Calderbank provided and Trans-Spec points to no evidence that any data Calderbank provided was untrue.[9] Medbery also met someone whose name he

---

[8]    Trans-Spec's lawyers deleted from the minuscript page they gave the Magistrate-Judge Mr. Calderbank's testimony that, except for Trans-Spec, he has never seen or heard of anyone having a problem with flywheel housings.  *See* page 35 in the unredacted minuscript page that is Attachment 1 to <u>Caterpillar Inc.'s Reply Memorandum in Support of its Motion for Summary Judgment on all Remaining Claims.</u>

[9]    Trans-Spec also fails to identify evidence that Medbery reported to Trans-Spec anything that was said to him or to suggest how statements that were not even reported to it might have induced it to agree to a negligence exclusion.

cannot remember whom he says was a Caterpillar employee, but Medbery did not report that person telling him *anything* specific about C-12 engines: all he did was "brag up" the engine. *Compare, e.g.* Cummings v. HPG International, Inc., 244 F.3d 16, 21 (1st Cir 2001) (general representations about the suposedly superior quality of a product as a matter of law cannot constitute misrepresentation). So once again, Trans-Spec has failed to adduce *evidence* to support what its attorneys say in their brief. This is how the entire case has gone: Trans-Spec's attorneys say whatever they think they need to say, whenever they think they need to say it, just to keep the case alive, regardless of whether or not there is evidence to support what they say. *See generally* Fed. R. Civ. P. 11(b)(3) and (c).

That's it. Trans-Spec *says* the negligence exclusion was unfairly surprising and oppressive but identifies no *evidence* it was. What the Court is left with is an unambiguous, conspicuous exclusion contained in a commercial contract between businesses run by experienced businessmen. It is a type of exclusion that Massachusetts statute law specifically authorizes, *see* G.L. c. 106, §2-719(1)(a) and (3), and that Massachusetts case law has consistently approved. Massachusetts law mandates the exclusion be enforced according to its terms.[10]

---

[10] As it did before the Magistrate-Judge, Trans-Spec says Andover Air Limited Partnership v. Piper Aircraft Corp., 1989 WL 110453 (D. Mass. 1989), is to the contrary. Andover Air, however, is inapposite. The issue there was whether a contract that limited an aircraft manufacturer's responsibility to replacement of only the specific defective component part that failed, while excluding liability for general damages as well as for consequential and incidental damage and for damage to other parts of the aircraft caused by the defective part, provided a minimally adequate remedy in light of the likelihood that a defect in an aircraft will cause catastrophic damage. The Court held it did not. Here, by contrast, Caterpillar's warranty contains no exclusion of general damages. Moreover, Caterpillar's warranty required it to provide all parts "and assembled components" needed to remedy a defect, all labor to remedy the defect, and all service items rendered unusable by the defect. Moreover, Caterpillar agreed in an Extended Service Coverage contract to "pay the components and labor charges for any engine component that is rendered unserviceable by the failure of a covered component." Trans-Spec Exhibit I, second page, "Caterpillar's Responsibilities." As the Magistrate-Judge observed, Caterpillar's warranty specifically omits the provisions the Andover Air judge deemed determinative on the issue of unconscionability.

(b)    The Argument About Failure of Essential Purpose is Legally Irrelevant

Trans-Spec says Caterpillar's "repair or replace" warranty failed of its essential purpose and that the negligence exclusion fails for that reason.  Trans-Spec's argument is premised on a fundamental misunderstanding of applicable law[11].

G.L. c. 106, §2-719(2) says, "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had *as provided in this chapter*" (emphasis supplied).    "This chapter" means G.L. c. 106, Massachusetts's version of the Uniform Commercial Code.  The UCC provides *contractual* remedies for *breaches of contract*.  If Trans-Spec could have proven the repair-or-replace remedy failed of its essential purpose with respect to any engine, then Trans-Spec would have been entitled to pursue *contractual* remedies with respect to that engine in a timely breach of warranty action.  But Trans-Spec did not bring a timely breach of warranty action.  Its breach of warranty action was time barred and has been dismissed.  All that remains is a *non*-contractual action for common law negligence, and G.L. c. 106 does not provide remedies for *negligence*.

So whether or not the repair-or-replacement provision failed of its essential purpose is just irrelevant:  Trans-Spec is not suing for a remedy "provided in" G.L. c. 106.  All claims of that nature have already been dismissed.

What is *not* irrelevant is that, under Massachusetts law, when a limitation-of-remedies provision fails of its essential purpose the effect is not to void the entire contract.  Canal Electric Co. v. Westinghouse Elec. Corp., 406 Mass. 369, 372-375 (1990) (where an exclusive remedy provision failed of its essential purpose, a separate provision excluding liability specifically for

---

[11] Caterpillar assumes counterfactually and for present purposes only that Trans-Spec could have proven a failure of essential purpose as to one or more of the 22 engines.  The real history of Trans-Spec's trucks, of the use Trans-Spec made of them, of the sources of difficulties Trans-Spec experienced with them, and of Caterpillar's conduct in fact are not consistent with any such failure.

consequential damages remained enforceable). The effect of such a failure is that described in §2-719(2): it merely makes other UCC remedies available to the plaintiff if the plaintiff otherwise has a viable claim for them. Tokio Marine and Fire Ins. Co. v. Smith International, Inc., 617 F.2d 936, 941 (9th Cir. 1980); S.M. Wilson & Co. v. Smith International, Inc., 587 F.2d 1363, 1374-1375 (9th Cir. 1978). Trans-Spec has no such viable UCC claim and its negligence claim is barred by the unimpaired exclusion of negligence. Canal Electric, 406 Mass. at 372-365; Tokio Marine, 617 F.2d at 941.

     (c)    The "Other Contract" is Irrelevant

     Trans-Spec says, Trans-Spec Objection at 15, that it is entitled to pursue a negligence claim because a *different* contract – an Extended Service Coverage contract – does not itself contain a negligence exclusion.[12] This is a brand new assertion – the Court will search for it in vain in Trans-Spec Truck Service Inc.'s Opposition to Caterpillar Inc.'s Motion for Summary Judgment on All Remaining Claims or the transcript of the May 31, 2006 summary judgment hearing (of which a copy is attached under Tab 2 to this Opposition) – and not having been presented to the Magistrate-Judge it cannot properly be considered now. Paterson-Leitch, 840 F.2d at 990-991. In any event, the argument – to the extent nine lines can be called an argument – is meritless. Trans-Spec's Second Amended Complaint avers "negligent design, development, assembly, manufacture, inspection, testing, marketing, advertising, and distribution" of the C-12 engines. Second Amended Complaint, Count III. It does not allege negligent *servicing* or negligent breach of a service contract. No such allegation is found anywhere else in the Second Amended Complaint either. The deadline for amending the complaint expired more than a year

---

[12] Trans-Spec refers to a "five year/500,000 warranty" that "contains no exclusion of liability for negligence" and refers to Trans-Spec Exhibit H. Trans-Spec Exhibit H is the standard warranty that self-evidently contains the above-described exclusion of negligence liability. Caterpillar assumes Trans-Spec intends to refer to the Extended Service Coverage contract which is Trans-Spec Exhibit I.

ago; the Court said categorically in its October 26, 2005, order that the scheduling order will not be amended again; Trans-Spec's most recent motion to amend the complaint notwithstanding those orders was denied; lawyers are not allowed to use briefs to amend their complaints. *E.g.* Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984), *cert denied,* 470 U.S. 1054 (1985). So even if there were evidence of negligent servicing – Trans-Spec identifies none – it would be immaterial because there is no *claim* for negligent servicing.[13] Finally, Trans-Spec has simply failed to explain why the mere existence of a separate contract requiring Caterpillar to pay for certain servicing on the engines would nullify the unequivocal and conspicuous provision in the warranty Trans-Spec received and accepted excluding all negligence liability with respect to the engines, including *inter alia* "**ANY NEGLIGENCE IN RESPECT OF ... THE PROVISION OF SERVICES RELATING TO**" them. That exclusion is perfectly consistent with the Extended Service Coverage contract and, under ordinary principles of contract construction, the provisions of both contracts must be enforced to the extent they are not mutually exclusive. If Trans-Spec had a problem with the quality of *servicing work* it received, its remedy was against the service establishments that did the work.

    (d)    <u>Trans-Spec has Identified no Evidence of Negligent Misrepresentation</u>

Trans-Spec returns at page 16 of its Objection to the subject of misrepresentation. It again asserts the negligence exclusion is unconscionable because of supposed misrepresentations but, as demonstrated *supra* at 7-10, Trans-Spec has identified no *evidence* of misrepresentation: its lawyers just keep *saying* it, over and over. Trans-Spec goes on to assert that the alleged (but unsubstantiated) misrepresentations create a cause of action for negligent misrepresentation that

---

[13] As is apparent from the warranties and Extended Service Coverage contract, Caterpillar itself does not even perform servicing: servicing work is performed by dealerships. Trans-Spec brought a separate lawsuit against one dealership, Southworth-Milton, in Worcester Superior Court; but that action was dismissed on the pleadings under Mass. R. Civ. P. 12(c).

is beyond the scope of the negligence exclusion. That assertion in and of itself is untrue: the exclusion applies *inter alia* to liability arising from "**ANY NEGLIGENCE ... IN RESPECT OF THE ... SUPPLY OF**" the engines. Moreover, the Second Amended Complaint does not, *see supra* at 12, even *allege* negligent misrepresentation, and the Court denied Trans-Spec's belated attempt to concoct a Third Amended Complaint in which it tried to allege such a claim. *See* the Magistrate-Judge's order denying the belated motion to serve a third amended complaint and the July 6, 2006, order denying Trans-Spec's motion for reconsideration.[14] Trans-Spec just does not seem to get the point that it is not free to protract this litigation indefinitely just by fabricating new allegations every time the ones it has already made are determined to be meritless. But the most fundamental problem Trans-Spec has is that it simply has failed to adduce any evidence that any misrepresentation was made.

    (e)    <u>There is no Waiver</u>

Trans-Spec says Caterpillar waived the negligence exclusion and that the Magistrate-Judge "ignored" the waiver. It is true the Magistrate-Judge does not mention waiver in her Report and Recommendation. This is probably because Trans-Spec made no developed argument on the subject in the papers submitted to her, *see* pages 18-19 in <u>Trans-Spec Truck Service Inc.'s Opposition to Caterpillar Inc.'s Motion for Summary Judgment on All Remaining Claims</u>, cited no pertinent law, did not respond to the law Caterpillar cited in rebuttal, and did not mention waiver during oral argument. *See* the attached transcript. There is no obligation for jurists to address throw-away arguments that are not made in developed fashion.

Assuming for a moment that a statement that Caterpillar "would make Trans-Spec whole" (which Caterpillar assumes for present purposes was made even though it really was not) could amount to a waiver of the negligence exclusion, any such waiver was withdrawn. G.L. c.

---

[14] *See* note 3 *supra*.

106, §2-209(5) governs waivers. It says a waiver may be retracted at any time by the party making it "unless the retraction would be unjust in view of material change of position in reliance on it." Until Trans-Spec moved to amend its complaint to insert a negligence claim, Caterpillar had no reason to think waiver might even be an issue. As soon as that motion was forthcoming, however, Caterpillar expressly asserted the negligence exclusion. *See* Caterpillar Inc.'s Opposition to the Plaintiff's Motion to Amend the Complaint at 2 and 10-12 (April 12, 2005). When Caterpillar answered the Second Amended Complaint it again expressly asserted the negligence exclusion. Caterpillar Inc.'s Answer to Count III of the Second Amended Complaint, Second, Fourth, Fifth, Eighth, and Ninth Affirmative Defenses. If there was a waiver, it was indisputably retracted. Yet Trans-Spec does not even *assert* material change in position in reliance on the supposed waiver, much less adduce *evidence* that could support a finding of change in position or reliance. It has therefore presented the Court with nothing to create a genuine issue with respect to the viability and effectiveness of the negligence exclusion. That is why the Magistrate-Judge did not feel called upon to waste time talking about waiver, and that is why this Court should disregard Trans-Spec's passing remarks on the subject.

The Magistrate-Judge was thus correct in concluding that Trans-Spec's negligence claim is, as a matter of law, barred in its entirety by the negligence exclusion in the warranty it received. The Court should therefore now forthwith dismiss the Second Amended Complaint with prejudice in its entirety and order that Caterpillar recover its costs[15].

---

[15]  It is not practical, within the page limit prescribed by the local rules, for Caterpillar to address all of the self-serving "factual" assertions and hyperbole found in Trans-Spec's Objection. Caterpillar has addressed the material "factual" assertions. Caterpillar wishes it to be clear, however, that much of the "factual" matter in Trans-Spec's Objection is inaccurate and Caterpillar does not agree to anything in that filing except to the extent specifically so stated in this Opposition. Caterpillar asks the Court to accept nothing of a "factual" nature that is not supported by a citation to the record and, even then, not to accept it without first carefully checking the cited record material to make sure it supports the proposition for which it is cited. Caterpillar believes the discussion at pages 7-10 of this Opposition sufficiently illustrates why such care is needed in this case.

2.    The Negligence Claim is Barred for the Most Part by the Economic Loss Doctrine

Caterpillar moved for *partial* summary judgment on the alternative ground that Trans-Spec's negligence claim is barred by the economic loss doctrine insofar as it seeks recovery for: (a) expenses of repairing or replacing failed flywheel housings; (b) alleged reduced re-sale value of the trucks; (c) alleged lost income to and diminished value of its business; and (d) alleged clean-up costs for oil spills[16]. The Magistrate-Judge decided not to reach that issue, but this Court should adopt it as an alternative basis for decision.

The economic loss doctrine says there may be no recovery in negligence for defective design or manufacture of a product if the negligence does not cause personal injury and does not cause substantial damage to property other than the defective product itself. Bay State-Spray & Provincetown Steamship Co. v. Caterpillar Tractor Co., 404 Mass. 103, 104, 107 (1989); Marcil v. John Deere Ind. Equip. Co., 9 Mass. App. Ct. 625, 629-631 (1980). Recovery in such circumstances, if any, is limited to recovery in contract. The rationale for the doctrine is to prevent tort law from "swallowing" contract law, including *inter alia* the parts of contract law intended to permit contracting parties to allocate risk by agreement. Where, as here, there is evidence of *some* damage to "other property," the economic loss doctrine permits recovery in negligence for losses proximately caused by the damage to "other property" but not for losses proximately caused by damage to the defective product itself. W.R. Construction & Consulting, Inc. v. Jeld-Wen, Inc., 2002 WL 31194870 (D. Mass. 2002); Icelandic Coast Guard v. United

---

[16] Trans-Spec says every time a flywheel housing fractured (as distinct from just loosening) it caused damage to certain non-engine parts of the truck in which it was installed. In light of Berish v. Bornstein, 437 Mass. 252, 267-268 (2002), Caterpillar did not argue that the economic loss doctrine bars recovery for that kind of damage. *But see* Pro Con, Inc. v. J&B Drywall, Inc., 2006 WL 392123 (Mass. Super.), holding in accordance with prevailing authority elsewhere that in claims involving defective component parts the relevant "product" for purposes of the economic loss doctrine is the finished product into which the part is integrated, and dismissing a negligence claim where the only "property" damaged by defective sealant was the building into which the sealant was installed.

Technologies Group, 722 F. Supp. 942, 947-948 (D. Conn. 1989); Queen City Terminals, Inc. v. General American Transp. Corp., 73 Ohio St. 3d 609, 615-616, 653 N.E.2d 661 (1995).

Trans-Spec seeks to recover expense it allegedly incurred for parts and labor connected to "in-house repairs ... on the flywheel housings of sixteen trucks." Second Amended Complaint, ¶20. That is exactly the kind of loss the economic loss doctrine says can be recovered, if at all, only in a contract action. Marcil, 9 Mass. App. Ct. at 630 n.3.

Trans-Spec seeks to recover for alleged diminution in re-sale value of 20 of its trucks.[17] Trans-Spec avers, Second Amended Complaint, ¶24, its trucks should have had a re-sale value of $45,000 apiece but says, Trans-Spec Deposition, Vol. 1, 26-30 and 54-56 (in Caterpillar Exhibit B), the price it was able to get was only $33,500 *because of its report to the purchaser of recurrent flywheel housing problems.* Trans-Spec's own evidence therefore establishes that any diminution in re-sale value was caused by the alleged engine defects themselves, not by damage to other parts of the trucks. That is exactly the kind of loss that cannot be recovered in a negligence action. Marcil, 9 Mass. App. Ct. at 630 n.3.

Trans-Spec seeks recovery for alleged lost income and related diminution in the value of its business. It says it lost lots of business because so many of its trucks were down with flywheel housing problems that it could not adequately service its customers. That is exactly the kind of loss that would not be recoverable in negligence, Marcil, 9 Mass. App. Ct. at 630 n.3, unless Trans-Spec can point to evidence that the loss resulted not from downtime caused by inoperable engines but, instead, by incidental damage to non-engine parts of the trucks caused by the failed flywheel housings. Put a different way, Trans-Spec would have to adduce evidence that downtime attributable to incidentally-damaged components like starters, clutches, and

---

[17] Trans-Spec's drivers managed to wreck two of its 22 trucks in accidents and Trans-Spec did not re-sell them. Caterpillar does not understand Trans-Spec to seek recovery for alleged reduced resale value of the wrecked trucks. If it does, the analysis applies to them too.

engine mounts caused it to lose appreciably more business than it would have lost merely as a result of downtime caused by the inoperable engines alone. This Trans-Spec cannot do.

Trans-Spec admits, <u>Second Amended Complaint</u>, ¶16, its business "requires that it operate all of its trucks six days a week." So any downtime of more than a single day for *any* reason must be assumed for present purposes to have impaired its ability to operate its business. Yet Trans-Spec says its trucks were often down for multiple days just awaiting the arrival of replacement flywheel housings, <u>Trans-Spec Deposition, Vol. 2</u>, 53-54, 90, 118-119 (in Caterpillar Exhibit C), and that other *engine* problems also contributed to downtime. <u>Trans-Spec Deposition, Vol. 1</u>, 159 (in Caterpillar Exhibit B); <u>Trans-Spec Deposition, Vol. 2</u>, 31, 87-88 (in Caterpillar Exhibit C); <u>Plaintiff, Trans-Spec Truck Service, Inc. d/b/a Truck Services Amended Supplemental Amended Answers to Caterpillar Inc.'s First Set of Interrogatories</u>, ##7 and 15 (Caterpillar Exhibit L). So to meet its burden of proof Trans-Spec needs competent evidence (a) quantifying in some non-speculative fashion the downtime attributable to damaged non-engine components and (b) proving that, but for that additional quantum of downtime, its customers would not have taken their business elsewhere. Yet Trans-Spec concedes that information available to it is inadequate to provide that level of detail about the problems with its trucks. <u>Trans-Spec Deposition, Vol. 2</u>, 13-14, 22-23, 53-54, 80-86, 92, 97-98, 115-115, 131-132, 140-142 (in Caterpillar Exhibit C). Moreover, Trans-Spec has no expert testimony on the subject. *See* the excerpts from Trans-Spec's expert reports collected in Caterpillar Exhibit I and the testimony disclaiming knowledge of the reasons for Trans-Spec's financial performance by Trans-Spec's accountant, Mr. Pappas, found at pages 67-70 and 94-95 of his deposition (in Caterpillar Exhibit K). There is thus no evidence from which a jury could find that any lost income or diminution in the value of Trans-Spec's business (if there was any) was proximately

caused by damage to non-engine components instead of downtime caused by the engines themselves.

Finally, Trans-Spec seeks recovery for expenses it allegedly incurred in cleaning up oil that leaked onto its property as a result of flywheel housing failures. <u>Second Amended Complaint</u>, ¶23. It was unable or unwilling, however, to identify any specific instance in which any specific truck leaked oil on its property as a result of flywheel housing failure, notwithstanding the fact that it was explicitly asked to provide Rule 30(b)(6) testimony on that subject. <u>Notice of Taking Resumed Deposition</u>, Schedule A, ¶19 (Caterpillar Exhibit N); <u>Trans-Spec Deposition, Vol. 2</u>, 23-26 (in Caterpillar Exhibit C). There will, consequently, be no evidence on which a jury could base an award of damages for such spills, if any really occurred.

Even if its negligence claim were not barred in its entirety by the contractual negligence exclusion -- which it is -- Trans-Spec thus would be barred by the economic loss doctrine from recovery on those parts of its claim seeking to recover the expense of repairing its damaged flywheel housings, to recover for alleged diminution in the re-sale value of its trucks, to recover for alleged lost income and diminution in the value of its business, or to recover for expense allegedly incurred in cleaning up oil spills. Those elements (if they could be proven) would constitute by far the largest component of Trans-Spec's alleged loss.

3.    <u>The Punitive Damage Claim Fails as a Matter of Law</u>

Paragraph 2 in Trans-Spec's prayer for relief demands "multiple, consequential, and punitive damages." A different paragraph of the prayer, ¶3, specifically requested exemplary damages under the (now dismissed) c. 93A count, so ¶2 evidently refers to other counts.

No protracted discussion is needed. Punitive damages are available in Massachusetts only if expressly authorized by statute. <i>E.g.</i>, <u>Flesner</u> v. <u>Technical Communications Corp.</u>, 410

Mass. 805, 813 (1991); Santana v. Registrars of Voters of Worcester, 398 Mass. 862, 867 (1986); USM Corp. v. Marson Fastener Corp., 392 mass. 334, 353 (1984); Lowell v. Mass. Bondings & Ins. Co., 313 Mass. 257, 269 (1943); Boott Mills v. Boston & Maine R.R., 218 Mass. 582, 589 (1914).  Trans-Spec's only remaining claim is for common law negligence.  It is not brought pursuant to any statute, much less one that authorizes an award of punitive damages.

## CONCLUSION

The negligence exclusion in the warranty Caterpillar gave Trans-Spec disposes as a matter of law of Trans-Spec's negligence claim in its entirety.  The economic loss doctrine is a redundant reason why Trans-Spec's negligence claim fails to the extent as it seeks recovery for engine repair costs, alleged impaired resale value, alleged lost income and diminution in value of the business, and alleged oil clean up costs.  Massachusetts's law barring punitive damages in the absence of statutory authorization is a redundant reason for dismissing that part of the claim. Caterpillar is entitled as a matter of law to judgment forthwith dismissing the Second Amended Complaint and awarding it costs of suit.

CATERPILLAR INC.,

By its attorneys,

CAMPBELL CAMPBELL EDWARDS
& CONROY, P.C.

_____

John A.K. Grunert  (BBO: 213820)
One Constitution Plaza
Boston, MA  02129
(617) 241-3000

<u>CERTIFICATE OF SERVICE</u>

I, John A.K. Grunert, hereby certify that on December 14, 2006, I served the within response by causing it to be transmitted electronically to Nancy Reimer, Esquire, Donovan Hatem LLP, Two Seaport Lane, Boston, MA 02210.

_____

John A.K. Grunert