1

1 - 38

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS


TRANS-SPEC TRUCK SERVICE INC., )
                    Plaintiff, )
                               )
-V-                            )    CIVIL DOCKET NO.
                               )    04-11836-RCL
CATERPILLAR INC.,              )
                    Defendant. )


MOTION HEARING
BEFORE THE HONORABLE JOYCE LONDON ALEXANDER
UNITED STATES MAGISTRATE JUDGE


May 31, 2006

Boston, Massachusetts

For the Plaintiff:

        NANCY M. REIMER, ESQ.
        CHRISTIAN G. SAMITO, ESQ.
        Donovan Hatem, LLP
        Two Seaport Lane
        8th Floor
        Boston, MA 02210
        617-406-4500


For the Defendant:

        JOHN A.K. GRUNERT, ESQ.
        CHRIS PARKERSON, ESQ.
        Campbell, Campbell, Edwards & Conroy, PC
        One Constitution Plaza
        Boston, MA 02129
        617-241-3000


Proceedings recorded by electronic sound recording,
transcript produced by Apex Reporting.


*APEX Reporting*
(617) 426-3077

1  looked for exactly the unequivocal statement that you have

2  just suggested and I received in response a statement saying

3  that whether we were going forward or not depended on what

4  the Court did with this emergency motion.  I had to go to

5  Peoria.  I had to get a flight there to prepare the witness

6  and to have the witness' documents available.  I couldn't

7  wait.  These depositions were not tentatively scheduled,

8  they had been noticed for specific dates that were agreed

9  upon.  And all I wanted was an unequivocal statement, one

10 way or the other, are we going forward and they would not

11 give it to me.

12         THE COURT:  It seems to the Court that the two

13 parties that counsel have or for counsel have more additions

14 than the parties themselves.

15         What's the next issue, the motion for a summary

16 judgement.  You may be heard.

17         MR. GRUNERT:  Your Honor, there was only one claim

18 remaining and that's the negligence claim.  And there are

19 two separate grounds why that claim fails as a matter of

20 law.

21         One ground disposes of the entire claim.

22         The second ground would leave a small amount of

23 that claim pending, so the second ground is in the nature of

24 a motion for partial summary judgement.  The document -- and

25 by the way, when I think of it, attached to my motion for

1  summary judgement are the warranties that Caterpillar gave.

2  These are the warranties, and I attached the testimony from

3  Mr. Howard saying that he received them.  Those are the very

4  warranties you were told on the motion to amend that the

5  plaintiff didn't have until recently, by the way.

6       So the warranty that was given contains in bold

7  faced print, capitalized letters, an exclusion that says

8  that Caterpillar is not liable for any negligence in

9  connection with these engines.  That exclusion, under

10  General Laws Chapter 220110, is conspicuous as a matter of

11  law and is enforceable.  And Massachusetts law could not be

12  clearer that exclusions of negligence liability, at least

13  between businessmen, are not only enforceable but they're

14  favored.  The Sharon case, Sharon v. City of Newton says

15  they're favored because the law encourages the consensual

16  allocation of risk between business people.

17       There's no dispute that that document is the

18  warranty.  There's no dispute that it was received.  The

19  legal effect of that language is clear.  Under the Sharon v.

20  Newton case, once that exclusion has been presented to you,

21  the burden is on the plaintiff to come forward with specific

22  evidence to show you that there is some reason why that

23  release should not be given effect.  I have gone through, at

24  considerable length in my required brief, the various

25  grounds that Trans-Spec has advanced.  But I think I need to

16

1    say --

2              THE COURT:  How do you respond to Trans-Spec's

3    asseveration that a product has an apparent defect the buyer

4    receives less than what the contract calls for.

5              MR. GRUNERT:  The --

6              THE COURT:  And therefore, the remedy fails of its

7    specific purpose, of its essential purpose?

8              MR. GRUNERT:  The section of the uniform

9    commercial code, I think it's 20219.  I could be wrong, it

10   might be 2207, but the section of the uniform commercial

11   code that pertains to failure of the essential purpose says

12   that if a particular provision in a contract, if a

13   limitation of remedies provision fails of its essential

14   purpose, then other UCC remedies are available.  Negligence

15   is not a UCC remedy.  There are no UCC remedies in this case

16   because that claim is barred by the statute of limitations.

17   So the failure of essential purpose, and I cited the case

18   authority to you your Honor, the Canal Electric v.

19   Westinghouse case is SJC decision that's right on point.

20   There's also a decision out of the Ninth Circuit, Tokyo

21   Marine v. Mcdonnell Douglas, I believe, it's again cited in

22   my brief, where there's exactly this issue.  There was a

23   negligence claim and the defense was there's an exclusion

24   about negligence claims and the plaintiff said, well the

25   contract failed of its essential purpose.  And that, like

17

1  this one, was a case where the warranty claims were barred

2  by the statute of limitations.  The Ninth Circuit says, no,

3  no, no, no.  Failure of essential purposes means you have

4  UCC remedies.  Your UCC remedies failed under the statute of

5  limitations.  You've got no -- that failure of essential

6  purpose has no effect on an exclusion of negligence.

7         THE COURT:  What about the economic loss doctrine

8  being an all or nothing doctrine?

9         MR. GRUNERT:  Again, that's just not the law.  And

10 I think on that subject, the most illustrative case is

11 probably the Icelandic Coast Guard v. United Technologies

12 case that I cited to you.  Although, there's another case

13 that I didn't cite to you, but I'd like to give you the cite

14 now, it's Northern States Power Company v. International

15 Telephone and Telegraph.  It's at 550 F.Supp. 108 out of the

16 District of Minnesota, which is also illustrative.

17        What these cases show and really, the Icelandic

18 Coast Guard case is very good, because what happened in that

19 case is the defendant had sold a helicopter to the Coast

20 Guard.  The helicopter crashed as a result of a product

21 defect.  And as a result of the crash, the crew members were

22 killed, and the Coast Guard had to expend a lot of money on

23 finding and retrieving their bodies.  The Coast Guard also

24 had to expend a lot of money finding the wreckage of the

25 helicopter, with lost use of the helicopter, had to replace

18

1  the helicopter.  And so, the Coast Guard sued United

2  Technologies and United Technologies said, well your claim

3  is barred by the economic loss doctrine.

4         And what the District Court in Connecticut said

5  is, well you've got various kinds of losses here.  To the

6  extent that this crash caused injury to the crew members,

7  that's an injury to persons or other property.  And so, you,

8  the Coast Guard can recover what you expended in finding and

9  retrieving the crew members bodies.

10         As to the other categories of damages, the expense

11  of finding the wreckage of the helicopter, the lost time,

12  lost use of the helicopter, the cost of replacing the

13  helicopter, those are all economic losses caused just by a

14  defect in the product itself.  Those you cannot recover.

15         So it says, summary judgement, as to the claims

16  for those elements.  No summary judgement for the claims for

17  expenses searching for the crew members body.  And if you

18  review the Jeldwin case, if you review the other cases that

19  I cited to you, you will see that that consistently is how

20  the economic loss doctrine is applied.

21         The economic loss doctrine permits recovery of

22  damages proximately caused by damage to other property.

23  That is to say, property other than the product itself, or

24  to person.  It bars elements of damage that are attributable

25  just to the defect in the product itself, to the loss of use

1  of the product through reduction in value.  It's not an all

2  or nothing matter in that case that Trans-Spec cites for

3  that proposition doesn't stand for it.  I talked to you

4  about that in the brief.  I don't think I need to recount it

5  here, but that that statement was just a vague passing

6  reference and a general history and it was followed by a

7  number of citations to other authority, and if you read the

8  other authority, you see that it says exactly what I just

9  explained to you.

10         The economic loss doctrine requires

11  differentiation between different types of damages.  And the

12  reason it does that is that if there are tort type damages

13  that have been caused, the courts don't want to deny

14  recovery but the problem of tort law swallowing up contract

15  law remains.  And so, the courts are very tough in saying

16  that you cannot recover economic losses, economic type

17  damages unless they are caused by damage to other property,

18  not to the product itself.

19         THE COURT:  Thank you.

20         MR. GRUNERT:  Thank you, your Honor.

21         THE COURT:  Trans-Spec, talk to the Court about

22  the warning disclaimer not being enforceable because of its

23  failure of its essential purpose.

24         MR. SAMITO:  Well your Honor, I think Andover Air

25  case is very instructive, in that Judge Zobel -- the

20

1  plaintiff, Andover -- if Andover proves that the warranty

2  failed in its essential purpose, the exclusion of other

3  damages becomes inoperative and Andover may seek

4  consequential and incidental damages as allowed by the code.

5        THE COURT:  But Caterpillar has said that

6  negligence is not a UCC remedy and therefore, you can't even

7  invoke that.

8        MR. SAMITO:  But where the warranty fails of its

9  essential purpose, your Honor, all bets are off.  You can't

10 just claim negligence, have everything else fall to the

11 wayside and allow the breaching party to hold onto that

12 disclaimer that benefits it.  They're not getting the

13 benefit.  There's a difference, and there's other cases.  I

14 mean, the Hadar case from the Southern District of New York

15 bears on this.  In other cases that are cited --

16        THE COURT:  But Caterpillar says that it doesn't

17 fail -- in Court, the Court -- if the Court is wrong, did

18 you not say that Caterpillar -- did Caterpillar not say that

19 it doesn't fail of its essential purpose, is the Court

20 correct?

21        MR. GRUNERT:  I don't concede that --

22        THE COURT:  Negligence is not a UCC remedy.

23 That's what Trans-Spec is invoking when it says that it

24 fails of its essential purpose?

25        MR. GRUNERT:  I don't believe --

21

1          THE COURT:  That the remedy fails?

2          MR. GRUNERT:  I don't believe that --

3          THE COURT:  Okay.

4          MR. GRUNERT:  For purposes of --

5          THE COURT:  Let me ask you and then have you

6    respond.  Let me ask Caterpillar the following question:

7    Trans-Spec says that the disclaimer is unenforceable because

8    it fails of its essential purpose.  What do you say to that?

9          MR. GRUNERT:  I say number one, that the -- what

10   Trans-Spec claims failed of its essential purpose is the

11   warranty that Caterpillar --

12          THE COURT:  So you're saying they're saying the

13   warranty failed of its specific purpose?

14          MR. GRUNERT:  That's right.

15          THE COURT:  That has nothing to do with this

16   negligence claim.

17          MR. GRUNERT:  That's correct.  And if there had

18   been a timely action brought to breach of warranty and if

19   Trans-Spec --

20          THE COURT:  We're dealing with the negligence.

21          MR. GRUNERT:  Right, right.

22          THE COURT:  Stop saying anything about the

23   warranty.  They're saying this disclaimer is unenforceable

24   because it fails of its essential purpose.  You say what

25   again, and don't bring in the warranty?

22

1          MR. GRUNERT:  The essential purpose of the

2   disclaimer is obviously to disclaim liability for

3   negligence.  The argument that the warranty failed of its

4   essential purpose as a matter of law means only that if that

5   were found to be true, they would have other UCC remedies

6   available to them.  In other words, the limitation to a

7   repair or replacement of defective parts would fall out of

8   the case and Trans-Spec could sue for contract damages.  The

9   warranty claim -- all contract damages are barred by the

10  statute of limitations.

11          THE COURT:  But this is negligence.

12          MR. GRUNERT:  That's right.  Negligence is not a

13  UCC remedy.  So the failure of essential purpose law is

14  simply irrelevant to this motion.  And I cited --

15          THE COURT:  That's what I wanted to hear you say.

16  Thank you.

17          MR. SAMITO:  Well your Honor, with all due respect

18  here, Caterpillar, the cases that they cite involve

19  situations including the <u>Canal</u> case, where the defendant

20  tried to perform under the contract.  Here, Caterpillar

21  breached the contract, breached the warranty in 2001,

22  breached it again in 2003 all together, and that's the

23  difference.

24          It's one thing for the Court to look at a

25  situation where Caterpillar was performing under the

23

1  warranty and then it may be a different story in terms of
2  the exclusion of negligence, but that's not what happened
3  here.  And the cases that Caterpillar cites don't apply for
4  that reason.
5      This is a situation where Caterpillar left
6  Trans-Spec holding an open bag.  Said we're not going to
7  honor any other provision in these two warranty documents
8  except for the disclaimer of negligence.  That, we're going
9  to cite that.  We'll honor that because it benefits us.  And
10  that's the situation.
11      Time and again, the cases cited from Boston
12  Helicopter to Hadar, the rejection of negligence
13  disclaimers, Somerset Savings, Omni Flying, Andover, again
14  and again said, that you can't have disclaimer of negligence
15  where it's unconscionable or where it failed of its
16  essential purpose.  It's integrated into a document that
17  completely fails.  The Court will enforce that one
18  provision.  And again, the Andover Air case provides
19  excellent guidance on that point.  Judge Zobel talks about
20  that unconscionability of the limited remedy and where it
21  fails of its essential purpose.
22      THE COURT:  So that Caterpillar's whole issue
23  about the code is really irrelevant?
24      MR. SAMITO:  Yes, your Honor.
25      THE COURT:  Okay.  Let me hear you on the economic

APEX Reporting
(617) 426-3077

24

1    loss.

2            MR. SAMITO:  Again, your Honor, the cases that

3    Caterpillar cites involve situations where the loss is

4    purely economic.  If you look at the Binding Berish case, I

5    remember from the last hearing that your Honor knows the

6    Berish case quite well, referred to it as well as other

7    cases that are cited here.  The Massachusetts Supreme

8    Judicial Court, not Connecticut, we'll dealing with

9    Massachusetts law, Berish is binding.  The SJC in Berish

10   said, where you have damage, both to the actual property but

11   then to elements outside of the property, the economic loss

12   doctrine doesn't apply.  The Damon court, in 1998, does cite

13   three prior Wisconsin cases and then it comes down with its

14   statement, the economic loss doctrine does not bar

15   commercial purchasers claims based on personal injury or

16   damage to property other than the product, or economic loss

17   claims that are alleged in combination with non-economic

18   losses.

19           Now what Caterpillar does here, is it files a

20   motion for summary judgement, complains throughout that

21   Trans-Spec doesn't provide adequate proof of the damages.

22   Doesn't complete its Rule 30(b)(6) deposition of Trans-Spec,

23   and then it says, well there's not enough proof in the

24   record and the proof that is there is not credible.  And

25   issues of credibility aren't for the Court to decide at the

1    summary of judgement stage, they're for the jury to decide.

2            And the issues in terms of whether the damage was

3    economic or not economic going forward, by Caterpillar's own

4    notion, they concede that the damage to the truck's

5    clutches, the drive trains, the transmissions, damage to

6    property of Trans-Spec in terms of the actual physical

7    ground, the oil leaks on other peoples, other customer's

8    property.  That's all issues that show the economic loss

9    doctrine doesn't apply here.  It's by the <u>Binding Berish</u>

10   case.  There was damage to property outside of the engines

11   themselves.  And if the damage was just confined to the

12   engines, that may be one story, but that isn't what was the

13   case here in the deposition testimony.  We have affidavits

14   that point to the fact that there was damage to other

15   property.

16           The fact that Caterpillar doesn't like that

17   evidence and doesn't like the affidavits is not neither here

18   nor there.  I note that Caterpillar moves to strike four out

19   of five documents.  Four of the documents are documents that

20   they actually append to their own motion for summary

21   judgement.  And now they're saying, oh we should exclude

22   that.  They want to exclude any evidence that there was

23   damage to other property.

24           There's also issues with misrepresentations.

25   Negligent breach of contract, those are two issues of

26

1  negligence that are encompassed in the negligence count that

2  are carved out of the economic loss doctrine, and I need not

3  spend the time of the Court, indeed the cases are cited in

4  our opposition papers.  But negligent misrepresentation, and

5  we (unintelligible) the history with documents, with

6  Caterpillar testimony, with affidavits, and the negligent

7  breach of the warranty documents -- the negligent breach of

8  contract --

9          THE COURT:  One of the arguments you make is that

10  the Court twice rejected Caterpillar's contention, but the

11  Court did not because it said at that stage of the

12  proceedings it was not prepared to render a decision on that

13  issue.  But the Court didn't reject Caterpillar's assertions

14  outright.  And so now Caterpillar brings them and you're

15  saying, based on the cases that have been previously cited,

16  that the Court should now reject Caterpillar's assertions

17  outright?

18          MR. SAMITO:  I don't remember if I cited all the

19  cases, but the Berish v. Bernstein in 2002, the Aldridge v.

20  ADD, which is SJC 2002, several other cases that are given

21  are in Caterpillar's own memorandum on page 6 are all

22  reasons why the Court should deny as to the economic loss

23  argument because there was damage to property outside of the

24  engines themselves.  And as a result of that, the negligence

25  claim on that ground goes forward.

27

1          THE COURT:  Counsel, what about the injury or
2     damage to other than the design or manufacture.
3          MR. GRUNERT:  I told you when I started that, as
4     far as the economic loss doctrine is concerned, it's a
5     motion for partial summary judgement.
6               I have seen records indicating that, at least,
7     sometimes when a flywheel housing failed there would be
8     damage to a clutch or a starter motor, and those would have
9     had to have been replaced.  The cost of replacing those
10    sorts of incidental parts is a tiny fraction of the damages
11    sought in this case.  But I was explicit that that extent,
12    to the extent that recovery is sought for damage, the cost
13    of replacing damaged truck parts, that I don't seek summary
14    judgement under the economic loss doctrine, although I do
15    under the contractual exclusion.
16              Beyond that, I just have two comments.  Number
17    one, you will not find anything in my brief that talks about
18    credibility.  I'll be perfectly content if your Honor simply
19    looks at the evidence attached both to my motion and to the
20    opposition, and if you'll see what the evidence shows as
21    distinct from what the attorneys say in their brief.
22              And the second thing is that the Berish case has
23    nothing to do with this issue.  The Berish case does not
24    address the subject of whether when there are both economic
25    losses and non-economic losses, whether the plaintiff is

1  limited to recovering only losses that are proximately

2  caused by damage to other property, and that is the issue

3  that's addressed here and that is the issue that is

4  addressed in all of the cases that I've cited you on the

5  economic loss doctrine, your Honor.

6          THE COURT:  Well the Berish case says that the

7  economic loss doctrine precludes recovery for negligence in

8  the design or manufacturer of the product if the negligence

9  causes no injury other than to the product itself.  That's

10  what it says.

11          MR. GRUNERT:  Correct.

12          THE COURT:  And so that if portions of the

13  decision sort of argues in favor of Trans-Spec, do you

14  disagree with that?

15          MR. GRUNERT:  Well yes.  I mean, as you know --

16          THE COURT:  I should've known that.

17          MR. GRUNERT:  As you know, courts decide the

18  issues that are presented to them.  Nothing in the Berish

19  case indicates that the Court was asked to decide whether,

20  in the presence both of damage to both other property and

21  what would typically be just economic loss, damage to the

22  product itself, they weren't asked to decide whether you can

23  collect for the damage caused to other property but not for

24  the product itself.  That issue wasn't before them, it is

25  not addressed.

29

1          What that Court basically said is, well the
2    product in this instance is the whole house, it's not just
3    the windows.  And you know, we accept that.  That, I guess,
4    is the law of Massachusetts.  But it didn't address the
5    issue that's before you now and why would they go out on a
6    limb to address that issue, but the issue has been
7    addressed, it was addressed in the Jeldwin case and it was
8    addressed in the other cases that I've cited to you.  And I
9    suggest to you that those cases make perfect analytical
10   sense.

11         And Trans-Spec has not cited you to any authority
12   to the contrary if you actually read the cases that they've
13   cited you.  So that's really all I have to say about the
14   Berish case.  You've characterized that when we were before
15   you once before as a, I'm not sure of the words you used,
16   but it indicated that it is sort of a difficult case to
17   understand how they got to where they were going.

18         THE COURT:  But they got there.

19         MR. GRUNERT:  They got there.  They got to say
20   what the law is, but the issue that is before you is not one
21   that they addressed or decided.  Thank you, your Honor.

22         THE COURT:  Now before you leave and I take all of
23   this under advisement to send to you, when is the deposition
24   going to take place and when are these documents going to be
25   produced?  Is it sometime in June?