UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

TRANS-SPEC TRUCK SERVICE, INC. d/b/a TRUCK SERVICE,

Plaintiff

vs.

CATERPILLAR INC.

Defendant

CIVIL ACTION NO. 04-11836-RCL

AFFIDAVIT OF JOHN A. K. GRUNERT

I, John A.K. Grunert, of full age, on my oath depose and say as follows:

1. I am an attorney and a shareholder the law firm of Campbell Campbell Edwards & Conroy, P.C., Caterpillar's counsel-of-record in this case. I am a member in good standing of the bars of all jurisdictions where I have been admitted to practice law, to wit, the Commonwealth of Massachusetts (1979), the United States District Court for the District of Massachusetts (1980), the Court of Appeals for the First Circuit (1981), the State of New Hampshire (1997), the United States District Court for the District of New Hampshire (1998), the United States District Court for the District of Connecticut (2004), and the United States District Court for the Eastern District of Michigan (2006). I have represented Caterpillar in this case at all times relevant to the accompanying Application for an Award of Costs.

2. Caterpillar has paid the following amounts for transcripts of depositions which I cited and made use of in support of Caterpillar's successful motion for summary judgment. *See* Memorandum in Support of caterpillar Inc.'s Motion for Summary Judgment on all Remaining Claims and the appendix of exhibits which accompanied it (filed March 17, 2006), Caterpillar Inc.'s Reply Memorandum in Support of its Motion for Summary Judgment on all Remaining Claims (filed 5/18/06 with accompanying motion for leave to file same), Caterpillar Inc.'s Opposition to Plaintiff Trans-Spec Truck Service Inc.'s Objection to the Magistrate Judge's Report and Recommendation on Defendant's Motion for Summary Judgment (filed 12/14/06). Copies of the invoices which Caterpillar paid are identified and attached hereto. The court reporters' charges for these transcripts are, in my many years of experience, all fair and reasonable and typical of the charges for court reporting services. All of the depositions were necessary for successful prosecution of my summary judgment motion.

| Deponent | Date of Deposition | Amount |
|---|---|---|
| Joseph Howard | 5/3/05 | $974.00 (Exh. A) |
| Trans-Spec Rule 30(b)(6) (Joseph Howard) | 8/9/05 | $629.00 (Exh. B) |
| Trans-Spec Rule 30(b)(6) (Joseph Howard) (continued) | 9/28/05 | $488.00 (Exh. C) |
| Clarissa Kolmer | 9/22/05 | $281.60 (Exh. D) |
| Sam Pappas | 9/13/05 | $344.00 (Exh. E) |
| Richard Bowes | 9/21/05 | $730.40 (Exh. F) |
| Harry Calderbank | 9/14/05 | $282.00 (Exh. G) |
| Robert Parks | 9/8/05 | $239.00 (Exh. H) |

3. Caterpillar has paid the following amounts for transcripts of depositions which Trans-Spec cited and used in its opposition to my motion for summary judgment. *See* Trans-Spec Truck Service Inc.'s Opposition to Caterpillar Inc.'s Motion for Summary Judgment on all Remaining Claims and Request for Oral Argument and its accompanying appendix of exhibits (filed 4/18/06) and Plaintiff Trans-Spec Truck Service Inc.'s Objection to the Magistrate Judge's Report and Recommendation on Defendant Caterpillar Inc.'s Motion for Summary Judgment on all Remaining Claims (filed 12/11/06). As these transcripts were used and cited in opposition to my motion, the transcripts of them that I obtained were reasonably necessary for my successful prosecution of that motion. Copies of the invoices which Caterpillar paid are identified and attached hereto. The court reporters' charges for these transcripts are, based on my many years of experience, all fair and reasonable and typical of the charges for court reporting services.

| Deponent | Date of Deposition | Amount |
|---|---|---|
| Al Cardoza | 5/31/05 | $609.50 (Exh I) |
| Ralph Lind | 5/10/05 | $518.00 (Exh. J) |
| Donald Medbery | 5/12/05 | $392.00 (Exh. K) |
| Kevin Holmes | 4/11/05 | $399.60 (Exh. L) |
| Kevin Holmes (continued) | 5/25/05 | $431.00 (Exh. M) |

4. In addition to depositions of which the transcripts were actually used and cited in the parties' summary judgment papers, I believe Caterpillar is entitled to recover the cost of the transcripts of two other depositions:

| Deponent | Date of Deposition | Amount |
| --- | --- | --- |
| Thomas Service | 1/20/06 | $1275.36 (Exh. N) |
| Jack Ekchian | 1/24/06 | $1079.00 (Exh. O) |

Messrs. Service and Ekchian were the proposed experts which Trans-Spec identified as the witnesses who would support its claim at trial that the engines Caterpillar had supplied were defective. Each had submitted Rule 26(a)(2) reports which purported to be subject to later supplementation. In a products liability case of the magnitude Trans-Spec asserted this one was, it was not only reasonable but imperative that I depose these two witnesses. The need to do so was enhanced by my need to assure that neither witness, by way of "supplementation" of his report, would offer testimony designed to defeat the summary judgment motion I was contemplating. I was therefore careful when I deposed them to delineate the areas in which each did and did not hold opinions and the work each had done, so as to prevent new-found opinions from surfacing in response to the summary judgment motion. When I filed my summary judgment motion, I utilized the Rule 26(a)(2) report of each of these two witnesses to demonstrate that they would provide no evidence to raise genuine issues concerning the facts determinative of that motion. I was comfortable doing so because, having deposed each, I had confirmed they would not be able to "add" to the parts of those reports that were useful to me. These two depositions were, therefore, necessary to Caterpillar's defense of this case and also in my view to its successful prosecution of the summary judgment motion.

5. Caterpillar's motion for summary judgment was argued on May 31, 2006, before Magistrate-Judge Alexander. When Trans-Spec objected to her recommendation that the motion be granted, it raised arguments it had not presented to her. Understanding that the law of this

Circuit does not permit a party to raise in its objection to a Magistrate-Judge's recommendation arguments not presented to the Magistrate-Judge, I needed to, and did, provide the Court with a copy of the transcript of the May 31 hearing to demonstrate that the arguments had not been raised. That transcript was therefore reasonably necessary to prosecution of the summary judgment. Its cost was $177.70. *See* Exhibit P.

6. Trans-Spec believed a former employee of Caterpillar's local dealer Southworth-Milton, Inc. had information relevant to its claim and proposed to depose him. Mr. Calderbank had left his employment with Southworth-Milton and moved to Florida. Trans-Spec's counsel proposed to me that it would cost less to bring Mr. Calderbank to Massachusetts for the deposition than for the parties' counsel to go to Florida for it. I told Trans-Spec's counsel I would get in touch with Calderbank through his former employer Southworth-Milton to see if he was willing to come to Massachusetts for deposition. He was, so long as his travel expenses were paid in full. Mr. Calderbank did in fact come to Massachusetts to be deposed by Trans-Spec's counsel, and he later sent me a bill for $850.30 comprising round-trip airfare ($196.90), two nights' lodging in Boston ($560.00), two meals, parking, tolls, and a taxi. My firm paid the entire bill but was later reimbursed for half of it by Trans-Spec. The remaining $425.15 is now recoverable under 28 U.S.C. §1821, as Mr. Calderbank's transcript was used in connection with the summary judgment motion. Documentation of the foregoing is assembled in Exhibit Q.[1]

[1] The October 12, 2005, letter of Christian Samito transmitting a check in payment of half of Mr. Calderbank's expenses refers to $495.65 rather than to 425.15. Mr. Samito's letter was inaccurate in its description of what was being paid. The $495.65 comprised (a) $425.15 in payment of half of Calderbank's travel expenses and (b) $70.50 in reimbursement of the cost of copies of records Caterpillar had obtained via subpoena from another source and had provided to Trans-Spec. So Trans-Spec has not, Mr. Samito's letter notwithstanding, paid more than $425.15 of Calderbank's expenses.

7. Trans-Spec billed me a total of $58.00 for copies of the exhibits to its depositions of Al Cardoza and Kevin Holmes. *See* Exhibit R. My office paid for the exhibits and was reimbursed by Caterpillar. Excerpts from both of those depositions were utilized in connection with the summary judgment proceedings. The cost of the copies was therefore reasonably necessary.

8. Exhibits and other attachments (such as unpublished opinions) to my summary judgment motion, my reply memorandum in support of the summary judgment motion, and my opposition to Trans-Spec's objection to the Magistrate-Judge's recommendation that summary judgment be granted, comprised a total of 214 pages. Two copies of each were necessary: one for electronic transmittal to the Court and Trans-Spec, and one for my use. That comes to 428 pages. My firm's copying charge to Caterpillar for in-house copying is $0.10 per page, which is not only reasonable but in fact less than many other firms charge for in-house copying. So the cost of copies needed for the summary judgment proceedings was $42.80. I have not attached an invoice for this amount because the copying charges related to the summary judgment motion are not segregated in my firm's bills to Caterpillar from other copying charges for which Caterpillar does not seek reimbursement. I have counted the pages of exhibits, however, and know that Caterpillar was billed for the copying and did not dispute the bill.

9. The largest single component of recoverable costs is a $8,393.62 copyhouse bill for copying more than 36,000 pages of servicing and repair records maintained by Trans-Spec. *See* Exhibit S[2]. These copies were necessary because of the nature of Trans-Spec's claim. Trans-Spec claimed, in substance, that engines it had caused to be installed by Sterling Truck Corporation in 22 new trucks it acquired from that corporation were defectively designed in a

[2] The copyhouse bill includes not only the copying charge, for which Caterpillar seeks reimbursement, but also charges for CDs of the documents ($175.00) and Bates numbering them ($1,842.70) for which Caterpillar does not request reimbursement.

way that caused their flywheel housings to fail repeatedly. Trans-Spec claimed further that the flywheel housing failures caused its trucks to experience so much downtime that it lost substantial revenue and several customers. It was Caterpillar's belief that the failures Trans-Spec was experiencing were not caused by an engine defect but, instead, probably by a combination of defects in the way Sterling has built the drivelines of the trucks (for which Caterpillar bore no responsibility) and deficiencies in Trans-Spec's servicing and use of the trucks.[3] Caterpillar needed comprehensive servicing records to determine if it was right. It obtained many records via subpoena from non-parties (for which it does not seek reimbursement) but, because Trans-Spec itself had performed much of the servicing on its own trucks, it also needed Trans-Spec's records. Trans-Spec was eventually ordered by the Court to make the records available to Caterpillar's counsel for off-site copying at a copyhouse. Trans-Spec insisted the copying be done quickly. The records exceeded 36,000 pages, were stuck in disorganized fashion into cardboard boxes, and in many instances were difficult to copy because of their condition or because they had foreign substances such as grease on them. The copyhouse charge for copying them was $8,393.62, a charge that while large was necessarily incurred in defense of a case that, according to Trans-Spec's counsel, was going to result in a judgment against Caterpillar in excess of $5 million.

10. The total costs which Caterpillar seeks to recover are thus $17,062.58. In my view, this is a conservative request. It does not include, for example, the costs of transcripts of Trans-Spec's depositions of Caterpillar employees Guidotti and Schoening, even though it was clearly necessary for Caterpillar to purchase transcripts of its own managerial-level employees' testimony. It does not include my travel expenses associated with Trans-Spec's depositions in

[3] Caterpillar's belief in these regards was ultimately confirmed, as would have been shown at trial had summary judgment not been granted on other grounds.

Peoria, Illinois, of Caterpillar employees Bowes and Kolmer, both of whose transcripts were used in connection with the summary judgment motion. It omits most in-house copying costs, including the cost of copying most deposition exhibits.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 23rd DAY OF FEBRUARY, 2007.

John A.K. Grunert (BBO: 213820)
Campbell Campbell Edwards & Conroy, PC
One Constitution Plaza
Boston, MA 02129
(617) 241-3000

On this 23rd day of February, 2007, before me, the undersigned notary public, appeared John A. K. Grunert, personally well known to me to be the person whose name is signed on this affidavit, and who swore or affirmed to me that the contents of the affidavit are truthful and accurate to the best of his knowledge.

Notary Public
My Commission Expires: 3.27.09

CERTIFICATE OF SERVICE

I, John A.K. Grunert, hereby certify that on February 23, 2007, I served the within affidavit electronically on Nancy Reimer, Esquire, Donovan Hatem LLP, Two Seaport Lane, Boston, MA 02210.

John A.K. Grunert